## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Laurie Ortolano,

                    Plaintiff,

v.                                                              No. 22-cv-00326-LM

The City of Nashua, New Hampshire, et al.,
                    Defendants.

## DEFENDANTS INCEPTION TECHNOLOGIES, INC. AND RAYMOND FEOLI'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS EIGHT AND TEN OF PLAINTIFF'S VERIFIED COMPLAINT

This case is the culmination of Plaintiff Laurie Ortolano's ("Ms. Ortolano") eight-year crusade to hold the City of Nashua (the "City") and various City officials accountable for over-assessing her real estate and then failing to comply with her numerous public records requests during her legal challenge to the over-assessment.  Emboldened by a recent favorable ruling on her Right-to-Know Law claim in Hillsborough Superior Court, Ms. Ortolano now seeks $2,000,000.00 in money damages from the City, eight current or former City employees, and two private parties: Inception Technologies, Inc. ("Inception"), a Manchester company contracted to provide document scanning services to the City, and its President, Raymond Feoli ("Mr. Feoli") (collectively, "Defendants").

In her 66-page, 198-paragraph, prolix Verified Complaint, Ms. Ortolano asserts ten Counts against the various defendants.  Only Counts Eight (Defamation) and Ten (Intentional Infliction of Emotional Distress) apply to Defendants Inception and Mr. Feoli.  Ms. Ortolano's claims of defamation and intentional inflicted emotional distress fail as a matter of law and should be dismissed with prejudice.  Accordingly, Defendants respectfully move that this Court dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

## BACKGROUND

Inception is a privately owned New Hampshire corporation with an office in Manchester. Affidavit of Raymond Feoli ("Feoli Aff.") at ¶2.  Inception provides document scanning and data storage solutions to private companies and public agencies.  *Id.* at ¶3.  Among its current and former customers are the New Hampshire municipalities of Nashua, Salem, Moultonborough, and Hollis.  *Id.* at ¶3.  Inception routinely handles sensitive, confidential customer information and documents and therefore must maintain strict data security protocols.  *Id.* at ¶4.  In or about August of 2019, Inception contracted with the City to undertake the scanning of Assessor records.  *Id.* at ¶5.  Since the start of the project Inception has scanned approximately 500,000 documents for the City.  *Id.*  Mr. Feoli is Inception's President.  *Id.* at ¶1.

Ms. Ortolano's battles with the City date back to 2014 but her involvement with Inception and Mr. Feoli is much more recent.  See generally Verified Complaint ("Complaint"). In late 2021 or early 2022, frustrated with the City's lack of progress in responding to her public records requests, Ms. Ortolano called Inception and left a voicemail message for Mr. Feoli, identifying herself as Laurie Ortolano of Nashua.  Complaint at ¶121; Feoli Aff. at ¶7.  Thinking Ms. Ortolano was a City official, Mr. Feoli promptly returned the call.  Feoli Aff. at ¶7.  Prior to this call, Mr. Feoli had never met, communicated with, or heard of Ms. Ortolano.  *Id.* at ¶8.  He knew nothing of Ms. Ortolano's legal battles with the City.  *Id.*  Ms. Ortolano asked Mr. Feoli questions about the scanning project.  *Id.* at 9.  She recited facts about a pending Purchase Order as well as the amounts Inception had billed to, and was paid by, the City.  *Id.*  She asked about Inception's production schedule.  *Id.*  She stated that she would make sure payment from the City was expedited.  *Id.*  Accordingly, Mr. Feoli provided a status report on the scanning project.  *Id.*

On or about February 4, 2022, Ms. Ortolano called Mr. Feoli again and left another voicemail message. *Id.* at ¶10. Once again, Mr. Feoli promptly returned the call. *Id.* Ms. Ortolano questioned Mr. Feoli about public access to the scanned documents, at one point stating/inquiring: "We don't have access to those files. When can we get those files back?" *Id.* Mr. Feoli did not provide Ms. Ortolano access to the scanned documents. *Id.*

Following this second call with Ms. Ortolano, Mr. Feoli received a call from Co-Defendant City Director Kimberly Kleiner ("Ms. Kleiner") who asked Mr. Feoli to identify all City officials with whom he had communicated about the City's scanning project. *Id.* at ¶10. Mr. Feoli identified the City officials with whom he had communicated, including Ms. Ortolano, who he believed to be a City official. *Id.* at ¶12. Ms. Kleiner then informed Mr. Feoli that Ms. Ortolano was not a City official. *Id.* at ¶13. Ms. Kleiner proceeded to inform Mr. Feoli about the lawsuit(s) Ms. Ortolano had brought against the City. *Id.* Prior to this conversation, Mr. Feoli had never heard of Ms. Ortolano or her lawsuit(s) against the City. *Id.*

