UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano,<br>                    Plaintiff,<br>v.<br><br>The City of Nashua, New Hampshire, et al.,<br>                    Defendants. | No. 22-cv-00326-LM |

## AFFIDAVIT OF RAYMOND FEOLI

I, Raymond Feoli, do hereby depose and state as follows:

1. This Affidavit is based on my personal knowledge.

2. I am the President of Inception Technologies, Inc. ("Inception"), a privately owned New Hampshire corporation with an office in Manchester.

3. Inception provides document scanning and data storage services to private companies and public agencies. Among Inception's past and present customers are the New Hampshire municipalities of Nashua, Salem, Moultonborough, and Hollis.

4. Inception routinely handles customers' confidential data and therefore is contractually and ethically bound to adhere to strict confidentiality and security protocols.

5. In or about August of 2020, Inception contracted with the City of Nashua (the "City") to provide document scanning and data storage of the City's Tax Assessor records. Pursuant to this Contract, the City delivered boxes of documents which Inception then scanned into digital format for storage. Since the start of this project, Inception has scanned approximately 500,000 documents for the City.

6. City Director Kimberly Kleiner has been my primary contact with the City.

1

7. In late 2021 or early 2022, I received a voicemail message from a person who identified herself as Laurie Ortolano of Nashua. Thinking Ms. Ortolano was a City official, I promptly returned the call.

8. Prior to this call, I had never met, communicated with, or heard of Ms. Ortolano. I knew nothing of Ms. Ortolano's legal battles with the City.

9. Ms. Ortolano asked me questions about the scanning project Inception was handling for the City. She recited facts about a pending Purchase Order as well as the amounts Inception had billed to, and was paid by, the City. She asked about Inception's production schedule. She stated that she would make sure payment from the City was expedited. Accordingly, I provided a status report on the scanning project.

10. On or about February 4, 2022, Ms. Ortolano called me again and left another voicemail message. Once again, I promptly returned the call. Ms. Ortolano questioned me about public access to the scanned documents, at one point stating/inquiring: "We don't have access to those files. When can we get those files back?" I did not provide Ms. Ortolano access to the scanned documents.

11. Following this second call with Ms. Ortolano, I received a call from Ms. Kleiner who asked me to identify all City officials with whom I had communicated about the City's scanning project.

12. I identified the City officials with whom I had communicated, including Ms. Ortolano who I believed to be a City official.

13. Ms. Kleiner informed me that Ms. Ortolano was not a City official. Ms. Kleiner proceeded to inform me about the lawsuit(s) Ms. Ortolano had brought against the City. Prior to this conversation, I had never heard of Ms. Ortolano or her lawsuit(s) against the City.

14. Upon learning that Ms. Ortolano was not a City official, I concluded that my conversations with her amounted to a breach of Inception's data security obligations to the City.

15. On February 6, 2022, I wrote an email to the Board of Alderman and forwarded it to Ms. Kleiner to memorialize my communications with Ms. Ortolano. A true and accurate copy of my February 6, 2022 email is attached hereto as Exhibit "A."

16. It is my understanding that my email was read at the February 8, 2022 Board of Aldermen meeting. I did not attend or participate in this meeting.

17. On February 11, 2022, I received an email from Alderman Alex Comeau who wanted to clarify the statements made in my email. I promptly called him and discussed the email, clarifying that Ms. Ortolano never explicitly stated she worked for the City but that I believed she was a City official based on her intimate knowledge of City business, the terms of Inception's contract and the status of Purchase Orders, billing and payments, as well as her statements to me.

18. Shortly after the February 8, 2022 Board of Aldermen meeting, a detective from the Nashua Police Department came to my Manchester office to ask questions about my communications with Ms. Ortolano. I informed the detective that Ms. Ortolano never stated to me that she was a City official but that I believed her to be a City official based on her intimate knowledge of City business, the terms of Inception's contract and the status of Purchase Orders, billing and payments, as well as her statements to me.

