# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| **Laurie Ortolano,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 22-cv-00326-LM |
| ) | |
| **The City of Nashua, et al.,** ) | |
| Defendants ) | |

## AFFIDAVIT OF PLAINTIFF LAURIE ORTOLANO OBJECTING TO THE MOTION OF DEFENDANTS, INCEPTION TECHNOLOGIES, INC. AND RAYMOND FEOLI, TO DISMISS COUNTS EIGHT AND TEN OF THE PLAINTIFF'S VERIFIED COMPLAINT

I, Laurie Ortolano, do hereby depose and say as follows:

1. I am the plaintiff in the above-captioned case and make this affidavit of my own personal knowledge.

2. The purpose of this affidavit is to authenticate and submit two documents that supplement the submissions of defendants Inception Technologies, Inc. ("Inception") and Raymond Feoli ("Feoli") because the defendants' submissions do not accurately set forth the entirety of what happened when I spoke with Feoli. Additionally, I am adding brief testimony to controvert some of the inaccurate testimony Feoli has placed in his Affidavit.

3. By regularly attending public hearings and meetings conducted by the City of Nashua government and keeping up with the bulk of pending issues affecting the citizens of Nashua, I have had a good grasp on the workings of the Nashua City government.

1

4. In 2020, the City chose to undertake a project to outsource all property record files in order to create digitally scanned files. These property record files are ordinarily accessible to the public during normal business hours. The batching of the physical files to Inception Technologies meant that files were no longer publicly available. Therefore, I was quite interested in the status and completion of the project to scan Nashua's public documents for display to the public online.

5. Unfortunately, that project started to linger, which restricted access to these public records, and resulted in great frustration, especially considering that the Director of Administrative Services, Kimberly Kleiner ("Kleiner"), had not provided any updates.

6. Recalling that a Nashua City Director had encouraged me to contact third-party vendors directly when I had questions about a project the third-party vendor was handling, I decided to contact defendant Feoli directly and inquire about the status of the document scanning project. As an example of a City official advising me to contact third-party vendors directly, attached as Exhibit "A" is a true and accurate copy of a letter dated January 21, 2022 from Director of Economic Development, Tim Cummings, to me. I have highlighted the portion in which he advises me to contact the third-party directly.

7. Feoli's statement in the first paragraph of his February 6, 2022 email to the Nashua Board of Alderman ("BOA") – "It has come to my attention that I have been deceived by individual (sic), Laura (sic) Ortolano, who portrayed herself as a city employee to me on tre (sic) different occasions" – is false. First, my recollection is that I only ever spoke with Feoli by phone twice, not three times. (I did leave one voicemail prior to each of the two phone calls, but I am pretty sure that there were not three

conversations.) Second, I never "deceived" Feoli and never portrayed myself to him "as a city employee."

8. Feoli's claim in his February 6th letter that I recited facts about the amounts that Inception had billed and how much the City had paid on the contract is false. It is also false that I told him I "would make sure payment was expedited on any open invoices." In my first conversation with Feoli, I asked when the project would be completed. Feoli told me that Inception had just about used up the funds appropriated for by the City and would need another City appropriation to complete the project.

9. I was upset to learn that the project was now hanging in limbo, so I questioned Feoli about how much money had already been appropriated and how much more he would need. Contrary to his letter to the BOA, it was Feoli who provided the amounts of existing purchase orders and what he was about to bill out, not me. Because I was upset to learn from Feoli that the City had not even paid for the entire project and that it would have to appropriate additional funds to get the scanning completed, I told Feoli that I would inquire from Kleiner about when more money would be paid to get the job done. Again, I never told Feoli that I would ensure he got paid promptly and never suggested or even hinted that I had the power to do so.

10. I called Feoli a second time because I was looking for a specific property file that I believed he may have taken to scan. I asked questions about accessing documents because, as I explained to him, the particular file I wanted was not in City Hall. In his February 6th letter to the BOA, Feoli seems to emphasize the word "we" when I stated, in effect, that "we don't have access to those files." Given the context of my conversation with Feoli, unless he had been not listening to what I was saying, there is no way he could have thought that "we" was referring to anyone other than

"we, the residents of Nashua" who were frustrated to be unable to obtain the files.

