UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano | :<br>:<br>: |
| v. | : Civil Action No. 22-cv-00326-LM |
| The City of Nashua, et al. | :<br>:<br>: |

**DEFENDANT CARIGNAN'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

By Complaint dated August 23, 2022, Plaintiff initiated the instant matter against the City of Nashua, its Mayor, and several of its current and former employees, including Michael Carignan, Nashua's Chief of Police through December 31, 2021. *See* Complaint [Doc. 1]; Answer of Carignan [Doc. No. 23] ¶9. The Complaint, spanning 65 pages and nearly 200 paragraphs, asserts that the various Defendants violated her federal and state constitutional rights and generally conspired against her to deprive her of "her lawfully provided rights to obtain access to public records and government proceedings because they were offended by her criticism of some of them." Complaint ¶173.

Whatever the merits of Plaintiff's claim against the other Defendants – and moving Defendant does not suggest that there are any – the claim fails to state a claim against Chief Carignan as it fails to adequately assert a conspiracy or to assert any acts by him in furtherance thereof. In fact, Plaintiff barely makes any allegations against the Chief at all, asserting only that: (1) he was the Chief of Police; (2) in 2019 he met with the Mayor and Defendant Kleiner before the police commenced an investigation into the Assessing Department; and (3) the Chief ordered her arrest for trespass in 2021 – a charge to which she pled guilty. These allegations are insufficient

to support any of the claims against the Chief.  Indeed, several of the Counts lack a sufficient factual or legal basis to state a claim against <u>any</u> Defendant.  As such, Chief Carignan is entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## STATEMENT OF FACTS[1]

Plaintiff asserts that in <u>2014</u>, shortly after purchasing a home in Nashua, assessors with the City's Assessing Department increased her home's assessment by more than 50%.  Complaint ¶15.  By July 2017, Plaintiff alleges that her tax bill exceeded $18,000 a year.  Complaint ¶17.  At that time, Plaintiff alleges that she called Defendant the City's then Chief Assessor, Mr. Duhamel, in search of an explanation for her increasing tax bills.  Complaint ¶18.  She claims that Mr. Duhamel was defensive and ended the phone call by tersely stating "you bought it; you own it; you pay for it."  *Id.*  She claims that due to such early exchanges Duhamel actively sought to prevent her from obtaining public documents and information from the Assessing Department.  Complaint ¶20.  She further alleges that <u>Duhamel</u> "would even launch a behind the scenes campaign to impugn [her] character and cause other City employees and officials to treat her unfavorably."  *Id*.

This "campaign," she states, began after the July 2017 phone call and resulted in Duhamel and other employees exchanging emails disparaging her.  Complaint ¶¶22-23.  Plaintiff does not claim that Chief Carignan was one of them.  *See, e.g.*, Complaint ¶32 (providing excerpts of alleged emails, none of which include the Chief).  She contends that by late 2018 "Duhamel, Kleiner, Bolton, Leonard, and the Mayor were taking her public criticisms personally and had started treating her differently than other citizens when she sought public documents and information from City Hall."  Complaint ¶39.  Again, the Chief is not named amongst the allegedly offended persons.

---

[1] By reciting Plaintiff's allegations as required under a Rule 12(c) motion, Defendant in no way intends to imply agreement therewith.

Indeed, the Chief is not even mentioned (other than being named as a Defendant in Paragraph 9) in the first 60 paragraphs of the Complaint.

*Allegations Specific to the Chief*

When the Plaintiff does finally name the Chief, the allegations are limited and unavailing. At Paragraph 62 of the Complaint, Plaintiff alleges that in "late June 2019" she and another Nashua resident went to the Nashua Police Department and requested that a criminal investigation be conducted into the Assessing Department, one of its employees (Greg Turgiss), and its new supervisor, Kim Kleiner. Complaint ¶62. *See also* Complaint ¶49 (asserting that Kleiner was placed in charge of Assessing Department in March 2019). She states that "within 24 hours" of that request (thus not later than July 1, 2019), the Chief and Captain Lehto met with the Mayor and Kleiner "to discuss how to handle [Plaintiff's] claims." Complaint ¶63. She complains that Kleiner was present even though she was "one of the subjects of the complaint" but concedes that at the undefined "Mayor's group"[2] determined that the NPD would investigate both Turgiss and Kleiner – just as she had requested. *Id.*

Moreover, Plaintiff concedes that the NPD did, in fact, conduct an investigation. *See* Complaint ¶64 (complaining that she was not informed of investigation until two weeks after it commenced). Indeed, she acknowledges that Det. Frank Lombardi interviewed members of the Assessing Department as well as an employee from KRT Appraisal that was working with the City on the 2018 property reevaluation. Complaint ¶76. Plaintiff's real grievance, it seems, is that Det. Lombardi's investigation did not result in criminal charges against Turgiss or Kleiner, a result she

---

[2]  Although the "Mayor's group" is not defined, it clearly did not include the Chief. *See* Complaint ¶64 (claiming that "Mayor's group" decided to commence investigation at a meeting with Chief and Capt. Lehto present).

