## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW HAMPSHIRE

_____

Laurie Ortolano,

                        Plaintiff

V.                                  Civil Action No. 22-cv-00326-LM

The City of Nashua, et al.,

                        Defendants

_____

### AFFIDAVIT OF PLAINTIFF LAURIE ORTOLANO OBJECTING TO THE MOTION OF DEFENDANT, INCEPTION TECHNOLOGIES, INC. AND RAYMOND FEOLI, TO DISMISS COUNTS EIGHT AND TEN OF THE PLAINTIFF'S VERIFIED COMPLAINT

I, Laurie Ortolano, do hereby depose and say as follows:

1.    I am the plaintiff in the above-captioned case and make this affidavit of my own personal knowledge.

2.    The primary purpose of this affidavit is to authenticate public documents that either I or my friend, Laura Colquhoun, obtained from various departments or agencies of the City of New Hampshire through Right to Know requests. Comparison of these documents to my Complaint in this action make clear that many of the allegations contained in the Complaint were based on the attached documents; indeed, nearly all of the quotations contained in the Complaint were taken from these and other public documents obtained through Right to Know requests. These documents are central to the claims made in my Complaint. Below, I identify each of these documents that are relevant to Plaintiff's Memorandum of Law Objecting to Defendant Michael Carignan's Motion for Judgment on the Pleadings.

3.      The other purpose of this affidavit is to correct a mistake I made in Paragraph 112 of the Complaint, which alleged that I was charged with "*felony trespass*" (emphasis in original) as a result of my attempt to get real estate tax abatement applications stamped in Corporation Counsel's office in City Hall on January 22, 2021. Until I read Attorney Cullen's papers filed in this action and in a matter involving the annulment of trespass charges brought against me, I sincerely believed that the Nashua Police had filed felony criminal trespass charges against me. I am not an attorney. After reading Attorney Cullen's papers, I inquired of the criminal attorney who represented me at the time and learned that New Hampshire law does not provide for any felony crime of trespass. It provides for "Trespass A," which is a misdemeanor crime, and "Trespass B," which is a noncriminal "violation." I was initially charged with "Trespass A," a misdemeanor crime. I pleaded to the "violation" of "Trespass B" in order to put the stressful matter behind me.

4.      Attached as Exhibit "A" is a true and accurate copy of the "Surveillance Report" produced by William Freyler of Freyler Investigations, LLC dated April 26, 2019. My attorney, Robert M. Fojo, delivered this report by mail to Mayor James Donchess on May 8, 2019. I also provided this Report, along with numerous other relevant documents, to the Nashua Police Department on June 25, 2019.

5.      Attached as Exhibit "B" is a true and accurate copy of surveillance notes I made in assisting in the surveillance of Turgiss by William Freyler of Freyler Investigations, LLC. My attorney, Robert M. Fojo, delivered this report by mail to Mayor James Donchess on May 8, 2019. I also provided this Report, along with numerous other relevant documents, to the Nashua Police Department on June 25, 2019.

6.    Attached as Exhibit "C" is a true and accurate copy of a letter from my attorney to Mayor Donchess dated May 8, 2019. The letter provides the Mayor with all the information obtained as a result of the Freyler surveillance.

7.    Attached as Exhibit "D" is a true and accurate copy of a letter from my attorney to Mayor Donchess dated July 8, 2019, asking the Mayor to widen the scope of the Turgiss investigation.

8.    Attached as Exhibit "E" is a true and accurate copy of a letter I sent to Deputy Chief Michael Carignan dated June 20, 2019, which explained the findings from the Freyler surveillance and asking the Police Department to initiate a criminal investigation into Turgiss and Defendant Kleiner.

9.    Attached as Exhibit "F" is a true and accurate copy of Captain Jon Lehto's police report regarding the meeting of Captain Lehto and Lieutenant Daniel Mederos with Laura Colquhoun and me on June 25, 2019. I obtained this report through a Right to Know request.

10.   Attached as Exhibit "G" is a true and accurate copy of the police reports and records regarding an investigation of Greg Turgiss for viewing child pornography on his workstation computer in the Assessing Department in October 2006. I obtained these documents through a Right to Know request.

11.   Attached as Exhibit "H" is a true and accurate copy of Captain's Lehto's police report documenting a meeting with Deputy Chief Carignan, Lehto, Mayor Donchess, and Director of Administrative Services Kleiner on June 26, 2016. I obtained this document through a Right to Know request.

12.   Attached as Exhibit "I" is a true and accurate copy of the Final Report regarding the investigation of Greg Turgiss and Kimberly Kleiner

prepared by Lieutenant Mederos, dated January 8, 2020. I obtained this document through a Right to Know request.

13.     Attached as Exhibit "J" is a true and accurate copy of the Nashua Police Department's response to Laura Coquhoun's Right to Know request for all trespass incidents at Nashua City Hall between January 1, 2014 and January 31, 2021. I obtained this document from Laura Coquhoun who obtained it through a Right to Know Request.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 30TH DAY OF DECEMBER 2022.

/s/ Laurie Ortolano
Laurie Ortolano

EXHIBIT "A"

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com

## Surveillance Report

**Date:** 4/26/19

**Client: Laurie Ortolano**
**Surveillance Target: Greg Turgiss, Nashua NH city employee in commercial assessing office.**
**Reason for Surveillance:  Suspected abuse of company time and mileage**

**Case Summary:**  On 3/26/19 I met with Laurie Ortolano to gather some information on Greg Turgiss.  Laurie wanted me to follow Greg during his work hours for the city of Nashua, NH as a commercial assessor.  Laurie suspects Greg is abusing mileage for work and disappearing for 3-4 hours at a time for non-work-related matters.  Laurie said she was a current resident in Nashua, NH and she first met Greg when he was a residential assessor.  Laurie said initially her house was assessed at two hundred thousand more than comparable properties in the area by Gary Turgiss, Greg's brother.  Laurie told me about Greg reviewing their house after the initial assessment and keeping it at one hundred and fifty thousand more than comparable properties.

Laurie then showed me a binder with residential property cards which Greg Turgiss had handled over the years, before becoming a commercial assessor.  The information provided by Laurie did not appear to make sense given the cost of upgrades performed versus the increase by the assessor's office, when compared to other property cards.  One property card I was shown belonged to the mayor of Nashua.  It appeared he had a significant upgrade performed, yet his property value only increased a very small amount compared to other property cards which had much smaller upgrades or none yet saw larger increase in their value.

While speaking with Laurie I noticed the binder of property cards she had was rather large and I asked her if all the cards in her binder, were properties Greg Turgiss had worked on and she said yes.  Laurie said she tried to bring the information to numerous departments in the city of Nashua, but no one in the city wanted to speak with her or acknowledge there is a serious issue.  Laurie told me she emailed with Human Resources who oversees Greg's department and she was told meeting with her (Laurie) would be a waste of time.

At this point Laurie stated she had exhausted all her efforts and the damage Greg already caused to the city of Nashua was irreversible and widespread.  Laurie told me the last thing she wants to do is bring any sort of suit

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com

against the city because she cares about its citizens and how they are treated. However, each chain of command she approached in Nashua turned her away.   Laurie said her only option left was to gather evidence of Greg abusing mileage and company time in an effort to save the city from further harm and bring to light all of the damage he has already done for property values.  Laurie then provided a description of Greg to me as six feet tall and about 48 years old with a "pop belly", ponytail, small mustache and a cowboy hat.  I was told Greg drives a maroon Ford Fusion with Massachusetts license plate 194PV8 and he usually leaves the office around 12:00 PM and does not return until 3-4:00 PM daily, unless he has meetings.  I told Laurie that would be enough information to get started and I agreed to take her case.

On 4/1/19 I began my surveillance.  I arrived at Nashua, NH City Hall around 10:20 AM and parked in the parking garage next to it.  During this time, I was in communication with Laurie who was in the assessing office where the white board for the assessors to sign out was displayed.  Laurie informed me Greg was signed out until 11:30 AM that day and was not currently in the office.  I waited in the area and at 12:23 PM I saw Greg drive by in his maroon Ford Fusion Massachusetts license plate 194PV8 while I was parked on the lower level of the garage.  I was able to photograph Greg walking into city hall after he parked to establish a positive ID and surveillance was ceased for the day.  The following photograph is of Greg Turgiss walking into work at 12:23 PM.

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



    On 4/2/19 I arrived at Nashua City Hall at 10:00 AM and I waited in the parking garage lower level for Greg to leave.  At 11:14 AM I saw Greg leave Nashua City Hall in his maroon Ford Fusion Massachusetts license plate 194PV8 and drive towards West Hollis Street.  Greg then turned onto West Hollis Street and continued on Route 111 towards Hollis, NH.  I followed Greg for about 10 miles before he turned onto Country Side Drive on the Hollis/ Nashua line.  At that point I lost sight of Greg and I was not able to locate him again that day after driving around several areas and checking his personal residence in Massachusetts.  I then ceased surveillance for the day.  Laurie texted me that Greg returned to the office at 3:00 PM that day.

    On 4/3/19 I arrived at Nashua City Hall at 10:00 AM and I waited in the parking garage lower level again.  Laurie was able to view the white board in the assessor's office that day and informed me Greg signed out to the YMCA at 12:00 PM.  At 11:41 AM Laurie texted me and notified me Greg was leaving.  I was able to locate Greg leaving Nashua City Hall in his maroon Ford Fusion Massachusetts plate 194PV8.  I followed Greg to the Nashua YMCA located off 101 A.  I confirmed Greg went to the YMCA at 12:10 PM and I waited down the road in a parking lot.  At 12:50 PM I saw Greg drive by and I was able to follow

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523              EMAIL:
Freylerinvestigations@Gmail.com

him back to Route 3.  Greg took a right on Route 3 heading east back towards Nashua City Hall.  While trying to follow Greg I noticed he took several right-hand turns.  I was able to follow Greg and the turns he took all lead back to Route 3, where he took a right again headed towards Nashua City Hall.  Greg then took a right onto Charron Ave and then a left onto Pine Hill Road which he stayed on until it met Broad Street.

