## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **Laurie Ortolano,** | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:22-cv-00326-LM** |
| | ) | |
| **The City of Nashua,** *et al.*, | ) | |
| *Defendants*. | ) | |
| | ) | |

### MAYOR JAMES DONCHESS AND
### CHIEF FINANCIAL OFFICER JOHN GRIFFIN'S
### MEMORANDUM OF LAW IN SUPPORT OF THEIR
### <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Defendants James Donchess, Mayor of the City of Nashua, New Hampshire, and John

Griffin, Chief Financial Officer ("CFO") of the City of Nashua, New Hampshire (together,

"Defendants"), by counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

("FRCP"), respectfully submit as follows:

### INTRODUCTION

Ms. Ortolano seeks to impose a burdensome lawsuit and claims that lack merit on

Nashua's public servants for their exercise of discretionary functions as City employees and the

exercise of their own Constitutional rights.  There are no plausible claims against Mayor

Donchess or CFO Griffin for any of the counts asserted against them:

> One – Violation of First Amendment Free Speech

> Two – Violation of First Amendment Petition for Redress of Grievances

> Three – Violation of Fourteenth Amendment Substantive Due Process

> Four – Violation of Fourteenth Amendment Procedural Due Process

> Five – Violation of New Hampshire Constitutional Right to Access Governmental
> Proceedings and Records

Six – Civil Conspiracy

Ten – Intentional Infliction of Emotional Distress ("IIED")

Further, there are no plausible claims that either Mayor Donchess or CFO Griffin lacked good faith, acted in a wanton or reckless manner, is personally liable for acting outside the scope of their employment, or is liable in any supervisory capacity. The claims against Mayor Donchess and CFO Griffin are also barred under the legal theories discussed in detail below including various forms of immunity and, at least in part, the statute of limitations. Accordingly, the Court should enter Judgment on behalf of Mayor Donchess and CFO Griffin.

## FACTUAL BACKGROUND

In the interest of limiting the length of this submission, the underlying facts are discussed throughout this Memorandum.

## ARGUMENT

### I.   STANDARD OF REVIEW

#### a.  Motion For Judgment On The Pleadings

Motions for judgment on the pleadings are considered under the same standard as motions submitted under FRCP 12(b)(6). *E.g.*, *U.S. v. Wood*, 925 F.2d 1580 (6th Cir. 1991) (citing *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir. 1989)); *Carney v. Town of Weare*, 2017 DNH 031, *1-2 (Feb. 21, 2017); *Petrello v. City of Manchester*, 2017 DNH 053, *1-2 (Mar. 21, 2017). The claims asserted must be "plausible." *Fin Brand Positioning, LLC v. Take 2 Dough Productions, Inc.*, 758 F.Supp.2d 37, 2010 DNH 189 (2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Court accepts as true "well-pleaded facts" and draws "*reasonable inferences in the plaintiff's favor.*" *Id.* (citing *Martino v. Forward Air, Inc.*, 609 F.3d 1, 2 (1st Cir. 2010)) (emphasis added). At the same time, the Court need not accept "legal conclusions

couched … as fact[] or threadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Benet*, 640 F.3d 1, 12 (1st Cir. 2011) (quotation mark and ellipsis omitted). A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Artus v. Town of Atkinson*, 09-CV-87-PB, 2009 DNH 154, *7 (Oct. 14, 2009) (quoting *Ashcroft*, 129 S. Ct. 1937, 1949 (2009)). In considering whether a complaint meets this standard, "the court should use its 'judicial experience and common sense.'" *Acosta v. Quality Granite and Cabinetry, LLC, et al.*, 18-CV-274-JD, 2018 DNH 196 (Oct. 19, 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### b. Consideration Of Extrinsic Documents Referenced In The Complaint Or Which Are Public Records

A court may "consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009) (internal quotation marks omitted). Judicial notice may include "matters of public record." *E.g.*, *Wood*, 925 F.2d 1480 (citing *Louisiana ex rel. Guste v. United States,* 656 F. Supp. 1310, 1314 n. 6 (W.D.La. 1986)); *Acosta* 2018 DNH 196, *3. *See also* Fed. R. Evid. 201. "Documents from prior state court adjudications" may be considered. *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (quotation marks omitted). The Court may consider affirmative defenses "so long as the facts establishing the defense are clear from the face of the complaint" or other properly considered materials. *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (citing *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019)). *See also Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) ("courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

In this case, Ms. Ortolano repeatedly references her arrest.  *E.g.*, Complaint at page 4, and ¶¶83-85, 112, 114, 117, 119, 130-139, 195.  As a result, the Court should take judicial notice of Ms. Ortolano's guilty plea to a violation of RSA 635:2 stemming from her arrest for trespassing.  *See* Exhibit A.  Further, Ms. Ortolano opposed the motion to dismiss by co-defendants Inception and Mr. Feoli, arguing that her guilty plea is a public record.  Objection (Document 33-1) at p. 9, n. 1 (12/5/22).  To the extent that Ms. Ortolano's allegations contradict her conviction, the Court should disregard them.  To the extent Ms. Ortolano alleges that her arrest "chilled" her rights or kept her from City Hall, such allegations should not be viewed as plausible based on her guilty plea, which included a one-year period of no entry at City Hall / legal bureau (without a prior appointment).  *See* Exhibit A at Page 3.

By including allegations regarding public exchanges with Mayor Donchess, *e.g.*, Complaint at ¶¶103, 127 to 129, and 138, including alleged direct quotes, the Court should find that the complete recordings of the alleged meetings may be considered in the context of this Motion.  The recording of the June 21, 2022 meeting referenced at Paragraph 103 is available at https://www.youtube.com/watch?v=dwPkzXlYRH4.  The recording of the July 20, 2022 meeting, referenced at Paragraphs 127 to 129, is available at: https://www.youtube.com/watch?v=OvwbDCBwcEA.  These and the other recordings cited below constitute public records.  *E.g.*, RSA 91-A:1-a, III ("'Governmental records' means any information created, accepted, or obtained by, or on behalf of, any public body, or a quorum or majority thereof, or any public agency in furtherance of its official function."); RSA 91-A:4, II (right to inspect "tapes" of meetings).  *See also* Fed R. Evid. 201.

Finally, Ms. Ortolano references her website, http://www.good-gov.org.  Complaint at ¶¶97-98.  The Court should find that her website postings may be considered in the context of

this Motion to evaluate Ms. Ortolano's claims without converting this Motion to one for summary judgment.

## II.      PLAINTIFF CANNOT MEET THE STANDARD TO ESTABLISH HER FIRST AMENDMENT CLAIMS AT COUNTS I AND II

Ms. Ortolano's First Amendment claims cannot survive judgment on the pleadings.  Her rights under the free expression and petition for redress of grievances clauses were not violated.  First, while speaking at public meetings or hearings, her speech was appropriately limited based on City Ordinances governing public meetings.  Second, Ms. Ortolano's allegations of her continued assertion of her First Amendment rights show that her rights were not chilled.  Third, there is no allegation of any specific actions taken by CFO Griffin that chilled Plaintiff's First Amendment rights.  Finally, to the extent that Ms. Ortolano claims Mayor Donchess or CFO Griffin chilled her rights through their own public statements, she ignores their First Amendment rights.  Notably, there is no claim of defamation against Mayor Donchess or CFO Griffin.

