UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano | : |
| | : |
| v. | :     Civil Action No. 22-cv-00326-LM |
| | : |
| The City of Nashua, et al. | : |

### DEFENDANT CARIGNAN'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Carignan filed a rather straightforward Motion for Judgment on the Pleadings [Doc. No. 36], pointing out the paucity of allegations specific to his conduct and demonstrating through established law that those few allegations were insufficient to support any of the claims against the Chief. In response, Plaintiff provides a detailed theory of her case against other Defendants, a history of her own investigation into the Assessing Department, a critique of the NPD investigation into the Assessing Department, and ongoing complaints about her January 2021 arrest for trespass. *See* Plaintiff's Memorandum of Law Objection to Defendant Michael Carignan's Motion for Judgment on the Pleadings [Doc. No. 39-1] (hereinafter "Obj-MOL") at pp. 2-14. She supplements this expansion of the record with an Affidavit and a dozen exhibits. [Doc. No 39-2 and exhibits thereto]. Finally, she provides a short summary of the law applicable to her legal claims. See Obj-MOL pp. 17-22.

As discussed below, most of these statements and seemingly all of the exhibits are not properly before the Court. Even were the Court to consider them, however, none get her over the line to the world of viable legal claims. As such, Judgment must enter for Defendant Carignan.

I. **PLAINTIFF'S STATEMENT OF "RELEVANT FACTS" IS LARGELY IMPROPER AND ULTIMATELY UNAVAILING.**

As set forth in the underlying Motion, the 62 page Complaint contains only three specific allegations concerning Chief Carignan: (1) he was the Chief of Police in Nashua; (2) he met with the Mayor and Kimberly Kleiner before the police investigated whether an Assessing Department employee (Greg Turgiss) was defrauding the City and whether Kleiner had sought to influence witnesses during a prior investigation into that employee; and (3) that as Chief he ordered Plaintiff's arrest for criminal trespass in January 2021 (to which she pled guilty). Plaintiff responds with 13 pages of "The Relevant Facts" that are anything but relevant: She has not identified for the Court a single additional allegation concerning the Chief that was buried in the behemoth of a Complaint and overlooked by Defendant on his Motion. Instead, she offers a litany of allegations from the Complaint concerning <u>other</u> Defendants supplemented with statements and exhibits that are neither in nor referenced in the Complaint and are largely irrelevant to her claims against the Chief.

At the outset, Plaintiff's attempt to supplement the allegations of the Complaint with an Affidavit and over dozen extraneous documents must be rejected.[1] It is true that the Court may on occasion consider documents that are referenced in the Complaint, central to the claims, or matters of public record in deciding a Rule 12 motion. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b)(6). However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for

---

[1] Motions to Strike historically have not been encouraged in this Court and improper material may instead be addressed in an objection or reply. *See Wilson v. Port City Air, Inc.*, 2014 DNH 125.(June 3 2014).

official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."). Plaintiff's submission, however, goes far beyond that "narrow exception.".

The report of William Freyler and Plaintiff's own surveillance notes [Doc. No. 39-2 Ex. A & B] are but the most glaring examples. Rife with inadmissible hearsay, neither is referenced in the Complaint nor central to Plaintiff's claims, and they are certainly not agreed upon. They appear to be offered only to disparage Mr. Turgiss. *See also* Doc. No. 39-2 Ex. H (records of a 2006 investigation into Mr. Turgiss). They do, however, reveal Plaintiff's true complaint about the police generally: that they did not reach the result she wanted them to.

Plaintiff's other documentary submissions are similarly flawed. Exhibits C & D are simply letters from her attorney to the Mayor complaining about Turgiss and the City's investigation into him. Neither qualifies for an exception to the general rule that Rule 12 motions are decided by the allegations of the Complaint. Exhibits F, I & J fail even to mention the Chief. Exhibits E & H at least include the Chief's name but remain outside the Court's scope of review. The Court should disregard each of the exhibits attached Plaintiff's Affidavit.

Plaintiff also makes numerous allegations in her "Relevant Facts" (in addition to citing the various new documents attached to her Affidavit) that are not contained in the Complaint. Thus, not only does Plaintiff add new allegations about the Freyler Investigation, she offers: (a) statements by an Alderman postdating the Complaint, Obj MOL p.3, n.1; (b) the City's own investigation into Turgiss, Obj-MOL p.6; and (c) other trespass calls that she presumably offers as comparators. *Id.* at 14-15. Plaintiff also expands the existing allegations concerning some events that actually are referenced in the Complaint. For example, Plaintiff offers additional details regarding her meeting the Capt. Lehto and the police response preceding her 2021 trespass arrest.

None of these allegations are properly before the Court. Defendant asks that all statements not included in the Complaint be disregarded.[2]

Strikingly, however, despite the pages of additional allegations thrown into her Objection, none actually undermine Chief Carignan's Motion. To the contrary, she largely improves the Chief's position. For example, whereas in deference to the ambiguous Complaint Defendant stated that the Chief's meeting with the Mayor occurred "no later than July 1, 2019" Plaintiff confirmed that it took place on June 26, 2019 – four days further outside the Statute of Limitations. Obj-MOL at 8. Similarly, while Defendant accepted as true that the Chief "ordered" her 2021 arrest for trespass, Plaintiff now concedes that she had no firm basis for the allegation, stating only that "someone with a rank higher than Sergeant or master patrolman" overruled the responding officers and the was likely "or at least plausible" that it was the Chief. Indeed, what is most notable in Plaintiff's "Relevant Facts" is that she does not dispute that the police acceded to her request that the police investigate the Assessing Department, that she pled guilty to the 2021 arrest charge, or that the Chief retired effective January 1, 2022.

