UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Laurie Ortolano,**  *Plaintiff*, | ) ) ) |
| v. | ) ) Civil Action No. 1:22-cv-00326-LM |
| **The City of Nashua,** *et al.*, *Defendants*. | ) ) ) ) |

**MAYOR JAMES DONCHESS AND
CHIEF FINANCIAL OFFICER JOHN GRIFFIN'S
REPLY TO PLAINTIFF'S OBJECTION TO THEIR
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Defendants James Donchess, Mayor of the City of Nashua, New Hampshire ("Mayor"), and John Griffin, Chief Financial Officer of the City of Nashua, New Hampshire ("CFO") (together, "Defendants"), by counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Rule 7.1(e)(2) of the Local Rules of United States District Court for the District of New Hampshire, respectfully submit as follows:

In this Reply, Defendants attempt to address certain points raised by Plaintiff's Objection without unnecessarily repeating the Motion.

**Plaintiff's New Allegations**

Plaintiff's Objection claims that Defendants' Motion seeks relief akin to summary judgment. The Motion, however, hews closely to the Complaint and references public records that the Court may consider at this stage. By contrast, Plaintiff's Objection contains new allegations that were in the Complaint and should not be inferred from the allegations, including:

- Ortolano's public statements about the Mayor's residence somehow caused the changes to the Assessing Department, Objection, p. 4;

- A co-defendant's actions were "almost certainly undertaken in accordance with the guiding hand of Donchess …", Objection, pp. 5;

- "Ortolano has already described how Donchess tasked Kleiner, his Chief of Staff, to take control of the Assessing Department and prevent Ortolano from accessing public documents kept there", Objection, p. 16;

- "She has presented evidence suggesting that Donchess interfered with a police investigation into the conduct of Kleiner, his former Chief of Staff, that Ortolano and another citizen had initiated. Complaint ¶ 63-64. This, of course, suggests the possibility that Donchess interfered with the Police Department's investigation and criminal charges against Ortolano initiated in February 2021. Complaint, ¶¶ 105-112", Objection, p. 19.

In the context of Defendants' Rule 12(c) Motion, these new assertions should not be considered.

### First Amendment Claims

Plaintiff's Objection does not dispute that her public comments and requests continued after the events alleged in the Complaint. Based upon the public records provided in the Motion, which show Plaintiff's extensive public comments over years, there is no plausible claim that Plaintiff's rights were chilled or suppressed, as required under the case law cited in the Motion.

### Conspiracy Claim

Plaintiff's Objection mistakenly states that third parties were drawn into the conspiracy, voiding the intra-corporate conspiracy doctrine defense. The Complaint asserts no conspiracy claim against the third parties. *See* Complaint, pp. 60-61.

### Official Capacity

Plaintiff does not object to the Motion's argument that the Mayor and CFO are sued in their official capacities only. The Court should dismiss any claim asserting individual liability.

### Legislative Immunity

Whether City committees are legislative in character does not appear to be addressed by the cases cited by Plaintiff. *Pierson v. Hubbard*, 147 N.H. 760, 765 (2002), addressed the selling of cemetery plots and comments at a selectmen's meeting where only Town Meetings were

legislative. The Court, however, acknowledged the concern that public officials may withhold comments that "could entangle them in a legal dispute … ." *Id*. at 764. The Court also found that: "[t]he trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies." *Id*. (quoting *Noble v. Ternyik,* 539 P.2d 658, 660 (Or. 1975), and citing other authorities including the Restatement (Second) of Torts, section 590, cmt. a). The term "lesser" does not appear to be defined but even if it means that City legislative bodies are "lesser" than State legislative bodies, that does not resolve the question as to City Committees.

In *Voelbel*, the Court affirmed the dismissal of defamation claims against a town based on statements by a town official at Town Meeting. Notably, the Court relied on *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 339 U.S. 949 (1950):

> In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Id*. at 601. Based upon the purpose of legislative immunity, Defendants assert that committees authorized by the Board of Aldermen should be found to hold sufficient legislative character to invoke legislative immunity.

Further, under *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998), the actions taken during debate and signing an ordinance "were legislative because they were integral steps in the legislative process." Under the Nashua City Charter and Ordinances, the legislative process in Nashua involves Committees and the Board of Alderman. For example:

> For a public hearing required by law, the meeting shall be scheduled on the same evening as a meeting of the relevant aldermanic committee, and the committee Chairman shall chair the public hearing. No final action by the full Board shall be taken at such a meeting.

