**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **Laurie Ortolano,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:22-cv-00326-LM** |
| | ) | |
| **The City of Nashua,** *et al.***,** | ) | |
| **Defendants.** | ) | |
| | ) | |

<u>**DEFENDANTS BOLTON AND LEONARD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

Defendants Steven Bolton, Corporation Counsel for the City of Nashua, New Hampshire, and Celia K. Leonard, Deputy Corporation Counsel for the City of Nashua, New Hampshire, hereby move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"), as follows:

<u>**Introduction**</u>

Plaintiff has initiated this matter against a number of parties, including Steven Bolton and Celia K. Leonard, Counsel for the City of Nashua, and asserts ten causes of action alleging "deprivation of civil rights . . . the City of Nashua, through and by its public officials, has foisted upon her." Compl. at 4 [Doc. 1]. Plaintiff's claims against Defendants Bolton and Leonard are factually and legally flawed. Further, the Plaintiff's claims are barred by the privileges and doctrines outlined below. As such, Defendants Bolton and Leonard are entitled to judgment on the pleadings.

**Statement of Facts**[1]

Plaintiff asserts that, at all times relevant to the Complaint, Mr. Bolton was the

Corporation Counsel for the City of Nashua Legal Department, and that Ms. Leonard was a

Deputy Corporation Counsel for the City of Nashua Legal Department. Compl. ¶¶7-8.

Plaintiff claims that in 2014, shortly after the Plaintiff and her husband purchased their

home in Nashua, assessors with the City's Assessing Department increased the assessment of

Plaintiff's home from $469,800 to $706,300. Compl. ¶15. Plaintiff alleges that by July 2017,

Plaintiff's tax bill exceeded $18,000 a year. Compl. ¶17. She claims that Nashua's then Chief

Assessor, Mr. Duhamel, in response to the Plaintiff's request for an explanation, stated to her:

"you bought it; you own it; you pay for it." *Id.* Plaintiff alleges her early exchanges with Mr.

Duhamel caused him to "despise" her, and that Mr. Duhamel "actively sought to prevent her

from obtaining public documents and information from the Assessing Department." Compl. ¶20.

Plaintiff further alleges Mr. Duhamel launched "a behind-the-scenes campaign to impugn [her]

character and cause other City employees and officials to treat her unfavorably." *Id.*  Plaintiff

declares that "Duhamel, Griffin, Kleiner and other Nashua officials attempted to silence [her] by

restricting, and sometimes preventing, her access to public documents and other information that

[she] could use in what had become a public crusade to pressure Nashua officials to clean up the

Assessing Department." Compl. ¶33.

By late 2018, Plaintiff asserts she "developed an awareness that Duhamel, Kleiner,

Bolton, Leonard, and the Mayor were taking her public criticisms personally and had started

treating her differently than other citizens when she sought public documents and information

---

[1] By reciting Plaintiff's allegations as required under a Rule 12(c) motion, Defendants Bolton and Leonard in no
way intend to imply agreement therewith.

from City Hall" and that "Duhamel and Corporate Counsel Bolton were particularly offended by

[Plaintiff's] criticisms and quest for information." Compl. ¶39.

*Allegations Specific to Mr. Bolton and Ms. Leonard*

Plaintiff alleges that, on one occasion, after she "had challenged some statements Bolton

made during the hearing, Bolton aggressively approached [her] and barked angrily in her face

that he did not appreciate her challenging him in public." Compl. ¶40. Plaintiff alleges that she

responded by calling Mr. Bolton a "loser." *Id.* Plaintiff further alleges that on another occasion

while the Plaintiff was at Mr. Bolton's office, Mr. Bolton stated to her that she "offended the

Mayor, [she] offended [Mr. Bolton], and [she] offended Lori Wilshire; now it's all personal."

Compl. ¶40. The Plaintiff asserts that Mr. Bolton's "unchecked disdain" for the Plaintiff

continued during two administrative abatement adjudications in the New Hampshire Board of

Tax and Land Appeals and three Superior Court cases regarding New Hampshire's Right-to-

Know ("RTK") law. Compl. ¶41. Additionally, Plaintiff alleges that Mr. Bolton "intervened on

[her] abatements and met outside of public meetings to discuss her property with the Board."[2] *Id.*

Plaintiff asserts that, on multiple occasions during the Plaintiff's abatement appeals and

litigation pertaining to Plaintiff's RTK requests, "Bolton refused to communicate with her and

directed his communications to an attorney representing her in different actions" even though

Plaintiff claims Mr. Bolton knew "she was proceeding in the particular action *pro se*." Compl.

