**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| Laurie Ortolano, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 22-cv-00326-LM |
| | ) |
| | ) |
| The City of Nashua, et al., | ) |
| Defendants | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW OBJECTING TO**
**MOTION FOR JUDGMENT ON THE PLEADINGS OF**
**DEFENDANTS STEVEN BOLTON AND CELIA K. LEONARD**

I.     PROCEDURAL POSTURE.

This is an action by the plaintiff, Laurie Ortolano ("Ortolano"), that articulates

ten causes of action: 1. Violations of 42 U.S.C. § 1983 for suppressing her free

speech rights and retaliation against her for her exercise of speech and expression

protected under the First Amendment to the United States Constitution; 2.

Violations of 42 U.S.C. § 1983 for suppressing her right to petition government and

retaliation against her for attempting to do so, which rights are protected under the

First Amendment to the United States Constitution; 3. Violations of 42 U.S.C. §

1983 for suppressing her right to substantive due process, which rights are

protected under the Fourteenth Amendment to the United States Constitution; 4.

Violations of 42 U.S.C. § 1983 for suppressing her right to procedural due process,

which rights is protected under the Fourteenth Amendment to the United States

Constitution; 5. Violations of her right to access governmental proceedings and

1

records under Part 1, Article 8 of the New Hampshire Constitution; 6. Civil Conspiracy under the New Hampshire common law; 7. Violations of NH RSA 91-A:3, II(c), which prohibits public officials from conducting public municipal sessions in which a person's reputation is adversely affected; 8. Defamation under the New Hampshire common law; 9. Abuse of process under the New Hampshire common law; and 10. Intentional infliction of emotional distress under the New Hampshire common law.

Defendants Inception Technologies, Inc. and Raymond Feoli filed a Motion to Dismiss the causes of action against them, which the plaintiff has opposed. Former Police Chief Michael Carignan ("Carignan") filed a Motion for Judgment on the Pleadings, which the plaintiff has opposed. Mayor Donchess ("Donchess") and CFO John Griffin ("Griffin") filed a second Motion for Judgment on the Pleadings. And now, Attorneys Steven Bolton ("Bolton") and Celia K. Leonard ("Leonard") of the Nashua Legal Department have filed a third Motion for Judgment on the Pleadings. At the time of Ortolano's opposition to the Bolton/Leonard motion, none of these dispositive motions have been argued or decided.

II.   THE RELEVANT FACTS.

Ortolano will raise and cite the specific allegations of her Complaint as each becomes relevant below to the arguments raised by defendants Bolton and Leonard.

III.   ARGUMENT.

A.   Counts One and Two: Ortolano's First Amendment Claims

1. <u>Bolton's and Leonard's Incorporation of Section I of Carignan's Memorandum of Law and Section II of Donchess's and Griffin's Memorandum of Law</u>.

In seeking dismissal of Counts One (First Amendment retaliation) and Two (First Amendment denial of right to petition government), Bolton and Leornard start by "incorporate[ing] and adopt[ing] Section I" of Carignan's Memorandum of Law ("Carignan Memorandum") and Section II of Donchess's and Griffin's Memorandum of Law. Defendants Bolton and Leonard's Memorandum of Law in Support of Motion for Judgment on the Pleadings (hereafter, "Bolton/Leonard Memorandum"), at 11-12.

But Section I of the Carignan Memorandum provides no support for Bolton's and Leonard's Motion for Judgment on the Pleadings. Less than a page in total, Section I of the Carignan Memorandum begins by reciting the legal elements of a First Amendment retaliation claim,[1] and then quickly concludes by asserting that, "[a]s set forth above," Ortolano's Complaint did not state sufficient facts to sustain a First Amendment claim against Carignan. Carignan Memorandum, at 7-8. The argument in Section I of the Carignan Memorandum is limited to the question of Carignan's liability vis-à-vis the specific allegations about him in the Complaint; indeed, Section I mentions neither Bolton nor Leonard. Carignan Memorandum, at 7-8. Moreover, although the Statement of Facts Section of the Carignan Memorandum mentions Leonard and Bolton briefly in regard to Ortolano's claim that they were attempting to have her arrested, it does so to argue that the

---

[1] The Carignan Memorandum neither cites any law pertaining to Count Two, the right to petition government cause of action, nor addresses facts relevant to that count.

