UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Laurie Ortolano

      v.                                      Case No. 22-cv-326-LM
                                                  Opinion No. 2023 DNH 072P

City of Nashua et al.

## O R D E R

Invoking state and federal constitutional, statutory, and common law, plaintiff Laurie Ortolano has sued the City of Nashua, New Hampshire ("Nashua" or "the City"), its Mayor, several current and former Nashua employees and officials, and two private parties involved in providing document scanning services to the City. Although not all 10 counts in Ortolano's complaint (doc. no. 1) are leveled against every defendant, the gist of her claims is that the defendants, individually or collectively, improperly deprived Ortolano of certain rights in retaliation for her criticism of city acts and officials. Defendants Inception Technologies, Inc., and Inception President Raymond Feoli have moved to dismiss the two claims Ortolano has asserted against them – defamation (Count 8) and intentional infliction of emotional distress ("IIED") (Count 10). See Fed. R. Civ. P. 12(b)(6). As set forth in more detail below, the defendants' motion is granted as to the emotional distress claim and denied as to the defamation claim. As to the former claim, the factual allegations in the complaint do not describe "extreme and outrageous conduct," as is required by New Hampshire law. The court denies the motion as to the defamation claim because the motion is premised in large part on

Feoli's fact-intensive affidavit (doc. no. 31-2), which the court declines to consider in

the context of deciding this Rule 12(b)(6) motion.

## STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim

under Rule 12(b)(6), the court asks whether the plaintiff has made allegations in

her complaint that are sufficient to render her entitlement to relief

plausible.  See Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).

The court accepts all well-pleaded facts as true and draws all reasonable inferences

in the non-moving party's favor.  Hamann v. Carpenter, 937 F.3d 86, 88 (1st Cir.

2019).  The court, however, disregards conclusory allegations that simply parrot the

applicable legal standard.  Manning, 725 F.3d at 43.

## BACKGROUND[1]

Ortolano asserts that in 2014, shortly after purchasing a home in Nashua,

assessors with the City's Assessing Department increased her home's assessment

by more than 50%.  Doc. no 1 ¶ 15.  By July 2017, Ortolano alleges that her tax bill

exceeded $18,000 a year.  Id. ¶ 17.  At that time, Ortolano alleges that she called

the City's then Chief Assessor, defendant Jonathan Duhamel, for an explanation for

her increasing tax bills.  Id. ¶ 18.  She claims that Duhamel was defensive and

ended the phone call by tersely stating: "you bought it; you own it; you pay for it."

Id.  She further claims that after this exchange Duhamel actively sought to prevent

---

[1] Ortolano's complaint covers 67 pages and nearly 200 paragraphs.  The court
limits the factual background in this Order only to those allegations necessary to
resolve the instant motion.

her from obtaining public documents and information from the Assessing

Department.  Id. ¶ 20.  Ortolano also asserts that Duhamel "would even launch a

behind the scenes campaign to impugn [her] character and cause other City

employees and officials to treat her unfavorably."  Id.

This "campaign," Ortolano states, began after the July 2017 phone call and

resulted in Duhamel and other employees exchanging emails disparaging her.  Id.

¶¶ 22-23.  She contends that by late 2018 "Duhamel, Kleiner, Bolton, Leonard, and

the Mayor were taking her public criticisms personally and had started treating her

differently than other citizens when she sought public documents and information

from City Hall."  Id. ¶ 39.

Ortolano's interactions with Feoli and Inception began in late 2021, during

which time she and the City were engaged in a dispute over public records requests

following her property tax dispute.  The claims against Feoli and Inception are

based on the allegations in a single paragraph of her complaint:

> In fall 2020, the City had contracted with Inception Technologies to
> scan Assessing Department files to make available publicly-accessible
> digital records. In late 2021, because Kleiner had not provided any
> public updates about the project, Ortolano contacted Inception's
> President, Feoli, to ask him questions about how the scanning and
> storage was handled. She contacted him again in early-February 2022
> for an update. After that second phone call, despite the fact that
> Ortolano never stated that she was employed by the City of Nashua,
> was an independent contractor for the City of Nashua, or in any way
> represented the City of Nashua, Feoli later told Kleiner about the
> phone call and referred to Ortolano as a city employee. Feoli would
> later admit when giving a statement about the incident to the Nashua
> PD that Ortolano had never stated or suggested that she was a City

employee; he assumed she was because she was so knowledgeable about city government.

