UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Laurie Ortolano,                                    )
Plaintiff,                                          )
                                                    )
v.                                                  )          Civil Action No. 1:22-cv-00326-LM
                                                    )
The City of Nashua, *et al.*,                       )
Defendants.                                         )
                                                    )

**DEFENDANTS BOLTON AND LEONARD'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendants Steven A. Bolton, Corporation Counsel for the City of Nashua, New

Hampshire, and Celia K. Leonard, a Deputy Corporation Counsel for the City of Nashua, New

Hampshire, hereby submit this Memorandum of Law in support of their Motion for Summary

Judgment, stating as follows:

## I.        Introduction

Plaintiff initiated this action against a number of parties, including Steven A. Bolton and

Celia K. Leonard, Counsel for the City of Nashua, and asserted ten causes of action alleging

"deprivation of civil rights . . . the City of Nashua, through and by its public officials, has foisted

upon her." Compl., doc. no. 1, at 4. The Defendants moved for Judgment on the Pleadings on

each of Plaintiff's ten causes of action, and on September 26, 2023, this Court granted the

Defendants' Motion for Judgment on the Pleadings for all but two of Plaintiff's claims. *See*

September 26, 2023 Order, doc. no. 60, at 26. As the Court noted in its order, the Plaintiff's

allegations against Defendants Bolton and Leonard are sparse, and boil down to two incidents at

City Hall, one leading to Plaintiff's arrest and conviction for criminal trespass. *See id.* at 15.

Plaintiff cannot prove First Amendment retaliation, as probable cause existed for her arrest for

the January 2021 incident, to which she pled guilty, and no adverse action occurred as a result of the July 2022 incident.  As there is no genuine dispute as to any material fact, and the Defendants are entitled to judgment as a matter of law, summary judgment in favor of the Defendants is proper.

## II.      **Summary Judgment Standard**

"A party may move for summary judgment, identifying . . . the part of each claim . . . on which summary judgment is sought."  Fed. R. Civ P. 56(a).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ P. 56(a).

> When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." *Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." *Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted). Consequently, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." *Perez v. Lorraine Enters.*, 769 F.3d 23, 29-30 (1st Cir. 2014). In other words, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment." *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 451-52 (1st Cir. 2014). *See generally Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986).

*Walker v. Sch. Admin. Unit Sixteen*, 19-cv-1149-SM, 2021 U.S. Dist. LEXIS 210204, at *1-2 (D.N.H. Nov. 1, 2021).

### III.     Statement of Material Facts

**A.     Background**

1.      Steven A. Bolton and Celia K. Leonard are attorneys in the Office of Corporation Counsel for the City of Nashua. <u>Ex. A</u>, Bolton Aff. ¶ 1; <u>Ex. B</u>, Leonard Aff. ¶ 1.

2.      Their office has assisted its client, the City of Nashua, with responses to over 1,000 right-to-know ("RTK") requests from the Plaintiff over the last few years, producing over 40,000 pages of documents, and defended more than one dozen NH RSA 91-A claims in, to date, sixteen lawsuits filed by Plaintiff in superior court. <u>Ex. A</u>, Bolton Aff. ¶ 2; <u>Ex. B</u>, Leonard Aff. ¶ 2.

3.      Some of Plaintiff's many RTK requests were referred to the Legal Department. Compl., doc. no. 1, ¶ 66; Defs. Ans., doc. no. 30, ¶ 66.

4.      In 2020, Plaintiff became "more publicly vocal" about her opinions regarding the City of Nashua employees and departments, she "frequently post[ed] on social media" about her views of the City and its administration, and she "launched a website entitled 'good-gov.org' on which she posted blogs" about her views of Nashua's city government. Compl., doc. no. 1, ¶ 97; Defs. Ans., doc. no. 30, ¶ 97.

5.      Plaintiff "achieved" a "public profile" through social media and her "good-gov.org" blog site. Compl., doc. no. 1, ¶ 98; Defs. Ans., doc. no. 30, ¶ 98.

**B.     January 2021 Incident**

6.      On January 22, 2021, the Plaintiff went to City Hall. Compl., doc. no. 1, ¶ 107; Defs. Ans., doc. no. 30, ¶ 107.  Plaintiff alleges she was there to have abatement applications date stamped. Compl., doc. no. 1, ¶ 107.

