# LO Exhibit A-3

## THE STATE OF NEW HAMPSHIRE

**HILLSBOROUGH, SS.**
**SOUTHERN DISTRICT**

**SUPERIOR COURT**
**No. 2023-CV-00165**

Laurie Ortolano

v.

City of Nashua

### ORDER

The petitioner, Laurie Ortolano, has brought this <u>pro</u> <u>se</u> action against the City of Nashua (the "City") seeking access to public records pursuant to RSA 91-A.  The Court held a final hearing on this matter on May 9, 2023.  After considering the record, the arguments, and the applicable law, the Court finds and rules as follows.

### Discussion

On March 6, 2023, Ms. Ortolano e-mailed Tim Cummings, the City's Director of Economic Development and Administrative Services, requesting documents pursuant to RSA 91-A, the Right-to-Know law.  This e-mail stated, in pertinent part:

> Last fall when presenting a review of the Elm Street Middle School project to Board members, you told the Board that a [NMTC][1] transaction would be explored for the Elm Street Middle School project.
>
> Please provide any letters, communications or emails regarding the potential to use a NMTC for future Nashua Construction projects.  Please do not provide NMTC records that involve the Nashua Performing Arts Center.
>
> The Record search time need only be over the last 12 months. . . . So please conduct the search from March 7, 2022 to March 7th, 2023.

(Ex. 2 (emphasis omitted).)  On March 13, 2023, Gary Perrin, the City's Right-to-Know Records Administrator, responded to Ms. Ortolano's request as follows:

---

[1] "NMTC" stands for new markets tax credit.  <u>See generally</u> 26 U.S.C. § 45D.

[Mr. Cummings] is seeking clarification to your request dated March 6, 2023, regarding the potential use of [NMTC] transactions for future Nashua construction projects, in the form of informational letters, communications or emails.

Please specify which potential construction projects are being referenced as the timeline requested over the last twelve months from March 7, 2022 to March 7, 2023 is broad and will require a voluminous search.

If you would like to describe your request in a more reasonable and detailed manner, I would be happy to provide any documents readily available which are not subject to exemption from disclosure.

If you need additional assistance feel free to contact my officer at 603-589-3022 at your earliest convenience.

(Ex. 3.)

On April 9, 2023, Ms. Ortolano responded to this e-mail, by sending the following e-mail to Mr. Cummings, Mr. Perrin, and Nick Miseirvitch, the City's IT Director:

I disagree with Mr. Cummings' statement. The New Markets Tax Credit program is a very specific topic . . . Did you conduct the search for these cloud based emails and find the number of NMTC emails that exist? Also, I do not believe that other letters or documents would be voluminous, unless you are already kicking off a NMTC project that the public and Board are unaware of.
. . .
If you want to save time and money and stop wasting everyone's time and money, you could simply answer the question, as you have the knowledge and state whether you have been exploring other NMTC Transactions for Nashua Project[s]. . . . The Attorney General's Memorandum on Right to Know states that the Municipality should weigh out responding to questions if in fact it saves time on performing a records search. You should consider doing this rather than continually stating that RSA 91-A does [not] require the City to answer questions.

(Ex. 4.)  In that same e-mail, Ms. Ortolano narrowed the scope of her request, asking the City to "please conduct the search for [responsive records using] the term NMTC" for the period between September 1, 2022 through April 1, 2023.  (Id.)  Ms. Ortolano also indicated that she wanted records pertaining to the "Elm Street Middle School

project," as well as "letters, communications, and emails" regarding "any other projects that [Mr. Cummings has] considered for a NMTC." (Id.)

On the following day, April 10, 2023, Mr. Perrin responded, in pertinent part, as follows:

> [Mr.] Cummings undertook a search for records pertaining to [NMTCs] relating to the Elm Street Middle School project on April 10, 2023.
>
> [He] conducted a reasonable search for available records matching your request as cited above. Please find the responsive records attached.
>
> As for your request for "any other projects that you have considered for a NMTC" [Mr.] Cummings does not file or index records by [NMTCs]. Rather records are kept in a project folder. Accordingly, there is no compilation or list of all NMTC considered. If you care to name or describe a specific project [Mr.] Cummings will undertake a reasonable search and produce any record[s] allowed which are not subject to exemption under RSA 91-A:5 Exemptions.
>
> If you need additional assistance feel free to contact my officer at 603-589-3022 at your earliest convenience.

(Ex. 5.)

Later that day, Ms. Ortolano attempted to speak with Mr. Miseirvitch in person. However, when Ms. Ortolano visited the IT office at City Hall, another IT employee told Ms. Ortolano that Mr. Cummings "had instructed the [IT] office not to communicate with [her]." (Pet. ¶ 11.) Instead, Mr. Cummings instructed the IT office to inform Ms. Ortolano that "she must communicate directly with [Mr.] Cummings." (Id.) Ms. Ortolano also called Mr. Perrin using the phone number he provided to her in the March 13, 2023 and April 10, 2023 e-mails discussed above. Mr. Perrin answered the phone, but stated that the City's legal department "had advised him not to speak with her as she was filing a lawsuit." (Id. ¶ 9 n.3.) Ms. Ortolano then filed this action that same day—April 10, 2023.

