Case 1:22-cv-00326-LM Document 75-9 Filed 05/01/24 Page 1 of 16

Nashua Police Department
Incident Report

**LO Exhibit A-8**

Page: 1
08/01/2022



```
Incident #: 22-43246-OF
    Call #: 22-43246
```

Date/Time Reported: 07/22/2022 1200
 Report Date/Time: 07/22/2022 1303
           Status: Incident Open

Reporting Officer: MASTER PATROLMAN JONATHAN EARNSHAW
Assisting Officer: SERGEANT CALEB GILBERT
Approving Officer: LIEUTENANT JENNIFER MORIARTY

Signature: _____

Signature: _____

| # | SUSPECT(S) | SEX RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|
| 1 | ORTOLANO, LAURIE A | | 60 | NOT AVAIL | |

Military Active Duty:
           DOB:                    PLACE OF BIRTH:
LICENSE NUMBER:                         ETHNICITY:

| # | OFFENSE(S) | ATTEMPTED | TYPE | CLASS |
|---|---|---|---|---|
| | LOCATION TYPE: Government/Public Building   Zone: Sector 4<br>CITY HALL<br>229 MAIN ST<br>NASHUA NH 03060 | | | |
| 1 | Criminal Trespass<br>            635      2<br>      OCCURRED: 07/22/2022    1200 | N<br>A | Misdemeanor | A |

| # | PERSON(S) | PERSON TYPE | SEX RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | BOLTON, STEVEN | REPORTING PARTY | | 00 | NOT AVAIL | |

DOB: NOT AVAIL

EMPLOYER:

| 2 | PERRY, MANUELA | OTHER | | 50 | NOT AVAIL | |

DOB:

EMPLOYER:

| 3 | CARON, MEGAN | OTHER | | 00 | NOT AVAIL | |

DOB: NOT AVAIL

EMPLOYER:

Incident #: 22-43246-OF
Call #: 22-43246

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 1 | BWC IN AVAIL WEB<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 07/22/2022 | | Evidence (Not Nibrs Reportable) |
| 2 | 911 CALL TO NPD<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 07/24/2022 | 22-3327-PR | Evidence (Not Nibrs Reportable) |
| 3 | VIDEO OF THIRD FLOOR<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 07/26/2022 | 22-3371-PR | Evidence (Not Nibrs Reportable) |

### ADDITIONAL ASSISTING OFFICERS

MASTER PATROLMAN JAIME ABRAMS

| Attachments for 22-43246-OF | |
|---|---|
| Description | Type |
| STATE V. LAURIE ORTOLANO CONDITIONAL DISCHARGE OF SENTENCE<br>     Attachment#: DBE9F900723846158B55EC1B26A7F35E | PDF |

On 7/22/22, I was assigned to the Uniform Field Operations Bureau. On this day I was operating a fully marked police cruiser and wearing the uniform of the day. At approximately 1200 hours, Officer Abrams, Sergeant Gilbert, and I responded to City Hall, 229 Main St for a give advice call. Call notes stated the complainant, Laurie Ortolano (DOB          ) was spoken to by Attorney Steven Bolton and he told her she was trespassed from the location.

Upon my arrival, Laurie walked over to my cruiser outside. I turned on my BWC and it recorded my conversation with her. I asked Laurie if she could explain what was going on today to me. Laurie stated that she was at City Hall to obtain paperwork regarding a right-to-know. She first went to speak with a representative from the Mayor's office, Megan Caron. During this meeting, Laurie was offered a thumb drive of the documents as it was a total of approximately 1,200 pages or she would need to log into a secure website to view the documents online. Laurie stated she did not want the thumb drive and left the Mayor's office.

Laurie then walked to the third floor of the legal department to obtain their phone number which is outside the door. Laurie told me that she went there to see if when she called she would be able to have them print out the documents she wanted. When she called the phone number she was in the public hallway and pacing that hallway waiting for someone to answer the phone. Once a female answered the phone she asked if it was Manuela and she stated yes. At this time Laurie was facing away from the door and it happened to open. Laurie turned to face the door and was confronted by Attorney Steven Bolton. Laurie stated Manuela hung up the phone and Attorney Bolton began to yell at her for being in the hallway. Laurie stated Attorney Bolton was yelling that she had no right to be in the building and that he could have her arrested. Attorney Bolton began yelling at Laurie to leave the hallway. He also told her he wanted to leave but she was in his way.

