UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

|  | : |  |
|---|---|---|
| Laurie Ortolano | : | |
| | : | |
| v. | : | Civil Action No. 22-cv-00326-LM |
| | : | |
| The City of Nashua, et al. | : | |
| | : | |

## AFFIDAVIT OF FRANK LOMBARDI

Frank Lombardi hereby deposes and says:

1. I am over the age of 18 and have personal knowledge of the facts set forth in this affidavit.

2. I am a police officer employed by the City of Nashua. I joined the police department in 2008 as a patrol officer, at which time I attended the New Hampshire Police Academy, a 16 week program in which officers are trained law enforcement techniques, criminal law, and citizen's rights, including under the United States Constitution. In 2015 I became a Detective, a position in which I was regularly assigned to investigate alleged criminal activity.

3. In 2019 Sgt. Robert MacLeod and I were assigned to investigate allegations brought by Plaintiff Laurie Ortolano and another resident concerning the City's Assessing Department, and in particular allegations concerning Greg Turgiss and Kimbery Kleiner. I served as the lead detective on the investigation. Prior to this time I had no personal or professional contacts with Ms. Ortolano.

4. I received and reviewed extensive materials delivered to the police department by Plaintiff. These included an investigation report prepared by William Freyler, whom I understood to be a private detective hired by Ms. Ortolano.

5.      After reviewing the materials from Plaintiff, I began interviewing various members of the Assessing Department.  These included Lynn Cameron, an administration specialist, whom I interviewed on August 23, 2019.  At that time, Cameron informed me that while she formerly had good interactions with the Plaintiff, now the staff were "on eggshells because I think we've all been in the position where she's taken what we've said and twisted it to used it against somebody else."  She added that Plaintiff had taken things she had said out of context.

6.      In September 2019 I was contacted by Ms. Cameron's supervisor, Louise Brown, who indicated that Ms. Camerion wanted to speak with me about a recent interaction she had with Ms. Ortolano.

7.      When I met with Ms. Cameron and Ms. Brown, Ms. Cameron related to me that Ms. Ortolano had approached her outside City Hall as she (Ms. Cameron) was returning from lunch and began asking her questions about the Assessing Department.  Ms. Cameron stated that she was very uncomfortable with their interaction and felt that Plaintiff had been waiting outside for her.  Ms. Cameron was emotional and crying as she conveyed this to me.

8.      Although it was apparent that no criminal conduct had occurred on this occasion, I advised Ms. Cameron that there were steps that might reduce the chances of it happening again.  These included seeking an order of protection.  I also offered that I could speak with Ms. Ortolano on Ms. Cameron's behalf and advise her that Ms. Cameron did not wish to speak with her outside of her duties within the Assessing Department.

9.      Shortly thereafter I was informed that Ms. Cameron and indeed all of the employees of the Department, save Cherly Walley, wanted me to express to Ms. Ortolano that they did not want to speak with her outside of work.

10.	Another officer and I then went to Ms. Ortolano's home to inform her of this request.  As she was not home, we left a message with her husband asking her to contact us.

11.	Ms. Ortolano subsequently called me and arranged to meet us at the police station.  Soon thereafter, she met with me and Sgt. Scott Hudon in the lobby of the police station.  I explained the purpose of the meeting and Ms. Ortolano acknowledged that she had spoken with Ms. Cameron by City Hall but denied that she had been waiting for her.  I explained that Ms. Cameron was not suggesting any crime had occurred but that she and the other members of the department (bar Ms. Walley) did not want to have contact with her outside of City Hall.

12.	Ms. Ortolano asked me whether the warning was lawful, and I responded that such warnings were lawful and were done proactively to prevent crimes from occurring.  I further stated that if she did contact the employees outside of work, depending on the circumstances, she could face criminal charges.  As I explained at my deposition in this matter, it is not uncommon for police to issue such "warnings" in citizen disputes in an effort to secure the peace between feuding parties.  An arrest, of course, would only occur if some crime was committed in some subsequent interaction, such as assault or criminal threatening.

13.	I concluded my investigation in early 2020 and no charges were brought against either Mr. Turgiss or Ms. Kleiner.  I had no further involvement with Ms. Ortolano and played no role in subsequent investigations of her for trespass or any other matter.

Subscribed and sworn to under the pains and penalties of perjury this 29 day of May, 2024.

/s/ Frank Lombardi
FRANK LOMBARDI

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

Sworn to and subscribed before me by Frank Lombardi, this 29 day of May, 2024.

/s/ Joy Ann Susalka
~~Notary Public/~~ Justice of the Peace
Print Name:  Joy Ann Susalka
My Commission Expires: May 4, 2027

4