**In the Matter Of:**

LAURIE ORTOLANO vs

CITY OF NASHUA

**FRANK LOMBARDI**

*April 19, 2024*



**Duffy & McKenna Court Reporters, LLC**

P.O. Box 1658 Dover, NH  03821

**1-800-600-1000**

603-743-4949 | 603-743-4952 (fax)

www.dmreporting.com

dmreporting@stenosearch.com (Scheduling)
camille@stenosearch.com (Billing/Production)

OUT-OF-TOWN DEPOSITIONS?



WWW.DEPOSPAN.COM

*Duffy & McKenna
Court Reporters, LLC*

DEPOSPAN'S TRUSTED LOCAL CONNECTION

Page 42

1  warnings that you give?
2       A.   I guess I just try to use common sense,
3  and I guess every situation is kind of different,
4  you know, it depends on the situation.
5       Q.   Can you estimate how many no-contact
6  warnings you've given over the course of your
7  career?
8       A.   Well, when you say no-contact warnings,
9  are you talking about like protection orders that I
10 served to people over the years, or just more of a
11 vague, like in this case, like no contact --
12      Q.   Yeah, we'll ratchet down from the
13 protection orders.  Obviously, am I correct that a
14 protection order would have to be issued by a
15 court?
16      A.   Yes.  Yeah.
17      Q.   So we're talking about just police
18 warnings, something that might be proactive.
19      A.   As far as putting a number on that,
20 that would be hard to do.  I mean, almost every
21 domestic violence call we go to where an arrest
22 isn't made, we're typically giving some sort of
23 warning or advice and telling people to, you know,
24 stop whatever behavior they're doing to prevent any
25 future issues, so it could be multiple times a day.

Page 43

1       Q.   It happens a lot in the domestic
2  situations?
3       A.   Yeah, domestic situations, neighbor
4  disputes, road rage incidences, juvenile matters at
5  the schools, I believe -- I mean, our school
6  resource officers probably do it multiple times a
7  day, every day.
8       Q.   And obviously less so in those
9  instances that you just didn't describe, less more
10 common -- less common in the instances that you --
11 other than what you described?
12      A.   I guess I --
13           MR. CULLEN:  Objection to form.  You
14 can answer, if you can.
15      A.   I guess I'm not understanding it, less
16 than -- less than what?
17 BY MR. MALAGUTI:
18      Q.   Well, you suggested that they happen
19 quite frequently in domestic situations,
20 neighborhood situations, juvenile situations, road
21 rage situations.  Are there other situations where
22 you've given no-contact orders?  And I'm obviously
23 talking about other than this case.
24      A.   Yeah, I -- I'm sure they have.  I mean,
25 I don't remember all specifically every instance of

Page 44

1  that.
2       Q.   Okay.  And, generally, what is the
3  purpose of giving a -- and, again, we're talking
4  less than a protection order, just a warning not
5  to have contact?
6       A.   Generally speaking, it's to prevent any
7  future issues or need for police involvement.
8       Q.   Would it be fair to say then that you
9  give them only when you anticipate that the
10 situation may escalate to a crime?
11      A.   I don't know if that would be true in
12 all cases.  I don't know if that would be true in
13 all cases.
14      Q.   Can you give me an example of a case
15 where you don't have a fear that the matter may
16 escalate to a crime, but you've nonetheless given
17 a verbal warning to have no contact?
18      A.   Oh, I guess an instance of that would
19 be issues involving juveniles.  If they're
20 bothering somebody or fighting with each other or
21 whatever it may be, that may be an instance where
22 we would intervene and say, hey, you know, whatever
23 behavior they're doing, knock it off, stop it, and
24 in those cases if they're juveniles, knowing full
25 well that we can't arrest a specific juvenile, we

Page 45

1  would warn them against whatever behavior they're
2  doing.
3       Q.   But it sounds like you've just
4  described matters where you are worried about a
5  crime happening, even -- regardless of whether you
6  can arrest or not.
7       A.   Okay.
8       Q.   Well, assault is a crime, right?
9       A.   Well, I'm not saying that they would be
10 assaulting somebody, if they were just making bad
11 decisions or maybe, I don't know, climbing on a
12 stone wall, you're afraid that they were going to
13 get hurt, hey, knock it off, that kind of thing.  I
14 mean, I guess that would be an instance where a
15 police officer could intervene.
16           We're kind of going down a deep
17 hypothetical road here.
18      Q.   Sure, it is.  I understand that.
19           What about with adults, an instance
20 where you don't anticipate -- an example of when
21 you don't anticipate a crime occurring in the
22 future, but you still feel it's appropriate to
23 give a verbal warning of no contact?
24      A.   An instance where I would warn an adult
25 not to have contact with another adult when I don't