UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Laurie Ortolano, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-00326-LM |
| | ) | |
| The City of Nashua, *et al*., | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT KIMBERLY KLEINER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Kimberly Kleiner (Kleiner) files this Memorandum of Law in support of her Motion for Summary Judgment. Kleiner moves for summary judgment on all remaining counts - Counts I and II, First Amendment, Count VII, RSA 91-A and Count VIII, Defamation.

Kleiner is not liable to Plaintiff for many reasons. Plaintiff's free speech rights were not chilled, as the Court has previously noted. Kleiner did not take action adverse to Plaintiff's free speech rights. Plaintiff was also not chilled as to seeking government redress. Similarly, Kleiner did not take action adverse to Plaintiff's right of redress. Plaintiff has requested money damages under RSA 91-A but the statute does not provide for money damages. Plaintiff's claim for defamation fails because Kleiner is immune from suit under RSA 507-B:4 and because it is substantially true that Plaintiff misrepresented herself as a City employee to a City contractor/vendor. In addition, Plaintiff was a limited purpose public figure and Kleiner did not make any statement about Plaintiff with malice. Kleiner's statements about Plaintiff were not even negligent, the minimum required to recover for defamation, were Plaintiff not a public figure.

## STATEMENT OF MATERIAL FACTS

Kleiner provides this Statement of Material facts pursuant to court rules, including L.R. 56.

1. Plaintiff lives in Nashua. Deposition of Laurie Ortolano ("Ortolano Dep"), 6:22-23.

2. Plaintiff had issues with her real estate property assessment and tax bill for her Nashua property. *Id*., 19:3-14 and Complaint, ¶¶ 15-18.

3. Her property tax dispute with the City led to her contacting various City officials, attending various City meetings and offering various criticisms of the City. Complaint, ¶¶ 18, 19, 23, 25, 26 and generally.

4. Plaintiff's criticisms of City officials, including Kleiner, have been both public and, in some instances, rather vigorous. *Id*., ¶¶ 25, 129 (telling the Mayor to "shut your mouth" and "shut your piehole") and [Doc. 77-1] ¶¶ 34-35, (admitting describing Attorney Bolton as a "moron," Attorney Leonard as a "nitwit" and referencing Leonard's behavior with a vile expletive).[1]

## ALLEGED CHILLING OF FREE SPEECH AND PETITIONING GOVERNMENT

5. The Court has already determined that Plaintiff's right to free speech and right to petition the government have not been chilled. *See* [Doc. 60], Order, pp. 14-15 ("Therefore, to the extent that Ortolano's First Amendment claims are based on her dispute over the Nashua Legal Department's responses to her record requests, defendants' motion is granted."); *see* also [Doc. 61], Order, p. 16 (referencing Doc. 42-

---

[1] Plaintiff's Affidavit, [Doc. 77-1], ¶ 35 submitted in response to Defendants' Bolton and Leonard's Motion for Summary Judgment, complains that Defendants now use her own words, the vile expletive, to disparage her – without apparent understanding that she is complaining of her own speech.

1 "documenting Ortolano's continued participation in Nashua government affairs on numerous occasions").

6. The Court determined that the responses to Plaintiff's right-to-know ("RTK") requests are not an adverse action. [Doc. 60], p. 15.

7. The Court also determined that "[N]or, given her continued litigation and pursuit of Assessing Department records, does the complaint plausibly suggest that her pursuit of City records was actually 'chilled.'" *Id.*, p. 14 citations omitted.

8. Regardless of this controlling prior finding, Kleiner points out the following actions[2] Plaintiff has taken, in brief summary:

   A. Plaintiff was a regular attendee of public meetings where she frequently criticized City officials. Plaintiff spoke at length at a Board of Aldermen meeting where she criticized Kimberly Kleiner and recently released Assessing Dept. procedures. *See* [Doc 84-4], pp. 97-99, attached as Ex. A, Affidavit of Caron, in support of Defendant Lombardi's Motion for Summary Judgment, [Doc 84].

   B. Plaintiff spoke at six meetings during the last four months of 2018 and twenty more meetings in the first six months of 2019. *Id.*

   C. Plaintiff regularly attended additional meetings at which she did not speak. Ortolano Dep. pp. 83-84. This continued apace through 2021. *See* Plaintiff's Affidavit in Response to Bolton/Leonard Motion for Summary Judgment [Doc.

---

[2] In doing so, Kleiner notes that contrary to what this Court has already found, Plaintiff is still arguing that she was "chilled." *See* [Doc. 75-2], ¶ 50. Notwithstanding Plaintiff's argument in ¶ 50, Plaintiff has admitted that her speech has not been chilled. *See* [Doc. 75-2], ¶33 ("I admit that I continue to exercise my Frist Amendment rights to some degree in nongovernment forums….").

No. 75-2] ¶50 (noting attendance at 45 BOA meetings from January 2021 through October 2022).

D.  Plaintiff also continued filing Right-to-Know requests and enforcing them through litigation.  *See* Affidavit of Steven Bolton ("Bolton Aff."), appended to Bolton's Motion for Summary Judgment as [Doc. No. 71-2], at ¶2.

E.  Plaintiff has remained constant in her efforts to criticize the City and its officials. Just last week the Hillsborough Superior Court documented her increasingly hostile pleadings, baseless accusations, and crude language.  *See* Order of May 23, 2024, *Ortolano v. City of Nashua*, 2021-cv-00354 (Hillsborough County Superior Court – Southern Dist.) attached to Declaration of Dona Feeney, Esq., ¶ 3, Exhibit A.

## ACCESSABILITY OF DOCUMENTS AND COMMUNICATION WITH CITY EMPLOYEES

9.  In approximately April of 2019, three of the City's assessors advised Kleiner that they did not want to speak to Plaintiff. Deposition of Kimberly Kleiner ("Kleiner Dep"), 99:5-23; *see* also 63:10-64:10.

10. In May of 2019, the Assessment Department had administrative staff direct Plaintiff's inquiries or questions to Louise Brown, the administrative supervisor. *Id.*, 55:3-14; 55:21-56:1.

11. On instruction from the City Attorney's Office, RTK requests from Plaintiff were sent to the City Attorney's Office for handling or response. Kleiner Dep, 27:23-28:7.

12. Some questions or inquiries from Plaintiff also were sent to the City Attorney's Office for handling or response. *Id.*, 56:2-7.

13. Although responsibility for responding to Plaintiff's RTK requests changed over time, Kleiner did not tell or direct anyone to refuse or fail to respond to Plaintiff's requests for documents. *Id.*, 101:1-15 and 102:6-10.

14. Kleiner felt that she could have the City provide Plaintiff with documents or information in writing, rather than verbally, and meet the requirements of RSA 91-A. *Id.*, 99:5-16.

