UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>The City of Nashua, *et al*., )<br>Defendants. )<br>_____ ) | Civil Action No. 1:22-cv-00326-LM |

# DECLARATION OF DONA FEENEY, ESQ.

I, Dona Feeney, Esq., make this Declaration, under the authority of 28 U.S.C. 1746, and state as follows:

1. I am counsel for the Defendant Kimberly Kleiner in the within matter.

2. I make this Declaration based upon my own personal knowledge or based upon review of documents relating to this case and in support of the Kimberly Kleiner's Motion for Summary Judgment.

3. On May 23, 2024, an order was entered in the matter of *Ortolano v. City of Nashua*, 2021-cv-00354 (Hillsborough County Superior Court – Southern Dist.), attached hereto as Exhibit A.

4. The documents attached hereto are true and accurate copies of documents relating to this matter:

    - Excerpts of the Deposition of Raymond Feoli, taken 4/10/24
    - Excerpts of the Deposition of Kimberly Kleiner, taken 5/9/24
    - Excerpts of the Deposition of Plaintiff, Laurie Ortolano, taken 5/8/24

5. The January 23, 2020 letter from the Nashua Police Department sent to Attorney Richard Lehman, counsel for Plaintiff, was marked as Ex. 8 to the Deposition of Kimberly Kleiner and is attached hereto as Exhibit B.

    I declare under the pains and penalties of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: May 29, 2024          By: /s/ Dona Feeney
                                               Dona Feeney

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.
SOUTHERN DISTRICT

SUPERIOR COURT
No. 2021-CV-00354

Laurie A. Ortolano

v.

City of Nashua

### ORDER ON PLAINTIFF'S MOTION TO CORRECT THE RECORD FOR THE MAY [SIC] 25, 2024 STATUS CONFERENCE AND REQUEST TO REMOVE ATTORNEY BOLTON FROM ALL ORTOLANO CASES

The plaintiff, Laurie Ortolano, has brought this Right-to-Know action against the defendant, the City of Nashua (the "City"). The Court held a status conference in this matter on March 25, 2024. Ms. Ortolano now moves to "correct the record" from that hearing and further moves to have the City's lawyer, Attorney Steven Bolton, removed from this case and any other cases involving her. (See Court Doc. 55.) After the City filed an objection, (see Court Doc. 61), Ms. Ortolano filed a response, (see Court Doc. 62), followed by a motion to amend her response, (see Court Doc. 63). Ms. Ortolano also filed an exhibit with her motion to amend. (See Court Doc. 64.) For the reasons stated in this order, Ms. Ortolano's motion will be stricken by the Court.

#### Discussion

Ms. Ortolano initiated this case in 2021, seeking e-mails and other records from the City's assessing department pursuant to RSA chapter 91-A. Following a bench trial, the Court ruled that the City had failed to conduct an adequate search for the requested records, including failing to search the City's back-up computer tapes. The Court thus ordered the City to conduct a search of its tapes and to produce any responsive records. The City then unsuccessfully appealed that decision. See Ortolano v. City of

Nashua, 176 N.H. 175 (2023). After this matter was remanded from the supreme court, Ms. Ortolano decided that she no longer wanted any further relief in the case, so the matter was closed. However, on February 21, 2024, she filed a motion to reopen this case. (See Court Doc. 43.) The gist of her position was that this Court and the supreme court ruled in her favor, and that the City was not properly producing the records to which she was entitled pursuant to the courts' orders. The Court granted the motion to reopen the case and scheduled a status conference for March 25, 2024.

During the status conference, the Court sua sponte raised the issue of mediation concerning the issues raised in Ms. Ortolano's post-remand filings. After encouraging an expedited mediation session, the Court asked the parties directly as to whether they would agree to mediate this on-going Right-to-Know dispute. In response to this straightforward and routine inquiry, Ms. Ortolano and Attorney Bolton provided what can only be characterized as non-responsive rants concerning their opponents. These responses exemplified the unending discord between the City and Ms. Ortolano, and were par for the course in their distrustful, bitter, and unprofessional relationship. As this Court has observed, "[t]he purpose of an expedited mediation is to encourage communication tempered with both collaboration and compromise in an attempt to resolve this Right to Know litigation in a prompt manner." (Apr. 18, 2024 Court Order.) Needless to say, the parties' respective diatribes and confrontational remarks in response to the Court's simple inquiry frustrated this purpose, and were certainly not appreciated by the Court, nor did such responses advance the ball in this case.

