UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano | : |
| v. | :    Civil Action No. 22-cv-00326-LM |
| The City of Nashua, et al. | : |

## DEFENDANT MICHAEL CARIGNAN'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

  By Verified Complaint dated August 23, 2022, Plaintiff initiated the instant matter against the City of Nashua, its Mayor, and several of its current and former employees, including Michael Carignan, then the Chief of the Nashua Police Department. Although the Complaint originally included ten counts, including due process, state constitutional, and emotional distress claims, after this Court ruled on the various Defendants' Motions for Judgment on the Pleadings [Doc. Nos. 58, 60 & 61], Plaintiff reduced her claims to just four. *See* Stipulation of Dismissal [Doc. No. 63]. Of these, only two relate to this Defendant:

  Count I: Claim pursuant to 42 U.S.C. § 1983, asserting that Defendants violated Plaintiff's First Amendment rights by "restricting, regulating, suppressing, or chilling" her speech and/or retaliating against her on account of her speech; and

  Count II: Claim pursuant to 42 U.S.C. § 1983, asserting that Defendants violated Plaintiff's First Amendment right to petition by taking adverse action against her on the basis of her exercise of that right.

As set forth in more detail below, the undisputed facts establish that Plaintiff cannot succeed on either claim as to this Defendant.

**STATEMENT OF FACTS**

*Background*

Plaintiff Laurie Ortolano moved to Nashua at the end of 2013. Deposition of Laurie Ortolano ("Pl's Dep."), relevant portions of which are attached hereto as Exhibit 1, at p.16. Shortly after, she claims, her property assessment increased dramatically, causing a corresponding increase in her taxes. *Id.* p. 19. *See also* Verified Complaint (hereafter "Comp.") ¶15. Plaintiff sought a reevaluation, which lowered the assessment slightly but not to her satisfaction. Comp. ¶16. In September 2018 Plaintiff began attending monthly "Coffee with the Mayor" events and articulated her belief that the City-wide 2018 reevaluation was done improperly. Comp. ¶26. In October 2018 she and her husband wrote a letter to the Board of Aldermen (hereafter "BOA") criticizing the Assessing Department. Comp. ¶25. They then attended a BOA meeting where they expressed their concerns about the Department. *Id.* In fact, beginning in September 2018, Plaintiff became a regular participant in meetings of the BOA and the Board of Assessors, speaking at six such meetings during the last four months of that year and twenty more in the first six months of 2019. *See* Affidavit of Megan Caron, attached hereto as Exhibit 2, at ¶4 and Ex. A thereto.

During this time, Plaintiff came to believe that one of the City's assessors, Greg Turgiss, was not performing his job duties. Comp. ¶60; Pl. Dep. p. 34. She hired a private investigator, William Freyler, to follow Turgiss around the City during his workday, including during his lunch. Comp. ¶60; Pl's Dep. pp. 34-36. Freyler ultimately produced a report for Plaintiff, which she shared with the City. Comp. ¶60; Pl. Dep. p. 37; Caron Aff. Ex. B.

Plaintiff states that based on Freyler's report the City hired Attorney Mark Broth to investigate the assessor. Comp. ¶60. Plaintiff, however, became concerned that officials – and Director of Administrative Services Kim Kleiner in particular - were interfering with Broth's

2

investigation. Comp. ¶¶61-62. In particular, she had heard "second hand" that Kleiner had told staff about an incident that one member of the staff, Cheryl Walley, construed as a warning and admonition not to fully cooperate with Broth's investigation. Comp. ¶61. As a result, she and another resident went to the Nashua police to request that the police conduct a criminal investigation into both Turgiss and Kleiner. Comp. ¶62.

*Investigation*

Plaintiff initially met with then-Chief Michael Carignan. Deposition of Michael Carignan ("Carignan Dep."), relevant portions of which are attached hereto as Exhibit 3, pp. 16-17. The Chief assigned the investigation to the detective bureau. Carignan Dep. p. 17. In addition, Chief Carignan and Captain Jon Lehto met with the Mayor and Kleiner to inform the Mayor that a criminal complaint had been made against employees at City Hall and that the police would be conducting an investigation into the allegations. Carignan Dep. pp. 32-33. Meeting with those in charge of a business or institution where an investigation was to occur was not unusual. Affidavit of Michael Carignan ("Carignan Aff."), attached hereto as Exhibit 4, at ¶4. The Mayor and Kleiner stated that they understood and assured the police they would receive cooperation from the City. Carignan Dep. pp. 38-39.

The department assigned the investigation to Detective Frank Lombardi and Sgt. Robert MacLeod, with Lombardi serving as the lead detective. Carignan Dep. pp. 40-41; *see also* Affidavit of Frank Lombardi [Doc No. 84-7] ¶3. Although the Chief was kept up to date on the investigation he played no role in it. Carignan Aff. ¶5. Ultimately no charges were filed against either Turgiss or Kleiner. Lombardi Aff. ¶13.

