

# Exhibit C

## Incident #: 19-46336-OF
## Call #: 19-46336

---

Date/Time Reported: 06/25/2019 0930
Report Date/Time: 07/11/2019 1420
Status: Incident Closed

Reporting Officer: CAPTAIN JONATHAN LEHTO
Approving Officer: LIEUTENANT DANIEL MEDEROS

Signature: _____

Signature: _____

---

| # | SUSPECT(S) | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | TURGISS, GREG<br>37 VINAL ST<br>DRACUT MA | | M | W | 53 | NOT AVAIL | 978-729-6154 |

Military Active Duty: N
BODY: NOT AVAIL.                    COMPLEXION: NOT AVAIL.
DOB: ▮▮▮▮▮▮              PLACE OF BIRTH: NOT AVAIL.
LICENSE NUMBER: NOT AVAIL.              ETHNICITY: NOT HISPANIC

_____[CONTACT INFORMATION]_____

| | | Home Phone | (Primary) | 978-729-6154 | | | |
|---|---|---|---|---|---|---|---|
| 2 | TURGISS, GARY<br>49 SANBORN DR<br>NASHUA NH 03060 | | M | W | 58 | ▮▮▮▮ | 603-318-1561 |

Military Active Duty: N
HEIGHT: 605      WEIGHT: 225      HAIR: BLOND OR STRAWBERRY      EYES: BLUE
BODY: NOT AVAIL.              COMPLEXION: NOT AVAIL.
DOB: ▮▮▮▮▮▮              PLACE OF BIRTH: NOT AVAIL.
LICENSE NUMBER: NH 04TSG61181              ETHNICITY: NOT HISPANIC

_____[CONTACT INFORMATION]_____

Home Phone        (Primary)      603-318-1561

_____[APPEARANCE]_____

GLASSES WORN: NO

| ALIAS LAST NAME | FIRST NAME | MIDDLE NAME | SSN | DOB |
|---|---|---|---|---|
| TURGISS | GARY | | NOT AVAIL | ▮▮▮▮ |

| 3 | KLEINER, KIMBERLY<br>32 COURTLAND ST Apt. #0<br>NASHUA NH 03064 | | F | W | 51 | ▮▮▮▮ | 603-854-2451 |
|---|---|---|---|---|---|---|---|

Military Active Duty: N
BODY: NOT AVAIL.                    COMPLEXION: NOT AVAIL.
DOB: ▮▮▮▮▮▮              PLACE OF BIRTH: NOT AVAIL.
LICENSE NUMBER: NH 01KRK68301              ETHNICITY: NOT HISPANIC

NPD-LO-001

Incident #: 19-46336-OF
Call #: 19-46336

| # | SUSPECT(S) | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|

EMPLOYER/SCHOOL: CITY HALL-NASHUA NH

| # | OFFENSE(S) | | | ATTEMPTED | TYPE | CLASS |
|---|---|---|---|---|---|---|

LOCATION TYPE: Government/Public Building     Zone: Sector 4
NASHUA CITY HALL
229 MAIN ST
NASHUA NH 03060

| # | Offense | | | Attempted | | Type | Class |
|---|---|---|---|---|---|---|---|
| 1 | Theft by Deception $1501+ | | | N | | Felony | A |
| | 637 | 4 | | | A | | |
| 2 | Theft by Deception $1501+ | | | N | | Felony | A |
| | 637 | 4 | | | A | | |
| 3 | TAMPERING WITH WITNESSES AND INFORMANTS (INTERFERE | | | N | | Felony | B |
| | 641 | 5 | | 1 | B | | |

| # | VICTIM(S) | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | CITY OF NASHUA | | | | | | |
| | 229 MAIN ST | | | | | | |
| | NASHUA NH 03060 | | | | | | |

VICTIM CONNECTED TO OFFENSE NUMBER(S): 1    2    3

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | ORTOLANO, LAURIE A | REPORTING PARTY | F | W | 56 | NOT AVAIL | 603-930-2853 |
| | 41 BERKELEY ST | | | | | | |
| | NASHUA NH 03060 | | | | | | |
| | DOB: ▮▮▮▮ | | | | | | |

CONTACT INFORMATION:
CallBack Number     (Primary)     603-930-2853
CallBack Number                   603-595-4315

| # | | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 2 | COLQUHOUN, LAURA | REPORTING PARTY | F | W | 69 | NOT AVAIL | 603-402-9339 |
| | 30 GREENWOOD DR | | | | | | |
| | NASHUA NH 03060 | | | | | | |
| | DOB: ▮▮▮▮ | | | | | | |

EMPLOYER: VALENTINO'S MARKET
CONTACT INFORMATION:
CallBack Number     (Primary)     603-402-9339
CallBack Number                   603-718-8286
CallBack Number                   603-888-7400

3   CONFIDENTIAL

4   CONFIDENTIAL

5   CONFIDENTIAL

NPD-LO-002

## Incident #: 19-46336-OF
## Call #: 19-46336

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 6 | DUHAMEL, RONALD J<br>37 ALICE DR Apt. #65<br>CONCORD NH 03301<br>DOB: ▮▮▮▮ | OTHER | M | W | 44 | NOT AVAIL | 603-545-7759 |
| | CONTACT INFORMATION:<br>Home Phone          (Primary)          603-545-7759 | | | | | | |
| 7 | TOZIER, ROBERT<br>191 MERRIMACK ST<br>HAVERHILL MA 01830<br>DOB: NOT AVAIL | OTHER | M | W | 00 | NOT AVAIL | 877-337-5574 |
| | EMPLOYER: KRT APPRAISAL  ·<br>CONTACT INFORMATION:<br>Home Phone          (Primary)          877-337-5574 | | | | | | |
| 8 | LEMAY, ANDREW G<br>2 HOLLY ST Apt. #0<br>CONCORD NH 03301<br>DOB: ▮▮▮▮ | OTHER | M | W | 68 | NOT AVAIL | 603-731-0887 |
| | CONTACT INFORMATION:<br>Home Phone          (Primary)          603-731-0887 | | | | | | |
| 9 | CONFIDENTIAL | | | | | | |
| 10 | REESE, CHARLES<br>1 JENKINS AVE Apt. #2FL<br>PORTSMOUTH NH<br>DOB: NOT AVAIL | OTHER | M | W | 00 | NOT AVAIL | 603-610-7249 |
| | EMPLOYER: PORTSMOUTH ASSESSING DEPT  ·<br>CONTACT INFORMATION:<br>Home Phone          (Primary)          603-610-7249 | | | | | | |
| 11 | PIERCE, SUSAN<br>6 WESTCHESTER DR<br>NASHUA NH 03060<br>DOB: ▮▮▮▮ | WITNESS | F | W | 50 | NOT AVAIL | 603-320-3621 |
| | CONTACT INFORMATION:<br>Home Phone          (Primary)          603-320-3621 | | | | | | |
| 12 | SLATTERY, KEVIN T<br>54 BERKELEY ST<br>NASHUA NH 03060<br>DOB: ▮▮▮▮ | OTHER | M | W | 66 | ▮▮▮▮ | 603-231-3198 |
| | EMPLOYER: ETCHSTONE PROPERTIES INC  · | | | | | | |

