# State of New Hampshire

## Board of Tax and Land Appeals

Michele E. LeBrun, Chair
Albert F. Shamash, Esq., Member
Theresa M. Walker, Member
Anne M. Stelmach, Clerk

Governor Hugh J. Gallen
State Office Park
Johnson Hall
107 Pleasant Street
Concord, New Hampshire
03301-3834

**In Re: City of Nashua**

**Docket No. 29261-19RA**

**ORDER FOR REASSSSMENT**

Based upon a full review of the record, including the "City's" acknowledgment of the need for a "full reassessment, including a measure and list," the board orders the City to complete a "full revaluation" for tax year 2022 pursuant to the board's reassessment authority under RSA 71-B:16, III and RSA 71-B:16-a. The full revaluation shall comply with all applicable statutes and regulations, including the "Part 600" rules enacted by the department of revenue administration ("DRA").

Rev 601.24 defines a full revaluation as follows:

> "Full revaluation" means the revaluation of all taxable and nontaxable properties in a municipality, with a complete measure and listing of all taxable and nontaxable properties to occur at the same time of the establishment of the new base year, to arrive at full and true value as of April 1. The term includes "full reappraisal" and "full reassessment."

The Part 600 rules contain specific requirements for a revaluation ordered by the board, including additional oversight responsibilities by the DRA. [See, e.g., Rev 601.09, 602.01, 602.03, 602.06, 603.02 (a) (6) and (7) and (c), 603.04 (g) (2) and (i) and 607.02.]

The board opened this docket to determine whether it should exercise its statutory reassessment authority after learning the City had not performed a "measure and list" since "the early 1990's" and resulting concerns regarding the legality and proportionality of the City's

assessments. (See June 19, 2019 Order and Hearing Notice, p. 2.) At the August 6, 2019 hearing, the board received testimony and documents from the City and its assessing contractor (KRT Appraisal) explaining the City's current assessing practices and testimony and submissions from several taxpayers, as well as additional documents and testimony from the DRA.

Shortly after the hearing, the City made a motion to respond to the taxpayer submissions, which the board granted. (See August 19, 2019 Order Granting City's Motion to Respond to Submissions.") On October 4, 2019, the City filed its "Response" which included representations concerning the City's plans for a full measure and list reassessment, a report prepared by David Cornell, an "outside expert" retained by the City (the "Cornell Report"), and the City's current "Assessor Manual and Procedures"[1] (discussed further below).

Paragraph 15 of the City's Response states:

> The City is committed to performing a full reassessment, including a measure and list[,] for tax year 2022. Legislation to fund this endeavor, City of Nashua Board of Aldermen Resolution R-19-159 was passed on August 13, 2019. Said reassessment shall be conducted in accordance with all applicable statutes, regulations and best practices.

In Paragraph 16, the City states it has received four proposals from revaluation firms which are currently being evaluated" (in response to a "Request for Proposals" sent to "over 20 revaluation firms"). In Paragraph 62, the City states: "This multi-year, $1.3 million (or more) endeavor is specifically designed to, among other things, improve the accuracy and consistency of the City's data."

Paragraph 6 states the City has "over 25,000 residential properties . . . and approximately 2,740 commercial properties." The City's representatives testified at the hearing its belief that a

---

[1] The latter document notes revisions enacted as of "10/1/2019." (Cf. Cornell Report, p. 22.) The board's August 19, 2019 Order had requested a copy of the "data collection manual in the form it presently exists."

three-year timeframe (commencing in 2020) is needed in order to complete adequately a full measure and list of all properties by 2022.

In paragraphs 17-19, the Response provides further assurances to the board regarding the steps the City is taking to improve its assessment practices. These steps include: "updating its computerized assessing capabilities" with "the latest version of AssessPro CAMA software"; submission of the Cornell Report ("unredacted and unabridged"); implementation of "many of Mr. Cornell's recommendations" with an "inten[tion] to implement them all"; and "updat[ing] its assessing manuals [including the data collection manual] with the assistance of Mr. Cornell."[2]

