# THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.  
SOUTHERN DISTRICT

SUPERIOR COURT  
No. 2021-CV-00354

Laurie Ortolano

v.

City of Nashua

## ORDER

The plaintiff, Laurie Ortolano, has brought a petition under New Hampshire's Right-to-Know Law, RSA 91-A, seeking access to records from the City of Nashua's (the "City") Assessing Department (the "Department"). On December 6, 2021, the Court held a bench trial on the petition. At the trial, the Court heard testimony from the City's Director of Administrative Services Kimberly Kleiner, the City's Deputy Director of Information Technology ("IT") Nick Miseirvitch, and former Administrative Supervisor of the Department Louise Brown. After consideration of the evidence, arguments, and the applicable law, the Court finds and rules as follows.

## Background

On June 16, 2021, the petitioner made an email request to Ms. Kleiner seeking access to specified correspondence. The request asked for all emails sent and received by the following current and former City employees: Louise Brown, between November 1, 2020 and her last day of work, December 25, 2020; Amanda Mazerolle, a subordinate of Ms. Brown, between November 1, 2020 and March 7, 2021; and Karina Ochoa, Ms. Kleiner's administrative assistant, between November 1, 2020 and March 7, 2021. (See Defs.' Ex. A-1.) The City replied on June 23, 2021 informing the petitioner that Ms. Mazerolle and Ms. Ochoa would both conduct reasonable searches for records

matching the petitioner's descriptions and that the petitioner would receive an update or response by July 16, 2021. However, the City also told the petitioner that it no longer had "reasonable access to Ms. Brown's emails from the time of her employment." (Defs.' Ex. A-2.)

Dissatisfied with the City's response, the petitioner brought the current suit on July 19, 2021. On September 3 and September 17, 2021, the records for Ms. Mazerolle and Ms. Ochoa were sent to the petitioner. Also on September 17, 2021, the petitioner requested additional records under the Right-to-Know Law. The request specifically asked for "copies of emails to Louise Brown from Karina Och[oa], Kim Kleiner, John Griffin, Gary Turgiss, Greg Turgiss, Mike Mandile, Doug Dame, Lindsey (the new office clerk) and Amanda Mazerolle for the time period of November 1, 2020 through her last day of work for the City of Nashua." (Defs.' Ex. A-4.) In response, the City stated it would not reproduce the emails already produced in response to the petitioner's earlier request, but would conduct reasonable searches for emails sent between Ms. Brown and the other named individuals between November 1 and December 25, 2020. The City told the petitioner to expect a response or update by October 18, 2021. (See Defs.' Ex. A-4.) On October 29, 2021, the City emailed the petitioner records, which consisted of emails located by Ms. Kleiner from a search of her personal Outlook that were sent to or from Ms. Brown for the requested time period. (See Defs.' Ex. A-3.)

On December 6, 2021, the Court held a bench trial on the petition. Though the City had submitted numerous responsive documents to the petitioner's request since she filed her petition, and although the petitioner does not explicitly say so, it appears that she believes she has not yet been provided with all responsive records to which

she is entitled.[1] Mr. Miseirvitch testified regarding the City's email retention policy and what systems are in place to permanently store employee documents. Specifically, he testified that emails in Outlook are automatically deleted after a specific period of time has elapsed. This timeframe was initially 45 days, increased to 90 days at the onset of the COVID-19 pandemic, and again increased to 120 days in the summer of 2020. By the time the petitioner requested Ms. Brown's emails, more than 120 days had passed since she left employment with the City. Any emails in Ms. Brown's Outlook account, therefore, had already been automatically deleted. However, Mr. Miseirvitch also testified that employees are advised to move important emails to their U-drives to permanently save them as PST files, which are not subject to the same automatic deletion as emails in Outlook. Ms. Kleiner testified that, at the time of the petitioner's request, there were not any PST files on Ms. Brown's U-drive. Ms. Brown testified that while she did regularly correspond over email with a number of different individuals as part of her job, she did not regularly save emails to which she was a party on the U-drive. She testified that she did save some emails that were forwarded to her when she was requested to do so.

