# Exhibit D

**In the Matter Of:**

LAURIE ORTOLANO vs

CITY OF NASHUA

# CELIA LEONARD

*May 13, 2024*



Duffy & McKenna Court Reporters, LLC
P.O. Box 1658 Dover, NH  03821
1-800-600-1000
603-743-4949 | 603-743-4952 (fax)
www.dmreporting.com

dmreporting@stenosearch.com (Scheduling)
camille@stenosearch.com (Billing/Production)

```
                                     VOLUME:  I
                                     PAGES:   1 - 74
                                     EXHIBITS: None

          UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE


                 CIVIL ACTION NO. 22-cv-000326-LM


--------------------------------------x
LAURIE ORTOLANO,

     Plaintiff

v.

THE CITY OF NASHUA, ET AL.,

     Defendants
--------------------------------------x
```

DEPOSITION OF CELIA LEONARD taken on behalf of the Plaintiff, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Lauren M. Buzzerio, a Registered Professional Reporter, and Licensed Shorthand Reporter, in and for the State of New Hampshire, at the offices of Cullen Collimore Shirley PLLC, 37 Technology Way, Nashua, New Hampshire, on Monday, May 13, 2024.

------------------------------------------

```
 1                  A P P E A R A N C E S
 2
        William Aivalikles, Esq.
 3      LAW OFFICE OF WILLIAM AIVALIKLES, P.A.
        253 Main Street
 4      Nashua, New Hampshire 03060
        (603) 880-0303/william@nhtriallaw.com
 5      Attorney for the Plaintiff

 6
        Kurt S. Olson, Esq.
 7      OLSON LAWYERS
        31 Franklin Road
 8      Salisbury, New Hampshire 03268
        (603) 748-1960/kolson54@gmail.com
 9      Attorney for the Plaintiff

10
        Russell F. Hilliard, Esq.
11      BROOKE LOVETT SHILO
        159 Middle Street
12      Portsmouth, New Hampshire 03801
        (603) 436-7046/rhilliard@upton-hatfield.com
13      Attorney for the Defendants,
        Steven Bolton and Celia Leonard
14

15      Brian J.S. Cullen, Esq.
        Cullen Collimore Shirley, PLLC
16      37 Technology Way
        Nashua, New Hampshire 03060
17      (603) 881-5500/bcullen@cullencollimore.com
        Attorney for the Defendants,
18      City of Nashua, Michael Carignan, and Frank Lombardi

19
        Dona Feeney, Esq. (via Zoom)
20      FRIEDMAN FEENEY, PLLC
        95 North Street, Suite 5
21      Concord, New Hampshire 03301
        (603) 783-5105/dfeeney@friedmanfeeney.com
22      Attorney for the Defendant,
        Kimberly Kleiner
23
```

```
 1                    A P P E A R A N C E S

 2
       Michael A. Pignatelli, Esq.
 3     RATH YOUNG AND PIGNATELLI, P.C.
       20 Trafalgar Square
 4     Nashua, New Hampshire 03063
       (603) 889-9952/map@rathlaw.com
 5     Attorney for James Donchess

 6


 7     ALSO PRESENT:

       Laurie Ortolano
 8     Christine Becotte
 9     Steven Bolton

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

1    they could not do their job with her sitting in our
2    locked offices.
3         Q.   And did you tell that to the police?
4         A.   That she was being disruptive?
5         Q.   No.  That you couldn't do your work and it
6    was interfering with your assistants ability to
7    work?  Did you tell that to the police?
8         A.   Yes, I believe I did.
9         Q.   You did.  So that would be in their
10   report?
11             MR. CULLEN:  Objection.
12        A.   I don't know what they choose to put in
13   their report or not.  But it was my recollection
14   that I did speak to them and indicate that we could
15   not do the office business with a private citizen
16   sitting there.
17        Q.   And even though you made that statement to
18   the police, according to the police report, they
19   felt that there was no crime that was committed?
20        A.   The police report speaks for whatever the
21   police report says.  So yeah.
22        Q.   Did you find it strange that based upon
23   what you told the police that they concluded no

```
 1    somebody was sitting in front of my office.  And
 2    when I took out my phone to do so, Ms. Ortolano
 3    invited me to do so and actually waved at the
 4    camera.
 5          Q.   So you felt that that would be important
 6    for the police to see those photographs?
 7          A.   Yes.
 8          Q.   And you took those photographs in an
 9    effort to document some of your observations?
10          A.   Correct.
11          Q.   And you had no fear whatsoever pulling out
12    your camera and pointing it at Laurie and taking her
13    picture, did you?
14          A.   No fear?  No.  I was about eight feet
15    away.  She couldn't reach me from there.
16          Q.   You said that her behavior was erratic.
17    Can you describe her erratic behavior for me?
18          A.   Sitting in a locked office after being
19    asked to leave repeatedly by numerous people to me
20    is erratic behavior.  She then got up, got agitated
21    walking around, and the re-sat -- and then sat down
22    in front of the other door near the watercooler.  I
23    found that erratic.
```

1           Q.   You told the police that you were
2    concerned about recent violent actions against
3    government employees.  What incidents were you
4    talking about?
5           A.   The January incidents in D.C.
6           Q.   And did you equate her sitting in your
7    office area with the January 6th insurrectionists
8    that tried to overturn an election?
9           A.   Equate -- yeah.  It felt really
10   threatening.  And she had two backpacks.  I didn't
11   know what was in there.  In hindsight, I probably
12   should have told all my staff to get out after we
13   called the police.  Because I had no idea what was
14   in those backpacks.  There are -- we all have to go
15   through security to go into courts.  There's other
16   stuff.  City Hall has none of that.  I just -- it
17   was threatening and weird.
18          Q.   Did you think that she would be a suicide
19   bomber going to City Hall to blow up the place?
20          A.   Stranger things have happened.  And I'd
21   rather be wrong about that than be right and have us
22   all dead.
23          Q.   Well, did she ever say, for example, where