UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Laurie Ortolano,** | ) |
|         **Plaintiff** | ) |
| | ) |
| v. | ) Civil Action No. 22-cv-00326-LM |
| | ) |
| **The City of Nashua, et al.,** | ) |
|         **Defendants** | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO DEFENDANT CITY OF NASHUA'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION.**

A City acts through its official and employees, and three of the remaining defendants Ortolano has sued are/were high Nashua officials who make high-level policy decisions. They are Kimberly Kleiner ("Kleiner"), Steven Bolton, ("Bolton") and Michael Carignan ("Carignan"). In addition, another high official, Mayor James Donchess ("Donchess") also makes policy, but is no longer a defendant in the action. It is the activity of high officials, plus those whose acts they oversaw and ratified that form the gravamen of Ortolano's claims. Separate motions to dismiss and oppositions have be filed regarding defendants Kleiner, Carignan, Lombardi, Bolton, and Leonard, as well as Feoli, who is not a Nashua employee or official. The facts and arguments in those motions and oppositions are largely repetitive and Ortolano submits that the need not all be restated here.

In this memorandum, Ortolano will primarily address whether her claims can survive summary judgment under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), and its progeny. She will begin by stating facts pertaining to Donchess, now a nonparty who does

1

not have a motion to dismiss. She will then apply those facts to demonstrate she has made out a proper *Monell* claim.

**II.    CONCISE STATEMENT OF FACTS.**

1. At all times relevant to this action, Donchess was the Mayor of the City of Nashua.

2. When asked on deposition whether City employees should treat citizens with civility, Donchess responded, that if citizens were "abus[ing]" an employee, "I think the employee is reasonable to say I don't want to – I don't want to deal with that person anymore." Exh. A, Donchess Deposition, at 8. Not shying away from his perceived right of Nashua employees to service taxpayers, Donchess said again, "if the resident has been abusive towards the employee, maybe [the employee's] obligation to respond is not the same." *Id.* at 11.

3. When Donchess was asked whether it was appropriate for Bolton to refuse to give Ortolano an appointment in every instance to go to the Legal Department City Hall when a condition of her trespass plea was that she could only go to the Legal Department by appointment, he responded that Bolton had no obligation to meet someone who trespassed, even for legitimate City business. *Id.* at 33-34. He further said, "there has been a long history, history of Ms. Ortolano not treating employees with respect. . . . Under those circumstances, I'm not sure they really have the obligation to continue to meet with that resident." *Id.* at 34-35.

4. On deposition, Donchess refused to accept that Judge Temple of the New Hampshire Superior Court, properly criticized and sanction the City for abuses in failing to comply with New Hampshire's Right-to-Know law. He said that the Judge's statements were inaccurate. *Id.* at 44. He also called the Judge's orders "ill-founded." *Id.* at 49, 51. He asserted that the Judge was ignoring the facts of the fact that Ortolano makes so many requests for documents. *Id.* at 62.

5. When asked whether the City's RTK policies had been put in writing, as Judge Temple had requested, he said, "I don't consider it important. We do many things according to procedures that are not written down." *Id.* at 66.

6. In regard to Ortolano, Donchess said that the City has tried to collaborate with her as the Judge requested, but has "found that impossible." *Id.* at 67.

7. Donchess said that the RTK administrator had a right not to deal with Ortolano because she misquotes what is said and it becomes part of a lawsuit.

8. At all times relevant to this action, Kleiner has operated under Donchess's supervision as Chief of staff of the Mayor and, in March 2019 as Director of Administrative Services. In March 2019, Kleiner became the head of the Nashua Assessing Department. Donchess appointed her and supervised her. *Id.* at 120.

9. Donchess admits that he had meetings with Kleiner about how Ortolano should be handled. They agreed that they would eventually comply with the right-to-know requests but "we wouldn't necessarily respond immediately. *Id.* at 165. This violates Section 71 of the City Charter.

### III. ARGUMENT.

A. <u>The Summary Judgment Standard</u>.

A federal court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must "assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010). Once the movant has made the requisite showing, "the burden shifts to the summary judgment target to demonstrate that a trialworthy issue exists." *Id*. The nonmoving party "'may not rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52–53 (1st Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). The trial court is obligated to view the facts "in the light most favorable to the nonmoving party (here, the plaintiff), consistent with record support," and gives him or her "the benefit of all reasonable

4

inferences that those facts will bear." *Noviello v. City of Boston*, 398 F.3d 76, 82 (1st Cir. 2005) (internal citation omitted).

B. <u>The City's *Monell* Defense</u>.

Although plaintiffs may sue municipalities under 42 U.S.C. § 1983, a municipality may be held liable "only where that [City]'s policy or custom is responsible for causing the constitutional violation or injury." *Abdisamad v. City of Lewiston*, 960 F.3d 56, 60 (1st Cir. 2020)(quoting *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)); *see Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). A plaintiff must demonstrate sufficient facts to indicate the existence of an official municipal policy or custom condoning the alleged constitutional violation." *Ouellette v. Beaupre*, 977 F.3d 127, 140 (1st Cir. 2020).). Stated differently, municipal bodies cannot be held liable under section 1983 for the acts of their employees on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Rather, "a plaintiff who bringing section 1983 action against a municipality bears the burden of showing that, 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Haley*, 657 F.3d at 51 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

As the facts in the various memoranda show, Donchess, Kleiner, Bolton, and Carignan were the top policymakers for their respective positions. Additionally, Donchess directly supervised Kleiner, and met with her regularly to create policy denying Ortolano access to documents to which she was entitled. Carignan was the last stop for decisions regarding day-to-day policing. He could have prevented Ortolano arrest for a charge no one previously had faced; he chose not to. Bolton and Leonard were the final word on handling the bulk of Ortolano's RTK requests and frequently flouted the law. Kleiner ran all the administrative departments and personally created

rules preventing Assessing Department employees from servicing Ortolano. She also attempted to have Ortolano arrested at least two times. Finally, Donchess's deposition shows he was aware of nearly all of this and approved.

Another means by which a plaintiff can satisfy *Monell*'s municipal "policy or custom" requirement is "by showing that 'a person with final policymaking authority' caused the alleged constitutional injury." *Fincher v. Town of Brookline*, 26 F.4th 479, 485 (1st Cir. 2022) (quoting *Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 181 (1st Cir. 2011)). "[A] single decision by a final policymaker can result in municipal liability." *Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir. 2008). Whether a defendant is a municipal policymaker is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988); *Walden v. City of Providence*, 596 F.3d 38, 56 (1st Cir. 2010). One way to establish municipal liability is to show that a final municipal policymaker "approve[d] a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127.

### IV.   CONCLUSION.

For the foregoing reasons, this Court should deny the City of Nashua's Motion for Summary Judgment.

Dated: July 1, 2024                                                      Respectfully submitted,

                                                                         Laurie Ortolano, Plaintiff
                                                                         By her Attorneys,

                                                                         Olson Lawyers

                                                                         */s/* Kurt S. Olson
                                                                         Kurt S. Olson
                                                                         Bar ID No. 12518
                                                                         31 Franklin Rd.

6

Salisbury, NH 03268<br>
603-748-1960<br>
kolson@mslaw.edu

## **CERTIFICATE OF SERVICE**

    I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically forthwith to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 1, 2024                                                        */s/* Kurt S. Olson
                                                                                        Kurt S. Olson
                                                                                        31 Franklin Rd.
                                                                                        Salisbury, NH 03268
                                                                                        603-748-1960
                                                                                        kolson@mslaw.edu