UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano | : |
| | : |
| v. | :    Civil Action No. 22-cv-00326-LM |
| | : |
| The City of Nashua, et al. | : |
| | : |

### DEFENDANT FRANK LOMBARDI'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT

As noted in the underlying motion, faced with a properly supported motion for summary judgment, it is incumbent upon the plaintiff to show that a genuine issue exists requiring trial. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983). The evidence presented by the nonmoving party, of course, must be admissible: "The nonmovant cannot simply rest upon mere allegations. . . . Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994) (citation omitted). "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quotations omitted). Here, Plaintiff has neither identified genuine issues of material fact nor presented a legal basis on which summary judgment could be denied. As such, judgment should enter for Det. Lombardi on all claims.

### I. PLAINTIFF HAS FAILED TO IDENTIFY A GENUINE DISPUTE AS TO ANY MATERIAL FACT.

Plaintiff essentially concedes that the facts as presented by Det. Lombardi are not disputed. *See* Objection at p.1 (noting that "most of Lombardi's stated facts are technically correct" but

claiming that they are stripped of context).[1]  Instead, she offers a lengthy background of her dispute with the Assessing Department, Ms. Kleiner, and the Mayor (but not Lombardi or even the police department generally), Objection pp. 2-4, immaterial additional information about Lombardi's investigation, Objection pp. 5-8, and a rendition of the "warning" given by Lombardi that largely tracks his own version.  *See* Objection pp 8-11.

Some of these "facts" are not properly supported.  For example, her conclusory statement that Kleiner was "unhappy" with her is merely her own opinion:  dressing it up in an affidavit does not make it an admissible fact.  Others are hearsay.  For example, Plaintiff contends that she "heard from an Assessing Department employee [presumably Cheryl Walley] that Kleiner had assembled staff members and told them an anecdote," Objection p. 4, and that her neighbors both witnessed and inquired about the officers' presence at her house.  Objection p. 9.  Neither statement is admissible.  Likewise Plaintiff's contention that the Assessing Department employee (again, presumably Walley) "construed the anecdote as a warning" not to cooperate with the Broth investigation. Objection p. 4.  Plaintiff's Exhibit C is particularly problematic, consisting of police reports containing statements of any number of interviewees, all of which if offered for the truth would be inadmissible.  The Court need not – indeed, cannot – consider these unsupported "facts" in its analysis.

Most of the remaining supplemental facts have no bearing on the Motion and some are simply inaccurate.  As to the former, Plaintiff's history of frustration with the Assessing Department (or even the City in general) has no bearing on whether Lombardi's single contested action – informing Plaintiff that City employees did not want her to approach them outside of work – is unconstitutional.  Similarly, to the extent that Lombardi investigated a report that Plaintiff had

---

[1]  Plaintiff dutifully adds "although some are not" but fails to identify any such facts.

posed as an assessor, Plaintiff concedes that the investigation went "nowhere" as witnesses apparently indicated that the imposter was not Plaintiff, Objection pp. 11-12; Plaintiff properly does not contend that she was arrested or has any right not to be investigated.  As to the latter, Plaintiff's claims that Lombardi instructed Turgiss how obtain a restraining order, Objection p. 6, is inaccurate and unsupported, and Lombardi would learn that even Walley conceded that her interpretation of Kleiner's "anecdote" may have been wrong, a statement admissible as it goes to Lombardi's state of mind in declining to pursue claims against Kleiner.

What is most interesting about Plaintiff's "Concise Statement of Facts" is what they don't include.  Specifically, they don't include any dispute that: (a) she confronted Cameron in a back alley as the line-employee was returning from lunch – the very location Cameron's colleague had been targeted by Plaintiff's investigator; (b) Plaintiff was represented by counsel and had every opportunity to review with them the legality and enforceability of the warning; (c) Plaintiff would have abided by the request had it been made to her directly by the employees; and (d) the warning did not prevent Plaintiff from attending and speaking at all manner of public meetings, filing 91-A actions, or requesting an identical warning be issued to Kleiner.

## II.  LOMBARDI DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS.

Based on the undisputed facts, it is clear that Det. Lombardi did not violate Plaintiff's First Amendment rights.  At minimum, however, he would be entitled to qualified immunity on the claims.

