UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Laurie Ortolano,** ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-00326-LM |
| ) | |
| **The City of Nashua,** *et al.*, ) | |
| *Defendants*. ) | |
| ) | |

### KIMBERLY KLEINER'S REPLY TO PLAINTIFF'S OBJECTION TO KLEINER'S MOTION FOR SUMMARY JUDGMENT

As noted in the underlying motion, faced with a properly supported motion for summary judgment, it is incumbent upon plaintiff to show that a genuine issue exists requiring trial. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983). The evidence presented by the nonmoving party, of course, must be admissible: The nonmovant cannot simply rest upon mere allegations….Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue." *Febus-Rodriquez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994)(citations omitted). "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(quotations omitted). Here, Plaintiff has neither identified genuine issues of material fact nor presented a legal basis on which summary judgment could be denied. Therefore, summary judgment should enter for Kimberly Kleiner on all claims.

I. **PLAINTIFF HAS NO DAMAGES CLAIM UNDER RSA 91-A.**

Plaintiff failed to respond to Kleiner's argument that New Hampshire's Right to Know Law, RSA 91-A, does not provide for money damages. Her claim for RTK damages, Count VII,

has therefore been waived and should be dismissed. Kleiner's argument stands uncontradicted and is correct under the statute. *See* Doc. 86-1, pp. 18-20

To the extent Plaintiff is making a RTK damages claim under the New Hampshire Constitution, that issue has already been determined. *See* Stipulation of Dismissal, approved via endorsed Order on 10/25/23 (dismissing Counts 3-6, 9 and 10).

**II.      ASSESSING DEPARTMENT PROCEDURES AND SIMILAR CLAIMS, INCLUDING HAVING KLEINER HANDLE PLAINTIFF'S RTK REQUESTS, DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS.**

Plaintiff complains that various Assessing Department procedures or actions violated her First Amendment rights, including the City no longer having front-line employees respond to her directly. As noted in Kleiner's prior Memorandum of Law: 1) Kleiner did not take adverse action and 2) Plaintiff was not chilled from speaking or seeking government redress. *See* Memo, Doc. 86-1, pp. 14-18.

Plaintiff's main complaint seems to be that Kleiner took over handling her requests until the City decided that its Legal Department would do so. *See, e.g.*, Doc. 102-1, p. 24 (assessing office personnel not to talk to Plaintiff). But the Court has already ruled that records requests will not form a substrate for First Amendment claims. Doc. 61, Order, p. 16, referencing Doc. 42-1 at 10, "documenting Ortolano's continued participation in Nashua government affairs on numerous occasions." That hasn't changed, with nine posts since February 4 of this year. *See* www/good-gov.org. These posts are mostly, if not entirely, about her RTK issues and cases. Further, this action, and the others about which Plaintiff complains, do not prevent Plaintiff from speaking her mind, whether to the City or others. The fact that the City might have Kleiner respond to a records request rather than a front-line assessing clerk is not a First Amendment deprivation.

2

Plaintiff can talk, or write. She cannot compel a verbal response from an assessor or a front desk clerk, rather than from Kleiner or the Legal Department.[1]

Any of Plaintiff's other procedural complaints have the same flaw. She is not entitled to a response from the employee of her choice. And these items are all related to document/RTK requests.

Equally important, Plaintiff's conduct vis-à-vis defendants has not been chilled. Instead, it continues to this day – as she complains about the City/Defendants as recently as April 25, 2024 on her good-gov.org website. In addition, Plaintiff has already blamed any alleged "chilling" on something else – the October 2022 colloquy with Alderman Moran. *See* Doc. 86-1, Kleiner Memo, pp. 11-12. After that exchange, she says she "attended only 11 Board of Aldermen meetings. Prior to that, between January 2021 to October 2022, she had attended over 45 Board of Aldermen meetings and in addition had also regularly attended finance, budget, and infrastructure meetings." She stopped attending virtually all standing committee meetings after October 2022. Doc. 75-24, ¶ 50, p.at 24. *See* also Doc. 86-5, Ortolano Deposition, 84:7-85:5. Plaintiff can't eradicate those under-oath answers.

### III. PLAINTIFF FALSELY AND WITHOUT PROPER FACTUAL SUPPORT ACCUSES KLEINER OF LYING TO THE NPD ABOUT ASSESSING DEPARTMENT EMPLOYEES NOT WANTING TO SPEAK WITH PLAINTIFF

Plaintiff falsely accuses Kleiner of lying to the NPD about the Assessing Department employees not wanting to speak with Plaintiff. Plaintiff's brazen accusation also comes without proper factual support and is insufficient to defeat summary judgment, per Fed. R. Civ. Pro. 56.

