UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| Laurie Ortolano | : | |
| | : | |
| v. | : | Civil Action No. 22-cv-00326-LM |
| | : | |
| The City of Nashua, et al. | : | |

### DEFENDANT MICHAEL CARIGNAN'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT

As noted in the underlying motion, faced with a properly supported motion for summary judgment, it is incumbent upon the plaintiff to show that a genuine issue exists requiring trial. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).  The evidence presented by the nonmoving party, of course, must be admissible: "The nonmovant cannot simply rest upon mere allegations. . . . Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994) (citation omitted).  "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quotations omitted).  Here, Plaintiff has neither identified genuine issues of material fact nor presented a legal basis on which summary judgment could be denied.  As such, judgment should enter for former Chief Carignan on all claims.

### I. PLAINTIFF HAS FAILED TO IDENTIFY A GENUINE DISPUTE AS TO ANY MATERIAL FACT.

Plaintiff spends several pages laying out a Statement of Facts that is not fundamentally different from that set out by Defendant.  She asserts – and it is not disputed – that as Chief

Carignan had authority to set policy at the Police Department and that – as Defendant himself related – with respect to trespass charges the police generally do not rely on third party instructions but instead enforce only violations of their own orders.  She also adds some uncontested background about her contentious history with the City's Assessing and a lengthy (but irrelevant) discourse on the perceived animus of Attorney Bolton towards her.

Importantly, Plaintiff concedes that the incident that she relies upon to attach liability to the Chief is her trespass arrest.  *See* Objection at 5.  As to this incident, Plaintiff does not dispute that she refused to leave the legal offices despite repeated directions from staff to do so, nor does she deny that she later bragged about her misconduct on social media.  She attempts to conjure a disputed issue of fact out of the dueling versions of the Chief's conversation with Attorney Bolton but this dispute is not material:  Whether or not Bolton asked the Chief to make an arrest, the Chief (and Bolton) agree that it did not impact the actual arrest decision.  Indeed, Plaintiff concedes that even the Chief did not make the arrest decision and even cites his own testimony to that effect.  Objection at 8.  She does not deny pleading guilty to the charge.

In addition, Plaintiff asserts that her arrest was triggered not by her conduct in the legal department hallway – as to which she denies any First Amendment claim, *see* Objection at 14 n.6 ("Ortolano has never argued that trespass constitutes protected speech"), but her prior actions advancing her dispute with the City as a whole.  Her factual offerings in this regard are of questionable admissibility. Plaintiff relies principally on an affidavit from Laura Colquhoun [Doc. No. 104-3], in particular a 91-A request Colquhoun submitted to the Police Department and its response thereto.  It does not appear such records are admissible as to the Chief and many are riddled with hearsay statements.  The Court, of course, must decide the Motion only on admissible facts.  In any event, as detailed below, none of the other incidents are sufficiently similar to

2

establish that Plaintiff's arrest was linked to prior First Amendment activity, and none support her claim that the Chief's own actions were either so based or indeed caused her arrest.

## II. CHIEF CARIGNAN DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS.

As set forth in the underlying Motion, but bears repeating here, Plaintiff's burden to survive summary judgment as to the Chief is a heavy one:

> "It is by now axiomatic that the doctrine of *respondeat superior* does not apply to claims under section 1983." *Gaudreault v Salem, Mass.*, 923 F.2d 203, 209 (1st Cir. 1990) (citing *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985)). A municipality or its supervisory personnel can be held liable for the unconstitutional conduct of its employees **only** on the basis of an "affirmative link" between their acts and those of the offending employee. *Id*. Moreover, supervisors can be held liable only where their own acts or omissions amount at the least to "reckless" or "callous" indifference to the constitutional rights of others. *Id.* (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)).

Plaintiff has not presented facts nor argument to meet this obligation.

As noted above, Plaintiff's claim rests on two claims: (1) that evidence shows that she was arrested not for her conduct at the legal department but for prior conduct; and (2) that the Chief was the architect of her arrest. The facts offered by Plaintiff support neither.

On the first issue, at best Plaintiff shows that on other occasions people had been ordered to leave City Hall but not arrested. Such handling of trespass incidents is consistent with police policy, which as laid out in the underlying Motion is to rely principally on violations of police no-trespass orders before bringing charges as a matter of practicality. Importantly, none of the incidents identified are on all fours with Plaintiff's: Most involved intoxicated persons and in none is it suggested that the subject later admitted their trespass in writing, allowing the police to go forward with only law enforcement witnesses. The incident Plaintiff highlights most vociferously involved someone previously trespassed from other city property (the transit center), and later came to City Hall to complain about it. There is no indication that this person was in private areas

3

of the building nor that he admitted being asked to leave prior to the police arrival. In short, Plaintiff has not adduced sufficient comparators to allow a jury to conclude that her arrest was motivated by her speech.

Moreover, even had Plaintiff satisfied this obligation, she has not established either that the Chief was behind her arrest or that he was motivated by her conduct. To the contrary, Plaintiff acknowledges that while the Chief was kept apprised of the investigation and ultimately supported the decision to charge Plaintiff, he was not an integral part of either. Nor has Plaintiff offered a scintilla of evidence that he was motivated by any animus towards her First Amendment activities. Finally, Plaintiff does not dispute that her arrest had no actual chilling effect on her First Amendment activities.[1]

## CONCLUSION

Plaintiff has neither identified disputed material facts nor a legal basis on which to deny Defendant Carignan summary judgment. As such, the Motion should be granted.

Respectfully submitted,

**MICHAEL CARIGNAN**

By his attorneys

CULLEN COLLIMORE SHIRLEY PLLC

Dated:  July 11, 2024           By: /s/ Brian J.S. Cullen
                                Brian J.S. Cullen (Bar No. 11265)
                                37 Technology Way, Suite 3W2
                                Nashua, NH  03060
                                (603) 881-5500
                                bcullen@cullencollimore.com

---

[1] Indeed, Plaintiff would later win an award from the Union Leader for her persistent pursuit of public records..

## **CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated: July 11, 2024                         By: /s/ Brian J.S. Cullen
                                                                                  Brian J.S. Cullen