**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| **Laurie Ortolano,** | ) |
| **Plaintiff** | ) |
|  | ) |
| **V.** | ) Civil Action No. 22-cv-00326-LM |
|  | ) |
| **The City of Nashua, et al.,** | ) |
| **Defendants** | ) |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT KLEINER'S REPLICATION TO PLAINTIFF'S MEMORANDUM OF LAW AND AFFIDAVIT IN SUPPORT OF HER OBJECTION TO DEFENDANT KLEINER'S MOTION FOR SUMMARY JUDGEMENT**

NOW COMES, Plaintiff, Laurie Ortolano, and in response to Defendant's replication says as follows:

1. The Defendant, Kleiner, in her Replication, omits significant material facts in Plaintiff's objection/memorandum that support the denial of her Motion for Summary Judgement.

    **I.    RIGHT-TO-KNOW (RTK)**

2. Defendant Kleiner is correct that the Plaintiff did not argue that the Plaintiff is entitled to damages pursuant to a violation of RSA 91-A. The Court has decided this issue.

3. The Plaintiff is, however, asserting that the Defendant Kleiner violated RSA 91-A:3 when she addressed an issue in a public Board of Aldermen meeting that damaged the Plaintiff's reputation. A-29.

4. Kleiner, deliberately with the intention of harming Ortolano, disclosed that Ortolano "has been reported to the Police Department" (A-29, pg. 6, Feb. 8, 2022 Board of Aldermen meeting minutes). Three Aldermen raised concerns over this disclosure in a public session (A-29, pg. 6,7, 13, 14, 17, Feb. 8, 2022, Board of Aldermen meeting minutes).

1

5. The Defendant's statement in the public session that this matter of impersonating a city employee "has been reported to a police department" was based upon Kleiner's belief that Ortolano committed a crime. Kleiner's belief was broadcasted to a significant audience in Nashua, See Plf. Exh. A-29

6. The Police Department treated the Kleiner referral as a crime because they opened a criminal investigation, (A-35). The police closed their investigation and went no further when Feoli stated in response to a police question whether if at any point Ortolano purported to be an employee of the City of Nashua or anything similar and he said "no". Feoli admitted to the Police "that because Ortolano had much information on this subject, he assumed she was an employee, but she never stated that she was." (A-35)

5. Kleiner violated Ortolano's Right-to-Know protection by publicly disclosing information that was damaging to her reputation.

## II. KLEINER'S CONDUCT VIOLATED ORTOLANO'S 1st AMENDMENT RIGHTS

6. According to Amanda Mazerolle, an employee in the assessing Department, Kleiner told her not to respond to Ortolano requests. Exh. A-8 The recording of Ortolano's appearance at the Assessing Department on September 18, 2019 demonstrates the disparate treatment that Ortolano experienced in comparison to the service other citizens received on that day. A-32 and Thumbdrive F

7. Ortolano's presence at the Assessing Office, her request to review property files was not solely related to Right-to-Know matters. Her interacting with the assessing office department was also related to assisting elderly residents with their abatements. Additionally, Ortolano was researching information in support of her abatement/appeal. *See* Supplemental Affidavit Exh. AA

2

8. The City of Nashua Assessing Office, since its existence up to May 2019, never required written requests with a response time of up to 5 days to access public assessing records pursuant to Section 71 of the City of Nashua Charter. Although Kleiner's policies encompassed all requests, it was directed toward Ortolano. Exh. A-6 and affidavit Exh. A, ¶¶ 20-22. The genesis of the animosity stems from the disclosure of the Mayor's property assessment and real estate tax discrepancy. Supplemental Ortolano Affidavit, AA ¶ 1-2

9. The Mayor and some of the department heads were upset that Ortolano reviewed the mayor's property file and determined that, based on a major renovation permit for $100,000 in 2007, the mayor's property was under-assessed for 10 years. The building permit was closed 7 years later with no final inspection for completion and very little change to the property value. At this time, the campaign to silence Ortolano and disparage her reputation began because she exercised her First Amendment right to expose the Mayor's unfair property assessment and tax bill. Exh. AA ¶ 3-6. The Mayor stated at the BOA meeting on November 27, 2018 that Ortolano's comments that somehow this is improper is completely a slander. Exh. 37. This animus and chilling of Ortolano's First Amendment rights was caused by Ortolano's disclosure of the Mayor's property assessment issue, her criticism of Kleiner, the assessors, and the criminal referral of Kleiner's witness intimidation to the police.

