UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

_____

Laurie Ortolano,                                        )
Plaintiff                                               )
                                                        )
                                                        )
v.                                                      )   Civil Action No. 22-cv-00326-LM
                                                        )
                                                        )
The City of Nashua, et al.,                             )
Defendants                                              )
_____)

**PLAINTIFF'S SURREPLY IN SUPPORT OF PLAINTIFF'S OBJECTION
TO DEFENDANT LOBARDI'S MOTION FOR SUMMARY JUDGMENT**

I.   The Standard for Admissibility of Evidence and the Undisputed Facts.

Without any citations to the Federal Rules of Civil Procedure or Federal Rules of Evidence,

Detective Lombardi ("Lombardi") argues that, at the summary judgment stage of litigation, the

"evidence presented by the nonmoving party, of course, must be admissible. . . ." Lombardi

Reply, at 1. But Rule 56(c)(2) actually requires that a party objecting to "material cited to

support or dispute a fact" must demonstrate that such material "*cannot be presented in a form

that would be admissible in evidence*." (Emphasis added.) Therefore, "[t]o preclude

consideration of evidence submitted for or against summary judgment, the objecting party must

show that the evidence *cannot* be presented in a form that would be admissible in

evidence." *Chase v. Corning, Inc*., 2014 WL 5511117, at *2 (D.N.H. Oct. 30,

2014) (quoting Fed. R. Civ. P. 56(c)(2)  (emphasis in original, internal quotations omitted); *see

Echavarria v. Roach*, 565 F.Supp.3d 51, 63 (D. Mass. 2021). More pointedly, "[other First

Circuit courts have] made clear that they "may consider hearsay evidence submitted in an

inadmissible form at the summary judgment stage where the content of the evidence proffered

could later be provided in an admissible form at trial." *See Willis v. Río Mar Resort - MTG

*Company, LLC*, 2023 WL 5899911, at * 1 (D. P.R. 2023). Indeed, First Circuit courts have ruled that a party's failure to provide analysis demonstrating that evidence proffered at the summary judgment stage cannot be presented in admissible form at trial should by itself defeat the assertion. *Echavarria*, *supra,* 565 F.Supp.3d at 63 (citing *Intern. Shipping Agency, Inc. v. Union de Trabajadores de Muelles Local 1740*, 2015 WL 5022794, at *3 (D. P.R. 2015)).

Lombardi takes potshots at just a few facts:

A. Ortolano's contention that she "heard from an Assessing Department employee [presumably Cheryl Walley] that Kleiner had assembled staff members and told them an anecdote."

Lombardi offers no explanation or analysis why this cannot be presented in an admissible form at trial. Lombardi's Reply, at 2. He does not assert whether Cheryl Walley or Kimberly Kleiner ("Kleiner") will not be able to testify as to this evidence at trial. Lombardi has failed to meet his burden that this evidence cannot be made admissible at trial.

B. Ortolano's contention that "her neighbors both witnessed and inquired about the officers' presence at her house."

Again, Lombardi makes no attempt to explain or analyze why this cannot be presented in an admissible form at trial.. Lombardi's Reply, at 2. Lombardi admitted at his deposition that he and another officer, one in uniform and both carrying a firearm, showed up at Ortolano's house on a Sunday afternoon with two police cruisers to attempt to give the warning. Ortolano's husband will confirm this because he answered the door. Ortolano can testify on personal knowledge at trial that her neighbors inquired about the incident. The neighbors, who continue to let Ortolano know when a police cruiser is in the neighborhood, can also appear at trial to testify that they witnessed the incident and continued to report police presence to Ortolano.

C. Ortolano's contention that the Assessing Department employee "construed the anecdote as a warning" not to cooperate with the Broth investigation."

As with his claim under Section I.A., Lombardi offers no explanation or analysis why this cannot be presented in an admissible form at trial. Lombardi's Reply, at 2. He does not even argue whether the statement was or was not offered to prove the truth of the matter or that neither Cheryl Walley nor Kleiner will be unable to testify as to this material at trial.

D. The police reports comprising Exhibit C of Ortolano's Affidavit, which contain "statements of any number of interviewees, all of which if offered for the truth would be inadmissible."

Once again, Lombardi fails to satisfy the strictures of *Chase* and *Echavarria* by offering no analysis why the observations of "interviewees," cannot be offered at trial in admissible form. The official police records can come into evidence with hearsay expunged, and the witnesses who gave the statements reported by the NPD can testify at trial of their personal knowledge, subject to cross examination.

II. Lombardi's New Assertion That Ortolano Had No First Amendment Right to Approach Lynn Cameron on a Public Sidewalk to Request that She Get a Document for Her Is Contrary to Ironclad First Amendment Law and, Frankly, Astounding.

