UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Laurie Ortolano, ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ) <br> The City of Nashua, et al., ) <br> Defendants ) <br> ) | Civil Action No. 22-cv-00326-LM |

### PLAINTIFF'S SURREPLY IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT CARIGNAN'S MOTION FOR SUMMARY JUDGMENT

I. <u>The Standard for Admissibility of Evidence at the Summary Stage, and Chief Carignan's Claim that Ortolano's Disparate Treatment Claim is Based on "Questionable" Evidence.</u>

Given recent Supreme Court jurisprudence dictating that claims of disparate prosecution be allowed to continue to trial if a plaintiff can provide "objective" evidence of disparate prosecution, *Gonzalez v. Trevino*, 602 U.S. ___, 144 S. Ct. 1663, 1667 (2024)(per curiam); *Nieves v. Bartlett*, 578 U.S. 391, 407-08 (2019), it is not surprising that defendant Carignan ("Carignan") now seeks to take the Colquhoun Affidavit off the table. In *Gonzalez*, a case quite similar to Ortolano's, the plaintiff, Sylvia Gonzalez, alleged that

> she was arrested in retaliation for her role in organizing the petition for [a public official's] removal and that the defendants therefore violated her First Amendment rights.
>
> \*       \*       \*
>
> To bolster her claim, Gonzalez alleged that she had reviewed the past decade's misdemeanor and felony data for Bexar County (where Castle Hills is located) and that her review had found that the Texas anti-tampering statute had never been used in the county "to criminally charge someone for trying to steal a nonbinding or expressive document."

*Gonzalez, supra*, 602 U.S. ___, 144 S. Ct. at 1666. On appeal from a denial of Trevino's motion to dismiss, the Fifth Circuit Court of Appeals reversed and dismissed Gonzalez's complaint on

1

the ground that a plaintiff's claim could fall within the *Nieves* exception (that a lack of probable cause was not dispositive in disparate prosecution cases) "only if the plaintiff proffered 'comparative evidence' of 'otherwise similarly situated individuals who engaged in the same criminal conduct but were not arrested.'" *Gonzalez, supra*, 602 U.S. ___, 144 S. Ct. at 1666 (quoting 42 F. 4th 487, 493 (2022)). But just about a month ago, the Supreme Court reversed the Fifth Circuit's ruling, holding that its "demand for virtually identical and identifiable comparators goes too far." *Id*., 602 U.S. ___, 144 S. Ct. at 1667.

> To fall within the exception, a plaintiff must produce evidence to prove that his arrest occurred in such circumstances. *The only express limit we placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective in order to avoid "the significant problems that would arise from reviewing police conduct under a purely subjective standard.*"
>
> Here, Gonzalez provided that sort of evidence. . . . *Gonzalez's survey is a permissible type of evidence because the fact that no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past*.

*Id.* (emphasis added)(citations omitted). The Colquhoun Affidavit – providing objective evidence produced by the NPD itself – shows that the NPD made no arrests for trespass at City Hall since January 1, 2014; this is exactly the type of objective evidence the *Gonzalez Court* demanded. Hence, Carignan's current effort to strike it from consideration.[1]

    Here, Carignan essentially makes the same plea that Detective Lombardi made in his Reply: "The Court, of course, must decide the Motion [for Summary Judgment] only on admissible facts." Carignan's Reply, at 2. As Plaintiff demonstrated in her Surreply to the Lombardi Reply,

---

[1] Without naming the case, Carignan's Reply still urges this Court not to apply *Gonzalez* because "none of the incidents identified [in the Colquhoun Affidavit] are on all fours with Plaintiff's." Carignan Reply, at 3-4. Attempting to wish away *Gonzalez* does not avoid its firm dictate that "the demand for virtually identical and identifiable comparators goes too far." *Gonzalez, supra*, 602 U.S. ___, 144 S. Ct. at 1667.

2

and reasserts here, the defendants have applied the wrong standard. At the summary judgment stage, the burden is on a party objecting to "material cited to support or dispute a fact" – here, Carignan – to demonstrate that such material "*cannot be presented in a form that would be admissible in evidence.*" F. R. Civ. P. 56(c)(2) (emphasis added); *see Chase v. Corning, Inc.*, 2014 WL 5511117, at *2 (D.N.H. 2014); *see also Echavarria v. Roach*, 565 F. Supp. 3d 51, 63 (D. Mass. 2021).[2]

Moreover, in addition to the fact that *Gonzalez* authorized the use of evidence containing at least an additional layer of hearsay than does the Colquhoun Affidavit, Carignan's claim of its inadmissibility is incorrect. Under F. R. Evid. 803(6), police reports are generally admissible as "business records" because they are kept in the course of a "regularly conducted business activity" made by a "person with knowledge." *Lindberg v. Short Line, Inc.,* 399 F.2d 482, 483 (1st Cir. 1968). Under F. R. Evid. 803(8)(C), police reports are generally admissible as "public records" because they relate to "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." *Sher v. Valente*, 2008 WL 11511475, at *1 (D. Mass. 2008)(citing *Perrin v. Anderson,* 784 F.2d 1040, 1047 (10th Cir. 1986); *see Zibolis–Sekella v. Ruehrwein*, 2013 WL 12177907, at *1 (D. N.H. 2013). Finally, under F. R. Evid. 406 the NPD's conduct of invariably reacting in a certain way to calls alleging trespass at City Hall constitutes admissible evidence of "habit." *Sher, supra,* 2008 WL 11511475, at *1 (citing *Perrin,* 784 F.2d at 1045-46). Carignan may claim that some of Ortolano's evidence is "questionable," but he makes no case that any part of it cannot be presented in admissible form at trial.

