UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Laurie Ortolano,  )  <br>Plaintiff  )  <br>  )  <br>v.  )  Civil Action No. 22-cv-00326-LM  <br>  )  <br>  )  <br>The City of Nashua, et al.,  )  <br>Defendants  )  <br>  )  | |

**PLAINTIFF'S SURREPLY IN SUPPORT OF PLAINTIFF'S OBJECTION
TO DEFENDANT CITY OF NASHUA'S MOTION FOR SUMMARY JUDGMENT**

**I.  ARGUMENT.**

Under 42 U.S.C. § 1983, a municipality may be held liable "only where that [City]'s policy or custom is responsible for causing the constitutional violation or injury." *Abdisamad v. City of Lewiston*, 960 F.3d 56, 60 (1st Cir. 2020)(quoting *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)); *see Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Recognizing that a municipality necessarily acts through its officials, *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) set forth several guiding principles to follow when assaying municipal liability under 42 U.S.C. § 1983. First, municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." *Id.,* 475 U.S., at 480. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. *Id.,* at 483. Third, whether a particular official has "final policymaking authority" is a question of state law. *Id.*  Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business. *Id.,* at 482–483.

1

Another means by which a plaintiff can satisfy *Monell*'s municipal "policy or custom" requirement is "by showing that 'a person with final policymaking authority' caused the alleged constitutional injury." *Fincher v. Town of Brookline*, 26 F.4th 479, 485 (1st Cir. 2022) (quoting *Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 181 (1st Cir. 2011)). "[A] single decision by a final policymaker can result in municipal liability." *Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir. 2008). And yet another way to establish municipal liability is to show that a final municipal policymaker "approve[d] a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127.

The Mayor's Final Policymaking Authority

The City of Nashua mayor is "the chief administrative officer and head of the administrative branch of the city government." Nashua City Charter, § 45. S/he has the power to appoint the City Solicitor and all officers necessary to administer all departments that the board of aldermen shall establish. Nashua City Charter, § 42. The City Solicitor and administrative officers "serve an indefinite term at the pleasure of the mayor." *Id*. The mayor may authorize heads of departments responsible to him or her to appoint or remove subordinates in the respective departments. Nashua City Charter, § 45-b. The mayor heads a department of administration that enforces the City's Administrative Code. Under state law, the mayor of the City of Nashua, here James Donchess ("Donchess"), is the City's Final Policymaking Authority regarding its administrative departments.

Donchess appointed defendant Bolton ("Bolton") to be Nashua's City Solicitor, who served and continues to serve at Donchess's pleasure. As already demonstrated in her Memorandum in Support of Objection to the City's Motion for Summary Judgment, Donchess knew about and

defended – essentially ratified – many of Bolton's actions of retaliation against Ortolano, including:

- Bolton's refusal to grant Ortolano, but no other citizens, appointments at the legal department: "there has been a long history, history of Ms. Ortolano not treating employees with respect. . . . Under those circumstances, I'm not sure they really have the obligation to continue to meet with that resident." Memorandum of Objection, p. 2; Exhibit A, Donchess Deposition, at 34-35.

- He defended Bolton's actions toward Ortolano in Superior Court, for which the City was sanctioned, asserting that the Superior Court Judge's statements were inaccurate, uninformed, even "ill-founded." Memorandum of Objection, p. 3; Exhibit A, Donchess Deposition, at 44, 49, 59, 62, 66.

- He accepted Bolton's word that Ortolano was blocking the hallway outside the Legal Department in 2022 even when confronted with the NPD's report that the hallway was wide enough for both of them to pass without one blocking the other. He also stated that it was appropriate for Bolton to insist to NPD that Ortolano be arrested if she was blocking the hallway. Exhibit A, Donchess Deposition, at 141-142.

- He was aware that the City intended to oppose Ortolano's request that the District Court annul her trespass violation, and the reasons for the opposition. Exhibit A, Donchess Deposition, at 90.

It is clear that the mayor knew of most of Bolton's actions and approved them.

Donchess appointed defendant Kimberly Kleiner ("Kleiner") first to be his Chief of Staff, and then to be the Director of Administrative Services for the City. At all times relevant to this action, Donchess supervised Kleiner. Exhibit A, Donchess Deposition, at 120. He had many

meetings with Kleiner about how to handle Ortolano. Exhibit A, Donchess Deposition, at 120. He knew about and agreed with Kleiner's policy that Assessing Department employees did not have to deal with citizens they considered to be abusive. Exhibit A, Donchess Deposition, at 129. He and Kleiner agreed that, when dealing with Ortolano, the City would comply with the right-to-know requests but "we wouldn't necessarily respond immediately." Exhibit A, Donchess Deposition, at 165.

As with Bolton, Donchess actively supervised Kleiner, sometimes collaborated with her on the decisions affecting City services provided to Ortolano, and sometimes ratified decisions affecting City services provided to Ortolano. In sum, Donchess, and Bolton and Kleiner via the authority delegated to them by Donchess, were the final policymaking officials in terms of how the City treated Ortolano relative to this action. They were authorized to cause § 1983 liability under the *Pembaur* factors.

The Police Chief's Final Policymaking Authority

As Chief Carignan testified on deposition, the Nashua Chief of Police is in charge of the Nashua Police Department's ("NPD") day-to-day and long-term policing policy and law enforcement matters:

> *The chief executive officer, which would be the chief of police, manages the day-to-day and makes the strategic decisions for the short and long-term for the police department. . . . [The Police Commission] approve[s] our budgets, they approve our promotions, they approve our terminations, or deny them, but they don't deal with the day-to-day operations of the police department. They're noy sworn officers, they're not -- they have no legal authority to enforce the laws.*

Exh. A, Carignan Deposition, pp. 20-21. Nashua's City Charter supports Carignan's assertion about the Nashua Police Commission, Subpt. B, Subch. 1, ¶¶ A-101, A-103, and New Hampshire RSA 105:2-a supports Carignan's claim that he has the authority to make the "short and long-

4

term" day-to-day "strategic decisions" about police department business: "each chief of police . . . shall have authority to direct and control all employees of his or her department in their normal course of duty and shall be responsible for the efficient and economical use of all department equipment." Accordingly, Carignan was the Final Policymaking Authority of the Nashua Police Department. He was responsible for allowing the disparate treatment and waiver of NPD policy regarding the arrest of Ortolano.

## II. CONCLUSION.

For the foregoing reasons, the City of Nashua is responsible for causing the complained-of constitutional violations, and this Court should deny the City's Motion for Summary Judgment.

Dated: July 16, 2024

Respectfully submitted,

Laurie Ortolano, Plaintiff
By her Attorneys,

Olson Lawyers

<u>/s/ Kurt S. Olson</u>
Kurt S. Olson
Bar ID No. 12518
31 Franklin Rd.
Salisbury, NH 03268
603-748-1960
kolson@mslaw.edu

## **CERTIFICATE OF SERVICE**

**I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically forthwith to the registered participants as identified on the Notice of Electronic Filing (NEF).**

Dated: July 16, 2024

<u>/s/ Kurt S. Olson</u>
Kurt S. Olson
31 Franklin Rd.
Salisbury, NH 03268
603-748-1960
kolson@mslaw.edu