UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Laurie Ortolano,<br>          Plaintiff<br><br>V.<br><br>The City of Nashua, et al.,<br>          Defendants | )<br>)<br>)<br>)<br>) Civil Action No. 22-cv-00326-LM<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SURREPLY TO DEFENDANT KLEINER'S REPLICATION**

NOW COMES, the Plaintiff and in response to Defendant's replication says as follows:

**I. RIGHT-TO-KNOW (RTK)**

1. Defendant Kleiner is correct that the Plaintiff did not argue that the Plaintiff is entitled to damages pursuant to a violation of RSA 91-A. The Court has decided this issue.

2. The Plaintiff is, however, asserting that the Defendant, Kleiner, violated RSA 91-A:3 asserting Ortolano committed a crime. Exh. A-29

3. The Police Department treated Kleiner's referral as a crime because they opened a criminal investigation. Exh. A-35

**II.    KLEINER'S CONDUCT VIOLATED ORTOLANO'S 1st AMENDMENT RIGHTS**

6. According to Amanda Mazerolle, an employee in the assessing Department, Kleiner told her not to respond to Ortolano requests. Exh. A-8 The recording of Ortolano's appearance at the Assessing Department on September 18, 2019 demonstrates the disparate treatment of Ortolano compared to the service other citizens received on that day. Exh. A-32, and F

7. Ortolano's presence at the Assessing Office, her request to review property files was not solely related to Right-to-Know matters. She reviewed policy manuals and records to support abatements. Supplemental Affidavit Exh. AA , Exh. A-32

1

8. Although Kleiner's policies encompassed all requests, they were directed toward Ortolano. Exh. A-6 and affidavit Exh. A ¶¶ 20-22. The genesis of the animosity stems from the disclosure of the Mayor's discrepant property assessment. Exh. AA ¶ 1-2.

9. The Mayor was upset that Ortolano reviewed the mayor's property file and discovered a significant discrepancy. The campaign to silence Ortolano and disparage her reputation began because she exercised her First Amendment right to expose the Mayor's unfair property assessment and tax bill. Exh. AA ¶ 3-6. The Mayor stated at the BOA meeting on November 27, 2018, Ortolano slandered him. Exh. 37

10. Ortolano's participation at the City of Nashua's public meeting and her visits to city hall were impaired well before Aldermen Moran's comparing her conduct to a child predator.

    - On February 3, 2022, she was told to stay away from City Hall for a day due to Kleiner's contact with Police. Exh. A-22
    - On January 22, 2021, she was told she could not come to City Hall without an appointment. Exh. A-33
    - On December 15, 2021, Bolton told the Court, she will never have an appointment with the legal department. Exh. A-36
    - On July 22 2022, Bolton told the police that the video doorbell outside the legal department door was for the public "except her" meaning Ortolano. Exh. A-25

**III.     ORTOLANO DID NOT LIE CONCERNING THE POLICE INVOLVEMENT ABOUT FUTURE CONTACT WITH ASSESSING PERSONNEL.**

11. The Police report states, "I informed Ortolano after speaking with Kleiner and members of the Assessing Department…"they decided that they wanted me to inform Ortolano that <u>all</u> current members of the Assessing Department did not want to have any contact with Ortolano anywhere other than within the Nashua Assessing Office for matters involving assessing". She was now warned that she could be arrested if she violated the police order depending the circumstances. Exh. A-20.

12. Although, the police used the words, "they decided that they wanted me to inform Ortolano…", the only person that had the authority to make that policy decision for the

2

Assessing Department is Kleiner, the supervisor and head of the department. Exh. A-4, pg. 21 and A-29, pg. 3. Exh. A-20.

13. The statements of the Police officers in their reports would be admissible at the trial because they will be called as witnesses. What Kleiner told them is admissible under the hearsay exception contained in Fed. R. Evid. 803(6), 803(8) or as on admission.

**IV. LIMITED PUBLIC PURPOSE FIGURE**

16. The Plaintiff erroneously filed the same exhibit in A-25. The Feoli police reports should have been A-30. Plaintiff is enclosing A-35, the full report.

17. The genesis of the defamatory statements by Kleiner related to the scanning project by inception. This was not a public controversy. Kleiner never publicly discussed the project for over a year. (Ortolano affidavit, Exh. A ¶ 81) The Mayor admitted during a June 17, 2024 Budget Hearing "in the end there was only one person asking for this information…" (minutes not yet available) Ortolano never attempted to publicly influence this issue. There was no public conflict or controversy.

