# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW HAMPSHIRE

|   |   |
|---|---|
| **Laurie Ortolano,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| The City of Nashua, New Hampshire; et al. ) | Civil Action No. 1:22-CV-00326 |
| ) | |
| Defendants ) | |

### Plaintiff Laurie Ortolano's Memorandum Supporting Her Motion to Compel Production of Audio/Video Files of Police Interviews

By Verified Complaint dated August 23, 2022, Plaintiff brought this case against the City of Nashua, its Mayor, and several of its current and former employees. After a year and a half of pretrial litigation, in April 2024, the City produced transcripts of all police interviews conducted as part of its investigation into alleged criminal wrongdoing in the Nashua Assessing Department and Plaintiff's alleged impersonation of a City of Nashua employee. However, it has produced the audio/video files of only five of the eleven interviews conducted. The City had refused to turn over the transcripts or audio/video files of these interviews in the state RTK case despite a state court opinion ordering it to do so. The Gary Grant transcript and audio/video recording was not a part of the Plaintiff's RTK request. This Motion to Compel seeks production of the remaining audio/video files.

### I.   Proceedings in State Court and Factual Background

1. On February 18, 2020, Mrs. Ortolano filed a 91-A Petition/Complaint at Hillsborough South Superior Court.

2. As acknowledged by the Court, Mrs. Ortolano was compelled to file the Right-to-Know suit because the City of Nashua refused to comply with its statutory duty to turn over records responsive to a citizen request. (5/2/2022 Order at p. 33; 226-2020-CV-133)).

1

3. After more than two and one-half years of protracted pretrial litigation, the Court held a bench trial on Mrs. Ortolano's RTK petition on December 13, 14, & 16, 2021.

4. According to the Court, Ortolano "sought documents and interview footage" from the investigations." (5/2/2022 Order at p. 2; 226-2020-CV-133).

5. The Court found that the City had "violated RSA 91-A by not providing certain requested records." The Court also found that "the City knew or should have known it violated the RTK law." (5/2/2022 Order at p. 33; 226-2020-CV-00133).

6. The Court also explained that "the plaintiff still has not been provided with the Office security camera footage, the Nashua PD footage or transcripts from their interviews with Department employees." (5/2/2022 Order at p. 32; 226-2020-CV-00133).

7. The Court continued, stating that "[T]his case has been pending for approximately two years, during which time the City could have provided the requested records. However, the City did not do so." *Id.*

8. The Court then ruled that "[A]s a result of this Order, the City is required to provide these records to the plaintiff." (5/2/2022 Order at p. 32; 226-2020-CV-00133). *Id.*

9. On June 21, 2022, the City filed its notice of appeal at the Supreme Court seeking to overturn the Court's May 2, 2022 Order.

10. The Court heard oral arguments on April 4th, 2024; its decision is pending.

11. As of today, October 7th, the City has still not complied with the trial court order.

## II. Proceedings in the District of New Hampshire and Factual Background

12. Mrs. Ortolano commenced this action on August 23, 2022 seeking damages for violation of her First Amendment rights in addition to numerous other counts.

2

13. After almost two years of pretrial litigation, a motion for summary judgment was filed by the Corporation Counsel and Deputy Corporation Counsel of Nashua on April 1, 2024. Thus, Nashua's legal department filed its motion for summary judgment before the close of discovery.
14. On that same day, the City produced its first tranche of documents (some 6,000 pages in this first submission alone) responding to Laurie Ortolano's Requests for Production of Documents.
15. Within the first 600 pages of the City's production from the Nashua Police Department, the City included the transcripts of all interviews with all witnesses to the Nashua PD's investigation, including the allegations of Plaintiff's impersonation of a City of Nashua employee.
16. All these witnesses were "questioned," as part of Nashua PD's investigation, about either their role in or knowledge of Mrs. Ortolano's allegations of Witness Tampering against Kimberly Kleiner, Theft by Deception against Greg Turgiss and the charge of Plaintiff's impersonation of a City of Nashua employee.
17. These were the same transcripts which Mrs. Ortolano had sought to obtain from the City for more than four years – since she filed her Right-to-Know request on January 15, 2020. The Ray Feoli police report and Gary Grant transcripts and recording were requested in a production request.
18. However, the City did not voluntarily send the audio/video files of these same interviews. Instead, soon after receiving the transcripts, Mrs. Ortolano's counsel, Attorney Olson, reached out to the City to attempt to obtain copies of the audio/video files of the same interviews.
19. On April 11, 2024, the City emailed Attorney Olson to explain that the interviews "were recorded, but on an old system. It will take 2 plus hours to load a single interview to disc."
20. On April 12, 2024, Attorney Olson wrote to the City that as a compromise, he would accept the audio/video files for 5 of the eleven interviewees (Jon

3

Duhamel – audio only, Kimberly Kleiner, Douglas Dame, Lynn Cameron, and Cheryl Walley).

