UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Laurie Ortolano,  )<br>                   Plaintiff   )<br>                              )<br>v.                            )<br>                              )<br>The City of Nashua, New Hampshire; et al. )<br>                              )<br>                   Defendants )<br>                              ) | Civil Action No. 1:22-CV-00326 |

### Kurt Olson's Affidavit in Support of Plaintiff Laurie Ortolano's
### Motion to Compel Production of Audio/Video Files

Having been duly sworn, I attest that the following facts are true to the best of my knowledge and belief.

### I. Proceedings in State Court and Factual Background

1. On February 18, 2020, Mrs. Ortolano filed a 91-A Petition/Complaint at Hillsborough South Superior Court.

2. As acknowledged by the Court, Mrs. Ortolano was compelled to file the Right-to-Know suit because the City of Nashua refused to comply with its statutory duty to turn over records responsive to a citizen request. (5/2/2022 Order at p. 33; 226-2020-CV-133)).

3. After more than two and one-half years of protracted pretrial litigation, the Court held a bench trial on Mrs. Ortolano's RTK petition on December 13, 14, & 16, 2021.

4. According to the Court, Ortolano "sought documents and interview footage" from the investigations." (5/2/2022 Order at p. 2; 226-2020-CV-133).

5. The Court found that the City had "violated RSA 91-A by not providing certain requested records." The Court also found that "the City knew or should have known it violated the RTK law." (5/2/2022 Order at p. 33; 226-2020-CV-00133).

6. The Court also explained that "the plaintiff still has not been provided with the Office security camera footage, the Nashua PD footage or transcripts from their interviews with Department employees." (5/2/2022 Order at p. 32; 226-2020-CV-00133).

7. The Court continued, stating that "[T]his case has been pending for approximately two years, during which time the City could have provided the requested records. However, the City did not do so." *Id*.

8. The Court then ruled that "[A]s a result of this Order, the City is required to provide these records to the plaintiff." (5/2/2022 Order at p. 32; 226-2020-CV-00133). *Id*.

9. On June 21, 2022, the City filed its notice of appeal at the Supreme Court seeking to overturn the Court's May 2, 2022 Order.

10. The Court heard oral arguments on April 4th, 2024; its decision is pending.

11. As of today, October 25th, the City has still not complied with the trial court order.

## II. Proceedings in the District of New Hampshire and Factual Background

12. Mrs. Ortolano commenced this action on August 23, 2022 seeking damages for violation of her First Amendment rights in addition to numerous other counts.

13. After almost two years of pretrial litigation, a motion for summary judgment was filed by the Corporation Counsel and Deputy Corporation Counsel of Nashua on April 1st. Thus, Nashua's legal department filed its motion for summary judgment before the close of discovery.

14. On that same day, the City produced its first tranche of documents (some 6,000 pages in this first submission alone) responding to Laurie Ortolano's Requests for Production of Documents.

15. Within the first 600 pages of the City's production from the Nashua Police Department, the City included the transcripts of all interviews with all witnesses to the Nashua PD's investigation.

16. All these witnesses were "questioned," as part of Nashua PD's sham investigation, about either their role in or knowledge of Mrs. Ortolano's allegations of Witness Tampering against Kimberly Kleiner and Theft by Deception against Greg Turgiss. This includes an interview with Gary Grant, which resulted in a transcript and audio/video recording, that concerned Ms. Ortolano's alleged impersonation of a city employee.
17. The City did not voluntarily send the audio/video files of these same interviews. Instead, soon after receiving the transcripts, I reached out to the City to attempt to obtain copies of the audio/video files of the same interviews.
18. On April 11, 2024, the City emailed me to explain that the interviews "were recorded, but on an old system. It will take 2 plus hours to load a single interview to disc."
19. On April 12, 2024, I wrote to the City that as a compromise, Ms. Ortolano would accept the audio/video files for 5 of the eleven interviewees (Jon Duhamel – audio only, Kimberly Kleiner, Douglas Dame, Lynn Cameron, and Cheryl Walley), and that "we could determine whether we need the rest."
20. These files were sent to me on April 23, 2024. I spot listened to the audiotapes and, with very minor discrepancies, believed that the transcripts and tapes corresponded.
21. Soon thereafter, the client requested the audio/video tapes that had been produced; I sent them to her by Dropbox Transfer on August 31st, 2024. Upon closely listening to the tapes, she noticed some discrepancies between some of the transcripts and corresponding audiotapes and requested that I obtain the outstanding audiotapes.
22. On September 8th, 2024 I reached out to the City to request that it turn over the remaining six audio/video files. During the conversation, counsel indicated that he would reach out to city officials to find out their position on producing the remaining files.

23. On the 10th, Mrs. Ortolano's counsel emailed the City to inquire about the results of the conversations with city officials.

24. On September 11, the City responded to my request for the additional audio/video files by stating, "I will not be supplementing the discovery at this time in our case."

25. Ms. Ortolano did not file a motion to compel the additional audio/video files until now because we had all the transcripts and, until my client informed me of some discrepancies between the transcripts and produced audiotapes, the spot checking I had done (including watching/listening to one complete videotape and matching it to the transcript) caused me to believe that the transcripts of what we had requested were more than adequate for the purposes of prosecuting the case. I was mistaken in that assumption.

Dated: October 25, 2024

_____
Kurt Olson, Esq.

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

Personally appeared the above-named, Kurt Olson this 25th day of October 2024, and swore under oath that the information contained in his affidavit is true to the best of his knowledge and belief.

Before me,

Sarah B Frost
NOTARY PUBLIC
State of New Hampshire
My Commission Expires 10/19/2027

_____
Notary Public/Justice of the Peace

### CERTIFICATE OF SERVICE

I certify that on this 25th day of October 2024 I served a copy of this Motion to Compel on all parties of record using the ECF electronic filing system.

efiled
_____
William Aivalikles