UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Laurie Ortolano

    v.                                              Civil No. 22-cv-326-LM
                                                   Opinion No. 2025 DNH 017 P

City of Nashua, et al.

# **O R D E R**

Plaintiff Laurie Ortolano brings this suit against the City of Nashua ("Nashua" or "the City"), several Nashua officials and employees, and two private parties. The gist of Ortolano's complaint is that the defendants, individually or collectively, improperly deprived her of various rights in retaliation for her criticism of City acts and officials, including by causing her to be arrested for trespassing. Two of the defendants are Attorneys Steven Bolton and Celia Leonard ("the Attorney Defendants"), who are the City's Corporation Counsel and Deputy Corporation Counsel, respectively. Following the court's order on the Attorney Defendants' Rule 12 motion, the only claim remaining against them is that they violated Ortolano's First Amendment rights by causing her to be arrested in retaliation for exercising her rights to free speech and to petition the government. The Attorney Defendants now move for summary judgment as to Ortolano's retaliatory arrest claim. Doc. no. 71. Ortolano objects. Doc. no. 75. For the following reasons, the Attorney Defendants' motion (doc. no. 71) is denied.

## STANDARD OF REVIEW

A movant is entitled to summary judgment where she "shows that there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs. Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## BACKGROUND

The following facts are not in dispute except where otherwise indicated. Ortolano has submitted hundreds of written and verbal "Right-to-Know" requests with the City, see RSA ch. 91-A, primarily seeking to obtain documents pertaining to the City's Assessing Department and its policies and processes for assessing property taxes. Ortolano has also filed multiple lawsuits against the City in New Hampshire state court alleging violations of the Right-to-Know law. See, e.g., Ortolano v. City of Nashua, 176 N.H. 175 (2023). In addition, Ortolano is a vocal public critic of the City and many of its departments, officials, and employees. She frequently expresses her criticism in public meetings, on social media, and on her blog. The Attorney Defendants have assisted the City in responding to Ortolano's Right-to-Know requests, have represented the City in Ortolano's state court actions, and are among the City employees Ortolano has publicly criticized.

On January 22, 2021, Ortolano went to Nashua City Hall to have property tax abatement applications date-stamped. When she saw that the office that normally handles date-stamps was closed, she went to the Legal Department. The

Legal Department is not open to the public and has locked entry doors. Ortolano knocked on the entrance to the Legal Department, and a legal assistant named Mindy Lloyd answered. Although the parties dispute the precise details of what occurred next, it is undisputed that Ortolano entered the Legal Department, that Attorney Leonard and another attorney told her she was trespassing and needed to leave, and that Ortolano did not leave.[1] Lloyd called the police, and Officer Timothy Roach of the Nashua Police Department ("Nashua PD") responded. Attorney Leonard told Officer Roach that she wanted Ortolano barred from returning to City Hall unless she had an appointment. Officer Roach told Ortolano that she could not enter City Hall for one year and would only be allowed in the building during that time if she had an appointment. Ortolano agreed to leave. Officer Roach did not arrest Ortolano for criminal trespass or any other offense, and she was allowed to leave City Hall. According to Officer Roach's call log, there were "[n]o offen[s]es alleged or apparent." Doc. no. 75-6 at 2.

Within about a week of this incident, Attorney Bolton arranged for a meeting between the Legal Department and Nashua PD Chief of Police Michael Carignan. Attorneys Bolton and Leonard were both present. According to Chief Carignan, Attorney Bolton demanded at this meeting that Nashua PD arrest Ortolano for her conduct. Chief Carignan stated he would not do so. In his deposition, Chief Carignan testified that Nashua PD ordinarily does not arrest individuals for criminal trespass when they comply with an officer's request to leave the premises

---

[1] Attorney Bolton was not present at the Legal Department for this incident.

3

where they are trespassing. He also testified that the Legal Department does not have authority over Nashua PD or how it conducts its investigations, and does not prosecute cases on behalf of Nashua PD.

Within a few days of this meeting, however, Attorney Bolton reached out to Captain Brian Kinney, who was in Nashua PD's legal department. Ortolano has presented evidence that, in these communications, Attorney Bolton continued to advocate for Ortolano's arrest.[2] In addition, Attorney Leonard spoke with Nashua PD and expressed her desire to have Ortolano's conduct further investigated. On February 1, 2021, Nashua PD reopened its investigation.

