## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **Laurie Ortolano,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:22-cv-00326-LM** |
| | ) | |
| **The City of Nashua,** *et al.*, | ) | |
| **Defendants.** | ) | |
| | ) | |

## MOTION FOR RECONSIDERATION
## (with incorporated Memorandum)

Defendants Steven A. Bolton, Corporation Counsel for the City of Nashua, New

Hampshire, and Celia K. Leonard, a Deputy Corporation Counsel for the City of Nashua, New

Hampshire, pursuant to LR 7.2(d), respectfully move for reconsideration of the Court's Order

issued February 14, 2025 ("Order") denying their motion for summary judgment,[1] on the ground

that it is based on manifest errors, as follows:

1.    **Exception to Probable Cause Bar Inapplicable**.

Notwithstanding the plaintiff's plea of guilty and acknowledgement in court that she

committed the offense, Order at 7, the Court determined that others similarly situated had not

been subject to arrest, and thus permitted the retaliatory arrest claim to stand.  The manifest error

of fact in the Court's ruling on this point lies in the reliance on *distinctly dissimilar* incidents to

support this conclusion, as well as uncontroverted evidence before the Court that explained the

reason for the arrest in this unusual situation.

---

[1] The Order does not address the July 2022 encounter between Attorney Bolton and the plaintiff, but focuses only on the alleged retaliatory arrest in February 2021.  *See* Order at 1 ("Following the court's order on the Attorney Defendants' Rule 12 motion, the only claim remaining against them is that they violated Ortolano's First Amendment rights by causing her to be arrested in retaliation for exercising her rights to free speech and to petition the government.").  Given the absence of any arrest as a result of the July 2022 incident, undersigned counsel assumes that the July incident is no longer a part of these proceedings.

The plaintiff had entered a locked law office[2] *on the third floor of City Hall*, not open to the public, and refused to leave until police were called.  Even then, the plaintiff made known her admission to the offense and refusal to obey the commands by those in charge to leave the office. These facts are qualitatively (and quantitatively) different from the incidents included in the documents provided to an associate of the plaintiff in response to a public records request, Doc. no. 75-18, particularly as none involved a locked office (much less a law office) or an area not open to the public.

The few incidents, spanning a seven-year period (2014-21), reflect the following:

- 12/4/14 - an intoxicated woman passed out in a first floor bathroom,[3] Doc. no. 75-18 at 6;

- 8/12/15 - a "check conditions" with no identified subject and no details of the situation, *id.*;

- 4/17/17 - an individual who had been trespassed from "7 Star and Main Street Gyro" due to disorderly conduct, *id.*;

- 8/23/17 - individuals going through trash and taking cardboard in front of City Hall were "trespassed and both left upon request," *id.* at 7;

- 5/2/18 an intoxicated man in the first floor bathroom "drinking several malt beverages," "issue[d] a one year trespass from city hall and its curtilage. He was advised that if he had business in City Hall to contact NPD and request a keep the peace," *id.*;

- 5/29/18 - a man "on the Nod" sitting on benches next to City Hall, "warned about trespassing on the property and told to leave," *id.*;

- 7/23/19 - an individual who had been trespassed from the transit center, was "upset at City Hall about being trespassed from the Transit Center. . . He was advised to leave the area and did so upon request," *id.*;

---

[2] The Court can judicially notice the confidential and sensitive nature of information and materials that would be present in such a setting.

[3] Although this record is unclear it appears that this individual may have left City Hall by ambulance.  Doc. no. 75-18 at 6 (ambulance enroute).

- 8/29/19 – Subject refused to leave the Community Development Offices at City Hall, the call was cancelled because the subject left, *id.*;

- 5/12/20 – Two men were hanging out behind City Hall and stated that they were leaving, *id.*; and

- 12/28/20 - a man who snuck in, acting disorderly, was "warned not to enter city hall unless he makes an appointment first due to city hall being closed," *id*.[4]

Although the records Ms. Ortolano presents give incomplete information about these incidents, it appears that the only incident where a person was asked to leave and did not do so was on May 2, 2018. In that case, the individual was "issue[d] a one year trespass from city hall and its curtilage. He was advised that if he had business in City Hall to contact NPD and request a keep the peace." This response is *similar* to Ms. Ortolano's initial treatment. *See* Doc. no. 71-1 at ¶18 ("The Nashua Police Department informed Plaintiff that 'she [was] being trespassed from City Hall and only allowed in the building with an approved appointment.' She was advised that she could face arrest from Criminal Trespass if she attends City Hall without an appointment."). Only after Ms. Ortolano commented that "she would probably be arrested as she would be back" was Ms. Ortolano arrested. *See* Doc. no. 71-1 at ¶19-22.