Upon learning that Ms. Ortolano was not a City official, Mr. Feoli concluded that his communications with Ms. Ortolano amounted to a breach of Inception's data security obligations to the City. *Id.* at ¶14. On February 6, 2022, Mr. Feoli wrote an email to the Board of Alderman and forwarded it to Ms. Kleiner to memorialize his communications with Ms. Ortolano. *Id.* at ¶15. The email reads as follows, verbatim:

> **From:** Raymond Feoli
> **Sent:** Sunday, February 6, 2022 9:36 AM
> **To:** Kleiner, Kimberly <<u>kleinerk@nashuanh.gov</u>>
> **Subject:** Laura Ortolano
> **Importance:** High
>
> To the Board of Alderman,
>
> My name is Raymond Feoli, President of Inception Technologies. My company has provided the City with document scanning services for the Assessors

records.  I am writing to the Board after having conversation with Kim Kleiner today.  It has come to my attention that I have been deceived by individual, Laura Ortolano, who portrayed herself as city employee to me on thre different occasions.

My first conversation was approximately a month ago.  Ms. Ortolano called my company and had left a voicemail asking for an update on the project regarding the PO Number 158909.  I promptly returned her phone call thinking she was a city employee.  She explained that based on the invoices the City had there was approximately $22K left on the existing PO.  I had explained to her that had just finished a batch and was billing another $12K against the PO.  She had also asked about when documents were going to be returned and I told her that we were scheduled to drop off a batch and pick up another batch.  During that conversation, she had mentioned that she would make sure payment was expedited on any open invoices.  I told her we just sent the invoice so it was no hurry on that.

This past Friday I received a voicemail from Ms. Ortolano which I forwarded to Kim Kleiner after speaking with Ms. Ortolano and finding out about this person from Kim.  I called her back thinking she was with the city and we had just invoiced another batch.  Getting close to the original PO amount, I thought she was just syncing up with my company to make sure we were on track with the PO and boxes.  She asked several questions about accessing the documents and the public having access to those records.  She explained that while my company had the documents, she stated "**we** don't have access to those files. When can we get those files back?"  I corrected her and said well you may not have access to the physical records, what we have scanned was searchable and could be emailed or printed by finding the records in the DocuWare system.  I said to her thinking she was an employee "I don't know if a login has been created for you or if you are able to have access to those records in the assessors database, but if you don't, then someone in the assessors department could provide those files."  I went on to explain that we had picked up a batch of approximately 80 boxes and due to the remainder on the PO, we had broken that big batch into smaller batches to avoid exceeding the original PO amount.  I did mention that I had just quoted the City on the remainder of the boxes.  She thanked me ended the conversation.

She called back a little while later on my cell phone.  During this conversation she asked me about the files left to scan.  I had explained that I did 2 quotes for the Assessors department.  One quote was for the boxes we had sitting in our warehouse that would most likely not fit under the existing PO.  That was approximately 55 boxes.  I then mentioned that I had done a separate quote for 98 boxes that the department has ready to go once the approval or PO was cut.   She passed a comment implying that she was going to help push that along and would let me know when she sees it.  I said thank you and we hung up the phone.

Its important to note that any document scanning project is an estimate on the volumes of paper.  When we originally did the inspection with Bruce Codagone, we estimated that the City had approximately 1.2 million pages which we felt was a conservative estimate.  The thought was to scan the entire set of records over a couple of budget years and show the value the city was going to get from the system.  So when we quoted it both Bruce and Inception was aware that we had not accounted for the entire set of records in the initial proposal.

I would be happy to meet with the Board and answer any questions you may have regarding my conversations with Ms. Ortolano or the project itself.  Please let me know if there is anything else I can do to assist you further.  Thank you.

Sincerely,

Raymond Feoli
President
Inception Technologies Inc.
www.inceptiontech.com
603-703-223  direct
508-801-3279   cell

*Id.* at Exhibit A.