19. Aside from the above-referenced communications, I have not communicated with anyone concerning Ms. Ortolano.

Signed under the pains and penalties of perjury this 18th day of November, 2022.

                                         */s/ Raymond Feoli*
                                         Raymond Feoli

**EXHIBIT A**

**Kleiner, Kimberly**

| | |
|---|---|
| **From:** | Raymond Feoli <rfeoli@inceptiontech.com> |
| **Sent:** | Sunday, February 6, 2022 9:36 AM |
| **To:** | Kleiner, Kimberly |
| **Subject:** | Laura Ortolano |
| **Importance:** | High |

CAUTION: This email came from outside of the organization. Do not click links/open attachments if source is unknown.

To the Board of Alderman,

My name is Raymond Feoli, President of Inception Technologies. My company has provided the City with document scanning services for the Assessors records. I am writing to the Board after having conversation with Kim Kleiner today. It has come to my attention that I have been deceived by individual, Laura Ortolano, who portrayed herself as city employee to me on thre different occasions.

My first conversation was approximately a month ago. Ms. Ortolano called my company and had left a voicemail asking for an update on the project regarding the PO Number 158909. I promptly returned her phone call thinking she was a city employee. She explained that based on the invoices the City had there was approximately $22K left on the existing PO. I had explained to her that had just finished a batch and was billing another $12K against the PO. She had also asked about when documents were going to be returned and I told her that we were scheduled to drop off a batch and pick up another batch. During that conversation, she had mentioned that she would make sure payment was expedited on any open invoices. I told her we just sent the invoice so it was no hurry on that.

This past Friday I received a voicemail from Ms. Ortolano which I forwarded to Kim Kleiner after speaking with Ms. Ortolano and finding out about this person from Kim. I called her back thinking she was with the city and we had just invoiced another batch. Getting close to the original PO amount, I thought she was just syncing up with my company to make sure we were on track with the PO and boxes. She asked several questions about accessing the documents and the public having access to those records. She explained that while my company had the documents, she stated "we don't have access to those files. When can we get those files back?" I corrected her and said well you may not have access to the physical records, what we have scanned was searchable and could be emailed or printed by finding the records in the DocuWare system. I said to her thinking she was an employee "I don't know if a login has been created for you or if you are able to have access to those records in the assessors database, but if you don't, then someone in the assessors department could provide those files." I went on to explain that we had picked up a batch of approximately 80 boxes and due to the remainder on the PO, we had broken that big batch into smaller batches to avoid exceeding the original PO amount. I did mention that I had just quoted the City on the remainder of the boxes. She thanked me ended the conversation.

She called back a little while later on my cell phone. During this conversation she asked me about the files left to scan. I had explained that I did 2 quotes for the Assessors department. One quote was for the boxes we had sitting in our warehouse that would most likely not fit under the existing PO. That was approximately 55 boxes. I then mentioned that I had donea separate quote for 98 boxes that the department has ready to go once the approval or PO was cut. She passed a comment implying that she was going to help push that along and would let me know when she sees it. I said thank you and we hung up the phone.

Its important to note that any document scanning project is an estimate on the volumes of paper. When we originally did the inspection with Bruce Codagone, we estimated that the City had approximately 1.2 million pages which we felt

1

was a conservative estimate. The thought was to scan the entire set of records over a couple of budget years and show the value the city was going to get from the system. So when we quoted it both Bruce and Inception was aware that we had not accounted for the entire set of records in the initial proposal.

I would be happy to meet with the Board and answer any questions you may have regarding my conversations with Ms. Ortolano or the project itself. Please let me know if there is anything else I can do to assist you further. Thank you.

Sincerely,

Raymond Feoli
President
Inception Technologies Inc.
www.inceptiontech.com
603-703-0223 direct
508-801-3279 cell

## **CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

>*/s/ Danilo J. Gomez*
>Danilo J. Gomez