11. I have gone through all the documents submitted to date and have wracked my memory to consider whether Feoli could have reasonably interpreted my statements to portray myself as an employee of the City of Nashua. The answer is that he could not have. Feoli is either purposely misrepresenting what I said or was utterly confused about the conversations for reasons I cannot understand.

12. Attached hereto as Exhibit "B" is a true and accurate copy of the police report about the incident that I obtained through a Right to Know request. Because the report is 11 pages long, my attorneys added page numbers on the bottom-right of each page. I believe that Sergeant Goodwin's writeup of his interview with Feoli and my email to Feoli that he attached to the police report more accurately portray what was said than Feoli's self-serving February 6th letter to the BOA or his Affidavit.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5th DAY OF DECEMBER 2022.

/s/ Laurie Ortolano
Laurie Ortolano

4

EXHIBIT "A"



Economic Development                                    "The Gate City"

January 21, 2022

Laurie Ortolano
41 Berkeley Street
Nashua, NH 03064

*Via email only to* [laurieortolano@gmail.com](mailto:laurieortolano@gmail.com)

**RE: Email Request dated January 1, 2022, January 3, 2022 & January 5, 2022 (the "Requests").**

Dear Ms. Ortolano:

The City is in receipt of your emails dated January 1, 3, and 5, 2022, purportedly sent under the Right to Know law ("RTK"), in which you made a series of requests for documents. By this letter, I am responding to the requests.

The RTK law requires an individual requesting a record to reasonably describe the specific governmental records being requested. A reasonably described request "would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." Marks v. United States (Dep't of Just.), 578 F.2d 261 (9th Cir. 1978). Absent this description a best effort search and production was carried out. In furtherance of this sentiment, the following is offered.

On January 1, 2022 ("Request No. 1"), you requested:

> [1] The document (scope of work) authorizing Paul Shea to conduct a downtown survey on barrier usage. If there are multiple scopes of work for surveys Mr. Shea has conducted, for clarification, I am looking for the scope of work that produced the data Paul Shea shared in the December 8, 2021 infrastructure meeting.

No such record exists.

On January 1, 2022 ("Request No. 2"), you requested:

> [2] Electronic or inspectable copies of all barrier survey records obtained or notes (considered in their final form) gathered by Great American Downtown (GAD), Paul Shea, or his staff. I specifically want to know the names of the businesses that were surveyed.

This request should be directed to Great American Downtown ("GAD").

On January 1, 2022 ("Request No. 3"), you requested:

> [3] Any communications, emails or letters regarding barriers or the parking study from Paul Shea, GAD, or GAD staff. The timeframe for this search will be the date the request or scope of work was given to Mr. Shea to conduct the survey. The end date will be December 31, 2021. If there was no document authorizing Mr. Shea to conduct a survey, please start the document search from March 1, 2021 to December 31, 2021.

Again, The RTK law requires an individual requesting a record to reasonably describe the specific governmental records being requested.  Absent this description a best effort search and production was carried out. Please find enclosed.

On January 1, 2022 ("Request No. 4"), you requested:

> [4] The document containing the statistics Paul Shea read into the record at the December 8, 2021 infrastructure meeting.

Please find enclosed.

On January 1, 2022 ("Request No. 5"), you requested:

> [5] Electronic copies of inspectable copies of the surveys collected from the parking study. I am requesting that these not be withheld until the final report because the company hired to perform the parking study indicated that many surveys had negative comments about the barriers.

==This request should be directed to Desman Design Management.==

On January 1, 2022 ("Request No. 6"), you requested:

> [6] The document (scope of work) requesting that the office of Economic Development conduct a downtown survey on barrier usage. If there are multiple surveys Economic Development has conducted, for clarification, I am looking for the survey(s) used to justify the continued use of downtown barriers.