3

claims of the detective being "manipulated" by Kleiner. *See* Complaint ¶¶90-91.[3]

Plaintiff complains that the Department later "stonewalled her" in responding to her requests for information under RSA 91-A relating to the investigation. Complaint ¶88. She concedes, however, that Det. Lombardi merely responded that he could not provide any documents while the investigation was ongoing. Complaint ¶89. That, of course, is consistent with the statute. *See Murray v. State Police*, 154 N.H. 579 (2022) (exempting investigative records from disclosure under RSA 91-A). She further concedes that after the investigation concluded the Department provided her with police narratives except for videos and transcripts of witness interviews. Complaint ¶94. Thereafter, she states the "Legal Department" - not the police - "got involved" and impeded her efforts. Complaint ¶94, 95. Plaintiff does not allege that the Chief had any role in the 91-A responses.

*2021 Trespass Charges*

At paragraphs 107-112, Plaintiff recounts her version of her arrest in early 2021 for trespass. Although she tries to rationalize her conduct, between such efforts her actions are clear: On January 2, 2021, she went to the Legal Department at City Hall. Complaint ¶¶107-08. An attorney there told her to leave. Complaint ¶109. Instead, she "sat down in the lobby area on the floor." *Id*. She remained there until another attorney – Defendant Leonard – approached her. Complaint ¶110. Plaintiff continued to refuse to leave even after Attorney Leonard called the

---

[3] During the investigation Plaintiff approached one Assessing Department employee in the City Hall parking lot. *See* Complaint ¶70. Detective Lombardi subsequently advised her that the Assessing Department staff had requested that she not contact them outside of work. Complaint ¶82. Plaintiff claims that after Lombardi's warning she "came to believe that she could be arrested merely be attempting to speak to one of the Assessing Department staff members outside the Assessing Department office." Complaint ¶83. She says that this belief "chill[ed] her ability to engage in First Amendment rights while interacting with City employees." Complaint ¶84. She does not claim that the Chief had any role in that action or, indeed, any aspect of the investigation.

police, who had to escort her out of the building. *Id*. Plaintiff says that the police initially declined to charge her for trespass, but that city officials "cajoled, pushed, and pressured Chief Carignan to order that Ortolano be arrested for *felony trespass* until he finally caved and did so on February 17, 2021." Complaint ¶¶111-12 (emphasis in original).

Although Plaintiff claims – even emphasizes - in her Complaint that she was charged with a <u>felony</u>, the actual charge was a misdemeanor. *See State v. Ortolano*, Doc. No 459-2021-CR-00606 (9th Cir. Court – District Division – Nashua). Plaintiff ultimately pled guilty to a violation offence. *See id*. *See also* Plaintiff's Memorandum of Law in Support of Objection to Motion to Dismiss [Doc. No. 33-1] at p.9 (admitting that she was "told she would have to leave" and that instead she "sat down in the lobby area on the floor") and p.9 n.1 (discussing plea and effort to annul same).[4]

*2022 Allegations*

The Chief retired effective December 31, 2021. *See* Carignan Answer ¶9; City Answer ¶9. Thereafter, Plaintiff contends generally that "defendants and their agents" continued to try to get Plaintiff arrested. Complaint ¶117. These efforts are alleged to have included Kleiner threatening to call (but not actually calling) the police on February 3, 2022, Complaint ¶119,[5] and on July 22, 2022, Kleiner calling Deputy Chief Joseph Fay asking for a police presence at City Hall. Complaint ¶126. On the latter occasion, Plaintiff claims that Defendant Bolton told her that he could "have her arrested." Complaint ¶131. She acknowledges, however, that the police investigated the matter – including observing security footage – and did not arrest her. *Id*. *See*

---

[4]   The Court may rely on public records to decide a Rule 12 motion without converting it into a Motion for Summary Judgment.
[5]   Plaintiff acknowledges that she herself called the police instead, hardly the sign of a person intimidated by the police. Complaint ¶119.