While trying to follow Greg on these streets I momentarily lost sight of him.  When I came to the stop sign at Broad Street and Pine Hill Road, Greg pulled up next to me in the right-hand lane and turned right.  I was in the left lane and was forced to turn left.  I was able to turn around and I saw Greg get onto the exit seven on ramp to Route 3 headed south.  At that point I lost sight of Greg and I drove to Country Side Drive in Hollis/ Nashua and the surrounding area.  I was not able to locate Greg again and ended surveillance for the day. At 3:59 PM Laurie texted me that Greg was back in the office for that day, but she was not sure what time he arrived.

On 4/5/19 at 10:00 AM I arrived in the area of Nashua City Hall and parked on a side street where I could view Greg leaving.  At 12:19 PM I saw Greg walk to the parking garage and leave in his maroon Ford Fusion Massachusetts plate 194PV8.  I was able to follow Greg to West Hollis Street, but due to traffic I lost sight of him.  I then searched the area and Country Side Drive in Hollis/ Nashua, but I was not able to locate him.  I then ended surveillance for the day.  At 2:24 PM Laurie texted me that Greg had returned to the office for the day.

On 4/8/19 at 10:00 AM I waited on Route 111 in Nashua to see if I could make visual contact with Greg in an effort to see where he went on Country Side Drive.  I was not able to make visual contact with Greg that day and I searched the area again with negative results.  I then ended surveillance for the day.  At 2:41 PM Laurie texted me that Greg had returned to the office for the day.

On 4/9/19 at 10:15 AM I waited outside of Nashua City Hall on a side street.  At 12:36 PM I saw Greg leave Nashua City Hall in his maroon Ford Fusion Massachusetts license plate 194PV8.  I followed Greg as he got onto West Hollis Street and headed towards Hollis on Route 111.  I was able to follow Greg to Country Side Drive in Hollis/Nashua where I again lost him due to traffic.  I drove around the area again looking for Greg, but I was not able to locate him and I ceased surveillance for the day.  At 2:40 PM Laurie texted me that Greg had returned to the office for the day.

On 4/10/19 I waited at the Rail Trail parking area at the end of Country Side Drive where I usually lost sight of Greg.  There was a stop sign with only a

# FREYLER INVESTIGATIONS L.L.C.

**159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:**
**Freylerinvestigations@Gmail.com**

left- or right-hand turn.  My plan this day was to use my drone to follow Greg in hopes of being able to follow without worrying about traffic.  Around 11:30 AM I made visual contact with Greg in his maroon Ford Fusion Massachusetts plate 194PV8 at the end of Country Side Drive and go left onto Gilson Rd.  I was able to follow Greg with my drone for 1.6 miles before I had to turn around due to interference.  I was able to see Greg take a left at the stop sign on Gilson Road at the intersection for Captain's Corner convenience store.  I then got in my vehicle and drove around the area looking for Greg.  I also went to Greg's house to see if he doubled back there, but he was not home either.  I then ended surveillance for the day.  At 2:41 PM Laurie texted me that Greg had just returned to the office that day.

On 4/11/19 I waited at the Rail Trail parking at the end of Country Side Drive again to see if I could follow Greg from that point.  At 11:00 AM Greg pulled into the same parking area I was and parked his maroon Ford Fusion Massachusetts plate 194PV8.  Greg sat and smoked a cigarette and then took his cowboy hat off, reclined his car seat and began to nap.  At 11:56 AM Greg woke up and exited the Rail Trail parking.  Greg then headed back to the assessor's office via Country Side Drive and Route 111.  I was able to follow Greg back to Nashua City hall and at 12:14 PM I saw Greg walk into City Hall.  At that point I ended surveillance for the day.  The following photographs are of Greg napping in his vehicle during work hours.  I took photographs of damage to the vehicle and other characteristics to use as a comparison for accuracy.

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523        EMAIL:
Freylerinvestigations@Gmail.com



    On 4/12/19 I again waited at the Nashua Rail trail, but I was not able to locate Greg this day.  I drove around the area again with negative results and at that point ended surveillance for the day.

    On 4/15/19 at 10:30 AM I parked at the Nashua Rail trail again at the end on Country Side Drive.  Greg pulled his maroon Ford Fusion into the Rail Trail parking lot again at 11:17 AM and parked his vehicle and again napped in his care until 1:44 PM.  I was able to follow Greg back onto 111 where he walked back into city hall at 2:00 PM.  The following photographs are of Greg napping at the Nashua Rail Trail during work hours and walking back into work.

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523        EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523        EMAIL:
Freylerinvestigations@Gmail.com



On 4/16/19 I again waited at the Nashua Rail Trail for Greg.  At 12:04 PM I saw Greg drive by in his maroon Ford Fusion Massachusetts plate 194PV8 and take a left at the end of Country Side Drive onto Gilson Road heading towards Captain's Corner.  I was able to follow Greg until Captain's Corner where he entered a residential area and I was not able to follow him.  I drove around the area looking for Greg, but I was not able to locate him again and I ended surveillance for the day.  Laurie texted me that Greg returned to work at 2:40 PM that day.

On 4/17/19 I waited at the Nashua Rail Trail for Greg.  Around 1:00 PM I saw Greg in his marron Ford Fusion Massachusetts license plate 194PV8 coming from the direction of Captain's Corner on Gilson Road.  I attempted to follow Greg, but I lost him at Depot Road and I was not able to locate him again and I ended surveillance for the day.

On 4/18/19 I waited at the Nashua Rail Trail for Greg.  At 12:36 PM I saw Greg drive by in his maroon Ford Fusion Massachusetts plate 194PV8.  Greg took

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523        EMAIL:
Freylerinvestigations@Gmail.com

a left onto Gilson Road headed towards Captain's Corner.  I was able to follow Greg for a bit, but I lost sight of him again in a residential neighborhood.  I then began to search the area for spots Greg could park and take a nap.  While driving by the Holiday Inn on 9 Northeastern Blvd, in Nashua, NH I saw Greg's vehicle parked in the back lot of the Inn.  I pulled into the parking lot at 12:50 PM and at 1:46 PM Greg left the parking lot and drove back to Nashua City hall. The following photographs are of Greg sitting in the Holiday Inn during work hours.



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



    On 4/19/19 I waited at the Nashua Rail Trail again for Greg.  Around 11:15
AM I saw Greg in his maroon Ford Fusion Massachusetts plate 194PV8 at the stop
sign for Country Side Drive.  I was able to follow Greg on Gilson Road towards
Captain's Corner, but I lost him again when he turned into a residential
neighborhood.  I decided to check the Holiday Inn on 9 Northeastern Blvd in
Nashua, NH and at 11:29 AM I spotted Greg's vehicle in the same spot as
4/18/19.  Greg stayed in the parking lot for quite some time and left around 1:20
PM.  I was able to follow Greg back to city hall where he walked back in at 1:36
PM.  The following photographs are of Greg parked in the Holiday Inn and
walking back into work.

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060     PHONE: (603) 7034523     EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523        EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



On 4/22/19 I waited at the Rail Trail in Nashua, NH.  Greg drove by in his maroon Ford Fusion Massachusetts plate 194PV8.  I was able to follow Greg to the Holiday Inn on 9 Northeastern Blvd in Nashua, NH where he again parked in a back-parking lot.  Greg stayed in the parking lot until about 2:37 PM when he left and drove back to Nashua city hall.  Greg then walked back into city hall at 3:01 PM.  The following photographs are of Greg at the Holiday Inn during work hours and walking back into city hall.

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com



**Conclusion:**  Greg has been signing out of the office saying he is doing field work, when he is actually, driving aimlessly around to accrue mileage and waste time napping or sitting in his personal vehicle. The following picture is of a sign out board which Greg used on 4/22/19.

# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060        PHONE: (603) 7034523        EMAIL:
Freylerinvestigations@Gmail.com



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523          EMAIL:
Freylerinvestigations@Gmail.com

Greg wrote he would be out to lunch and in the field, but he did not return until
3:01 PM, nor did he perform any work besides driving around and then parking
for hours at the Holiday Inn on 9 Northeastern Blvd in Nashua, NH.

   The past three weeks I have been following Greg he has consistently left
the Nashua city hall and drove onto West Hollis Street to Route 111, where he
typically takes a left onto Country Side Drive in Nashua and then another left
onto Gilson Road.  At Captain's corner Greg typically goes left or into residential
areas and drives around until he ultimately ends up at the Holiday Inn.  I



# FREYLER INVESTIGATIONS L.L.C.

159 Main Street Ste. 100, Nashua, NH 03060          PHONE: (603) 7034523                    EMAIL:
Freylerinvestigations@Gmail.com

attempted to get copies of surveillance from the Holiday Inn, but they have not been responsive to my request.  On the busier days I was waiting for Greg at the Nashua Rail Trail he did not pull in and I suspect his use of that area is dependent on how many people are currently using it.  It is my conclusion Greg has been abusing company time and charging for mileage that is not work related by driving around and sleeping at the Holiday Inn on 9 Northeastern Blvd in Nashua, NH or the Nashua Rail trail parking on Gilson Road.  Included on the last page of map with Greg's usual route outlined in light blue.

-End Report

# Exhibit "B"

# Investigative Report - Additional Information to Freyler Investigations, L.L.C

**Date 5/1/19**

**Laurie Ortolano**
**Surveillance Target: Greg Turgiss, Nashua NH city employee in commercial assessing office**
**Reason for Surveillance: Suspected abuse of company time and mileage.**

**Case Summary:** I worked with William Freyler to assist in checking in the office for sign out times on the whiteboard along with some return times to City Hall.

**Tuesday - April 9, 2019 - Very cold blustery day**

There was a scheduled NHAAO monthly meeting in Concord today so I checked in the Office in the morning and he was there is a closed door meeting with Louise and Kim. He did not attend the meeting. Will picked him up heading out of City Hall at 12:15 heading into the parking garage. I went to City Hall in the afternoon and his car was back in the garage at 2:55 PM.

**Wednesday, April 10, 2019 - 40 degrees and sunny day after 11:00 AM**

Popped into the office in the morning and heard Greg mentioned an appointment at 25 Cornell Rd. for an exemption. Was leaving soon.

I took my dog for a walk down Berkeley St., right onto Laton St. and then right onto Concord St., heading north. At 10:59 am I called Will and told him Vehicle MA #194 PV8, Greg Turgiss vehicle, had just passed me as I approached Concord and E. Stark St. I took my dog back to my home, packed up my truck to head to the dump and headed over to 25 Cornell Rd. to see if Greg was at the appointment. Vehicle #194 PV8 was parked in the road next to the home.