### a.  Plaintiff's First Amendment Rights Were Not Violated By The Enforcement Of City Ordinances Regulating Orderly Conduct of Official City Meetings

At Paragraphs ranging from 99 to 103, 127 to 129, and 138 of her Complaint, Plaintiff alleges interference by the Mayor during her public comments during public City meetings.  To the extent that these allegations are incorporated into and form a basis for Counts One or Two against Mayor Donchess, the Court should enter Judgment for the defense.

Under the Ordinances governing public comment, Section 5-14(A)(9a) provides for comment at the start of meetings that is related to issues on the meeting agenda:

> A period not to exceed 15 minutes for the acceptance of orally presented communications or comments from the public or others *relative to resolutions, ordinances, or communications to be accepted in Subsection A(9b) upon which final action is expected to be taken at the meeting*. If there is a reasonable expectation by the President of the Board that final action shall be taken on such an item not on the agenda, the President shall allow comment *on that item of business*. Upon vote of a majority of the Board

members present, the time for orally presented communications or comments may exceed 30 minutes due to additional speakers wanting to comment

(Emphasis added), available at https://ecode360.com/8728300 and attached as Exhibit B.

Section (A)(9b) provides:

Communications requiring final approval by the Board of Aldermen, including but not limited to awards of contracts and expenditure of funds

*Id*. Further, Section 5-14(B) provides:

Public comment at the beginning of the meeting, which comments *shall be germane* to the meeting's agenda, and shall be limited to 30 minutes total unless there are others who wish to speak, and then may be extended by a majority of the public body present for a time certain

*Id*. (emphasis added). General comments, whether related or unrelated to the agenda of a meeting, may be made at the end of a meeting. *See* Section 5-14(B)(2). Further, Section C provides, in part:

Public comment allowed in Subsections A and B above shall be conducted as follows:

* * *

(5) Each speaker is limited to speaking once per public comment period and is limited to three minutes during the first public comment period and three minutes during the second comment period, which time may not be deferred to another speaker or speaker.

* * *

(9) Excessive repetition and irrelevant remarks are discouraged

(10) The presiding officer has authority to terminate the remarks of any speaker when such remarks do not adhere to this chapter or other applicable law.

For all comments, Section 5-31, the Code of conduct provides:

C. Debate is an essential feature of democratic government and, as such, requires clarity and honesty on the part of each speaker and attentiveness on the part of all members.

D. Indecent, vulgar or disorderly language is always inappropriate and demeans the entire Board.

6

E. While it is always proper to question or condemn the nature or consequences of a proposed measure, it is never proper to question the motives or good faith of that measure's proponents or opponents.

The New Hampshire Supreme Court has affirmed the enforcement of similar speech regulations of public meetings.  *E.g.*, *State v. Clay*, 2019 WL 1970210 (N.H. 2019) (unpublished disposition) (affirming sufficiency of evidence for conviction following defendant's disorderly conduct arrest after he violated Board of Selectmen rules regarding public comment).  The above Ordinances enhance free speech by providing an orderly process during public meetings balanced against the government's need to conduct business.  *See State v. Albers*, 113 N.H. 132, 138 (1973) ("The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.") (quoting *Cox v. Louisiana*, 379 U.S. 536, 554 (1965)).

Ms. Ortolano alleges that she commented during a July 20, 2022 public meeting. Complaint at ¶¶127-129.  She purports to describe her comments and the exchange that followed.  *Id*.  Rather than address any issue on the agenda for the meeting, her comments criticized one particular City employee.  Under the above rules, the Mayor (who was the chair of the meeting) properly interrupted.  The video from the July 20, 2022 meeting is available at https://www.youtube.com/watch?v=OvwbDCBwcEA.  The comments by Ms. Ortolano start at approximately 54 seconds and last until approximately 4 minutes 8 seconds.  At the end of the July 20, 2022 meeting, Ms. Ortolano continued her comments at 17 minutes 51 seconds to 20 minutes 30 seconds.  Of note, the video contains a parental advisory for the first 10 seconds due to Ms. Ortolano referring to the Mayor and others as "cunty" or the "cuntiest."  The particular words have been muted on the video.  Ms. Ortolano claimed that this term was commonly used on British television to "refer[s] to something distasteful or you're really irritated by it."  *Id*.  To

give context to these exchanges, at a prior meeting, Ms. Ortolano criticized a female City

employee as having "the cuntiest behavior I have ever seen out of somebody.  Ridiculously

inappropriate."  Board of Assessors Meeting (8/26/21) at 45:11, available at

https://www.youtube.com/watch?v=MEvMnpqaLRg.

Ms. Ortolano also alleges Mayor Donchess interrupted her "[o]n multiple occasions"

during her public criticism of "a particular public official."  Complaint at ¶138.  She alleges that

such interruption "chilled" her First Amendment rights.  *Id*.  The details of the exchanges, which

are omitted from this paragraph, make all the difference.  By way of example, at one Finance

Committee Meeting, the Mayor sought to limit Ms. Ortolano's comments at the start of the

meeting to those germane to the agenda.  Finance Committee Meeting (12/15/21) at 1:37 to 3:59,

available at https://www.youtube.com/watch?v=AfWv5m0t92Q&t=1631s.  Nevertheless, Ms.

Ortolano continued her general comments about a particular City employee that was not germane

to the agenda of the meeting.  Ms. Ortolano issued further comments from 23:40 to 26:30 in

which she continued to criticize a City employee and expressed her intent to submit further right

to know requests and lawsuits.  *Id*.

Restrictions on speech must be content-neutral based on time, place, and manner.  *E.g.*,

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 46 (1983) ("In addition to

time, place, and manner regulations, the State may reserve the forum for its intended purposes,

communicative or otherwise, as long as the regulation on speech is reasonable and not an effort

to suppress expression merely because public officials oppose the speaker's view."); *State v.

Comley*, 130 N.H. 688, 692 (1988) (affirming disorderly conduct conviction under RSA 644:2 by

disrupting official State proceeding while attempting to question Governor-elect); *Albers*, 113

N.H. at 138 ("the legislature may adopt reasonable and nondiscriminatory regulations concerning

the time, location, and manner of peaceful demonstrations in order to protect a substantial state interest.").  Among other legitimate interests are the "'disruption of the normal functions of the public facility.'"  *Albers*, 113 N.H. at 137-38 (quoting *Davis v. Francois*, 395 F.2d 730, 733 (5th Cir. 1968)).  Restrictions on speech may not be used to "selectively suppress[] some points of view."  *Police Dept. of Chicago v. Mosley*, 408 U.S. 992 (1972).

The Ordinances pass Constitutional muster both facially and as applied.  Comments at the start of a meeting were to be germane to the meeting.  Comments at the end of a meeting were an open forum.  Ms. Ortolano was afforded time to speak her views at numerous meetings and at the meetings on June 21, 2022 and July 20, 2022.  Accordingly, her viewpoint was not suppressed as there were "ample alternative channels of communication."  *Grace*, 461 U.S. at 177 (internal quotation marks omitted).  Based upon the City Ordinances, the Mayor as Chair of the meeting properly limited Ms. Ortolano's irrelevant comments during the time afforded for comments germane to the meeting and properly attempted to limit her use of obscenities.  Such conduct does not amount to an improper restriction on Ms. Ortolano's First Amendment rights.  Accordingly, the Court should enter judgment in Defendants' favor on Counts I and II.