## II. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE LAW SUPPORTS ANY OF HER CLAIMS AGAINST THE CHIEF.

Setting aside unsupported allegations in the Objection (or, frankly, even crediting them), Plaintiff has not shown that the law gives life to her claims against Chief Carignan.

### A. Plaintiff Has Cited No Case Supporting a First Amendment Claim Against Carignan.

Plaintiff recites the general principles of law relating to her First Amendment Claims, but fails to offer any meaningful argument, much less legal authority, establishing that she satisfies

---

[2]  Indeed, even where she does cite to the Complaint, the citation does not always support the allegations. *See, e.g.*, Obj. MOL p.3 (claiming that police investigated her for false impersonation and citing ¶122 of the Complaint for same; ¶122 does not reference such an event).

the elements of any such claim.  Indeed, she concedes that these claims are "principally" directed against the City.  Obj-MOL at 17.  Rather than conceding the Motion, however, she attempts to resurrect her First Amendment claims against the Chief by baldly asserting (and repeating) that "Carignan's thumbprints" were "all over" the police investigations and decisions.  Obj-MOL at 19, 20.

Even were that true (which it is not, nor is it alleged in the Complaint), Plaintiff has yet failed to establish any wrongdoing.  While Plaintiff is clearly miffed that the investigation of the Assessing Department did not result in criminal charges, she has no right to have the police conduct any investigation at all, much less a right to have it come out the way she wishes.  And even if the Chief himself overrode the officers who first responded to the trespass complaint, she now expressly admits that she pled guilty to the offense.  Obj-Aff. at ¶3.  In short, she simply has not alleged any conduct by the Chief that, even if true, would support a First Amendment claim against him.

**B.  Plaintiff's Due Procees Claims Remain Unsupported.**

Plaintiff rests her effort to save her Due Process claims on one allegation only:  That someone, "likely Carignan," overrode the determination by responding officers and had her arrested for trespass based on her admitted sit-in at the Legal Department in January 2021.  Obj-MOL at 21.   She continues, however, to concede actions that supported that arrest and her subsequent plea.  Overriding a decision not to arrest where probable cause exists is a far cry from those recited in Defendant's Motion as supportive of  a Substantive Due Process claim and certainly does not "literally shock the conscience."  Indeed, .if false charges do not meet this high standard, *see Spencer v. Doran*, 2020 DNH 147, certainly valid ones cannot.  As to Procedural Due Process, Plaintiff does not (and cannot) identify any process that was lacking in her prosecution.

5

### C. Plaintiff Does Not Appear to Contest the Entry of Judgment on the State Constitutional Claim.

Plaintiff did not address the Motion with respect to Count V and for the reasons set forth in the underlying Motion, Judgment should enter thereon.

### D. Plaintiff's Conspiracy Theory Is Too Thin to Support a Claim.

Plaintiff has not addressed the prohibition on intra-corporate conspiracies and judgment should enter for the Chief (indeed, all Defendants) on that ground alone. Even were that not a barrier to her claim, however, she does not address either the absence of allegations that the Chief entered into any agreement or the lack of any improper action by him. Indeed, her summation of her conspiracy is revealing for its admitted vagueness:

> [S]omeone in the Police Department – likely Carignan – agreed with one or more people from the Legal Department – likely Bolton and/or Leonard – to overrule a purported finding of five Police Department investigators that that there was no probable cause to charge Ortolano with a crime.

Obj-MOL at 22. Even were that assertion found anywhere in the Complaint (and it is not) it would not support a conspiracy claim against the Chief. Plaintiff admitted that she trespassed at City Hall by entering the Department and refusing to leave when asked. Conspiracy claims are admittedly all the rage these days and even major "news" organizations promote them on little more than speculation for ad revenue, but a legal claim of conspiracy still requires something more.

### E. Plaintiff Has Not Identified Allegations to Support an Emotional Distress Claim Against the Chief.

Plaintiff summarizes her Intentional Infliction of Emotional Distress claim against the Chief as follows:

> He is alleged to have cooperated with Bolton and/or Leonard to use their position to cause Ortolano to be wrongfully arrested and subject to the criminal justice process:

6

Obj-MOL at 22.  The obvious flaw in this theory of liability is that Plaintiff acknowledges that she was not wrongfully arrested.  She not only pled guilty to the charge, she admits her underlying conduct (remaining in the Legal Department after being asked to leave).  Her arrest cannot be simultaneously lawful and "extreme and outrageous."

Given the lack of either factual or legal support for her claims against Chief Carignan, judgment must enter on his behalf.

Respectfully submitted,

**MICHAEL CARIGNAN**

By his attorneys

CULLEN COLLIMORE SHIRLEY PLLC

Dated:  January 11, 2023         By: /s/ Brian J.S. Cullen
                                 Brian J. S. Cullen (Bar No. 11265)
                                 37 Technology Way, Suite 3W2
                                 Nashua, NH  03060
                                 (603) 881-5500
                                 bcullen@cullencollimore.com


## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated:  January 11, 2023         By: /s/ Brian J.S. Cullen
                                 Brian J.S. Cullen