Nashua City Ordinances, §5-7. The composition of standing committees is addressed in the City

3

Ordinances at Section 5-9.  Board of Aldermen committees receive referrals of matters from the Board, Section 5-14(A)(10), have rules of procedure, Section 5-122(E), vote, Section 5-24, provide for reconsideration of matters, Section 5-18(D), and hold public hearings, Section 5-28(C).  Section 82 of the City Charter provides for books and records to be kept "in manner approved by the finance committee … ."

Further, Section 45 of the Nashua City Charter provides that the Mayor "shall enforce the ordinances of the city."  (Cited by Objection at p. 9 n. 2.)  Further, Section 5-37 of Nashua City Ordinances provides, in pertinent part:

> The Mayor shall supervise the administrative affairs of the City and shall carry out the policies enacted by the Board of Aldermen. He shall perform those duties prescribed by the City Charter (see Section 45) and he shall have such other powers and duties as are not inconsistent with the provisions of this Charter.

Available at https://ecode360.com/8728415.  *See also* RSA 45:7 ("The mayor … shall be the chief executive officer of the city, and for the preservation of the peace shall have the powers of sheriff and conservator of the peace … ."); RSA 46:7 ("The mayor and aldermen shall compose one board, and shall sit and act together as one body, at all meetings of which the mayor, if present, shall preside; but in his absence a chairman shall be chosen.").  The Nashua City Charter, Section 49, provides:

> The members of the standing committees of the board of aldermen shall be appointed by the president of the board of aldermen subject to the approval of the board. No ordinance, and no resolutions containing an appropriation or contemplating an expenditure of money shall be laid before the board of aldermen for action except as otherwise herein provided until the signature of the mayor, president of the board, or alderman introducing the same, or, if introduced by a committee by its chairman, is indorsed thereon. Upon the final passage of every resolution or ordinance containing an appropriation or contemplating an expenditure of one hundred dollars or more the vote shall be viva voce and major vote on roll call.

Under these authorities, the enforcement of public comment rules should be immune, whether at Aldermanic meetings or "lesser" meetings, as Plaintiff describes them.

**Official Immunity and Discretionary Function Immunity**

To the extent that official immunity and discretionary function immunity cover only individual liability, the Court need not consider these defenses given that Plaintiff does not contest that her clams are brought against the Mayor and CFO in their official capacities only. If that is not the case, official immunity under common law and RSA 507-B, should bar plaintiff's claims for tort liability. Plaintiff cites *Farrelly v. City of Concord*, 168 N.H. 430 (2015) (discussing common law and RSA 507-B), and *Conrad v. New Hampshire Dpt. of Pub. Safety*, 167 N.H. 59 (2014).

In *Conrad*, 167 N.H. at 70, the Supreme Court affirmed the dismissal of Section 1983 and false imprisonment claims against a State employee stemming from holding the plaintiff in protective custody after his irrational conduct. (Among other statements made by the plaintiff included referring to his wife as a "c**t", which the Court redated with asterisks." *Id*. at 65.) The Court found that: "[t]he goal of official immunity is to protect public officials from the fear of personal liability, which might deter independent action and impair effective performance of their duties." *Id*. at 69 (quoting *Everitt v. Gen. Elec. Co.*, 156 N.H. 202, 215 (2007)).

In *Farrelly v. City of Concord*, 168 N.H. 430 (2015), the Court extended official immunity to municipal officials for intentional torts. *Id*. at 434. The Court "caution[ed] against a formulaic approach to discerning discretionary and ministerial decisions, acts or omissions. In the context of immunity, these terms are not subject to a dictionary definition, nor can they be reduced to a set of specific rules." *Id*. at 556 (quoting *Everitt*, 156 N.H. at 219).

In this case, the Mayor and CFO should be immune from tort liability while carrying out duties that require judgment and discretion including but not limited to chairing public meetings, enforcing public comment rules, overseeing City departments that interact with the public, and

evaluating Right to Know requests.

## Qualified Immunity

To the extent that Plaintiff is pursuing claims in official capacity only, qualified immunity, which protects against individual liability, need not be considered. If otherwise, Defendants disagree that Plaintiff has asserted plausible First or Fourteenth Amendment violations or that either the Mayor or CFO had "fair warning" that they were violating a clearly established Constitutional right.

## Supervisory Liability

Plaintiff does not discuss the test set forth in *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998) (denying summary judgment on supervisory liability claim involving police officer with "flagitious history of violence" who falsely arrested plaintiff). For example, the Objection does not attempt to establish "a grave risk of harm."