¶42. Plaintiff contends that Mr. Bolton's "palpable disdain for [the Plaintiff] . . . seems to have

clouded his professional judgment in the City's judicial actions involving [the Plaintiff]." Compl.

¶44. Plaintiff further asserts that the "hatred for [her], based on her public criticisms of the

workings of Nashua city government, would cause the defendants named in [the] complaint to

---

[2] As the City's Counsel, Mr. Bolton is permitted to have non-meetings with City officials.  *See* RSA 91-A:2, I(b).

restrict her access to City Hall and prevent her from obtaining documents and information to which she was entitled under municipal and state law." Compl. ¶46.

Plaintiff alleges she was not allowed to contact any of the residential assessors in the Assessing Department, and that Ms. Leonard would not allow her to speak with Doug Dame, an assessor who exclusively performed commercial assessments, because he could not provide Plaintiff with relevant information. Compl. ¶52. The Plaintiff states that on and after April 1, 2019, Kleiner and Ms. Leonard "caused the Nashua Assessing Department to implement a policy preventing [Plaintiff] . . . from orally obtaining any oral assessing information during business hours from *any of the nine employees of the Assessing Department*" which "prevented [her] from obtaining information from the assessors who had done the actual appraisal work pertaining to her home." Compl. ¶53 (emphasis in original).

At the same April 1, 2019 meeting, Plaintiff asserts that Kleiner allegedly instituted a policy that staff were no longer authorized "to immediately fulfill requests to review 'multiple documents' from any member of the public who was conducting research while physically present in the Assessing Department" and that "rather than being able to conduct research comparing property assessments in the public research area of the Assessing Department . . . a requester thereafter had to fill out and submit a form listing the particular files/documents s/he wanted to review." Compl. ¶55. Plaintiff further claims that this was a "Kleiner/Leonard created policy" that "violates § 71 of the Nashua City Charter." Compl. ¶56. Plaintiff states the alleged policy allows "both Kleiner and the Legal Department to review the particular requests" and "allows for unlawful censorship of the documents and information the public is allowed to inspect." *Id.* Plaintiff accuses the City's Legal Department of being a "censor of which public

Assessing Department documents and information the public was allowed to inspect or receive."
Compl. ¶59.

In the late spring and early summer of 2019, Plaintiff alleges that she started requesting

public documents through the formal RTK process, and that Kleiner "caused all of [Plaintiff's]

RTK requests pertaining to the Assessing Department to be referred to the Legal Department."

Compl. ¶66. Plaintiff further alleges that: (1) the "Legal Department often interjected objections

on account of some picayune defect, which is also often expressed in legal jargon that non-

lawyers would not easily understand," (2) that "the Legal Department often delayed production

and consumed many months, only to inform [Plaintiff] in the end that it would not produce any

documents" because of exemptions under the Right-to-Know Law or a technical issue in

Plaintiff's request, and (3) that the Legal Department repeatedly employed "bad faith and lack of

candor" to "prevent [her] from obtaining documents she was entitled to under the law." Compl.

¶¶66-67.

On December 24, 2019, the Plaintiff alleges her attorney, Richard Lehmann, made a

Right-to-Know request for the "complete investigative file" pertaining to an investigation by

Frank Lombardi into Kleiner and Greg Turgiss, but Mr. Lombardi responded that the

investigation was ongoing so documents could not be produced. *See* Compl. ¶¶63, 89. Plaintiff

further alleges that, once the investigation was closed, Attorney Lehmann wrote to Mr. Lombardi

on January 15, 2020, renewing the RTK request, and was sent "some responsive documents

pertaining to the investigation" but not "any videos or transcripts of witness interviews." Compl.

¶¶92, 94. The Plaintiff alleges that despite her requests, she has not received the transcripts and

videos "because the Legal Department got involved and started employing its old bag of tricks to

impede the RTK requests for documents from the Nashua PD." Compl. ¶94. Plaintiff further

alleges that on July 10, 2020, Ms. Leonard told Attorney Lehmann that he "really had not requested videos and transcripts of witness interviews because technically they were considered to be 'evidence' and thus not part of the 'complete copy of the investigative file.'" Compl. ¶95. Plaintiff complains that Ms. Leonard told Attorney Lehmann this would be considered a separate request, and that Ms. Leonard would be back in touch by August 15, 2020, but that after allegedly extending the deadline two different times, Ms. Leonard informed Attorney Lehmann on October 30, 2020 that the City would not produce the transcripts and videos under a *Murray* exemption. Compl. ¶95-96.