Complaint did not allege that Carignan was involved in those efforts. Carignan Memorandum, at 4-6. Bolton's and Leonard's adoption of Section I of the Carignan Memorandum is thus curious considering it provides not a shred of support for a dismissal of Counts One and Two against them.

Nor can Bolton and Leonard find support for dismissal of the First Amendment claims against them in Section II of the Donchess/Griffin Memorandum. Subsection a., which argues that Donchess's and Griffin's conduct in public meetings consisted merely of enforcement of ordinances regulating the orderly conduct of official City meetings, thus constituting reasonable time, place, or manner restrictions, clearly is inapplicable to Bolton and Leonard, who are not alleged to have played any role in running public meetings. Donchess/Griffin Memorandum, at 5-9. Subsection b. of the Donchess/Griffin Memorandum argues that, to the extent Ortolano claims she was denied the ability to comment publicly during City meetings, her speech was not chilled because she continued to comment publicly through June 20, 2022. Donchess/Griffin Memorandum, at 9-11. Once again, this subsection has nothing to do with Ortolano's specific allegations about Bolton and Leonard. Subsection c. argues that six instances of speech by Donchess or Griffin were protected by their own free speech rights and, again, have nothing to do with any of the allegations against Bolton and Leonard. Donchess/Griffin Memorandum, at 11-13. And finally, Subsection d. argues that Donchess and Griffin had nothing to do with Ortolano's arrest, or with other attempts to have her arrested. Donchess/Griffin Memorandum, at 13-15. Ortolano does allege that

4

Bolton's and Leornard's conduct caused her arrest and additional efforts to have her arrested. Complaint, ¶¶ 105-112; 114; 130-137, so the Donchess-Griffin efforts to disassociate themselves from the arrest and attempted arrests certainly provide no support for their request for dismissal from the action.

2. <u>Bolton's and Leonard's Assertion of the Litigation Privilege</u>.

Bolton and Leonard are correct that the State of New Hampshire does recognize an absolute litigation privilege, but they have attempted to portray its reach to be far broader than the law provides. New Hampshire recognizes that "statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions." *Reensberna v. Currier*, 873 F. 3d 359, (1st Cir. 2017)(quoting *Pickering v. Frink*, 123 N.H. 326, 328-29 (1983)(citing *McGranahan v. Dahar*, 119 N.H. 758, 763 (1979)). This absolute privilege "is tantamount to an immunity. It is not conditioned on the actor's good faith." *McGranahan*, 119 N.H. at 762. In *Provencher v. Buzzell-Plourde Assocs.*, 142 N.H. 848, (1998), the New Hampshire Supreme Court extended this witness immunity beyond the actual testimony given at judicial proceedings in some circumstances: "The privilege or immunity is not limited to what a person may say under oath while on the witness stand. It extends to statements or communications in connection with a judicial proceeding. . . ." *Id.* (quoting *Bruce v. Byrne-Stevens & Assocs. Eng'rs*, 113 Wash. 2d 123, 776 P.2d 666, 672-73 (1989)). However, the Court found it necessary to limit the reach of the immunity to statements that have "some relation to the proceeding." *Id.* at 854 (quoting RESTATEMENT (SECOND) OF TORTS, § 588 (1977)).

Moreover, prelitigation/prehearing statements must have "some relation to a proceeding that *is actually contemplated in good faith and under serious consideration* by the witness or a possible party to the proceeding" so that "[t]he bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity . . . . when the possibility is not seriously considered." *Id.* at 855 (quoting RESTATEMENT (SECOND) OF TORTS § 588 comment. e (1977)) (emphasis added in *Provencher*).