Doc. no. 1 ¶ 121.

## DISCUSSION

Before addressing the counts at issue in this motion, the court notes that the defendants supported their motion with Feoli's 19-paragraph affidavit. Doc. no. 31-2. Ortolano's objection is similarly supported by a 12-paragraph affidavit and several exhibits. Doc. no. 33-2. Generally speaking, both affidavits attempt to resolve factual issues.

The scope of the court's analysis on a Rule 12(b)(6) motion is usually limited to "facts and documents that are part of or incorporated into the complaint . . . ." GE Mobile Water, Inc. v. Red Desert Reclamation, LLC, 6 F. Supp. 3d 195, 199 (D.N.H. 2014) (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)); see also Fed. R. Civ. P. 12(d). The First Circuit has recognized a limited exception to this general rule for certain categories of documents, see GE Mobile Water, Inc., 6 F. Supp. 3d at 199, but there is no question here that the affidavits submitted by the plaintiffs do not fall within one or more of these categories. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (noting that such documents include records "the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint.").

Outside of this exception, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding

4

is properly converted into one for summary judgment under [Rule] 56." Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co., 993 F.2d 269, 272 (1st Cir. 1993) (internal quotation marks omitted) (citation omitted); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). When a court elects to convert a Rule 12(b)(6) motion into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The decision to convert is "wholly" within the trial court's discretion. Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007) (citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

The court declines to consider the affidavits and exhibits at this stage of the litigation, as they portray a factual dispute regarding conversations between Feoli and Ortolano and Feoli and City personnel that are not appropriate for resolution under Rule 12(b)(6). The court also declines to convert this motion into one for summary judgment, as a properly supported motion under Rule 56 would provide the court with concise statements and record citations as to genuine factual issues in material dispute. See LR 56.1. The court also agrees with Ortolano that "justice would best be served if the parties were able to" fill factual gaps with discovery. Doc. no. 33-1 at 17. The court therefore analyzes the two counts asserted against Feoli and Ortolano under Rule 12(b)(6), without reference to the parties' affidavits.

I.      Defamation

In Count 8, Ortolano alleges that Feoli defamed her when, while acting on behalf of Inception, he implied to Kleiner that Ortolano had falsely represented to him that she was a City employee. Doc. no. 1 ¶¶ 185.[2] Under New Hampshire law, "[a] plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party . . . ." Pierson v. Hubbard, 802 A.2d 1162, 1165 (N.H. 2002). A statement is defamatory if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people." Nash v. Keene  Publ'g Corp., 498 A.2d 348, 351 (N.H. 1985). Alleged defamatory statements must be read in the context of the entire publication. Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 509 (1st Cir. 2002) (citing Duchesnaye v. Munro Enters., Inc., 480 A.2d 123, 125 (N.H. 1984)). "A statement is not actionable [defamation] if it is substantially true." Moss, 312 F.3d at 509 (citing Simpkins v. Snow, 661 A.2d 772, 776 (N.H. 1995)).

Drawing all reasonable inferences in Ortolano's favor, as the court is required to do under Rule 12(b)(6), the court finds that she has alleged enough facts in her complaint to support a plausible claim that Feoli at least implied to Kleiner that Ortolano falsely claimed to be a City employee. The court also rejects defendants' argument that Feoli's comments are, as a matter of law, protected opinion.

---

[2] Ortolano has also sued Kleiner for defamation, alleging that he accused her of impersonating a city official in a public meeting. Doc. no. 1 ¶ 188.