7.      The Legal Department is not open to the public, has locked entry doors, and does not date stamp abatement applications.[1] Ex. B, Leonard Aff. ¶ 3. Additionally, at the time of this incident, City Hall still had a few Covid-19 restrictions in place. Ex. B, Leonard Aff. ¶5.

8.      Plaintiff did not have an appointment with anyone in the Legal Department. Ex. C, Lloyd Aff. ¶ 2.

9.      Legal Assistant Mindy Lloyd told Plaintiff she could not enter the office without an appointment. Ex. C, Lloyd Aff. ¶ 3.

10.     Instead of leaving, Plaintiff forcibly entered the locked Legal Department, and forced her way past Ms. Lloyd into the locked office area. Ex. C, Lloyd Aff. ¶ 4.

11.     Attorney Neumann came out of the conference room to assist Ms. Lloyd. Ex. C, Lloyd Aff. ¶ 5.

12.     Attorney Neumann told Plaintiff repeatedly that she needed to leave immediately and that she was trespassing. Ex. C, Lloyd Aff. ¶ 6.

13.     Plaintiff sat down on the floor, first in the doorway of Attorney Leonard's office, and then moved to sit on the floor near the main entrance door. Ex. C, Lloyd Aff. ¶ 7.

14.     Attorney Leonard arrived at the Legal Department on January 22, 2021 and was confronted by Ortolano sitting on the floor in front of her office. Ex. B, Leonard Aff. ¶6.

15.     Attorney Leonard told Plaintiff she was trespassing and needed to leave. Ex. B, Leonard Aff. ¶ 5.

---

[1] The role of the Legal Department had been explained to Plaintiff on or before September 11, 2019, and Plaintiff stated that "You made very clear that legal is only there to address specific document requests and I should not bring any other information of concerns regarding the City to the attention of the legal office." Ex. B, Leonard Aff. ¶ 3; Ex. B-1. On Wednesday, January 20, 2021, the City's then Chief Assessor, Mr. Vincent, emailed Plaintiff to tell her that he would get the abatement applications date-stamped for her. Ex. B, Leonard Aff. ¶ 4; Ex. B-2.

16.     Ms. Lloyd called the Risk Assessment office, who advised Ms. Lloyd and Attorney Neumann to call the Nashua Police Department. Ex. C, Lloyd Aff. ¶ 8.

17.     The police arrived at the Legal Department, and escorted Plaintiff out of the Legal Department. Ex. B, Leonard Aff. ¶ 8.

18.     The Nashua Police Department informed Plaintiff that "she [was] being trespassed from City Hall and only allowed in the building with an approved appointment."  She was advised that she could face arrest from Criminal Trespass if she attends City Hall without an appointment. This was confirmed with Attorney Leonard. Ex. B, Leonard Aff. ¶ 9.

19.     Plaintiff commented that "she would probably be arrested as she would be back." Ex. B, Leonard Aff. ¶ 10.

20.     After learning what occurred and believing a criminal trespass charge would be appropriate for anyone so conducting themselves in such a manner, Attorney Bolton expressed an opinion that the Nashua Police Department should interview witnesses before it made a charging decision. Ex. A, Bolton Aff. ¶ 3.

21.     Defendants Bolton and Leonard have no authority over the Nashua Police Department, as it is controlled by an independent police commission. Ex. A, Bolton Aff. ¶ 10; Ex. D, Carignan Aff. ¶ 9.

22.     After an investigation into the incident, the Nashua Police Department arrested the Plaintiff for criminal trespass. Ex. B, Leonard Aff. ¶ 11; Ex. D, Carignan Aff.

23.     Attorneys Leonard and Neumann, and Ms. Lloyd, were the victims of Ortolano's criminal trespass. Ex. B, Leonard Aff. ¶ 12; Ex. C, Lloyd Aff. ¶ 9.