On May 5, 2023, Mr. Cummings sent Ms. Ortolano another response to her

Right-to-Know request.  (See Ans. Ex. A.)  This letter stated:

> It is evident from the allegations in your Petition in Docket # 226-2023-CV-00165 (that you signed and filed with the court on April 10, 2023), that you and the City are not on the same page regarding the City's response to your March 6, 2023 request for records as modified by your April 9, 2023 email.  This is to provide a clarification.
> . . .
> I used my knowledge of what City projects may have been considered for the use of NMTC in an effort to respond to your April 9 modification and gave the request due consideration and thought.  I searched the City's cloud-based email storage system for responsive records using the term "NMTC" and within the time period specified (September 1, 2022 – April 1, 2023).  I have also searched the Economic Development electronic construction project files using the stated timeframe and search term "NMTC."
>
> The result of (1) the cloud-based search, (2) the search of Economic Development Project files likely to contain any responsive documents, and (3) my analysis of the request given my subject matter expertise, was that no responsive records were discovered in the search, beyond the communications between you and the City concerning your request.  Consequently, the only documents discovered in the search were the eight pages of records produced to you on April 10, 2023.
>
> We regret that there was a disconnect but hope this clears it up.

(Id.)

Given Mr. Cumming's May 5, 2023 letter—essentially stating that there are no

responsive records to Ms. Ortolano's request—the Court is not entirely sure what is left

for it to decide in this case.  However, the petition has six distinct prayers for relief so

the Court will turn to those.  Prayer A requested the Court "afford this matter high

priority on [its] calendar," which the Court did.  Prayer B asks the Court to order the City

to disclose records responsive to her request, yet Mr. Cumming's May 5, 2023 letter

makes clear that there are no responsive records.  The Court cannot require a party to

produce what does not exist.  Prayers C, D, E, and F all seek additional remedies that

the Court may order in a Right-to-Know case, but only if the Court finds an antecedent violation of the Right-to-Know law.  This naturally leads the Court to ask, what is the alleged violation of the Right-to-Know law in this case?  The Right-to-Know law may be violated in any number of ways.  However, the petition does not cite to any Right-to-Know statutes that have been allegedly violated.  Is the claim that the City's response was untimely in violation of RSA 91-A:4, IV(b)?  Is the claim that the City's request for clarification regarding her Right-to-Know request was unreasonable?  See generally Colquhoun v. City of Nashua, 293 A.3d 455, 462 (N.H. 2022) (discussing whether Right-to-Know request "reasonably described the records sought").  Or is the claim that the search was inadequate?  See generally ATV Watch v. N.H. Dep't of Transp., 161 N.H. 746, 753 (2011) (addressing "the adequacy of a public body's or agency's search in response to a RTK request).  Or is it something else?  Without knowing which provision of the Right-to-Know law has allegedly been violated, the Court has no meaningful way to assess whether a Right-to-Know violation has occurred and, accordingly, whether any of the additional remedies available under RSA 91-A:8 are appropriate.

In short, because the City has represented that there are no responsive records to Ms. Ortolano's Right-to-Know request, and because the Court has no basis to award any additional relief, the petition is DENIED.

Notwithstanding the denial of the requested relief in this action, the Court will use this opportunity to address the parties about their highly contentious relationship.[2] Although the Court does not always agree with Ms. Ortolano or rule in her favor, the

---

[2] As the Court knows from this case and others involving these parties, the City and many of its high-ranking employees have: (1) effectively closed City Hall to Ms. Ortolano on a walk-in basis; (2) directed other employees not to interact with her on the phone or in person; (3) refused to answer Ms. Ortolano's basic questions; and (4) had Ms. Ortolano arrested for trespassing at City Hall.  One alderman has even gone so far as to label Ms. Ortolano a "predator."

Court cannot help but join in Ms. Ortolano's frustration in this particular case.  Ms. Ortolano sought basic information from her local government officials about the potential use of a complicated tax credit scheme.  Her question can be boiled down to this: "Is the City actively exploring the use of NMTCs for any other municipal projects?"  Mr. Cummings, the City's Director of Economic Development, could have just answered that question with a simple "no" based on his personal knowledge, as his May 5, 2023 letter seems to suggest is the answer.  But that would have been too easy.  That would have allowed Ms. Ortolano to get what she wanted, and the City surely could not have that, at least not without stringing her along for a while.  Thus, here we all are again.  Another Right-to-Know action involving Ms. Ortolano and the City.  Another lengthy petition drafted by Ms. Ortolano citing troubling behavior of City employees.  Another filing fee.  Another sheriff's deputy needing to serve the petition.  Another attorney hired by the City and paid for by taxpayers.  Another belated response by the City after the initiation of the case.  Another merits hearing.  Another order issued by the Court.  All of this just to learn that there were no responsive records.  And, the worst part is that all of this could have been easily avoided had Mr. Cummings answered a simple inquiry posed by a concerned citizen.