Laurie then left the building and called the police as she did not want to be charged with a crime. I then went inside to speak with Megan while Laurie remained outside with Officer Abrams. When speaking with Megan I was told that due to the number of pages Laurie needed it would not fit in an email and they did not want to print it out. Megan stated she offered to put the documents in a thumb drive but Laurie did not want that. Megan also told me that the secure site works but it might be Laurie's computer software is outdated and would need to be updated.

I again responded outside to speak with Laurie. I informed her of the thumb drive option but again she declined that. I also asked if she could update her computer software and she stated she would try that. This ended my involvement with Laurie as she left.

I then returned inside to speak with Attorney Bolton. At this time Officer Abrams and I met Sergeant Gilbert by the stairs. When I was speaking with Sergeant Gilbert a man approached and identified himself as Attorney Bolton. I asked if he could tell me what happened in the hallway. He stated he asked Laurie to leave and she refused to do so. Attorney Bolton then asked to have her arrested. I asked him if the hallway was public and he stated yes but wanted to show us that she did not belong there. He asked if we could follow him up to the third floor to the hallway where the incident occurred.

It should be noted that City Hall is a public building. When you enter through the back door and walk towards the front of the building, towards the clerk's office, there are no secured doors to walk through. Once there you can walk up the stairs to the third floor without walking through any locked doors. Once on the third floor, you walk to the right, and then the first hallway to the left is where the incident occurred. At no point did I

walk through a locked door.

    Attorney Bolton then pointed to a plaque outside of the door. This plaque stated something to the effect of appointments only and had a phone number listed (603) 589-3250. At this point, I activated my BWC again as Attorney Bolton was explaining the incident. Attorney Bolton explained that when he exited the locked office door he saw Laurie in the hallway. When he saw her he asked her to leave. The hallway was large enough for two people to walk side by side and have enough room to not touch each other. We then confirmed that the hallway was public as there was no gate or locked door. We also confirmed that Laurie was not trying to get into the locked office door. Attorney Bolton advised that she called the number outside of the door to gain access to the locked room. Attorney Bolton stated that because of the number of times Laurie calls the office they will only do business in writing. Attorney Bolton stated that because he was in charge he can direct her to leave. At this time Attorney Bolton has not given Laurie any legal paperwork stopping her from coming to his office or stopping her from calling the office.

    I then asked Steven for his name and date of birth to add him to the report. Steven refused to spell his name for me and provided me with his business card. I then asked him again for his date of birth and he stated he would not give that to me either. This ended my contact with Attorney Bolton at this time.

    I then called Laurie to speak with her about the incident in the hallway. I asked Laurie to explain what happened. She explained that when she called the number on the plaque she asked if the woman who answered the phone was Manuela and she stated yes. Laurie stated she was pacing in the hallway and had her back turned to the door. The door opened and Laurie looked to see who opened the door and was met by Attorney Bolton. Laurie stated Manuela hung up the phone and Attorney Bolton yelled at her several times to leave the building. He also stated he wanted to leave and that she was blocking him from leaving. This ended my phone call with Laurie.

    I then called Manuela. When I spoke with her I asked if she could explain what happened. She advised that when the phone rang and she went to answer she recognized the phone number and answered it. She stated she did not know where Laurie was when she answered the phone but remembered that Attorney Bolton was leaving for lunch. When Attorney Bolton opened the door she saw Laurie on the phone and immediately hung up. Manuela stated that Attorney Bolton then asked Laurie several times to leave the hallway and to not call the office as all communication needs to be in writing. Manuela stated she was unable to hear Laurie talk as the door was shutting.

    Please see both Officer Abrams's and Sergeant Gilbert's reports for their involvement.

    At this time based on the totality of the circumstances along with statements provided by all involved, I do not have probable cause to arrest Laurie for criminal trespass.