## FACTS FOR DEFAMATION ISSUE – CONTACT WITH FEOLI

15. Plaintiff had several phone conversations with Raymond Feoli, President of Inception Technologies ("Inception"), a contractor working on the City's document scanning and storage project. Feoli Affidavit, [Doc 31-2], ¶¶ 2, 5, 9-10 and Kleiner Dep 96:1-21; *see* also Declaration of Kimberly Kleiner, ¶¶ 17, 19-21.

16. Feoli sent an email to Kleiner, but addressed it to the Board of Aldermen, on February 6, 2022, confirming his contact with Plaintiff and that he had thought Ortolano was a City employee until told otherwise by Kleiner. Feoli Deposition, 37:2-42:7 and *see* Kleiner Decl., ¶22 and Exhibit A thereto.[3]

17. Plaintiff admits that she spoke with Feoli about Inception's project for the City. Ortolano Dep, 88:16-90:15; 91:2-10 and 92:20-93:5.

18. Feoli believed that Plaintiff was a City employee, based upon the questions Plaintiff asked or statement she had made about the documents project and facts Plaintiff recited. Feoli Affidavit., [Doc 31-2], ¶¶ 8-12, 17; *see also* Kleiner Decl., ¶¶ 20-21.

---

[3] The email was discussed at Feoli's deposition but not actually marked then. It was marked at Kleiner's deposition as Exhibit 16, as she had forwarded it for the Board of Aldermen to consider.

19. Plaintiff's discussions with Feoli included project details and a statement that she would help get payment of an invoice expedited. Feoli Affidavit., [Doc 31-2], ¶¶ 8-12, 17, and particularly ¶ 9 re: invoice.

20. Feoli advised Kleiner and the City's Board of Aldermen, via the February 6, 2022 email to Kleiner, that he thought Plaintiff had misrepresented herself to him as a City employee. Feoli Affidavit, [Doc 31-2], ¶¶ 8-17 and *see* Kleiner Decl., ¶¶ 20-26, and Ex. A.

21. Feoli believed that his conversations with Plaintiff were a breach of Inception's data security obligations to the City, once he found out that Plaintiff was not a City employee. *Id*., Feoli Affidavit, [Doc 31-2], ¶ 14.

22. Plaintiff acknowledges speaking with Feoli by phone about the City's document scanning and storage project. Ortolano Dep, 88:16-91:1.

23. Plaintiff did not tell Feoli that she wasn't a Nashua City employee (*Id*., 90:7-10), she just believed that that "he would have understood I was a citizen." *Id*., 89:18-19.

24. Although Plaintiff denies she told Feoli she was a Nashua City employee she admits that she "told Feoli that I would inquire from Kleiner about when more money would be paid to get the job done." Ortolano Dep, 92:20-93:5.

25. Kleiner put the matter before the Board of Aldermen because although Feoli had sent his email regarding Plaintiff to Kleiner, he had addressed it to the Board. Kleiner Dep, 96:22-97:3; Kleiner Decl., ¶¶ 23, 28-30, and Ex. A.

26. At the same Board of Aldermen meeting, Kleiner provided a status on the Feoli/Inception scanning project. Kleiner Decl., ¶ 30, and Ex. C.

27. The minutes from the Board of Aldermen meeting of February 8, 2022 show that

   Feoli's email to Kleiner was accepted into the Board's record. Kleiner Decl., ¶ 29,

   and Ex. B, also available at :

   https://www.nashuanh.gov/AgendaCenter/PreviousVersions/_02082022-5856 .

**FACTS FOR DEFAMATION ISSUE – PLAINTIFF IS A LIMITED PUBLIC FIGURE**

28. Plaintiff has thrust herself into the public forum with various conduct which includes

   vigorous participation in multiple City meetings and affairs. Complaint, p. 4

   (discussing "Ortolano's quest to employ her constitutionally and statutorily protected

   rights to investigate Nashua's government…"), ¶ 25 (she "has been publicly critical

   of Assessing Department…), ¶ 26 (attending monthly coffees with the Mayor), filing

   multiple RTK actions, *see* Complaint generally, ¶ 97 (Ortolano started to become

   more publicly vocal about the City in 2020, began to frequently post on social media

   about the City's administration and launched a website named "good-gov.org."), ¶¶

   128-129 (telling the Mayor to shut up and to shut his pie hole – always good for

   notoriety).

29. Plaintiff has also sought and received ample media coverage. *See, e.g*., "Laurie

   Ortolano, Should you open your doors to revaluation?" Union Leader, Op-Ed, May

   25, 2020 (https://www.unionleader.com/opinion/op-eds/laurie-ortolano-should-you-

   open-your-doors-to-revaluation/article_ee856739-8938-528b-80ca-

   df84bde92f47.html) and Property owner alleges wrongdoing by city, Nashua

   Telegraph, February 20, 2019

   (www.nashuatelegraph.com/news/2019/02/20/property-owner-alleges-wrongdoing-

   by-city/).   A Memorandum of Law filed by Mayor Donchess and CFO Griffin in

support of their Motion for Judgment on the Pleadings, [Doc 42-1], which motion
was granted by the Court, [Doc 61], points out many other public activities by
Plaintiff. *See* [Doc. 42-1], pp. 7-9.

30. To the extent Plaintiff has decreased her public profile, that is directly related to a
comment by an alderman in October 2022 when the alderman allegedly said that
Plaintiff "sends out predatory vibes like crazy." Ortolano Affidavit, [Doc. 77-1], p.
19, response to 36 (j).

31. Plaintiff alleges that she "stopped attending virtually all standing committee meetings
after October 2022." *Id.*, ¶ 50.

32. Plaintiff has continued to attend many other City government meetings, however,
including eleven Board of Aldermen meetings after October 2022. *Id.*

**KLEINER CONTACT WITH NASHUA POLICE DEPT. RE: INVESTIGATION**

33. Most of the Assessing Department's employees did not want to have contact with
Plaintiff outside of their work. Kleiner Dep, 63:14-17 (assessors), 65:13-67:1 (other
Assessing Department staff). *See also*, Kleiner Decl.. ¶¶ 11-12; 15-16.

34. The Nashua Police informed Plaintiff that the Assessing Department employees, with
the exception of Cheryl Walley, did not want to have contact with Plaintiff outside of
the Assessing Department. Ortolano Dep, 61:9-63:1-9.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
of law." Fed. R. Civ. P. 56(c).  Summary judgment motions provide courts the opportunity to

"pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Acosta v. Ames Dept. Stores, Inc.*, 386 F.3d 5, 7 (1st Cir. 2004) quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). Thus, while the initial burden is upon the moving party to establish the lack of a genuine, material, factual issue, *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir. 1988), if a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).