Following the status conference, Ms. Ortolano filed the instant motion, in which she seeks to "correct the record" from the status conference. At its core, the motion to

correct the record and amended response filed by Ms. Ortolano are expansive replies to the statements made by Attorney Bolton at the status conference. With one narrow exception found in Paragraph 4, much of Ms. Ortolano's motion, as well as her amended response, are rooted in factual disputes concerning a variety of circumstances that occurred outside of the Court's presence and have little to no relevance to the limited issues presented at the status conference. The Court declines Ms. Ortolano's invitation to "correct the record" to include her take on this series of events given their lack of relevance. Rather, in the Court's view, the record is already sufficiently littered with enough information about the parties' acrimonious dealings. As such, there is no need for the record to be "corrected" to include additional irrelevant information.

Ordinarily, the Court would simply deny the motion to correct the record for the reasons stated above. Here, however, the Court is extremely troubled by some of the assertions in the motion and finds that these remarks warrant special attention. Of particular note, Ms. Ortolano's motion contains the following language:

> At a [June 23, 2023 hearing in case No. 226-2022-CV-00309] Ortolano stated [to the Court], "I fucking suck at this". <u>The Court quickly admonished Ortolano for breaking the rules of decorum.</u> Yet, when five Attorneys would not respond to Ortolano's efforts to coordinate the court-ordered mediation, the Court remained silent on the conduct. Instead, the Court backed the Attorney's refusal to communicate, which is why we are in this entire mess. <u>The Court is not impartial. The Court is biased and favors privileged, high-powered attorneys, where testicles and penis' are the gender of justice.</u>

(Court Doc. 55 at 1–2, n.1 (emphases added).) The emphasized comments above from Ms. Ortolano's motion to correct record are part of a disturbing trend in her recent pleading practice. More importantly, they are not at all accurate.

First, Ms. Ortolano's perception of the June 23, 2023 hearing strains all credulity. Despite Ms. Ortolano's use of profane language during that hearing, the Court did not

"quickly admonish" her from the bench as she claims. Instead, the record reflects that the Court had a patient and calm reaction to Ms. Ortolano's self-assessment of her legal capabilities. The Court gently reminded Ms. Ortolano of her effective and respectful presentation while being self-represented in multiple other cases and simply instructed her to maintain the respect and dignity associated with court proceedings. Indeed, Ms. Ortolano conveniently omits the fact that she apologized to the Court following that hearing. Specifically, she admitted that she "disrespected and offended the Court out of frustration that center on her own deficiencies." Ortolano v. City of Nashua, No. 226-2022-CV-00309, Court Doc. 95, at 1 (June 23, 2023). Ms. Ortolano also acknowledged in that filing that she "failed to conducted [sic] herself with the grace and composure expected of herself and the Court." Id. The Court accepted Ms. Ortolano's apology in an order dated July 7, 2023. Thus, contrary to Ms. Ortolano's representation of the tenor and substance of the Court's reaction in this footnote, the record reflects that the Court was patient and forgiving with Ms. Ortolano during a moment of frustration. This misrepresentation reflects quite poorly on the quality of her motion practice.