*2021 Trespass Charges*

Over a year later, Plaintiff was arrested for trespass based on her actions on January 22,

3

2021.  According to Plaintiff, on that date she went to the Legal Department at City Hall, ostensibly to obtain date stamps on abatement appeals she was filing.  Complaint ¶¶107-08; Pl's Affidavit in Opposition to Bolton/Leonard Motion for Summary Judgment [Doc. No. 75-2] at p. 5.  Plaintiff knew – indeed, she acknowledged in an email to Deputy City Attorney Celia Leonard in 2019 - that the Legal Department was not the proper place for that purpose, writing:  "you made it very clear that legal is only there to address specific documents requests and I should not bring any other information [or] concerns regard the City to the attention the legal office."  Affidavit of Celia Leonard in Support of Bolton/Leonard Motion for Summary Judgment [Doc. No. 71-13] p.1 ¶3 and Ex. B-1 thereto.  She was told by Attorney Jesse Neuman – who she knew to be an employee of the City – to leave.  *See* Complaint ¶109; Pl. Dep. p. 64.  Indeed, Plaintiff admits that Neumann repeatedly told he that she was trespassing and needed to leave.  *See* Pl's Affidavit in Opposition to Bolton/Leonard Motion for Summary Judgment [Doc. No. 75-2] at p.7 ¶12 (Statement of Fact and Response).  Instead, she "sat down in the lobby area on the floor."  Complaint ¶109; Pl's Affidavit in Opposition to Bolton/Leonard Motion for Summary Judgment [Doc. No. 75-2] at p.7 ¶13.  She remained there until another attorney – Defendant Leonard – approached her.  Complaint ¶110.  Indeed, Plaintiff continued to refuse to leave the offices even after Attorney Leonard called the police, who had to escort her out of the building.  *Id*.

Plaintiff tries to make much of the fact that the responding officers did not charge her at the time but only after Attorney Bolton contacted Chief Carignan to seek her arrest.  Chief Carignan, however, testified – and it is not contested – that he indicated at the time that he considered the matter closed and that the police would not be making an arrest.  Carignan Dep. pp. 83-84.  He further testified that the police only reopened the investigation after learning that Plaintiff had written about refusing to leave and not obeying the commands of the people at the

4

Legal Department on social media. Carignan Dep. p. 89. While Plaintiff will try to spin her eventual arrest as retaliation for her post, Carignan explained it differently:

> The decision, from what I understand, to arrest was her admission of committing the crime. She went on her social media post and admitted to refusing to obey those commands, and for us the discussion, if I remember correctly, was, well, she's admitting to a crime, we don't need a witness to necessarily come forward, she's making her own self-admissions, so we will charge her.

Carignan Dep. p. 90. The Chief explained that the police are generally reluctant to charge trespass based solely on the property owner's testimony as they are then dependent on that witness appearing at court, which often doesn't happen. Carignan Dep. pp. 64-65. The Chief agreed with the charging decision although he neither made nor commanded it. Carignan Aff. ¶9.

The Chief's recollection of Plaintiff's actions is entirely accurate. Plaintiff admits that she posted her version of events in a Facebook Forum called "The Nashua Scoop." Pl. Dep. pp. 72-73 and Ex. 3 thereto. Therein, she admitted that Attorney Neumann "repeatedly" told her to leave and advised her that she was trespassing but she refused to leave. *Id*. at p.2. She even stayed after the Legal Department staff called Risk Management: "I would not go with them. I sat down on the floor against a wall by a door. I said that I was just going to sit there until someone provided me with information." *Id*. She made similar statements to a reporter for the Union Leader, admitting again that Attorney Neumann asked her to leave and that he would have her removed if she refused. Pl. Dep. p. 70.

Plaintiff was arrested on February 18, 2021. Chief Carignan neither arrested her or ordered her arrest (although he did support the decision). Carignan Aff. ¶9; Carignan Dep. pp. 90-92. Although Plaintiff claims – even emphasizes - in her Complaint that she was charged with a felony, the actual charge was a misdemeanor. *See State v. Ortolano*, Doc. No 459-2021-CR-00606 (9th Cir. Court – District Division – Nashua) (reciting proper charges and plea). Plaintiff ultimately pled guilty to a violation offence. *Id. See also* Sept 26, 2023 Order on Bolton/Leonard Motion

5

for Judgment on the Pleadings [Doc. No. 60] at p.7 n.3.