Incident #: 19-46336-OF
Call #: 19-46336

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 13 | SLATTERY, JARON T | OTHER | M | W | 38 | NOT AVAIL | 603-361-5887 |

17 BERKELEY ST
NASHUA NH 03060
DOB:

CONTACT INFORMATION:
CallBack Number      (Primary)       603-204-3630
CallBack Number                      603-361-5887

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 14 | DENONCOUR, ADAM | OTHER | M | W | 00 | NOT AVAIL | 603-230-5950 |

109 PLEASANT ST
CONCORD NH 03301
DOB: NOT AVAIL

EMPLOYER: NH DEPT OF REVENUE ADMIN   ·
CONTACT INFORMATION:
Home Phone           (Primary)       603-230-5950

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 15 | GAGNE, ROBERT | OTHER | M | W | 00 | NOT AVAIL | 603-624-6520 |

1 CITY HALL PLZ
MANCHESTER NH 03101
DOB: NOT AVAIL

EMPLOYER: MANCHESTER ASSESSING DEPT   ·
CONTACT INFORMATION:
Home Phone           (Primary)       603-624-6520

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 16 | GLEESON, DENIS G | OTHER | M | W | 57 | NOT AVAIL | 603-889-3197 |

17 GREGG RD
NASHUA NH 03062
DOB:

CONTACT INFORMATION:
Home Phone           (Primary)       603-881-4815
Home Phone           (Primary)       603-889-3197

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 17 | GLEESON, ERIN T | OTHER | F | W | 29 | NOT AVAIL | 603-318-6557 |

17 GREGG RD Apt. #0
NASHUA NH 03062
DOB:

CONTACT INFORMATION:
Home Phone           (Primary)       603-318-6557

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 18 | DUBRAY, GILL | OTHER | M | W | 57 | NOT AVAIL | |

713 WEST HOLLIS ST Apt. #B
NASHUA NH 03060
DOB:

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 19 | NELSON, KATHLEEN | OTHER | F | W | 67 | NOT AVAIL | 603-465-2125 |

97 IRENE DR
HOLLIS NH 03049
DOB:

CONTACT INFORMATION:
Home Phone           (Primary)       603-465-2125
Cell Phone                           603-315-6495

**Incident #: 19-46336-OF**
**Call #: 19-46336**

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 20 | SUN, PING T<br>285 WEST HOLLIS ST<br>NASHUA NH 03062<br>DOB: ███ | OTHER | M | A | 40 | NOT AVAIL | 323-532-0768 |

CONTACT INFORMATION:
Home Phone        (Primary)        323-532-0768

| 21 | DARRELL, KENNETH C<br>64 DAVIS RD Apt. #0<br>MERRIMACK NH 03054<br>DOB: ███ | OTHER | M | W | 67 | ███ | 603-424-8089 |

EMPLOYER: SELF  ·  603-886-1748
CONTACT INFORMATION:
Home Phone        (Primary)        603-424-8089
Work Phone        (Primary)        603-886-1748

| 22 | CORNELL, DAVID<br>11 WHITE PINE LN<br>MANCHESTER NH 03101<br>DOB: NOT AVAIL | OTHER | M | W | 00 | NOT AVAIL | 603-203-5517 |

EMPLOYER: CORNELL CONSULTANTS, LLC  ·

23  CONFIDENTIAL

24  CONFIDENTIAL

25  CONFIDENTIAL

26  CONFIDENTIAL

27  CONFIDENTIAL

28  CONFIDENTIAL

29  CONFIDENTIAL

30  CONFIDENTIAL

31  CONFIDENTIAL

| 32 | GRANT, GARY P<br>4 COVENTRY RD<br>NASHUA NH 03060<br>DOB: ███ | OTHER | M | W | 34 | ███ | 978-930-5287 |

CONTACT INFORMATION:
Home Phone        (Primary)        978-930-5287

33  CONFIDENTIAL

NPD-LO-005

Incident #: 19-46336-OF
Call #: 19-46336

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 1 | ASSESSING DEPARTMENT INFO BINDER<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 08/05/2019 | 19-4200-PR | Evidence (Not Nibrs Reportable) |
| 2 | ASSESSING DEPARTMENT MANUAL<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 08/05/2019 | 19-4201-PR | Evidence (Not Nibrs Reportable) |
| 3 | USB W/ ACTIVITY LOGS<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 08/05/2019 | 19-4203-PR | Evidence (Not Nibrs Reportable) |
| 4 | ORTOLANO'S PACKET FOR NH BTLA HEARING<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 08/09/2019 | 19-4276-PR | Evidence (Not Nibrs Reportable) |
| 5 | SUP INFO FOR ASSESSING DEPARTMENT BINDER<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 09/08/2019 | 19-4856-PR | Evidence (Not Nibrs Reportable) |
| 6 | USB OF GREG TURGISS FIELD/WORK LOGS<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 09/08/2019 | 19-4857-PR | Evidence (Not Nibrs Reportable) |
| 7 | BLUE BINDER FROM LAURIE ORTOLANO<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 09/15/2019 | 19-4985-PR | Evidence (Not Nibrs Reportable) |
| 8 | RED BINDER FROM LAURIE ORTOLANO<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 09/15/2019 | 19-4986-PR | Evidence (Not Nibrs Reportable) |
| 9 | CODE 72 PROPERTY CARDS 2018/2019<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 09/27/2019 | 19-5206-PR | Evidence (Not Nibrs Reportable) |
| 10 | MONEY<br>QUANTITY: 1     VALUE: $1.00<br>SERIAL #: NOT AVAIL<br>DATE: 10/08/2019<br>OWNER: CITY OF NASHUA | | Stolen |
| 11 | AUDIO INTERVIEW W/ RONALD "JON" DUHAMEL<br>QUANTITY: 1     VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 10/09/2019 | 19-5754-PR | Evidence (Not Nibrs Reportable) |