Data collection manual

These representations in the Response support this exercise of jurisdiction and Order. The request in the Response (p. 40) that the "[b]oard close this docket with no further action" is therefore denied.[3] This Order is necessary and appropriate due to the time elapsed since the last full revaluation and the other facts presented and is consistent with prior board orders. [See, e.g., the Orders for Reassessment in Town of Barnstead, BTLA Docket No. 18263-2000RA (August 6, 2001); and Town of Deering, BTLA Docket No. 18409-2000RA (October 5, 2001). See also Sirrell v. State, 146 N.H. 364, 374, 374, 378 and 382 (2001).] [4]

---

[2] The Cornell Report (pp. 25-26) references the "Standard on Mass Appraisal of Real Property (IAAO 2017)." This publication, in Section 3, contains a fuller discussion of the importance and recommended methodology for "Collecting and Maintaining Property Data" than the "alternatives" section (Section 3.3.5) quoted by Mr. Cornell.

[3] The remainder of the Response details controversies between the City and two taxpayers regarding specific properties which need not be addressed here. As noted in the Response (paragraph 69), one of the taxpayers has appealed the tax year 2018 assessment on her property to the board, an appeal which is being processed and will be decided in due course. (See Laurie A. Ortolano Trust v. City of Nashua, BTLA Docket No. 29472-18PT.)

[4] At the August 6, 2019 hearing, the DRA representative mentioned the possible filing of a joint petition with the City or, in the alternative, the filing of a petition for reassessment under the DRA's own authority. Either alternative would allow for an additional level of review and approval of the reassessment contract by the DRA and additional monitoring and transparency during the reassessment process; both of these objectives were mentioned by the DRA representative at this hearing.

The board commends the City for recognizing the need for a full reassessment and already taking the steps summarized above. The Order should not be seen as disruptive of the City's plans but simply as supportive of those efforts with recognition of the continuing commitment required to achieve the ongoing goal of assessment equity and proportionality.

As noted at fn. 1, the board asked the City to provide a copy of its data collection manual. The Assessor Manual and Procedures document submitted by the City, however, is deficient in several respects. First, this document only contains one "Data Collection" section (Section 5) that only addresses "Commercial" property and not residential property. Second, this document does not fulfill the requirements stated in Section 3.3.2, including subsection 3, of the Standard on Mass Appraisal of Real Property (referenced in the Cornell Report and fn. 2). This section details many "essential" elements to make data collection "accurate and consistent."[5] An important, preliminary step in the reassessment process is development of a data collection manual that complies with these standards and the City should complete this step, updating the board as prescribed below.

Based on the above considerations and reasons, the board orders the City to complete a full revaluation by tax year 2022, including a full measure and listing of all properties, in compliance with all applicable rules and regulations, including the DRA's Part 600 rules. When the reassessment contract is signed and approved by the DRA, the City shall provide a copy to

---

[5] See, e.g., Standard Section 3.3.2.3 (Data Collection Manual), which states:

> A clear, thorough, and precise data collection manual is essential and should be developed, updated and maintained. The written manual should explain how to collect and record each data item. Pictures, examples, and illustrations are particularly helpful. The manual should be simple yet complete. Data collection staff should be trained in the use of the manual and related updates to maintain consistency. The manual should include guidelines for personal conduct during field inspections, and if interior data are required, the manual should outline procedures to be followed when the property owner has denied access or when entry might be risky.

the board. Thereafter, the City shall file progress reports with the board, at least every three months, to update the steps taken towards completion of the full reassessment. See Tax 208.06.

SO ORDERED.

BOARD OF TAX AND LAND APPEALS

Michele E. LeBrun, Chair

Albert F. Shamash, Member

Theresa M. Walker, Member

**CERTIFICATION**

I hereby certify a copy of the foregoing Order and Hearing Notice has been mailed this date, postage prepaid, to: Steven A. Bolton, Esq., City of Nashua, PO Box 2019, Nashua, NH 03061, counsel for the City; Chairman, Board of Assessors, City of Nashua, PO Box 2019, Nashua, NH 03061; Peter C.L. Roth, Esq., counsel for DRA and James Gerry, Director of Property Appraisal, State of New Hampshire, Department of Revenue, Administration, 109 Pleasant Street, Concord, NH 03301; and KRT Appraisal, 191 Merrimack Street - Suite 701, Haverhill, MA 01830, Contracted Assessing Firm.

Date: October 29, 2019

Anne M. Stelmach, Clerk