Mr. Miseirvitch also testified that files not located in Outlook or on a U-drive may still be accessed via the City's backup tapes, derived from regular system backups. He testified that it is possible to convert records from these backup tapes into a readable format and search them. He said that for a backup that occurred approximately five months ago (the timeframe relevant to the petitioner's request), the process would add

---

[1] At the trial, the petitioner said that when she made the September 17, 2021 request she believed the records she received as a result "were not going to be complete" because they came "from the outside of Ms. Brown." (Trial at 10:11.)

"a couple of hours" to the time it takes to search for responsive documents. (Trial at 10:54.) A search of the backup tapes was not done in response to the petitioner's records requests.

## Standard of Review

"The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." N.H. Right to Life v. Dir., N.H. Charitable Trs. Unit, 169 N.H. 95, 103 (2016) (quoting RSA 91-A:1). "Thus, the Right-to-Know Law furthers our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Id. (quotation omitted); see also N.H. CONST. pt. 1, art. 8 ("Government . . . should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted."). "Although the statute does not provide for unrestricted access to public records, [the Court] resolve[s] questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives." Id. (quotation omitted). Consistent with this statutory purpose, the Court may "look to other jurisdictions construing similar statutes for guidance, including federal interpretations of the federal Freedom of Information Act (FOIA)." Censabella v. Hillsborough Cty. Attorney, 171 N.H. 424, 426 (2018).

## Analysis

RSA 91-A:4, IV, states that a public body "shall, upon request for any governmental record reasonably described, make available for inspection and copying

any such governmental record within its files when such records are immediately available for such release." In this case, there is no dispute that the petitioner reasonably described Ms. Brown's emails in her original records request.[2] The question before the Court is whether the City conducted a reasonable search in response to this request despite it not searching the backup tapes.

The petitioner argues the City did not, as the City did not cite any exemption under RSA 91-A:4, when it did not disclose Ms. Brown's emails. She argues "it is unclear why the City does not have reasonable access to these emails." (Pet. ¶ 13.) At the trial, she also argued the emails were reasonably available because they can be accessed from the backup tapes. The City maintains it "conducted a search reasonably calculated to produce all reasonably described and relevant documents." (Def.'s Mem. 4.) The City claims that it met its requirement under RSA 91-A by looking for emails in Ms. Brown's Outlook application and her personal U-drive and it was not required under RSA 91-A:4, III(b) to search the City's backup tapes because such tapes are not "readily accessible" as defined by the statute. (Id.) The City characterizes a search for emails on its backup tapes as being "exactly the kind of speculative, time-consuming fishing search that is not required by RSA chapter 91-A." (Id. at 5.) The City, citing RSA 91-A:4, VII, further claims that it is "not required to maintain its records or perform searches which are not compatible with its own document retrieval system." (Id.)

"[T]he adequacy of an agency's search for documents is judged by a standard of reasonableness." ATV Watch v. N.H. Dep't of Transp., 161 N.H. 746, 753 (2011). Accordingly, "[t]he crucial issue is not whether the relevant documents might exist, but

---

[2] For example, Ms. Kleiner testified that she "thought [the request] was reasonably described." (Trial at 10:25.)

whether the agency's search was reasonably calculated to discover the requested documents." Id. "The search need not be exhaustive." Id. "Rather, the agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents" by, for instance, "providing affidavits that are relatively detailed, nonconclusory, and submitted in good faith." Id. "Once the agency meets its burden to show that its search was reasonable, the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." Id.

The New Hampshire Supreme Court has not addressed whether a reasonable search under the Right-to-Know Law could require searching backup tapes. The Court thus turns to federal courts' interpretation of FOIA for guidance. Censabella, 171 N.H. at 426. The Court finds instructive the considerations articulated in Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 515 (D.C. Cir. 2011). There, the United States Court of Appeals for the District of Columbia Circuit reversed the district court's grant of summary judgment in favor of the defendant as to whether its search for requested documents under FOIA was adequate. See id. at 515. The court remanded for further clarification as to whether backup tapes might be a required aspect of that search, instructing the district court to consider (1) whether any backup tapes potentially relevant to the request existed; (2) if so, whether their responsive material would be reasonably likely to add to what to what was already produced; and (3) if the first two questions were answered in the affirmative, whether there was a "practical obstacle to searching them." Id.