Plaintiff does not dispute the elements she had to prove to establish her claims, namely, that  "(1) she engaged in constitutionally protected conduct, (2) was subject to an adverse action by the defendants, and (3) the protected conduct was a substantial or motivating factor in the adverse action." Order on Carignan Motion to Dismiss [Doc. No. 58] at 9 (citations omitted). *See* Objection p. 13.  She also does not dispute that she must also demonstrate that action was "more

than de minimus," Objection at 15, or that the defendant acted with <u>intent</u> to retaliate against her and that the retaliatory action actually caused the injury for which she seeks compensation. *Reid v. Brodeur*, 2001 DNH 032 (Feb. 15, 2001) at 16-17 (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). Plaintiff contends instead that she met her burden.

Plaintiff suggests that Lombardi does not contest that she was engaged in protected activity. This is not so. Lombardi disputes that Plaintiff had an unfettered right to confront government employees outside of their work against their wishes, which is the specific speech that prompted Lombardi's warning and the only speech he can be said to have curbed. While Plaintiff seeks to satisfy the first element by listing her various First Amendment activities, such as attending meetings and criticizing the Mayor, Objection at 14-15, there is no link between Lombardi's warning and these actions. Although Plaintiff baldly claims that Lombardi acted "at the behest of Kleiner," Objection at 17, Lombardi witnessed the impact of Plaintiff's conduct on Cameron personally; Kleiner merely conveyed the understandable (and believable) wish of her fellow employees. There is no evidence – direct or circumstantial – to support Plaintiff's claim that Lombardi was motivated by anything other than his desire to keep the peace, and Plaintiff's single paragraph attempt to conjure such evidence fails.[2]

Moreover, while Plaintiff makes much of the application of an objective standard to the adverse nature of Lombardi's actions, she does not dispute that her *injury* must be more than de minimus. *See* Order on Donchess's Motion to Dismiss [Doc. No. 61] at 17 (observing with respect to Plaintiff that "whatever injury she suffered was also de minimus and therefore not actionable) (citing *Bourne v. Arruda*, 10-cv-393-LM, 2011 WL 2357504 at 16 (D.N.H. June 10, 2011)).

---

[2] As does Plaintiff's exaggerated claim therein that she was "stunted in her ability to deal with anyone from the Assessing Department." Objection at 20.

4

Plaintiff could have quickly discovered that Lombardi's warning had little bite by consulting with her counsel, and it is clear that the warning had no actual impact on her behavior.

Finally, as set out in the underlying Motion, Lombardi would be immune from liability even were there some question about the legality of his conduct. Plaintiff does little more than recite the applicable standards on immunity and point to a case out of the District of Illinois – *DeJong v. Pembroke*, 662 F.Supp.3d 896, 914 (S.D. Ill 2023). Objection at 21. *DeJong*, however, was decided on a Motion to Dismiss and involved a far more direct threat of adverse action than Lombardi's statement. The case certainly does not demonstrate that is was "clearly established" that Lombardi's conduct would be considered unconstitutional nor does it represent "controlling authority or a robust consensus of persuasive authority such that any reasonable official in the defendant's position would have known that the challenged conduct is illegal in the particular circumstances that he or she faced — then existing precedent, in other words, must have placed the statutory or constitutional question . . . beyond debate." *Rivera-Corraliza v. Puig-Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015) (emphasis added) (citation omitted). Absent either, Lombardi cannot be reasonably expected to "know" that his actions were illegal (if, in fact, they were). As such, he is immune from liability.

## CONCLUSION

Plaintiff has neither identified disputed material facts nor a legal basis on which to deny Det. Lombardi summary judgment. As such, the Motion should be granted.

Respectfully submitted,

**FRANK LOMBARDI**

By his attorneys

CULLEN COLLIMORE SHIRLEY PLLC

Dated: July 8, 2024      By: /s/ Brian J.S. Cullen
Brian J.S. Cullen (Bar No. 11265)
37 Technology Way, Suite 3W2
Nashua, NH 03060
(603) 881-5500
bcullen@cullencollimore.com

## **CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated: July 8, 2024      By: /s/ Brian J.S. Cullen
Brian J.S. Cullen

6