---

[1] A perfect example of this is Plaintiff's statement that in April of 2019, Kleiner told the assessors not to respond to Plaintiff verbally. Instead, the assessors were asked to "Please write down any questions and they will be answered in writing." Complaint, ¶52. Plaintiff asks, the City responds, although in writing. Not unlike how attorneys often communicate with *pro se* parties, so that there is an exact record of the response, not subject to manipulation or misunderstanding.

Plaintiff asserts that "Kleiner told the Nashua Police that all employees of assessing did not want to speak with Ortolano, despite the employees never informing the police of this." Doc. 102-1, p. 15. Kleiner has stated under oath that "[M]ost of the staff of the assessing department did not want to have contact with Plaintiff outside of their work." Doc. 86-6, ¶15. Kleiner's Declaration explains some of the context for this, as one employee was visibly upset after an encounter with Plaintiff outside work. *Id.* Plaintiff, by contrast, testified at deposition that <u>she didn't have any evidence</u> of what the members of the assessing department said.

> Q: You don't have any evidence one way or the other as to whether … the assessing department members actually asked that they be lumped into this warning?
> A: Correct.

Doc. 86-5, Ortolano Dep., 57:16-20.

In falsely accusing Kleiner of telling the NPD that the employees did not want to speak with her outside of work, Plaintiff did not cite to a record entry for her assertion. *See* Doc. 102-1, p. 15.[2] Accordingly, Plaintiff lacks admissible evidence to contradict Kleiner's sworn statement. The point is uncontested and summary judgment should be granted.

## IV.   PLAINTIFF WAS A LIMITED PURPOSE PUBLIC FIGURE

Plaintiff was a limited purpose public figure for issues relating to Nashua's property records, particularly those relating to real property. When she was unhappy with her property assessment in 2018, she began examining the City's public records on assessments (Doc., 102-2, Ortolano Affidavit, ¶8), attending Board of Aldermen and Board of Assessment meetings (*id.*,

---

[2] Later in this same paragraph on p. 15, Doc. 102-1, Plaintiff references an "A-20." Additional documents cannot be considered. Documents regarding what those employees said would likely be hearsay and would require properly supported affidavits from those speakers. Moreover, they would be contrary to Plaintiff's sworn testimony saying she had no evidence of what the employees said. Plaintiff would run afoul of contradicting her prior testimony, in any event, under the "sham affidavit" rule. *See Gattineri v. Wynn MA, LLC,* 63 F. 4th 71, 84 (1st Cir. 2023).

4

¶9), spoke critically of City officials and practices (*id*., ¶10), reported "sales chasing" to the NHDRA (*id*., ¶7), made hundreds of RTK requests (*id*. ¶8), filed multiple RTK court actions (*id*., ¶28 and *see* Doc.'s 102-13 and 14), created her "good-gov" website on the issue, went to the NHBTLA on property issues (*id*., ¶43), reported assessors to the NPD (*id*., ¶46), and attended various and multiple City meetings on these issues (Complaint, ¶25, 26 and 27; Bolton/Leonard Motion for Summary Judgment, Docs 71-3—71-2; Lombardi Motion for Summary Judgment, Doc 84-4). She has also been publicly critical of the Assessing Department. Complaint, ¶ 25; Lombardi Motion for Summary Judgment, Doc 84-4.

Plaintiff cannot surgically separate her voluntarily injecting herself into property assessments and the project which the City had in which Inception Technologies ("Inception") would scan in property records. She was constantly seeking documents from the City relating to assessments. Plaintiff agreed that digitizing the assessment/property records "was going to make your assessment work easier, if it is digitized, theoretically?" Doc. 86-5, Ortolano Dep., 85:15-17. But the Inception project started to take too long, which frustrated Plaintiff. *Id.*, 85:22-86:5. Plaintiff wanted property assessment records. She had several disputes with the City, all of which revolved around those records. It would be easier to get the records if they were digitized. When the project started to take longer than she'd hoped, she contacted Inception/Feoli. This is all part of the same issue. Accordingly, Plaintiff's contact with Inception/Feoli is part of her limited purpose public figure status. As a result, the malice standard applies.