10. Ortolano's participation at the City of Nashua's public meeting and her visits to city hall were impaired well before Aldermen Moran's comparing her conduct to a child predator.

- On February 3, 2022, she was told to stay away from City Hall for a day due to Kleiner's contact with Police. Exh A-22
- On January 22, 2021, she was told she could not come to City Hall without an appointment. Exh. A-33

3

- On December 15, 2021, Bolton told the Court, she will never have an appointment with the legal department. A-36
- On July 22 2022, Bolton told the police that the video doorbell outside the legal department door was for the public "except her" meaning Ortolano. Exh A-25

11. All of this conduct together with the other referenced conduct in Plaintiff's memorandum must be viewed as a series of incidences violating her First Amendment rights and not in isolation as Defendant is attempting to do.

### III. ORTOLANO DID NOT LIE IN HER OBJECTION TO KLEINER'S MOTION FOR SUMMARY JUDGEMENT CONCERNING THE POLICE INVOLVEMENT ABOUT FUTURE CONTACT WITH ASSESSING PERSONNEL.

12. The Police report states, "I informed Ortolano after speaking with Kleiner and members of the Assessing Department…"they decided that they wanted me to inform Ortolano that <u>all</u> current members of the Assessing Department did not want to have any contact with Ortolano anywhere other than within the Nashua Assessing Office for matters involving assessing". She was now warned that she could be arrested if she violated the police order depending the circumstances. Exh A-20.

13. Although, the police used the words, "they decided that they wanted me to inform Ortolano…", the only person that had the authority to make that policy decision for the Assessing Department is Kleiner, the supervisor and head of the department. Exh. A-4, pg. 21 and A-29, pg. 3. The police report does not acknowledge that the police officer spoke with each individual in the Assessor's office. Exh. A-20.

14. Ortolano's statements concerning this issue was accurately represented in her objection.

15. The statements of the Police officers in there reports would be admissible at the trial because they will be called as witnesses. What Kleiner told them is admissible under the hearsay exception contained in Fed. R. Evid. 803(6), 803(8) or as on admission.

## IV. LIMITED PUBLIC PURPOSE FIGURE

16. The Plaintiff erroneously filed the same exhibit in A-25. The Feoli police reports should have been A-30. Plaintiff is enclosing A-35, the February 9, 2022 Police incident report interviewing Feoli.

17. The genesis of the defamatory statements by Kleiner related to the scanning project by inception. This was not a public controversy. Kleiner never publicly discussed the project for over a year. ) Ortolano affidavit, Exh. A ¶ 81) The Mayor admitted during a June 17, 2024 Budget Hearing "in the end there was only one person asking for this information…" (minutes not yet available) Ortolano never attempted to publicly influence the resolution of the conflict since there was no public conflict or controversy concerning the scanning project.

18. Defendant Kleiner has not shown that Ortolano is a limited purpose public figure. Ortolano contacted an individual at a scanning company to check on the status of a project. The scanning project was not a public controversy and the public showed little to no interest in the project. Ortolano never sought to garner any public attention to this scanning project. Kleiner, however, took it upon herself to create a public controversy by falsely announcing to the Board of Alderman in a televised broadcast that Ortolano had committed the crime of impersonating a city employee.

19. The Limited public figure is limited to an analysis of the "particular controversy". *Lluberes v Uncommon Production LLC*, 663 F3 13 (1st Circ. 2011), *Thomas v Nashua Telegraph Publishing Co*. 929 A2nd 993, 155 N.H. 314 (2007). The particular controversy was the status of the scanning project. It was Kleiner with her presentation at the public BOA session on February 8, 2020 that made it a public issue.