On page 4 of his Reply, Lombardi argues:

Plaintiff suggests that Lombardi does not contest that she was engaged in protected activity. This is not so. Lombardi disputes that Plaintiff had an unfettered right to confront government employees outside of their work against their wishes, which is the specific speech that prompted Lombardi's warning and the only speech he can be said to have curbed.

This remarkable assertion that Ortolano's interaction with Lynn Cameron on a public sidewalk or parking area in Nashua was *not* protected activity contravenes long-settled Supreme Court jurisprudence. *See New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 20 (1st Cir. 2002)("public streets, sidewalks, and parks—are presumptively public fora, and in most cases no particularized inquiry into their precise nature is necessary")(citing*, Frisby v. Schultz,* 487 U.S. 474, 481 (1988). "In a public forum, by definition, all parties have a constitutional right of access and the state must demonstrate compelling reasons for restricting

access to a single class of speakers, a single viewpoint, or a single subject." *Perry Educ. Ass'n v. Perry Local Educ. Ass'n,*. 460 U.S. 37, 55 (1983). Ortolano had every right to approach Cameron on a public sidewalk and ask her any question she wanted as long such was not a threat, did not incite an unlawful act, did not constitute defamation, or did not otherwise constitute protected speech. Moreover, both Cameron and Lombardi admitted *that the very reason the Appraising Department employees wanted Ortolano warned* not to speak with them outside the Assessing Department *was because of Ortolano's protected speech*: Cameron told Lombardi that Ortolano made her uncomfortable because she "twists everything they tell her," Exh. C, NPE-LO-202, which, even if Cameron was correct about the twisting of facts, Ortolano had every constitutional right to do. *Perry Educ. Ass'n, supra,* 460 U.S. at 55.

   III. <u>Lombardi Is Not Immune</u>.

   The facts demonstrate that Lombardi violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Lombardi was investigating Kleiner for witness tampering based on a claim that, during a meeting of the entire Assessing Department staff, she had encouraged them not to cooperate with an investigation the City was taking into potential illegal conduct by an Assessing Department employee. Exh. C, NPD-LO-039; Exh. D, Lombardi Deposition, pp. 14-15. During the investigation, Lynn Cameron told Lombardi that Ortolano had approached her on public grounds and asked for an Assessing Department document. Cameron told Lombardi that this made her uncomfortable because Ortolano "twists" everything. Exh. C, NPE-LO-202. When Lombardi offered that he could issue a warning to Ortolano that any further contact with Cameron outside the Assessing Department offices could lead to Ortolano's arrest, Cameron said she would think about it. *Id.* But neither Cameron nor any other Assessing Department employee ever would ask Lombardi to so warn Ortolano.

Instead, Kleiner, the person Lombardi was then investigating on the claim that she had targeted Cameron and the other employees of the Assessing Department with witness tampering, contacted Lombardi and instructed him to warn Ortolano not to have contact with every employee of the Assessing Department but Cheryl Walley (the original complainant as to the witness tampering) anywhere outside the offices of the Assessing Department. Exh. D, Lombardi Deposition, p. 95, 116-118. Supposedly prior to determining that Kleiner was not a felonious witness "tamperer," and without verifying that the actual employees of the Assessing Department wanted such warning to be given, Lombardi assumed that Kleiner was speaking for the victims of her alleged witness tampering activities and gave the warning. *Id.*

Lombardi claimed in his affidavit to have taken a 16-week course on how to protect citizens' constitutional rights. Exh. 4, ¶ 2 to Lombardi Motion for Summary Judgment. He therefore should have known that citizen speech that is critical of government employees is protected by the First Amendment of the Constitution. *Lozman v. City of Riviera Beach, FL*, 585 U.S. 87, 101 (2018)("speech that is "critic[al] of public officials . . . is high in the hierarchy of First Amendment values"). Yet, he admittedly warned Ortolano that she could be arrested if she were to contact Cameron or any other Assessment Department employee anywhere outside the department office *because* Ortolano had engaged in protected speech. As the *DeJong* case cited at page 21 of Ortolano's Reply makes clear, "government 'officials can still be on notice that their conduct violates established law even in novel factual circumstances' if the state of the law at the time provided fair warning that their alleged conduct was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Lombardi is not immune.

Dated: July 15, 2024                                    Respectfully submitted,

                                                       Laurie Ortolano, Plaintiff
                                                       By her Attorneys,

5

Olson & Olson, P.A.

*/s/* Kurt S. Olson
Kurt S. Olson
Bar ID No. 12518
31 Franklin Rd.
Salisbury, NH 03268
603-748-1960
kolson@mslaw.edu

## CERTIFICATE OF SERVICE

**I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically forthwith to the registered participants as identified on the Notice of Electronic Filing (NEF).**

Dated: July 15, 2024                    */s/* Kurt S. Olson
Kurt S. Olson
31 Franklin Rd.
Salisbury, NH 03268
603-748-1960
kolson@mslaw.edu