II. <u>Carignan's Claim That The Dispute Between Carignan and Bolton about Who Ordered Ortolano's Arrest is Immaterial; and the Authority that Carignan Exercised over the Arrest</u>.

---

[2] Rather than restating the entire body of applicable law, Ortolano adopts the recitation of proper law from its Lombardi Reply here. *See* Lombardi Surreply, at 1-2.

Carignan decries that:

> Whether or not Bolton asked the Chief to make an arrest, the Chief (and Bolton) agree that it did not impact the actual arrest decision. Indeed, Plaintiff concedes that even the Chief did not make the arrest decision and even cites his own testimony to that effect. Objection at 8.

Carignan's Reply, at 2. This argument misstates both the facts and Ortolano's argument.

According to Carignan, within a week of the incident at City Hall, Bolton secured a meeting with him to demand that Ortolano be arrested. Exh. A, Carignan Deposition, at 77-84. But Carignan exercised muscular authority in rebuking Bolton: "I told him I would not arrest her." *Id.* at 80. He insisted he would "stick with what the officers had found and put in their papers created for the incident, . . . which [Carignan] believed were absolutely true and accurate." *Id.* at 82. Unwilling to take "no" for an answer, however, Bolton then conducted "several conversations" with the [NPD] legal department" about the incident, but Carignan and his staff again "held firm that we weren't going to pursue charges." *Id.* at 87. But eventually, "they wanted to open an investigation to re -- to relook at the case because of a social media post that Ms. Ortolano had posted," allegedly admitting to the crime. *Id.* at 89. These conversations eventually caused Carignan's deputies to inform him that "they" wanted Ortolano to be arrested.[3] *Id.* at 90. Although he had initially exercised his authority to tell Bolton "I [will] not arrest her," and that he would stick with the original decision of his officers, which was "absolutely true and accurate," in the end he changed his mind and "supported that decision," i.e., to arrest Ortolano. *Id.* Reworking a quote from Carignan's Reply Memorandum, his final decision to allow Ortolano to be arrested for trespass at City Hall – when such was contrary to NPD policy he described and defended at his deposition, and when no others had been so arrested over the prior seven years – was a product of his "own act[ ] or omission[ ] amount[ing] at least to 'reckless' or 'callous'

---

[3] Carignan neither knew nor inquired who "they" were. Exh. A, Carignan Deposition, at 89-90.

4

indifference to the constitutional rights of [Ortolano]." *Id.* (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)). Carignan's Reply, at 3. If Chief Carignan, who initially "took the bull by the horns" to insist that Ortolano would *not* be arrested, now wishes to argue that he was an unempowered supervisor who stood by as his underlings changed department policy because they did not like Laurie Ortolano's social media posts, trial is the appropriate forum for that argument.

### III. Carignan's Contention That Ortolano Does Not Dispute That Her Arrest Had No Actual Chilling Effect on Her First Amendment Activities.

Carignan's assertion that "Plaintiff does not dispute that her arrest had no actual chilling effect on her First Amendment activities," Carignan's Reply, at 4, is not accurate. Ortolano has submitted evidence of the humiliating effects of being fingerprinted, having her mugshot taken, and having to wait in a jail cell while she waited for bail. Memorandum of Objection, at 10, 16. Her arrest and plea caused her to be unable to go to the Legal Department in City Hall without an appointment; in practice she was never granted any such appointment. *Id.*; *see also* Exhibit A (Ortolano Affidavit for Bolton/Leonard Motion), ¶ 24, at 11. Ortolano's Memorandum of Objection to the Bolton/Leonard Motion for Summary Judgment also spoke to her decision to make many fewer appearances at public meetings at City hall. Memorandum of Objection to the Bolton/Leonard Motion, at 12; Exhibit A (Ortolano Affidavit for Bolton/Leonard Motion), ¶ 51, at 25. In addition, both defendant Bolton and the City of Nashua opposed Ortolano's request to annul her plea to a trespass "violation," which are routinely granted. Exhibit A, (Ortolano Affidavit for Bolton/Leonard Motion), ¶ 49(e), p. 24.

Dated: July 16, 2024　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　Laurie Ortolano, Plaintiff
　　　　　　　　　　　　　　　　　　　　　　　By her Attorneys,

                                              Olson & Olson, P.A.

                                              */s/* Kurt S. Olson
                                              Kurt S. Olson
                                              Bar ID No. 12518
                                              31 Franklin Rd.
                                              Salisbury, NH 03268
                                              603-748-1960
                                              kolson@mslaw.edu

CERTIFICATE OF SERVICE

      **I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically forthwith to the registered participants as identified on the Notice of Electronic Filing (NEF).**

Dated: July 16, 2024                                */s/* Kurt S. Olson
                                                                Kurt S. Olson
                                                                31 Franklin Rd.
                                                                Salisbury, NH 03268
                                                                603-748-1960
                                                                kolson@mslaw.edu