18. The public showed little to no interest in the project. Kleiner, however, took it upon herself to create a public controversy by falsely announcing to the Board of Alderman that Ortolano had committed the crime of impersonating a city employee.

19. The limited public figure is limited to an analysis of the "particular controversy". *Lluberes v Uncommon Production LLC*, 663 F3 13 (1st Circ. 2011), *Thomas v Nashua Telegraph Publishing Co*. 929 A2nd 993, 155 N.H. 314 (2007). The particular controversy was the status of the scanning project. It was Kleiner with her presentation at the public BOA session on February 8, 2020, that made it a public issue.

20. Ortolano's public presentation, her RTK requests, her "good-gov" website, presentation at the BTLA hearing, reporting Assessor to the DRA and NPD, attending city meetings and mayor coffees were not related to the scanning project.

21. The status question is a legal one. *Pendleton,* 156 F.3d at 68; *see Rosenblatt v. Baer,* 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). This inquiry is "inescapably fact-specific," *Mandel v. Bos. Phoenix, Inc.,* 456 F.3d 198, 204 (1st Cir.2006), and does not always lend itself to summary judgment, compare *id.* at 204-07 (vacating status determination because "the factual record, at the summary judgment stage, was too uncertain to warrant a legal conclusion either way about Mandel's status"), with *Pendleton,* 156 F.3d at 68 (affirming status determination because [t]here is no conflict as to any material fact; the issue is whether the discerned facts suffice to establish that Ortolano acted in a way sufficient to make her a public figure for the purpose of this defamation action). *Id.*

22. Actual malice is concerned with the Defendant's attitude toward the Plaintiff. *Thomas v Telegraph Publisher* 155 N.H. 314 (2007). Kleiner admitted that Ortolano did not like her. Exh. E. Ortolano was critical of Kleiner's performance and reported her to the police.

23. The statements by Kleiner were made with a malicious intent to harm Ortolano and to silence her. Kleiner wanted her trespassed from City Hall which occurred. Exh. A-22 Kleiner wanted a Police presence at City Hall on July 22, 2022. Exh. A-23

24. Kleiner reported Ortolano to the Nashua Police for impersonating a City employee, which she now claims is not a crime in New Hampshire. See Pg. 5 on Fn 4 pg. 6 replication.

25. Ortolano could not interrupt the Kleiner presentation. She would have been arrested for disorderly conduct. Ortolano did reply. Exh. A-29, pg. 10.

4

26. According to Kleiner, what Ortolano did was not a crime. Publicly stating that Kleiner referred the matter to the Police knowing is was not, epitomizes malicious intent. "As an evidentiary issue at trial, proof of such awareness will usually depend in part on an assessment of the Defendant's own credibility, an assessment that is extremely difficult, if not impossible, to make without the Defendant's testimony. Proof of the Defendant's state of mind will rest on circumstantial evidence. The issue of malice, "does not readily lend itself to summary disposition" *Hutchinson v Proxmire*, 443 U.S. 111. 120 n.9 (1979).

27. The Police report does not identify who contacted them about a person impersonating a city assessor. Exh. A-35. Kleiner has not denied that she did not initially contact the Police. Based on Kleiner's deposition, Exh. E, pg. 79, she stated, " I mean, normal protocol would be for the Assessors or the Assessor employees to come to me."

28. Whether Kleiner called the police, initially or not, is not determinative since it was Kleiner that accused Ortolano of "fitting the description".

V.   **QUALIFIED GOVERNMENTAL IMMUNITY – RSA 502-B:4, IV**

33. Kleiner's statement at the BOA meeting, which was broadcasted over live cable TV and rebroadcast on cable TV and YouTube is not immune. Plf. Objection to Motion for Summary Judgement, pg. 8.

34. Kleiner's statement at the BOA meeting that this matter was referred to the police (Exh. A-29 pg. 6), knowing it was not a crime is not within the scope of her employment. No public employee has a duty to report a non-crime to the police, nor did Kleiner reasonably believe it was a crime. Plaintiff is not waving her claim that Kleiner's reporting the crime to the police exceeded the scope of her employment.

35. The Defendant's Motion for Summary Judgement must be denied since there are guanine issues of material fact.

Dated: July 17, 2024         Respectfully Submitted by,

                             /s/William Aivalikles

                             William Aivalikles, Esq.
                             253 Main Street
                             Nashua, NH 03060
                             (603) 880-0303

## CERTIFICATE OF SERVICE

 I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.


Dated: July 17, 2024         /s/William Aivalikles
                             William Aivalikles, Esq