21. In the April 12th email, Attorney Olson also wrote that once the agreed-upon interviews were transferred to disk or otherwise produced, "we could determine whether we need the rest."

22. These files were sent to Attorney Olson on April 23, 2024, and counsel sent them by Dropbox Transfer to Ortolano on August 31st, 2024.

23. On September 8th, 2024 Attorney Olson reached out to the City to request that it turn over the remaining six audio/video files. During the conversation, counsel indicated that he would reach out to city officials to find out their position on producing the remaining files.

24. On the 10th, Attorney Olson emailed the City to inquire about the results of the conversations with city officials.

25. On September 11, 2024, the City responded to Attorney Olson's request for the additional audio/video files by stating, "I will not be supplementing the discovery at this time in our case."

26. Mrs. Ortolano brings this Motion seeking production of the remaining audio/video files, including those for Louise Brown, Gary Grant, Michael Mandile, Amanda Mazerolle, Gary Turgiss, and Greg Turgiss.

### III.   Legal Argument

27. First, Mrs. Ortolano argues that compelling late disclosure of audio/video files would neither prejudice the City nor interfere with the Court's docket in this case.

28. Although it arose in the context of possible sanctions (preclusion) for a party's failure to produce information required to be disclosed in discovery, *Harriman v. Hancock County* is instructive in this case because the Court set out a series of factors for courts to consider which could be equally relevant to a party's late request for discoverable information. 627 F.3d 22 (2010).

29. Specifically, the Court stated that it

> consult[s] an array of factors when reviewing preclusion
> decisions. They include the sanctioned party's justification for the
> late disclosure; the opponent-party's ability to overcome its
> adverse effects (i.e., harmlessness); the history of the litigation;
> the late disclosure's impact on the district court's docket; and the
> sanctioned party's need for the precluded evidence.

*Id.* at 30.

30. Mrs. Ortolano's justification for the belated request is two-fold. First, she argues that the City has waived its right to decline to turn over the audio/video files because it already produced all the transcripts and almost half of the audio/video files.
31. Second, Mrs. Ortolano argues that the language in her counsel's April 12th email to the city's counsel, "we could determine whether we need the rest (of the audio/video files)," put the city on notice that they would still be obligated to turn over the remainder of the files based on a determination of need.
32. Ortolano argues that failure by the city to dispute or otherwise respond to Ortolano's counsel's statement amounts to a waiver of its right to refuse.
33. As for harmlessness, because the City has already turned over the transcripts of the interviews Mrs. Ortolano is seeking demonstrates that the City will not suffer any adverse effects from disclosure.
34. As for the history of the litigation, both because of the issues and number of parties involved, the case has already been pending for two years, the docket contains more than one hundred twenty entries, and trial has now been moved to the two-week period beginning on April 15, 2025.
35. Given that trial is more than 6 months away, granting this motion will have a negligible impact on the Court's docket, and producing the audio/video files with this much time before trial could hardly be said to prejudice any of the defendants.
36. Mrs. Ortolano has a compelling need for the six audio/video files because questions remain both about the credibility of the City's witnesses, the witnesses demeanor, the accuracy of the transcription and the

    legitimacy of the Nashua Police Department "investigation" into alleged criminal behavior in the Assessing Department.

37. Though it arose in the context of a federal drug trafficking case, *Caro-Muniz* is instructive because it sets specific limits on the discovery required to be produced by the government, and the Court states that criminal discovery rules and pertinent case law preclude criminal defendants from pursuing a discovery "fishing expedition." *United States v. Caro-Muniz*, 406 F.3d 22, 30 (2005).

38. Contrary to its own decision in a prior case, the *Caro-Muniz* Court concluded that "Caro identified no particular tape of specific interest and has provided no basis for this court to conclude that any recording contained potentially favorable evidence. In the absence of a particularized and focused request, the district court is not required to troll through voluminous recordings in search of potentially exculpatory evidence."

*Id.*

39. Here, although this case is governed by the federal rules of civil procedure, Mrs. Ortolano has identified six specific files, and based on the five files already produced, these recordings will visually reveal grounds to question the witness's credibility and bias.

40. Additionally, and arguably more importantly, the visual record will expose not only flaws, deficiencies, and gaps in the police investigation into wrongdoing in the Assessor's Office, but also that the investigation's focus often shifted from that wrongdoing to questioning about Mrs. Ortolano's motivations both in seeking information about her City's internal activities and in trying to ensure that the City remain accountable. The audio/visual recording will also validate the accuracy of the transcription.

41. Therefore, Mrs. Ortolano's is a "particularized and focused request."

42. The federal rules likewise provide a strong argument in favor of the City's obligation to turn over the remaining audio/video files. Specifically, Rule 26(e)(1) of the Federal Rules of Civil Procedure

6

obligates parties to supplement their discovery responses in a timely manner if they learn that a prior disclosure or response is incomplete or incorrect.

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> (B) as ordered by the court.