On February 3, 2021, Officer Roach interviewed Attorney Leonard. Attorney Leonard stated that she has received hundreds of emails from Ortolano regarding her Right-to-Know requests and that Ortolano has a "history" with the City as well as pending lawsuits against the City. Doc. no. 75-6 at 9. Attorney Leonard also stated that Ortolano was a vocal critic of City officials at public meetings, and that Attorney Leonard was among the City employees Ortolano had publicly criticized. Attorney Leonard told Officer Roach that she wished to pursue charges against Ortolano for the incident on January 22, 2021.

---

[2] Although neither party cites to it, the court notes that, in his deposition, Attorney Bolton denied ever advocating for Ortolano's arrest. See doc. no. 104-6 at 13-14; see also 10A Mary Kay Kane, Federal Practice & Procedure § 2721 (4th ed.) (at summary judgment the court is only required to consider the materials cited by the parties but has discretion to consider other materials in the record). Given that Ortolano is the nonmovant, the court construes this factual dispute in her favor.

4

Officer Roach thereafter applied for an arrest warrant for Ortolano for criminal trespass. See RSA 635:2. Based on an affidavit submitted in support of the arrest warrant's issuance, a Justice of the New Hampshire Circuit Court found probable cause to believe that Ortolano committed misdemeanor criminal trespass and authorized the issuance of an arrest warrant. See RSA 635:2, I, III(b)(2). Ortolano was thereafter arrested and charged with criminal trespass as a class A misdemeanor. See RSA 635:2, III(b)(2); RSA 625:9, IV(c)(2). Ortolano, who was represented by retained counsel in this criminal proceeding, entered into a negotiated agreement with the State pursuant to which the State agreed to reduce the charge to a violation-level offense in exchange for Ortolano's plea of guilty to that reduced offense. See doc. no. 75-7 at 2; see also RSA 625:9, II(b) ("A violation does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."). The parties agreed that Ortolano would be sentenced to a $500 fine, all but $100 of which would be suspended for a period of one year, conditioned upon Ortolano's good behavior and not entering the Legal Department at City Hall without an appointment. In connection with her plea-and-sentencing hearing, Ortolano signed a document entitled "Acknowledgment and Waiver of Rights" and submitted it to the state court. Doc. no. 75-7 at 5. In the Acknowledgment, Ortolano represented to the court that she was "admitting to . . . the truth of the charge[ ] against me in the complaint." Id. at 6. The state court accepted Ortolano's guilty plea and adopted the

5

parties' recommended sentence. Ortolano states she subsequently had her conviction annulled.

Following her arrest, Ortolano continued to attend public meetings and offer vocal criticism of City officials at these meetings. She also continued to engage in expressive activities on social media and her blog.

## DISCUSSION

As noted, the court previously dismissed all claims against the Attorney Defendants except to the extent Ortolano brought claims alleging that they caused her trespassing arrest in retaliation for exercising her First Amendment rights. The Attorney Defendants argue that they are entitled to judgment as a matter of law on Ortolano's retaliatory arrest claim because there is no genuine dispute of material fact that: (1) her arrest was supported by probable cause; (2) they did not cause her arrest; and (3) the arrest did not chill her speech.[3] The court addresses each argument in turn, beginning with probable cause.

I. The Existence of Probable Cause Does Not Doom Ortolano's Claim Because She Has Presented Objective Evidence that She Was Arrested When Similarly Situated Individuals Had Not Been

Generally speaking, to prevail on a First Amendment retaliation claim, a plaintiff must prove: "(1) he or she engaged in constitutionally protected conduct, (2)

---

[3] The Attorney Defendants raise an additional argument that they are entitled to summary judgment because Ortolano did not engage in any expressive or symbolic conduct at City Hall on January 22, 2021. Whether she did or did not is immaterial, however, because her theory of liability is that the Attorney Defendants caused her arrest in retaliation for speech and expressive conduct she engaged in before that date.

6

he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). Retaliatory arrest claims are subject to an additional requirement, however. Ordinarily, to prevail on a retaliatory arrest claim, a plaintiff must also prove that her arrest was not supported by probable cause. Nieves v. Bartlett, 587 U.S. 391, 401 (2019). Here, there can be no dispute that Ortolano's arrest was supported by probable cause . A state court judge expressly found there was probable cause to believe Ortolano committed misdemeanor criminal trespass when the judge issued a warrant for Ortolano's arrest. And Ortolano admitted to the truth of the criminal trespass charge when she pled guilty.