Unlike the jaywalking example cited in recent decisional law creating an exception to the probable cause bar, Order at 7-8, plaintiff's conduct here is exceptional, and novel (compared to the other cited incidents). Ms. Ortolano engaged in specific conduct known by her to be wrong, refused to leave after sitting down in the office on the floor (Doc. no. 78-1) (photographs attached hereto as Exhibit A), refused to obey a command to leave, and then publicly stated that she would probably engage in the conduct again (in Chief Carignan's words, "bragging").

As noted in the defendant attorneys' reply at 4-5 (Doc. no. 78), these undisputed facts so

---

[4] Nothing in the record suggests that the defendant attorneys knew of these incidents.

far distinguish the circumstances and rationale of the cases recognizing the exception as to make this case appropriate for summary judgment on this basis.

      2.      **The Defendant Attorneys Did Not "Cause" the Arrest.**

The Order at 4 acknowledges that Police Chief Carignan "testified that the Legal Department does not have authority over Nashua PD or how it conducts its investigations, and does not prosecute cases on behalf of Nashau PD," an undisputed fact. Yet the Order relies on inferences from disputed facts to conclude that a genuine issue of material fact exists with respect to whether or not the defendant attorneys "caused" (in a "but for" sense) the plaintiff's arrest. The manifest error of fact and law lies in reliance on totem-pole hearsay statements offered by the plaintiff (Carignan Deposition at 87-88, Doc. no. 88-6)[5] in direct contradiction to unambiguous admissible evidence demonstrating that the defendant attorneys had no authority to cause an arrest, and the undisputed explanation (unrelated to any acts of the defendant attorneys) as to why the arrest occurred subsequent to the actual incident. The First Circuit addressed inferences in this context recently:

> And it is an uncontroversial proposition that conjecture cannot take the place of proof in the summary judgment calculus. Although we must draw all reasonable inferences in [nonmovant's] favor at the summary judgment stage, we are not required to draw unreasonable inferences.

---

[5] Q. Did Brian Kinney tell you the content of those conversations between himself and Steve Bolton?
A. The conversation, I don't recall him telling me specifically, but it would have gone to his captain up to the deputy to me.
Q. And you don't remember anything that was said?
A. No.
Q. Admittedly, by the time it reached you second or third-hand?
A. Correct.
Q. Do you remember the nature of what was said?
A. I don't. I -- no, I remember the conversation with Bolton, and we held firm that we weren't going to pursue charges, and that's -- I knew there was back and forth, but I don't remember what they specifically were.
Q. Did you understand that Steve Bolton was advocating for the arrest of Laurie Ortolano when he spoke with Brian Kinney?
A. I believe so.· I know for a fact he was advocating for it when we had our meeting.

*Mirabella v. Town of Lexington*, 64 F.4th 55, 58 (1st Cir. 2023) (cleaned up).

The affidavits supporting the defendant attorneys' motion for summary judgment — their own, their assistant's, and the then chief of police (Doc. nos. 71-2, 71-13, 71-17, and 72 (Leonard and Lloyd Affidavits attached as Exhibits B and C, as they describe the incident)) — set forth a clear chronology leading from the plaintiff's intrusion into the locked legal office, notwithstanding Mindy Lloyd's (the assistant) efforts to prevent her ("I told the plaintiff she could not enter the office without an appointment.  Instead of leaving, the plaintiff forcibly entered the locked, legal department, and forced her way past me into the locked office area." Doc. no. 72, ¶¶ 3,4), her sitting down on the floor and refusing to leave, encounter with the police called to address the situation, and ultimately the decision by the police department to charge her.  In evaluating this information, it is significant to bear in mind that the defendant attorneys and their staff were the victims of this offense.[6]  There is nothing suspicious or unusual in their interactions with law enforcement following the incident.  Indeed, and contrary to the assertions in plaintiff's surreply, Doc. no. 81 at 3, victims of a crime are privileged to make statements to law enforcement, particularly truthful ones in response to the questions of investigating officers. Such statements are absolutely privileged from civil actions. *McGranahan v. Dahar*, 119 N.H. 758, 763, 768 (1979) ("substantial interests of society in encouraging citizens to report suspected criminal activity to the appropriate legal authorities, and to cooperate fully in investigations").