Mr. Feoli's email was read at the February 8, 2022 Board of Aldermen meeting.  *Id.* at ¶16.  Mr. Feoli did not attend or participate in this meeting.  *Id.*  On February 11, 2022, Mr. Feoli received an email from Alderman Alex Comeau who wanted to clarify the statements made in Mr. Feoli's February 6, 2022 email.  *Id.* at ¶17.  Mr. Feoli promptly called Alderman Comeau and discussed the email, clarifying that Ms. Ortolano never explicitly stated she worked for the City but that he believed she was a City official based on her intimate knowledge of City business, the terms of Inception's contract and the status of Purchase Orders, billing and payments, as well as her statements.  *Id.*  Shortly after the February 8, 2022 Board of Aldermen meeting, a detective from the Nashua Police Department visited Mr. Feoli at his Manchester office and asked questions about his communications with Ms. Ortolano.  *Id.* at ¶18.  Mr. Feoli informed the detective that Ms. Ortolano never stated that she was a City official but that he believed her to be a City official based on her intimate knowledge of City business, the terms of

Inception's contract and the status of Purchase Orders, billing and payments, as well as her statements. *Id.* Aside from the above-referenced communications, Mr. Feoli communicated with no one concerning Ms. Ortolano. *Id.* at ¶19.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Boroian v. Mueller*, 616 F.3d 60, 64-65 (1st Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Determining plausibility "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Plausibility requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Non-conclusory "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In evaluating a motion to dismiss, the court may consider not only the complaint but also "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

## ARGUMENT

Admittedly frustrated with the City's lack of progress in responding to her numerous public records requests for Assessor records, Ms. Ortolano decided to circumvent customary

Right-to-Know Law procedures, which were well-known to her by this time, and to seek
information and documents directly from a third party-independent contractor-City vendor.
Thus, Inception and Mr. Feoli became unwitting participants in the ongoing legal battle between
Ms. Ortolano and the City.  What Ms. Ortolano did was wrong.  She never should have contacted
Inception directly for information and documents.  Inception has no right to share proprietary
information with constituents.  Inception is obligated to maintain strict security of the
information and documents it receives from its customers.  Had Ms. Ortolano been successful in
convincing Mr. Feoli to provide her access to the scanned digital files (undoubtedly containing
protected information), both she and Mr. Feoli would have been liable, if not criminally culpable,
for the data breach.

When she contacted Mr. Feoli to gather information about the status of the scanning
project, Ms. Ortolano quoted the Purchase Order number for the job and stated the amounts that
had been paid by the City and balance remaining.  She inquired about Inception's contract
performance dates.  She inquired about public access to the scanned documents.  She stated to
Mr. Feoli: "**We** don't have access to those files.  When can **we** get those files back."  Given these
facts, any reasonable person would have deduced that Ms. Ortolano was a City official.

## I.      Ms. Ortolano's Defamation Claim Fails as a Matter of Law

To establish defamation under New Hampshire law, a plaintiff must prove that a defendant
"publish[ed]... a false and defamatory statement of fact about the plaintiff to a third party." *Moss
v. Camp Pemigewassett Inc.*, 312 F.3d 503, 508 (1st Cir. 2002), quoting *Independent Mech.
Contractors, Inc. v. Gordon T. Burke & Sons, Inc.,* 138 N.H. 110, 635 A.2d 487, 492 (N.H.1993)
(citing Restatement (Second) of Torts § 558 (1977)).  A statement is defamatory if it "tends to
lower the plaintiff in the esteem of any substantial and respectable group of people." *Nash v. Keene*

*Publ'g Corp.,* 127 N.H. 214, 498 A.2d 348, 351 (1985). *Moss*, 312 F.3d at 508.   Alleged

defamatory statements must be read in the context of the entire publication.  *Moss*, 312 F.3d at

509, citing *Duchesnaye v. Munro Enters., Inc.,* 125 N.H. 244, 480 A.2d 123, 125 (1984).  "A

statement is not actionable [defamation] if it is substantially true."  *Moss*, 312 F.3d at 509, citing

*Simpkins v. Snow,* 139 N.H. 735, 661 A.2d 772, 776 (1995).

 Ms. Ortolano's defamation claim against Defendants is based on the following two

factual allegations:

> 121. In fall 2020, the City had contracted with Inception Technologies to scan Assessing
> Department files to make available publicly-accessible digital records. In late 2021,
> because Kleiner had not provided any public updates about the project, Ortolano
> contacted Inception's President, Feoli, to ask him questions about how the scanning and
> storage was handled. She contacted him again in early-February 2022 for an update.
> After that second phone call, despite the fact that Ortolano never stated that she was
> employed by the City of Nashua, was an independent contractor for the City of Nashua,
> or in any way represented the City of Nashua, Feoli later told Kleiner about the phone
> call and referred to Ortolano as a city employee. Feoli would later admit when giving a
> statement about the incident to the Nashua PD that Ortolano had never stated or
> suggested that she was a City employee; he assumed she was because she was so
> knowledgeable about city government.
>
> 122. But Kleiner saw another opportunity to tarnish Ortolano's reputation in public. At an
> Aldermen meeting on February 8, 2022, just one day after the Hillsborough Superior
> Court had ruled in favor of Ortolano and against the City in an Ortolano RTK case,
> Kleiner, an administrative employee of the City of Nashua who performed no legislative
> functions, publicly accused Ms. Ortolano of impersonating a city official. Not only was
> Kleiner's public statement about Ortolano false; it also violated NH RSA 91-A:3, II(c),
> which prohibits public discussion of "[m]atters that, if discussed in public, would
> adversely affect the reputation of someone other than a member of the public body."
> Corporation Counsel Bolton sat mute in the chamber as Kleiner defamed Ortolano and
> simultaneously violated the quoted RTK law.