No such record exists.

On January 1, 2022 ("Request No. 7"), you requested:

> [7] Electronic or inspectable copies of all barrier survey records obtained or notes (considered in their final form) gathered by Economic Development. I am specifically interested in the names of the businesses surveyed.

No such record exists.

On January 1, 2022 ("Request No. 8"), you requested:

> [8] Any communications, emails or letters regarding barriers or the parking study from Economic Development, Tim Cummings or his staff. The timeframe for this search will be the date the request or scope of work was given to Economic development to conduct the

survey. The end date will be December 31, 2021. If there was no document authorizing Economic Development to conduct the survey, please start the document search from March 1, 2021 to December 31, 2021.

Please find enclosed.

On January 1, 2022 ("Request No. 9"), you requested:

[9] Any report produced regarding the barrier survey statistics gathered by Economic Development.

Please find enclosed.

On January 1, 2022 ("Request No. 10"), you requested:

[10] All communications sent in by citizens regarding barriers. These are to include communications to City departments or divisions and communications that were not included in the Board of Aldermen public Board packet. The timeframe for this search will be March 1, 2021 to December 31, 2021. Please include any response emails sent to Jim Donchess or City Hall in response to the Jim Donchess email sent out December 7, 2021 encouraging citizens to attend the December 8, 2021 infrastructure meeting in support or maintaining the barriers downtown.

Please find enclosed, but does not represent *"any documents any response emails sent to Jim Donchess or City Hall in response to the Jim Donchess email sent out December 7, 2021 encouraging citizens to attend the December 8, 2021 infrastructure meeting in support or maintaining the barriers downtown."* This request should be directed to the Mayor's office.

On January 3, 2022 ("Request No. 11"), you requested:

[11] Please provide any text messages from or to Mr. Shea regarding barriers. Ms. Shea remotely attended the last parking meeting held in November or December. Please provide any text communications regarding barriers from November 1, 2021 to December 31, 2021.

Please find enclosed.

On January 3, 2022 ("Request No. 12"), you requested:

[12] Please provide any text messages to or from Mr. Cummings regarding barriers. Mr Cummings attended, in person, the December 8th infrastructure meeting and was seen texting and using his phone while speaking with the Infrastructure Committee members at the Board table. Please provide all text messages received and transmitted while participating in this Board meeting. Additionally, please provide all barrier text messages from November 1, 2021 to December 31, 2021.

Please find enclosed.

Your communication on January 5, 2022 stated the following:

> "I would like the email records search to include all employees of GAD, Paul Shea, Jennifer Annand, and Kathleen Palmer."

Your request for "email records" for "all employees" (presumably related to the barrier issue) is overly broad and does not reasonably describe a government record. This request should be directed to Great American Downtown ("GAD"). The City cannot respond further until a clearer, specific request for information is made. At that time, I will consider your request in accordance with RSA chapter 91-A.

By receipt of this letter, I have responded to your requests of January 1, 3, and 5, 2022. I am attaching hereto your email communications. The offer to meet with and present to the Board of Alderman and/or PEDC stands.

Very Truly Yours,

*[signature]*

Tim Cummings
Director of Economic Development

Enclosure

# NASHUA POLICE DEPARTMENT



Chief of Police Michael Carignan
Main Phone: (603) 594-3500
Website: www.nashuapd.com

28 Officer James Roche Drive
Mailing Address: PO Box 785
Nashua, NH 03061-0785

February 11, 2022

To: Laurie Ortolano
41 Berkeley St.
Nashua, NH 03064

*Via email only to laurieortolano@gmail.com*

RE: RTK request received February 10, 2022

Mrs. Ortolano,

The Nashua Police Department is in receipt of your request (by email) dated February 10, 2022, under NH RSA 91-A, the "Right-to-Know" law.