5

*also* Complaint ¶137 ("After conducting a full investigation" the investigating officer concluded that no crime was committed). Plaintiff does not (and could not) name the Chief in those allegations or specify any conduct by him in 2022.

## STANDARD OF REVIEW

Judgment on the pleadings is appropriate where, based on the facts alleged, the Complaint fails to state a claim upon which relief may be granted. *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005). While the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences in his favor, *Zipperer v. Raytheon Co.*, 493 F.3d 50, 53 (1st Cir. 2007), *cert. denied*, 128 S. Ct. 1248 (2008), where it clearly appears that the plaintiff cannot recover on any viable theory, the court must dismiss the claim. *Gray v. Evercore Restructuring LLC*, 544 F.3d 320, 324 (1st Cir. 2008); *Pomerleau v. West Springfield Public School*, 362 F.3d. 143, 145 (1st Cir. 2004) (citing *Correa-Martinez v. Arrillaga-Belendez*, 903 F.3d. 49, 52 (1st Cir. 1990)).

This standard is the same as that for deciding a Rule 12(b)(6) motion). *Pasdon*, 417 F.3d at 226. Thus, as on Rule 12(b)(6) motion, in determining plausibility, the Court must engage in "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 79 (2009)). While the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff's] favor," the Court need "credit neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) and *SEC v.*

6

*Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).   Indeed, a court cannot accept a plaintiff's allegations as true if they are but "threadbare recitals of a cause of action elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 677-78.

## ARGUMENT

In the 198 paragraph Complaint, Plaintiff makes just three allegations specific to Chief Carignan. First, that he was Chief of Police. Complaint ¶9. Second, that he met with Mayor and Kleiner no later than July 1, 2019, after which the "Mayor's group" approved a police investigation into the Assessing Department and Kleiner. Complaint ¶63 64. Third, that after being "pushed, pressured and cajoled," she (falsely) alleges that the Chief ordered her arrest for "felony" trespass in February 2021. Complaint ¶112. These three allegations – even taken as true, simply fail to make out any cognizable claim against the Chief.

### I.   COUNTS I & II: FIRST AMENDMENT CLAIMS.

By Counts I and II of the Complaint, Plaintiff alleges that the various Defendants "chilled" her right to free speech and "violated" her right to petition, respectively, in violation of the First Amendment. To prevail such a claim, Plaintiff must establish that: "(1) [she] had a First Amendment right; (2) [Defendants] took an adverse action against [her]; (3) with the intent to retaliate against [her]; and (4) the retaliatory act caused the injury for which [she is] seeking compensation." *Reid v. Brodeur*, 2001 DNH 032 (Feb. 15, 2001) at 16-17 (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). When such claims arise from criticism of public officials by private citizens, courts will examine whether a defendant's alleged wrongful conduct was "motivated or substantially caused by the plaintiff's exercise of free speech." *Gill v. Pidlypchak*, 732 F.3d 157, 159 (2d Cir. 2004). As for the injury element, a plaintiff must show that the defendant's alleged retaliation chilled the plaintiff's free speech or caused some other

7

concrete harm to the plaintiff. *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). *See also Currier v. Town of Gilmanton*, 2022 DNH 098 at 41. Plaintiff cannot satisfy this burden.

As set forth above, the only acts the Chief is alleged to have taken are to: (1) initiate an investigation into the Assessing Department that Plaintiff herself requested; and (2) order her arrest for trespassing. Plaintiff does not indicate how the former could have implicated her First Amendment rights and the second, while undoubtedly of concern to Plaintiff, was entirely lawful, as evidenced by Plaintiff's plea and her concession in the Complaint that she committed the acts supporting her arrest. As such, her First Amendment claims cannot be sustained against the Chief.

## II. COUNTS III & IV: DUE PROCESS CLAIMS.

By Counts III and IV of the Complaint, Plaintiff alleges that the Defendants violated her Substantive and Procedural Due Process rights, respectively. Neither claim survives even cursory scrutiny.

As repeatedly noted by this Court, "the hallmark of successful [Substantive Due Process] challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Kiernan v. Hudson*, 2015 DNH 18 at p.7 (quoting *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010)). Substantive due process cannot be successfully invoked simply because simply because someone "cloaked in statutory authority causes harm." *Id.* at pp. 7-8 (citing *Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). Even "despicable and wrongful" conduct is insufficient to carry such a claim. *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991) (repeated threats to kill plaintiff and further threat to children that they would never see their father again failed to state a claim under substantive due process clause).