He came out of the home about 11:14 am (I believe he arrived at the home just after 11:00 AM). He spent about 10 minutes at the property. He headed back down Concord St. towards City Hall and I followed. He took a right onto Water St., looped around the old court house and past California Burrito onto Chestnut St. He took a right onto W. Hollis and headed down to Countryside Dr. I turned at the dump and dropped off my leave bags. Will picked him up with his drone in the rail trail lot on Gilson Rd.

**Thursday, April 11, 2019 - weather warm and sunny 55 degrees**

Checked the office and pulled some data off the computer. Greg left the office at 10:40 am and wrote "field" on the whiteboard. Steve Bolton's mother's service was held was this day. Will texted my at 11:00 AM that Greg had just pulled into the trail lot was

playing music and smoking a cigarette. Will captured pictures and followed Greg back to the office. He went back into City Hall at 12:15. I headed over to City Hall at 1:11 and checked to see if his car was in the garage. It was.

Kim Kleiner was working with Greg and Louise for the afternoon, running up and down the stairs gathering information. I stayed in the office retrieving MLS data until 4:15 PM. Greg was their for the entire afternoon.

Spent 1.5 hours out without any field work.

**Friday - April 12, 2019 - weather was cool and comfortable, part sun in the**

**afternoon.**

I had an Asb meeting in Concord at 9:00 am followed by an afternoon meeting with Peter Roth and Chuck Reese. I did not get back to Nashua until after 3:00 pm. I called off the PI work for the day.

**Tuesday, April 16, 2019 - Sunny afternoon day**

Parked on Elm Street behind City Hall with a line of sight to the garage stairwell. Greg entered the garage at 11:49 AM. I followed him all the way down to the left turn on Countryside Dr. for Will to take over. Will lost him. I went back to Elm Street at 2:00 PM and he came out of the garage at 2:38 pm headed back into City Hall. He was out about 3 hours today.

**Thursday, April 18, 2019**

Board of Assessors public session ended at 9:00 AM and the Board went into non-public session. I headed home for a bit and figured Greg would leave around noon.

I drove back to City Hall and parked on Elm St. with a line of sight to the stairwell to the parking garage. I headed into the Assessing department at 11:45 am to be certain he was still in there. I pulled up property cards and checked data. He signed out at 12:10 pm. I went back out to the truck and waited for him.

He entered the stairwell at 12:17 pm. I tailed him down the typical route (west Hollis to exit 5 intersection, past the police department, NHSS, to where he turned left on Countryside Dr. He entered Countryside Dr at 12:37 pm. Will took over from there. Will

was able to tail him to the Northeastern Blvd. Holiday Inn Parking lot. He stayed in the parking lot until 1:46 pm and then drove back to City Hall.

He spent more than 1.5 hours out doing no field work.

**Friday - April 19, 2019 - Good Friday**

Greg signed out for "field" work at 10:56 am. Will found him in the Holiday Inn back corner parking lot at 11:29 am. He stayed until 1:20 pm and then arrived back at City Hall at 1:36 pm.

*He stayed out just over 2.5 hours with no field work done.*

I stopped by City Hall at 3:30 and he had left for the Holiday weekend at 3:00 pm.



**Monday - April 22, 2019**

Will's last day for PI work. He entered the parking garage at 12:34 pm. I had my vehicle lined up to the garage stairwell and checked the office. He signed out OTL/Field back in PM. He took his usual route down West Hollis St. to Countryside Dr. Will tracked him to the Holiday Inn parking lot. It took him about 25 minutes to do the driving loop. He stayed in the parking lot until 2:37 pm. He added mileage when he left the Holiday Inn by heading back to Captain's Corner, pulling into the athletic fields, turning around and heading back up 111 to the office. He was back in the office around 3:00 pm.

Mapquest shows he did a 16 miles loop with no field work done. 2.5 hours out of the office.



**Tuesday, April 23, 2019**

I took over on my own knowing his 2 locations were the Rail Trail lot on Gilson Rd. and the Holiday Inn lot on Northeastern Blvd.

He signed out on the whiteboard to do "field" work at 10:51 am. Wrote on the Board that he would be back at 1:00 pm. I headed down to the rail trail lot and he was sitting in his car, window down, arm hanging out at 11:00 am when I arrived. I took distant photo's from the road as I was fearful to get too close and enter the lot. I stayed for about 20 minutes and then went to Captain's Corner and waited about 20 minutes. I figured that he might take a nap and I could pull into the lot at that point.

I went back to the trail lot at 11:50 am and he was asleep in his car. Window up and seat reclined. I pulled in right behind him with my truck bed facing his truck and inline with his vehicle #194 PV8. I took photos for almost 2 hours. He left the park at 1:18 pm. He arrived back at the office at 1:40 pm.

He was out of the office almost 3 hours and did not field work.













Exhibit "C"



FOJO LAW, PLLC
121 Bay Street
Manchester, NH 03104

Robert M. Fojo
Direct/Fax: (603) 473-4694
rfojo@fojolaw.com

May 8, 2019

**BY EMAIL**

Mayor James Donchess
City of Nashua
P.O. Box 2019
Nashua, NH 03061

**RE:    Assessing Department/Greg Turgiss**

Dear Mayor Donchess:

I am writing to you concerning Greg Turgiss, an Assessor III and commercial assessor (and formerly a residential assessor) in the City of Nashua's Assessing Department and developments concerning his daily behavior that my client, Laurie Ortolano, recently discovered. Greg is among the various individuals within the Assessing Department that Ms. Ortolano has focused on during her recent, months-long campaign to identify deficiencies in the Department and promote change and course correction within it.

Ms. Ortolano has raised concerns about Greg in the past, but the City has largely ignored them.  For example, Greg's brother, Gary Turgiss performed the initial assessment of Ms. Ortolano's property, 41 Berkeley St., after she purchased it in December 2013.  Gary informed Ms. Ortolano of a sudden 50.3% increase (from $469,800 in 2013 to $706,300 in 2014) in her property's total assessed value after the sale.  Ms. Ortolano thereafter requested a review of that assessment.  Greg visited her property to perform the review.  During Greg's visit, Ms. Ortolano provided him with intricate detail concerning what she believed Gary had done wrong in the initial assessment.  Greg seemed disinterested, failed to answer any of her questions, and told her he would get back to her.

In early March 2019, the Chief Assessor position in the Assessing Department was eliminated as the result of an internal audit, and our understanding is the City intends to re-instate the "Administrative Services Director" position to oversee the Assessing Department and several other departments (subject to approval by the Board of Aldermen).  That audit also found several critical problems existed within the Department, including ineffective management, and a lack of internal policies to guide its operations.  Accordingly, after the Chief Assessor position was eliminated, the Department had no one with any assessing expertise or experience overseeing it.[1]

Mayor Donchess
May 8, 2019
Page 2

To alleviate that vacuum, at a March 7, 2019 Special Aldermen meeting on that Assessment Management Audit Report, you stated that, in the interim and in defense of eliminating the Chief Assessor position, "There is a supervisor Assessor, certified as a supervisor in the Assessing Office who can serve as sort of a working supervisor."  This statement obviously referred to Greg since he is the only certified supervisor in the Assessing Department.

In response, Ms. Ortolano raised the concern that having *both* Greg and Gary Turgiss working in the same department violated the City's anti-nepotism policy, and that elevating either to supervise the other *also* violated that policy.  Section 4.01 of the policy states, "Individuals who are related are permitted to work for the City of Nashua, provided that *no direct reporting or supervisory/management relationship exists.*"  (The *italics* and underlining are not mine; they are in the policy.)  Section 4.02 states, "No relatives are permitted to work in the same department or in any other positions in which the Human Resources Department believes an inherent conflict of interest may exist."  As you are likely aware, the Turgiss brothers have worked in the Assessing Department for over two decades.  The City's Human Resources Director, Larry Budreau, stated, however, that there was no conflict interest, and thus this situation did not violate the City's anti-nepotism policy.

The City has recently continued to express support for Greg and the Assessing Department.  At the most recent Board of Aldermen meeting on April 30, 2019, Louise Brown, an Administrative Specialist, explained that, due to Greg's "hard work, education, and lengthy experience," he was elevated from a DRA Certified Property Assessor to a DRA Certified Property Assessor Supervisor in 2018.  In this role, Greg apparently executes numerous critical duties for the Department, including, but not limited to, general supervision over re-evaluation projects, conducting sales surveys, establishing base values for land and buildings, preparing sales surveys, establishing charts to be used in re-evaluations, preparing reports, supervising informal reviews of property assessments with property owners, and oversight over any re-evaluation by assisting the City to ensure the re-evaluation is performed in accordance with applicable law.  In particular, Ms. Brown remarked that she has worked with Greg from 2000 to the present, and his "growth in the Department is something to aspire to."  She further praised Greg as "one of the top individuals I have been able to depend on with the changes that have occurred within" the Department.

At that same meeting, Greg provided his own comments after Ms. Brown.  He explained this period of time is "a very busy time with the April 1st tax date and July bills going out," and he explained many of the functions the Department was performing for that purpose.  The Acting Administrative Services Director, Kim Kleiner, made a few remarks after Greg: she explained the Assessing Department is "extremely busy," and "you have a group of people that are working extremely hard to get information and applications processed and reviewed [for abatements]."  Then, the President of the Board of Aldermen, Lori Wilshire, remarked that "the people down [in the Assessing Department] are working hard, everyone wants to do a good job for the residents."

---

[1] While we understand your Chief of Staff, Kim Kleiner, is currently overseeing the Assessing Department as the "Acting Administrative Services Director," Ms. Kleiner has no assessing credentials or experience.  It is like asking a lawyer to oversee a doctor's office.

Mayor Donchess
May 8, 2019
Page 3

She commended "the staff down there for stepping up and wanting to do better and mak[e] changes that are going to be positive for them and the City."

Finally, you bestowed additional praise on Greg during Ms. Kleiner's interview this past Monday evening.  During the interview, Alderwoman Shoshanna Kelly asked how the City addresses the day-to-day issues that might arise in the Assessing Department as well as public concerns.  You responded, "Well we have qualified assessors working in the assessing department.  They are qualified and certified to answer the demands of the job.... We have the expertise within the department to do these jobs."