### b.  Ms. Ortolano's Continued Conduct Shows That Her First Amendment Rights Have Not Been Chilled

Based on the Complaint and the above-referenced public records, Ms. Ortolano has continued making public comments.  Complaint at ¶¶97-98, 127-129, 138, Count One, ¶144, and ¶146.  Plaintiff references her website, http://www.good-gov.org, which is relevant to determining whether her rights have been "chilled."  Yet, she continued commenting publicly on June 21, 2022 and July 20, 2022, the dates of the meetings referred in Paragraphs 97 to 98 and 127 to 129 of the Complaint.

Further, based upon public records of City meetings, Ms. Ortolano has commented

9

numerous other times since these exchanges.  Attached as Exhibit C is a 268-page document

containing the transcribed comments by Ms. Ortolano from September 12, 2018 to October 13,

2022 with links to the YouTube video recordings of each meeting at which she offered public

comment.[1]  At least 11 other meetings at which Ms. Ortolano commented, not listed in Exhibit

C, include: Board of Assessors (11/15/18) (no video link at present); Board of Assessors (3/7/19)

(no video link at present); Board of Assessors (4/4/19) (no video link at present); Board of

Assessors (4/18/19) (no video link at present); Board of Assessors (5/2/19) (no video link at

present); Board of Assessors (3/4/21) (no video link at present); Board of Public Works Meeting

(9/23/21) at 6:05, available at https://www.youtube.com/watch?v=n-iTQDFISi8; Police

Commissioners Work Study Group (10/18/21) at 5:35 and 1:51:08, available at

https://www.youtube.com/watch?v=ApkF1qLuMZo; Infrastructure Committee Meeting

(12/8/21) at 20:31 and 3:03:05, available at https://www.youtube.com/watch?v=I2UPGqgbIxc;

Board of Assessors (5/19/22) at 4:37, available at

https://www.youtube.com/watch?v=YpKpQBPnzz4; Board of Assessors (6/2/22) at 34:38,

available at https://www.youtube.com/watch?v=ZnhMWRTJLuM;    As discussed above, all the

recordings of her comments are public records.

 In *Artus*, 2009 DNH 154, *8, the Court summarized the standard to establish a Section

1983 claim based on the First Amendment as:

-  intent to chill expression (citing *Tatro v. Kervin*, 41 F.3d 9, 18 (1st Cir. 1994); and

-  the "action must be such that it would curb the expression of a "reasonably hardy individual[]."  (citing *Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209, 1217 (1st Cir. 1989)).

---

 [1] The transcription of Ms. Ortolano's comments is for convenience only.  The videos referenced are the public record.

In *Artus*, the Court found that the government official's alleged comment would not deter a reasonably hardy person:

> The plaintiffs' harshest specific allegation is that Consentino called one person "angrily demand[ing] ... an explanation as to why his family 'signed this shit.'"  (Am. Compl., Doc. No. 18-2, ¶ 26.)  A "reasonably hardy" person, however, would not remove his name from a petition whose goals he supported because of such demands even if the alleged speaker is both the chief of police and director of the local Elderly Affairs Office.

Artus 2009 DNH 154 at 9.  The Court also noted that the standard from *Agosto*, 889 F.2d 1209, applied more broadly than just employment contexts.  *Artus*, 2009 DNH 154, *8, n. 3 (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005)).  In *Bennett*, the Court held:

> [G]overnment officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a "*de minimis* inconvenience to her exercise of First Amendment rights."  *Constantine,* 411 F.3d at 500 (internal quotation omitted); *see also Bart [v. Telford]*, 677 F.2d [622,] 625 [(7th Cir. 1989)] ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . .").

In this case, Ms. Ortolano's allegations of her ongoing assertion of her First Amendment rights in addition to the public records provided undercut any claim that her First Amendment rights were chilled.  Even after the filing of this lawsuit, as recently as October 13, 2022.  At very most, the interruptions to enforce City Ordinances were "de minimis inconveniences" that would not deter a "reasonably hardy person" and did not deter her.  Any other alleged conduct did not deter Ms. Ortolano from continuing her public comments.  Accordingly, Plaintiff's claims that her First Amendment rights were chilled are not plausible and the Court should enter judgment in Defendants' favor as to Counts I and II.

### c.  The Public Expressions By Mayor Donchess and CFO Griffin Are Protected By The First Amendment

Mayor Donchess and CFO Griffin have their own First Amendment rights.  There is no allegation or claim that either defamed Ms. Ortolano.  Instead, Ms. Ortolano alleges:

Paragraph 26 – Interactions with the Mayor at "coffees with the Mayor";

Paragraph 34 – Comments by CFO Griffin to the Union Leader regarding City policies;

Paragraph 99 – Other unspecified comments made by Mayor Donchess and others without mentioning CFO Griffin;

Paragraph 103 – Mayor Donchess claimed "one citizen" submitted 1,200 Right to Know ("RTK") requests over the preceding years;

Paragraphs 127 to 129 – Mayor Donchess interrupted her on one occasion, as discussed above; and

Paragraph 138 – Mayor Donchess interrupted her on unspecified other occasions, as discussed above.

The exercise of First Amendment rights by the Mayor or CFO should not form the basis of claims against them based on violation of the Plaintiff's First Amendment rights.  There is no defamation claim against Defendants and no basis for one.

For example, Paragraph 103 of the Complaint claims that Mayor Donchess singled out "one citizen's" 1,200 Right to Know requests during a public meeting.  The exchange between Ms. Ortolano and Mayor Donchess is available at 1:13:44 to 1:22:06 during the June 21, 2022 Budget Committee Meeting, available at https://www.youtube.com/watch?v=dwPkzXlYRH4.  In her comments, Ms. Ortolano advocated for additional Right to Know resources.  The Mayor responded regarding the amount of resources already devoted by the City to Right to Know requests, particularly the 1,200 requests by "one taxpayer" over the preceding years, and the need for an additional City employee involved in addressing RTK requests.  The Mayor did not mention Ms. Ortolano's name but stated that she was aware of the City's burden.

Also, at Paragraph 26, Plaintiff claims that Mayor Donchess "essentially call[ed]" her a liar.  Yet, the Mayor's response to Ms. Ortolano's claims, in which he contradicts her claims, does not violate her First Amendment rights.  Instead, he asserted his own free speech rights.

Plaintiff does not even claim his assertion was defamatory.

In other public fora, Ms. Ortolano has discussed her Right to Know requests, for example, in multiple postings on www.good-gov.org, as well as at various public hearings.  *E.g.*, Budget Committee Meeting (6/21/22) at 1:13:43 and 1:34:30 (complaining about RTK inefficiency) (https://www.youtube.com/watch?v=dwPkzXlYRH4); Finance Committee Meeting (8/4/21) at 54:03 to 59:01 (complaining about RTK requests deferred to legal department) (https://www.youtube.com/watch?v=_1TZ-K9u8mE);[2] Finance Committee Meeting (12/15/21) at 23:40 to 26:30 (complaining about RTK issues) (https://www.youtube.com/watch?v=AfWv5m0t92Q&t=1631s); Finance Committee meeting (6/16/21) at 32:40 to 35:14 (threatening to submit RTK requests every two weeks) (https://www.youtube.com/watch?v=HMomc3d1LPU).  Given the *Agosto* standard and Ms. Ortolano's ongoing speech alleged in her Complaint and apparent from public records, the Court should enter judgment for Defendants on Counts I and II.