Also, Plaintiff urges unwarranted inferences concerning supervisory liability. By way of example, her Objection asserts that the Mayor "tasked [co-defendant] Kleiner … to take control of the Assessing Department and prevent Ortolano from accessing public documents kept there." This assertion is not contained in the Complaint, nor is it plausible. Plaintiff's assertion that a temporal connection of five months is sufficient. In the absence of other allegations against the Mayor in that time frame, Defendants disagree.

## Due Process Claims

Plaintiff admits that the "standard is high" for Due Process claims. In this case, it is impossible to meet. Under RSA 91-A, the state provided remedies to address Plaintiff's claims of violations. *Lowe v. Scott*, 959 F.2d 323 (1992) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the

State fails to provide due process.") (quoting *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)); *Cheney v. Concord Police Dept.*, 2011 WL 128999 at *3 (D.N.H. Jan. 7, 2011) (citing *Lowe*).[1]

Plaintiff's arrest and allegations related to the meeting with the Police Chief are addressed in Defendants' Motion.  In her Objection, Plaintiff now claims that the alleged interference with the investigation, "of course, suggests the possibility that Donchess interfered with the Police Department's investigation and criminal charges against Ortolano initiated in February 2021."  This allegation is not contained within her Complaint, nor could any plausible inference be drawn from the paragraphs she cites (105 to 112) that Mayor Donchess somehow interfered when Plaintiff was arrested.  Accordingly, the Due Process claims should be dismissed.

## Continuing Tort Doctrine

The continuing tort doctrine should not apply to the specific allegations listed in the Motion at Page 29 that date to more than three years before she filed her Complaint.  The cases cited by the Plaintiff declined to apply the doctrine.  *Singer Asset Finance Co., LLC v. Wyner*, 159 N.H. 468 (2007) (finding continuing wrong doctrine did not apply to lawsuit concerning structured settlement with payments over time when wrongs occurred at prior discrete points in time); *Eldridge v. Rolling Green at Whip Poor Will Condo Owners Assn.*, 168 N.H. 87 (2015) (finding continuing wrong doctrine did not apply to claims based on a persistent defect in a walkway because the "'discrete acts'" that occurred "on a 'particular day.'") (quoting *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir.2015)).

In a similar, though factually simpler, case involving a Rule 12(c) motion, the Court refused to apply the continuing violation doctrine.  *Torro v. Goldberg*, 2019 WL 1318194, 2019

---

[1] Counsel was unable to find a DNH opinion number for *Cheney*.

DNH 052 (Mar. 22, 2019).  The plaintiff claimed interference by the Town Fire Chief with operation of an inn related to a fire code inspection and with a request for a tax abatement for the inn.  *Id*. at a*2.  The Court found that each of the alleged actions "were complete when they occurred."  *Id*.  "To be related, the more recent act must be part of the same discriminatory course of conduct, such as a hostile work environment, not a discrete act of discrimination."  *Id*. at *3 (citing *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009)).  The continuing wrong doctrine did not apply to the allegations that were outside the statute of limitations by virtue of another allegation within the statute, even though both allegations concerned the same subject matter, the inn.

In this case, the allegations recited at Page 29 of the Motion are "discrete acts" on "particular day[s]" more than three years before Plaintiff filed this case.  Allegations within three years before Plaintiff's Complaint are not subject to the statute of limitations defense, including:

¶¶32-33 allegations of communications related to Ms. Ortolano by CFO Griffin (discovered within three years);

¶46 "the defendants named in this complaint restrict[ed] her access to City Hall and prevent[ed] her from obtaining documents and information ... .";

¶¶63-64 allegations related to the meeting between the Mayor and Police Chief;

¶¶99-103, 128-29, 138 allegations against the Mayor related to comments at public meetings;

¶114 "defendants focused on the tactic of trying to get her arrested to silence her"; and

¶117 "defendants and their agents were fully engaged in trying to get Ortolano arrested."

These further dealings with the Defendants should not reset the clock on stale allegations.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action against Mayor Donchess and CFO Griffin.

Respectfully submitted,

**JAMES DONCHESS, MAYOR**
**JOHN GRIFFIN, CFO**
By Their Attorneys,

**RATH, YOUNG AND PIGNATELLI, PC**
One Capital Plaza
Concord, NH 03301
(603) 226-2600

Dated: 2/17/23    /s/ Adam B. Pignatelli
　　　　　　　　　Adam B. Pignatelli, NH Bar #20211
　　　　　　　　　abp@rathlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply was served on all counsel of record through the Court's electronic filing system.

Dated: 2/17/23    /s/ Adam B. Pignatelli
　　　　　　　　　Adam Pignatelli