Plaintiff admits that in 2020, she "started to become more publicly vocal" about her alleged claims of the "dysfunctional operations of the Assessing Department and other Nashua departments". Compl. ¶97. Plaintiff claims that, in response to her "growing public profile, Donchess, Kleiner, Bolton, Leonard, and other Nashua Public officials commenced a campaign of announcing publicly that [Plaintiff's] requests for information were overburdensome and had prevented city employees from accomplishing the City's work." Compl. ¶99. Plaintiff asserts "these public officials have suggested in public that [she] in effect was a right-wing lunatic waging a war against government itself" and that "[o]ne attorney in the Legal Department would compare [her] actions to those who attacked the Capitol Building in Washington, D.C. on January 6, 2021." *Id.*

### City Hall Incidents

On January 22, 2021, Plaintiff states she went to City Hall to file two abatement applications and get them date-stamped. Compl. ¶107. Plaintiff claims that the door was locked and no one was present at the Administrative Services office, so she went to the Legal Department because it was "[t]he only City Hall office that was not shuttered." Compl. ¶108.

Attorney Neumann allegedly told her to leave, but Plaintiff did not leave and "sat down in the lobby area on the floor." Compl. ¶109. Plaintiff then claims Attorney Leonard walked up to her and "began berating her." Compl. ¶110.

Thereafter, Plaintiff alleges the Nashua Police Department escorted her out of the building, and she was told "she would be given a no trespass order and would be unable to visit City Hall for a year," although the Nashua Police Department later stated they would not be issuing a no trespass order. *Id.* Plaintiff claims Ms. Leonard told a Union Leader reporter that she "'find[s] it troublesome, to say the least. [Her] office will be speaking with the police further." Compl. ¶111. Plaintiff alleges "on information and belief" that City officials, including Mr. Bolton and Ms. Leonard "cajoled, pushed, and pressured Chief Carignan to order that [Plaintiff] be arrested for *felony trespass* until he finally caved and did so on February 17, 2021." Compl. ¶112 (emphasis in original). The Plaintiff goes on to claim that Ms. Leonard allegedly stated Plaintiff "forced her way into the locked legal office," and that Mr. Bolton called Plaintiff a liar. Compl. ¶113.

Plaintiff asserts, on another occasion at a February 8, 2022 Board of Aldermen meeting, that Mr. Bolton allegedly sat mute in the chamber as Kleiner "publicly accused [the Plaintiff] of impersonating a city official" and "defamed [Plaintiff] and simultaneously violated the quoted RTK law." Compl. ¶122.

Plaintiff alleges that on July 22, 2022, Mr. Bolton encountered Plaintiff in City Hall and "once again attempted to have her arrested." Compl. ¶130. Plaintiff alleges that she was at City Hall because the Legal Department, in response to one of her RTK requests, had transmitted documents to her via a secure email portal, and she was unable to open them. *Id.* Plaintiff alleges that she went to the IT Department at City Hall to get help opening the documents, but it

appeared that no one was there. *Id.* Plaintiff claims that "[b]ecause Bolton had ordered that [she] would never be granted an appointment with any Legal Department employee, and that he would have [her] arrested if she attempted to enter the Legal Department," Plaintiff instead decided to call the Legal Department to ask for hard copies of the documents. *Id.*

Plaintiff alleges that she walked to the Legal Department's main entrance door to get the phone number on the wall and dialed the phone number. Compl. ¶131. Plaintiff alleges that, "within seconds" of Manuela Perry answering the Legal Department's phone, the door to the Department "opened abruptly about half-way" and Mr. Bolton was in the doorway. *Id.* Plaintiff claims Mr. Bolton yelled at her, saying: "'You cannot be here!' 'Go!' 'Leave! You are trespassing!' 'I can have you arrested.'" *Id.* Plaintiff claims further that Mr. Bolton told her she was not permitted to call into the Legal Department, nor speak with anyone in the Department by phone. *Id.* The Plaintiff alleges that she was "[f]earful that Bolton would have her arrested" and wanted to have "her side of the incident recorded," so she called back to the Legal Department and when no one answered, she left a message. *Id.* Plaintiff alleges that she was "[c]ertain that Bolton would indeed attempt to cause her to be arrested for trespass," so she called 911 and requested the Nashua Police Department dispatch an officer to City Hall. Compl. ¶132. Plaintiff claims that after giving Officers Earnshaw and Abrams her statement, they spoke with Mr. Bolton who allegedly "insisted that [she] be arrested for trespassing" and allegedly "became extremely upset when [Sergeant Gilbert] did not immediately move to respond to arrest [her]." Compl. ¶133. Plaintiff complains that Mr. Bolton allegedly claimed she was trespassing because there was no public area accessible by the hallway, and that, at the same time, she "should be arrested merely for placing a call to the Legal Department." Compl. ¶134. Plaintiff claims that when Sergeant Gilbert asked Mr. Bolton why there was a video doorbell outside of the Legal