Bolton and Leonard have suggested a blanket litigation immunity that does not consider whether their statements was relevant to any particular litigation. In footnote 4 on page 12 of their Memorandum they list five "right to know" actions in Hillsborough Superior Court and two tax abatement proceedings Ortolano filed between August 27, 2019 and August 15, 2022, but make no attempt to demonstrate what statements they believe each litigation immunizes. And, without a hint of which of the listed litigations to which each allegedly applies, Bolton and Leonard then list eight statements or actions they claim "were made in the course of judicial proceeds and are pertinent and relative to ongoing litigation and future litigation." In the left column of the table below is each statement from which Bolton and Leonard claim to be immunized, followed in the right column by an explanation why such is not the case.

| | |
|---|---|
| 1) Ms. Leonard allegedly refused to allow Plaintiff to speak to Nashua commercial assessor, Doug Dame; | Paragraph 52 of Ortolano's Complaint. None of the right to know actions or tax abatement cases has anything to do with Ortolano's ability to speak with Doug Dame. |

| | |
|---|---|
| 2) Ms. Leonard allegedly created a policy that prevented Plaintiff from obtaining information in the assessing department; | Paragraph 53 of Ortolano's Complaint. More specifically, this paragraph alleged that Leonard and Kleiner implemented a policy preventing Ortolano from orally obtaining any oral assessing information during business hours from any of the nine employees of the Assessing Department, including the four assessors. None of the litigations or tax abatement proceedings had anything to do with this policy. |
| 3) The legal department allegedly delayed and inappropriately denied production of documents responsive to 91-A requests; | While the Legal department's frequent and lengthy delays in dealing with Ortolano's right to know requests caused her to bring the right to know actions, "delay[ ]" and den[ial] is not within the purview of the litigation immunity Bolton and Leonard are asserting. *See* Argument *supra*. |
| 4) Ms. Leonard allegedly "berated" Plaintiff and had the Plaintiff escorted out of the legal office; | Paragraph 110 of Ortolano's Complaint. Leonard berated Ortolano as she sat on the floor in the Legal Department before the Nashua PD arrived. This was not relevant to any of the right to know actions or real estate tax abatement proceedings. |
| 5) Mr. Bolton allegedly "sat mute . . . as Kleiner defamed [Plaintiff] and simultaneously violated the quoted RTK law"; | Paragraph 122 of Ortolano's Complaint. This occurred in a public meeting at City Hall and is not relevant to any of the right to know actions or real estate tax abatement proceedings Bolton and Leonard have listed. |
| 6) Mr. Bolton allegedly, during multiple occasions during Plaintiff's abatement appeals and litigation pertaining to Plaintiff's RTK requests, "refused to communicate with her and directed his communications to an attorney representing [Plaintiff] in different actions"; | Paragraph 42 of Ortolano's Complaint. A refusal to communicate is not a "statement" within the purview of the litigation immunity Bolton and Leonard are asserting. *See* Argument *supra*. |
| 7) Mr. Bolton allegedly "ordered that [Plaintiff] would never be granted an appointment with any Legal | Paragraph 130 of Ortolano's Complaint. This had nothing to do with any of the right to know litigations or tax |

| | |
|---|---|
| Department employee, and that he would have [her] arrested if she attempted to enter the Legal Department"; and | abatement applications Bolton and Leonard listed in their Memorandum. |
| 8) Mr. Bolton allegedly threatened to have [Plaintiff] arrested and called the police, when in fact he alleged Plaintiff was preventing Mr. Bolton from leaving the legal office. | Ortolano's Complaint at 130-135. Please note that, after viewing City Hall video, the Nashua PD did not find Bolton's claim that Ortolano was preventing him from leaving the legal office to be credible. *Id*. This is one of the incidents that caused Ortolano to commence this action, and which quelled her free speech rights. It is not immunized. |

Bolton's and Leonard's claim of litigation immunity are not supported by the law.

B.  Counts Three and Four: Ortolano's Due Process Claims

In seeking dismissal of Counts Three and Four (Due Process claims), Bolton and Leornard "incorporate and adopt Section II" of the Carignan Memorandum and Section IV of the Donchess/Griffin Memorandum. Bolton /Leonard Memorandum, at 14. Rather than restating them again, Ortolano hereby incorporates her Arguments stated in her opposition Memoranda to those sections. See Ortolano's Memorandum of Law in Opposition to Carignan' Motion for Judgment on the Pleadings, at 20-21, and Ortolano's Memorandum of Law in Opposition to Donchess's and Griffin's Motion for Judgment on the Pleadings, at 18-20.

As to Bolton's and Leonard's reassertion of the litigation privilege, please see pages 5 to 8 of Ortolano's opposition argument *infra*.