"A statement of opinion is not actionable unless it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." Thomas v. Telegraph Publ'g Co., 929 A.2d 993, 1015 (N.H. 2007) (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990)).  An important criterion for distinguishing statements of opinion from statements of fact is verifiability, i.e., whether the statement is capable of being proven true or false.  Automated Transactions, LLC v. Am. Bankers Ass'n, 216 A.3d 71, 77 (N.H. 2019).  "The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be" verifiable and hence actionable.  Levinsky's v. Wal-Mart Stores, Inc., 127 F.3d 122, 129 (1st Cir. 1997).  Here, unlike such pejoratives as "a rip-off, a fraud, a scandal, a snake-oil job" or "sleazy," which are too vague to be actionable, see id., Feoli's apparent claim that Ortolano claimed to be a City employee "is capable of being proven true or false."  Id.  The time for such proof, however, is not in the context of a motion to dismiss.  Accordingly, the defendants' motion to dismiss Count 8 is denied.

II.     Intentional Infliction of Emotional distress

To set forth a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant "by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another." Morancy v. Morancy, 134 N.H. 493, 496 (1991) (quotation omitted).  "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional

distress, or even that his conduct has been characterized by malice." Mikell v. Sch.

Admin. Unit No. 33, 158 N.H. 723, 729 (2009) (citation and quotations omitted).

Rather, "[l]iability has been found only where the conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community."

Id.

Regardless of whether the defendants' conduct can be construed as "extreme

and outrageous," "emotional distress resulting from harm to reputation and good

name caused by the publication of defamatory statements cannot give rise to a

separate action for intentional infliction of emotional distress." de Laire v. Voris,

No. 21-CV-131-JD, 2021 WL 3550041, at *5 (D.N.H. Aug. 11, 2021) (citing Moss,

312 F.3d at 510).

Even if such a claim could proceed, the allegations fall short of what is

required under New Hampshire law to state an IIED claim.  A comparison with the

New Hampshire Supreme Court's decision in Mikell is instructive.  There, the New

Hampshire Supreme Court upheld the trial court's dismissal of an IIED claim in a

case involving a student who committed suicide.  The plaintiff alleged that a

schoolteacher falsely reported a disciplinary infraction against the student, causing

emotional distress that resulted in the student's suicide.  Id. at 729.  The plaintiff

claimed that the teacher's motive was to cause the student's expulsion.  Id.  The

Court held that while a "teacher falsely reporting misconduct by a student is a

reprehensible act, the circumstances of this case are simply not beyond all possible

bounds of decency." Id. at 730. Even as alleged by Ortolano nothing about Feoli's conduct could even be characterized as "reprehensible," a characterization which itself fell short of the mark in Mikell.

A decision by this court also provides guidance. In Banks v. Hall, No. 10–cv–269–JL, 2012 WL 3263607 (D.N.H. Aug. 9, 2012), the plaintiff sued several state troopers who allegedly kicked, tasered, and sicced their police dog on him. Id. at *1. Although the court found the allegations sufficient to deny the officers summary judgment on plaintiff's excessive force claim, the court granted summary judgment for the troopers on plaintiff's emotional distress claim "because, even if the defendants' conduct amounted to excessive force, no rational factfinder could deem it 'atrocious, and utterly intolerable in a civilized society.'" Id. at *2 (quoting Mikell, 972 A.2d at 1056). So it is here. While the allegations that Ortolano lodges against Feoli and Inception could be construed as defamatory, it falls well short of "extreme and outrageous conduct." Accordingly, Count 10, intentional infliction of emotional distress, is dismissed as to defendants Feoli and Inception.

## CONCLUSION

Based on the foregoing, Feoli and Inception's motion to dismiss (doc. no. 31) is granted as to Count 10 (IIED) and denied as to Count 8 (defamation).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 12, 2023
cc: Counsel of Record

9