24.     Although Plaintiff later sought to have the charge annulled, she pled guilty on July 12, 2021 to committing trespass on January 22, 2021. *See* Pltf.'s Mem. in Supp. of Obj.,

doc. no. 33-1 at p.9 n.1. This conviction had not yet been annulled at the time Plaintiff filed her Complaint in this matter.  *See id.*

    **C.**    **July 2022 Incident**

    25.    On July 22, 2022, Attorney Bolton and Plaintiff encountered one another in City Hall, around noon (Attorney Leonard was not present during this incident, and the Plaintiff does not allege any involvement of Attorney Leonard in this incident). Ex. A, Bolton Aff. ¶¶ 4-5.

    26.    The Legal Department had transmitted responsive documents to one of Plaintiff's RTK requests via email, through Citrix, a secure email portal for document transfers.  Plaintiff was unable to open the documents. Compl., doc. no. 1, ¶ 130.

    27.    Attorney Bolton opened the Legal Department door and saw Plaintiff in the hallway.  He directed Plaintiff to leave the narrow corridor providing access to the entrance to and egress from the Legal Department as he was attempting to leave, and Plaintiff was interfering with his passage and refusing to move. Ex. A, Bolton Aff. ¶ 6.

    28.    Attorney Bolton did not call the police department in connection with this incident. Compl., doc. no. 1, ¶ 132; Ex. A, Bolton Aff. ¶ 7.

    29.    Rather, Plaintiff called the Nashua Police Department, saying Attorney Bolton was assaulting her. Ex. A, Bolton Aff. ¶ 7.

    30.    Plaintiff was not present when Attorney Bolton spoke with the Nashua Police Department, and alleged in Paragraph 135 of the Complaint that she did not know "what had transpired when Nashua PD personnel interviewed Attorney Bolton." Compl., doc. no. 1, ¶ 135; Ex. A, Bolton Aff. ¶ 8.

31.     Attorney Bolton answered the Nashua Police Department's questions, telling them he had asked and then directed Plaintiff to leave the hallway so he could pass.  Ex. A, Bolton Aff. ¶ 9.

32.     No arrest was made as a result of this incident. Ex. A, Bolton Aff. ¶11.

**D.     Plaintiff's Speech Has Not Been Chilled**

33.     Plaintiff cannot show that her speech has been chilled, as she continued (and continues) to exercise her First Amendment rights. Ex. A, Bolton Aff. ¶12.

34.     On August 17, 2022, Plaintiff sent an email stating that she filed another NH RSA 91-A lawsuit against the City, calling Attorney Bolton a "moron" and Attorney Leonard a "nitwit," and discussing how, on numerous occasions, she publicly criticized City officials, even after her arrest in 2021. Ex. A, Bolton Aff. ¶ 13; Ex. A-1.

35.     Plaintiff also stated that Attorney Leonard had the "cuntiest behavior" Plaintiff had ever seen. Ex. A, Bolton Aff. ¶ 13; Ex. A-1.

36.     On numerous occasions after her arrest in January 2021, as well as after the July 2022 incident, Plaintiff was publicly critical about City Officials at public meetings, through her blog posts, and in emails to City Officials, including, but not nearly limited to, the following statements:

     a)  In her August 27, 2022 blog post, titled "*The Colossal Stupidity of the Nashua Legal Office*," Plaintiff wrote: "Like the Assessing Office, the Mayor has promoted incompetent leadership and lawyers who ignore their professional conduct codes and disregard citizen's rights. Who are the major offenders? Attorney Bolton and Attorney Leonard." Ex. A, Bolton Aff. ¶ 14(a); Ex. A-2.

b) In her December 18, 2022 blog post titled "The Police Records of Attorney Bolton," Plaintiff wrote: "[The records] depict a very angry, hostile, out-of-control man who lacks self-awareness and self-control," and "But of course, with the Mayor not staffing an ethics committee for four years, the county attorney's office being incompetent, no municipal division of the AG's office, and a PCC (which stands for Protect Corrupt Counselors), all dodging the problem, how is justice delivered?" Ex. A, Bolton Aff. ¶ 14(b); Ex. A-3.

c) In a November 28, 2022 email to City Officials, Plaintiff wrote, among many other things: "I found the Mayor's remarks to lack credibility and take ownership for the budget and tax increase, and the need for the assessment revaluation" and "[The Mayor] is the master of blame and always the virtuous victim. These are serious character flaws that do not exemplify leadership." Ex. A, Bolton Aff. ¶ 14(c); Ex. A-4.