So the Court asks Mr. Cummings—was all of this worth whatever utility you derive from stonewalling Ms. Ortolano?  Was it a good use of taxpayer funds to pay for an attorney in this case because you could not bring yourself to answer a yes/no question?  Wouldn't it have been easier to just answer her question?  The Court reminds the City and its employees "that it is their function to provide assistance to all their citizens," including Ms. Ortolano.  Carbonneau v. Rye, 120 N.H. 96, 99 (1980)

(emphasis added).  Indeed, the New Hampshire Constitution dictates that government "should be <u>open</u>, <u>accessible</u>, <u>accountable</u> and <u>responsive</u>."  N.H. CONST. pt. I, art. 8 (emphases added).  To the extent Mr. Cummings and other City officials do not believe that these constitutional mandates apply to them, they are wrong.  Thus, the Court "strongly suggest[s] that the [City] quickly get 'in the business'" of responding to Ms. Ortolano's basic questions and requests for information.  <u>Carbonneau</u>, 120 N.H. at 99.

This is not to say that Ms. Ortolano's requests and inquiries have all been reasonable.  No one can seriously dispute that Ms. Ortolano's Right-to-Know and other informational demands on the City have been extensive and perhaps even exhausting.  It is simply unreasonable for any citizen to expect their local government officials to respond to such voluminous requests on demand.  The Court has no doubt that most City employees are extremely busy with their day-to-day duties, and that Ms. Ortolano's requests consume their time and divert their limited resources.  Government employees are not robots and mistakes happen.  It is therefore unsurprising that some of her (many) requests may have slipped through the cracks or may not have been resolved as quickly as she would prefer.  Furthermore, some of Ms. Ortolano's Right-to-Know requests have not been as clear as they could have been, and, in some circumstances, City employees have had legitimate questions about the scope of her requests.

But the answer is not for Ms. Ortolano to file a Right-to-Know petition every time she perceives there to be a technical violation of RSA 91-A or to turn every request for information into a records request under the Right-to-Know law.  The answer is also not for the City to stonewall, delay, or ignore her requests when they seem complicated, unclear, or perhaps even outside the letter, if not the spirit, of the Right-to-Know law.

The solution is for Ms. Ortolano and the City to work together in a collaborative manner to identify the records and/or information sought.[3]  This case is a perfect example of how that *could* have worked.  Ms. Ortolano was clearly looking for records concerning the potential use of NMTCs for other municipal projects.  Once Mr. Perrin received her request, there is no reason why Mr. Perrin and Ms. Ortolano could not have had a two-minute phone conversation about her request for those records.  In such a hypothetical phone call, Ms. Ortolano could have asked Mr. Perrin to search Mr. Cumming's e-mails in the City's cloud e-mail system for certain agreed-upon terms—perhaps "NMTC" or "New Market Tax Credit(s)"—over a specified time period.  And, if Mr. Cumming's May 5, 2023 letter is to be believed, then Mr. Perrin could have simply told Ms. Ortolano that no e-mails containing those terms were found (except Ms. Ortolano's own e-mail initially requesting those records).  And that would have been the end of it.  Instead, here we are again.

Going forward, the Court's sincere hope is that both Ms. Ortolano and the City will commit to a new collaborative and interactive approach, as it is beyond obvious to any outside observer that the current situation between the parties is untenable.  To that end, the Court was encouraged to hear that Mr. Perrin has been hired as a Right-to-Know/Records Administrator for the City, which is apparently a new position.  Indeed, having a single person versed in the Right-to-Know law who has the resources to obtain requested records in a timely and collaborative fashion seems like a good start to a

---

[3] With that said, the Court recognizes that the City has, on many occasions, left Ms. Ortolano with no choice but to file Right-to-Know petitions, as the City does not always engage in any dialog.  Of particular note, the Court was dismayed to learn that Mr. Perrin, the City's Right-to-Know/Records Administrator, included his phone number in his correspondence with Ms. Ortolano and told her to "feel free" to contact him at that phone number for "additional assistance."  Yet, when she did just that, he told her that he was directed not to speak with her.  This type of behavior does not meet the "responsive" and "accessible" standards of Part I, Article 8 of the New Hampshire Constitution.

long-term solution.  Yet, even with Mr. Perrin's hiring, the procedure for making a Right-to-Know request in the City is far from clear.  The undersigned and Judge Colburn have both asked the City about the process for making a Right-to-Know request for City records in other cases involving these parties.  To date, even us judges have not received a clear answer.  The Court therefore strongly encourages the City to develop a uniform policy outlining the process for making a Right-to-Know request for City records and to make that policy publically available on its website.  Developing this type of uniform policy would eliminate one of the consistent issues the Court sees in the Right-to-Know litigation involving these parties.

        So ordered.

Date:  June 30, 2023

_____
Hon. Charles S. Temple,
Presiding Justice

Clerk's Notice of Decision
Document Sent to Parties
on  07/03/2023