Nothing further
Officer Earnshaw #102

On 07/22/2022 at approximately 1209 hours, I began responding to Nashua City Hall at 229 Main Street in Nashua, New Hampshire to assist Officer Earnshaw and Sergeant Gilbert during a call for service. Laurie Ortolano (DOB: (            ) contacted the Nashua Police Department and explained that Attorney Steven Bolton told her she was trespassing at the location. Laurie advised she wanted to speak with the police and would be waiting outside the building for officers to arrive.

Upon my arrival, I activated my BWC and met with Laurie who was already speaking to Officer Earnshaw. At that time, Laurie was explaining her encounter with Attorney Bolton. Laurie said he came out of the legal office and began shouting at her to leave the hallway because she was trespassed from the building. Laurie stated at the time he exited the office, she was on the phone with the legal secretary who then hung up during their encounter. Laurie advised she was previously trespassed from City Hall; however, she was notified the trespass order was no longer in place. After Attorney Bolton yelled at her, she left the building and contacted the police for fear she would be arrested.

Officer Earnshaw entered City Hall while I remained outside with Laurie. When Officer Earnshaw returned, he provided her with information regarding the documentation she was attempting to retrieve while on the property today. Laurie was thankful for the help and left the area. At that time, I turned my BWC off as the complainant was no longer on scene.

Officer Earnshaw, Sergeant Gilbert, and I then entered City Hall in an attempt to locate and speak with Attorney Bolton regarding his statement about Laurie's trespassing. We were told the legal office was on the third floor of the building; however, we located Attorney Bolton on the first floor. Attorney Bolton stated he was upset with Laurie because she was asked to leave and refused while blocking his exit passageway. Attorney Bolton was asked specific questions regarding the accessibility of the office and he then escorted us to the third-floor hallway which holds the legal office.

As we climbed the stairs to the third floor, I noted that the stairway and hallways were not secured and there was no signage stating the public could not remain in these areas. Further, several people were walking in the hallways around us. It became clear at this time that Attorney Bolton wanted to pursue trespassing charges against Laurie, as he stated he wanted Laurie arrested. As a result, I again activated my BWC. During that time, Sergeant Gilbert and Officer Earnshaw gathered the necessary information to document this incident. After their conversation, we left the hallway and exited through the stairwell. I continued to keep my camera activated to document the hallways and stairwells for reference to this incident. I then exited the building, ending my contact with all involved parties.

Nothing further.
Officer Abrams #9

On 7/22/22 I was notified through my chain of command that Laurie Ortolano (DOB:            ) had scheduled an appointment to respond to City Hall sometime after 0900 hours and conduct business within. Due to prior incidents between the members of City Hall and Ortolano, it was requested to have Police Officers in the area to ensure the interactions were orderly and incident free. I then reviewed Ortolano's local record and did not see any active trespass orders preventing her from being within City Hall.

At approximately 0943 hours Officer Earnshaw arrived at City Hall as it was believed Ortolano would arrive at approximately 1000 hours. At 1008 hours Officer Abrams arrived to assist, and at 1015 hours I arrived on scene as well. Officer Earnshaw, Officer Abrams, and I remained at City Hall until approximately 1051 hours; however, Ortolano did not arrive. At this time we advised the staff at City Hall to contact the Police if she arrived and cleared the area. Cite 22-43220 for further.

At approximately 1209 hours Officer Earnshaw, Officer Abrams, and I responded to City Hall for a call for service [22-43246]. The call for service indicated that Ortolano had contacted 911 and requested Police presence at City Hall because she had been spoken to by Attorney Steven Bolton and told that she could not be within City Hall. It should be noted that no member of City Hall had contacted the Police

I arrived at approximately 1228 hours at which time I responded inside City Hall to ensure everything was under control. I checked in with the administration office on the first floor and then waited in the atrium of City Hall on the first floor to obtain a brief of the incident from Officer Earnshaw and Officer Abrams. While waiting for Officer Earnshaw and Officer Abrams, I was approached by a male who asked me if I was looking for him. I told him I was not and then asked him why I might be looking for him. At this time he identified himself as Attorney Steven Bolon, the City Attorney. Bolton stated that he had just had an incident with Laurie Ortolano and that she had trespassed and he wanted me to arrest her.