## ARGUMENT

### I. PLAINTIFF'S FIRST AMENDMENT FREE SPEECH CLAIM AGAINST KLEINER FAILS BECAUSE PLAINTIFF'S SPEECH WAS NOT ACTUALLY CHILLED AND BECAUSE KLEINER DID NOT ACT ADVERSE TO PLAINTIFF'S FIRST AMENDMENT RIGHTS.

Plaintiff was not actually chilled from exercising her First Amendment right of free speech as it relates to pursuing records. The Court has already determined this. *See* [Doc. 60], Order on Motion for Judgment on Pleadings, pp. 14-15 ("Nor, given her continued litigation and pursuit of Assessing Department records, does the complaint plausibly suggest that her pursuit of City records was actually 'chilled.'" Citing *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989)). *See also Curley v. Village of Suffern*, 268 F.3d 65, 73 (2nd Cir.2001) ("…plaintiff must show, with respect to the third element, that his First Amendment rights were actually chilled." Citation and internal quotation marks omitted.). Further, Defendants' Bolton and Leonard's memorandum in support of summary judgment sets out a litany of actions Plaintiff continued to pursue regarding assessment records. *See* [Doc 71-1], pp.7-8, ¶¶ 33-36 (a-k). *See also* Feeney Decl. Ex. A.

The Court dismissed Plaintiff's First Amendment claims against Bolton and Leonard as to their responses regarding records requests. "Therefore, to the extent that Ortolano's First Amendment claims are based on her dispute over the Nashua Legal Department's responses to her record requests, defendants' motion is granted." [Doc. 60], p. 15. Claims against Kleiner relating to assessing records therefore fail too.

As this Court stated in [Doc. 60], p. 14, much of Plaintiff's Complaint aggregates several defendants together as transgressors of her rights; but in a multiple defendant case, each defendant's acts must be isolated and analyzed separately. This is true with respect to Plaintiff's claims in Counts I and II. It is a bit difficult to parse what Plaintiff asserts Kleiner, in particular, did to disturb her First Amendment rights. *See* Complaint, ¶ 148 ("The actions and conduct described herein by defendants … as applied to plaintiff…" violate her First Amendment rights.). *See* also *id.*, ¶ 153 ("The actions and conduct described herein by defendants were in violation of Ortolano's right to petition government for redress of grievances."). Nowhere within Counts I or II does Plaintiff break down what Kleiner, or any other Defendant in particular, individually did to violate her rights.

Plaintiff was equally obscure at deposition when asked what Kleiner did to limit Plaintiff's First Amendment rights to free speech or petition government. Her answer for both was that Kleiner had the Assessing Dept. employees communicate with Plaintiff in writing instead of verbally. Ortolano Dep, 136:20-140:15 (free speech) and 141:10-142:23 (right to petition). However, Kleiner did not limit Plaintiff's speech. *Id.*, 140:11-15.

As to petitioning government, Plaintiff's Complaint does allege that Kleiner acted regarding Plaintiff's pursuit of property assessment information. But by definition, those allegations pertain to the issue which the Court has already decided in Defendants' favor. *See* [Doc. 60], pp. 14-15, as quoted above. The bulk of Plaintiff's allegations relating to Kleiner

pertain to property assessment information or documents asserting that Kleiner (sometimes with others) tried to restrict Plaintiff's access to documents. Complaint, ¶ 33. Plaintiff has various allegations regarding the City or its employees not responding verbally to her. *See id.*, ¶¶ 51-53, ¶ 54 (not immediately responding to Plaintiff's requests as it did for others), ¶ 55,[4] ¶ 58 (redesign of Assessing Department); ¶¶ 59 and 66 (referring Plaintiff's requests to the Legal Department, ¶ 102 (making Plaintiff submit duplicate document requests and then complaining that she was increasing City workload; and ¶ 123 (City employee not to respond to Plaintiff's requests but to send them to Kleiner or the new Chief Assessor. All of these items are covered by the Court's prior determination that Plaintiff was not chilled from seeking information. All of these items are therefore not actionable under the First Amendment analysis.

Plaintiff also alleges that multiple City officials "commenced a campaign of announcing publicly that [her] requests for information were burdensome and had prevented City employees from" doing their work. *Id.*, ¶ 99. She does not delineate Kleiner or any other City official's role in this. There is a lot of "they did this" and "they did that." Obscurity notwithstanding, this allegation is also tied to the RTK requests. We know, unequivocally, that Plaintiff was not deterred from pursuing those requests. Accordingly, this allegation also cannot successfully underwrite her First Amendment claim.

Even if Plaintiff's speech was chilled, it was not due to Kleiner's actions. Plaintiff herself ties a decrease in public activity, although an inconsequential decrease, to statements allegedly made by a City alderman. The alderman purportedly stated in October 2022 that Plaintiff "sends

---

[4] Notably, in the Complaint, ¶ 56, Plaintiff alleges that Kleiner's policy chilled her from exercising rights. The Court has found otherwise. *See also* Complaint ¶¶ 124-125, detailing Plaintiff continuing on with her RTK actions, and other information showing she was not deterred or chilled at all from seeking information.

out predatory vibes like crazy." Ortolano Affidavit, [Doc. 77-1], p. 19, response to 36 (j).

Plaintiff alleges that she then "stopped attending virtually all standing committee meetings after

October 2022." *Id.*, ¶ 50. Kleiner did not make the statement, nor is she responsible for it.

Accordingly, Plaintiff's alleged decreased public profile is related to a separate incident in which

Kleiner played no part. Further, Plaintiff has two problems with that statement. First, Plaintiff

has continued to attend many other City government meetings, including eleven Board of

Aldermen meetings after October 2022. *Id.* Second, the alderman apparently made that statement

in response to Plaintiff's statement regarding the alderman being a poor example to his own

children. *Id.*, response to para 36 (j). The alderman does not give up his own free speech by

being elected. *See* below.

Public statements that Plaintiff's requests to the City were burdensome do not amount to

an adverse action. "'[C]ourts are not typically receptive to retaliation claims arising out of

government speech.'" *Currier v. Town of Gilmanton*, 621 F. Supp. 3d 233, 259 (D.N.H. 2022),

quoting *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 143 (1st Cir. 2016), other

citation omitted. Government officials themselves retain free speech rights including the right to

respond "to speech [from citizens] with speech of their own." *Currier*, 621 F. Supp. 3d at 259,

citation omitted. The courts impose a "high bar" for retaliatory speech under the First

Amendment. *Id.*, citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000).[5]

---

[5] Here again, it is difficult to say what Plaintiff believes Kleiner said about her that would have
been an adverse action. In paragraph 22 of the Complaint, Plaintiff mentions some weak emailed
statements like "ranting" and doesn't say who wrote them. This complaint comes from a woman
who told the City's Mayor to "shut your pie hole." Complaint, ¶ 129. While she has a right to say
that, there is a reason the law gives government officials the right to respond to citizens, as noted
in *Currier*.