Second, and more troubling, the language Ms. Ortolano used regarding the alleged partiality and gender bias of the Court is blatantly false, offensive, and defamatory. Assertions of gender bias that are premised on references to male genitalia are childish, irrational, ignorant, disrespectful, and vexatious. These groundless, conspiratorial character assassinations of the Court have no place in this proceeding. Unfortunately, they constitute the immaterial ramblings of a litigant who loses all sense of reality when she hides behind the keys of her computer—what is commonly referred to as a "keyboard warrior." This footnote represents a malicious

accusation aimed at the Court without any legal or factual basis. It is truly unfortunate to watch Ms. Ortolano's pleading practice enter such a downward spiral. It is sad that the current state of her advocacy rests on a foundation of hyperbolic dishonesty, divorced from any sense of reality, which borders on hate.[1]

To be clear, the Court has always been impartial and has tried its best to foster an environment of civility, humility, and integrity in Courtroom 3. Ms. Ortolano's repeated allegations that the Court has some type of alliance with the City or is otherwise in the City's "pocket" is at best perplexing and at worst delusional. Indeed, in making these accusations, Ms. Ortolano seemingly ignores (or conveniently forgets) the fact that the Court ruled in her favor on the merits *in this very case* (as it has in many other cases). To be fair, her absent-mindedness could be because she has filed so many actions that she has lost track of the ones that she has won. Or, perhaps it could be because her object is never about actually winning or even gaining access to public records—it is instead about the thrill of confronting her perceived enemies in forums that she believes have no choice but to entertain her attacks.[2]

As to the Court's ruling on this specific motion, the Court finds that the motion to correct the record directly violates Superior Court Rule 7(e). Specifically, there were no plausible legal or factual grounds to support her untruthful allegations of bias and unfairness on the Court's part. In addition, Ms. Ortolano's use of coarse language

---

[1] It is somewhat ironic that Ms. Ortolano accuses the Court of being discriminatory, when it is in fact Ms. Ortolano who has made repeated attacks on the age of the Court.

[2] This case is a prime example. As part of its merits order, the Court indicated that it would require the City to undergo Right-to-Know training to help minimize or eliminate future Right-to-Know violations. However, on remand, Ms. Ortolano decided that she no longer wanted such relief and moved to withdraw that relief. One could therefore easily draw an inference that Ms. Ortolano enjoys fighting with the City and its employees more than ensuring compliance with the Right-to-Know law.

directed at the Court is highly inappropriate. Therefore, the Court finds that the proper remedy is to strike the motion to correct the record.[3] In addition, the quoted passage above is a prime example of a vexatious, frivolous, and unreasonable motion which justifies the imposition of an award of attorney's fees pursuant Superior Court Rule 1(c). Accordingly, the Court will require Ms. Ortolano to pay the City's attorney's fees it incurred responding to this utterly ridiculous motion.[4] Going forward, Ms. Ortolano's pleading practice must change immediately. Any further motions in this case or any other case that are filed with similar types of baseless accusations and/or crude language will likewise be summarily stricken from the record without a ruling. Simply put, if Ms. Ortolano wants the Court to consider her arguments, she must make them in a respectful manner.

By now, it should be abundantly clear that this Court has run out of patience with Ms. Ortolano's repeated hostility and personal attacks towards witnesses, court staff, opposing parties, attorneys, and the Court itself throughout the course of her self-represented cases. As suggested above, Ms. Ortolano seems to believe that this Court has no choice but to endure this behavior. However, on that point, she is wrong. If this type of behavior continues, Ms. Ortolano is on notice that the Court will exercise any and all authority it has under the Superior Court Rules, the case law, any applicable statutes, and its contempt powers to bring such a practice to a swift end. This could result in a range of consequences, including monetary sanctions, the initiation of

---

[3] In addition, the Court notes that Ms. Ortolano continued to promulgate her false narrative about the Court in the amended response. (See Court Doc. 63). Again, this personal tirade did not address any of the procedural determinations made at the status conference.

[4] The City shall file an affidavit of attorney's fees related to this motion within ten days of the clerk's notice of decision.

criminal contempt proceedings, and even incarceration.[5] Ms. Ortolano is also warned that the Court is seriously considering labeling her a vexatious litigant, which will limit her ability to file any further actions without an attorney in the future. Enough is enough. Ms. Ortolano can and must do better.

    So ordered.