*Conduct After Warning and Arrest*

Despite her arrest, Plaintiff remained a regular attendee of public meetings where she continued to criticize City officials. Plaintiff attended and spoke at a Board of Assessors meeting on March 4, 2021, and at a BOA meeting on March 9, 2021. Caron Aff. Ex. B pp. 181-85. In the latter she reminded the Board that she felt Attorney Leonard should be fired, a belief she reiterated then. Caron Ex. B at p. 184. She continued to participate in public meetings throughout the year. *See* Plaintiff's Affidavit in Response to Bolton/Leonard Motion for Summary Judgment [Doc. No. 75-2] at p.24, ¶50 (noting attendance at 45 BOA meetings from January 2021 through October 2022). In fact, Plaintiff concedes that she regularly attended meetings of all manner of City boards until October 2022, when she claims that unrelated comments from an individual alderman caused her to stop attending for several months. Pl. Dep. at pp. 83-84.[1]

Plaintiff also continued filing Right-to-Know requests and enforcing them through litigation. *See* Affidavit of Steven Bolton ("Bolton Aff."), appended to Bolton's Motion for Summary Judgment as Doc. No. 71-2, at ¶2. Plaintiff has not been shy therein about criticizing the City or its officials. Indeed, just last week the Hillsborough Superior Court documented her increasingly hostile pleadings, baseless accusations, and crude language. *See* Order of May 23, 2024, *Ortolano v. City of Nashua*, 2021-cv-00354 (Hillsborough County Superior Court – Southern Dist.) attached hereto as Exhibit 5.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[1] Plaintiff has filed a separate suit based on that issue. *See Ortolano v. Moran*, 226-2022-cv-00466 (Hillsborough County Superior Court – Southern Dist.).

6

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment motions provide courts the opportunity to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Acosta v. Ames Dept. Stores, Inc*., 386 F.3d 5, 7 (1st Cir. 2004) (quoting *Wynne v. Tufts Univ. Sch. of Med*., 976 F.2d 791, 794 (1st Cir. 1992)).  Thus, although the initial burden is upon the moving party to establish the lack of a genuine, material, factual issue, *Finn v. Consolidated Rail Corp*., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir. 1988), if a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).  Failing that showing, summary judgment must be granted.

## ARGUMENT

Following the first round of dispositive motions in this case, there are only two counts on which Chief Carignan remains a defendant: Count I (First Amendment Retaliation) and Count II (Violation of Right to Petition).  To succeed on such claim Plaintiff must prove the Chief himself violated her rights:  "It is by now axiomatic that the doctrine of *respondeat superior* does not apply to claims under section 1983." *Gaudreault v Salem, Mass.*, 923 F.2d 203, 209 (1st Cir. 1990) (citing *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985)).  A municipality or its supervisory personnel can be held liable for the unconstitutional conduct of its employees **only** on the basis of an "affirmative link" between their acts and those of the offending employee. *Id*.  Moreover, supervisors can be held liable only where their own acts or omissions amount at the least to "reckless" or "callous" indifference to the constitutional rights of others. *Id.* (citing *Gutierrez-*

7

*Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)). Plaintiff cannot show: (1) that any police officer violated her rights; or (2) that any such violation was the result of an affirmative link to Chief Carignan's actions.

## I. THE POLICE DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS.

As set forth previously by this Court, to prevail on her First Amendment claims, Plaintiff must establish that:

> (1) she engaged in constitutionally protected conduct, (2) was subject to an adverse action by the defendants, and (3) the protected conduct was a substantial or motivating factor in the adverse action.

Order on Carignan Motion to Dismiss [Doc. No. 58] at 9 (quoting *Currier v. Town of Gilmanton*, 621 F.Supp.3d 233, 258 (D.N.H. 2022)) (further citations omitted). As this Court observed, "adverse action must be more than 'de mininus,' which the First Circuit has defined simply as sufficient to chill a 'reasonably hardy' person, or 'a person of ordinary firmness,' from continuing to exercise their constitutional rights." Order on Donchess's Motion to Dismiss [Doc. No. 61] at 16 (quoting *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011); *Starr v. Dube*, 334 Fed. Appx. 341, 342 (1st Cir. 2009)).

In addition, Plaintiff must demonstrate that the defendant acted with <u>intent</u> to retaliate against her and that the retaliatory action actually caused the injury for which she seeks compensation. *Reid v. Brodeur*, 2001 DNH 032 (Feb. 15, 2001) at 16-17 (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). As for the injury element, a plaintiff must show that the defendant's alleged retaliation chilled the plaintiff's free speech or caused some other concrete harm to the plaintiff. *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Moreover, the claimed injury must be more than de minimus. *See* Order on Donchess's Motion to Dismiss [Doc. No. 61] at 17 (observing with respect to Plaintiff that "whatever injury she suffered was also

8

de minimus and therefore not actionable") (citing *Bourne v. Arruda*, 10-cv-393-LM, 2011 WL 2357504 at 16 (D.N.H. June 10, 2011)).