# Nashua Police Department
## Incident Report

### Incident #: 19-46336-OF
### Call #: 19-46336

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 12 | INTERVIEW W/ LYNN CAMERON | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 13 | INTERVIEW W/ AMANDA MAZEROLLE | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 14 | INTERVIEW W/ LOUISE BROWN | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 15 | INTERVIEW W/ CHERYL WALLEY | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 16 | INTERVIEW W/ KIMBERLY KLEINER | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 17 | INTERVIEW W/ MICHAEL MANDILE | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 18 | INTERVIEW W/ DOUGLAS DAME | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 19 | INTERVIEW W/ GARY TURGISS | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 20 | INTERVIEW W/ GREG TURGISS | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 21 | NH BOARD OF TAX AND LAND APPEAL HEARING | 19-5428-PR | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 10/09/2019 | | |
| 22 | INTERVIEW W/ GARY GRANT | | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1  VALUE: | | |
| | SERIAL #: 1 | | |
| | DATE: 11/03/2019 | | |

Incident #: 19-46336-OF
Call #: 19-46336

```
*******************************
***CONFIDENTIAL PERSON REPORT***
*******************************
```

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 3 | DAME, DOUGLAS<br>1 HOLT AVE<br>NASHUA NH 03060<br>DOB: ▓▓▓ | WITNESS | M | W | 67 | NOT AVAIL | 603-888-4040 |
| | CONTACT INFORMATION:<br>Home Phone      (Primary)      603-888-4040 | | | | | | |
| 4 | MANDILE, MICHAEL J<br>7 STONYBROOK RD<br>NASHUA NH 03063<br>DOB: ▓▓▓ | WITNESS | M | W | 60 | ▓▓▓ | 603-880-7317 |
| | EMPLOYER: SELF<br>CONTACT INFORMATION:<br>Home Phone      (Primary)      603-880-7317 | | | | | | |
| 5 | WALLEY, CHERYL A<br>12 BRIARCLIFF DR Apt. #0<br>NASHUA NH 03062<br>DOB: ▓▓▓ | WITNESS | F | W | 59 | ▓▓▓ | 603-345-4813 |
| | EMPLOYER: CITY OF NASHUA · 603-594-3500<br>CONTACT INFORMATION:<br>Home Phone                      603-595-4812<br>Cell Phone                      603-345-4813<br>Work Phone      (Primary)      603-594-3500 | | | | | | |
| 9 | DURANT, RENEE<br>229 MAIN ST<br>NASHUA NH 03060<br>DOB: NOT AVAIL | OTHER | F | W | 00 | NOT AVAIL | |
| | EMPLOYER: NASHUA CITY HALL · | | | | | | |
| 23 | BROTH, MARK<br>111 AMHERST ST<br>MANCHESTER NH 03101<br>DOB: ▓▓▓ | OTHER | M | W | 59 | NOT AVAIL | 603-520-4040 |
| | EMPLOYER: DRUMMOND WOODSUM · 603-716-2895<br>CONTACT INFORMATION:<br>Home Phone      (Primary)      603-520-4040<br>Work Phone      (Primary)      603-716-2895<br>Work Phone                      603-695-8558 | | | | | | |
| 24 | CAMERON, LYNN M<br>17 WINCHESTER DR<br>MERRIMACK NH 03054<br>DOB: ▓▓▓ | OTHER | F | W | 48 | NOT AVAIL | 603-595-2040 |
| | EMPLOYER: NASHUA ASSESSING DEPT ·<br>CONTACT INFORMATION:<br>Home Phone      (Primary)      603-595-2040 | | | | | | |
| 25 | BROWN, LOUISE<br>114 BARRETTS HILL RD<br>HUDSON NH 03051<br>DOB: ▓▓▓ | OTHER | M | W | 49 | NOT AVAIL | 603-670-3197 |

## Incident #: 19-46336-OF
## Call #: 19-46336

---

EMPLOYER: NASHUA ASSESSING DEPT ·
CONTACT INFORMATION:
Home Phone          (Primary)      603-670-3197
Home Phone                         603-589-3049

26  MAZEROLLE, AMANDA              OTHER       F    W    48     NOT AVAIL    603-589-3771
    21 SHINGLE MILL DR
    NASHUA NH 03060
    DOB: ▌

    EMPLOYER: NASHUA ASSESSING DEPT ·
    CONTACT INFORMATION:
    Home Phone          (Primary)      603-589-3771
    CallBack Number     (Primary)      603-589-3010

27  GRIFFIN, JOHN                  OTHER       M    W    00     NOT AVAIL
    229 MAIN ST
    NASHUA NH 03060
    DOB: NOT AVAIL

    EMPLOYER: CITY OF NASHUA  ·

28  BUDREAU, LARRY                 OTHER       M    W    00     NOT AVAIL
    229 MAIN ST
    NASHUA NH 03060
    DOB: NOT AVAIL

    EMPLOYER: CITY OF NASHUA  ·

29  LEONARD, CELIA                 OTHER       F    W    00     NOT AVAIL
    229 MAIN ST
    NASHUA NH 03060
    DOB: NOT AVAIL

    EMPLOYER: CITY OF NASHUA  ·

30  ROTH, PETER                    OTHER       M    W    00     NOT AVAIL    603-230-5028
    109 PLEASANT ST
    CONCORD NH
    DOB: NOT AVAIL