In applying those factors to the instant case, first, it is undisputed that the City's backup tape system exists, can be searched, and that files such as those requested by the petitioner are retrievable from the backup tapes.[3] Cf. Muttitt v. U.S. Dep't of State, 926 F.Supp.2d 284, 298 (D.D.C. 2013) (holding defendant could not be required to search a purported electronic recordkeeping system where the court found there was "no reason to believe that an electronic backup recording system of the kind described by the plaintiff actually exists."). Likewise, as to the second factor, it is undisputed that there are likely additional responsive documents on the City's backup system.[4] Cf. Steward v. U.S. Dep't of Just., 554 F.3d 1236, 1244 (10th Cir. 2009) (noting that a search of the backup system for responsive emails would be unlikely to reveal any additional communications not previously uncovered where the backup system did not keep files for more than six months and where the requested material would have pre-dated that time).

The third factor—whether there is any practical obstacle to accessing the responsive records from the backup tapes—is at the heart of the present dispute. The City argues there is a practical obstacle as the backup tapes are not "readily accessible" and that a search for the requested records on the backup tapes would be excessively time-consuming and unduly burdensome. (Def.'s Memo. at 4, 5.) However, the Court has no difficulty finding that the emails the petitioner seeks are readily accessible and

---

[3] Mr. Miseirvitch even testified that he performed a search of the backup tapes in response to a separate Right-to-Know Law request. His credible testimony supports these findings.

[4] For example, Ms. Brown testified that "I was at one point I was requested to save the board of assessors' members emails so they were forwarded to me and I put them in the legal department's folder." (Trial at 11: 23.) She also testified that she received emailed questions about assessing, which she "responded to" or forwarded, and that she deleted. (Id.)

that no practical obstacle to their retrieval exists. This finding is firmly rooted in the credible testimony of Mr. Miseirvitch.

First, to the extent the City contends that it need not search the backup tapes because the added time renders the search unduly burdensome, the Court disagrees. Courts "have held that agencies are excused from complying with FOIA requests where review[ing], redact[ing], and arrang[ing] for inspection [of] a vast quantity of material presents an unreasonable burden." Long v. U.S. Immigration & Customs Enforcement, 149 F. Supp. 3d 39, 55-56 (D.D.C. 2015) (quotation omitted). That said, "when an agency claims that complying with a request is unreasonable, it bears the burden to provide [a] sufficient explanation as to why such a search would be unreasonably burdensome." Ayuda, Inc. v. U.S. Fed. Trade Comm'n, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (quotation omitted). "Among the factors that a court may consider in assessing the claimed burden are the amount of time, expense, and personnel that would be required to complete document searches and production, as well as whether the agency has the existing technology or would have to purchase new technology to perform those tasks." Long, 149 F. Supp. 3d at 55.

As discussed above, the City has the technological capability to retrieve responsive documents from backup tapes and has already done so with respect to an unrelated records request. Mr. Miseirvitch also testified that the time it would take to restore a backup that would locate documents responsive to the petitioner's request "should only take a couple of hours." (Trial at 10:54.) This additional time does not render the resulting search so time-consuming as to obviate the City from having to perform the search in the first place. See Trentadue v. U.S. Fed. Bureau of

Investigation, 572 F.3d 794, 807 (10th Cir. 2009) (noting that a manual search of more than one million pages in a file that would take thousands of hours would be unreasonably burdensome); Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement, No. 16-CV-387, 2017 WL 1494513, at *12 (S.D.N.Y. Ap. 19, 2017) (finding defendant sufficiently demonstrated its response to a FOIA request would be unreasonably burdensome where defendant showed it would take up to 58 work years to comply with the request).

There is nothing in the record to indicate there are any other practical obstacles to accessing the backup system in order to comply with the petitioner's request. For instance, the City has not alleged it would need to heavily redact the emails once located. Cf. Long, 149 F. Supp. 3d at 56–58 (finding defendants demonstrated search and redaction of five terabytes of information would be unduly burdensome); Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. U.S. Dep't of Homeland Security, 8 F. Supp. 3d 188, 203 (D. Conn. 2014) (finding it unreasonably burdensome to require agency to locate, review, and heavily redact 26,000 packets of 50 pages each). There is also nothing in the record to indicate that accessing the backup tapes for this purpose would interfere with the City's network functionality or that it lacks the manpower or technological capabilities to conduct such a search. Cf. Ancient Coin Collectors Guild v. U.S. Dep't of State, 866 F. Supp. 2d 28, 34 (D.D.C. 2012) (holding that the defendant was not required to search the backup system where the defendant "persuasively argue[d]" that the "backup system was not designed to retain documents in an easily searchable form, therefore, any search efforts would 'significantly interfere' with the functioning of [the defendant's] entire information system"); Project on