Plaintiff asserts that Kleiner accused her of committing a crime, although without citation. Doc. 102-1, p. 11.[3] Kleiner did not – as the meeting clearly shows. *See*

---

[3] A few lines above the assertion that Kleiner "stated … that Ortolano committed a crime…" *Id.* Plaintiff states that Feoli told Kleiner that Ortolano had said she could expedite Inception's

5

https://www.nashuanh.gov/AgendaCenter/ViewFile/Minutes/_02082022-5856. What took place at the meeting and the exact words uttered by Kleiner can be heard and viewed at https://www.youtube.com/watch?v=IRDQuy0bjpQ (*see* 13:27-19:37. At the meeting Kleiner told the Board that: Feoli informed her that a City employee named Ms. Ortolano reached out to him about the project and offered to expedite payment for the project. Kleiner told the Board that she told Feoli that Ortolano was not a City employee. Kleiner told the Board that the contact by Plaintiff was of concern to her (Kleiner). Kleiner also told Feoli that she would update the Aldermen on Inception's project. She provided the Board with Feoli's confirming email. Misrepresenting oneself as a municipal employee, without more, is not a crime. To Kleiner's knowledge, New Hampshire does not have a generalized criminal misrepresentation statute.[4] Accordingly, even if Kleiner accused Plaintiff of that misrepresentation it is not a criminal accusation.

Plaintiff asserts a second time that Kleiner accused Plaintiff of a crime – that of "allegedly impersonating a City Hall employee." Doc. 102-1, p. 27. Plaintiff does not cite any New Hampshire law that criminalizes this behavior, however. *Id.* Plaintiff makes other statements but without citation or other properly admissible support. *Id*., pp. 29, 36,

Even if the Court construes Kleiner's re-publication of the misrepresentation statement as an allegation of a crime, there is no evidence of malice. Plaintiff takes several approaches to this. One is that Kleiner raised the issue at the Board of Aldermen in public session when it was not

---

overdue payment. *Id.* It is unclear if this is what Plaintiff alleges was the statement that she had committed a crime.

[4] On a wholly different subject and in no way related to any count pled in this case, Plaintiff raises the issue of "Identity Theft" under RSA 638-26. But that provision does not fit because it involves theft of a <u>specific person's identity</u> (the identity thief must pose "as another person…." *Id*., subsection I(a). Further, the thief must do so "with the purpose to defraud in order to obtain money, credit, goods, services, or anything else of value." *Id.*

6

on the agenda. *Id*., p. 29. Another is that Kleiner lacked reasonable grounds to believe the statement. *Id.*, p. 32. Plaintiff asserts that "Kleiner knew that her [sic] Feoli disclosures at the public meeting were untruthful." *Id.*, p. 36. Plaintiff's only argument on this appears to be that Plaintiff told Feoli she was "from Nashua" not that she was a Nashua City employee. *Id*., pp. 36-37. Plaintiff also complains that Kleiner did not investigate, but she ignores the cases cited by Kleiner which do not require her to do so. *See* Doc. 86-1, p. 28, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

Plaintiff also claims that Kleiner's raising at a public meeting Plaintiff's misrepresentation of herself to Inception/Feoli as proof of malice. Doc. 102-1, p. 29. Kleiner spoke at the Board of Aldermen meeting to provide them with an update on the status of the records scanning project. Doc. 86-6, ¶28. She provided the Board with the Feoli email about which Plaintiff complains because it was addressed to the Board, via Kleiner. *Id.*, ¶¶28-29. The Board voted to place the Feoli email on file (*id*., ¶29), as opposed to striking it. In addition, Plaintiff points out that she attended the meeting. Doc. 102-1, p. 11. Despite this, she did nothing to move the discussion to a non-public session under RSA 91-A:3.

Yet another approach by Plaintiff in attempting to show malice is fabricating facts. She claims that "Kleiner called the Nashua Police and reported that Ortolano was impersonating a City Hall Assessing employee…." Doc. 102-1, Memo, p. 7. Plaintiff provides no admissible support for the assertion. She also claims that "Kleiner knew that the description of the impersonator as a blond did not fit Ortolano." Doc. 102-1, p. 7. For this she cites to Kleiner's deposition at 80, 2-3. Plaintiff misstated the testimony and in doing so makes false statements to this Court about it.

7

Kleiner did not report the issue to the police[5] – it appears that an assessor, Gary Turgis, may have done so after fielding a complaint from the homeowner. *See* Ex. C to Feeney Supplemental Decl. Neither Kleiner, nor even Turgis, told the NPD that the person had blond hair – that was a statement from the homeowner. *Id.*, page two of exhibit (although it is page one of the NPD interview of the homeowner). Kleiner had told the NPD only that the person matched the description of Plaintiff – but she says nothing to the NPD about blond hair. At deposition, Kleiner agrees that she knew Plaintiff was not blond (Doc., 102-15, 80:2-3) but then specifically says "I'm not sure that I was aware that I knew it was blond hair." *Id.*, 80:18-19. There is an obvious non-sequitur here – Kleiner was told that the poseur matched Plaintiff's description; that person had blond hair but Plaintiff did not; but Kleiner was not told that the poseur had blond hair. No malice.