20. The Defendant's example of Ortolano's public presentation, her RTK requests, her "good-gov" website, presentation at the BTLA hearing, reporting Assessor to the DRA and NPD, and attendance at various city meetings and mayor coffees were in no way related to the status of the scanning project.

21. Those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure. *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) Bootstrapping occurs when the defendant relies on her own defamatory publication to manufacture a public controversy involving the plaintiff, and thus by her own conduct, creates her own defense by making the claimant a public figure. *Hutchinson*, 443 U.S. at 135, 99 S.Ct. 2675. Smolla, Law of Defamation § 2:25 recognizes the media's potential for `bootstrapping' itself into the protection of the actual malice standard by pointing to its own coverage of the plaintiff as evidence that the plaintiff is a public figure, and that in response "a number of courts have emphasized that the public controversy must `preexist' the speech giving rise to the defamation suit.

22. Ortolano has stated a viable claim for defamation based upon Kleiner's public accusation that Ortolano had falsely impersonated a city official. The Defendant, Kleiner was not asked to speak at the Board of Alderman Meeting on the topic of the scanning project, it was not posted on the agenda, nor was the scanning project before the Board of Alderman. Kleiner's defense that she thought she had conducted an appropriate inquiry as to the truthfulness of her statements is a question of fact for the jury to decide.

23. The status question is a legal one that the Court reviews de novo. *Pendleton,* 156 F.3d at 68; *see Rosenblatt v. Baer,* 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). We do so mindful that the inquiry is "inescapably fact-specific," *Mandel v. Bos. Phoenix,*

*Inc.,* 456 F.3d 198, 204 (1st Cir.2006), and does not always lend itself to summary judgment, compare *id.* at 204-07 (vacating status determination because "the factual record, at the summary judgment stage, was too uncertain to warrant a legal conclusion either way about Mandel's status"), with *Pendleton,* 156 F.3d at 68 (affirming status determination because [t]here is no conflict as to any material fact; the issue is whether the discerned facts suffice to establish that Ortolano acted in a way sufficient to make her a public figure for the purpose of this defamation action). *Id.*

24. Actual malice is concerned with the Defendant's attitude toward the Plaintiff. *Thomas v Telegraph Publisher* 155 N.H. 314 (2007). Kleiner admitted in her deposition that she believed Ortolano did not like her. Exh E. Ortolano was very critical of Kleiner's job performance.

25. Even if the Court were to find that Ortolano is a limited public figure, the statements by Kleiner were made with a malicious intent to harm Ortolano and to silence her. Kleiner wanted her trespassed from City Hall which resulted in a 1 day trespass order. Exh A-22 Kleiner wanted a Police presence at City Hall on July 22, 2022, because she believed Ortolano would be present. Exh. A-23

26. Kleiner reported Ortolano to the Nashua Police for impersonating a City employee, which she now claims is not a crime in New Hampshire. See Pg. 5 on Fn 4 pg. 6 of Defendant's replication. The Defendant asserts, "Accordingly, even if Kleiner accused Plaintiff of that misrepresentation, it is not a criminal accusation." Law enforcement departments do not investigate non crimes.

27. Kleiner specifically told the BOA and the public that the matter had been reported to the Nashua Police, Exh A-29 pg 6. The BOA and public know that a referral to the police is

an investigation of a crime. Ortolano raised that fact in her responding to Kleiner's statements during public comment at the February 8, 2022 meeting. "I come here and I hear the entire public just got a report that I'm under criminal investigation for impostering a city employee and it never happened." Exh A-29, pg. 10.