43. Though it arose in a far more extreme case where the Court indicated that the case had generated more meritorious motions to compel and for sanctions than any other case in the judge's thirty-seven years on the bench, *Red Wolf Energy Trading* is still instructive in this case. *Red Wolf Energy Trading, LLC v. BIA Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 481 (2022).

44. *Red Wolf* reaffirms the principle still guiding modern day discovery: that all parties have a duty to seasonably supplement discovery responses. The defendant in *Red Wolf* was sanctioned for its failure to adhere to two court orders mandating disclosure of previously undisclosed evidence.

45. In this case the City need not perform a search for the audio/video files; it has already acknowledged that they exist though recorded on "on an old system" and "it will take 2 plus hours to load a single interview to disk." To guarantee complete and accurate disclosure which will ensure a fair trial, it is hardly onerous to impose on a City employee the duty to spend twelve hours digitally transferring the six files to a computer folder.

46. The duty to supplement discovery responses continues even after the discovery period has closed. *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.,* 272 F.R.D. 350, 358 (2011).

47. Courts have consistently held that parties must supplement their responses upon learning that such responses are incomplete or inaccurate, even after the close of discovery. *E.g.*, *McKinney v. Connecticut,* 2011 WL 166199, *2 (D. Conn. 2011) ("fact that discovery has closed has no bearing on [d]efendant's

duty to supplement under Rule 26(e)"); *Allen v. Colgate-Palmolive Co.*, 1985 WL 191 at *1 ("[t]he obligation to update and supplement responses [to discovery requests] continues even after the **close of discovery**")(Emphasis added).

48. In this case, the City has acknowledged that additional audio/video files exist, and the duty to supplement continues regardless of the discovery cut-off date. *Gorzynski v. Jetblue Airways Corp.*, 2012 U.S. Dist. LEXIS 28932, *11. Therefore, the motion to compel should be granted to ensure that all relevant documents are disclosed.

49. To determine whether a court will grant a motion to compel after discovery's close, the court will consider the length of time elapsed since the close of discovery, the explanation for the delay, any potential prejudice to the opposing party, and whether the moving party was diligent in obtaining discovery within the guidelines established by the court. See attached affidavit of Attorney Kurt Olson concerning the timeline of events and his efforts to obtain the audio visual recordings.

50. In the instant case, Mrs. Ortolano was diligent in obtaining discovery within court guidelines, and neither the City nor the remaining individual defendants will be prejudiced by having to digitally transfer six audio/video files to a computer folder and share them with the plaintiff using Dropbox.

51. Mrs. Ortolano explains that she and Attorney Olson were somewhat overwhelmed by the sheer volume of discovery responses and the simultaneous filing of the Nashua legal department's summary judgment motion even prior to the close of discovery.

52. Finally, in one extreme example, the district court for the Western District of New York ordered supplementation of discovery six years after the close of discovery[1]; in this case, discovery has not yet been closed for six months. A

---

[1] "There have been six years since JetBlue's production in response to Judge Elfvin's 2005 Order. Under Rule 26(e)(1), there is a continuing duty to supplement discovery, especially whereas here personnel information was sought and the status of the inquired employees has changed over

compelling need for a fair trial and substantial justice mandates that the City be required to produce the remaining six audio/video files.

### IV. Conclusion

In conclusion, the municipality has an ongoing duty under Rule 26(e) of the Federal Rules of Civil Procedure to supplement its discovery responses. The Court has the authority to compel such supplementation, and the duty to supplement continues even after the close of discovery. Given the factors considered by courts in granting motions to compel after the close of discovery, the motion to compel the disclosure of additional audio/video files should be granted to ensure complete and accurate disclosure which will ensure a fair trial and that justice is done.

**WHEREFORE**, Laurie Ortolano respectfully requests that this Honorable Court:

A. Grant her motion to compel production of the remaining audio/video files from the 2019 Nashua Police Department investigation including Gary Grant;

B. In the alternative hold an evidentiary hearing on this Motion; and

C. Grant whatever further relief the Court deems just and equitable;

Respectfully submitted,
Plaintiff, Laurie Ortolano,
By and through Counsel,

October 25, 2024

*/s/ William Aivalikles*
William Aivalikles, Esq.
Bar ID No. 308
253 Main St.
Nashua, NH 03060
603-880-0303
william@nhtriallaw.com

---

those years. This duty can be compelled, as here, by a motion to compel despite the fact that the discovery deadline has long passed." *Star Direct Telecom.*, *supra.*, 272 F.R.D. at 358.

*Gorzynski v. Jetblue Airways Corp.*, No. 03CV774A, 2012 U.S. Dist. LEXIS 28932, *11 (W.D.N.Y. Mar. 5, 2012).

9

## CERTIFICATE OF SERVICE

    I certify that on this 25th day of October 2024 I served a copy of this Motion to Compel on all parties of record using the ECF electronic filing system.

October 25, 2024                                */s/ William Aivalikles*
                                                           William Aivalikles, Esq.