However, the existence of probable cause is not fatal to a retaliatory arrest claim when the plaintiff is arrested in "circumstances where officers have probable cause to make arrests but typically exercise their discretion not to do so." Id. at 406. Under this exception, a plaintiff may succeed on a retaliatory arrest claim despite probable cause if she "presents objective evidence that [she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. at 407. The rationale behind this exception is that "an unyielding requirement to show the absence of probable cause could pose 'a risk that some [decision makers] may exploit the arrest power as a means of suppressing speech.'" Id. at 406 (quoting Lozman v. Riviera Beach, 585 U.S. 87, 99 (2018)). To illustrate the types of circumstances in which this exception may apply, Nieves gave

7

the example of an intersection where "jaywalking is endemic but rarely results in arrest." Id. at 407. "If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." Id.

The Supreme Court further explained this exception to the probable cause requirement in the recent case of Gonzalez v. Trevino, 602 U.S. 653 (2024). There, the plaintiff organized a petition seeking the removal of a city official. Gonzalez, 602 U.S. at 655. After she placed the petition in her belongings at the conclusion of a city council meeting convened to discuss the petition, she was arrested for violating an anti-tampering statute that prohibits the intentional removal of government records. Id. at 655-56. In her subsequent civil rights action, she claimed she was arrested in retaliation for her role in organizing the petition. Id. at 656. She sought to overcome the existence of probable cause for her arrest and invoke the Nieves exception by reviewing the past decade of misdemeanor and felony data for the county to show that the statute had never been used to charge someone "for trying to steal a nonbinding or expressive document." Id. at 657. She claimed that the statute was typically used in felony cases to prosecute defendants that allegedly created false identification documents, passed fake checks, hid murder evidence, or cheated on government exams. Id. She further claimed it was used in misdemeanor cases involving fake social security numbers, driver's licenses, or green cards. Id.

8

The Supreme Court held that the plaintiff's evidence fit within the exception to the probable cause requirement announced in Nieves. "[T]he fact that no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past." Id. at 658. The plaintiff was not required to present evidence of "virtually identical and identifiable comparators" who "mishandled a government petition in the same way . . . but were not arrested." Id. (quotation omitted).

Here, Ortolano points to objective evidence similar to what was produced in Gonzalez from which a reasonable trier of fact could conclude that she was arrested for criminal trespass when other similarly situated individuals would not be. In his deposition, Chief Carignan explained that it is Nashua PD's general practice not to arrest individuals for criminal trespass when the individual leaves the premises after the arrival of the police officer and upon the officer's request. Doc. no. 76 at 18-19. In this case, although Ortolano left City Hall after being asked to do so by the police, she was ultimately arrested and prosecuted for criminal trespass. In addition, Ortolano has provided the court with documents produced as a result of a Right-to-Know request made to Nashua PD for public records of all instances of criminal trespass that occurred at City Hall between January 1, 2014, and January 31, 2021. Doc. no. 75-18. The records show that, despite several trespass calls to City Hall during that period, Ortolano was the only individual arrested after complying with a police request to leave the premises. This objective evidence

9

permits a trier of fact to conclude that Ortolano was arrested in circumstances when others would not be, such that the existence of probable cause for her arrest does not doom her retaliation claim.

II. <u>Construing the Evidence in Ortolano's Favor, a Reasonable Jury Could Find that the Attorney Defendants Were a But-For Cause of Her Arrest</u>

The Attorney Defendants next argue that their actions following the January 22, 2021 incident did not cause Ortolano's arrest and that the decision to arrest her was made by Nashua PD alone. It is true that, to succeed on her retaliatory arrest claim against the Attorney Defendants, Ortolano "must establish a 'causal connection' between [the Attorney Defendants'] 'retaliatory animus'" and Ortolano's arrest. [Nieves, 587 U.S. at 398](quoting [Hartman v. Moore, 547 U.S. 250, 259 (2006)]). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Id. at 398-99 (emphasis omitted).