As to Attorney Bolton, he was not present when the plaintiff trespassed into his office,

---

[6] The Court's characterization in the Order at 11 of the litigation activity by the plaintiff against the City as a "feud" is not warranted. The defendant attorneys have a professional responsibility to defend actions against their client, and doing so does not constitute a "feud" with the opposing party. Nothing less than diligent advocacy is required and expected of lawyers, and no "retaliatory animus" can or should be attributed to them from their actions on behalf of their client in litigation or other matters.

but there was nothing inappropriate, given the circumstances, in him believing that a charge was warranted for anyone engaging in this behavior.  He asked the police department to interview witnesses before making a charging decision.  The plaintiff's objection relies on a hearsay statement, allegedly from a police officer (Kenney), that Attorney Bolton denies (as noted by the Order at 4, note 2).  To draw an inference favorable to the plaintiff on this record is not reasonable, and leads to an unjust result.

As to Attorney Leonard, she had four interactions with the police regarding plaintiff's admitted trespass.  First, she arrived at her office after the plaintiff had forcefully entered, was present when the plaintiff sat down on the floor, blocking access to Attorney Leonard's office, and refused to leave, and again, properly viewed as a victim, asked the responding officer to bar the plaintiff from entering the legal office without an appointment.

Second, Attorney Leonard agreed with Attorney Bolton's request to the police that they conduct further investigation of the trespass during a meeting with the police where Attorney Bolton and others were present.  Third, she and Attorney Bolton met in-person with the then Police Chief, at the Chief's request, and the Chief told the attorneys that the police had decided to investigate the trespass incident further.  Lastly, when interviewed by the police in the investigation the police in their sole discretion decided to initiate, she ultimately expressed a view, as a victim, that a charge was appropriate.  Attorney Leonard's statements to the police regarding plaintiff's right to know requests and litigation were truthful answers to police questioning and all were publicly known or available facts.  There is no evidence, and it cannot be reasonably inferred, that telling the truth in response to police inquiries translates to retaliatory animus.  There are no facts in the record that show or support a reasonable inference

that Attorney Leonard's motive for truthfully answering police questions was retaliatory.[7]

The decision to investigate and charge rested indisputably with the police department, and it has explained its reasoning — having nothing to do with any acts of the defendant attorneys:

> I was advised by my deputies that they wanted to open an investigation to re -- to relook at the case because of a social media post that Ms. Ortolano had posted, but if I remember right, she was bragging about refusing to leave, and not -- not obeying the commands of what the person who had control of the property did, meaning the legal department.
>
> …
>
> The decision, from what I understand, to arrest was her admission of committing the crime.  She went on her social media post and admitted to refusing to obey those commands, and for us the discussion, if I remember correctly, was, well, she's admitting to a crime, we don't need a witness to necessarily come forward, she's making her own self-admissions, so we will charge her, and I supported that decision.
>
> …
>
> So if I -- if I understand their thought process correctly, she was admitting to committing the crime, bragging about committing the crime, and the concern was that the bragging and the admissions occurred after the warning and the no trespass, and the thought was that she was pretty vocal about it, and there was a concern that it would be a repeat offense, and the decision was made to arrest her for it.

Carignan Deposition at 89-91, Doc. no. 88-6. The defendant attorneys could not, and did not, cause the arrest, the only government action at issue.

The undisputed evidence in the record shows that Attorney Bolton requested investigation of plaintiff's crime against his office and Attorney Leonard agreed that such an investigation into the crime that personally victimized her and her colleagues should take place

---

[7] The Order, at 10-11, summarizes the record relating to the actions of the defendant attorneys, primarily from the police records, their affidavits, and the Carignan deposition (Doc. no. 88-6).  In preparing this motion to reconsider, undersigned counsel noted that the police records submitted by the plaintiff in her objection to the motion for summary judgment (Doc. no. 75-6, Exhibit A-4) were missing the first pages of the statements of Attorneys Leonard and Neumann. The reconstituted packet is attached to this motion as Exhibit D (the previously missing pages are at 16 and 18).

– an investigation that the record shows they each had no power or authority to order or compel. That is not government action. Attorney Bolton and Attorney Leonard met with the then Chief at the Chief's request as the victims of a crime. Meeting with the police as victims is not government action. The undisputed evidence in the record shows that Attorney Leonard answered police questioning truthfully. That is not government action.

In short, the defendant attorneys did not conduct any government action that is alleged to have violated plaintiff's first amendment rights. A finding that the defendant attorneys' nongovernmental actions, as described above and as shown in the record, somehow violated plaintiff's first amendments rights in effect chills the speech of government employees who are victims of unlawful acts.

The Court's Order finds that a reasonable jury could conclude that the defendant attorneys' conduct was a but-for cause of her arrest, citing to instances where they advocated for further investigation or arrest of Ortolano. However, such a finding does not consider that those attorneys, as representatives of the City's Legal Department, were victims of Ortolano's trespass, or that their participation in advocating that something be done in response to Ortolano's commission of a crime, is a legitimate, non-retaliatory action. "Requiring that causal connection to a retaliatory motive is important, because '[s]ome official actions adverse to . . . a speaker might well be unexceptionable if taken on other grounds.'" *NRA of Am. v. Vullo*, 602 U.S. 175, 203-204 (2024).