Complaint ¶¶ 121-122.

 Ms. Ortolano cannot dispute that she contacted Mr. Feoli to obtain information and

documents.  Nor can she dispute that she expressed an intimate knowledge of City business, the

Inception-City Contract, the pending Purchase Order, status of billing and payments, and the

scanning production schedule.  She essentially admits these facts in her Verified Complaint.  Mr. Feoli's recounting of his communications with Ms. Ortolano are undisputedly true and therefore nonactionable.

## II.    Feoli's Statement to the Board of Alderman Was a Nonactionable Statement of Opinion

It is axiomatic that statements of opinion cannot give rise to a defamation claim. *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000).  A statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.  *Id.*  The law protects opinions that involve "expressions of personal judgment, especially as the judgments become more vague and subjective in character." *Id.*  "Whether a statement is a verifiable fact or an opinion can be decided by the court as a matter of law." *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015).  "This task requires an examination of the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation and any cautionary terms used by the person publishing the statement." *Id.*

The crux of Ms. Ortolano's defamation claim against Defendants is the following statement in Mr. Feoli's email to the Board of Aldermen: "It has come to my attention that I have been deceived by individual, Laura Ortolano, who portrayed herself as city employee to me on thre[sic] different occasions."  This is a clear statement of Mr. Feoli's opinion, deduced from his prior communications with Ms. Ortolano in which she exhibited intimate knowledge of City business, recited facts concerning the Nashua-Inception Contract and pending Purchase Order, assured Mr. Feoli that **she** would expedite payment by the City, and then requested access to the

scanned documents, stating: "**We** don't have access to those files.  When can **we** get those files back?"  This statement of opinion is not defamatory.

## III.    Ms. Ortolano's Defamation Claim Hinges upon an Unsupported Conclusory Statement

Count Eight contains the following assertion: "At the time of the communication between Feoli and Ortolano, both Feoli and Kleiner knew or should have known that Ortolano was not an employee of the City of Nashua. Nevertheless, Feoli told Kleiner that Ortolano had represented that she was an employee of the City of Nashua."  Complaint at ¶185.  This is a purely conclusory statement with no factual support.  Ms. Ortolano alleges no facts in support of this assertion in the two paragraphs of factual allegations she offers to support her defamation claim.  See Complaint ¶¶121-122.  Mr. Feoli is on record, under oath, that he never heard of Ms. Ortolano or her legal battles with the City, prior to being notified by Ms. Kleiner on February 6, 2022.  Feoli Aff. at ¶13. With no factual support for this critical element, Ms. Ortolano's defamation claim fails.

## IV.    Ms. Ortolano's Intentional Infliction of Emotional Distress Claim Cannot Stand

It is well settled in New Hampshire that "emotional distress resulting from harm to reputation and good name caused by the publication of defamatory statements cannot give rise to a separate action for intentional infliction of emotional distress." *Moss v. Camp Pemigewassett Inc.*, 312 F.3d 503, 510 (1st Cir. 2002), citing *Provencher v. CVS Pharmacy,* 145 F.3d 5, 12 (1st Cir.1998) ("New Hampshire law does not recognize a cause of action for wrongful infliction of emotional distress where the factual predicate sounds in defamation.").  Ms. Ortolano's intentional infliction of emotional distress claim against Defendants is wholly grounded in her defamation claim and therefore cannot stand.  The Court need not determine whether the objectionable statements rise to the level of outrageousness required to establish this claim.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss Counts Eight and Ten of Plaintiffs' Verified Complaint, with prejudice, award Defendants attorney's fees and costs, and grant any other relief it deems just.


Respectfully submitted,                    Defendants Inception Technologies, Inc.
Dated: November 18, 2022                    and Raymond Feoli,

                              By:    */s/ Danilo J. Gomez*
                                     Danilo J. Gomez (Bar No. 267668)
                                     Law Office of Danilo J. Gomez
                                     225 Broadway, #304
                                     Methuen, MA 01844
                                     (978) 655-7954
                                     djg@danilogomez.com

## **CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

November 18, 2022                                   */s/ Danilo J. Gomez*_____
                                                                  Danilo J. Gomez