Your request stated in part:

**[1] A complete copy of the investigative file of any Nashua Police Department activity concerning Laurie Ortolano impersonating a city employee when speaking with a city vendor. Ms. Kleiner announced in a February 8, 2022 public Board of Alderman meeting that this matter was referred to the Nashua Police Department for investigation.**

**Please include all body cam, phone logs, reports and audio video files of interviews conducted for this investigation.**

The Nashua Police Department understands your request to pertain to you recently speaking with Inception Technologies, INC. In response, the case number related to the incident is 22-7435-OF. Please find attached call log 22-7435, incident report 22-7435-OF to include emails and audio recording of your message to Inception Technologies, Inc. There are no responsive documents for Body Cam recordings, phone logs or audio video files of interviews that were conducted. Pursuant to NH RSA 91-A:5. IV, redactions to the incident report involve personal contact and identifying information.

In the event that you have any questions, please email me at lavoied@nashuapd.com.

Sincerely,

*David P. Lavoie*

David P. Lavoie
Records Manager

CC: Deputy Chief Kevin Rourke
Nicole Clay, Right to Know Coordinator

---

CALEA Nationally Accredited Law Enforcement Agency

1

Nashua Police Department
Call Number    Printed: 02/10/2022

**For Date: 02/09/2022 - Wednesday**

| Call Number | Time | Call Reason | Action | Priority | Duplicate |
|---|---|---|---|---|---|
| 22-7435 | 1345 | Other - POLICE INFORMATION | REPORT MADE | 3 | |

    Call Taker:  GOOROB - GOODWIN JR, ROBERT
    Primary Id:  GOOROB - GOODWIN JR, ROBERT
Location/Address: [NAS 764] CITY HALL - 229 MAIN ST
  Refer To Incident: 22-7435-OF



```
                      Nashua Police Department                    Page: 1
                           Incident Report                        02/10/2022

             Incident #: 22-7435-OF
                 Call #: 22-7435
```

Date/Time Reported: 02/09/2022 1345
Report Date/Time: 02/09/2022 1346
Occurred Between: 01/01/2022 1200-02/09/2022 1200
Status: No Crime Involved

Reporting Officer: SERGEANT ROBERT GOODWIN JR
Approving Officer: LIEUTENANT SCOTT HUDON

Signature: _____

Signature: _____

| # | EVENTS(S) | | | | | |
|---|---|---|---|---|---|---|

LOCATION TYPE: Government/Public Building    Zone: Sector 4
CITY HALL
229 MAIN ST
NASHUA NH 03060

1  Police Information

| # | PERSON(S) | PERSON TYPE | SEX RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | KLEINER, KIMBERLY | OTHER | | 53 | | |
|   | DOB: | | | | | |
|   | EMPLOYER: | | | | | |
| 2 | ORTOLANO, LAURIE A | OTHER | | 59 | NOT AVAIL | |
|   | DOB: | | | | | |
|   | EMPLOYER: | | | | | |
| 3 | FEOLI, RAYMOND | WITNESS | | 00 | NOT AVAIL | |
|   | DOB: NOT AVAIL | | | | | |
|   | EMPLOYER: | | | | | |

| Attachments for 22-7435-OF | |
|---|---|
| Description | Type |
| VOICE MESSAGE | WAV |
| Attachment#: A13A3966E55140C2A1B58825A0940B9D | |
| EMAILS | PDF |
| Attachment#: D376025C1701471FA37CA1370B3FE385 | |

** Portions of this report have been redacted **

3

On Wednesday February 9, 2022 at approximately 9:00am I was made aware of this incident by Detective Captain Allard. I was told that it was being alleged that Laurie Ortolano had contacted a document scanning company being used by the City of Nashua and she portrayed herself to be an employee of the City of Nashua. I was provided two emails, one including a voice message and one including an email, between Raymond Feoli and Kim Kleiner. Both of the emails and the voice message were attached to the case. I reviewed the email and made myself familiar with the information. It should be noted that Laurie Ortolano is a citizen of Nashua, Kim Kleiner is the Director of Administrative Services for the City of Nashua and Raymond Feoli is the President of Inception Technologies, the document scanning company being used by the City of Nashua.