The First Circuit catalogued the behaviors that meet the high threshold for such claims in a passage oft cited by this Court:

> Among the cases in which plaintiffs have prevailed [on substantive due process claims] are those involving a student blinded in one eye when a coach intentionally struck him in the head with a metal weight; a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years; rape by a police officer in connection with a car stop; a 57–day unlawful detention in the face of repeated requests for release; police officers aiding a third-party in shooting the plaintiff; an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him; and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her.

*Cummings v. McIntire*, 271 F.3d 341, 346 (1st Cir. 2001) (quoted in *Spencer v. Doran*, 2020 DNH 147, at p.15, among others).

The allegations by the Plaintiff come nowhere close to meeting this standard as to any Defendant. There are no allegations, for example, that Plaintiff was physically injured or illegally detained (at all, much less for weeks). At most, she claims that Det. Lombardi (not the Chief) told her that she could be arrested if she continued to contact Assessing Department employees outside of City Hall, depending on the circumstances (as statement the is unequivocally true even is rather vague), that she was arrested for actions to which she pled guilty, and that other Defendants unsuccessfully sought to have her arrested thereafter. If the allegations of *Pittsley* were insufficient to state a claim for a violation of Substantive Due Process, these claims surely are. *See also Cruz-Erazo v. Rivera-Montanez*, 212 F.2d 617 (1st Cir.2000) (occupying plaintiff's home and using false testimony to fabricate charges against plaintiff insufficient to support Substantive Due Process claim); *Spencer v. Doran*, 2020 DNH 147 (deliberate misuse of official authority through verbal bullying, false claims, and false reporting to harass, intimidate, and cause economic and reputational harm to plaintiffs failed to state substantive due process claim). The case against the Chief is weaker still. The Chief is alleged only to have: (1) been the Chief; (2) met with the Mayor

9

and Kleiner before an investigation began; and (3) ordered her arrest for an act she would later plead guilty to. Thus, the claim against him individually must be dismissed.

Plaintiff fares no better on her Procedural Due Process claim against the Chief (or any Defendant). "In order to properly plead a procedural due process violation, a plaintiff must allege: (1) a protected liberty or property interest; and (2) that the defendants, while acting under color of state law, deprived him of that interest without constitutionally adequate process." *Spencer*, 2020 DNH 147 at p.20 (citing *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014)). Nowhere does Plaintiff identify a specific property or liberty interest as to which she was deprived, much less does she specify any procedural process that was lacking. As this Court observed in *Spencer*:

> plaintiffs must at least describe the process afforded to them in relation to the alleged deprivation, *see Aponte-Torres v. Univ. Of Puerto Rico*, 445 F.3d 50, 56 (1st Cir. 2006), and identify the failings of that process or describe the process that was due to them, *see Doe by Fein v. D.C.*, 93 F.3d 861, 870 (D.C. Cir. 1996), so that the court can assess whether the process given accords with the due process guarantee.

2020 DNH 147 at 22. Plaintiff's failure to do so mandates dismissal of this claim.

### III. COUNT V: CLAIM UNDER NEW HAMPSHIRE CONSTITUTION.

By Count V of the Complaint, Plaintiff alleges that the Defendants violated a purported state constitutional right to "access to governmental proceedings and records." Complaint ¶167. It is doubtful that this Court is the proper forum for such a claim. *See Currier v. Town of Gilmanton*, 2022 DNH 098 at p.51 (noting that federal court is not proper forum to determine whether state constitutional tort exists). As this Court has noted, however, state constitutional provisions are not generally enforceable through claims for damages. *Id*. (quoting *Ali v. NNH Corr. Facility*, No 12-CV-364-SM (DNH July 3, 2013)). In *Rockhouse Mountain Property Owners Assoc. v. Town of Conway*, 127 N.H. 593, 598 (1986), for example, the New Hampshire Supreme Court rejected a

10

state constitutional claim where existing statutory law provided plaintiff an adequate remedy. Here, RSA 93-A already provides such a remedy – one Plaintiff acknowledges that she has utilized. *See* Complaint ¶¶ 67-69, 124 (partially recounting 91-A litigation). She cannot, therefore, sustain a separate state constitutional claim against Defendants. In any event, she has not alleged any conduct by the Chief that could support such a claim even if one were cognizable.