Ms. Ortolano has, nevertheless, remained concerned about the Assessing Department and, specifically, Greg's work ethic and behavior.  For example, she has always noticed Greg exhibit a pattern of behavior in his day-to-day work schedule: Greg leaves City Hall every day at approximately 12 noon and does not return until 3 or 4 p.m., on the representation that he is performing "field work."  There are also numerous abnormalities in his assessing practices, including disparities between the values assigned to various properties and information contained in corresponding property cards.

Accordingly, Ms. Ortolano hired a private investigating firm, Freyler Investigations, LLC, in late March to follow and review Greg's behavior and, ultimately confirm her suspicions regarding him.  A surveillance report, dated April 26, 2019, concerning Greg's behavior is attached to this letter ("Freyler Report").  In addition, Ms. Ortolano performed her own investigation to assist Freyler.  Her own report is also attached to this letter.

These reports, unfortunately, not only do not surprise us with respect to Greg's day-to-day activities, but they deeply alarm us, should concern Nashua taxpayers, and undermine virtually all of the accolades recently bestowed on Greg by the City.

These reports demonstrate that, during a period of investigation from April 1 – 26, 2019 (a full month, during which there were 20 business days), the investigator and Ms. Ortolano personally witnessed and observed Greg take extended breaks on nearly _half_ (_**eight**_) of those days _**during work hours**_.  During those breaks, he either parked his car in the parking area at the Rail Trial at the end of Country Side Drive in Nashua and napped or smoked cigarettes for approximately 2-2.5 hours (on April 11, 15, and 23), or parked his car in a parking lot at a Holiday Inn on 9 Northeastern Blvd. in Nashua and remained there either napping or smoking cigarettes, also for 1-2 hours (on April 18, 19, 22, 25, and 26).

The investigator and Ms. Ortolano also observed that, on April 1-3, 5, and 8-10, Greg disappeared from City Hall for similar gaps in time (from approximately 12 noon until 2 or 3 p.m.) and followed similar driving routes either near or in the direction of the Rail Trail and the Holiday Inn, but the investigator and Ms. Ortolano lost track of him and, thus, could not confirm whether Greg engaged in the same activities (taking extended breaks to nap and smoke) described above.  These reports do explain, however, that before the investigator and Ms. Ortolano lost track of Greg on those days, they observed Greg drive aimlessly around the City and perform very little field work.

Mayor Donchess
May 8, 2019
Page 4

The most alarming aspect of this behavior is that Greg reported, during his absences on all eight days detailed above, that he was, at least in large part, performing "field work."  On the sign out board in the Assessing Department, Greg reported he was leaving the office to perform field work for at least a large part of the time he was absent on all eight days.  For example, page 3 of Ms. Ortolano's report contains a photograph of that sign out board as it appeared on April 19, 2019.  The row for Greg states, in the "Out" column, "FIELD," which presumably means he would be performing "field work" for the period of time he was absent.  In addition, page 4 of Ms. Ortolano's report and page 19 of the Freyler Report both contain a photograph of the same sign out board as it appeared on April 22, 2019.  The row for Greg states, in the "Out" column, that he is "OTL/FIELD," and the "In" column states "P.M."  "OTL" presumably stands for "Out to Lunch," but Greg also denoted "FIELD" – again, presumably to mean he was performing "field work" – for the period of time he was absent.  The reports above clearly demonstrate, however, that he did not perform any field work on April 19 or 22 and little to no field work on any other day; rather, on both days, he was parked outside the Holiday Inn performing absolutely no field work and returned to City Hall at 1:36 p.m. on April 19 and 3:01 p.m. on April 22, and on the other days he was either napping in the Rail Trail parking lot or spending time in the Holiday Inn parking lot.

This behavior calls into question Greg's performance of his duties and many of his practices, including, but not limited to, his assessments of properties, review of residential abatements, representation of the City at the BTLA in abatement appeals, and his preparation and submission of expense reports.

As noted above and in Ms. Ortolano's past communications with the City, Greg's property assessments feature many irregularities: there is a disconnect between the assessed values assigned to these properties and upgrades and other features contained in corresponding property cards.  It is possible Greg has engaged in the behavior above on a consistent basis for some time now.  If that is true, it is possible Greg likely has not visited the properties he claims to have assessed and, thus, has relied on other (improper) means to evaluate properties.

Greg's expense reports should also be called into question: If Greg is leaving City Hall and performing no field work, then any expense reports detailing mileage and/or other expenses for those periods of time are obviously fraudulent.

Finally, Greg's recent behavior calls into question his and the Department's ability to address and evaluate the record number of abatement applications the City received this year.  If Greg is devoting minimal time to his day-to-day functions, the Department – at least in part – is unlikely to be able to process these applications (particularly the applications assigned to Greg) in an efficient manner, or not at all, and devote any measurable attention to them.  This would be a disservice to the citizens in Nashua and force them to devote additional resources to appeals of any abatement applications that the Department denies.

Mayor Donchess
May 8, 2019
Page 5

       I request that the City dismiss Greg from his position immediately, investigate his expense reports and other activities he undertook while on City time, and undertake any additional action it deems necessary to address this behavior.

       If you have any questions or concerns, please do not hesitate to contact me.

       Sincerely,


       Robert M. Fojo


cc:    Client
       John Griffin
       Kim Kleiner
       Steven A. Bolton, Esq.
       Celia K. Leonard, Esq.

# Exhibit "D"



FOJO LAW, PLLC
121 Bay Street
Manchester, NH 03104

Robert M. Fojo
Direct/Fax: (603) 473-4694
rfojo@fojolaw.com

July 8, 2019

**BY EMAIL**

Mayor James Donchess
City of Nashua
P.O. Box 2019
Nashua, NH 03061

RE:    **Scope of Investigation of Greg Turgiss**

Dear Mayor Donchess:

I am writing to you to follow up on Attorney Mark Broth's investigation of Greg Turgiss. On May 21, 2019, I received a letter from Attorney Broth in which he explained he had "been retained by the City of Nashua to investigate certain allegations of misconduct that . . . Ms. Ortolano . . . made against [Mr.] Turgiss." Attorney Broth explained further that the City requested he "conduct an investigation to determine whether Mr. Turgiss has violated any City rules, policies or procedures regarding his work activities; specifically, whether he has, as has been alleged, taken extended unauthorized breaks during the workday or sought mileage reimbursement for travel not incurred on the City's behalf." Attorney Broth cautioned, however, that his "charge does not include examining the organizational structure of staffing of the Assessing Department, nor does it include a review of Mr. Turgiss'[s] determinations regarding the assessed value of any property."

Ms. Ortolano and I met with Attorney Broth last Wednesday, July 3, 2019 at his office in downtown Manchester, NH. He explained again that his investigation involves making a determination of whether Mr. Turgiss committed any misconduct that warrants discipline under the City's collective bargaining agreement with its unionized employees (such as Mr. Turgiss). He confirmed, however, that the scope of his investigation does not include reviewing Mr. Turgiss's assessing work. He reiterated, as he did in his May 21 letter, that he has "no background in assessing."

The express exclusion of Mr. Turgiss's assessing work from Attorney Broth's investigation is concerning. Mr. Turgiss's assessing work is a critical component of his work performance and should be evaluated in determining whether he committed any misconduct under the collective bargaining agreement. At the Board of Aldermen meeting on April 30, 2019, Louise Brown, an Administrative Specialist, explained that Mr. Turgiss executes numerous critical duties for the Department, including, but not limited to, general supervision over re-

Mayor Donchess
July 8, 2019
Page 2

evaluation projects, conducting sales surveys, establishing base values for land and buildings, preparing sales surveys, establishing charts to be used in re-evaluations, preparing reports, supervising informal reviews of property assessments with property owners, and oversight over any re-evaluation by assisting the City to ensure the re-evaluation is performed in accordance with applicable law.

Ms. Ortolano – whom before last year *__also__* had no background in assessing -- has identified many irregularities in Mr. Turgiss's assessing practices.  The City *__does__* have policies and procedures in place for assessing properties.  Mr. Turgiss has, for whatever reason, refused to follow them.  There exists a clear disconnect between the assessed values he assigned to many properties and upgrades and other features contained in corresponding property cards.  The City's policies and procedures could easily be used by Attorney Broth (or some other independent reviewer) to determine whether Mr. Turgiss followed them in his day-to-day assessing work.  This is not rocket science.

The City's neglect in charging Attorney Broth with investigating Mr. Turgiss's assessing work eliminates an enormous data point from Mr. Turgiss's work performance.  If the City ultimately finds – under this narrow investigation – that Mr. Turgiss's extended breaks and mileage reimbursement requests did not constitute misconduct, it may potentially create significant confusion among City employees and taxpayers alike.  It will also call into question the City's approach to this problem: Why would the City deliberately choose to exclude Mr. Turgiss's assessing work from its review of his work performance?  This question casts yet another cloud on the City's Assessing Department.

A proper evaluation of Mr. Turgiss's work performance must include a review of his assessing work.  I request that the City re-evaluate its approach to this issue and expand the scope of its investigation to include a review of Mr. Turgiss's assessing work.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,


Robert M. Fojo


cc:     Client
        John Griffin
        Kim Kleiner
        Steven A. Bolton, Esq.
        Celia K. Leonard, Esq.

# Exhibit "E"

Laurie Ortolano
41 Berkeley St.
Nashua NH 03064

June 20, 2019

Deputy Chief Mike Carignan
Deputy Chief of Police
City of Nashua
28 Officer James Roche Dr.
Nashua, NH 03062

Dear Deputy Chief Carignan:

I am writing to request an investigation into the potential criminal activities of a Nashua City Assessor, Greg Turgiss. Mr. Turgiss is currently under a review for mileage reimbursement fraud. The City has hired Attorney Mark Broth to handle an outside audit of his mileage activity. A letter from Attorney Broth is attached for your review. Additionally, the City appears to be complicit in undermining the investigation and covering for the said Assessor.

**Background:**

September 2018 - I started working on a review of the assessing practices after notice a significant assessment error on our property card.

The review opened the door to exposing some "sloppy" practices within the office.

March 1 – 2019 – Audit Completed: The City conducted an internal management audit review lead by Kim Kleiner, at the time Chief of Staff and John Griffin, City Chief Financial Officer.

The Report when released resulted in the removal of the Chief of Assessing for the City of Nashua.