### d.  Plaintiff Alleges No Other Conduct By Mayor Donchess Or CFO Griffin That Affected Her First Amendment Rights

There are no allegations that either of Defendants was involved in Ms. Ortolano's arrest, threatened her with arrest, called the police, or provided any input into others calling the police. *See* Complaint, Preliminary Statement at p. 4, and ¶¶83-85, 112, 114, 117, 119, 130-139, 195. There is no allegation that either Defendant was aware of or endorsed the involvement of the police related to Ms. Ortolano.

---

[2] RSA 91-A:5 exempts certain records from disclosure.  There is nothing untoward about a municipal legal department reviewing records requested to evaluate whether they are exempted from production in response to a request.

In addition, there are no factual allegations to support a Section 1983 claim against CFO Griffin for a violation of Ms. Ortolano's First Amendment Rights.

Plaintiff's general references to "all defendants" or "defendants and their agents" are insufficient to state a claim against Mayor Donchess or CFO Griffin.  For example, Ms. Ortolano alleges at Paragraphs 114 and 117 that "defendants" tried to "get her arrested to silence her" and "were fully engaged in trying to get Ortolano arrested."  Such conclusory allegations lack any statement as to any conduct by Mayor Donchess or CFO Griffin.  Such allegations cannot plausibly support any claims against them.

Further, Plaintiff alleges that her arrest limited her First Amendment rights.  As discussed above, the Court should take judicial notice of Ms. Ortolano's guilty plea.  *See* Exhibit A.  To the extent that Ms. Ortolano seeks to relitigate or collaterally attack her guilty plea, the doctrine of collateral estoppel "bars a party to a prior action from relitigating any issue or fact actually litigated and determined in the prior action" so long as "(1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; and (3) the party to be estopped must have appeared as a party in the first action." *In re Michael E.*, 162 N.H. 520, 523-24 (2011).[3]

Finally, New Hampshire's Right to Know law does not require City officials or employees to engage in conversations with members of the public.  It requires holding open meetings and producing documents.  *See*, *e.g.*, RSA 91-A:2 (open meeting law) and A:4, I (right to inspect records).  To the extent that Plaintiff claims her First Amendment rights were violated

---

[3] Ms. Ortolano recently sought to have her conviction expunged.  When an attorney for the City intervened in opposition, she reported that attorney to the Supreme Court's Professional Conduct Committee.

because the Mayor or CFO would not interface verbally with her, *e.g.*, Complaint at paragraph

19, such a claim fails.

### III.   **PLAINTIFF'S CLAIMS ARE BARRED BY IMMUNITY**

#### a.   **The Allegations Are Made Against Mayor Donchess And CFO Griffin In Their Official Capacities**

The complaint makes no effort to distinguish between personal or official capacity, but

all allegations against Defendants relate to alleged conduct that occurred at City Hall and/or

while Mayor Donchess and CFO Griffin were acting as City officials.  *E.g.*, Complaint at ¶¶3, 5.

There are no allegations that either of them acted privately against Ms. Ortolano, for example, by

interfering with contractual relations, physically injuring her, or defaming or slandering her.

In determining the capacity in which a public official is sued, the First Circuit Court of

Appeals follows the "course of proceedings" test.  *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir.

2004).  The *Powell* Court explained:

> We now join the multitude of circuits employing the "course of proceedings" test, which appropriately balances a defendant's need for fair notice of potential personal liability against a plaintiff's need for the flexibility to develop his or her case as the unfolding events of litigation warrant.  In doing so, we decline to adopt a formalistic "bright-line" test requiring a plaintiff to use specific words in his or her complaint in order to pursue a particular defendant in a particular capacity.  However, *we do not encourage the filing of complaints which do not clearly specify that a defendant is sued in an individual capacity*.  To the contrary, it is a far better practice for the allegations in the complaint to be specific.  A plaintiff who leaves the issue murky in the complaint runs considerable risks under the doctrine we adopt today.  Under the "course of proceedings" test, courts are not limited by the presence or absence of language identifying capacity to suit on the face of the complaint alone.  Rather, *courts may examine "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability."*

(Emphasis added).  In this case, Ms. Ortolano's allegations stem from conduct related to RTK

requests, interactions during public meetings or events that took place at City Hall.  The limited

allegations against Mayor Donchess or CFO Griffin stem solely from their official roles as City

employees.  The allegations that "defendants" took her "criticism" personally, Complaint at ¶24,

and the claim for punitive damages, Complaint at Section V.B, page 66, do not convert the

Complaint into one seeking to impose personal liability.  Accordingly, given "the substance of

the pleadings and the course of proceedings," the Court should enter a defense judgment on any

claim that either Defendant is personally liable.

> **b.  The Claims Against Mayor Donchess Are Barred By Legislative Immunity**

Ms. Ortolano's allegations related to Mayor Donchess's work as chair of public meetings

fail under legislative immunity.  *E.g.*, Complaint at ¶¶103, 127-129, 138.  This form of immunity

is well summarized in *Artus*, 2009 DNH 154, at *11-12, as:

> "Local legislators are entitled to absolute immunity from § 1983 liability for their
> legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).  Courts use a
> functional test to determine what activities are legislative: "Whether an act is legislative
> turns on the nature of the act, rather than on the motive or intent of the official
> performing it."  *Id.* at 54.  Once a court determines that an act is legislative, the court
> ought not consider the motives of the legislator: "The claim of an unworthy purpose does
> not destroy the privilege."  *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (discussing
> federal legislative immunity; after *Bogan*, the same principles apply to local legislative
> immunity).  To subject a legislator to the burdens of discovery and a trial based on a
> plaintiff's allegations of illicit motives would undermine the goals of legislative
> immunity.  Legislative immunity is particularly important at the local level because if it is
> not granted, local legislators, who are often "part-time citizen-legislator[s]," might be
> "significantly deter[red]" from "service in local government, where prestige and
> pecuniary rewards may pale in comparison to the threat of civil liability."  *Bogan*, 523
> U.S. at 52.  Finally, if the activity at issue is legislative, the actor may not be held liable
> even if the activity violates the Constitution, so long as it is not "flagrantly violative of
> fundamental constitutional protections."  *Nat'l Ass'n of Soc. Workers v. Harwood*, 69
> F.3d 622, 634 (1st Cir. 1995).

> Legislative immunity will protect an individual who, when acting as a moderator during
> legislative deliberations, enforces a rule to keep the proceedings in order.  *See id.* at 631-
> 32 (legislative immunity protected the Speaker of the Rhode Island House of
> Representatives and the "head doorkeeper" when they enforced a rule, which the
> legislative body had adopted, banning lobbyists from the House floor, and its perimeter,
> during House sessions); *see also Carlow v. Mruk*, 425 F. Supp. 2d 225, 235-36, 239
> (D.R.I. 2006) (legislative immunity protected moderator at a fire district meeting when he
> announced a rule of order prohibiting videotaping except by the press and enforced a rule
> of order that banned nonresidents from speaking or otherwise participating).