8

Department despite the public not being allowed there, Mr. Bolton responded "For people other than her." *Id.* Plaintiff goes on to allege that Mr. Bolton insisted to Sergeant Gilbert that he could "prevent a single member of the public from being in an area of City Hall open for public access," and "refused to answer" Officer Earnshaw's questions regarding Mr. Bolton's name and date of birth. *Id.*

Plaintiff claims she "assumed that Bolton's banishment of her from the hallway on the third floor stood and that she would be arrested if she went up to the third floor of City Hall," and that because of this, she would not be able to access both the City's IT Department and the public auditorium that hosted many of the City's public meetings. Compl. ¶135. Plaintiff alleges that, in response to an email she sent to Kleiner regarding the Plaintiff's ability to attend meetings via Zoom due to Mr. Bolton's alleged warning, Mr. Bolton "issued an untruthful response" stating that he did not issue the warning, and he only directed her "to leave the narrow corridor providing access to the entrance to and egress from the Legal Department as [he] was attempting to leave and she was interfering with [his] passage." Compl. ¶136. The Plaintiff insists that Mr. Bolton did tell her and the Nashua Police Department that she had no right to be in the hallway near the Legal Department, and insisted "that the Nashua PD arrest her on the spot for criminal trespass." *Id.*[3]

### Standard of Review

Where, based on the facts alleged, the complaint fails to state a claim upon which relief may be granted, judgment on the pleadings is appropriate. *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005). Such motions are considered under the same standard as that for deciding a Rule 12(b)(6) motion. *Id.* As such, the Plaintiff's claims must be plausible. *Fin Brand*

---

[3] These alleged facts are denied in Bolton's answer, but recited here for purposes of this motion.

*Positioning, LLC v. Take 2 Dough Productions, Inc.*, 758 F.Supp.2d 37, 39 (D.N.H. 2010)

(cleaned up). In determining whether claims are plausible, the Court must engage in "'a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 79 (2009)). While the Court accepts as true "well-

pleaded facts" and draws "reasonable inferences in the plaintiff's favor," the Court "credit[s]

neither conclusory legal allegations nor factual allegations that are too meager, vague, or

conclusory to remove the possibility of relief from the realm of mere conjecture." *Martino v.*

*Forward Air, Inc.*, 609 F.3d 1, 2 (1st Cir. 2010); *Legal Sea Foods, LLC v. Strathmore Ins. Co.*,

36 F.4th 29, 33 (1st Cir. 2022) (quoting *García-Catalán v. United States*, 734 F.3d 100, 103 (1st

Cir. 2013) and *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). Where the Plaintiff clearly

cannot recover on any viable theory, the Court must dismiss the claim. *Gray v. Evercore*

*Restructuring LLC*, 544 F.3d 320, 324 (1st Cir. 2008).

## Argument

The Defendants provide the following chart to summarize the claims alleged against them

and their responses thereto:

| Count | Defendant | Argument |
|---|---|---|
| Count I | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section I of Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings [Doc. 42], and Section II of Defendants Donchess' and Griffin's Memorandum of Law in support of their Motion for Judgment on the Pleadings [Doc. 60]. <br> • Further, with respect to Attorneys Bolton and Leonard, the litigation privilege applies. Please refer to Section I of this Memorandum below. |
| Count II | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section I of Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings [Doc. 42], and Section II of Defendants Donchess' and Griffin's Memorandum of Law in support of their Motion for Judgment on the Pleadings [Doc. 60]. <br> • Further, with respect to Attorneys Bolton and Leonard, the litigation privilege applies. Please refer to Section I of this Memorandum below. |