C.  Count Five: Ortolano's New Hampshire Constitution Claims

In seeking dismissal of Count Five (New Hampshire Constitution claims), Bolton and Leornard "incorporate and adopt Section III" of the Carignan Memorandum. Bolton /Leonard Memorandum, at 14. Rather than restating them again, Ortolano hereby incorporates her arguments stated in her opposition Memoranda to those sections. See Ortolano's Memorandum of Law in Opposition to Donchess's and Griffin's Motion for Judgment on the Pleadings, at 20.

As to Bolton's and Leonard's reassertion of the litigation privilege, please see pages 5 to 8 of Ortolano's opposition argument *infra*.

D. <u>Count Six: Ortolano's Civil Conspiracy Claim</u>

In seeking dismissal of Count Six (Civil Conspiracy), Bolton and Leornard "incorporate and adopt Section IV" of the Carignan Memorandum and Section VI of the Donchess/Griffin Memorandum. Bolton /Leonard Memorandum, at 15. Rather than restating them again, Ortolano hereby incorporates her Arguments stated in her opposition Memoranda to those sections. See Ortolano's Memorandum of Law in Opposition to Carignan' Motion for Judgment on the Pleadings, at 21-22, and Ortolano's Memorandum of Law in Opposition to Donchess's and Griffin's Motion for Judgment on the Pleadings, at 21-23.

Bolton and Leonard attempt to counter Ortolano's argument that the intracorporate conspiracy doctrine does not apply because at least two of the participants were noncorporate conspirators by arguing that "at no point in Plaintiff's complaint does Plaintiff mention any interactions between Mr. Feoli and Defendants Bolton and Leonard, nor between Mr. Tozier and Defendants Bolton

and Leonard. Bolton/Leonard Memorandum, at 17. This argument misconstrues the nature of a conspiracy; there is no requirement that each participant in a conspiracy interact directly with every other participant in the conspiracy. The elements of a civil conspiracy come nowhere near imposing this requirement: (1) two or more persons; (2) an object to accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means, or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as to the proximate result thereof. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987). To hold that every coconspirator must directly interact with every other coconspirator would make large, complex conspiracies with many coconspirators (e.g., some antitrust conspiracies) impossible to prosecute.

As to Bolton's and Leonard's reassertion of the litigation privilege, please see pages 5 to 8 of Ortolano's opposition argument *infra*.

E.   Count Nine: Ortolano's Abuse of Process

Under New Hampshire law,: (1) a person used (2) legal process, whether criminal or civil, (3) against the party (4) primarily to accomplish a purpose for which it is not designed and (5) caused harm to the party (6) by the abuse of process. *Long v. Long*, 136 N.H. 25, 29 (1992).

> The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. *Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of*

> *the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section.*

RESTATEMENT (SECOND) OF TORTS § 682 comment a at 474 (emphasis added).

A restatement of the facts already stated in the opposition Memorandum to Carignan's Motion for Judgment on the Pleadings is in order. On January 22, 2021, Ortolano went to City Hall to get the abatement applications date stamped. Complaint, ¶ 107. Finding that the only City Hall office that was not shuttered was the Legal Department and, knowing that the Legal Department had been handling assessment questions from the public since the Assessing Department had been closed for construction, Ortolano knocked on the door to the Legal Department and employee Mindy Lloyd opened it and asked if Ortolano had an appointment. Complaint, ¶ 107-108. Ortolano said "no" but that she only needed a date stamp on the abatement applications; she asked if Attorney Neumann (the attorney handling RTK requests) was available to provide one. Complaint, ¶ 109. When Attorney Neumann said he would not date stamp her abatement applications and told her she would have to leave, Ortolano, running out of options, said she was going to wait in the lobby area for someone to assist her; she sat down in the lobby area on the floor. Complaint, ¶ 109. A short time later, Leonard arrived at the Legal Department and started to scream at Ortolano, who remained sitting on the floor while the Nashua Police Department was summoned. Complaint, ¶ 110. A compilation of all police reports regarding every potential criminal trespass event resulting in a verbal or written warning or arrest, and which occurred at Nashua

City Hall between January 1, 2014 and January 31, 2021, which was attached to

the Carignan opposition papers as Exhibit "J" shows that, even in regard to the

listed incidents that were potentially more violent or intrusive than Ortolano's

January 22, 2021 incident, the Nashua Police Department charged not a single

person with criminal trespass between 2014 and January 2021. The Nashua Police

Department personnel handling Ortolano's incident shows that they believed that

no crime had occurred and there was no reason for arrest.