d) At a July 18, 2022 Board of Alderman meeting, the Plaintiff stated: "I've noticed this individual is a fairly young person and he's coming to a City that I think is very corrupted and working for a Mayor that I think is really unethical, unscrupulous, a liar and I've had to put in a lot of law suits involving records and the lack of openness for records." Ex. A, Bolton Aff. ¶ 14(d); Ex. A-5.

e) At a July 20, 2022 Finance Committee meeting, the Plaintiff stated:

> I want to express my concerns with [Cummings] as an employee of the City and maintaining and performing any work on any of these projects. He is unfit to do that kind of work. He is over assigned. He is deeply in violation of the law when it comes to Right-to-Know and open access to meetings and information. He shares an office adjoining to the Mayor and the door is always locked and closed. He does not consider himself a public servant and he will not make himself accessible to citizens at all.

Ex. A, Bolton Aff. ¶ 14(e); Ex. A-6.

f)   At the same meeting, Plaintiff said to the Mayor: "You need to shut your

mouth.  Shut your pie hole Mr. Mayor.  This is my public comment and

I'm addressing not every employee." Ex. A, Bolton Aff. ¶ 14(f); Ex. A-6.

g)   At an August 16, 2022 Planning and Economic Development meeting, Plaintiff

stated: "Attorney Leonard would not define that.  She didn't carry her duty to

disclose far enough to say what those entities were and then they played the game

the Legal office we're going to hide behind attorney/client privilege.  We can't

tell the public." Ex. A, Bolton Aff. ¶ 14(g); Ex. A-7.

h)   At an August 17, 2022 Finance Committee meeting, Plaintiff said the following:

"I tried to address this in the budget hearing and I pretty much got run over by

you Mr. Mayor.  You did a pretty good job demolishing me up there for my

Right-to-Knows but I really feel that there should be a central location where

Right-to-Knows are handled." As the same meeting, Plaintiff said:

> I am very concerned with your Legal Office. I feel two of the
> attorneys should be disbarred. I've filed complaints with the
> Professional Conduct Committee at the Supreme Court and I'm
> going to continue filing up there. Attorney Bolton tried to have me
> arrest on the 22nd of July wrongfully, I believe, and the City isn't
> going to stop until they arrest me in City Hall and you're going to
> succeed at it because all it takes is one Officer who is not well-
> trained who turns around.

Ex. A, Bolton Aff. ¶ 14(h); Ex. A-8.

i)   Plaintiff also claimed: "Attorney Leonard I feel really violated her oath and her

duties to disclose what was going on with the Art's Center." Ex. A, Bolton Aff. ¶

14(i); Ex. A-8.

j)  At an October 12, 2022 Planning and Economic Development meeting, Plaintiff said to Chairman Moran: "You made a judgment that was horrendous and you are a very poor example to your own children." Ex. A, Bolton Aff. ¶ 14(j); Ex. A-9.

k)   In a March 4, 2024 email to Nashua City Officials titled "The Notable Moronic Response from the Nashua's Premier Attorney – Leonard," Plaintiff stated: "It is time the Nashua attorneys stop blowing sunshine up the asses of the Judges and get real in producing a viable and cost effective system for public records and requests." Ex. A, Bolton Aff. ¶ 14(k); Ex. A-10.

## IV.   Argument

In order to prevail on a retaliation claim under the First Amendment, a plaintiff must show that: (1) she engaged in constitutionally protected conduct; (2) she was subjected to an adverse action by the defendant; and (3) the protected conduct was a substantial or motivating factor in the adverse action. *D.B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012) (internal citations omitted). In order to show that a plaintiff's conduct was a substantial or motivating factor, the plaintiff must prove a causal connection exists "between the allegedly protected speech and the alleged retaliatory response." *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 16 (1st Cir. 2011) (internal citations omitted).