I spoke with Bolton for a very short time attempting to get a synopsis of what had occurred. Bolton stated that Ortolano was trespassed from his portion of City Hall and that she had blocked his ability to egress from his office. Bolton started to become extremely upset when I did not immediately move to respond outside to arrest Ortolano. I was able to explain the need for a criminal investigation, which is standard procedure to bring forward criminal charges. At this time Officers, Earnshaw and Abrams had arrived and I requested Bolton show us the area in which the offense had occurred.

Bolton led us up the main staircase to the third floor. Once on the third floor, we took a right-hand turn and then a left-hand turn down a smaller corridor. At that time Bolton stopped in front of a closed and locked door marked:

313

Legal Department
By Appointment Only
589-3250

It should be noted that while traveling to this office door, there were no closed doors, keypad access, or

reception desk preventing a member of the public from entering. Additionally, next to the sign with the phone number to the legal department there is a video camera and doorbell which is presumable for a member of the public to ring to speak with someone within the Legal Department. There are several such call boxes within City Hall all used for this same purpose.

At this time I informed Bolton that we would be audio and visually recording his explanation of the incident. Bolton nodded his assent at which time I began the recording. At this time Bolton stated that Ortolano had been standing where I was standing while speaking with him. This location was approximately 4 feet away from the front of the Legal Department door. Bolton stated that he then asked Ortolano to leave so he could leave at which time Ortolano refused to move. I then asked Bolton if Ortolano was attempting to access the locked doors or attempting to enter the offices and he confirmed that she was not, but that she was calling to gain access. Bolton stated that Ortolano has been told that she is to make contact only through email or written communication based on past events. I then asked Bolton if Ortolano was served any sort of legal process which prevented her from calling the office. Bolton stated, "No, I'm in charge I can direct her to leave."

I then informed Bolton we would conduct an investigation and attempted to confirm that the hallway in question was public. Bolton stated he "disputed" this and stated there was no public area accessible by the hallway and that Ortolano has been told she cannot call. Bolton also confirmed that she had not been served any sort of legal process detailing her prohibition from calling. I then asked Bolton why there was a video doorbell if the public was not supposed to be down the hallway. At this time Bolton stated, "For people other than her." I tried to reason with Bolton and explain that we can't prevent a single member of the public from an area of a public building in which she has not been trespassed to which he responded, "I can do that."

Officer Earnshaw then attempted to positively identify Bolton with his name and date of birth; however, Bolton refused to provide anything except his business card. At this time we ended our contact with Bolton.

Sgt. Caleb Gilbert S-5

On 7/24/22 at approximately 0817 hours I reviewed the 911 call received by NPD communications from Ortolano regarding this investigation. Ortolano stated that she had responded to the Nashua Legal Office within City Hall to obtain the phone number so she could call them regarding an email. When she arrived there Attorney Bolton was coming out of the door, saw her, and began yelling at her telling her she was trespassing and that we [presumably the legal department] don't talk to you [Ortolano]. She also stated that Attorney Bolton also told her that she couldn't call the legal department but that she was unaware of this. Attorney Bolton also stated that he was going to have her arrested for trespassing although she believed she was just in City Hall and that she was not trespassing. Ortolano requested an Officer respond so she could report this because she has been arrested within City Hall in the past. After receiving all of the pertinent information, contact was ended with her.

The call was broken up into 4 files which were later burned to a disc and submitted as evidence [22-3327-PR]

Sgt. Caleb Gilbert S-5

```
Nashua Police Department                                    Page: 1
2022-07-24 0900 HRS REVIEW OF J-ONE DISPO/CASE FROM 2021
Ref: 22-43246-OF
```

On 7/24/22 at approximately 0900 hours I reviewed case 21-10467-AR stemming from 21-4609-OF. Within 21-10467-AR there was an electronic copy of the J-One Disposition information from the 9th Circuit District Division Nashua Court. Upon review, I discovered that Ortolano had pleaded guilty to a violation level criminal trespass on 7/12/21 in front of Judge John Curran. The sentence was a monetary fine, part of which was suspended for one year provided there was good behavior. Additionally, there was a note that Ortolano was not allowed to enter City Hall/Legal Bureau without a prior appointment. At this time I am unsure if this condition is still in effect as the condition was timestamped over 1 year ago. I will be making contact with the legal bureau in the near future for further clarification.