Plaintiff raises just a few other actions taken by Kleiner. But those either do not relate to her First Amendment rights or are also related to requesting information from the Assessing Department. Plaintiff alleges that "on more than one occasion while Ortolano was present in City Hall, Kleiner aggressively approached her outside of the Assessing Department and chastised her for wasting staff time on requests for public documents." Complaint, ¶ 84. She also alleges that she withdrew from situations, fearing arrest. *Id*. But she continued seeking and obtaining documents, including pursuing several lawsuits against the City to do so. To the extent she actually "withdrew" from contact with Kleiner, she merely did not physically engage with someone with whom she had a difficult relationship. She pursued her First Amendment rights aplenty and therefore has no First Amendment claim.[6] *See* [Doc. 60], pp. 14-15 and cases cited therein.

Plaintiff also alleges that Kleiner failed to investigate an Assessing Department employee that Plaintiff felt was not working to capacity (*id*., ¶¶ 60-64) and turned the investigation against Plaintiff when the investigation was later pursued. *Id*., ¶¶ 70-76 and ¶¶ 81-82. However, Plaintiff puts forth no facts to show any of this was related to her exercise of First Amendment rights. She merely speculates that it was, *see, e.g., id*. ¶¶ 84, 86. When given the chance at deposition, she did not assert that this was a First Amendment issue. Ortolano Dep, 136:20-142:23. Plaintiff's conclusory Complaint does not link the actions noted with First Amendment rights, and her

---

[6] Plaintiff also alleges that Kleiner saw Ortolano in the third-floor auditorium of City Hall while speaking with the Chairperson of the Board of Assessors. Complaint, ¶ 119. Kleiner "aggressively" approached Ortolano and said that she "could call the police and have her arrested for yelling at 'Jen' that morning." *Id*. Jen was an Assessing clerk, whom Ortolano had seen that morning to request a property file. *Id*. So this is directly related to Assessing information requests, from which Plaintiff was not deterred.

testimony does not add the required backing.[7] In addition, the asserted action by Kleiner of telling the Nashua Police Dept. ("NPD") that most of her department's employees didn't want to have contact with Plaintiff outside of their work was both accurate and *de minimis.* Kleiner Dep, 65:8-67:1. Kleiner Decl., ¶ 15. Plaintiff harps on the employees saying they had not been physically threatened by her. Complaint, ¶ 74. But Plaintiff admits that the employees told the NPD that they felt uncomfortable. *Id.*, ¶ 75. Accordingly, Kleiner accurately read concerns from her employees about Plaintiff. Her reporting this to the NPD is insubstantial, at worst. As the Court has already noted in "the adverse action prong of a First Amendment claim, adverse action need be more than de minimis, which the First Circuit has defined simply as sufficient to chill a reasonably hardy person, or a person of ordinary firmness, from continuing to exercise their constitutional rights." *See* [Doc. 61], Order, p. 17, citations and internal quotation marks omitted.

Finally, Plaintiff alleges that Kleiner publicly accused Plaintiff of misrepresenting herself as a City employee to a City contractor, Feoli/Inception. *Id.*, ¶ 122, Ortolano Dep, 139:16-140:10. This has nothing to do with First Amendment rights, however. Defendant deals with this issue below, in discussing alleged defamation. This issue is also related to Plaintiff's document/information requests. This issue also fails to reach the high bar of adverse action for spoken words, as noted in *Currier, supra.*

II.     **PLAINTIFF'S FIRST AMENDMENT CLAIM AGAINST KLEINER REGARDING HER RIGHT TO PETITION GOVERNMENT FOR REDRESS FAILS BECAUSE THERE WAS NO ADVERSE ACTION BY KLEINER AND PLAINTIFF WAS NOT ACTUALLY CHILLED.**

Plaintiff's claim for alleged violation of her right to petition government for redress fails

---

[7] The NPD investigation exonerated the Assessing Department employee, Greg Turgiss, *Id.* ¶ 91. Plaintiff pleads sour grapes. *Id.* Plaintiff also claims that Kleiner was able to change the focus of investigation from Turgiss to Plaintiff. *Id.*

for two reasons - one, there was no adverse action taken by Kleiner and two, Plaintiff was not actually chilled from petitioning the government. Plaintiff's Count II does not reference specific actions by Kleiner, or anyone, regarding redress. Count II merely states that "[T]he actions and conduct described herein by defendants …were in violation of Ortolano's right to petition government for redress of grievances." At deposition, Plaintiff stated that Kleiner made the Assessing Department stop responding to her verbally although it produced documents to her. Ortolano Dep, 141:7-142:23, *and see* Kleiner Dep, 99:5-101:15. Regardless, Kleiner believes that the Court's prior decisions in this case should make quick work of Plaintiff's redress claim.

Plaintiff's redress claim against Kleiner appears to be based mostly, if not exclusively, on Kleiner's handling of the RTK issue. Plaintiff's allegations are set out in § I above, pp. 9-10 ("Plaintiff has various allegations regarding the City or its employees not responding verbally to her…"). These all relate to Plaintiff's claim that Kleiner or the City deprived her of assessing documents or made it difficult to obtain them.

This Court has already decided that the acts relating to RTK matters do not qualify as adverse action, and that Plaintiff was not dissuaded from action. *See* [Doc. 60]. "Ortolano has not provided any authority suggesting that the right-to-know dispute itself is an 'adverse action.' Nor, given her continued litigation and pursuit of Assessing Department records, does the complaint plausibly suggest that her pursuit of City records was actually 'chilled.'" *Id*. at p. 14, quoting *Sullivan*, 888 F.2d at 4. The Court then dismissed Plaintiff's First Amendment claims to the extent they rested on RTK issues: "Therefore, to the extent that Ortolano's First Amendment claims are based on her dispute over the Nashua Legal Department's responses to her record requests, defendants' motion is granted." [Doc. 60], p. 15. Although Doc. 60 related to Attorneys Bolton and Leonard, the First Amendment claims asserted against them in Counts I and II

included the same as those alleged against Kleiner, and therefore the same analysis and logic applies to Kleiner.

Plaintiff does make scant other allegations, as noted in § I, above. But there are no facts to show that the actions alleged, almost all of which relate to the NPD investigation, either had anything to do with Plaintiff's First Amendment rights, or that they sidetracked Plaintiff.