Date: May 22, 2024

Hon. Charles S. Temple,
Presiding Justice

Clerk's Notice of Decision
Document Sent to Parties
on  05/23/2024

---

[5] "The elements of criminal contempt are threefold: (1) that a valid court order covering the defendant exists; (2) that the defendant had notice of that order; and (3) that the defendant intentionally committed acts in violation of that order." State v. Stewart, 142 N.H. 610, 611 (1998). In light of those elements, the Court wants to ensure that Ms. Ortolano has clear notice of a court order that covers her. Specifically, the Court ORDERS Ms. Ortolano to address the Court in a respectful manner at all times, to refrain from the use of profanity in her filings and during hearings, to cease making baseless accusations of corruption, and to otherwise act in a civilized and respectful manner towards witnesses, opposing counsel, and court staff. The requirements of this order shall apply in this case and any other case filed in the southern judicial district of Hillsborough County Superior Court, and shall apply regardless of the specific superior court justice presiding over the case. Ms. Ortolano is explicitly put on notice that any violations of this order may serve as the basis for a civil or criminal contempt proceeding.



Kim Kleiner Exhibit

# NASHUA POLICE DEPARTMENT



Chief of Police Michael Carignan
Main Phone: (603) 594-3500
Website: www.nashuapd.com

28 Officer James Roche Drive
Mailing Address: PO Box 785
Nashua, NH 03061-0785

January 23, 2020

To: Attorney Richard J. Lehmann
Lehmann Law Office, PLLC
3 North Spring Street, Suite 200
Concord, NH 03301

SUBJECT: RSA 91-A Request – Investigation of Laurie Ortolano

In response to your request received by the Records Division on January 16, 2020, please find the enclosed documentation:

- Report Narrative regarding the response to Laurie Ortolano's residence on September 22, 2019.
- A copy of the Call for Service – 19-63717
- Report Narrative regarding the contact with Laurie Ortolano at the Nashua Police Department Lobby on September 22, 2019.
- A copy of the Call for Service – 19-63733
- Report Narrative regarding the email sent by Laurie Ortolano on September 23, 2019 @ 0708 hours.
- Report Narrative regarding the email sent by Laurie Ortolano on September 23, 2019 @ 1047 hours.

Dates of birth, social security numbers and personal phone numbers have been redacted.

Regarding the requested investigation (19-46336-OF), the Nashua Police Department Records Division will need to properly review and make redactions. The redactions will then be reviewed by the City's legal counsel. Given the time necessary for redaction and legal review and other pending large document requests, this process should be completed no later than March 31, 2020.

In the event that you have any questions, please contact me at (603) 589-1653.

Sincerely,

David P. Lavoie
Records Manager

Cc: Deputy Corporation Counsel Celia K. Leonard

---

CALEA Nationally Accredited Law Enforcement Agency

**Nashua Police Department**

2019-09-22 1634HRS ATTEMPT CONTACT W/ LAURIE ORTOLANO                    Page: 1
Ref: 19-46336-OF

On September 22, 2019 at approximately 1634 hours Sergeant Ditullio and I responded to Laurie Ortolano's (DOB: ) residence of 41 Berkley Street in an attempt to make contact with Ortolano. I was responding to this address in an attempt to provide Ortolano with a warning that members of the Nashua Assessing Department did not want to have any contact with her outside of their official duties while working within the assessing department.

This stemmed from a previous conversation I had with Lynn Cameron (DOB: ) and Louise Brown (DOB: ) about Cameron being confronted outside of the Assessing Office by Laurie Ortolano (DOB: ). Since my previous conversation with Cameron and Brown everyone within the Nashua Assessing Department, except Cheryl Walley (DOB: ) had decided that they wanted me to inform Ortolano that they did not want to have any contact with her outside of the Assessing Department Office.

Upon our arrival I was unable to make contact with Ortolano. Ortolano's husband, Michael Ortolano (DOB: ) advised that she had just stepped out but he stated that he would have her contact me when she returned. Mr. Ortolano was thanked for his time and I ended my contact with him.

A call number, 19-63717 was generated for this attempt contact and was later added to this case file for case inclusion.