Here, Plaintiff contends that two police actions infringed on her First Amendment rights: (1) Det. Lombardi's "warning" for her not to contact Assessing Department staff outside of work; and (2) her February 2022 arrest for trespass. The former is addressed in Det. Lombardi's Motion for Summary Judgment [Doc. No. 84], which is expressly adopted and incorporated herein by reference. In summary, that warning was lawful and, in any event, had at most a de minimus impact on Plaintiff, who: (1) consulted with counsel; (2) continued her participation in public meetings, anti-administration diatribes, and lawsuits unabated; and (3) agreed that she would have refrained from approaching the staffers had they asked her themselves.

Plaintiff's trespass-based claim fares no better. First, Plaintiff does not have a First Amendment right to trespass at the Legal Department. "The government, 'no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.'" *Del Gallo v. Parent*, 557 F.3d 58, 68 (1st Cir. 2009) (quoting *Greer v. Spock*, 424 U.S. 828, 836 (1976)) (further citations omitted). The offices of the Legal Department are neither a traditional public forum nor a designated public forum and access thereto can be restricted. *C.f. Berner v. Delahunty*, F.3d 20, 26 (1st Cir. 1997) (noting that courtrooms are nonpublic forums to which access can be restricted as long as restrictions are reasonable and not solely content based) (quoting *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)). Plaintiff has no more right to remain in the office of the Legal Department against their wishes than to refuse to leave judicial chambers.

Plaintiff had previously been told that the Department was not open for general questions from the public. Even if she could claim her initial appearance there was proper, which is doubtful,

9

once she was told to leave (let alone repeatedly) she had no First Amendment right to remain, much like if this Court's clerk instructed a litigant to leave chambers. Thus, she fails the very first element of her claims.

Plaintiff, however, fares no better on the remaining elements of her claims. While an arrest is undoubtedly an adverse action, the Supreme Court has expressly held that a retaliatory arrest claim cannot generally survive where there is probable cause for the arrest. *Nieves v. Bartlett*, __ U.S.__, 139 S.Ct. 1715 (2019). Here, probable cause cannot be reasonably disputed: Plaintiff not only pleaded guilty to a violation trespass offense, she admitted the elements of the charge. To the extent that Plaintiff would claim that she falls in an exception to the *Nieves* ruling – where similarly situated persons are not arrested absent the same protected speech claim – her argument fails. Plaintiff relies (in objecting to the Bolton/Leonard Motion for Summary Judgment) on a summary of calls for service supplied to another citizen in response to a Right-to-Know request pursuant to RSA 91-A. *See* Doc. No. 75-18. None of those calls appear to involve persons refusing to leave a private work space in City Hall, much less persons who provided a written admission that they had refused to leave upon request.

Finally, Plaintiff's arrest simply did not chill her speech. She did not stop attending public meetings or criticizing City officials or staff. To the contrary, Plaintiff appeared at a Board of Alderman meeting just two weeks after her arrest, she continued to attend public meetings over the next three years, and has filed numerous suits against the City. Neither her speech nor right to petition have been curtailed by her arrest or, indeed, any action by the police.

## II. CHIEF CARIGNAN DID NOT ACT WITH "RECKLESS INDIFFERENCE TO PLAINTIFF'S RIGHTS.

Even were the Court to conclude that either Detective Lombardi or one of the arresting officers violated Plaintiff's First Amendment rights, Plaintiff could not link any such violation to

10

any specific conduct by Chief Carignan, much less conduct displaying a "reckless indifference" to her rights. This Court has already rejected the claim that Carignan's initial meeting with the Mayor and Kleiner could support such a claim. *See* Order on Carignan's Motion to Dismiss [Doc. No. 58] at 10 (observing that Plaintiff has no constitutional right to direct the course of the investigation). As to Lombardi's warning or Plaintiff's arrest, Chief Carignan neither directed or participated in either, much less acted with "reckless indifference" to such action. Given the absence of any precedential decisions indicating that the underlying actions were themselves improper, Plaintiff simply cannot meet her burden of proof on this claim

## CONCLUSION

The undisputed facts fall far short of those required to sustain any claim against this Defendant. As such, he is entitled to Summary Judgment on both remaining Counts of the Complaint.

    Respectfully submitted,

**MICHAEL CARIGNAN**

By his attorneys

CULLEN COLLIMORE SHIRLEY PLLC

Dated: May 30, 2024    By: /s/ Brian J.S. Cullen
    Brian J. S. Cullen (Bar No. 11265)
    37 Technology Way, Suite 3W2
    Nashua, NH 03060
    (603) 881-5500
    bcullen@cullencollimore.com

## **CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated:  May 30, 2024             By: /s/ Brian J.S. Cullen
                                           Brian J.S. Cullen