    EMPLOYER: NH DRA  ·

31  BOLTON, STEVEN A               OTHER       M    W    65     NOT AVAIL    603-891-1766
    4 KYLE DR
    NASHUA NH
    DOB: ▌

    EMPLOYER: SELF EMPLOYED - ATTORNEY  · 603-886-0205
    CONTACT INFORMATION:
    Home Phone          (Primary)      603-891-1766
    Work Phone          (Primary)      603-886-0205

33  DONCHESS, JAMES                OTHER       M    W    69     NOT AVAIL    603-589-3260
    4 ROCKLAND ST
    NASHUA NH 03060
    DOB: ▌

    EMPLOYER: CITY OF NASHUA  ·
    CONTACT INFORMATION:
    Home Phone          (Primary)      603-589-3260
    CallBack Number     (Primary)      603-566-3628

---

Attachments for 19-46336-OF

| Description | Type |
| --- | --- |
| 1-15-2020 RIGHT T KNOW REQUEST | PDF |

**Incident #: 19-46336-OF**
**Call #: 19-46336**

Attachment#: C217F56B1258453FA31BA5BB9CAE3561

On 25Jun19 at approximately 0930 hours, Detective Lieutenant D. Mederos and I met with Laurie Ortolano (DOB; █████████) and Laura Colquhoun (DOB: ██████████). Ms. Ortolano had arranged the meeting through Deputy Chief M. Carignan based upon concerns that she had regarding illegal activity within the Nashua Assessing Department, specifically fraudulent mileage reports, theft of wages and possible bribery/improper assessing practices involving employee Greg Turgiss and possible witness tampering/intimidation involving Administrative Services Director Kim Kleiner. At the outset of the meeting, Ms. Ortolano provided us with a binder (blue and black) of information that she had complied reference the matters. The binder contained the following:

1) Cover Letter to Deputy Chief Carignan (dated: 20Jun19)
2) Attorney Robert Fojo's Letter to Mayor Donchess (dated: 08May19)
3) Attorney Mark Broth's Letter to Attorney Fojo (dated: 21May19)
4) Attorney Fojo's Letter to Attorney Broth (dated: 07Jun19)
5) The Freyler Investigation Report (dated: 04-26-19)
6) Laurie Ortolano's Investigative Report (dated: 01May19)
7) A Spreadsheet Summarizing the Surveillance Report
8) NPD Offense Report (dated: 16May06)
9) A Mileage Table for the City Assessors from 2014 through 2018
10) Mileage Reports for Gary Turgiss from 01Jan19 through 30Apr19
11) The Mileage Report for Gary Turgiss from 01May19 through 31May19
12) Mileage Reports for Greg Turgiss from 01Jan19 through 30Apr19
13) The Mileage Report for Greg Turgiss from 01May19 through 31May19
14) Mileage Reports for Douglas Dame from 01Jan19 through 31May19
15) Mileage Reports for Michael Mandile from 01Jan19 through 31May19
16) The Mileage Report for all City Assessors from 01May19 through 31May19
17) The Assess Audit Log from 01Sep18 through 01Apr19 (dated: 07Jun19)
18) The AssessPro Activity Log from 01Jan19 through 30Jan19

(*Ms. Ortolano obtained much of this information through Right To Know Requests from the Assessing Department.)

Ms. Ortolano explained that she raised concerns regarding operations in the Nashua Assessing Department in the Fall of 2018. She advised that as a result of the information that she was able to gather, the City commissioned an audit of the Department which was conducted by John Griffin (Chief Financial Officer) and Kim Kleiner (Chief of Staff). However, Ms. Ortolano stated that she is not satisfied with the results of the audit, does not believe that it was "independent" and does not believe that her concerns have been adequately addressed.

Ms. Ortolano explained that as a result of the audit, the Chief Assessor position was eliminated and Ms. Kleiner was placed in charge of the Department as the Administrative Services Director. However, according to Ms. Ortolano, Ms. Kleiner has no experience as an assessor and was simultaneously placed in charge of Purchasing, IT, GIS, Risk Management and Human Resources, thereby inhibiting her ability to monitor the activities of the Assessing Department. Moreover, Ms. Ortolano advised that she believes that there is an inherent conflict in the Department because two brothers, Gary and Greg Turgiss, are both employed as assessors even though Larry Budreau, Director of Human Resources, does not believe that their employment violates the

City's anti-nepotism policy.

In addition, Ms. Ortolano explained that she has some specific concerns with regards to Greg Turgiss's activities. Ms. Ortolano explained that according to staff (Cheryl Walley), Mr. Turgiss has a history of filing fraudulent/incorrect mileage reports, has been spoken to about those reports in the past (reportedly by Sue Cronin) but continues to file fraudulent/incorrect mileage reports. Moreover, she stated that she has concerns with regards to Mr. Turgiss' work activities and whether he has been and is misrepresenting what he is doing while at work. She explained that she actually hired a private investigator to follow Mr. Turgiss and that the results of that investigation were extremely concerning. In addition, Ms. Ortolano advised that she discovered a number of abatements (to include: 285 West Hollis Street, 713 A & B West Hollis Street, 10 Groton Road, etc.) that occurred in October 2018 that she believes may have been the result of "favoritism". Moreover, she explained that she ran a background check on Mr. Turgiss and discovered that he filed for bankruptcy in 2003, was investigated for pornography in 2006 and currently brings a personal computer with him to work, all of which, according Ms. Ortolano, are extremely concerning.

Ms. Ortolano explained that as a result of the concerns that she has raised regarding Mr. Turgiss' activities the City has retained Attorney Mark Broth to conduct an independent investigation into Greg Turgiss' mileage reports and work logs. Ms. Ortolano advised that she will be attempting to meet with Attorney Broth in order to discuss her concerns but believes that the scope of his investigation will be too narrowly focused.

Ms. Ortolano also explained that she believes that Ms. Kleiner may have engaged in witness intimidation/tampering. She stated that prior to Attorney Broth meeting with any members of the Assessing Department, Ms. Kleiner conducted a staff meeting and that, although Ms. Kleiner encouraged the staff to be honest and straightforward, at some point Ms. Kleiner relayed a personal anecdote in which she explained that honesty in internal investigations does not always result in career benefit. Ms. Ortolano believes that this was an effort by Ms. Kleiner to impede the investigation.