Predatory Lending of Legal Servs. Ctr. of Harvard Law Sch. v. U.S. Dep't of Just., 325 F. Supp. 3d 638, 655 (W.D. Pa. 2018) (finding that it would be unduly burdensome to require the defendant to search and produce records from certain hard drive materials because the hard drives contained more than nine terabytes of information and the defendant explained it did not have the technological capability to process, store, host, or review that volume of data on its servers). In fact, the testimony of Mr. Miseirvitch establishes that the retrieval process is not subject to any significant obstacles.

Finally, the Court disagrees with the City that it is not required to search the backup tapes because such a search is incompatible with its own document retrieval system. The Court does not find searching the backup tapes would be incompatible with the City's retrieval system; rather, a search of the backup tapes would be a supplement to that system. Also, the City's records must be "maintained in a manner that makes them available to the public." Hawkins v. N.H. Dep't of Health & Human Services, 147 N.H. 376, 379 (2001). A requestor cannot control how an agency catalogues or organizes its files. "[A]n agency's failure to maintain the files in a way necessary to meet its obligations under the [Right-to-Know Law] should not be held against the requestor." Dep't of Envtl. Prot. v. Legere, 50 A.3d at 265 (Pa. Commw. Ct. 2012). "To so hold would permit an agency to avoid its obligations . . . simply by failing to orderly maintain its records." Legere, 50 A.3d 260, 265.

Based on the foregoing, the Court finds the City has not met its burden to show that a search of the backup tapes was not required. Thus, the City has not performed an adequate search under RSA 91-A. Accordingly, the Court GRANTS the petitioner's motion compelling the City to conduct a reasonable search of its backup tapes for

responsive records. See ATV Watch, 161 N.H. at 753. To the extent the petitioner has already received documents responsive to her request regarding Ms. Brown's emails, (see Def.'s Ex. A-4), the City need not reproduce those documents.

### Other Relief

The petitioner asks the Court to "require those representatives of the City responsible for such violations to undergo appropriate remedial training at such persons' expense." (Pet. 5.) The petitioner also asks the Court to "stop future violations of RSA 91-A:4 by the City." (Id.)

> The court may . . . enjoin future violations of this chapter, and may require any officer, employee, or other official of a public body or public agency found to have violated the provisions of this chapter to undergo appropriate remedial training, at such person or person's expense.

RSA 91-A:8, V. Because the term "may" is generally interpreted as permissive, the Court has discretion in ordering this as a remedy. See Lambert v. Belknap Cnty. Convention, 157 N.H. 375, 381 (2008).

The issuance of injunctions, either temporary or permanent, has long been considered an extraordinary remedy." ATV Watch, 155 N.H. at 437–38 (quotation omitted). "An injunction should not issue unless there is an immediate danger of irreparable harm to the party seeking injunctive relief, there is no adequate remedy at law and the party seeking an injunction is likely to succeed on the merits." Id. (quotation, ellipses, and brackets omitted). "The trial court retains the discretion to decide whether to grant an injunction after consideration of the facts and established principles of equity." Id. (quotation omitted).

Considering the factual circumstances of this case, the parties' arguments, and equitable principles, the court orders the City to participate in remedial

training but declines to enjoin future violations. Here, the court finds that future violations can best be avoided through requiring participation in remedial training regarding the City's compliance with Right-to-Know Law records requests. Accordingly, the Court declines to exercise its discretionary power to enter an injunction against the City. The parties shall submit memoranda within 30 days of the Clerk's notice of this Order addressing their respective proposals regarding the nature and duration of this remedial training. The training proposals shall address only how the City's searches in response to requests for records must be conducted under RSA 91-A and not whether the City's email retention policy complies with RSA 33-A.[5]

So ordered.

Date: February 7, 2022

Hon. Charles S. Temple,
Presiding Justice

Clerk's Notice of Decision
Document Sent to Parties
on 02/07/2022

---

[5] While the email retention policy is relevant to the RSA 91-A determination in this case, whether the policy complies with RSA 33-A is beyond the scope of this Right-to-Know Law proceeding.