Plaintiff cannot prove malice. She also cannot prove negligence, were that the standard. Kleiner need not respond to every argument here but *see* Doc. 86-1, pp. 28-30.

### V.     PLAINTIFF FALSELY CLAIMS THAT KLEINER HAS ASSERTED QUALIFIED IMMUNITY

Kleiner has not asserted qualified immunity as Plaintiff seems to argue. Rather, Kleiner has asserted municipal immunity which is accorded to her under RSA 507-B:4, IV. Plaintiff's argument(s) on qualified immunity (*see* Doc. 102-1, p. 25) are odd, to be polite. Her arguments about official immunity (*id.*, p. 26), citing *Farrelly v. City of Concord*, 168 N.H. 430 (2015) are equally inapt, if not inept. Kleiner has not raised either qualified or official immunity.[6]

---

[5] Per NPD report, the NPD called Kleiner *after* speaking with someone from the Assessing Department. The NPD wouldn't have called Kleiner if Kleiner had just called the NPD to report this.

[6] *Farrelly*, as this Court knows, upheld summary judgment for police officers and the City of Concord, based on official immunity and vicarious official immunity, which applies to police conduct.

Plaintiff spuriously argues that Kleiner was not acting within the scope of employment when advising the Aldermen about Plaintiff's contact with Feoli. Doc. 102-1, p. 27. Kleiner's providing the Aldermen with information regarding a City project was the kind of duty she was employed to perform and was performed within the time and space of her employment. *See* Kleiner Affidavit, Doc 86-6, ¶ 3, describing her duties in her role as Administrative Services Director. It was also actuated, at least in part, for the employer's purposes. *Cf. Tessier v. Rockefeller*, 162 N.H. 324, 341 (2011) (regarding three part test for scope of employment). Surely the Board of Aldermen have an interest in knowing that someone has contacted a City vendor and at least allegedly misrepresented themselves as a City employee. Plaintiff offers no contradictory facts. *See* Doc. 102-1, pp. 27-28.

Plaintiff does not in any way cogently argue that public disclosure means that Kleiner did not act with a reasonable belief that her acts were lawful. Kleiner assumes, however, that the Court will apply the framework of reasonable belief in lawful action. *McCarthy v. Manchester Police Dep't*, 168 N.H. 202, 209 (2015). To bolster her claim that Kleiner lacked reasonable belief of lawful conduct, for other purposes, Plaintiff points to the public hearing before the Aldermen. Kleiner has testified that Feoli addressed his email to the Board of Aldermen but he sent it to Kleiner for delivery to them. Doc. 86-4, 96:22-97:3. She felt "obligated to deliver it." *Id.*

Plaintiff asserts that Kleiner stated she had been thoroughly trained on Right to Know ("RTK") law, however. Doc. 102-1, p. 26. Plaintiff not only fails to cite for this, but her Memo has a blank instead of a cite – "Exh. ___." Even if Plaintiff had a citation to show that Kleiner had RTK training that would not show unreasonable belief. As noted, Kleiner felt obligated to deliver the email. Whether it was an error to publicly reveal Plaintiff's actions in contacting a

9

City vendor on City business is a judgment call, notwithstanding RSA 91-A:3. As noted above, Plaintiff was present at that February 8, 2022 Board meeting but did not object when Kleiner raised with the Board the Feoli communication. There are no facts to show that Kleiner lacked a reasonable belief that she was acting lawfully in updating the Board on City matters, even if she did so publicly.

## CONCLUSION

Plaintiff's Objection fails to raise genuine issues of material fact, fails to provide properly supported admissible evidence, and fails to cite pertinent law to challenge Kleiner's Motion for Summary Judgment. Accordingly, Ms. Kleiner requests the Court grant summary judgment on all counts.

Respectfully submitted,

Kimberly Kleiner
by her Attorneys,
FRIEDMAN FEENEY, PLLC

Date: July 9, 2024       By:   */s/ Dona Feeney*
                               Dona Feeney, Esq. (NH Bar No. 12854)
                               95 North State Street, Suite 5
                               Concord, NH 03301
                               dfeeney@friedmanfeeney.com
                               (603) 783-5105

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically served to all counsel of record through the ECF system.

Date: July 9, 2024       By:   */s/ Dona Feeney*
                               Dona Feeney, Esq.