28. According to the Defendant, what Ortolano did was not a crime. Publicly stating that Kleiner referred the matter to the Nashua Police and its public disclosure, knowing Ortolano's conduct did not amount to a crime, epitomizes malicious intent. This is powerful evidence of malice. "As an evidentiary issue at trial, proof of such awareness will usually depend in part on an assessment of the Defendant's own credibility, an assessment that is extremely difficult, if not impossible, to make without the Defendant's testimony. In almost every case, moreover, proof of the Defendant's state of mind will rest on circumstantial evidence. Thus, the issue of malice, "does not readily lend itself to summary disposition" *Hutchinson v Proxmire*, 443 U.S. 111. 120 n.9 (1979). There is substantial circumstantial evidence of malice. *See* pages 7-11 and 35-37 of Plaintiff's memorandum.

29. The Police report does not identify who contacted them about a person impersonating a city assessor. Exh A-35. Kleiner has not denied that she did not initially contact the Police. Based on Kleiner's deposition, Exh. E, pg. 79, she stated, " I mean, normal protocol would be for the Assessors or the Assessor employees to come to me." Kleiner was the Director of Administrator Services of City Hall and she was also serving as the Supervisor of the Assessing Department. The Police Department contacted Kleiner, Exh. A-35. Kleiner explained to the police what information she had about the imposter.

8

    Kleiner told the police that the description that the resident provided Gary of this female "matched that of Nashua resident, Laurie Ortolano".

30. It is likely that Kleiner initially called the Police since the call came in at 9:16 AM on October 31, 2019, and once informed of this call, Detective Lombardi called Kleiner. Only two people in the assessing office had this information, Kleiner and Gary Turgiss. According to Kleiner, Gary Turgiss was not at work that day, Exh. A-35.

31. Kleiner then provided the resident's name to the police, who Lombardi then interviewed on the same day, October 31, 2019. Kleiner's statement, on pg. 8 of her replication, that it appears that an assessor, Gary Turgiss, may have contacted the police is contradicted by both Kleiner's deposition testimony and her statement to the police that Gary Turgiss was not at work on October 31, 2022.

32. Whether Kleiner called the police, initially or not, is not determinative since it was Kleiner that accused Ortolano of being the perpetrator.

V. **QUALIFIED GOVERNMENTAL IMMUNITY**

33. Kleiner's statement at the public BOA meeting, which was broadcasted over live cable television on Channel 16 and rebroadcast on cable television and YouTube is not immune pursuant to RSA 507-B:4 IV. *Plf*. Objection to Motion for Summary Judgement, pg. 8.

34. Kleiner's statement at the February 8, 2022 BOA meeting that this matter had been referred to the police (Exh. A-29 pg. 6), knowing it was not a crime according to Defendant's replication is not within the scope of her employment. It cannot possibly be within the scope of her employment to report a citizen to the police if a crime does not exist. No public employee has a duty to report a non-crime to the police. Nor did Kleiner reasonably believe it was a crime according to her replication. See pages 26-28 of

9

Plaintiff's Memorandum supporting the non-application of RSA 507-B:4. Plaintiff is not waving her claim that Kleiner's reporting the crime to the police exceeded the scope of her employment.

## VI. CONCLUSION

35. Summary judgment requires that the moving party establish an entitlement to a judgment as a matter of law. See Fed.R.Civ.P. 56(c). That requirement is not a hollow one. Summary judgment should be granted only where . . . [further] inquiry into the facts is not desirable to clarify the application of the law." *Stevens v. Howard D. Johnson Co*., 181 F.2d 390, 394 (4th Cir.1950). For all of the reasons stated herein, Plaintiff's Memorandum, her affidavit, and these incorporated herein and all inferences therefore establish genuine issues of material facts warranting denial of Defendant Kleiner's Motion for Summary Judgement. The Defendant's Motion for Summary Judgement must be denied.

Dated: July 15, 2024                                        Respectfully Submitted by,

*/s/William Aivalikles*
William Aivalikles, Esq.
253 Main Street
Nashua, NH 03060
(603) 880-0303

**CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated: July 15, 2024                                        */s/William Aivalikles*
William Aivalikles, Esq

10