The Attorney Defendants contend that Nashua PD ultimately decided to arrest Ortolano because she admitted to committing criminal trespass on social media. They also point out that they do not oversee Nashua PD investigations or prosecutions, and that Nashua PD employs its own prosecutors. However, construing the evidence in Ortolano's favor, a reasonable jury could conclude that the Attorney Defendants' conduct was a but-for cause of her arrest. There is evidence that Attorney Bolton advocated for Ortolano's arrest to multiple high-

ranking officers within Nashua PD, including the Chief of Police. Attorney Leonard also spoke with Nashua PD after the meeting with Chief Carignan to express her desire that Ortolano be investigated. Although Chief Carignan told Attorney Bolton in their face-to-face meeting that he would not arrest Ortolano, both of the Attorney Defendants continued to advocate for an investigation or arrest after this meeting, and Chief Carignan testified that he ultimately supported his subordinates' decision to arrest Ortolano. Moreover, when Officer Roach interviewed Attorney Leonard within a few weeks of the incident, Attorney Leonard discussed Ortolano's vocal public criticism of City officials (including her criticism of Attorney Leonard specifically), their longstanding feud over Ortolano's numerous Right-to-Know requests, and expressed her desire to press charges against Ortolano. Viewing this evidence and all reasonable inferences which can be drawn therefrom in Ortolano's favor, a reasonable jury could conclude that, had the Attorney Defendants not engaged in these actions, Nashua PD would have adhered to its policy not to make trespassing arrests when the trespassing individual leaves after being asked to do so by a police officer. The Attorney Defendants are therefore not entitled to summary judgment on this basis.

III. <u>A Plaintiff Pursuing a Retaliatory Arrest Claim Need Not Prove That the Arrest Subjectively Chilled Their Exercise of First Amendment Rights</u>

Finally, the court considers the Attorney Defendants' argument that they are entitled to summary judgment on Ortolano's retaliatory arrest claim because she cannot show that the arrest chilled the exercise of her First Amendment rights. However, to succeed on a retaliation claim, a plaintiff need not prove that the

11

alleged retaliation subjectively chilled her from engaging in conduct protected by the First Amendment. Grossman v. Martin, 566 F. Supp. 3d 136, 145 (D.R.I. 2021). Rather, she need only show (1) that she engaged in protected conduct, (2) the defendant took an adverse action against her, (3) her protected conduct was a substantial or motivating factor for the adverse action, and, (4) if the claim is for retaliatory arrest, that her arrest was not supported by probable cause (unless the Nieves exception applies). Elizabeth B., 675 F.3d at 43; Nieves, 587 U.S. at 401, 406-07. "Regarding the second element, an adverse action in a First Amendment case is one that 'viewed objectively would have a chilling effect on the plaintiff's exercise of First Amendment rights,' or that 'would deter a reasonably hardy person from exercising his or her constitutional rights.'" Pollack v. Reg. Sch. Unit 75, 12 F. Supp. 3d 173, 188 (D. Me. 2014) (emphasis added; citation, brackets and ellipsis omitted) (quoting Barton v. Clancy, 632 F.3d 9, 29 & n.19 (1st Cir. 2011), and Elizabeth B., 675 F.3d at 43 n.11). "Actual deterrence need not be shown." Grossman, 566 F. Supp. 3d at 145 (emphasis omitted) (quoting Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010)). And here, the Attorney Defendants concede in their summary judgment motion that Ortolano's arrest constituted an adverse action. Doc. no. 71-1 at 12.

The Attorney Defendants contend that this court previously held, in its order partially granting their motion for judgment on the pleadings, that a plaintiff must plausibly allege that her speech was actually chilled in order to state a First Amendment claim. The Attorney Defendants misread this court's prior order. The

court did not hold that a plaintiff pursuing a retaliatory arrest claim must show a subjective chilling effect. Indeed, the court found that Ortolano's allegations stated a claim of retaliatory arrest despite the lack of facts plausibly suggesting she had been subjectively chilled from exercising her First Amendment rights. Ortolano v. City of Nashua, 694 F. Supp. 3d 167, 179 (D.N.H. 2023). The court therefore rejects the Attorney Defendants' argument that Ortolano is required to demonstrate she was subjectively chilled from exercising her First Amendment rights following her arrest.

## CONCLUSION

The Attorney Defendants' motion for summary judgment (doc. no. 71) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 14, 2025

cc: Counsel of Record