And such is the case here. There is no evidence in the record to contradict the defendant attorneys' stated reason – a forced entry into their office by one previously on notice not to do so – for communicating their desire that the Nashua PD conduct an investigation prior to making a decision of whether or not to arrest Ortolano. Accordingly, the Court should not accept the

plaintiff's conclusory assertion that defendant attorneys' communicated desires that the Nashua

PD conduct a further investigation reflects a retaliatory animus.

Finally, no matter whether any advocacy or desire emanated from the Legal Department

for further investigation or prosecution of the plaintiff, any causal link was cut off by the

undisputed decision-making process of the Nashua PD, exemplified by the unambiguous

testimony of Chief Carignan.  The arrest came about because of the *plaintiff's* actions after the

incident, not those of the defendant attorneys.

**3.      No Actual Chill.**

In the Order on the defendant attorneys' motion for judgment on the pleadings, the

requirement of an allegation of actual chilling of rights is noted by the Court (in the context of

other claims by the plaintiff):

> Many of the allegations against the defendants relate to the dispute over the City's
> compliance with Ortolano's right-to-know requests and the resulting litigation. See, e.g.,
> Ortolano v. City of Nashua, No 2022-0237, 2023 N.H. LEXIS 149, 2023 WL 5313167
> (N.H. Aug. 18 2023). Ortolano has not provided any authority suggesting that the right-
> to-know dispute itself is an "adverse action."  Nor, given her continued litigation and
> pursuit of Assessing Department records, does the complaint plausibly suggest that her
> pursuit of City records was actually "chilled." See Sullivan v. Carrick, 888 F.2d 1, 4 (1st
> Cir. 1989) (holding that *a plaintiff must show that her speech was "actually chilled" to
> state a First Amendment violation*); Hurwitz v. Newton Pub. Sch., No. CV 17-10231-
> LTS, 2017 WL 3008886, at *3 (D. Mass. July 14, 2017) ("*To show a deprivation of their
> First Amendment rights, Plaintiffs 'must allege that [their] speech was in fact chilled or
> intimidated by' Defendants' actions.*"), aff'd, No. 17-1829, 2018 U.S. App. LEXIS 38751,
> 2018 WL 11442304 (1st Cir. Dec. 20, 2018)). Therefore, to the extent that Ortolano's
> First Amendment claims are based on her dispute over the Nashua Legal Department's
> responses to her record requests, defendants' motion is granted.

*Ortolano v. City of Nashua*, 694 F. Supp. 3d 167, 178-179 (D.N.H. 2023) (emphasis supplied).

In their motion for summary judgment, the defendant attorneys focused on the evidence

demonstrating the absence of any *actual/subjective* chilling of the plaintiff's exercise of first

amendment rights.  By any lights, there is no genuine issue of material fact on this point.

In the motion, they were not sufficiently clear about the point to which their actual chill argument applied. The objective standard relates to the determination of whether an adverse action occurred. As the Court has noted, and the defendant attorneys have not contested, the arrest by the Nashua Police Department was such an adverse action.

The argument made by the defendant attorneys in their summary judgment motion was that the plaintiff had not shown a deprivation of her First Amendment rights, because on the record evidence, a required showing of actual chilling cannot be made. *See Sullivan v. Carrick,* 888 F.2d 1, 4 (1st Cir. 1989). The record evidence, catalogued in the Bolton affidavit (Doc. 71-2 at 2-5), negates any plausible claim that Ms. Ortolano was chilled.

### 4.    <u>Conclusion.</u>

Based on the foregoing, the defendants Bolton and Leonard respectfully request the Court to reconsider its Order, and grant their motion for summary judgment.

5.    Due to the nature of the relief requested, assent from the plaintiff was not sought.

6.    No brief or memorandum of law is necessary in support of this motion, as it sets forth the arguments and authorities relied upon.

Respectfully submitted,

**Steven A. Bolton and Celia K. Leonard,**

By their Counsel,

**UPTON & HATFIELD, LLP,**

Date:  February 28, 2025

/s/ Russell F. Hilliard
Russell F. Hilliard
NHBA #1159
159 Middle Street
Portsmouth, NH 03801
(603) 436-7046
rhilliard@uptonhatfield.com

Brooke Lovett Shilo
NHBA #20794
10 Centre Street; PO Box 1090
Concord, NH 03302-1090
(603) 224-7791
bshilo@uptonhatfield.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day forwarded to all counsel of record through the Court's E-filing system.

/s/ Russell F. Hilliard
Russell F. Hilliard