I called Feoli at 603-703-0223 and asked if he was free to talk in person about this incident and he agreed. Detective Sgt. Nicole Hannigan and I then responded to Inception Technologies, 77 Sundial Ave 403W, Manchester, NH, and spoke with Feoli in person. I showed Feoli a copy of the email from him to the Board of Alderman and he confirmed that was from him. I specifically asked Feoli if at any point Ortolano purported to be an employee of the City of Nashua or anything similar and he stated no. Feoli advised that because Ortolano had so much information on this subject he assumed she was an employee but she never stated that she was. I asked Feoli if Ortolano was asking about any type of private or secure information and he stated no. Feoli explained Ortolano was asking about the progress of the job and when it would be ready. Feoli advised that he received another email from Ortolano late last evening which was originally sent earlier in the morning but he did not receive the first one. Feoli sent me the email and also printed me out a copy which was attached to the case. This ended my contact with Feoli.

After speaking with Feoli, no crimes have been committed and this report is being completed for informational purposes.

Nothing further.

Sgt. Robert Goodwin

4

## Goodwin, Robert

**From:** Allard, Craig
**Sent:** Wednesday, February 9, 2022 9:26 AM
**To:** Goodwin, Robert
**Subject:** FW: Voice message from ORTOLANO LAURIE (6039302853) to 6037030233
**Attachments:** message.wav


Captain Craig Allard
Nashua Police Department
Detective Bureau Commander
Phone: 603-594-3550
allardc@nashuapd.com

**From:** Rourke, Kevin <RourkeK@nashuapd.com>
**Sent:** Monday, February 7, 2022 3:51 PM
**To:** Testaverde, James <TestaverdeJ@nashuapd.com>; Fay, Joseph <FayJ@nashuapd.com>; Allard, Craig <AllardC@nashuapd.com>
**Subject:** FW: Voice message from ORTOLANO LAURIE (6039302853) to 6037030233


**From:** Kleiner, Kimberly <kleinerk@nashuanh.gov>
**Sent:** Monday, February 7, 2022 3:34 PM
**To:** Rourke, Kevin <RourkeK@nashuapd.com>
**Subject:** Fwd: Voice message from ORTOLANO LAURIE (6039302853) to 6037030233


****CAUTION**** this e-mail was received from outside of our organization. Do not click links or open attachments if the source is unknown to you. (npd905)


Kim Kleiner
Director of Administrative Services
Administrative Services Division
Kleinerk@nashuanh.gov
603-589-3025


Begin forwarded message:

> **From:** Raymond Feoli <rfeoli@inceptiontech.com>
> **Date:** February 4, 2022 at 9:53:26 PM EST
> **To:** "Kleiner, Kimberly" <kleinerk@nashuanh.gov>
> **Subject: Fwd: Voice message from ORTOLANO LAURIE (6039302853) to 6037030233**

1

5

**CAUTION:** This email came from outside of the organization. Do not click links/open attachments if source is unknown.

Kim

this is the voicemail i got from her today.
Ray

Sent from my iPhone

Begin forwarded message:

> From: "tel: 6039302853" <non-mail-user@vweb.bayring.com>
> Date: February 4, 2022 at 11:49:28 AM EST
> To: Service <6037030233@vweb.bayring.com>
> Subject: Fwd: Voice message from ORTOLANO LAURIE (6039302853) to 6037030233
>
>
> The attached message was recently left in your voicemail account for 6037030233. We are sending you this email because you have asked for your messages to be forwarded to this address.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

## Goodwin, Robert

**From:** Allard, Craig
**Sent:** Wednesday, February 9, 2022 9:27 AM
**To:** Goodwin, Robert
**Subject:** FW: Laura Ortolano

Captain Craig Allard
Nashua Police Department
Detective Bureau Commander
Phone: 603-594-3550
allardc@nashuapd.com

From: Rourke, Kevin <RourkeK@nashuapd.com>
Sent: Monday, February 7, 2022 3:51 PM
To: Fay, Joseph <FayJ@nashuapd.com>; Testaverde, James <TestaverdeJ@nashuapd.com>; Allard, Craig <AllardC@nashuapd.com>
Subject: FW: Laura Ortolano