### IV.     COUNT VI: CIVIL CONSPIRACY CLAIM.

By Count VI of the Complaint, Plaintiff alleges that the Nashua Defendants "agreed with each other that they would work together to deprive [her] of her lawfully provided rights to obtain access to public records and government proceedings" and "accomplished one or more unlawful over acts for the purpose of so depriving [her] of her rights . . . ." Complaint ¶¶173-74. These generic statements largely echo the elements of a conspiracy claim. *See Drake v. Town of New Boston*, 2017 DNH 106 (June 6, 2017) at 3-4 ("Under New Hampshire law, the 'essential elements' of civil conspiracy are: (1) two or more persons; (2) an object to accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means, or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof") (citing *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987)). They are, however, insufficient to sustain her claim against the Chief.

To begin with, employees of the same organization acting within the scope of their employment cannot conspire. *Carney v. Weare*, 2017 DNH 031 at p.43. Here, each of the alleged conspirators was employed by the City and as such, no conspiracy claim can be brought against them.

Even if Plaintiff could somehow evade that bar to her claim, however, she has neither alleged a specific agreement by the Chief to act unlawfully nor any act in furtherance thereof. Plaintiff only alleges that the Chief met with the Mayor and Kleiner in mid-2019. She does not

11

assert that they made any agreement. Indeed, her allegations that city officials had to "cajole, pressure, and push" the Chief into taking action against her, belie such a claim. Complaint ¶ 112

In addition, neither of the Chief's purported acts could be considered improper acts in advance of this amorphous conspiracy. His first act appears to have been to inform the Mayor and Kleiner that the police would be conducting an investigation into the Assessing Department – an investigation that was not only proper but was requested by Plaintiff. After the meeting, she conceded the "Mayor's Group" agreed the investigation should proceed. Her 2021 arrest likewise cannot support her conspiracy claim. As set forth above, Plaintiff has admitted actions supporting that charge (refusing to leave the Legal Department Office after being instructed to do so) and she pleaded guilty to a related charge.

That leaves Plaintiff at best in the world of "threadbare recitals of a cause of action elements, supported by mere conclusory statements." Those are insufficient to sustain a conspiracy claim against this Defendant. *See Iqbal*, 556 U.S. at 677-78. As such, Plaintiff's Conspiracy claim against the Chief fails as a matter of law.

## V. COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

By Count X of the Complaint, Plaintiff alleges that various Defendants, including the Chief, committed the tort of Intentional Infliction of Emotional Distress. As this Court well knows, a plaintiff's burden on such claims is high. First, the plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mikell v. Sch. Admin. Unit No. 33*, 158 N.H. 723, 729 (2009). Second, the plaintiff must allege (and later demonstrate) "severe emotional distress." *Tessier v Rockefeller*, 162 N.H. 324, 341 (2011) (quoting *Morancy v. Morancy*, 134 N.H. 493, 496 (1991). This standard is unforgiving:

**The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.**

*Morancy*, 134 N.H. at 496 (quoting Restatement (Second) of Torts § 46 cmt. j) (emphasis added). *See generally Maynard v. Meggitt-USA*, 2015 DNH 076 at pp. 4-6 (recounting elements of claim and burden of proof).

It is doubtful that Plaintiff' Complaint includes sufficient allegations to satisfy either element of her claim against any Defendant. For example, nowhere does she allege any specific emotional distress, relying instead on generic claims of stress and a conclusory statement that she suffered "severe emotional distress." Complaint ¶197. As to the Chief, however, the Complaint is completely devoid of even a hint of "extreme and outrageous conduct." Even assuming he personally ordered that she be arrested in 2021, as Plaintiff claims, she admitted facts that established probable cause for the arrest and even pled guilty to a violation offense based thereon. She was never subsequently arrested. In short, the Complaint fails to state a viable claim for Intentional Infliction of Emotional Distress.

## CONCLUSION

Plaintiff's factual allegations fall far short of those required to sustain any claim against Chief Carignan and several of them likely fail as a matter of law as to any Defendant. As such, the Chief is entitled to Judgment on the Pleadings.

Respectfully submitted,

**MICHAEL CARIGNAN**

By his attorneys

CULLEN COLLIMORE SHIRLEY PLLC

Dated:  December 16, 2022          By: /s/ Brian J.S. Cullen
                                                      Brian J. S. Cullen (Bar No. 11265)
                                                      37 Technology Way, Suite 3W2
                                                      Nashua, NH  03060
                                                      (603) 881-5500
                                                      bcullen@cullencollimore.com

**CERTIFICATE OF SERVICE**

    I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated:  December 16, 2022          By: /s/ Brian J.S. Cullen
                                                      Brian J.S. Cullen