March 5, 2019 - The Mayor then acknowledged (Board meeting March 5, 2019) Greg Turgiss as the working supervisor for the City. His brother Gary works for the assessing office as well.

March 2019 - I discovered that the City had an anti-nepotism policy that does not allow a family relative to be supervisor in any department within the City.

The Mayor's Chief of Staff, Kim Kleiner, then recanted Greg Turgiss as the working supervisor and set up a peer review process for oversight within the office.

April 2019 – The Mayor removes the Chair of the Board of Assessor's. I had identified problems with the board.

April 2019 – The Mayor appoints Kim Kleiner to the Administrative Services Director position and makes her the Manager of Assessing. She has no assessing background.

May 9 2019 – The Freyler Investigation is released to the City charging Mileage Fraud – Greg Turgiss.

May – Current: The Mayor and Kim Kleiner build a strong backing for Greg Turgiss; denouncing the data.

May 2019 – Mark Broth hired as outside counsel to investigate the fraud charges.

June 2019 – Resulting from a Right to Know request,  I discover massive assessment adjustments in the Audit log.

**Assessor Information:**

Doug Dame – Commercial Assessor been with City for 20 years. Soon to retire. Honest gentlemen on his mileage and his property cards are impeccably maintained.

Greg Turgiss – Commercial Assessor since 2016. Residential Assessor for 15 years. Been with City 19 years. Unethical, sloppy documentation. Had 2 City Hall Porn incidents that were overlooked. Had warnings over Mileage padding; filed for bankruptcy in 2003.

Gary Turgiss – Residential Assessor since 1999. His background in assessing is questionable as well. But my focus has been on brother because his data appears criminal.

Mike Mandile – Residential Assessor since 2016. Took over Greg Turgiss' position. Honest, accountable assessor in training. Very detailed documentation.

**Significant Criminal Data:**

Investigative Report from Freyler Investigation 4/26/2019

Additional Investigative Report from Laurie Ortolano 5/1/2019

Letter from Attorney Robert Fojo – May 8, 2019 representing Laurie Ortolano

Police Incident Report from 2006/2007 on Child Pornography Incident with Greg Turgiss

AssessPro Activity Report – 11" x 17" 1/1/2019 – 4/30/2019

Assessing Department Assess Audit Log – 9/1/2018 – 4/1/2019

Mileage Logs – 1/1/19-5/30/19 for Greg Turgiss; Gary Turgiss; Mike Mandile; Doug Dame

Letter from Attorney Mark Broth – Representing the City in the mileage fraud case.

The Mayor wants to downplay the significance of the Investigation and spoke publicly of the insignificance of the data at the Ward 7 and Ward 3 meetings. Youtube Videos online

Ward 7
https:_www.youtube.com/watch?v=VKCLtjfplzl:&feature=youtu.be

Ward 3
https:_www.youtube.com/watch?v=z3saZeIfbqY&feature=youtu.be

Seems to have made it a personal issue

Kim Kleiner, former Mayor Chief of Staff and now Administrative Services Director, appears to be interfering with independent investigation. Information will be presented to Attorney Broth when a meeting is scheduled with Attorney Fojo.

**Mileage Fraud Details:**

Obtained Mileage expense reports last October for all 4 assessors along with a retired assessor, Andrew Lemay.

In reviewing these reports, I found Greg's mileage to be unusually high.

I addressed the issue with CFO Griffin in October and received no response.

After conducting the Private Investigation, I received the above mileage logs for all 4 assessors. Doug Dame, the other commercial assessor put in for 53 miles of Nashua travel for 4 months. Andrew Lemay, who retired out of Nashua in 2016 serving as the second Commercial Assessor, typically put in 40-50 miles a month.  Greg's mileage for January was 220 miles; February – 181 miles; March – 180 miles. Ms. Kleiner announced the middle of April she would be requiring the field log stapled to the report. This was the month we did our surveillance and released our report prior to his data log being finalize. His mileage for April was 43 miles. So, for January – April, he logged ~625 miles while Doug put in 53 miles. In January – March, Greg only appears to have visited 6 properties.

May's mileage report will show he dropped his mileage to 63 miles. Even these miles appear padded for his property visits.

Conclusion: Greg is logging roughly 10 times more mileage than the other commercial assessor for very few properties visited.

Since the City has received the investigation report, I have sent in numerous Right to Know requests for information.
I have asked for:

- The AssessPro activity report
- The Assess Audit log
- The Mileage reimbursement reports and associated field logs for 1/1/2019 – 5/30/2019
- The work logs for Greg
- The MLS sales data spreadsheet compiled by Ms. Kleiner
- The permit data generated by the building department
- The Permit follow-up data tracked by each assessor
- The AssessPro activity log for 2018

This information has helped to confirm that the mileage fraud is real.

## Potential Kickbacks

The Audit log has produced a major potentially criminal concern. On October 10, two days before the MS-1 was submitted to the Department of Revenue Administration, Greg went into the computer and changed the property data at 10 Groton Rd, reducing its assessed value $1,048,000. He did this without generating the proper documentation and process for changing a property card.

It is my understanding; he has a relationship with the owner of the property and the owner came into City Hall that day and whispered a message to Greg. Greg than stated that he would take care of it. The property was then reduced. This conversation was overheard by an office staff member. This staff member had addressed mileage fraud with management for many years.

The Audit Log Report on the bottom of page 5 and top of 6 shows the ~$25,000,000 o assessment reductions that were made in a single day. The Property files that I have pulled do not have the appropriate documentation to justify the changes. Additionally, all property owners were told in September/October after the KRT data release, that the only way to fix a property valuation was through an abatement.

If you look at the bottom of page 5 on 10/8/2018 and 10/8/2018, Greg made 3 changes on properties that resulted in assessment reductions of $91,500, $120,600, and $131,400. Our home is listed there as well at 41 Berkeley St. We received a $12,000 reduction for water in basement and garage degradation. That was all. The $100,000 reduction we were looking for required an abatement.

This is only the tip of the iceberg. We are only looking at a snapshot of 6 months. What has happened over 19 years? I believe there is more in there to uncover.

I am asking the Nashua Police to open a criminal investigation into the fraud and massive assessment reductions. In reviewing Mark Broths legal letter, the City has tasked him to look into the mileage fraud, but he will not be looking at property valuations and cards. This potential kick-back issue is all about the property valuations and cards and I do not believe that Attorney Broth can handle that type of criminal investigation.

**Nashua Police Department**                                      Page: **1**
2019-06-25 0930HRS, LAURIE ORTOLANO AND LAURA COLQUHOUN
Ref: 19-46336-OF

# Exhibit "F"

On 25Jun19 at approximately 0930 hours, Detective Lieutenant D. Mederos and I met with Laurie Ortolano (DOB:            ) and Laura Colquhoun (DOB:            ).  Ms. Ortolano had arranged the meeting through Deputy Chief M. Carignan based upon concerns that she had regarding illegal activity within the Nashua Assessing Department, specifically fraudulent mileage reports, theft of wages and possible bribery/improper assessing practices involving employee Greg Turgiss and possible witness tampering/intimidation involving Administrative Services Director Kim Kleiner.  At the outset of the meeting, Ms. Ortolano provided us with a binder (blue and black) of information that she had complied reference the matters.  The binder contained the following:

1) Cover Letter to Deputy Chief Carignan (dated: 20Jun19)
2) Attorney Robert Fojo's Letter to Mayor Donchess (dated: 08May19)
3) Attorney Mark Broth's Letter to Attorney Fojo (dated: 21May19)
4) Attorney Fojo's Letter to Attorney Broth (dated: 07Jun19)
5) The Freyler Investigation Report (dated: 04-26-19)
6) Laurie Ortolano's Investigative Report (dated: 01May19)
7) A Spreadsheet Summarizing the Surveillance Report
8) NPD Offense Report (dated: 16May06)
9) A Mileage Table for the City Assessors from 2014 through 2018
10) Mileage Reports for Gary Turgiss from 01Jan19 through 30Apr19
11) The Mileage Report for Gary Turgiss from 01May19 through 31May19
12) Mileage Reports for Greg Turgiss from 01Jan19 through 30Apr19
13) The Mileage Report for Greg Turgiss from 01May19 through 31May19
14) Mileage Reports for Douglas Dame from 01Jan19 through 31May19
15) Mileage Reports for Michael Mandile from 01Jan19 through 31May19
16) The Mileage Report for all City Assessors from 01May19 through 31May19
17)The Assess Audit Log from 01Sep18 through 01Apr19 (dated: 07Jun19)
18) The AssessPro Activity Log from 01Jan19 through 30Jan19

<span style="color:red">Redactions of DOB pursuant to 91-A:5,IV, confidential information and disclosure would constitute invasion of privacy</span>

(*Ms. Ortolano obtained much of this information through Right To Know Requests from the Assessing Department.)

Ms. Ortolano explained that she raised concerns regarding operations in the Nashua Assessing Department in the Fall of 2018.  She advised that as a result of the information that she was able to gather, the City commissioned an audit of the Department which was conducted by John Griffin (Chief Financial Officer) and Kim Kleiner (Chief of Staff).  However, Ms. Ortolano stated that she is not satisfied with the results of the audit, does not believe that it was "independent" and does not believe that her concerns have been adequately addressed.

Ms. Ortolano explained that as a result of the audit, the Chief Assessor position was eliminated and Ms. Kleiner was placed in charge of the Department as the Administrative Services Director.  However, according to Ms. Ortolano, Ms. Kleiner has no experience as an assessor and was simultaneously placed in charge of Purchasing, IT, GIS, Risk Management and Human Resources, thereby inhibiting her ability to monitor the activities of the Assessing Department.  Moreover, Ms. Ortolano advised that she believes that there is an inherent conflict in the Department because two brothers, Gary and Greg Turgiss, are both employed as assessors even though Larry Budreau, Director of Human Resources, does  not believe that their employment

violates the City's anti-nepotism policy.