*See also Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 640 (1st Cir. 1995) (legislative immunity extends to mayors) ("[w]here ... a legislative body adopts a rule, not invidiously discriminatory on its face, that bears upon its conduct of frankly legislative business ... the doctrine of legislative immunity must protect [officials] who do no more than carry out the will of the body by enforcing the rule as part of their official duties.").

In *Artus*, some of the claims related to a moderator instructing an attendee to cease taking photographs. *Id*. at *13. The Court found that such action was protected under the above principles as "exactly the types of claims legislative immunity is meant to protect defendants against." *Id*. at *16.

In the present case, Paragraphs 103, 127, 128, 129, and 138, and others allege the Mayor made comments during public meetings while serving as the chair of the meeting or attending the meeting in his role as Mayor. The First Amendment implications are discussed in more detail above, but the claims are also barred under *Artus* and the cases it cites.

### c. The Claims Against The Mayor And CFO Are Barred By Discretionary Function And/Or Official Immunity

Mayor Donchess and CFO Griffin were acting within the scope of their employment with the City. Accordingly, they are protected by discretionary function immunity and/or official immunity under *Everitt v. General Electric Co.*, 156 N.H. 202 (2007). In *Everitt*, 156 N.H. at 211, the Court found:

> we defined the exception to provide immunity protection only for "acts and omissions constituting (a) the exercise of a legislative or judicial function, and (b) the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."

(Quoting *Merrill v. Manchester*, 114 N.H. 722, 729 (1974)). *Everitt* distinguished between these two doctrines as follows:

The discretionary function immunity exception protects municipalities from judicial intrusion into the province of the executive or legislative branch by supervising its policy and planning decisions through tort law.  Thus, the discretionary functions that fall within the protection of the exception are limited to discretionary decisions involving municipal policy-making or planning.  By contrast, official immunity is premised upon removing the fear of personal liability for public officials who are required to exercise discretion in the performance of their official duties so that they are free to exercise independent judgment and effectively perform the responsibilities of their government employment.

*Id.* at 220-21.  Whether conduct falls within the discretionary function exception depends upon the degree of discretion and judgment "involved in weighing alternatives and making choices with respect to public policy and planning." *Everitt*, 156 N.H. at 211 (quoting *Gardner v. City of Concord*, 137 N.H. 253, 257 (1993)).  The Court went on to describe discretionary function immunity as:

A discretionary decision, act or omission involves the exercise of personal deliberation and individual professional judgment that necessarily reflects the facts of the situation and the professional goal. *Sletten [v. Ramsey County]*, 675 N.W.2d [291,] 306 [(Minn. 204)]; *Clark*, 60 S.W.3d at 208.  Such decisions include those for which there are no hard and fast rules as to the course of conduct that one must or must not take and those acts requiring the exercise of judgment and choice and involving what is just and proper under the circumstances. *Borders [v. City of Huntsville]*, 875 So. 2d [1168,] 1178 [(Ala. 2003)].

*Everitt*, 156 N.H. at 219-20.

Official immunity is provided under RSA 31:104, which provides:

Notwithstanding any provisions of law to the contrary, no member of the governing board of any municipal corporation or political subdivision, no member of any other board, commission, or bureau of any municipal corporation or political subdivision created or existing pursuant to a statute or charter, and no chief executive officer of such municipal corporation or political subdivision, including but not limited to city councilors and aldermen, selectmen, county convention members, members of boards of adjustment, members of planning boards, school board members, mayors, city managers, town managers, county commissioners, regional planning commissioners, town and city health officers, overseers of public welfare, and school superintendents shall be held liable for civil damages for any vote, resolution, or decision made by said person acting in his or her official capacity in good faith and within the scope of his or her authority.

*Everitt*, 156 N.H. at 214 ("Official immunity protects individual government officials or employees from personal liability for discretionary actions taken by them within the course of

18

their employment or official duties.") (citing *Tilton*, 126 N.H. at 298-99, *Sletten*, 675 N.W.2d at

300, and *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001)).  Official immunity extends to

"suit[s] for harm caused by a mistake made in the performance of official duties."  *Id*.  *Everitt*

further found that "it would be":

> Manifest[ly] unfair[] [to] plac[e] any [public official] in a position in which he is required
> to exercise his judgment and at the same time is held responsible according to the
> judgment of others, who may have no experience in the area and may be much less
> qualified than he to pass judgment in a discerning fashion or who may now be acting
> largely on the basis of hindsight.

Id. at 215 (quoting RESTATEMENT (SECOND) OF TORTS § 895D comment *b* at 412 (1979)).

*Everitt* goes on to list ten factors to assess to determine whether a particular action is subject to

official immunity:

> (1) the nature and importance of the function that the officer is performing; (2) the
> importance that the duty be performed to the best judgment of the officer, unhampered by
> extraneous matters; (3) whether the function is performed by private individuals for
> which they could be held liable in tort or it is one performed solely by the government;
> (4) the extent of the responsibility involved and the extent to which the imposition of
> liability would impair the free exercise of discretion by the officer; (5) the likelihood that
> the official will be subjected to frequent accusations of wrongful motives; (6) the extent
> to which the threat of vexatious lawsuits will impact the exercise of discretion; (7)
> whether the official would be indemnified by the government or whether any damage
> award would be covered by insurance; (8) the likelihood that damage will result to
> members of the public in the absence of immunity; (9) the nature of the harm borne by
> the injured party should immunity attach; and (10) the availability of alternative remedies
> to the injured party.

*Id*. at 216.  The *Everitt* Court also analyzed the level of hostility likely to develop in the context

of an arrest by police officers and applied official immunity in that context.

In this case, the exercise of assessing and taxing authority is also likely to raise a level of

hostility that could result – and has resulted – in claims against the City and its officials.  Yet,

Defendants undertook discretionary acts including, but not limited to:

-   Supporting staff, publicly and privately, who were subject to citizen abuse, *e.g.*,
    Complaint at ¶¶21-22, 32;

- Directing use of physical spaces at City Hall during the COVID emergency, *e.g.*, Complaint ¶46, 55, 58;

- Instructing subordinates on whether and how to handle Ms. Ortolano's attempts to engage in verbal discussions not required by RSA 91-A, *e.g.*, Complaint at ¶30, 33, 48, 51;

- Commenting to the press, *e.g.*, Complaint at ¶34;

- Providing information to taxpayers, *e.g.*, Complaint at ¶36;

- Changing the Assessing Department, in part due to Plaintiff's advocacy, *e.g.*, Complaint at ¶¶49-50;

- Attending meetings with Police related to investigations of City employees, *e.g.*, Complaint at ¶¶63-64;[4] and

- Participating in public meetings, *e.g.*, Complaint at ¶¶99, 103, 127-129, 138.

None of these acts by the Mayor or CFO was undertaken in wanton or reckless disregard of the Plaintiff's Constitutional rights.  Thus, even if the Court construes Plaintiff's claims as seeking to imposed personal liability, Defendants are protected under discretionary function and/or official immunity.