| Count III | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section II of Defendant Carignan's Memorandum of Law in Support of his Motion for Judgment on the Pleadings, and Section IV of Defendants Donchess' and Griffin's Memorandum of Law in Support of their Motion for Judgment on the Pleadings.<br>• Further, with respect to Attorneys Bolton and Leonard, the litigation privilege applies. Please refer to Section II of this Memorandum below. |
|---|---|---|
| Count IV | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section II of Defendant Carignan's Memorandum of Law in Support of his Motion for Judgment on the Pleadings, and Section IV of Defendants Donchess' and Griffin's Memorandum of Law in Support of their Motion for Judgment on the Pleadings.<br>• Further, with respect to Attorneys Bolton and Leonard, the litigation privilege applies. Please refer to Section II of this Memorandum below. |
| Count V | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section III of Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings.<br>• Further, with respect to Attorneys Bolton and Leonard, the litigation privilege applies. Please refer to Section III of this Memorandum below. |
| Count VI | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section IV of Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings, and Section VI of Defendants Donchess' and Griffin's Memorandum of Law in support of their Motion for Judgment on the Pleadings.<br>• The Intracorporate Conspiracy Doctrine applies. Please refer to Section IV of this Memorandum below.<br>• Further, with respect to Attorneys Bolton and Leonard, the litigation privilege applies. Please refer to Section IV of this Memorandum below. |
| Count VII | Kleiner | • Defendants Bolton and Leonard were not named as Defendants in this Count. |
| Count VIII | Kleiner, Inception, Feoli | • Defendants Bolton and Leonard were not named as Defendants in this Count. |
| Count IX | Bolton, Leonard, *et. al.* | • Plaintiff has not alleged facts constituting an abuse of process on the part of Bolton and Leonard. Please refer to Section V of this Memorandum below. |
| Count X | Bolton, Leonard, *et. al.* | • Defendants Bolton and Leonard incorporate and adopt Section V of Defendant Carignan's Memorandum of Law in Support of his Motion for Judgment on the Pleadings, and Section VII of Defendants Donchess' and Griffin's Memorandum of Law in support of their Motion for Judgment on the Pleadings. |

## I.       Counts I and II: First Amendment Claims

Defendants Bolton and Leonard respectfully incorporate and adopt Section I of

Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the

Pleadings [Doc. 42], and Section II of Defendants Donchess' and Griffin's Memorandum of Law

11

in support of their Motion for Judgment on the Pleadings [Doc. 60], relating to Counts I and II.

Plaintiff has not alleged any facts in her complaint against Bolton or Leonard that could be

construed as "restricting," "suppressing," or "chilling" Plaintiff's right to free speech, nor

violating Plaintiff's "right to petition government for redress of grievances." Compl. ¶¶144, 151.

Specifically, Plaintiff's claim that Mr. Bolton allegedly stated "it's all personal" is hardly

grounds for a retaliation claim.

Additionally, with respect to Attorneys Bolton and Leonard, the litigation privilege

applies.  Under New Hampshire law, "certain communications are absolutely privileged and

therefore immune from civil suit." *Carney v. Town of Weare*, 15-cv-291-LM, 2017 U.S. Dist.

LEXIS 23790, at *39 (D.N.H. Feb. 21, 2017) (citing *Provencher v. Buzzell-Plourde Associates*,

142 N.H. 848, 853, (1998) (quoting *McGranahan v. Dahar*, 119 N.H. 758, 762-63, (1979))). One

class of communications that is privileged from liability in civil actions are those "made in the

course of judicial proceedings . . . if the statements are pertinent or relevant to the

proceedings." *Id.* (quoting *Provencher*, 142 N.H. at 853). This rule shows "a determination that

the potential harm to an individual is far outweighed by the need to encourage participants in

litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings."

*Id.* (quoting *Dahar*, 119 N.H. at 763).

Here, Plaintiff has filed numerous legal actions against the City.[4]  Plaintiff's claims

include that:

---

[4]A Court may judicially notice a fact that is not subject to reasonable dispute in that it is either (1) generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Plaintiff has filed the following legal actions: *Ortolano v. City of Nashua*, No. 226-2020-CV-00133 (Filed February 17, 2020); *Ortolano v. City of Nashua*, No. 226-2021-CV-00218 (Filed April 26, 2021); *Ortolano v. City of Nashua*, No. 226-2021-CV-00306 (Filed June 16, 2021); *Ortolano v. City of Nashua*, No. 226-2021-CV-00354 (Filed July 19, 2021); *Ortolano v. City of Nashua*, *et al.*, No. 226-2022-CV-00309 (Filed August 15, 2022); 2018 Tax Abatement Appeal with the Board of Tax and Land Appeals, Docket No. 29472-18PT (Filed August 27, 2019); 2019 Tax Abatement Appeal with the Board of Tax and Land Appeals, Docket No. 29699-19PT (Filed August 3, 2020).