> Laurie was sat down in an upstairs corridor area of City Hall. Was not
> causing a scene on arrival and appeared calm. She was upset as
> reported she has been trying to get appointment and paperwork
> stamped by city hall and they continue to not assist her. Reports this
> has been going on for months. She apparently assists people in
> property tax abatement/reductions and needed papers stamped.
>
> Spoke with Celia from City Hall who is Deputy Corporation Counsel
> for city? She said this is ongoing issue with Laurie and that personnel
> from NPD are aware. No allegations of any threats made but stated
> that Celia (sic) needed to leave now. Wanted her trespassed but
> allowed at City Hall if she has an approved appointment. Reported the
> City have had a lot of contact with Laurie via email and that there are
> pending lawsuits with the City.
>
> Lauries (sic) was asked to leave. She left willingly but stressed her
> frustration indicating that the City do (sic) not communicate with her
> or assist her. She was informed she is being trespassed for one year
> and is not allowed at City Hall unless with an appointment. She was
> advised that she could face arrest from Criminal Trespass if she
> attends City Hall without an appointment. She understood.
>
> *No offences alleged or apparent*

*See* Exhibit "J" of Opposition papers to Carignan Motion for Judgment on the

Pleadings, at 7-8 (emphasis added). Consistent with their finding, a day or so later

the police informed Ortolano's attorney and the press that "the incident required no

further action" and they were not even going to issue a no trespass order.

Complaint, ¶ 110. But, when a *Union Leader* reporter informed defendant Leonard

of the Nashua Police Department's statement that there would be neither an arrest

nor a no trespass order, Leonard responded, "I find it troublesome, to say the least.

My office will be speaking with the police further." Complaint, ¶ 111. It is at least

plausible that Leonard and Bolton, her supervisor, overruled the five police

personnel who handled the Ortolano incident after Leonard's office spoke with

him/her/them. On February 17, 2021, the Nashua Police Department arrested

Laurie Ortolano. Complaint, ¶ 112. Plausible evidence exists that Bolton and

Leonard misused the legal process for someone to be arrested at City Hall for a sit-

on-the-floor protest although far more troubling and potentially violent incidents at

City Hall had not been prosecuted for some seven years before. And there is plenty

of evidence to suggest that the arrest was made to punish Ortolano for her protected

free speech activities, which they found to be annoying.  This is a misuse of the legal

process and meets the elements of abuse of process.

     F.  <u>Count Ten: Ortolano's Intentional Infliction of Emotional Distress Claim</u>

     In seeking dismissal of Count Ten (Intentional Infliction of Emotional

Distress), Bolton and Leornard "incorporate and adopt Section V" of the Carignan

Memorandum and Section VII of the Donchess/Griffin Memorandum. Bolton

/Leonard Memorandum, at 19. Rather than restating them again, Ortolano hereby

incorporates her Arguments stated in her opposition Memoranda to those sections.

See Ortolano's Memorandum of Law in Opposition to Carignan' Motion for

Judgment on the Pleadings, at 22, and Ortolano's Memorandum of Law in Opposition to Donchess's and Griffin's Motion for Judgment on the Pleadings, at 21.

IV.    CONCLUSION.

For the foregoing reasons, the plaintiff, Laurie Ortolano respectfully submits that the Motion of Defendants Steven Bolton and Celia K. Leonard for Judgment on the Pleadings should be denied.


Dated:         March 24, 2023                    Respectfully submitted,

                                                 Laurie Ortolano, Plaintiff
                                                 By her Attorneys,

                                                 Olson & Olson, P.A.
                                                 */s/* Kurt S. Olson
                                                 Kurt S. Olson
                                                 Bar ID No. 12518
                                                 31 Franklin Rd.
                                                 Salisbury, NH 03268
                                                 603-748-1960
                                                 kolson@mslaw.edu

<u>CERTIFICATE OF SERVICE</u>

I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically forthwith to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                 */s/ Kurt S. Olson*
                                                 Kurt S. Olson
                                                 31 Franklin Rd.
                                                 Salisbury, NH 03268
                                                 603-748-1960
                                                 kolson@mslaw.edu

        .