### A.   January 2021 Incident

#### 1.   Plaintiff's Conduct Was Not Protected.

The Defendants deny that the Plaintiff's conduct during the January 2021 incident was protected under the First Amendment. Plaintiff's conduct was not expressive or symbolic – by Plaintiff's own admission, she was at City Hall to receive date stamps on abatement applications. *Supra*, §III(B) at ¶ 6. When Plaintiff was told that the Legal Department did not provide that

service, Plaintiff, instead of leaving, decided to harass and intimidate those present in the Legal Department.  Plaintiff forcibly entered the Legal Department, which was not open to the public without an appointment, and refused to leave when she was told several times to do so. *Supra*, §III(B) at ¶¶ 7, 9-10, 12.

      "'The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech.'"  *Galibois v. Fisher*, No. 04-cv-444-JD, 2007 U.S. Dist. LEXIS 31384, at *5 (D.N.H. Apr. 27, 2007) (citing *Virginia v. Black,* 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003)).  "Not all conduct that is intended to convey a message is protected under the First Amendment." *Id.* (citing *United States v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1967)).  As Plaintiff's conduct was not expressive, it does not fall within the protection of the First Amendment.  *See Whiting v. Town of Westerly*, 942 F.2d 18, 21 (1st Cir. 1991) (finding that the act of sleeping in a public space, absent expressive content, is not constitutionally-protected conduct); *see also  Freeman v. Morris*, No. 11-cv-00452-NT, 2011 U.S. Dist. LEXIS 141930, at *17 (D. Me. Dec. 7, 2011) (finding that because fires are not expressive conduct, they do not fall within the protection of the First Amendment).  In determining whether conduct should be constitutionally-protected, the First Circuit asks "both whether it was 'intended to be communicative' and whether it, 'in context, would reasonably be understood by the viewer to be communicative.'"  *Hernández-Gotay v. United States*, 985 F.3d 71, 80 (1st Cir. 2021) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)).  "It is the duty of the party seeking to engage in allegedly expressive conduct to demonstrate that the First Amendment applies to that conduct." *Id.* (citing *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 49 (1st Cir. 2005)).

Nothing about Plaintiff's conduct that led to her arrest in January 2021 was expressive or communicative – Plaintiff was told that she could not be at the Legal Department without an appointment. *Supra*, §III(B) at ¶ 9. Plaintiff did not like this response, but instead of leaving, she sat down and continued to intimidate and harass the staff in the Legal Department. *Supra*, §III(B) at ¶13. As such, Plaintiff's conduct was not protected by the First Amendment.

        2.     <u>There Was Probable Cause to Arrest Ortolano and Her Retaliation Claim Related to the January 2021 Incident Thus Fails.</u>

It is undisputed that Ortolano's January 2021 arrest was adverse to her. However, even if the Court were to find the plaintiff had engaged in protected conduct, Plaintiff's claim fails because there was probable cause for her arrest, and she pled guilty to criminal trespass.

A plaintiff pressing a retaliatory arrest claim "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724, 204 L. Ed. 2d 1 (2019). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury." *Id.* at 1722. Absent a showing of no probable cause, "a retaliatory arrest claim fails." *Id.* at 1725. Plaintiffs "must show that the retaliation was a substantial or motivating factor behind the [arrest]." *Id.* A defendant may avoid a finding of liability "by showing that it would have reached the same decision absent the protected speech." *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d at 16; *see also Nieves v. Bartlett*, 139 S. Ct. 1715 at 1725.

The retaliation claim cannot proceed because the Nashua Police Department had probable cause to arrest the Plaintiff, and the Plaintiff cannot prove otherwise. A person is guilty of criminal trespass if: (1) the person knowingly enters or remains (2) in any place in defiance of an order to leave or not to enter which was personally communicated to them by the owner or other authorized person. RSA 635:2, II(b); *see also State v. Gaffney*, 147 N.H. 550, 555 (2002)

(holding that where a person was given "repeated orders by individuals in actual or apparent authority to leave the police station, and the [person's] refusal to do so, the evidence was sufficient to support his conviction for criminal trespass.").