I then reviewed 21-4609-OF for the circumstances surrounding this case. On 1/22/21 Ortolano had been within the same hallway that this current incident had occurred in; however, during the incident in 2021, she had been seated on the floor within the legal bureau office and refused to leave.

These cases were not submitted for inclusion but can be referenced for further clarification.

Sgt. Caleb Gilbert S-5

On 7/26/22, at approximately 0901 hours, I responded to 229 Main Street, City Hall, for a follow-up. Once there I spoke with members of Risk Management who provided me with video surveillance from 7/22/22. The video was of the hallway on the third floor that captures the top of the main stairs, outside of the IT Department, and the Auditorium. This video does not have any audio.

The video recording starts at approximately 1147 hours on 7/22/22. When I reviewed the video I observed Laurie walking up the stairs at approximately 1149 hours. She went to the IT Department and stood outside their door. At approximately 1150 hours, Laurie walked out of the camera's view and I believe back downstairs. At approximately 1158 hours, I observed Laurie return to the third floor using the same stairs. She then walked to the end of the hallway at the Auditorium and turned left towards the Legal Department. There are no cameras in this hallway. Laurie remained in this hallway until 1200 when I was able to see her on the phone in front of the Auditorium. She stayed on the phone and paced the hallway until approximately 1206 hours when I saw her remove the phone from her ear and walk out of the camera's view again to where I believe is downstairs. This video was tagged as evidence (22-3371-PR).

Based on my observations it appears Laurie was within the hallway that leads to the Legal Department for approximately two (2) minutes.

Nothing further
Officer Earnshaw #102

On 7/27/22 at approximately 0753 hours I responded to the Legal Bureau of the Nashua Police Department to review the disposition regarding 21-10467-AR. The purpose of the review was to determine if the conditions listed within the sentencing were still in effect.

After speaking with members of the Legal Bureau, I was informed that since the offense was disposed of on 7/21/21, the conditions of sentencing would be in effect during the time length listed on the J-One Disposition [1-year good behavior]. It is my understanding that as long as the condition of good behavior is met then the sentence would be satisfied and released.

Additionally, I was notified that on June 24, 2022, her conviction was conditionally discharged by Judge John A. Curren after a motion was filed by Attorney Timothy Goulden. A copy of the granted motion was electronically attached for case inclusion.

Based on this review I determined that Ortolano had no restrictions or conditions which would prevent her from entering or being within City Hall on 7/22/22.

Sgt. Caleb Gilbert S-5

During the course of this investigation, Officers interviewed anyone involved in this incident including the reporting party [Bolton] and the suspect [Ortolano]. In addition, video surveillance was reviewed and legal dispositions were obtained and also reviewed. As a result, it appears that Ortolano has no restrictions from being within City Hall and can move about the building as any citizen would. The hallway in question is on the 3rd floor of City Hall at the end of a large open corridor. There are no keypad locks, locked doors, or reception desks which would indicate that the hallway outside of the Legal Department is private. Additionally, there is a sign outside of the Legal Department with a phone number to call for an appointment, and a video doorbell for citizens to activate to speak with someone inside in the event they cannot call.

Criminal Trespass NH RSA 635:2 reads:

I. A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place.
II. Criminal trespass is a misdemeanor for the first offense and a class B felony for any subsequent offense if the person knowingly or recklessly causes damage in excess of $1,500 to the value of the property of another.
III. Criminal trespass is a misdemeanor if:
   (a) The trespass takes place in an occupied structure as defined in RSA 635:1, III; or
   (b) The person knowingly enters or remains:
     (1) In any secured premises;
     (2) In any place in defiance of an order to leave or not to enter which was personally communicated to him by the owner or other authorized person;
     (3) In any place in defiance of any court order restraining him from entering such place so long as he has been properly notified of such order; or
     (4) On any grounds, lands, or parking areas of any state correctional facility or transitional housing unit operated by the department of corrections without prior authorization or a legitimate purpose associated with the department of corrections operations.
IV. All other criminal trespass is a violation.
V. In this section, "secured premises" means any place which is posted in a manner prescribed by law or in a manner reasonably likely to come to the attention of intruders, or which is fenced or otherwise enclosed in a manner designed to exclude intruders.
VI. In this section, "property," "property of another," and "value" shall be as defined in RSA 637:2, I, IV, and V, respectively.