Plaintiff asserts that Kleiner told the NPD that all the employees in Assessing, save one, wanted a no-contact order on Plaintiff. Complaint, ¶ 72. Plaintiff seems to then say that the Assessing employees weren't as scared of Plaintiff as Kleiner told the NPD. *Id.*, ¶¶ 73-74. But although she says that the employees were not threatened, she concedes that the employees agreed that Plaintiff made them "uncomfortable." *Id.*, ¶ 75. The Complaint then details how the NPD allegedly sought a no-contact order for the Assessing employees. *Id.*, ¶ 76-78 and see Ortolano Dep, 61:9-62:13. But Kleiner did not request that the NPD issue a no-contact order for all of the employees. Kleiner Dep, 65:13-67:18. The employees spoke with the NPD to state their concerns with Plaintiff. *Id.* Kleiner made a no-contact request for herself. *Id.* The NPD report specifically states that "everyone within the Nashua Assessing Department [with one exception] had decided they wanted me to inform Ortolano that they did not want to have any contact with her outside of the Assessing Department Office." Feeney Decl., Ex. B., January 23, 2020 letter from NPD to counsel for plaintiff.  None of this shows an adverse action under First Amendment law.

"[T]he pertinent question in a § 1983 retaliation case based on the First Amendment is whether the defendant's actions would deter a reasonably hardy individual from exercising his constitutional rights." *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011), quoting *Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209 (1st Cir. 1989), bracketing and internal quotation

marks omitted. Government actions must be "sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations" *Barton*, 632 F.3d at 29, citations omitted.[8]

Plaintiff's allegations pale against this legal backdrop. Kleiner supposedly told the NPD that most of the Assessing employees were "on the same page" and "that they didn't want to have contact with Ortolano outside the assessing department." Complaint, ¶ 72. Kleiner also allegedly "organized and implemented this concerted effort" to involve the NPD. *Id.*, ¶ 73. Plaintiff presumes that this was intended to quash her First Amendment rights but no facts support this. *Id.* The facts do not show Kleiner acted as a ringleader. Kleiner Dep, 65:13-67:18. Plaintiff has admitted at deposition that she does not know whether the Assessing Department employees opted into the warning on their own. Ortolano Dep, 57:7-20. Moreover, even Kleiner's alleged actions cannot be labeled as "sufficiently severe." Nor can they be assessed to cause hardy individuals to compromise their beliefs and associations, per *Barton*. Accordingly, Plaintiff's claim for government redress fails.

Plaintiff's government redress claim also fails because she was not chilled. As noted by the Court previously, she carried on. She sought documents, attended meetings, pursued litigation and more. Plaintiff did not compromise her beliefs and associations.

Plaintiff's claim that her actions were chilled cause a little whiplash, as well. Her affidavit, [Doc. 75-2], claims in the heading above ¶ 50 that her actions were chilled. But on page 14 of that same affidavit admits that she continued to exercise her First Amendment rights, however. *Id.*, ¶ 33. In addition to this Court already deciding that issue, Plaintiff has continued to

---

[8] In *Barton,* an adverse employment action was under discussion. The First Circuit decided the case on qualified immunity, however, and did not decide the adverse action element.

press her RTK issues in state court. As stated above, recent decision of the Hillsborough County Superior Court recounts how Plaintiff dropped her RTK case after remand from the New Hampshire Supreme Court. *See* Ex. A to Feeney Decl., pp. 1-2. She then had the case reopened. *Id.*, p. 2. Despite her protestation that she has reformed after her vile expletive regarding Kleiner, the state court recounts how she has not reformed. *Id.*, p. 3 (the state court is "biased" and "testicles and penis' [sic] are the gender of justice."). Plaintiff has continued to pursue a very public course of action in which her actions include "hyberbolic dishonesty" divorce from reality "which boarders on hate" and perhaps the thrill of confronting her perceived enemies…." *Id.*, p. 5.   Her redress claim therefore fails as a matter of law because her conduct has not been chilled.

### III.   PLAINTIFF'S CLAIM FOR DAMAGES IN COUNT VII BASED ON RSA 91-A FAILS BECAUSE DAMAGES ARE NOT AVAILABLE UNDER THE STATUTE.

Plaintiff's claim for damages under RSA 91-A fails as a matter of law. The statute does not provide for compensatory damages. That is the only relief Plaintiff requested. *See* Complaint, ¶ 180. Accordingly, Plaintiff's request cannot be granted and Count VII should be dismissed.

RSA 91-A:7, I provides that any person who believes they "have been aggrieved by a violation of this chapter may petition the superior court for injunctive relief." The courts are to give RTK cases "high priority on the court calendar." *Id.* This allows for the quick resolution of RTK matters. Which allows a citizen seeking records to have the matter resolved without waiting for the time it might usually take for a civil matter to go to trial.

A person making a RTK request can also proceed by filing "a complaint with the ombudsman under RSA 91-A:7-a…." RSA 91-A:7, II. The ombudsman alternative became effective July 1, 2022. *See* NH Laws 2022, Ch. 250. Plaintiff filed her suit on August 23, 2022 so that the ombudsman alternative available to her. The ombudsman process provides slightly

different procedure and remedies. RSA 91-A:7-b. Money damages are not a remedy under the ombudsman process, however. *Id.* This shows that RSA 91-A does not allow money damages.

Plaintiff's Count VII claims that Kleiner caused Ortolano to suffer undelineated damages, Complaint, ¶ 180. Her actual damages do not matter under the RTK statute, however, since the statute does not provide for money damages. Plaintiff could have sought injunctive relief under RSA 91-A:7 but did not. She could have also sought civil penalties, but only for "bad faith." RSA 91-A:8, IV. Plaintiff has not alleged that Kleiner acted in bad faith, however.[9]

Plaintiff does assert, incorrectly, that Kleiner acted either "knowingly or recklessly" by misrepresenting in a public meeting that Plaintiff portrayed herself as a city employee. Complaint, ¶ 179. Kleiner's discussion of Plaintiff was based on what she was told by Raymond Feoli, the President of Inception Technologies, Inc. During a call between Feoli and Kleiner, Feoli identified Ortolano as a City official with whom he had communicated. Feoli Affidavit, [Doc. 31-2], ¶¶ 11-12, Feoli Dep, 40:2-18, Kleiner Dep, 93:6-94:11. Feoli then sent Kleiner an email setting out several of his communications with Plaintiff showing why he thought Plaintiff was a City official. Ex. A to Feoli Aff., [Doc. 31-2]; *see also* Kleiner Decl., ¶¶ 20-22.