**DETECTIVE LOMBARDI D16**

**Nashua Police Department**
2019-09-22 1643HRS WARN LAURIE ORTOLANO                               Page: 1
Ref: 19-46336-OF

On September 22, 2019 at approximately 1643 hours I received a voicemail from Laurie Ortolano (DOB:       ) stating that she had received the message I had left with her husband. At approximately the same time I received an email from Ortolano telling me that she had just left a message for me. A copy of this email was later added to this case file for case inclusion.

At approximately 1651 hours I called Ortolano and informed her that I was looking to speak with her in person for a few minutes. Ortolano advised that she was near the Police Department and would stop by in a few minutes. I thanked Ortolano and ended my contact with her.

At approximately 1655 hours Sergeant Hudon and I made contact with Ortolano in the front lobby of the Nashua Police Department. Upon making contact with Ortolano I informed her that I had received a complaint from one of the employees in the Nashua Assessing Department about Ortolano confronting them while they walked to their vehicle from City Hall.

Ortolano acknowledged this incident had occurred but explained that she had just happened to see Lynn Cameron (DOB:       ) and figured she would just ask her a quick question. Ortolano stated that she had not been waiting for Cameron but rather she had just happened to see her. I explained that this employee had not alleged any crimes had occurred during this time but based on what had been going on recently this incident made them very uncomfortable and was concerning to them.

I informed Ortolano as a result of this incident this employee notified her co-workers, who in turn notified me and their supervisor, Kimberly Kleiner (DOB:       ). I informed Ortolano that after speaking with Kleiner and members of the assessing department they decided that they wanted me to inform Ortolano that all of the current members of the Nashua Assessing Department did not want to have any contact with Ortolano anywhere other than within the Nashua Assessing Department for matters involving Assessing. I informed Ortolano that people that did not wish to have any contact with her outside of their office were Greg Turgiss (DOB:       ), Gary Turgiss (DOB:       ), Douglas Dame (D     ), Michael Mandile (DOB:       ), Louis Brown (DOB:       ), Lynn Cameron, Amanda Mazerolle (DOB:       ), and Kimberly Kleiner.

Upon being told this Ortolano asked me if what I was doing was legal. I informed Ortolano that me informing her that specific people did not want to have any contact with her was legal and was also something that is commonly done by the Nashua Police Department in an attempt to proactively prevent crimes from occurring. I explained to Ortolano now that she had been warned that these specific people did not want to have any contact with her outside of the assessing department there was the potential that if she did have contact with the previously listed individuals that she could face criminal charges depending on the circumstances of this contact. Ortolano said she understood and expressed to me that she did not foresee their being any further issues with this.

Ortolano then began reiterating several of the issues she had previously reported to the Nashua Police Department and multiple other agencies involving her concerns with the Nashua Assessing Department. This transitioned into Ortolano expressing her concerns with the Nashua Police Department's investigation into this incident and her feeling that the Nashua Police Department was not an impartial party. Ortolano then began making accusations that the Nashua Police Department would attempt to cover up any wrong doing by the Nashua Assessing Department or City Hall. Both I and Sergeant Hudon attempted to explain to Ortolano that the Nashua Police Department does not answer to Nashua City Hall or the Nashua Assessing Department. We explained that the Nashua Police Department answers to a board of Police Commissioners that are appointed by the Governor of the State of New Hampshire. Ortolano did not appear satisfied with this answer and informed me that she felt another agency such as the New Hampshire Attorney General's Office should investigate her concerns. I informed Ortolano that I would not have any issue with that however she had already made the Attorney General's office aware of her concerns and it was their decision to make whether or not they became involved in this investigation not the Nashua Police Department's decision.

During my contact with Ortolano she also inquired if she could have copies of the reports from the Nashua Police De    ment's investigation into the Nashua Assessing Department. I informed Ortolano that the reports would be ava..able through our records department once the investigation was complete and the reports are approved. I further informed Ortolano that I did not have a timeframe to provide her with as to when the investigation would be complete.