For the foregoing reasons, Ms. Ortolano explained that she decided to report the matter to the Nashua Police Department. In addition, she explained that she has filed a complaint with the Department of Revenue Administration (Attorney Peter Roth) and also attempted to file a report with the New Hampshire Attorney General's Office (Richard Tracy advised her to contact the Nashua Police Department/the County Attorney's Office). In addition, she stated that she just learned that the Board of Tax & Land Appeals will be investigating the matter as well.

Detective Lieutenant Mederos and I explained that the Police Department would investigate the matter and that we would draw our own independent conclusions. However, we further advised that if any criminal conduct was uncovered, the City would be the "victim" and would be consulted regarding resolution of the matter. I however further requested that Ms. Ortolano provide us with any additional information that she believed would be relevant to the investigation and also requested a copy of the complaint that she filed with the Department of Revenue Administration (Ms. Ortolano agreed to forward this documentation). Detective Lieutenant Mederos and I then thanked Ms. Ortolano and Ms. Colquhoun for their time and they were escorted back to the lobby of the Police Department.

It should be noted that after the meeting, Detective Lieutenant Mederos and I both reviewed the contents of the binder and it was placed with the case file. See binder for further details.

Captain Jon Lehto D-1

On 26Jun19 at approximately 0900 hours, Deputy Chief M. Carignan and I responded to Nashua City Hall, located at 229 Main Street, Nashua, NH, and met with Mayor Jim Donchess and Director of Administrative Services Kim Kleiner in the Mayor's Conference Room.  We informed Mayor Donchess and Ms. Kleiner that the Nashua Police Department had received a complaint from Laurie Ortolano regarding possible illegal activity in the Assessing Department involving mileage fraud, theft, bribery and witness intimidation.  No specific details were relayed at that time but Mayor Donchess and Ms. Kleiner were familiar with Ms. Ortolano and her allegations.  We further advised that members of the Department would be conducting the investigation and speaking with members of the Nashua Assessing Department and Human Resources (Ms. Kleiner advised that Greg Turgiss had already been interviewed by Director of Human Resources Larry Budreau) as well as Attorney Mark Broth who had been retained by the City of Nashua to conduct an independent investigation into possible illegal activity involving Greg Turgiss' mileage reports and work logs (Ms. Kleiner advised that Attorney Broth had already interviewed several members of the Assessing Department and that she and Greg Turgiss were scheduled to meet with Attorney Broth on 28Jun19). Mayor Donchess and Ms. Kleiner understood and advised that the Department would receive full cooperation from the City.

Captain Jon Lehto D-1

On July 17, 2019 at approximately 1140 hours I was assigned to further an investigation into allegations made against that Nashua Assessing Department by Nashua resident, Laurie Ortolano (DOB: ▮▮▮▮▮▮▮). After being assigned to investigate these allegations I reviewed information contained in a blue binder and information contained in a red binder that Ortolano had previously provided Detective Captain Lehto and Detective Lieutenant Mederos with. Among other things the information in these binders outlined her concerns with the Nashua Assessing Department as well as an investigation into the Nashua Assessing Department that she was conducting along with the help of a private investigator.

Once I finished reviewing each binder they were tagged as evidence per departmental procedure. The blue binder was tagged as evidence under Nashua Police Department property number 19-4985-PR, while red binder was tagged as evidence under Nashua Police Department property number 19-4986-PR.

I then visited the New Hampshire Department of Revenue Administration website, https://www.revenue.nh.gov/laws/index.htm, where I familiarized myself with their duties, jurisdiction, rules, and related state statues.

I later reviewed a copy of the Management Audit Report conducted by City of Nashua Chief Financial Officer John Griffin and then City of Nashua Chief of Staff Kimberly Kleiner of the Nashua Assessing Department. In reviewing this audit I observed that at the conclusion of the audit several recommendations for improvement were listed. These recommendations included:

1. Re-establish the Administrative Services Director position reporting to the Mayor which will more effectively align internal serving functions within the city, including but not limited to, Assessing GIS and Information Technology operations under one directorship.
2. Eliminate the Chief Assessor position – the Administrative Services Director will direct the operations of the Assessing Department and work with the Chief Financial Officer and will be charged with a) observing the current operating state and b) creating and implementing an efficiency/improvement plan.
3. More effectively use the AssessPro software to conduct assessing business to include such items such as exemptions/credit and tax abatement processing. Consultation and technical assistance by Patriot Properties may be needed.
4. Create and/or update internal policies and procedures to reflect the current state of operations. Review functions within the department and update job descriptions as appropriate.
5. Implement a new mileage reimbursement policy and related procedures for all employees who use their personal vehicle for City business.
6. Develop integrated internal training programs for assessing and administrative staff. Conduct orientation and informational workshops with the Board of Assessors.
7. Reduce reliance on the City's legacy ADMINS software applications.
8. Invest in a full measure and list project over the next few years to update the property record data. This project will be completed in time to perform the next state mandated Revaluation.

The audit did not note if any criminal activity had been discovered within the Assessing Department during the audit. Copies of this audit were later added to this case file for case inclusion.

I later met with Detective Captain Lehto, Detective Lieutenant Mederos, and Detective Sergeant MacLeod to discuss the numerous concerns that Ortolano has with the Nashua Assessing Department. During this meeting it was determined that this investigation would focus on the allegation that had the potential to be criminal in nature. These allegations included submitting mileage not traveled for work purposes, theft of wages for time not worked, bribery, and witness tampering. The first three allegations were all against Assessor Greg Turgiss (DOB: ▮▮▮▮▮▮▮, while the witness tampering was allegation involved Nashua City Hall Director of Administrative Services Kimberly Kleiner (DOB: ▮▮▮▮▮▮▮ Assessor Gary Turgiss (DOB: ▮▮▮▮▮▮▮) was also accused of bribery as well.