From: Kleiner, Kimberly <kleinerk@nashuanh.gov>
Sent: Monday, February 7, 2022 3:33 PM
To: Rourke, Kevin <RourkeK@nashuapd.com>
Subject: Fwd: Laura Ortolano

****CAUTION**** this e-mail was received from outside of our organization. Do not click links or open attachments if the source is unknown to you. (npd905)

Kim Kleiner
Director of Administrative Services
Administrative Services Division
Kleinerk@nashuanh.gov
603-589-3025

Begin forwarded message:

> From: Raymond Feoli <rfeoli@inceptiontech.com>
> Date: February 6, 2022 at 9:36:20 AM EST
> To: "Kleiner, Kimberly" <kleinerk@nashuanh.gov>
> Subject: Laura Ortolano

1

7

**CAUTION:** This email came from outside of the organization. Do not click links/open attachments if source is unknown.

To the Board of Alderman,

My name is Raymond Feoli, President of Inception Technologies. My company has provided the City with document scanning services for the Assessors records. I am writing to the Board after having conversation with Kim Kleiner today. It has come to my attention that I have been deceived by individual, Laura Ortolano, who portrayed herself as city employee to me on thre different occasions.

My first conversation was approximately a month ago. Ms. Ortolano called my company and had left a voicemail asking for an update on the project regarding the PO Number 158909. I promptly returned her phone call thinking she was a city employee. She explained that based on the invoices the City had there was approximately $22K left on the existing PO. I had explained to her that had just finished a batch and was billing another $12K against the PO. She had also asked about when documents were going to be returned and I told her that we were scheduled to drop off a batch and pick up another batch. During that conversation, she had mentioned that she would make sure payment was expedited on any open invoices. I told her we just sent the invoice so it was no hurry on that.

This past Friday I received a voicemail from Ms. Ortolano which I forwarded to Kim Kleiner after speaking with Ms. Ortolano and finding out about this person from Kim. I called her back thinking she was with the city and we had just invoiced another batch. Getting close to the original PO amount, I thought she was just syncing up with my company to make sure we were on track with the PO and boxes. She asked several questions about accessing the documents and the public having access to those records. She explained that while my company had the documents, she stated "we don't have access to those files. When can we get those files back?" I corrected her and said well you may not have access to the physical records, what we have scanned was searchable and could be emailed or printed by finding the records in the DocuWare system. I said to her thinking she was an employee "I don't know if a login has been created for you or if you are able to have access to those records in the assessors database, but if you don't, then someone in the assessors department could provide those files." I went on to explain that we had picked up a batch of approximately 80 boxes and due to the remainder on the PO, we had broken that big batch into smaller batches to avoid exceeding the original PO amount. I did mention that I had just quoted the City on the remainder of the boxes. She thanked me ended the conversation.

She called back a little while later on my cell phone. During this conversation she asked me about the files left to scan. I had explained that I did 2 quotes for the Assessors department. One quote was for the boxes we had sitting in our warehouse that would most likely not fit under the existing PO. That was approximately 55 boxes. I then mentioned that I had donea separate quote for 98 boxes that the department has ready to go once the approval or PO was cut. She passed a comment implying that she was going to help push that along and would let me know when she sees it. I said thank you and we hung up the phone.

Its important to note that any document scanning project is an estimate on the volumes of paper. When we originally did the inspection with Bruce Codagone, we estimated that the City had approximately 1.2 million pages which we felt was a conservative estimate. The thought was to scan the entire set of records over a couple of budget years and show the value the city was going to get from the system. So when we quoted it both Bruce and Inception was aware that we had not accounted for the entire set of records in the initial proposal.

I would be happy to meet with the Board and answer any questions you may have regarding my conversations with Ms. Ortolano or the project itself. Please let me know if there is anything else I can do to assist you further. Thank you.