In addition, Ms. Ortolano explained that she has some specific concerns with regards to Greg Turgiss's activities. Ms. Ortolano explained that according to staff (Cheryl Walley), Mr. Turgiss has a history of filing fraudulent/incorrect mileage reports, has been spoken to about those reports in the past (reportedly by Sue Cronin) but continues to file fraudulent/incorrect mileage reports. Moreover, she stated that she has concerns with regards to Mr. Turgiss' work activities and whether he has been and is misrepresenting what he is doing while at work. She explained that she actually hired a private investigator to follow Mr. Turgiss and that the results of that investigation were extremely concerning. In addition, Ms. Ortolano advised that she discovered a number of abatements (to include: 285 West Hollis Street, 713 A & B West Hollis Street, 10 Groton Road, etc.) that occurred in October 2018 that she believes may have been the result of "favoritism". Moreover, she explained that she ran a background check on Mr. Turgiss and discovered that he filed for bankruptcy in 2003, was investigated for pornography in 2006 and currently brings a personal computer with him to work, all of which, according Ms. Ortolano, are extremely concerning.

Ms. Ortolano explained that as a result of the concerns that she has raised regarding Mr. Turgiss' activities the City has retained Attorney Mark Broth to conduct an independent investigation into Greg Turgiss' mileage reports and work logs. Ms. Ortolano advised that she will be attempting to meet with Attorney Broth in order to discuss her concerns but believes that the scope of his investigation will be too narrowly focused.

Ms. Ortolano also explained that she believes that Ms. Kleiner may have engaged in witness intimidation/tampering. She stated that prior to Attorney Broth meeting with any members of the Assessing Department, Ms. Kleiner conducted a staff meeting and that, although Ms. Kleiner encouraged the staff to be honest and straightforward, at some point Ms. Kleiner relayed a personal anecdote in which she explained that honesty in internal investigations does not always result in career benefit. Ms. Ortolano believes that this was an effort by Ms. Kleiner to impede the investigation.

For the foregoing reasons, Ms. Ortolano explained that she decided to report the matter to the Nashua Police Department. In addition, she explained that she has filed a complaint with the Department of Revenue Administration (Attorney Peter Roth) and also attempted to file a report with the New Hampshire Attorney General's Office (Richard Tracy advised her to contact the Nashua Police Department/the County Attorney's Office). In addition, she stated that she just learned that the Board of Tax & Land Appeals will be investigating the matter as well.

Detective Lieutenant Mederos and I explained that the Police Department would investigate the matter and that we would draw our own independent conclusions. However, we further advised that if any criminal conduct was uncovered, the City would be the "victim" and would be consulted regarding resolution of the matter. I however further requested that Ms. Ortolano provide us with any additional information that she believed would be relevant to the investigation and also requested a copy of the complaint that she filed with the Department of Revenue Administration (Ms. Ortolano agreed to forward this documentation). Detective Lieutenant Mederos and I then thanked Ms. Ortolano and Ms. Colquhoun for their time and they were escorted back to the lobby of the Police Department.

It should be noted that after the meeting, Detective Lieutenant Mederos and I both reviewed the contents of the binder and it was placed with the case file. See binder for further details.

**Nashua Police Department**                                    Page: 3

2019-06-25 0930HRS, LAURIE ORTOLANO AND LAURA COLQUHOUN

Ref: **19-46336-OF**

Captain Jon Lehto D-1

# Exhibit "H"

On 26Jun19 at approximately 0900 hours, Deputy Chief M. Carignan and I responded to Nashua City Hall, located at 229 Main Street, Nashua, NH, and met with Mayor Jim Donchess and Director of Administrative Services Kim Kleiner in the Mayor's Conference Room.  We informed Mayor Donchess and Ms. Kleiner that the Nashua Police Department had received a complaint from Laurie Ortolano regarding possible illegal activity in the Assessing Department involving mileage fraud, theft, bribery and witness intimidation.  No specific details were relayed at that time but Mayor Donchess and Ms. Kleiner were familiar with Ms. Ortolano and her allegations.  We further advised that members of the Department would be conducting the investigation and speaking with members of the Nashua Assessing Department and Human Resources (Ms. Kleiner advised that Greg Turgiss had already been interviewed by Director of Human Resources Larry Budreau) as well as Attorney Mark Broth who had been retained by the City of Nashua to conduct an independent investigation into possible illegal activity involving Greg Turgiss' mileage reports and work logs (Ms. Kleiner advised that Attorney Broth had already interviewed several members of the Assessing Department and that she and Greg Turgiss were scheduled to meet with Attorney Broth on 28Jun19). Mayor Donchess and Ms. Kleiner understood and advised that the Department would receive full cooperation from the City.

Captain Jon Lehto D-1



**NASHUA POLICE DEPARTMENT**

# Exhibit "I"

January 8, 2020

## Intradepartmental Communication

**To:** Captain Kerry Baxter
**From:** Lieutenant Daniel Mederos
**Subject:** Nashua Assessing Department Investigation (19-46336-OF)

Captain,

In June of 2019 Nashua resident Laurie Ortolano along with Nashua resident a Laura Colquhoun came forward to the Nashua Police Department to report concerns regarding illegal activity within the Nashua Assessing Department, specifically fraudulent mileage reports, theft of wages and possible bribery/improper assessing practices involving employee Greg Turgiss and possible witness tampering/intimidation involving Administrative Services Director Kim Kleiner.

Ortolano explained that she raised concerns regarding operations in the Nashua Assessing Department in the Fall of 2018. She advised that as a result of the information that she was able to gather, the City commissioned an audit of the Department which was conducted by John Griffin (Chief Financial Officer) and Kim Kleiner (Chief of Staff). Ortolano stated that she is not satisfied with the results of the audit, does not believe that it was "independent" and does not believe that her concerns have been adequately addressed. Ortolano explained that as a result of the audit, the Chief Assessor position was eliminated and Kim Kleiner was placed in charge of the Department as the Administrative Services Director. According to Ortolano, Kleiner has no experience as an assessor and was simultaneously placed in charge of Purchasing, IT, GIS, Risk Management and Human Resources, thereby inhibiting her ability to monitor the activities of the Assessing Department.

Ortolano reported specific concerns with regards to Greg Turgiss's activities. Ortolano explained that according to now former Assessing Department employee Cheryl Walley, Turgiss has a history of filing fraudulent/incorrect mileage reports, has been spoken to about those reports in the past but continues to file fraudulent/incorrect mileage reports. She had concerns with regards to Turgiss' work activities and whether he has been and is misrepresenting what he is doing while at work. She explained she hired a private investigator to follow Turgiss and that the results of that investigation were extremely concerning. Ortolano advised that she discovered a number of abatements that occurred in October 2018 that she believes may have been the result of "favoritism". Ortolano had complied large amounts of documentation supporting her concerns through Right to Know Requests from the Assessing Department.

Ortolano explained that as a result of the concerns that she has raised regarding Turgiss' activities the City has retained Attorney Mark Broth to conduct an independent investigation into Turgiss' mileage reports and work logs. Ortolano advised that she will be attempting to meet with Attorney Broth in order to discuss her concerns but believes that the scope of his investigation will be too narrowly focused.

Ortolano also explained that she believes that Kleiner may have engaged in witness intimidation/tampering. She stated that prior to Attorney Broth meeting with any members of the Assessing Department, Kleiner conducted a staff meeting and that, although Ms. Kleiner encouraged the staff to be honest and straightforward, at some point Kleiner relayed a personal anecdote in which she explained that honesty in internal investigations does not always result in career benefit. Ms. Ortolano believes that this was an effort by Kleiner to impede the investigation.

Ortolano RTK - 0077

For these reasons, Ortolano explained that she decided to report the matter to the Nashua Police Department. In addition, she explained that she has filed a complaint with the Department of Revenue Administration and also attempted to file a report with the New Hampshire Attorney General's Office who advised her to contact the Nashua Police Department. In addition, she stated that she was aware the Board of Tax& Land Appeals would be investigating the matter as well. The Board of Tax& Land Appeals is responsible for hearing appeals of property tax assessments, exemptions or refunds, whether levied by the State or its municipalities and hearing petitions for tax reassessment and determining the adequacy of reassessments.

Detective Frank Lombardi and Detective Sergeant Robert Macleod with the Criminal Investigation Division were assigned to investigate Ortolano's concerns. During this investigation detectives obtained and reviewed requested documentation from entities to include Ortolano herself, the Assessing Department to include an independent audit of the Assessing Department by David Cornell of Cornell Consultants, Attorney Both and the State Board of Tax & Land Appeals. Detectives conducted dozens of interviews to include interviews of all the members of the Assessing Department, former Assessing Department employees, the property owners of the properties identified as receiving favoritism in their assessments, members of the Department of Revenue Administration responsible for assessor certifications in New Hampshire.

In regards to the submission of fraudulent mileage reimbursement reports: All daily work and activity logs that had been generated were compared to the mileage reimbursement forms that Turgiss had submitted. In reviewing these logs and using Google maps mapping out the shortest possible distances it would have taken Turgiss to visit the properties he had on specific days. In doing so it was found Turgiss had not over reported any of his mileage and actually under recorded the mileage on some days. In speaking with Walley, she explained that on occasion Turgiss would provide her mileage reimbursement forms with errors on them where Turgiss would put mileage traveled in for days he had not worked. Walley said as part of her job she would notice these errors and provide the form back to Turgiss for correction prior to sending them to a supervisor for approval. Walley said that Turgiss would correct the forms before they were submitted for approval and payment. Walley confirmed that she had no information to suggest any of the mileage recorded on the forms was fraudulent or that Turgiss had ever been compensated for mileage on a day that he had not been traveling for work. Turgiss made no admissions to submitting fraudulent mileage reimbursement forms. He confirmed that on occasion he would accidently put mileage in on the wrong date and said these errors were always corrected before they were submitted for approval and payment. In speaking with other members of the Assessing Department they confirmed that Turgiss does the majority of the field work for both of the commercial assessors in addition to helping with some residential assessments, thus accounting for Turgiss submitting higher mileage numbers.

In regards to the theft of wages: During the month of April 2019 Ortolano reported that both she and her private investigator had observed Greg sleeping in his vehicle in parking lots in the City. During the course of this investigation it was determined that Turgiss is a salaried employee. As a salaried employee Turgiss is entitled to his salary regardless of the actual hours he works as long as he works at some point during a pay period. In speaking with Turgiss's supervisors and the Human Resources Department it appeared that Turgiss was completing the work that was required and expected of him. In speaking with Turgiss about this issue he explained that he often used his lunch break in the middle of the day to relax in his vehicle and sleep. Reviewing Turgiss's timecard from when he clocked in at work during the month of April 2019 it listed Turgiss on average clocking in to work between 0700 hours and 0730 hours. The Nashua Assessing Department is open for business between 0800 hours and 1700 hours Monday thru Friday.