At Paragraph 32 Plaintiff alleges, in a conclusory fashion, that "Griffin … collud[ed] to prevent Ortolano from obtaining taxpayer relief."  None of the emails cited in that paragraph, however, references CFO Griffin.  At Paragraph 33, Plaintiff alleges, in a conclusory fashion, that "Griffin … attempted to silence Ortolano by restricting, and sometimes preventing, her access to public documents and other information … ."  At one point, she alleges that Griffin instructed others to "hold off responding to the taxpayer."  Plaintiff goes on to allege:

> Duhamel and Griffin would exchange numerous emails about Ortolano's requests for documents and information, and Griffin would become a key figure in limiting

---

[4] There is no allegation that the Mayor's conduct affected any investigation.

Ortolano's access to public documents.

Complaint at ¶33.  Even if these allegations are accorded any weight, they do not raise plausible

claims for Section 1983 violations in light of the immunity doctrines that apply to the judgment

calls made in determining whether and how to respond to Right to Know requests and to interact

verbally with members of the public.

### d.  The Claims Against Defendants Are Barred By Qualified Immunity

For the reasons discussed above, Mayor Donchess and CFO Griffin are shielded from

liability under the doctrine of qualified immunity.  *E.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 807

(1982) ("for executive officials in general, however, our cases make plain that qualified

immunity represents the norm.").

In addition, Ms. Ortolano has not been deprived any "clearly established" Constitutional

right that a reasonable official would have recognized as being violated by the conduct alleged.

*Baer v. Leach*, 2014 DHN 214 at *12 ("[T]he inquiry focuses on 'whether the violative nature of

[the] <u>particular</u> conduct is clearly established.'" (emphasis in original) (quoting *Mullenix v. Luna*,

577 U.S. 7, 12 (2015))).  Qualified immunity "'gives government officials breathing room to

make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those

who knowingly violate the law.'"  *Baer v. Leach*, 2014 DHN 214 at *12 (quoting *Hunt v. Massi*,

773 F.3d 361, 367 (1st Cir. 2014)).  Further, "[t]he Supreme Court has cautioned that courts

assessing qualified immunity should avoid answering the constitutional question in the first

prong when the analysis would rest on "uncertain interpretation of state law" or when the case is

so "factbound" that the precedential value would be meaningless.")  *Id*. (quoting *Pearson v.

Callahan*, 555 U.S. 223, 238 (2009)).

The Court may properly address qualified immunity in a Rule 12 motion.  *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985).  *See also MacDonald v. Town of Eastham*, 745 F.3d 8, 12

(1st Cir. 2014) ("[C]ourts should evaluate claims of qualified immunity at the earliest practicable

stage of litigation") (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  It is an objective issue

that does not rely on the "subjective intent, motives, or beliefs" of the official involved.  *Amore*

*v. Navarro*, 624 F.3d 522, 536 (2d Cir. 2010).  The plaintiff bears the "burden of demonstrating

that the law was clearly established at the time of the alleged violation, and it is a heavy burden

indeed."  *Petrello v. City of Manchester*, 2017 DNH 053 (Mar. 21, 2017) (quoting *Mitchell v.*

*Miller*, 790 F.3d 73, 77 (1st Cir. 2015)).

As discussed throughout this Motion, Plaintiff's Complaint fails to set forth a plausible

claim against Mayor Donchess or CFO Griffin for a Constitutional violation of clearly

established law.  The First and Fourteenth Amendment claims are addressed substantively above.

The other claims sound in state law and do not assert "clearly established" Constitutional rights.

Accordingly, the Court should enter judgment for the Defendants in this case.

### e.  There Is No Plausible Claim Of Supervisory Liability

Further, there is insufficient basis that either Mayor Donchess or CFO Griffin has

supervisory liability for the actions of others.  Plaintiff has not alleged that either was

deliberately indifferent or willfully blind to violative conduct of others.  *Camilo-Robles v. Hoyos*,

151 F.3d 1, 7 (1st Cir. 1998) (citing *Maldonado-Denis v. Castillo- Rodriquez*, 23 F.3d 576, 582

(1st Cir. 1994)).  Under *Camilo-Robles*:

> To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2)
> the defendant's actual or constructive knowledge of that risk, and (3) his failure to take
> easily available measures to address the risk.  ...  [T]he plaintiff must 'affirmatively
> connect the supervisor's conduct to the subordinate's violative act or omission.'  ...  This
> affirmative connection need not take the form of knowing sanction, but may include tacit
> approval of, acquiescence in, or purposeful disregard of, rights-violating conduct.

*Id*. (quoting *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)) (other internal

citations omitted).  "Mere negligence will not suffice: the supervisor's conduct must evince

'reckless or callous indifference to the constitutional rights of others.'"  *Martel v. Hillsborough*

*County*, 1:21-CV-880-JL, 2022 DNH 130, *24 (Oct. 19, 2022) (quoting *Guadalupe-Baez v.*

*Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016)).  Further:

> The deliberate indifference required to establish a supervisory liability/failure to train
> claim cannot plausibly be inferred from the mere existence of a poorly-implemented
> [policy] and a bald assertion that the [plaintiff's injury] somehow resulted from [that
> policy]."

Id. at *28 (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49-50 (1st Cir. 2009).

In this case, the allegations that could broadly be included as part of a claim of

supervisory liability include:

- Supporting staff who were subject to citizen abuse, publicly and privately, *e.g.*,
  Complaint at ¶¶21-22, 32;

- Redesigning physical spaces at City Hall and otherwise restricting access to City Hall
  from 2020 to present during the COVID emergency, *e.g.*, Complaint ¶46, 58,

- Instructing subordinates on how to handle verbal discussions with Ms. Ortolano
  (which are not required by RTK), *e.g.*, Complaint at ¶30, 33, 48, 51; and

- Updating policies and procedures, *e.g.*, Complaint at ¶38.

Such allegations are insufficient to show that there was any "grave risk of harm" or deliberate

indifference to Ms. Ortolano's Constitutional rights.  Accordingly, the Court should enter

judgment on the civil conspiracy claim for Defendants.

**f.  The Punitive Damages Claim Cannot Stand**

If any of Plaintiff's claims survive this Motion, the Court should grant judgment for the

defense on the punitive damages claim.  Such damages are not allowed against defendants acting

in their official capacities or against local governments.  *City of Newport v. Fact Concerts*, 453

U.S. 247 (1981); *Chestnut v. City of Lowell*, 305 F.3d 18, 21, 22 (1st Cir. 2002) (en banc)

(vacating award of punitive damages).  Also, for any claims in which this Court applies New Hampshire state law, punitive damages are not allowed.  RSA 507:16.  Accordingly, the Court should enter a defense judgment on the Plaintiff's claim for punitive damages, set forth at Page 66 of her Complaint.