1) Ms. Leonard allegedly refused to allow Plaintiff to speak to Nashua commercial assessor, Doug Dame;

2) Ms. Leonard allegedly created a policy that prevented Plaintiff from obtaining information in the assessing department;

3) The legal department allegedly delayed and inappropriately denied production of documents responsive to 91-A requests;

4) Ms. Leonard allegedly "berated" Plaintiff and had the Plaintiff escorted out of the legal office;

5) Mr. Bolton allegedly "sat mute . . . as Kleiner defamed [Plaintiff] and simultaneously violated the quoted RTK law";

6) Mr. Bolton allegedly, during multiple occasions during Plaintiff's abatement appeals and litigation pertaining to Plaintiff's RTK requests, "refused to communicate with her and directed his communications to an attorney representing [Plaintiff] in different actions";

7) Mr. Bolton allegedly "ordered that [Plaintiff] would never be granted an appointment with any Legal Department employee, and that he would have [her] arrested if she attempted to enter the Legal Department"; and

8) Mr. Bolton allegedly threatened to have [Plaintiff] arrested and called the police, when in fact Plaintiff was preventing Mr. Bolton from leaving the legal office.

Compl. ¶¶42, 52-6, 67-9, 95-6, 108-11, 122, 130-37.[5]

In each of the instances above, these alleged statements and actions were made in the course of judicial proceedings and are pertinent and relative to ongoing litigation and future litigation. *See Carney*, 2017 U.S. Dist. LEXIS 23790 at *39-40. Mr. Bolton and Ms. Leonard were in the midst of defending the City against Plaintiff's claims, and were protecting their client in anticipation of future lawsuits. Plaintiff has accused, and continues to accuse, the City of wrongdoing as it relates to their responses of her RTK requests. Each alleged statement or action was made to or in response to Plaintiff, the initiating party in all of the multiple legal actions she pursued against the City. Plaintiff was directly involved in each lawsuit. In turn, each statement

---

[5] Plaintiff also claims that defendants "commenced a campaign of announcing publicly that [Plaintiffs]'s requests for information were overburdensome and had prevented City employees from accomplishing the City's work." Defendant is not claiming the litigation privilege as to this statement, however, Attorneys Bolton and Leonard are entitled to judgment on any claims based on this statement for the reasons stated in Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings [Doc. 42], and Section II of Defendants Donchess' and Griffin's Memorandum of Law in support of their Motion for Judgment on the Pleadings [Doc. 60].

and action alleged by Plaintiff are relative to her RTK requests and claims, and her interactions with City employees, specifically Defendants Bolton and Leonard, during ongoing litigation where the Defendants were defending the City.

As counsel for the City, Mr. Bolton and Ms. Leonard are shielded from liability for their alleged communications and actions by the litigation privilege, as they were made and done in their function as attorneys for the City, in the process of litigation, and, given the admitted history of multiple lawsuits, in good faith contemplation of further litigation.

## II.      Counts III and IV: Due Process Claims

Defendants Bolton and Leonard respectfully incorporate and adopt Section II of Defendant Carignan's Memorandum of Law in Support of his Motion for Judgment on the Pleadings, and Section IV of Defendants Donchess' and Griffin's Memorandum of Law in Support of their Motion for Judgment on the Pleadings, relating to Counts III and IV.

Further, and as outlined *supra* at § I, as counsel for the City, Mr. Bolton and Ms. Leonard are shielded from liability for their alleged communications and actions by the litigation privilege.

## III.      Count V: New Hampshire Constitution Claim

Defendants Bolton and Leonard respectfully incorporate and adopt Section III of Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the Pleadings, relating to Count V.

Further, and as outlined *supra* at § I, as counsel for the City, Mr. Bolton and Ms. Leonard are shielded from liability for their alleged communications and actions by the litigation privilege.

IV.     **Count VI: Civil Conspiracy Claim**

Defendants Bolton and Leonard respectfully incorporate and adopt Section IV of

Defendant Carignan's Memorandum of Law in support of his Motion for Judgment on the

Pleadings, and Section VI of Defendants Donchess' and Griffin's Memorandum of Law in

support of their Motion for Judgment on the Pleadings, relating to Count VI.

Additionally, Plaintiff has failed to state a claim for civil conspiracy, based on the

intracorporate conspiracy doctrine. To establish civil conspiracy under New Hampshire law, a

plaintiff must show "at least 'two or more persons' conspiring to achieve an unlawful objective."