As noted by both the Plaintiff and the Defendants, Plaintiff was repeatedly instructed to leave the Legal Department by those in authority, and was informed that she was trespassing. *Supra*, §III(B) at ¶ 12.  Plaintiff refused to comply, continued trespassing, and as a result, the Legal Department called the Nashua Police Department (as they would have done for anyone who acted as Plaintiff did), and after an independent investigation, the Nashua Police Department found probable cause existed for her to be arrested for criminal trespass.  *Supra*, §III(B) at ¶¶ 13, 15-20, 22.[2]

Fatal to the Plaintiff's claim is the fact that she pled guilty on July 12, 2021 to committing trespass on January 22, 2021.  *Supra*, §III(B) at ¶ 24.  While the Plaintiff later sought to have the charge annulled, the conviction stood at the time she commenced this case, and therefore evidence of such should be considered. *Supra*, §III(B) at ¶ 24.

As there is no genuine dispute of fact that Plaintiff pled guilty to committing trespass, Defendants are entitled to summary judgment with respect to the January 2021 incident.

**B.     July 2022 Incident**

1.     <u>Plaintiff's Conduct Was Not Protected.</u>

The Defendants deny that the Plaintiff's conduct during the July 2022 incident was protected under the First Amendment.  Plaintiff went to City Hall to request the IT Department's help in opening documents that were sent through Citrix.  *Supra*, §III(C) at ¶¶ 25-26.  She was

---

[2] There is no evidence that Defendants took action against the Plaintiff that caused her arrest.

interfering with Attorney Bolton's passage and was refusing to move.  *Supra*, §III(C) at ¶ 27.

Plaintiff's conduct was not expressive, communicative, or symbolic.

For the reasons provided in Defendants' argument *supra* at §IV(A)(1), Plaintiff's conduct

was not protected by the First Amendment.

2.    <u>Plaintiff Was Not Subjected to Adverse Action by Defendants.</u>

Even if the Court were to find the Plaintiff had engaged in protected conduct, no adverse

action occurred as a result of the July 2022 incident, and in fact, Attorney Leonard was not even

present at City Hall during this incident.  *Supra*, §III(C) at ¶ 25.  Plaintiff called the police

herself, the police responded to the incident, but no arrest was made.  *Supra*, §III(C) at ¶¶ 28-29,

32.  Attorney Bolton only responded to questions the Nashua Police Department asked him – he

did not initiate the conversation.  *Supra*, §III(C) at ¶ 31.  Attorney Bolton has no authority over

the Nashua Police Department.  *Supra*, §III(C) at ¶ 21.

As there is no genuine dispute of fact that no adverse action occurred as a result of the

July 2022 incident, Defendants are entitled to summary judgment.

**C.    Plaintiff's Speech Was Not Chilled.**

Finally, as the Court noted in its Order, a plaintiff must show that her speech was

"actually chilled" to state a First Amendment violation.  *See* Doc. 60 at 14 (citing *Sullivan v.*

*Carrick*, 888 F.2d 1, 4 (1st Cir. 1989)).

However, Plaintiff cannot show that her speech has been chilled, as she continued (and

continues) to exercise her First Amendment rights.  *Supra*, §III(D) at ¶ 33. I n fact, on August 17,

2022, Plaintiff sent an email stating that she filed another NH RSA 91-A lawsuit against the City,

calling Attorney Bolton a "moron" and Attorney Leonard a "nitwit," and discussing how, on

numerous occasions, she publicly criticized City officials, even after her arrest in 2021.  *Supra*,

14

§III(D) at ¶ 34.  She also stated that Attorney Leonard had the "cuntiest behavior" Plaintiff had ever seen.  *Supra*, §III(D) at ¶ 35.  Additionally, on numerous occasions after her arrest in January 2021, as well as after the July 2022 incident, Plaintiff was publicly critical about City Officials at public meetings, through her blog posts, and in emails to City Officials, including, but not nearly limited to, the following statements:

a) In her August 27, 2022 blog post, titled "*The Colossal Stupidity of the Nashua Legal Office*," Plaintiff wrote: "Like the Assessing Office, the Mayor has promoted incompetent leadership and lawyers who ignore their professional conduct codes and disregard citizen's rights.  Who are the major offenders?  Attorney Bolton and Attorney Leaonard."