Based on this definition, Ortolano was not in a place that she was not allowed to be, nor did she remain there after being asked to leave. Video surveillance recording shows her within the Legal Department public hallway for approximately two (2) minutes and based on the statement provided by all involved, it appears she left soon after contact was made with Bolton.

At this time I have deemed this case unfounded and it will be closed.

Sgt. Caleb Gilbert S-5

** Portions of this report have been redacted **

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - District Division - Nashua
30 Spring Street, Suite 101
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## NOTICE OF DECISION

**NASHUA POLICE DEPARTMENT**
**PO BOX 785**
**NASHUA NH 03061**

Case Name: **State v. LAURIE A ORTOLANO**
Case Number: **459-2021-CR-00606**

Enclosed please find a copy of the Court's Order dated June 24, 2022 relative to:

**Re: Assented To Motion To Conditionally Discharge The Conviction; Motion granted. C.D. to be entered, by agent.**

**/s/ John A. Curran**

July 07, 2022

Sherry L. Bisson
Clerk of Court

(810)
C: LAURIE A ORTOLANO; Timothy J Goulden, ESQ

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS  
Docket No. 459-2021-CR-00606

9th CIRCUIT COURT DISTRICT DIVISION-NASHUA

RECEIVED  
NH CIRCUIT COURT  
9TH CIRCUIT COURT  
DIVISION-NASHUA  
2022 JUN 17 P 1: 23

STATE OF NEW HAMPSHIRE

v.

LAURIE ORTALANO

## ASSENTED TO MOTION TO CONDITIONALLY DISCHARGE THE CONVICTION

NOW COMES, the defendant, Laurie Ortalano, by and through her counsel, Goulden Law Offices, PLLC and respectfully requests that the court conditionally discharge the conviction pursuant to NH RSA 651:2 III a. In support thereof, the defendant states the following:

1) The defendant was arrested on or about Thursday, February 18, 2021, for a Class A Misdemeanor complaint of Criminal Trespass, alleged to have occurred on January 22, 2021.

2) The defendant was released on Personal Recognizance Bail and hired undersigned counsel.

3) Undersigned counsel negotiated with Attorney Alyssa Kuehne, of the Nashua Police Legal Bureau. The defendant, through counsel and the State, through Attorney Kuehne, came up with the following proposed plea: "The class A Misdemeanor was reduced to a violation; a $500.00 fine, $400.00 of the fine suspended for one year, based upon good behavior and no entry into the legal bureau at City Hall without an appointment for one year."

4) On July 12, 2021, the defendant entered into the agreement with the State through the plea, which was accepted by the Court, (J Curran).

MOTION GRANTED  
C.D. TO BE ENTERED, BY AGMT.  
John A. Curran  
6.24.22

1

5) The plea was: the class A Misdemeanor was reduced to a violation; there was a $500.00 fine, $400.00 of the fine suspended for one year, based upon good behavior and no entry into the legal bureau at City Hall without an appointment for one year."

6) Since entering the plea, the defendant has remained of good behavior and has complied with the terms of her sentence. The defendant and her husband are going through the process of obtaining Visa's to reside in Portugal. The conviction will be an impediment to the defendant obtaining a Portuguese Visa.

7) Pursuant to NH RSA 651:2 IIIa A person convicted of a violation may be sentenced to conditional or unconditional discharge, or a fine.

7. On March 15, 2022 undersigned counsel spoke with Captain Matthew DiFava, the Commander of the Nashua Police Legal Bureau. Captain DiFava assented to the defendant's Motion and agrees that the conviction maybe conditionally discharged.

WHEREFORE, it is respectfully requested that the Court conditionally discharge the conviction;

A. Grant the motion and make an order to discharge the conviction to the violation; and

B. Grant any other relief which the court may deem just.

> Respectfully Submitted,
> Laurie Ortalano
> By and through her attorney
> Attorney Timothy J. Goulden
>
> Timothy Goulden, NH Bar 20375
> Goulden Law Offices, PLLC
> 253 Main Street
> Nashua, NH 03060

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been mailed to Nashua Legal Bureau.

Date: June 14, 2022

Timothy J. Goulden

3