Kleiner's statement that Feoli reported that Plaintiff impersonated a City employee in communicating with Feoli was neither knowingly or recklessly false. It was not even negligent, given what Feoli told Kleiner, first verbally and then in writing. Feoli Aff., [Doc 31-2], ¶¶ 11-13, 15. Feoli's email to Kleiner (and the Board of Aldermen via Kleiner) dated February 6, 2022 states that Ortolano: 1) "portrayed herself as a city employee to me on thre [sic] different occasions;" *id.*, 2) discussed specifics of City invoices with him; *id.*, 3) mentioned that she would

---

[9] Plaintiff is quite capable of alleging bad faith. *See* Complaint, generally. But she failed to assert that Kleiner's actions regarding the meeting were in bad faith.

make sure payment would be expedited on any outstanding invoices; *id*., and 4) had extensive additional conversations with him regarding other details of the work being done by Inception; *id*. (*see* third full paragraph of Ex. A, [Doc 31-2].) *See also* Kleiner Decl., Ex. A. Notable in all of this is that Plaintiff did <u>not</u> tell Feoli that she was <u>not</u> a City employee. Feoli learned that from Kleiner. Feoli Aff., [Doc 31-2] ¶ 13. Further, Plaintiff admits that she called Feoli and that she discussed payments to Inception. Ortolano Dep, 91:15-93:5. This includes telling Feoli that she would ask Kleiner when more money would be allotted to Inception's project. *Id.*, 92:20-93:5.

Kleiner was not obliged to do a full scale investigation of what Feoli said Plaintiff told him. There was no reason to suspect that Feoli just blurted out to Plaintiff information on a City project. Kleiner had no reason to doubt Feoli. And Plaintiff seeking information regarding this project for converting City records to an electronic database is absolutely consistent with Plaintiff's interest in the City's records as well as Plaintiff's many other document requests. Accordingly, Kleiner did not knowingly or recklessly disclose that Feoli stated that Plaintiff misrepresented herself as a City employee. Kleiner was not even negligent in doing so. Kleiner is therefore not liable for any monetary remedies contained in RSA 91-A, even if she disclosed information which would adversely affect Plaintiff's reputation.

## IV.   PLAINTIFF'S DEFAMATION CLAIM AGAINST KLEINER FAILS BECAUSE: 1) KLEINER IS IMMUNE FROM SUIT UNDER RSA 507-B:4; 2) IT IS SUBSTANTIALLY TRUE THAT PLAINTIFF REPRESENTED HERSELF TO FEOLI AS A CITY EMPLOYEE; 3) KLEINER DID NOT KNOWINGLY, RECKLESSLY OR NEGLIGENTLY REPEAT WHAT FEOLI STATED ABOUT  PLAINTIFF REPRESENTING HERSELF AS A CITY EMPLOYEE

### A.   PLAINTIFF'S DEFAMATION CLAIM AGAINST KLEINER IS BARRED BY RSA 507-B:4.

RSA 507-B:5 grants blanket immunity to municipalities. RSA 507-B:2 allows an

exception to the blanket immunity for the operation of premises and motor vehicles.  Defamation claims are clearly not motor vehicle or premises claims. *See McCarthy v. Manchester Police Dep't*, 168 N.H. 202 (2015), upholding grant of motion to dismiss defamation claim. Immunity applies because Plaintiff's claims do not arise from premises or motor vehicle operation.

Plaintiff's defamation claim against Kleiner is barred by RSA 507-B:4, IV which extends municipal immunity to municipal employees "acting within the scope of his or her office and reasonably believed in the legality of his or her actions." *Id*., see also *Currier*, 621 F.Supp. 3d at 250. Plaintiff alleges that Kleiner was acting within the scope of employment when she advised the Board of Aldermen that Plaintiff had represented to Feoli that she was a City employee. Complaint, ¶ 178. Kleiner was acting legally because she was informing the Board of Plaintiff's actions as reported by a City contractor. Plaintiff exhibited detailed information regarding the City's document conversion project. *Id*. Moreover, Kleiner had a reasonable belief that her statements about Plaintiff were legal as she had a duty to report Plaintiff's actions to the Board.

Kleiner is therefore accorded the same municipal immunity under RSA 507-B as the City.

**B.     KLEINER'S STATEMENT THAT PLAINTIFF REPRESENTED HERSELF TO FEOLI AS A CITY EMPLOYEE IS SUBSTANTIALLY TRUE AND THEREFORE NOT DEFAMATORY.**

Kleiner's statement that Plaintiff represented herself to Feoli as being a City employee was substantially true. The statement is therefore not defamatory under New Hampshire law.

If a statement is "substantially true, it is not actionable for defamation." *Boyle v. Dwyer*, 172 N.H. 548, 554 (2019), citing *Simpkins v. Snow*, 139 N.H. 735, 740 (1995). "In the law of defamation, truth is defined as substantial truth, as it is not necessary that every detail be accurate. In other words, literal truth of a statement is not required so long as the imputation

is substantially true so as to justify the gist or sting of the remark." *Id.* citing *Thomas v.*
*Telegraph Publ'g, Co*, 155 N.H. 314, 335 (2007) (cleaned up).

As Feoli has stated, in his prior affidavit, [Doc 31-2], deposition (37:2-42:7) and email
(Kleiner Decl Ex. A), Plaintiff called him multiple times, made detailed statements that only a
City employee was likely to have the information for, and stated that payment of Feoli's
company's invoice would be expedited. Feoli Affidavit, [Doc 31-2] ¶¶ 9-10.[10] Plaintiff asked
Feoli "[W]hen can we get those [City] files back?" (*id.*, ¶ 10) directly implying that she was a
City employee. Plaintiff "recited facts about a pending Purchase Order" as well as amounts
billed to and paid by the City." *Id.*, ¶ 9. She also asked about Inception's "production schedule"
before indicating she would make sure of expedited payment. *Id.* Feoli did not know about
Plaintiff's legal issues with the City prior to her calls to him. *Id.*, ¶ 8. Plaintiff has admitted much
of the contact and statements to Feoli. Ortolano Dep, 91:15-93:5. She just disputes whether she
misrepresented herself as a City employee.

Plaintiff perhaps gleaned the detail for her dialogue with Feoli from a deep dive into
documents previously produced to her by the City in response to RTK requests. Although Feoli
could have asked questions to ferret out why Plaintiff was calling, few vendors would anticipate
a citizen having this depth of knowledge of the scope of work. All of this strongly implies that
Plaintiff was portraying herself as a City employee. She did not tell Feoli that she was *not* a City
employee. Feoli Dep, 35:14-36:6 ("She didn't say she wasn't." 36:5), and s*ee* Feoli Aff., [Doc
31-2], generally. Feoli learned this from Kleiner. Feoli Dep, 40:2-13, and *see* Kleiner Decl., ¶¶
19-21.

---

[10] Kleiner will not rehash all of the facts noted above but incorporates herein any additional facts
and arguments set forth in §IV, above, which show that Plaintiff represented herself to Feoli as
being a City employee.

Feoli told Kleiner about Plaintiff's information gathering in a phone call. Feoli Aff., [Doc 31-2]. Feoli then authored an email to memorialize his contact with Plaintiff. *Id.*, and *see* Kleiner Decl., Ex. A. He felt this was required based on "a breach of Inception's data security obligations to the City."  Feoli Aff., [Doc 31-2], ¶ 14, and Ex. A. That email sets out Feoli's conclusion that he had "been deceived by … [Plaintiff] who portrayed herself as [a] city employee to me on thre [sic] different occasions." Ex. A. to Feoli Aff. [Doc 31-2]. *See also*, Kleiner Decl., Ex. A.