DETECTIVE LOMBARDI D16

Case 1:22-cv-00326-LM  Document 150-3  Filed 07/01/24  Page 16 of 24

On September 16, 2019 at approximately 0856 hours I made contact with Robert Tozier, who is the Vice President of KRT Appraisal. In speaking with Tozier he was questioned about the Nashua Assessing Department. Tozier explained that KRT had previously been in contract with the City of Nashua to conduct a mass assessment and reevaluation of the properties within Nashua. Tozier explained that KRT was hired to come up with property values and provide them to the City of Nashua and the City could do whatever they wanted to with those values.

Tozier was specifically asked about the approximate twenty four million dollar change in values of private schools within Nashua that Laurie Ortolano (DOB:⬛⬛⬛⬛ had been concerned with. Tozier reiterated that once they provided their values the City of Nashua was free to make changes and adjustments as they saw fit without permission or approval from KRT. Tozier explained that this was a common practice because the city is responsible for the values so the city not KRT has the final say in what the values are set at. Tozier said that he had previously been made aware of the properties I was talking about and was not aware of any issues with the city changing their values as they had done.

Tozier was asked if he or anyone in his company had observed or was aware of any issues or criminal activity within the Nashua Assessing Department. Tozier said that neither he nor anyone from his company had observed anything that would cause concern within the Nashua Assessing Department criminal or otherwise. Tozier was specifically asked if he had observed or suspected anyone within the Nashua Assessing Department accepting bribes. Tozier replied that he did not.

Before ending my contact with Tozier he was asked if there were any issues or information he felt that the Nashua Police Department Police Department should be aware of involving this investigation. Tozier said that there was not. Tozier did however express some concern in regards to Ortolano. Tozier explained that because of Ortolano's claims, accusations, and fixations on issues that she perceives exist, he and members of his office have been concerned that they could be the focus of her negative attention.

As KRT is located in Haverhill, Massachusetts Tozier was instructed to contact the local Police if any issues were to arise at that location. Tozier was also given information on how to apply for a restraining order if he or other employees felt that their concerns arose to that level.

With no further questions for Tozier at that time and with him not having any further questions for me he was thanked for speaking with me and I ended my contact with him.

DETECTIVE LOMBARDI D16

Nashua Police Department
2019-09-09 1521HRS EMAIL FROM LAURIE ORTOLANO
Ref: 19-46336-OF

On September 16, 2019 at approximately 1145 hours after meeting with Gary Turgiss (DOB: ███████) in the Nashua Assessing Department, Louise Brown (DOB ███████notified me of an incident that had occurred the previous week involving Nashua Assessing Department employee, Lynn Cameron (DOB: ███████ and resident, Laurie Ortolano (DOB:████████. Upon being told this I met in the conference room within the assessing department with Brown and Cameron.

Cameron informed me that the previous week, possibly on Wednesday, September 11, 2019 she had just left the office and was walking down Elm Street to where her vehicle was parked to get something for lunch. Cameron said that while walking she was approached by Ortolano who confronted her about memos and a meeting both related to the Nashua Assessing Department.

Cameron said that during this contact Ortolano had not assaulted her or threatened her at all. However Cameron explained that the entire interaction with Ortolano made her feel very uncomfortable. Cameron explained that she felt that Ortolano had been waiting outside and had intentionally been attempting to confront her outside of the office.

As Cameron was explaining what had occurred she began to cry. Cameron explained that based on the accusations Ortolano had previously made about the assessing department and how Ortolano twists everything they tell her or attempt to explain to her this interaction made her very uncomfortable and also scared her because she felt that Ortolano had specifically been waiting for her to confront her.

After Cameron explained to me what had occurred and how it made her feel. I explained the protection order process to her and what options she had involving attempting to obtain a protection order. I also informed her that I could speak with Ortolano on her behalf and inform Ortolano that Cameron no longer wanted to have any contact with her outside of her duties within the Assessing Department Office.

Cameron seemed slightly overwhelmed at that time so I informed her that she did not need to make any decisions at that time if she did not want to. I informed her that if she wanted to take some time to think about her options she could let me know at a later time if she wanted any further Police involvement in this incident. Cameron stated that she wanted to think about it and both she and Brown expressed an interest in sharing these options with other members of the assessing department as they were under the impression that they would also possibly not want Ortolano to have any contact with them either outside of the Nashua Assessing Department Office. I informed Brown and Cameron that would not be an issue.

Prior to ending my contact with Cameron and Brown I provided them with my contact information and encouraged them to contact me if they had any other issues or concerns or to have any of their co-workers contact me with any questions they had. Brown and Cameron were then thanked for their time and I ended my contact with them.

DETECTIVE LOMBARDI D16

On September 22, 2019 at approximately 1643 hours I received a voicemail from Laurie Ortolano (DOB: ▓▓▓) stating that she had received the message I had left with her husband. At approximately the same time I received an email from Ortolano telling me that she had just left a message for me. A copy of this email was later added to this case file for case inclusion.

At approximately 1651 hours I called Ortolano and informed her that I was looking to speak with her in person for a few minutes. Ortolano advised that she was near the Police Department and would stop by in a few minutes. I thanked Ortolano and ended my contact with her.

At approximately 1655 hours Sergeant Hudon and I made contact with Ortolano in the front lobby of the Nashua Police Department. Upon making contact with Ortolano I informed her that I had received a complaint from one of the employees in the Nashua Assessing Department about Ortolano confronting them while they walked to their vehicle from City Hall.

Ortolano acknowledged this incident had occurred but explained that she had just happened to see Lynn Cameron (DOB: ▓▓▓) and figured she would just ask her a quick question. Ortolano stated that she had not been waiting for Cameron but rather she had just happened to see her. I explained that this employee had not alleged any crimes had occurred during this time but based on what had been going on recently this incident made them very uncomfortable and was concerning to them.