Sincerely,

Raymond Feoli
President
Inception Technologies Inc.
www.inceptiontech.com
603-703-0223 direct
508-801-3279 cell

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Goodwin, Robert**

| | |
|---|---|
| **From:** | Raymond Feoli <rfeoli@inceptiontech.com> |
| **Sent:** | Wednesday, February 9, 2022 10:25 AM |
| **To:** | Goodwin, Robert |
| **Subject:** | FW: Nashua Property record File possibly in your possession |

****CAUTION**** this e-mail was received from outside of our organization. Do not click links or open attachments if the source is unknown to you. (npd905)

Sincerely,

**Raymond Feoli**
**Inception Technologies Inc.**
**President**
**603-703-0223 direct**
**508-801-3279 cell**
www.inceptiontech.com

**From:** Laurie Ortolano <laurieortolano@gmail.com>
**Sent:** Tuesday, February 8, 2022 11:17 PM
**To:** Raymond Feoli <rfeoli@inceptiontech.com>
**Cc:** Kleiner, Kimberly <kleinerK@nashuanh.gov>; Mayor Jim Donchess <nashuamayor@nashuanh.gov>; Board of Aldermen <BOA@nashuanh.gov>
**Subject:** Nashua Property record File possibly in your possession

Good Evening Ray,

Below is an email I sent this morning regarding searching for a property record file that I am trying to access. I sent this email to rayfielo@inceptiontech.com. I found it through an internet research. As you can see, I don't have a city email address. I provided you with a personal email, not city job title, and a personal cell phone number.

I received a copy of a letter Ms. Kleiner gave to our Board of Aldermen this evening and I realized I sent my request to the wrong address.

Just to be clear, I am a citizen and I asked for the file because the city has not responded to a request for this information. I spoke with you to let you know that citizens do not have access to the docuware cloud based uploaded files you are sending to Kim Kleiner. Thanks to speaking with you, I learned this is how you are providing the data to the City. I spoke with you a couple months ago, and you provided a helpful explanation on where you were in the process of scanning records. I had those questions because I was reviewing City payments to your company and I was trying to figure out when the job would be completed. The conversation was most helpful.

1

10

I called you because citizens have not had an update on the work you are doing for a very long time and all of our public data is under your control. Our property record files are considered open public data available for daily inspection. So, it is a real hardship to have the information not accessible to us.

You said you still have the boxes down at your company, and if they are not returned, citizens cannot access these files. So, getting the files back to the city is important to me.

Below is the email I sent this morning, I am looking for the property record file listed in the email. I hope you are still willing to assist and let me know if the file is in your possession.

The City has encouraged citizens to contact vendors directly to get information on our records. So, this is what I chose to do.

I did tell you, on or about last Friday, that I was going to follow up on the quote you provided to the City to complete the job. I wrote to the City (Ms. Kleiner) on Friday, told her I spoke with you and put in a Right to know request to get the quotes you sent in. I do not know the date of this(ese) quote you generated, but nothing has been sent to the Board of Aldermen or the budget committee for approval. I wanted to track the expediency of this process because the longer it takes you to complete the job, the longer citizens are left without our records.

Ms. Kleiner did provide the Board tonight with some information on the process. Unfortunately, I believe I live in City where transparency is lacking. I have to do a lot of digging and questioning to figure out what is going on.

I would be very appreciative if you would check the files and tell me if the property record file listed below is in your possession.

Have a good evening and feel free to contact me if you have any questions

Laurie Ortolano
603-930-2853

---

**Laurie Ortolano <laurieortolano@gmail.com>**

to rayfield



Good Morning Ray,

I am looking for the property record file with account # 23634 and sheet and lot number 0081-00003. The Property address is 78-84 West Pearl St.

Do you have this file down there to scan and/or was it uploaded into the cloud in the batch delivered back a few weeks ago?

Thanks for your help,

Laurie Ortolano
603-930-285

2

11

## **CERTIFICATE OF SERVICE**

     I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically forthwith to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                             */s/ Kurt S. Olson*
                                             Kurt S. Olson