In regards to the concerns of bribery/ favoritism in assessments, where Ortolano suspected that the assessed values of several properties in Nashua had been changed without going through an abatement process. During the course of this investigation contact with the Assessing Department supervisors confirmed they were aware of the changes in assessment values that Ortolano had raised concern with and these changes had previously been approved by the City. The property cards of the properties Ortolano suspected as being

involved in bribery/ favoritism were reviewed and no issues with the data on the cards was discovered. In speaking with members of the assessing community from Nashua, the state level, and independent agencies, they advised that changing the assessed value of a property for a data correction issue without going through the abatement process is an acceptable and common practice. Greg Turgiss and the property owners of the properties Ortolano suspected as being involved in bribery/ favoritism were interviewed. During these interviews, no one made any admissions to participating in any form of bribery/ favoritism involving these assessments.

In regards to the accusation of Witness Tampering: Cheryl Walley confirmed it was possible she had been the only one within the Assessing Department that had interpreted a story that Kleiner had shared during a staff meeting as Kim Kleiner telling the employees not to participate in an investigation. Walley further stated that it was also possible that she had misinterpreted Kleiner's intention of telling the story she did. All of the other Assessing Department employees and people present at the staff meeting in question were questioned and none of them reported being threatened or coerced into not participating with any investigations involving the Nashua Assessing Department. Most reported Kleiner had been encouraging them to be truthful and forthcoming during any investigations. Kleiner denied attempting to tamper with or intimidate any of the Assessing Department during the meeting in question.

In October 2019 the Board of Tax & Land Appeals issued a decision in reference to an August 6, 2019 hearing conducted where Ortolano presented her concerns about the current practices and assessments conducted by the Nashua Assessing Department and the City of Nashua provided its testimony in reference to these concerns. The decision ordered the City of Nashua to conduct a full measure and list of all of the properties within Nashua by 2022. The City of Nashua would further be required to update the board of the progress with this full measure and list at least every three months to insure it is being completed. The order also notes that the Assessing Department's policy and procedures manual is deficient in the data collection section. The order states that residential property procedures need to be added to this section and that the section in general needs to be updated and maintained moving forward. The order did not document any further issues or changes that needed to be made within the Nashua Assessing Department. It was confirmed with the Board of Tax & Land Appeals they would be following up with the Assessing Department to ensure these steps are taken.

Based on all the information gathered during the course of this investigation there is insufficient probable cause to believe any criminal offenses have occurred involving the Nashua Assessing Department stemming from the concerns raised by resident Laurie Ortolano. At this time the Nashua Police Department will close this investigation.

Respectfully,

Lieutenant Daniel Mederos

Ortolano RTK - 0079

Exhibit "J"

# NASHUA POLICE DEPARTMENT



Chief of Police Michael Carignan
Main Phone: (603) 594-3500
Website: www.nashuapd.com

28 Officer James Roche Drive
Mailing Address:  PO Box 785
Nashua, NH  03061-0785

March 15, 2021

To:  Laura Colquhoun
     30 Greenwood Dr.
     Nashua, NH  03062

SUBJECT:  Right-to-Know Request regarding City Hall and Criminal Trespass

  The Nashua Police Department Records Division received your emailed Right-to-Know request on March 15, 2021 requesting *copies of all public records of all incidents of Criminal Trespass that have happened at City Hall in Nashua, New Hampshire. These would include all Criminal Trespass where either a verbal, written and/or arrest happened during the period of January 1, 2014 thru January 31, 2021.* In response, the Nashua Police Department completed several searches to fulfill your request as there are several ways a call can be logged.

- Reports 21-4609-OF and 21-10467-AR surrounding the incident at City Hall on 01/22/2021 and Laurie Ortolano are not included. Both of the reports were provided to you from a previous Right-to-Know request.

- I found no other Incident or Arrest reports involving the charge of Criminal Trespass from 01/01/2014 thru 01/31/2021 that was specific to City Hall as the location of the violation.

- Calls for Service from 01/01/2014 thru 01/31/2021 with a location of City Hall and trespass noted in the call narrative are attached.  This will provide how a call was handled (warned, left on request, etc). Completing the search with a call type of "Criminal Trespass" with the location of City Hall yielded no results.

Redactions made to the documentation provided involve any personal and private information (HIPAA) of subjects involved to include, dates of birth, social security numbers, home addresses and phone numbers.

In the event that you have any questions, please contact me at (603) 589-1653.

Sincerely,

David P. Lavoie

David P. Lavoie
Records Manager

**Lavoie, David**

| | |
|---|---|
| From: | Laura Colquhoun <lauracolquhoun2@gmail.com> |
| Sent: | Monday, March 15, 2021 8:15 AM |
| To: | Lavoie, David |
| Subject: | Right To Know Request |

**RECEIVED**

**MAR 15 2021**

**NASHUA POLICE DEPT
RECORDS DIVISION**

****CAUTION**** this e-mail was received from outside of our organization. Do not click links or open attachments if the source is unknown to you. (npd905)

30 Greenwood Dr
Nashua, NH 03062
March 15, 2021

Mr. David Lavoie
Nashua Police Department
10 Panther Dr.
Nashua, NH 03062

Dear Mr. Lavoie:

Under the **New Hampshire Right to Know Law R.S.A. Ch. 91-A et seq.,** I am requesting copies of all public records of all incidents of Criminal Trespass that have happened at City Hall in Nashua, New Hampshire. These would include all Criminal Trespass where either a verbal, written and/or arrest happened during the period of January 1, 2014 thru January 31, 2021.

I am requesting this information be sent to me electronically and therefore no fees should be required. This information is not being sought for commercial purposes.

The New Hampshire Right to Know Law requires a response time of five business days. If access to the records I am requesting will take longer than this amount of time, please contact me with information about when I might expect copies or the ability to inspect the requested records.
If you can provide the written documentation sooner, that would be appreciated.

If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request.
Sincerely,

1

**Laura Colquhoun**
603-402-9339

--
**Laura Colquhoun**

Selective Search  From: 01/01/2014  Thru: 01/31/2021    0000 - 2359   Printed: 03/15/2021

**For Date: 12/04/2014  -  Thursday**

| Call Number | Time | Call Reason | Action | Priority |
|---|---|---|---|---|
| 14-92096 | 1403 | Phone - UNDESIRABLE | Transported to Hospital | 3 |

    Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST
       Calling Party:    CITY HALL
                         HONEYWELL, JASON
                  ID:    SENIOR PATROLMAN KEVIN M DELANEY 1451
                         Disp-14:06:09           Arvd-14:08:14  Clrd-14:27:18
     Location Change:    [NAS 1227] ELM STREET PKG GARAGE - 12 ELM ST [Modified: 12/04/2014 1410]
                  ID:    MASTER PATROLMAN JOSUE I SANTIAGO 1497
                         Disp-14:06:17  Enrt-14:08:16  Arvd-14:18:15  Clrd-14:27:18
     Location Change:    [NAS 1227] ELM STREET PKG GARAGE - 12 ELM ST [Modified: 12/04/2014 1410]
           Narrative:    **12/04/2014 1405**
                         intoxicated female was passed out in 1st floor bathrrom

                         male & female left out of rear exit (elm st) - compl wants
                         subj's trespassed from location

                         Female is Dorothy & compl unsure of male's name

           Narrative:    **12/04/2014 1413**
                         dorothy l        , ambulance enroute


**For Date: 08/12/2015  -  Wednesday**

| 15-56571 | 1442 | Initiated - CHECK CONDITIONS | FOLLOW UP | 3 |
|---|---|---|---|---|

          Primary Id:    SENIOR PATROLMAN JACLYN M MCIVER 1345
    Location/Address:    [NAS 764] CITY HALL--ELM ST. SIDE - 229 MAIN ST
                  ID:    SENIOR PATROLMAN JACLYN M MCIVER 1345
                                                 Arvd-14:42:00  Clrd-14:55:12
                  ID:    2ND YEAR SPECIAL OFF ADAM M RAYHO 8088
                         Disp-14:44:11           Arvd-14:50:29  Clrd-18:51:34
     Location Change:    [NAS 4244] NASHUA POLICE DEPARTMENT - 0 PANTHER DR [Modified: 08/12/2015 1456]
           Narrative:    **08/12/2015 1444**
                         ref: 15-56556-Crimininal Trespass


**For Date: 04/17/2017  -  Monday**

| 17-25119 | 1505 | Initiated - SUBJECT STOP | WARNED | 3 |
|---|---|---|---|---|

    Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST
                  ID:    SENIOR PATROLMAN ROBERT M LACERDA 6512
                                                 Arvd-15:05:10  Clrd-15:14:48
                  ID:    2ND YEAR SPECIAL OFF MATTHEW W GIFTOS 1278
                                                 Arvd-15:05:47  Clrd-15:14:50
           Narrative:    **04/17/2017 1513**
                         Eric was trespassed from 7 Star and Main Street Gyro on
                         behalf of management due to his disorderly behavior.