## IV.   THE DUE PROCESS CLAIMS, COUNTS III AND IV, LACK BASIS

There has been no deprivation by the Mayor or CFO of Ms. Ortolano's life, liberty, or property, or any fundamental right.  Only certain enumerated rights are covered under the substantive due process clause of the Fourteenth Amendment.  *Collins v. Harker Heights*, 503 U.S. 115, 123-25 (1992) (dismissing claim for due process violation created by unsafe workplace that resulted in death, the Court cited its "reluctan[ce] to expand the concept of substantive due process"); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (no substantive due process protection for rights created by state law); *Crenshaw v. City of New Haven*, 652 F. App'x 58, 60 (2d Cir. 2016) ("'because a free-standing defamatory statement is not a constitutional deprivation, but is instead properly viewed as a state tort of defamation, the plus imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty—for example, the loss of employment.'") (quoting *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2007)).

Other than mentioned in passing in her "Preliminary Statement" and claiming violations as part of Counts III and IV, Ms. Ortolano fails to describe how her "life liberty or property interests" or any fundamental rights were denied by Mayor Donchess or CFO Griffin.  For example, Ms. Ortolano was not unlawfully denied her liberty during her arrest for trespassing, given that she pled guilty.  Also, there are no allegations that Mayor Donchess or CFO Griffin was even involved in her arrest or in calling the police about her.  To the extent she claims that

her allegations related to her RTK requests indicate denial of Due Process, the Court should defer to New Hampshire state courts that are considering Ms. Ortolano's other lawsuits.   Her lawsuits are captioned as *Ortolano v. City of Nashua*, Docket Nos. 226-2020-CV-00133, 226-2021-CV-00218, 226-2021-CV-00354, 226-2021-CV-00306 (Hills. Cty. Super. Ct. S.).

Ms. Ortolano was also not denied procedural due process by the Mayor or CFO.  Aside for bare allegations at Paragraph 33 that CFO Griffin became "a key figure in limiting Ortolano's access to public documents," there are no plausible allegations that provide any detail about his involvement in denying RTK requests.  In any event, this Court should defer to New Hampshire state courts in which Ms. Ortolano has litigated or is currently litigating over her RTK requests.

Defendants respectfully incorporate by reference Section II of Chief Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings, which relates to Plaintiff's Due Process claims.  Accordingly, the Court should enter judgment on Counts III and IV for Defendants.

## V.   COUNT V, UNDER THE NEW HAMPSHIRE CONSTITUTION, FAILS

Defendants respectfully incorporate by reference Section III of Chief Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings, which relates to this claim.

## VI.   THE CIVIL CONSPIRACY CLAIM AT COUNT VI, LACKS AN APPROPRIATE BASIS AND IS BARRED BY THE INTRA-CORPORATE CONSPIRACY DOCTRINE

To plead civil conspiracy, a plaintiff must allege that: (i) two or more persons; (ii) came to an agreement; (iii) to accomplish an unlawful object (or to accomplish a lawful object by unlawful means); (iv) undertook one or more unlawful overt acts; and (v) proximately caused damages as a result. *Jay Edwards v. Baker*, 130 N.H. 41, 47 (1987).  A plaintiff must also

adequately plead "an underlying tort which the alleged conspirators agreed to commit." *See Univ. Sys. of N.H. v. U.S. Gypsum Co.*, 756 F. Supp. 640, 652 (D.N.H. 1991) ("There is no such thing in New Hampshire, however, as a civil action based upon conspiracy alone"). The allegations against Mayor Donchess and CFO Griffin fail to meet the above test. In light of the other arguments in this Motion, there is a lack of allegations of any agreement to accomplish an unlawful object or any unlawful overt acts by Mayor Donchess or CFO Griffin.

Even if Plaintiff alleged sufficient allegations that Defendants were part of a conspiracy, the alleged co-conspirators are all City of Nashua employees. Thus, the claim is barred by the intra-corporate conspiracy doctrine under which which: "the agents and employees of a corporate entity acting within the scope of their employment or authority are legally incapable of conspiring together." *Carney v. Town of Weare*, 15–CV–291–LM, 2017 DNH 031, *43 (Feb. 21, 2017) (citing *In re Appeal of Armaganian*, 147 N.H. 158, 163 (2001) (finding New Hampshire Supreme Court would adopt the intra-corporate doctrine based on other New Hampshire case law on corporate agency principles). *See also Legacy Global Sports, LP v. St. Pierre*, 218-2019-CV-198, 2020 WL 2027401, at *3 (N.H. Super. Apr. 27, 2020) (relying on *Carney*); *D.G. Whitefield, LLC v. Cate St. Capital, Inc.*, 218–2015–CV–1406, 2017 N.H. Super. LEXIS 16, at *28-29 (N.H. Super. 2017). Accordingly, the Court should dismiss Count VI.

## VII.    PLAINTIFF CANNOT ESTABLISH HER IIED CLAIM (COUNT X)

There are no allegations of outrageous behavior by Mayor Donchess or CFO Griffin on which to base a claim for IIED. To state a claim, "it is not enough that [the defendant] 'has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice.'" *Mikell v. Sch. Admin. Unit No. 33*, 158 N.H. 723, 728-29 (2009) (quoting Restatement (Second) of Torts § 46 cmt. d

(1965)).  The hallmark of IIED is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id*. at 729.

Paragraphs 24 and 25 allege that Mayor Donchess "took offense to public comments critical of [his] job performance" and her October 2018 comments related to the Assessing Department.  These allegations are untethered from allegations that Mayor Donchess took any action in response, other than expressing his views at informal "coffee with the Mayor" events. Complaint at ¶¶26-27.  In those events, however, the Plaintiff's allegations that the Mayor stated that Plaintiff was wasting the City's time.  Such alleged statement, an expression of opinion, is consistent with the Mayor's own First Amendment rights.

To the extent that Plaintiff points to the exchanges during public meetings, such exchanges are addressed above as consistent with either First Amendment rights or Nashua City Ordinances, or subject to immunity defenses.  Moreover, the comments did not amount to personal attacks or slights of the type that required to show IIED.  *E.g.*, *Mikell*, 158 N.H. at 729, and cases cited therein.  By contrast, Plaintiff described City employees and officials, including the Mayor, as "cunty" in her public comments.  Board of Assessors Meeting (8/26/21) at 45:11, available at https://www.youtube.com/watch?v=MEvMnpqaLRg; Finance Committee Meeting (7/20/22), at 17:51 to 20:30, available at https://www.youtube.com/watch?v=OvwbDCBwcEA.

At Paragraph 46, Plaintiff generally claims that "the defendants … restrict[ed] her access to City Hall and prevent[ed] her from obtaining documents and information … ."  There is no specific allegation that the Mayor or CFO played any role in such alleged conduct.  The Mayor and CFO are not mentioned in any allegation in the Complaint in which Plaintiff claims she could not access City Hall or in which she addresses her arrest or threats of arrest.  Accordingly,

such allegations do not form the basis of a claim against the Mayor or CFO.

As to CFO Griffin, Plaintiff claims he exchanged emails about her that contained "disparaging" comments or monitored her movements about City Hall.  Complaint at ¶¶21-22. Such comments were not addressed to the Plaintiff and are not explained in the Complaint any further.  Accordingly, the Court should enter judgment for the Defendants on the IIED count.

Defendants respectfully incorporate by reference Section V of Chief Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings, which relates to this claim.