*Carney*, 2017 U.S. Dist. LEXIS 23790 at *41 (citing *In re Appeal of Armaganian*, 147 N.H. 158,

163, (2001)). The intracorporate conspiracy doctrine makes it legally impossible for the agents

and employees of a corporate entity, acting within the scope of their employment or authority, of

conspiring together. *Id.* (internal citations omitted). This doctrine "ordinarily bars conspiracy

claims premised on a conspiracy between an attorney and a corporate client and its employees."

*Id.* (internal citations omitted).

The doctrine "developed out of basic agency principles that attribute the actions of a

corporation's agents to the corporation itself, which negates the multiplicity of actors necessary

for the formation of a conspiracy." *Id.* at 41-42 (cleaned up).

While the New Hampshire Supreme Court has not decided whether the intracorporate

conspiracy doctrine applies under New Hampshire law, the Court in *Carney* determined that, "if

confronted with the issue, the New Hampshire Supreme Court would adopt the intracorporate

conspiracy doctrine" as "New Hampshire appears to adhere to the traditional principles of

agency law that serve as the doctrine's foundation" and "[t]he majority rule and the modern trend

among states recognizes the [doctrine]." *Id.* at 42-43 (internal citation omitted).

Under New Hampshire law, "[e]very town is a body corporate and politic, and by its corporate name may sue and be sued, prosecute and defend, in any court or elsewhere." N.H. R.S.A. 31:1. In *Carney*, as defendants were employees or agents of the Town (a corporation under New Hampshire law), and were not acting outside the scope of their employment or authority, the court found the intracorporate conspiracy doctrine barred the plaintiff's civil conspiracy claim against the defendant, and granted the defendant's motion for judgment on the pleadings. *Carney*, 2017 U.S. Dist. LEXIS 23790 at *44.

The same facts exist in the present case. Mr. Bolton and Ms. Leonard are both employed by the City of Nashua, a corporation under New Hampshire law. At the time of each allegation levied against the Defendants by Plaintiff, the Defendants were acting within the scope of their employment and with the authority given to them by the City.

Among Plaintiff's allegations are that: (1) Ms. Leonard created and implemented a policy that prevented Plaintiff from obtaining information from the assessing department; (2) Defendants "commenced a campaign of announcing publicly" that Plaintiff's request for information were overburdensome; (3) Defendants "cajoled, pushed, and pressured" the Chief to have Plaintiff arrested for felony trespass; and (4) Mr. Bolton "sat mute . . . as Kleiner defamed Plaintiff." Compl. ¶¶ 53-6, 99, 112, 122. While Bolton and Leonard generally deny these allegations and characterizations by Plaintiff, in each allegation, they were acting within the scope of their employment, and with the authority given to them by the City. As such, the intracorporate conspiracy doctrine bars Plaintiff from claiming civil conspiracy against Bolton and Leonard.

Further, in her *Memorandum Of Law Objecting To Motion For Judgment On The Pleadings Of Defendants James Donchess And John Griffin* [Doc. 73], Plaintiff claims City

16

employees "drew at least two nonmunicipal individuals into their conspiracy to intimidate and

silence her." *Id.* at 22. However, at no point in Plaintiff's complaint does Plaintiff mention any

interactions between Mr. Feoli and Defendants Bolton and Leonard, nor between Mr. Tozier and

Defendants Bolton and Leonard.

Further, and as outlined *supra* at § I, as counsel for the City, Mr. Bolton and Ms. Leonard

are shielded from liability for their alleged communications and actions by the litigation

privilege.

## V.       Count IX: Abuse of Process

In Count IX of the Complaint, Plaintiff alleges that:

> "The City of Nashua, by and through its Legal Department (specifically
> Bolton and Leonard), systematically acted to refuse to permit [Plaintiff] to
> enjoy the rights to which she was entitled as a resident of Nashua
> including but not limited to the right to inspect public documents and
> obtain public information, and the right to fair real estate tax assessments.

Compl. ¶191.

The New Hampshire Supreme Court defines abuse of process as: "One who uses a legal

process whether criminal or civil, against another primarily to accomplish a purpose for which it

is not designed, is subject to liability to the other for harm caused by abuse of process." *Long v.

Long*, 136 N.H. 25, 29 (1992) (citing *Restatement (Second) of Torts § 682*). In order to prevail on

an abuse of process claim, a party must prove (1) a person used (2) legal process, whether

criminal or civil, (3) against the party (4) primarily to accomplish a purpose for which it is not

designed and (5) caused harm to the party (6) by the abuse of process. *Id.* The purpose of this

cause of action, as explained by Comment a to section 682 of the *Restatement (Second) of Torts*,

is not "the wrongful procurement of legal process or the wrongful initiation of criminal or civil

proceedings" but rather it is "the misuse of process . . . for any purpose other than that which it

was designed to accomplish." *Id.* at 29-30 (citing Comment a to *Restatement (Second) of Torts §*
*682*).