b) In her December 18, 2022 blog post titled "The Police Records of Attorney Bolton," Plaintiff wrote: "[The records] depict a very angry, hostile, out-of-control man who lacks self-awareness and self-control," and "But of course, with the Mayor not staffing an ethics committee for four years, the county attorney's office being incompetent, no municipal division of the AG's office, and a PCC (which stands for Protect Corrupt Counselors), all dodging the problem, how is justice delivered?"

c) In a November 28, 2022 email to City Officials, Plaintiff wrote, among many other things: "I found the Mayor's remarks to lack credibility and take ownership for the budget and tax increase, and the need for the assessment revaluation" and "[The Mayor] is the master of blame and always the virtuous victim.  These are serious character flaws that do not exemplify leadership."

d) At a July 18, 2022 Board of Alderman meeting, the Plaintiff stated: "I've noticed this individual is a fairly young person and he's coming to a City that I think is very corrupted and working for a Mayor that I think is really unethical, unscrupulous, a liar and I've had to put in a lot of law suits involving records and the lack of openness for records."

e) At a July 20, 2022 Finance Committee meeting, the Plaintiff stated:

I want to express my concerns with [Cummings] as an employee of the City and maintaining and performing any work on any of these projects. He is unfit to do that kind of work. He is over assigned. He is deeply in violation of the law when it comes to Right-to-Know and open access to meetings and information. He shares an office adjoining to the Mayor and the door is always locked and closed. He does not consider himself a public servant and he will not make himself accessible to citizens at all.

f) At the same meeting, Plaintiff said to the Mayor: "You need to shut your mouth. Shut your pie hole Mr. Mayor. This is my public comment and I'm addressing not every employee."

g) At an August 16, 2022 Planning and Economic Development meeting, Plaintiff stated: "Attorney Leonard would not define that. She didn't carry her duty to disclose far enough to say what those entities were and then they played the game the Legal office we're going to hide behind attorney/client privilege. We can't tell the public."

h) At an August 17, 2022 Finance Committee meeting, Plaintiff said the following: "I tried to address this in the budget hearing and I pretty much got run over by you Mr. Mayor. You did a pretty good job demolishing me up there for my Right-to-Knows but I really feel that there should be a central location where Right-to-Knows are handled." At the same meeting, Plaintiff said:

> I am very concerned with your Legal Office.  I feel two of the attorneys should be disbarred.  I've filed complaints with the Professional Conduct Committee at the Supreme Court and I'm going to continue filing up there.  Attorney Bolton tried to have me arrest on the 22nd of July wrongfully, I believe, and the City isn't going to stop until they arrest me in City Hall and you're going to succeed at it because all it takes is one Officer who is not well-trained who turns around.

    i) Additionally, Plaintiff claimed: "Attorney Leonard I feel really violated her oath and her duties to disclose what was going on with the Art's Center."

    j) At an October 12, 2022 Planning and Economic Development meeting, Plaintiff said to Chairman Moran: "You made a judgment that was horrendous and you are a very poor example to your own children."

    k) In a March 4, 2024 email to Nashua City Officials titled "The Notable Moronic Response from the Nashua's Premier Attorney – Leonard," Plaintiff stated: "It is time the Nashua attorneys stop blowing sunshine up the asses of the Judges and get real in producing a viable and cost effective system for public records and requests."

*Supra*, §III(D) at ¶ 36 (a)-(k).

Given the foregoing, Plaintiff cannot show that her speech was chilled as a result of any alleged adverse action claimed to be a result of the Defendants' actions.

## V.    **Conclusion**

For the reasons stated above, Defendants are entitled to summary judgment on Counts I and II, the only remaining claims against them.

Respectfully submitted,

**Steven A. Bolton and**
**Celia K. Leonard,**

By their Counsel,

**UPTON & HATFIELD, LLP,**

Date:  April 1, 2024

/s/ Russell F. Hilliard
Russell F. Hilliard; NHBA #1159
159 Middle Street
Portsmouth, NH 03801
(603) 436-7046
rhilliard@uptonhatfield.com

Brooke Lovett Shilo; NHBA #20794
10 Centre Street
Concord, NH 03301
(603) 224-7791
bshilo@uptonhatfield.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day forwarded to all counsel of record, through the Court's E-filing system.

/s/ Russell F. Hilliard
Russell F. Hilliard