It is substantially true that Plaintiff portrayed herself as a City employee by calling Feoli, not identifying herself as a non-employee, discussing extremely detailed information about Inception's project and suggesting she could expedite payment of the balance of Inception's bill. Her conduct was deceptive, at minimum. Similarly, Feoli's reporting would appear to be truthful to Kleiner. Plaintiff's statements made her appear to be a City employee. To those who knew she wasn't a City employee it was plausible that she was passing herself off as a City employee. Accordingly, Kleiner's statements were not defamatory since they were substantially true.

C. **PLAINTIFF WAS A LIMITED PURPOSE PUBLIC FIGURE AND KLEINER IS NOT LIABLE FOR DEFAMATION BECAUSE SHE DID NOT ACT WITH MALICE.**

1. **Plaintiff Is A Limited Purpose Public Figure For The Issues Relating To The City's Public Records.**

Plaintiff was a limited purpose public figure for issues relating to the City's public records. These issues about which Plaintiff talked to Feoli included the City's document storage, retention and production. The issues also included its contract with Inception to convert records to an electronic database. The Inception contract/project was tied to Plaintiff's ongoing RTK requests, as indicated by her various efforts to obtain documents and her deep interest in

Inception's project. *See, e.g.* Complaint, ¶ 168 ("[F]or more than three years, the City of Nashua

has caused its governmental proceedings and **records to fail to be open, accessible,**

**accountable, or responsive**…." Emphasis added), ¶ 182 (Plaintiff called Feoli to inquire about

the Inception project regarding Assessing Department records) and Feoli Aff., [Doc 31-2], ¶¶ 9-

10.

      Plaintiff's status as a limited purpose public figure determines the standard to be applied

in a defamation case such as this one.

> The U.S. Supreme Court "has created two subclassifications of public figures: (1)
> persons who are public figures for all purposes; and (2) so-called limited-purpose
> public figures who are public figures for particular public controversies." *Thomas*
> [*v. Telegraph Publ'g, Co., supra*], 155 N.H. at 340 (citing *Gertz* [*v. Robert Welch,
> Inc.*[11]] 418 U.S. at 351). "As to the second group, individuals may become limited-
> purpose public figures when they 'have thrust themselves to the forefront of
> particular public controversies in order to influence the resolution of the issues
> involved.'" *Id*. at 341 (quoting *Gertz*, 418 U.S. at 345). "Courts make the limited-
> purpose public figure determination 'by looking to the nature and extent of an
> individual's participation in the particular controversy giving rise to the
> defamation.'" *Id*. (quoting *Gertz*, 418 U.S. at 352). Determining whether an
> individual is a public or private figure is a question of law. *Id*.

*Currier*, 621 F.Supp. 3d at 252.

      Here, as in *Currier*, "the undisputed facts show that the [Plaintiff] 'thrust [herself] to the

forefront of particular public controversies in order to influence the resolution of the issues

involved….'" *Id*., 621 F. Supp. 3d at 252, quoting *Thomas*, 155 N.H. at 341. Like the Curriers,

Ortolano spoke at multiple town/city meetings (Complaint, ¶ 25), has been publicly critical of the

City's Assessing Department, *id*., made public statements at "coffee with the Mayor" meetings,

*id*. ¶ 26, publicly reported the valuation of the Mayor's residence at a Board meeting in

November 2018, *id*., ¶31, sought "public documents and other information that Ortolano could

---

[11] 418 U.S. 323 (1974).

use in what had become a **public crusade to pressure Nashua officials to clean up the Assessing Department**, *id.*, ¶ 33, emphasis added. Plaintiff's public thrust continued over a course of years. *See* Complaint, ¶ 97 (in 2020, "Ortolano started to become more publicly vocal;" in early February 2020 "she launched a website entitled 'good-gov.org6' on which she posted blogs" about the City government, and as "Ortolano increased her public criticisms about Nashua's government….); *id.*, ¶ 98 (Ortolano started assisting others with assessment issues because of her experience "and the public profile she had achieved through social media….); *id.* ¶ 99 (in response "to Ortolano's growing public profile…."). Plaintiff has also sought and received ample media coverage. *See, e.g.*, "Laurie Ortolano, Should you open your doors to revaluation?" Union Leader, Op-Ed, May 25, 2020[12] and Property owner alleges wrongdoing by city, Nashua Telegraph, February 20, 2019.[13]

There can be no doubt that Plaintiff is a limited purpose public figure on issues relating to her dealings with the City and issues or documents relating to property assessment. Although she couches much of her Complaint as trying to reform the Assessing Department or the City's procedures, that is not the salient point for the defamation analysis. The point is that she thrust herself into the limelight on these issues. Plaintiff's very public disagreement with the City dates back to 2014, after she received an increased assessment on her property. Ortolano Dep, 19-20. As required to elevate the standard of liability, her "public controversy existed prior to the alleged defamation" *Mckee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017), citing *Gertz*, 418 U.S. at

---

[12] https://www.unionleader.com/opinion/op-eds/laurie-ortolano-should-you-open-your-doors-to-revaluation/article_ee856739-8938-528b-80ca-df84bde92f47.html
[13] https://www.nashuatelegraph.com/news/2019/02/20/property-owner-alleges-wrongdoing-by-city/. Other articles abound.

351-352 and *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 590-591 (1ˢᵗ Cir. 1980). As a limited public figure, she must show malice for liability to attach.

### 2. Kleiner's Statement Repeating That Feoli Had Told Her That Plaintiff Represented Herself As A City Employee Does Not Show Malice.

As a limited purpose public figure, Plaintiff must show the same level of culpability, malice, as all public figures for liability to pertain. *Pendleton v. City of Haverhill*, 156 F.3d 57, 70 (1ˢᵗ Cir. 1998), *see* also *Currier*, 621 F.Supp. 3d at 253. Malice, for liability in defamation cases "requires proof that the speaker published the statement with knowledge of its falsity or with reckless disregard as to whether it was false." *Pendleton*, 156 F.3d at 65 and *see Currier*, 621 F.Supp at 253, citations omitted. Accordingly, Plaintiff must show either that Kleiner knew she was making a false statement or made a statement with reckless disregard to its truth.[14]

Plaintiff cannot show that Kleiner acted with knowledge that her statement about Plaintiff's misrepresentation was false. Feoli told Kleiner that Plaintiff had misrepresented herself and Kleiner had no reason to disbelieve it. *See* Feoli Aff. [Doc 31-2], generally and Ex. A to same; *see* also Feoli Dep, 40:2-13. He confirmed this in writing. *Id.* ("It has come to my attention that I have been deceived by … Laura Ortolano, who portrayed herself as a city employee to me on thre [sic] different occasions"). Even if Plaintiff did not misrepresent herself to Feoli as a City employee, Kleiner did not know that. Kleiner Dep, 93:18-96:21, Kleiner Decl., ¶ 21. There is no evidence to show otherwise. The issue isn't whether Plaintiff was or wasn't a City employee. The issue is whether she misrepresented herself as one.