I informed Ortolano as a result of this incident this employee notified her co-workers, who in turn notified me and their supervisor, Kimberly Kleiner (DOB: ▓▓▓). I informed Ortolano that after speaking with Kleiner and members of the assessing department they decided that they wanted me to inform Ortolano that all of the current members of the Nashua Assessing Department did not want to have any contact with Ortolano anywhere other than within the Nashua Assessing Department for matters involving Assessing. I informed Ortolano that people that did not wish to have any contact with her outside of their office were Greg Turgiss (DOB: ▓▓▓), Gary Turgiss (DOB: ▓▓▓), Douglas Dame (DOB: ▓▓▓), Michael Mandile(DOB: ▓▓▓), Louis Brown (DOB: ▓▓▓), Lynn Cameron, Amanda Mazerolle (DOB: ▓▓▓), and Kimberly Kleiner.

Upon being told this Ortolano asked me if what I was doing was legal. I informed Ortolano that me informing her that specific people did not want to have any contact with her was legal and was also something that is commonly done by the Nashua Police Department in an attempt to proactively prevent crimes from occurring. I explained to Ortolano now that she had been warned that these specific people did not want to have any contact with her outside of the assessing department there was the potential that if she did have contact with the previously listed individuals that she could face criminal charges depending on the circumstances of this contact. Ortolano said she understood and expressed to me that she did not foresee their being any further issues with this.

Ortolano then began reiterating several of the issues she had previously reported to the Nashua Police Department and multiple other agencies involving her concerns with the Nashua Assessing Department. This transitioned into Ortolano expressing her concerns with the Nashua Police Department's investigation into this incident and her feeling that the Nashua Police Department was not an impartial party. Ortolano then began making accusations that the Nashua Police Department would attempt to cover up any wrong doing by the Nashua Assessing Department or City Hall. Both I and Sergeant Hudon attempted to explain to Ortolano that the Nashua Police Department does not answer to Nashua City Hall or the Nashua Assessing Department. We explained that the Nashua Police Department answers to a board of Police Commissioners that are appointed by the Governor of the State of New Hampshire. Ortolano did not appear satisfied with this answer and informed me that she felt another agency such as the New Hampshire Attorney General's Office should investigate her concerns. I informed Ortolano that I would not have any issue with that however she had already made the Attorney General's office aware of her concerns and it was their decision to make whether or not they became involved in this investigation not the Nashua Police Department's decision.

During my contact with Ortolano she also inquired if she could have copies of the reports from the Nashua Police Department's investigation into the Nashua Assessing Department. I informed Ortolano that the reports would be available through our records department once the investigation was complete and the reports are approved. I further informed Ortolano that I did not have a timeframe to provide her with as to when the investigation would be complete.

Prior to ending my conversation with Ortolano I asked if she had anything new to report to me at that time.

Ortolano laughed and stated that she had many concerns but nothing new to report at that time. With Ortolano not have any further information to provide me with at that time and with the warning already being delivered to her I ended my contact with Ortolano.

A call number, 19-63773 was generated to document that a warning was given to Ortolano not to have contact with employees of the Nashua Assessing Department during this contact with her. The call notes were later added to this case file for case inclusion.

DETECTIVE LOMBARDI D16

**Nashua Police Department**
2019-10-15 1000HRS CONTACT W/ ATTORNEY PETER ROTH
Ref: 19-46336-OF

On October 31, 2019 at approximately 0916 hours Detective Lieutenant Mederos informed me that the Nashua Assessing Department had received information of someone possibly impersonating a Nashua Assessing Department Assessor. Upon being informed of this information I contacted the Director of Administrative Services at Nashua City Hall, Kimberly Kleiner (DOB: ███████).

In speaking with Kleiner she explained that residential assessor, Gary Turgiss (DOB: ███████) had responded to 4 Coventry Road the previous day to conduct an assessment of that property as it had recently been sold on July 30, 2019. Kleiner said that when Gary was speaking with the property owner they informed him of a female that had previously been at his residence in September of that year. The property owner said the female claimed to be working for the Nashua Assessing Department and had been taking pictures of his residence. Kleiner said that the description the resident provided Gary of this female matched that of Nashua resident, Laurie Ortolano (DOB: ███████).

When asked, Kleiner stated that Ortolano had not previously requested a property card or any information for 4 Coventry Road. Kleiner advised that she was unaware of any connection 4 Coventry Road to could have to the concerns Ortolano had previously raised with the Assessing Department. Kleiner said that Gary was not a work that day however she provided me with the name of the resident from 4 Coventry Road, which was Gary Grant (DOB: ███████).

Shortly after speaking with Kleiner I made contact with Grant via telephone. In speaking with Grant he agreed to respond to the Nashua Police Department to provide me with a statement in reference to this incident as well as provide me with screen shots of the vehicle this female had been driving during this incident, which he described as a white sedan.

DETECTIVE LOMBARDI D16

On October 31, 2019 at approximately 1140 hours I responded to the front lobby of the Nashua Police Department where I made contact with Gary Grant (DOB: █████). After being signed in as a visitor Grant was escorted upstairs to CID interview room #1. Once in the interview room Grant was provided with a Nashua Police Department Victim/Witness Background Sheet, which he completed. Copies of this form were later added to this case file for case inclusion.

At approximately 1151 hours I started audio and video recording my conversation with Grant. I began our conversation by confirming Grant was aware our conversation was being audio and video recorded. I further confirmed that he was providing a statement voluntarily and that he was currently not under the influence of any drugs or alcohol.

In speaking with Grant he explained that on September 19, 2019 at approximately 0830 hours he looked out the bathroom window of his residence, located at 4 Coventry Road and observed a female in a newer four door white sedan traveling very slowly down his street while looking at his residence. Grant said that due to recent issues he had with his ex he took notice of this vehicle.

Grant said the vehicle came to a stop in front of his residence and the female occupant began taking photographs of Grant's residence with her cell phone, while still seated in her vehicle. Grant said that he opened his window and asked the female what she was doing. Grant said the female told him that she was assessing his property and that she worked for a real estate agency but did not state which agency she worked for. Grant said he attempted to go outside to talk with this female but she drove away before he could get outside.

Grant described the vehicle as a newer white four door sedan. Grant described the female as white with short blond hair in her forties or fifties with a heavier set face and said she was wearing glasses. Grant further stated that there was really nothing distinct about the female. Grant said that he had never seen this female before nor has he seen her since that day.