**For Date: 08/23/2017  -  Wednesday**

| 17-58088 | 0900 | Phone - UNDESIRABLE | LEFT UPON REQUEST 3 | |
|---|---|---|---|---|

    Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST
       Calling Party:    EMPLOYEE
                         TURNER, TRACEY LEE LEE
      Involved Party:    SOPHOS, ERIC PAUL
      Involved Party:    MOCHRIE, AMBER BLAIR
                  ID:    SENIOR PATROLMAN JASON K REINOLD 6514
                         Disp-09:04:21  Enrt-09:06:24  Arvd-09:08:27  Clrd-09:27:47
                  ID:    MASTER PATROLMAN-2 SCOTT D CISZEK 1410
                         Disp-09:04:30  Enrt-09:06:24  Arvd-09:08:26  Clrd-09:27:47

        Narrative:    **08/23/2017 0903**
                      male & female going through trash & taking cardboard
                      w/m named Eric, cammo shirt
                      w/f, green shorts

                      Male is now in front of city hall, smoking, talking to self

        Narrative:    **08/23/2017 0926**
                      eric and amber were trespassed and both left upon request


**For Date: 05/02/2018  -  Wednesday**

**18-31346        1352       Phone - UNDESIRABLE                      LEFT UPON REQUEST 3**
  Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST
    Calling Party:    DUGAS, ROSS
   Involved Party:    LAZO, CARLOS
              ID:     SENIOR PATROLMAN HANNAH R MERULLO 7489
                      Disp-13:57:13  Enrt-13:57:28  Arvd-14:02:06  Clrd-14:13:47
              ID:     MASTER PATROLMAN-2 DENNIS P LEE 1479
                      Disp-13:57:26  Enrt-13:57:28  Arvd-13:58:53  Clrd-14:13:47
              ID:     MASTER PATROLMAN MICHAEL A YEOMELAKIS 1373
                      Disp-14:00:56              Arvd-14:00:58  Clrd-14:13:47
        Narrative:    **05/02/2018 1353**
                      on the main floor in the rotunda next to mv - male in the
                      men's room, in a stall with the door locked - highly
                      intoxicated and will not come out

        Narrative:    **05/02/2018 1419**
                      CARLOS WAS FOUND IN BATHROOM STALL INTOXICATED AND WAS
                      DRINKING SEVERAL MALT BEVERAGES....PER JENNIFER
                      DESHAINES....NASHUA RISK MANAGEMENT....LAZO WAS ISSUES A ONE
                      YEAR TRESPASS FROM CITY HALL AND ITS CURTILAGE. HE WAS
                      ADVISED THAT IF HE HAD BUSINESS IN CITY HALL TO CONTACT NPD
                      AND REQUEST A KEEP THE PEACE..


**For Date: 05/29/2018  -  Tuesday**

**18-38497        0016       Initiated - SUBJECT STOP                     WARNED            3**
  Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST
   Involved Party:    HUARD, CORY
              ID:     PATROLMAN JONATHAN P TURCOTTE 8460
                                              Arvd-00:16:00  Clrd-00:25:58
        Narrative:    **05/29/2018 0047**
                      Cory was "on the Nod" sitting on the benches next to City
                      Hall. Cory was warned about trespassing on the property and
                      told to leave. Cory was warned for his disorderly behavior
                      due to him knowingly creating a condition which is hazardous
                      to himself in a public place by any action that serves no
                      legitamate purpose.


**For Date: 07/23/2019  -  Tuesday**

**19-49067        1403       Phone - DISORDERLY                      LEFT UPON REQUEST 2**
  Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST
    Calling Party:    CITY HALL EMPLOYEE
                      PITCUCH, PATRICIA
   Involved Party:    WILLIAMS, CHARLES H
              ID:     SENIOR PATROLMAN HANNAH R MERULLO 7489
                      Disp-14:04:34  Enrt-14:05:15  Arvd-14:09:04  Clrd-14:23:25
              ID:     MASTER PATROLMAN ALEXANDER P GANGI 1472
                      Disp-14:05:13  Enrt-14:05:15  Arvd-14:05:54  Clrd-14:23:25

|  | ID: | MASTER PATROLMAN DANIEL P HAYDEN 6887 |
|--|-----|------|

                                    Arvd-14:05:51  Clrd-14:14:30
        Narrative:   **07/23/2019 1403**
      Modified By:   **07/23/2019 1404**
                     in city clerks office -
                     male that was just removed from transit is not in office
                     yelling at employees about being trespassed from transit
                     center

        Narrative:   **07/23/2019 1404**
                     city's clerks office is in rear of city hall -

        Narrative:   **07/23/2019 1405**
                     subj is Michael Treadwell - b/m, rust color shirt, blue
                     pants

        Narrative:   **07/23/2019 1411**
                     William was upset with City Hall about being trespassed from
                     the Transit Center and spoke to employees who confirmed
                     this. He was advised to leave the area and did so upon
                     request. He was not on transit property at this time. Left
                     upon request.


**For Date: 08/29/2019  -  Thursday**

**19-57720      1648**     **Phone - UNDESIRABLE**              **CALL CANCELLED**     **3**
  Location/Address:   [NAS 764] CITY HALL - 229 MAIN ST
     Calling Party:   MCKENNEY, WILLIAM
        Narrative:   **08/29/2019 1648**
                     community development offices on second floor subject is
                     refusing to leave

        Narrative:   **08/29/2019 1650**
                     compl. advised female left and would like call cancelled.
                     Compl. does not need subj. trespassed or spoken to.


**For Date: 05/12/2020  -  Tuesday**

**20-22458      2340**     **Initiated - SUBJECT STOP**              **ALL OKAY**     **3**
  Location/Address:   [NAS 764] CITY HALL - 229 MAIN ST
   Involved Party:   COLCORD, ERIC MICHAEL
   Involved Party:   PEREIRA, JOHN ANIBAL
             ID:     PATROLMAN MICHAEL P CASEY 10611
                                    Arvd-23:40:00  Clrd-23:45:35
             ID:     PATROLMAN JOSEPH C PEACH 10015
                     Disp-23:40:48  Enrt-23:40:51  Arvd-23:42:52  Clrd-23:45:35
        Narrative:   **05/13/2020 0044**
                     Johnny and Eric were hanging out behind City Hall. They
                     stated that they were leaving. Johnny was wearing pants and
                     a dark hooded sweatshirt and had a bicycle with him. Eric
                     was wearing jeans and a red jacket.

                     John was trespassed from the Nashua Telegraph per Heather
                     Henline and myself from an incident that occurred on March
                     03. Please reference 20-8628 for further regarding that
                     incident. All okay.


**For Date: 12/28/2020  -  Monday**

**20-65617      1624**     **Phone - UNDESIRABLE**                **WARNED**     **3**
  Location/Address:   [NAS 764] CITY HALL - 229 MAIN ST
     Calling Party:   MIGNEAULT, MICHAEL @ 229 MAIN ST - NASHUA, NH 03060
   Involved Party:   HOLM, GREGORY A
             ID:     SENIOR PATROLMAN MATTHEW R FRIEND 8579

```
                     Disp-16:27:36  Enrt-16:28:28  Arvd-16:30:59  Clrd-16:38:21
            ID:      1ST YR OFC CERT2 KYLE W DONAHUE 11909
                     Disp-16:27:36  Enrt-16:28:28  Arvd-16:33:53  Clrd-16:38:21
            ID:      SERGEANT ANDREW D LANE 1484
                     Disp-16:31:53                  Arvd-16:33:50  Clrd-16:38:21
      Narrative:     12/28/2020 1625
                     compl states someone snuck into building acting disorderly
                     right now.

      Narrative:     12/28/2020 1625
                     compl has never seen them before. compl will let officer in
                     side building.

      Narrative:     12/28/2020 1626
    Modified By:     12/28/2020 1627
                     the man is demanding to see the mayor and got in compl face.

      Narrative:     12/28/2020 1640
                     Gregory was upset that he had been trespassed from the
                     garage so he went to city hall in hopes to speak with the
                     mayor about the issue. Gregory was unaware that city hall is
                     currently closed and was informed he would need to make an
                     appointment. Gregory left city hall and I attempted to
                     provide him with advice on the situation, however he refused
                     to listen. Lastly Gregory was warned not to enter city hall
                     unless he makes an appointment first due to city hall being
                     closed. WARNED.
```

**For Date: 01/22/2021  -  Friday**

```
21-4609        0925      Phone - UNDESIRABLE                    LEFT UPON REQUEST 2
     Primary Id:     MASTER PATROLMAN TIMOTHY J ROACH 1481
Location/Address:    [NAS 764] CITY HALL - 229 MAIN ST Apt. #3RD F
 Involved Party:     LLOYD, MINDY M
 Involved Party:     LEONARD, CELIA
 Involved Party:     ORTOLANO, LAURIE A
            ID:      MASTER PATROLMAN-2 DENNIS P LEE 1479
                     Disp-09:28:03  Enrt-09:29:28                 Clrd-09:34:18
            ID:      MASTER PATROLMAN MICHAEL A YEOMELAKIS 1373
                     Disp-09:28:03  Enrt-09:29:28  Arvd-09:45:17  Clrd-10:03:37
            ID:      SERGEANT ANDREW G KARLIS 1311
                     Disp-09:29:20  Enrt-09:29:28                 Clrd-09:34:13
            ID:      SERGEANT CHRISTOPHER D CARON 1480
                     Disp-09:29:25  Enrt-09:29:28  Arvd-09:33:51  Clrd-09:54:20
            ID:      MASTER PATROLMAN TIMOTHY J ROACH 1481
                     Disp-09:29:40  Enrt-09:29:43  Arvd-09:30:34  Clrd-10:03:37
      Narrative:     01/22/2021 0926
    Modified By:     01/22/2021 0928
                     3rd floor next to auditorium, requesting Police for a woman
                     that forced her way into their office and will not leave

      Narrative:     01/22/2021 0928
                     Lori Ordolano, purple winter coat, grey backpack- She wants
                     to review documents. she has a lawsuit against the city and
                     was told to speak with an attorney but they are appointment
                     only. She refuses to leave

      Narrative:     01/22/2021 0929
                     woman is sitting in front of the door to their office now.
                     they feel threatened by her presence, no weapons visible

      Narrative:     01/22/2021 0957
    Modified By:     01/22/2021 1020
                     Laurie was sat down in an upstairs corridor area of City
                     Hall.  Was not causing a scene on arrival and appeared calm.
                      She was upset as reported she has been trying to get
                     appointment and paperwork stamped by city hall and they
                     continue to not assist her.  Reports this has been going on
                     for months.  She apparently assists people in property tax
```

Selective Search  From: 01/01/2014  Thru: 01/31/2021     0000 - 2359    Printed: 03/15/2021

abatement/reductions and needed papers stamped.

Spoke with Celia from City Hall who is Deputy Corporation
Counsel for city?  She said this is ongoing issue with
Laurie and that personnel from NPD are aware.  No
allegations of any threats made but stated that Celia needed
to leave now.  Wanted her trespassed but allowed at City
Hall if she has an approved appointment.  Reported the City
have had a lot of contact with Laurie via email and that
there are pending lawsuits with the City.

Lauries was asked to leave.  She left willingly but stressed
her frustration indicating that the City do not communicate
with her or assist her.  She was informed she is being
trespassed for one year and is not allowed at City Hall
unless with an appointment.  She was advised that she could
face arrest from Criminal Trespass if she attends City Hall
without an appointment.  She understood.

No offences alleged or apparent

Refer To Incident:    21-4609-OF