## VII.    THE STATUTE OF LIMITATIONS BARS CLAIMS BASED ON ALLEGATIONS MORE THAN THREE YEARS OLD

All claims based on allegations from before August 23, 2019, more than three years before the filing of the Complaint, are barred by the statute of limitations.  RSA 508:4 provides:

    I.   Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

   II.   Personal actions for slander or libel, unless otherwise provided by law, may be brought only within 3 years of the time the cause of action accrued.

The accrual of Section 1983 claims is based on state law for personal injury actions.  *Wallace v. Kato*, 549 U.S. 384, 393 (2007) (looking to state statute of limitations for personal injury torts for application to Section 1983 claims) (citing *Owens v. Okure,* 488 U.S. 235, 249-250 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280 (1985)) (internal citations omitted).

Plaintiff was aware of allegations sufficient to form her claims more than three years before filing this lawsuit on August 23, 2019.  For example, Plaintiff alleges that:

> By late 2018, Ortolano had developed an awareness that Duhamel, Kleiner, Bolton,
> Leonard, and the Mayor were taking her public criticisms personally and had started
> treating her differently than other citizens when she sought public documents and
> information from City Hall. After later obtaining documents and information from RTK
> requests that Nashua would fight for months, and even years, Ortolano would eventually
> learn that Duhamel and Corporate Counsel Bolton were particularly offended by
> Ortolano's criticisms and quest for information.

Complaint at ¶39.  Any claim related to her alleged "different[ial]" treatment or taking of her

criticisms "personally" accrued by late 2018 and is not properly part of this case.  To the extent

applicable to claims against Mayor Donchess or CFO Griffin, Plaintiff was also on notice of her

allegations in the following paragraphs more than three years before bringing this lawsuit:

> 17 – Ms. Ortolano's 2018 tax bill;
>
> 25-26 – Ms. Ortolano's 2018 critiques of Assessing Department;
>
> 27 – interaction at an October 2018 "coffee with mayor";
>
> 28-29, 31 – Ms. Ortolano's 2018 review of and communications about the
> Mayor's residential assessment;
>
> 34 – the October 10, 2018 Union Leader article quoting CFO Griffin;
>
> 35 – two days after the article, emails containing City policies;
>
> 36 – October 24, 2018 contact with CFO Griffin;
>
> 37 – April 30, 2019 Board of Aldermen meeting discussion of policies;
>
> 38 – June 26, 2019 production of assessing policies;
>
> 48 – communications between CFO Griffin and Mr. Duhamel; and
>
> 55, 58 – physical space issues in the Assessing Department since April 1, 2019.

Plaintiff will be unable to meet her burden to establish the discovery rule as to claims based on

these and any other facts known to her more than three years before she filed this lawsuit on

August 23, 2022.  Though she may claim that she received additional information about her

allegations within the past three years, *e.g.*, Complaint at ¶¶20, 24, 30, 32, 63, her knowledge of

facts sufficient to form the basis of her claims occurred more than three years before this lawsuit. In fact, there appear to be no factual allegations against CFO Griffin dated after Fall 2018, other than the generalized claims against "defendants," which are addressed above at Section II.d.

When an action is not brought within three years of the alleged act, a plaintiff bears the burden of establishing facts that the discovery rule applies.  "The discovery rule exception does not apply unless the plaintiff did not discover, and could not reasonably discovered, either the alleged injury or its causal connection to the alleged negligent act."  *Id.* (quoting *Perez v. Pike Indus., Inc.*, 153 N.H. 158, 160 (2005)).  Certainty is not required; "the possibility" of a causal connection "will suffice to obviate the protections of the discovery rule."  *Id.* (citing *Pichowicz v. Watson Ins. Agency*, 146 N.H. 166, 168 (2001)); *Mills v. Harris*, 218-2019-CV-117 at pp. 6-7 (Rock. Cty. Super. Ct. 7/11/21) (same) (citing *Balzotti Global Group, LLC v. Shepherds Hill Proponents*, LLC, 173 N.H. 314, 320 (2020)), attached as Exhibit D; *Chapman v. Mailhot*, 216-2019-CV-1063 at p. 11 (Hills. Cty. Super. Ct. N. (2/16/22) (same), attached as Exhibit E.

The focus of the discovery rule is solely on a plaintiff's beliefs.  In *Lamprey v. Briton Constr., Inc.*, 163 N.H. 252 (2012), the Court held:

> [O]nce the plaintiff could reasonably discern that he or she suffered some harm caused by the defendant's conduct, the tolling ends.  Further, the plaintiff need not be certain of the causal connection; the reasonable possibility that it existed will suffice to obviate the protections of the discovery rule.

(Citing *v. Dana S. Beane & Co.*, 160 N.H. 708, 712 (2015), and *Glines v. Bruk*, 140 N.H. 180, 182 (1995) (internal citations omitted).

The full extent of a plaintiff's injuries need not be known for the statute of limitations to begin to run.  *Beane*, 160 N.H. at 713; *Furbush v. McKittrick*, 149 N.H. 426, 431 (2003) ("the discovery rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself.") (citing *Rowe v. John Deere*, 130 N.H. 18, 23, (1987);

*Feddersen v. Garvey*, 427 F.3d 108 (1st Cir. 2005) (same); *Singer Asset Fin. Co., LLC v. Wyner*, 156 N.H. 468, 478-79, 937 A.2d 303 (2007) (finding that plaintiff should have discovered the injury (an underpayment) "'in the exercise of reasonable diligence'" at the time of the underpayment) (quoting *Keshishian v. CMC Radiologists*, 142 N.H. 168, 176-77 (1997)). Plaintiffs have a duty to investigate.  *Perez*, 153 N.H. at 161 (affirming dismissal on statute of limitations grounds based on failure to investigate who performed paving negligently); *Glines v. Bruk*, 140 N.H. 180, 181 (1995) (affirming dismissal based upon the duty to investigate).

In this case, as set forth above, the Plaintiff's knowledge of "facts essential to the cause of action" before August 23, 2019 should exclude such facts as bases for claims.  *Furbush*, 149 N.H. at 431; *Glines*, 140 N.H. at 181 (rejecting discovery rule argument because "the plaintiff knew both the fact of the injury to his back and the fact that there was some causal link to the defective loading dock."); *Mills*, 218-2019-CV-117 at pp. 8-9 ("[T]he Mills were on notice that they should further investigate [the defendant's] conduct and role in Mr. Mills' misdiagnosis and treatment."); *Chapman*, 216-2019-CV-1063 at p. 13 ("Plaintiff was aware" of the defendants' involvement, and therefore "on notice that he should further investigate [their] conduct and role in Mr. Chapman's treatment.").

## CONCLUSION

For the foregoing reasons, the Court should enter judgment on the pleadings in favor of Mayor Donchess and CFO Griffin.

Respectfully submitted,

**JAMES DONCHESS, MAYOR OF THE CITY OF NASHUA**
**JOHN GRIFFIN, CHIEF FINANCIAL OFFICER OF THE CITY OF NASHUA**
By Their Attorneys,

**RATH, YOUNG AND PIGNATELLI, PC**
One Capital Plaza
Concord, NH 03301
(603) 226-2600

Dated: 1/11/23                    /s/ Adam B. Pignatelli
                                   Michael A. Pignatelli, NH Bar #2026
                                   map@rathlaw.com
                                   Adam B. Pignatelli, NH Bar #20211
                                   abp@rathlaw.com