The Plaintiff has failed to state a claim for abuse of process, as she has not alleged that
Bolton and Leonard used legal process to accomplish a purpose that the process was not intended
to accomplish. Plaintiff claims Bolton and Leonard forced Plaintiff "to endure the expense,
inconvenience, and emotional trauma by forcing her to bring legal actions" and that they
"employed every tactic they could to delay, run up [Plaintiff's] cost, and deprive [her] of the
benefits of litigation." Compl. ¶191. Further, Plaintiff alleges they "abus[ed] the discovery
process . . . refus[ed] to mediate in good faith . . . refus[ed] to communicate with [Plaintiff] when
she was pro se . . . and appeal[ed] every adverse decision on frivolous grounds." *Id.*

Mr. Bolton and Ms. Leonard have not initiated legal action against Plaintiff. Rather, Mr.
Bolton and Ms. Leonard have represented their client, the City of Nashua, in responding to
nearly 1,000 RTK requests from the Plaintiff, producing over 40,000 pages of documents, and
defending approximately one dozen NH RSA 91-A claims in five lawsuits filed by Plaintiff. *See*
*Ortolano v. City of Nashua*, No. 226-2020-CV-00133; *Ortolano v. City of Nashua*, No. 226-
2021-CV-00218; *Ortolano v. City of Nashua*, No. 226-2021-CV-00306; *Ortolano v. City of*
*Nashua*, No. 226-2021-CV-00354; *Ortolano v. City of Nashua, et al.*, No. 226-2022-CV-00309.
Plaintiff has not alleged that Mr. Bolton and Ms. Leonard have used the legal process against
Plaintiff to accomplish a purpose for which it was not designed. Rather, Plaintiff has alleged that
Mr. Bolton and Ms. Leonard diligently represented their client as required by New Hampshire's
Rules of Professional Conduct, Rule 1.3, and refrained from speaking directly with a represented
party as prohibited by New Hampshire's Rules of Professional Conduct 4.2.

Finally, an appeal process exists for challenging adverse decisions, and Attorneys

Leonard and Bolton's use of the appeal process afforded to the City, in the way it was intended

to be used, does not equate to abusing the legal process. *See Doan v. Downingtown Area Sch.*

*Dist.*, No. 19-959, 2020 U.S. Dist. LEXIS 145571, at *33 (E.D. Pa. Aug. 13, 2020) (holding that

the plaintiff did not allege facts that show the defendant used the appeal process for any purpose

other than that intended by law, and that therefore, the plaintiff did not state a cause of action for

abuse of process); *see also Naythons v. Stradley, Ronon, Stevens & Young, LLP*, No. 07-4489

(RMB), 2008 U.S. Dist. LEXIS 35301, at *17 (E.D. Pa. Apr. 30, 2008) (holding that

"Defendants' desire to seek judicial review of Plaintiff's arbitration decision is a legitimate use

of process" as it is "the purpose of the appeal process" and thus does not constitute a perversion

of process).

Because Plaintiff has not alleged facts constituting an abuse of process on the part of

Bolton and Leonard, judgment in their favor on this count should be granted.

## VI.     Count X: Intentional Infliction of Emotional Distress Claim

Defendants Bolton and Leonard respectfully incorporate and adopt Section V of

Defendant Carignan's Memorandum of Law in Support of his Motion for Judgment on the

Pleadings, and Section VII of Defendants Donchess' and Griffin's Memorandum of Law in

support of their Motion for Judgment on the Pleadings, relating to Count X.

**CONCLUSION**

For the foregoing reasons, Defendants Bolton and Leonard are entitled to Judgment on

the Pleadings.

Respectfully submitted,

**Steven A. Bolton and Celia K. Leonard,**

By their Counsel,

**UPTON & HATFIELD, LLP,**

Date:  February 24, 2023

/s/ Russell F. Hilliard
Russell F. Hilliard
NHBA #1159
159 Middle Street
Portsmouth, NH 03801
(603) 436-7046
rhilliard@uptonhatfield.com

Brooke Lovett Shilo
NHBA #20794
10 Centre Street; PO Box 1090
Concord, NH 03302-1090
(603) 224-7791
bshilo@uptonhatfield.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day forwarded to all counsel of record through the Court's E-filing system.

/s/ Russell F. Hilliard
Russell F. Hilliard