---

[14] Kleiner did not make a false statement about Plaintiff at all, as the evidence points to Plaintiff misrepresenting herself to Feoli as being a City employee, even if by omission. *See* § III, B, *supra*.

Similarly, Plaintiff cannot show that Kleiner acted with reckless disregard as to the truth of what Feoli told her. Proving reckless disregard is no simple task. "[P]roof of that element must be established by the quantum of 'convincing clarity.'" *Howard v. Antilla*, 294 F.3d 244, 249 (1st Cir. 2002), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-286 (1964).[15] As the New Hampshire Supreme Court has noted, the United States Supreme Court has held "that where malice is said to consist of reckless disregard there must be proof of a 'high degree of awareness of . . . probable falsity . . . .'" *Nash v. Keene Publishing Corp.*, 127 N.H. 214, 223, (1985), quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The United States Supreme Court later described this same requirement by saying that "'there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Nash*, 127 N.H. at 223, quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), cleaned up.

Plaintiff's only allegation on Kleiner's alleged purposeful or reckless action constituting malice is that the City and/or Kleiner chose "not to inquire why Feoli might think that Ortolano was a city employee…." Complaint, ¶186. But Kleiner had in hand Feoli's statements as to why he believed Plaintiff had misrepresented herself as a City employee. Kleiner Dep, 93:18-96:21, Feoli related that Plaintiff: asked him for a project update while giving him the project ("PO") number, talked to him about invoice status, asked about when documents would be returned to the City and stated that she would look to expedite payment on outstanding invoices – and this was just in the first phone call. Feoli Aff. [Doc 31-2], and Ex. A thereto and *see* Feoli Dep, 56:7-

---

[15] This "convincing clarity" standard applies to intent, not merely reckless disregard. *See Howard, supra*, quoting *New York Times*.

17. Feoli related similar issues in the second and third phone calls. *Id*. In short, Kleiner knew "why Feoli might [indeed, did] think that Ortolano was a city employee…."

Kleiner was not required to investigate Feoli's statements.  "[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz,* 418 U.S. at 332. Failure to investigate does not satisfy the high degree of awareness of probable falsity needed for reckless disregard. *Nash v. Keene Publishing Corp.*, 127 N.H. 214, 223 (1985). *See also Nicholson v. Promotors on Listings*, 159 F.R.D. 343, 355, (D.Mass. 1994), citing *Gertz, supra* and *St. Amant, supra*.[16] Even failing to check the accuracy of information with sources within a defendant's own files is, alone, not enough to demonstrate actual malice. *Nicholson*, 159 F.R.D. at 355, citing *New York Times* (v. Sullivan), 376 U.S. at 287. Accord, *Hi-Tech Pharms., Inc. v. Cohen*, 277 F.Supp. 236, 248 (D.Mass. 2016) (serious doubts about information required to trigger duty to investigate or liability).

Plaintiff alleges nothing other than a failure to investigate. She complained of nothing else to pole vault her over the high hurdle of malice. Accordingly, her defamation claim should be dismissed.

### 3.  **Plaintiff Cannot Muster Proof Of Ordinary Negligence For Defamation.**

Plaintiff could not prove even ordinary negligence if that standard applied to her defamation claim. Although the higher actual malice standard is what applies, her defamation claim fails under any standard.

New Hampshire law requires proof of at least negligence in a defamation claim. "Under New Hampshire law, a plaintiff proves defamation by showing that defendants failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact

---

[16] *Nash* also cites the same leading U.S. Supreme Court cases for several propositions on point here.

28

about the plaintiff to a third party. *Currier*, 621 F.Supp. 3d at 248, quoting *Pierson v. Hubbard*, 147 N.H. 760, 763 (2002), internal quotation marks omitted. In *Currier*, the Court did not reach the question of negligent defamation, finding that the Curriers were limited purpose public figures. 621 F.Supp. 3d at 252.[17]

Plaintiff complains that both Feoli and Kleiner "knew or should have known" that Plaintiff was not a City employee. Complaint, ¶ 185. Kleiner did know – but that is not the issue. The issue is whether Kleiner had any reason to doubt that Ortolano had misrepresented herself to Feoli. No facts show that Kleiner had reason to doubt Feoli and Plaintiff states no facts to show that Kleiner was negligent.

As noted, Plaintiff raises only the issue of Kleiner not investigating Feoli's statement that Plaintiff had misrepresented herself. *Id*., ¶ 186. But Kleiner had no reason to doubt Feoli and in fact did not doubt him. Kleiner Decl., ¶ 21. Feoli set out facts in both a phone call and then an email. Feoli Aff., [Doc 31-2], ¶¶ 9-10, Ex. A to Aff, and see Feoli Dep, 56:3-23. There was nothing in Feoli's statements to make them suspicious. Feoli's putting his statements in writing made them all the more believable. Given Plaintiff's keen interest in City affairs and battles with the City, it seems reasonable and not outlandish, that she would portray herself as a City employee to gain advantage. Further, Feoli was an independent contractor, with no known dispute with Plaintiff.

There is no evidence to show that Kleiner acted unreasonably. She had no reason to assume that Feoli was lying in telling her, and then writing, that Plaintiff misrepresented herself as a City employee. "The test for negligence is whether the reasonably prudent person under the circumstances should recognize and foresee an unreasonable risk or likelihood of harm to others"

---

[17] Kleiner is confident that the Court will reach the same conclusion here, but analyzes the absence of negligence for completeness.

*Burns v. Bradley*, 120 N.H. 542, 545 (1980). A reasonably prudent person would not have seen any facts as showing an unreasonable risk. There are no facts to show that Feoli had any animus or other reason to lie. There was no reason for Kleiner to think otherwise. Should the Court get this far, a claim for defamation, to the extent based on negligence, should be dismissed.

**CONCLUSION**

For reasons set forth above, Kimberly Kleiner requests the Court grant summary judgment on all counts.

Kimberly Kleiner
By her attorneys,
FRIEDMAN FEENEY, PLLC,

Date:  May 30, 2024            By: */s/ Dona Feeney*_____
Dona Feeney, NH Bar #12854
95 North State St., Ste #3
Concord, NH 03301
603-783-5105
dfeeney@friedmanfeeney.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served through the court's electronic filing system on to all counsel or parties of record.

Date:  May 30, 2024            By:    */s/ Dona Feeney*_____
Dona Feeney