Grant said that shortly after this incident occurred he reached out to his neighbor William MacDonald (DOB: █████) of 6 Coventry Road because his neighbor had exterior surveillance cameras. Grant said that his neighbor was able to provide him with two screenshots of the female's vehicle driving down their street. The screenshots were date and time stamped. One screenshot was from September 19, 2019 at 0832 hours and the other was from September 19, 2019 at 0834 hours.

In viewing the screenshots I observed a newer white four door sedan. Based on the camera angle and video quality I was unable to observe a license plate number or determine the make or model of the vehicle. Furthermore I was unable to view the occupant of the vehicle at all. Gary later forwarded me copies of these screenshots that were later added to this case file for case inclusion.

Grant said that the previous day he had been at home when Nashua Assessor Gary Turgiss (DOB: █████) showed up at his residence to assess the property because it had recently been sold. Grant said that in talking to Gary he asked him if they had previously sent someone out to take picture and Gary told him that they had not. Grant said that Gary left but came back and asked if the female had been driving a white sedan and Grant told him that she had been. Grant said Gary told him he though he knew who the female was and if she was who he thought she was then she did not have any issue with Grant but rather with Gary and the Nashua Assessing Department.

Based on Grants account of what happened it did not appear that a criminal offence had occurred regardless of who the female in the vehicle had been. With no further questions for Grant and with him not having any further information to provide me with the interview was ended at approximately 1210 hours. After the interview was complete Grant was escorted back to the front lobby of the Nashua Police Department where he was thanked for his time and I ended my contact with him.

A copy of this interview was saved on the Arbitrator software.

DETECTIVE LOMBARDI D16

Nashua Police Department
2019-10-31 0916HRS INFO RECEIVED REF 4 COVENTRY RD
Ref: 19-46336-OF

On November 1, 2019 at approximately 0830 hours I made contact with William MacDonald (DOB:█████) of 6 Coventry Road. In speaking with MacDonald I asked him if he still had surveillance footage from September 19, 2019. MacDonald said that he would check with his brother-in-law, who set up his security cameras and get back to me. Later that day MacDonald informed me that his surveillance system recording did not go back that far. MacDonald was thanked for his time and ended my contact with him. With no other surveillance footage located in the area I was unable to determine who the white sedan is registered to.

DETECTIVE LOMBARDI D16

On November 1, 2019 at approximately 1235 hours I made contact with Nashua Assessor Gary Turgiss (DOB: ▮▮▮▮). In speaking with Gary I questioned him in reference to the conversation he had with Nashua resident, Gary Grant (DOB: ▮▮▮▮). Gary said he had been at Grant's residence of 4 Coventry Road to qualify the recent sale of the property. Gary said that in talking to Grant, Grant had asked if they had previously sent someone to his residence to take photographs. Gary told Grant that they had not. Grant told Gary that a female had shown up in September and mentioned something about assessing his property while taking photographs of it. Gary said initially he thought it could have been one of the building inspectors and did not think much of it.

Gary said that after he left Grant's residence he thought more about his conversation with Grant and realized that the person taking pictures could have been Laurie Ortolano (DOB: ▮▮▮▮. Gary said he went back and asked Grant to describe the female and the vehicle she drove. Gary said Grant described the female as white with short blond hair with glasses and said that she had been driving a white "Camry type car".

Gary said that he suspected this could have been Ortolano because his brother, Greg Turgiss (DOB: ▮▮▮▮) had previously informed him that he believed that Ortolano had been driving a white Audi when she had been following him while he was working. A DMV query had previously been conducted and did not list Ortolano or her husband as having any white four door sedans registered to either of them, Audi or otherwise.

With Gary not having any further information to provide me with and with no further questions for him at that time I thanked him for speaking with me and ended my contact with him.

DETECTIVE LOMBARDI D16

2020-07-14 1415HRS REVIEW OF KLEINER TRANSCRIPTION
Ref: 19-46336-OF

were aware of the changes in assessment values that Ortolano had raised concern with and these changes had previously been approved by the City. The City of Nashua Assessing Department and I reviewed the property cards of the properties Ortolano suspected as being involved in bribery and no issues with the data on the cards was discovered.

In speaking with members of the Assessing community from Nashua, the state level, and independent agencies I was informed that changing the assessed value of a property for a data correction issue without going through the abatement process is an acceptable and common practice.

In further investigating this issue I questioned Greg, Gary, and the property owners that owned the properties Ortolano suspected as being involved in bribery. During these conversations no one made any admissions to participating in any form of bribery.

Based on the information received during the course of this investigation I found insufficient probable cause to suggest that Greg or Gary had been involved in any form of bribery or improper assessing practices.

In regards to the accusation of Witness Tampering, Ortolano informed the Nashua Police Department that Assessing Department employee, Walley had informed her that her boss, Kimberly Kleiner (DOB: ), who is the director of Administrative Services for the City of Nashua, had threatened Walley and other Assessing Department employees not to participate in any investigations involving the Nashua Assessing Department.

Although Walley never reported this accusation to the Nashua Police Department she was questioned about it. During this time Walley admitted that it was possible she had been the only one within the Assessing Department that had interpreted a story that Kleiner had shared during a staff meeting as Kleiner telling the employees not to participate in an investigation. Walley further stated that it was also possible that she had misinterpreted Kleiner's intention of telling the story she did.

In speaking with all of the other Assessing Department employees and people present at the staff meeting in question, none of them reported being threatened or coerced into not participating with any investigations involving the Nashua Assessing Department. Most advised that the contrary was true in that Kleiner had been encouraging them to be truthful and forthcoming during any investigations. They further explained that the intent of the story Kleiner had shared was to caution them not to jump to conclusion before being made aware of all of the facts of rumors and speculations they had been hearing.

As of this time there is insufficient probable cause to suggest that Kleiner had participated in any form of Witness Tampering.

In closing based on all the information gathered and received during the course of this investigation there is insufficient probable cause to suggest that that a criminal offense has occurred involving the City of Nashua Assessing Department or any of its employees. I request that this investigation be suspended at this time pending receiving any new or further information.

NOTHING FURTHER AT THIS TIME / DETECTIVE LOMBARDI D14

NPD-LO-263