UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Laurie Ortolano

      v.                        Civil No. 22-cv-326-LM
                                         Opinion No. 2025 DNH 031 P

City of Nashua, et al.

## **O R D E R**

Plaintiff Laurie Ortolano brings this suit against the City of Nashua ("Nashua" or "the City"), several Nashua officials and employees, and two private parties. The gist of Ortolano's complaint is that the defendants, individually or collectively, improperly deprived her of various rights in retaliation for her criticism of City acts and officials, for seeking access to public records, and for bringing lawsuits against the City. One of the defendants is Kim Kleiner, who was at relevant times the Director of Administrative Services for the City. Presently before the court is Kleiner's motion for summary judgment. Doc. no. 86. Ortolano objects. Doc. no. 102. For the following reasons, Kleiner's motion (doc. no. 86) is granted.[1]

## **STANDARD OF REVIEW**

A movant is entitled to summary judgment where she "shows that there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs. Inc., 707 F.3d 108, 115 (1st Cir. 2013).

---

[1] Although Ortolano requests a hearing, the court does not believe a hearing would be of assistance. LR 7.1(d).

## BACKGROUND

I.    Local Rule 56.1

At the outset, the court's discussion of the undisputed facts underlying this motion is hampered by Ortolano's failure to comply with Local Rule 56.1. That rule, known as an "anti-ferret" rule, "is aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through [the] record." P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 131 (1st Cir. 2010). In that vein, Local Rule 56.1 requires memoranda in opposition to motions for summary judgment to "incorporate a short and concise statement of material facts, supported by appropriate record citations." LR 56.1(b). The First Circuit has "held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril." Rivera-Vázquez, 603 F.3d at 131. Noncompliance with Local Rule 56.1 could result in the court deeming admitted all properly supported facts in the moving party's statement of material facts, see LR 56.1(b), or even striking the summary judgment objection in its entirety, see LR 1.3(a). See also Rivera-Vázquez, 603 F.3d at 131 (noting a district court's broad authority "to determine what departures from a local rule may be tolerated").

Here, many of the factual assertions in Ortolano's statement of facts are not accompanied by any citation to the record. See, e.g., doc. no. 102-1 at 3 (asserting without citation that Kleiner began "personally surveilling every citizen's request to look at Assessing Department records"). Many assertions cite to exhibits that have not actually been provided to the court. For example, Ortolano asserts that City officials "actively monitor[ed] her activities and communicate[d] with each other

about her whereabouts and actions in City Hall" and cites an exhibit purportedly attached to her objection containing emails, but there are no emails attached to her objection. Doc. no. 102-1 at 1-2; see doc. nos. 102-2, 102-4 through 102-16. In addition, Ortolano cites to attachments to her objection by exhibit number, but almost none of those attachments have been marked. For many citations, it is impossible to determine what Ortolano is citing to.

Ortolano's substantial noncompliance with Local Rule 56.1 results in "exactly the sort of arch[a]eological dig that anti-ferret rules are designed to prevent." Rivera-Vázquez, 603 F.3d at 131. Although this court could exercise its discretion to strike Ortolano's summary judgment opposition, it will not do so.[2] Nevertheless, in ascertaining the relevant undisputed facts for purposes of resolving Kleiner's summary judgment motion, the court will disregard factual statements in Ortolano's statement of facts that are not accompanied "by appropriate record citations." LR 56.1(b); see Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc., 126 F.4th 773, 781 (1st Cir. 2025) (disregarding noncompliant factual assertions "is a paradigmatic example of the appropriate operation of an anti-ferret rule"). In view of the foregoing, the court turns to the relevant undisputed facts.

II.    Factual Background

    A.    Background on Ortolano's Dispute with the City

Ortolano moved to Nashua in late 2013. Shortly after she moved into her home, the City reassessed her property value, which increased her property tax

---

[2] Kleiner has not sought that relief.

liability. Ortolano believed the new assessment was inaccurate and that her new property tax obligation was too high. She thereafter engaged in various efforts to lower her property tax bill, including by seeking a reevaluation of her assessment. Ultimately, the City did not lower its assessment of Ortolano's property value to her satisfaction.

Ortolano's experience seeking to lower her property tax assessment led her to become a vocal public critic of the City and many of its departments, officials, and employees, including the Assessing Department. Since 2018, she has attended and spoken at over 200 public meetings. See doc. no. 84-4 (424-page document outlining Ortolano's statements since 2018). She frequently criticizes the City and the Assessing Department for a perceived lack of accessibility to property records. See, e.g., id. at 228.

Ortolano also makes public statements critiquing the City and its officials online. She posts her critiques on social media, and even launched a website where she has posted blogs about perceived problems with Nashua city government. Some of those blogs were entitled "An Overview of Nashua Assessing," "What is Sales Chasing?" and "Will the 2019 Abatement Process in Nashua be Fair?" Doc. no. 1 ¶ 97. According to Ortolano, her statements online and at public meetings gave her a "public profile" such that many members of the public began asking her to assist them with property tax abatement applications. Id. ¶ 98.

In addition to expressing public criticism of the City and its departments and employees, Ortolano has submitted several hundred written and verbal "Right-to-Know" requests with the City. See RSA ch. 91-A. Her requests primarily seek to

4

obtain documents pertaining to the City's Assessing Department and its policies and processes for assessing property taxes. Ortolano has also filed multiple lawsuits against the City in New Hampshire state court alleging violations of the Right-to-Know law. See, e.g., Ortolano v. City of Nashua, 176 N.H. 175 (2023). Ortolano characterizes her public criticism, Right-to-Know requests, and lawsuits against the City as "a public crusade to pressure Nashua officials to clean up the Assessing Department." Doc. no. 1 ¶ 33. Ortolano's disputes with the City have received substantial media coverage. See, e.g., Dean Shalhoup, Property Owner Alleges Wrongdoing by City, Nashua Telegraph (Feb. 20, 2019).[3]

B.    Kleiner's Procedures for Handling Document Requests

Kleiner began working for the City in 2016. In May of 2019, Kleiner became the Administrative Services Director for the City, a role in which she oversaw the Assessing Department. Around the time Kleiner assumed this position, the City began requiring that Ortolano submit her questions to the Department's assessors in writing. Kleiner or the City's Chief Financial Officer would then provide a written response. In addition, the City implemented a new procedure to respond to requests from members of the public seeking large numbers of documents involving property that the requester did not own. Under this new procedure, the person requesting documents was required to submit an electronic form outlining the documents he or she sought and provide his or her name and contact information.

---

Available at: https://www.nashuatelegraph.com/news/2019/02/20/property-owner-alleges-wrongdoing-by-city/.

The City would then respond within five days. Kleiner also directed that questions about assessments submitted through this electronic form should be forwarded to her.

In June of 2019, the City's Legal Department directed that all of Ortolano's records requests should be submitted to that Department. The Legal Department was thereafter responsible for responding to Ortolano's requests. Kleiner did not oversee the Legal Department.

C.    Statement at Board of Aldermen Meeting

In the summer of 2020, the City hired Inception Technologies, Inc. ("Inception") to digitize its assessing records. The project continued through 2022. In late 2021 or early 2022, Ortolano called Ray Feoli, the President of Inception, to inquire about the project. On February 4, 2022, Kleiner spoke to Feoli about the project. Feoli told Kleiner that he had already spoken with Ortolano about the project. He also told Kleiner that, based on what Ortolano communicated to him during his conversation with her, he thought Ortolano was a City employee. Kleiner found this concerning and told Feoli that Ortolano was not, in fact, employed by the City. She also told Feoli that she would update Nashua's Board of Aldermen regarding the status of the digitization project at their next public session.

On February 8, 2022, the Board held a public session, and Kleiner spoke. After detailing Inception's progress on the project and its cost, she recounted her conversation with Feoli. Kleiner stated that Feoli told her "that a city employee named Ms. Ortolano had . . . reached out to him regarding the project and indicated

6

that she could expedite payment on the remaining project." Doc. no. 86-6 at 14. Kleiner told the Board that she "informed Mr. Feoli [Ortolano] was not employed by the city . . . which was concerning to him." Id. Kleiner told the Board that this matter had been referred to the Nashua Police Department.

Kleiner also provided the Board with an email from Feoli addressed to the Board[4] explaining the circumstances of his contact with Ortolano. In the email, which was accepted into the Board's public file, Feoli states that he was "deceived by [an] individual, Laur[ie] Ortolano, who portrayed herself as a city employee to me on thre[e] different occasions." Id. at 9. Feoli goes on to explain why he believed Ortolano to be a City employee during his interactions with her.

## DISCUSSION

Following the court's orders on the parties' Rule 12 motions and Ortolano's stipulation of dismissal as to many of the claims in the complaint (doc. no. 63), the following claims remain against Kleiner: (1) one or more First Amendment claims; (2) a claim for violation of the Right-to-Know law; and (3) defamation. Kleiner moves for summary judgment as to each claim. The court will consider each claim in turn.

---

[4] Although the text of Feoli's email indicates that it is addressed to the Board, he sent the email to Kleiner. Kleiner states that she did not ask Feoli to send her this email, but she felt she had to provide it to the Board because he addressed it to them.

I.    <u>Kleiner is Entitled to Summary Judgment as to Ortolano's First Amendment Retaliation Claim(s)</u>

Neither the complaint nor Ortolano's objection to Kleiner's summary judgment motion is the model of clarity. As best the court can tell from Ortolano's objection, she brings one or more First Amendment retaliation claims against Kleiner. Ortolano asserts that Kleiner retaliated against her for engaging in constitutionally protected conduct when Kleiner (A) implemented various procedures in 2019 for responding to Ortolano's requests for documents and (B) stated at a public Board of Aldermen meeting that Feoli informed her that he believed Ortolano was a City employee when he spoke with her.

Before proceeding, the court notes that Ortolano, who is represented by counsel, also asserts that Kleiner engaged in additional conduct that is actionable for retaliation. <u>See</u> doc. no. 102-1 at 22. However, Ortolano's assertions regarding this additional alleged conduct violate Local Rule 56.1. For example, Ortolano claims that Kleiner called the police to report that Ortolano was visiting homes while posing as a city assessor even though Kleiner knew Ortolano had not done so. But almost all of her assertions regarding this incident are unsupported by any citation to the record at all. <u>See</u> <u>id.</u> at 7. One assertion is accompanied by a record citation to "A-21," which Ortolano purports to have attached to her objection, but which is not actually attached. <u>Id.</u>

Other than Ortolano's assertions regarding responses to requests for documents and Kleiner's February 2022 statement before the Board of Aldermen, none of Ortolano's assertions come close to complying with Local Rule 56.1. Indeed,

while Local Rule 56.1 is intended to ensure that the parties are the ones identifying genuine disputes of material fact to "prevent [them] from shifting that burden onto the court," Rodríguez-Severino v. UTC Aero. Sys., 52 F.4th 448, 458 (1st Cir. 2022), here the court could not take on Ortolano's obligation to identify genuine factual disputes even if it wanted to—because many of her citations are to exhibits she has not provided to the court.

For these reasons, the court considers only whether Ortolano has adduced evidence from which a reasonable trier of fact could conclude that Kleiner engaged in unlawful retaliation when she (A) implemented certain procedures in 2019 for responding to Ortolano's document requests and (B) stated at a public Board meeting that Feoli claimed he thought Ortolano was a City employee when he spoke with her.[5]

A.    No Reasonable Jury Would Find that Kleiner Retaliated Against Ortolano by Implementing Procedures for Responding to Her Document Requests

To succeed on a retaliation claim, a plaintiff must show that "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or

---

[5] Ortolano also makes factual assertions regarding an incident in September 2019 where Kleiner asked a Nashua Police Department detective to convey to Ortolano various Assessing Department employees' wishes not to speak with Ortolano outside the department. She claims that this constituted retaliation as well. Although Ortolano's factual assertions do not comply with Local Rule 56.1, Kleiner is entitled to summary judgment on this claim for a reason discussed in the court's order on the detective's summary judgment motion: no reasonable trier of fact would conclude that the detective's statement constituted an adverse action. See doc. no. 126 at 8-10.

motivating factor in the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). There is no dispute that Ortolano's public criticism, records requests, and Right-to-Know litigation constitutes protected conduct. The court therefore begins its analysis with the adverse action element.

"[A]n adverse action in a First Amendment case is one that 'viewed objectively . . . would have a chilling effect on the plaintiff's exercise of First Amendment rights,' or that 'would deter a reasonably hardy person from exercising his or her constitutional rights.'" Pollack v. Reg'l Sch. Unit 75, 12 F. Supp. 3d 173, 188 (D. Me. 2014) (brackets and citation omitted) (quoting Barton v. Clancy, 632 F.3d 9, 29 & n.19 (1st Cir. 2011) and Elizabeth B., 675 F.3d at 43 n.11). While "the injury suffered need not be great," Bourne v. Arruda, Civ. No. 10-cv-393-LM, 2011 WL 2357504, at *15 (D.N.H. June 10, 2011) (quoting Mattox v. City of Forest Park, 183 F.3d 515, 519 (6th Cir. 1999)), the official action cannot be "so trivial that it would not deter an ordinary [person] in the exercise of his or her First Amendment rights," Barton, 632 F.3d at 29.

Here, Ortolano contends that Kleiner subjected her to adverse actions when Kleiner: implemented procedures that required Ortolano to submit questions to assessors in writing, which would then be answered in writing by Kleiner or the City's Chief Financial Officer; required persons requesting large quantities of documents pertaining to property they did not own to fill out a form and wait up to five days to receive the requested documents; and required that Ortolano's requests be forwarded to Kleiner. Ortolano has failed, however, to produce evidence from which a reasonable trier of fact could conclude that these actions would deter an

ordinary person from engaging in conduct protected by the First Amendment. A
reasonably hardy individual who wished to obtain public records would not be
deterred from doing so merely because she was required to submit her request in
writing rather than verbally, or because she had to wait up to five days to receive
requested documents. Courts have found much harsher action nonactionable for
retaliation. See, e.g., Artus v. Town of Atkinson, No. 09-cv-87-PB, 2009 WL
3336013, at *3 (D.N.H. Oct. 14, 2009) (concluding as a matter of law that a
reasonably hardy advocate of a local ballot initiative would continue to advocate for
the initiative even after the town's police chief angrily demanded an explanation
from another advocate as to why he supported the initiative). Moreover, the
requirements Ortolano complains of are akin to reasonable time, place, and manner
restrictions on expressive conduct. See Gericke v. Begin, 753 F.3d 1, 8-9 (1st Cir.
2014) (highlighting that the reasonableness of the restriction may be considered in
evaluating a retaliation claim). Indeed, they were "content-neutral and [left] open
alternative channels of communication." Heyliger v. Krygier, 335 F. Supp. 3d 482,
496 (W.D.N.Y. 2018).

 In addition, for at least some of the challenged procedures, Ortolano was
subject to them for only a brief period of time. Kleiner assumed her role overseeing
the Assessing Department in May of 2019. The procedures for requesting records
that Ortolano complains of were instituted at or around that time. In June of 2019,
the Legal Department began handling all of Ortolano's records requests. And
Kleiner did not oversee that department. From that point on, the Legal Department
was responsible for responding to Ortolano's records requests, not Kleiner. No

reasonable jury would conclude that a reasonably hardy person who wished to obtain public documents would be chilled from doing so on the basis of a requirement that she submit requests in writing for a period of a few months.

Because no reasonable jury could conclude that the measures Kleiner implemented to process Ortolano's requests constituted an adverse action, Ortolano's retaliation claim fails as a matter of law. Therefore, the court need not consider whether Ortolano has produced evidence demonstrating a genuine dispute as to whether Ortolano's constitutionally protected conduct was a motivating factor in Kleiner's decision to implement the challenged measures.

B.    No Reasonable Jury Would Find that Kleiner Retaliated Against Ortolano by Conveying Feoli's Statement to the Board of Aldermen

Ortolano claims that Kleiner committed unlawful retaliation when she informed the Board of Aldermen at a public meeting that Feoli told her he thought Ortolano was a City employee when he spoke with her, provided the Board with Feoli's email, and stated that the matter was being referred to the police. Once again, the court focuses its analysis on whether a reasonable jury could conclude that Kleiner's conduct constituted an "adverse action." Elizabeth B., 675 F.3d at 43.

Ortolano contends that Kleiner's conduct constituted an adverse action for First Amendment purposes because it violated a provision of New Hampshire's Right-to-Know law, specifically, RSA 91-A:3, II(c). RSA 91-A:3 provides that "[p]ublic bodies shall not meet in nonpublic session" except for a purpose expressly authorized by paragraph II of that statute. RSA 91-A:3, I(a). Paragraph II(c), in turn, authorizes public bodies to meet in nonpublic session to consider or act upon

"[m]atters which, if discussed in public, would likely affect adversely the reputation of any person, other than a member of the public body itself, unless such person requests an open meeting." RSA 91-A:3, II(c). Ortolano claims that Kleiner violated paragraph II(c) by disclosing Feoli's statement and email in a public Board meeting rather than a nonpublic session, and by publicly stating that the matter was in the hands of the police.

Even assuming, without deciding, that violation of this state statute constitutes an adverse action under federal constitutional law, Ortolano has not presented evidence from which a jury could reasonably conclude that Kleiner violated this statute. The plain text of RSA 91-A:3 makes clear that it regulates the conduct of "[p]ublic bodies." RSA 91-A:3, I(a). The Right-to-Know law defines public bodies to include, among other things, local legislative bodies and their committees and subcommittees. RSA 91-A:1-a, VI(d). The definition does not include individual municipal employees or officials. See RSA 91-A:1-a, VI. Because RSA 91-A:3 regulates public bodies and the definition of public body does not include individual municipal officials, no reasonable jury would conclude that Kleiner—an individual municipal employee—is subject to RSA 91-A:3, let alone that she violated that statute.

In addition, RSA 91-A:3 prohibits public bodies from meeting in nonpublic session unless a statutorily enumerated exception applies. RSA 91-A:3, I. Where an exception to this prohibition exists, RSA 91-A:3, II merely "permits a public body to enter a nonpublic session." Sivalingam v. Newton, 174 N.H. 489, 501 (2021) (emphasis added). Thus, even if the Board of Aldermen was authorized to enter into

a nonpublic session on the basis of Kleiner's statement, RSA 91-A:3, II did not

require it to do so, and its failure to enter a nonpublic session did not violate RSA

91-A:3, II(c) as a matter of law.

For these reasons, even if a violation of RSA 91-A:3, II(c) constitutes an

adverse action for purposes of a First Amendment retaliation claim (a matter upon

which the court expresses no opinion), Ortolano has failed to produce evidence from

which a reasonable jury could find that Kleiner violated this provision. Kleiner is

therefore entitled to summary judgment on this retaliation claim.

II.    <u>Kleiner is Entitled to Summary Judgment as to Ortolano's Right-to-Know
       Claim</u>

RSA 91-A:7 grants persons aggrieved by a Right-to-Know violation an action

for injunctive relief. In her complaint, Ortolano brings a claim against Kleiner for

violation of one provision of the Right-to-Know law: RSA 91-A:3, II(c). Ortolano's

Right-to-Know claim mirrors her retaliation claim premised upon Kleiner's

purported violation of RSA 91-A:3, II(c).

Kleiner contends she is entitled to judgment as a matter of law on Ortolano's

claim because damages are not an available remedy for violation of the Right-to-

Know law, and Ortolano's complaint seeks only damages on her Right-to-Know

claim.[6] Ortolano agrees that the Right-to-Know law's cause of action does not

---

[6] Although Kleiner's argument as to Ortolano's Right-to-Know claim is limited
to this contention, the court notes that Kleiner is likely entitled to summary judgment
on this claim for the reasons identified in Section I.B, <u>supra</u>. However, as Kleiner has
not sought summary judgment on these grounds, the court does not further consider
this possibility. <u>See</u> <u>Oahn Nguyen Chung v. StudentCity.com, Inc.</u>, 854 F.3d 97, 103

permit the recovery of monetary damages, see RSA 91-A:7, and she does not contend that she is entitled to any other form of relief against Kleiner for violation of RSA 91-A:3. Because Ortolano agrees she does not seek relief the court is empowered to grant, the court awards judgment as a matter of law to Kleiner on Ortolano's Right-to-Know claim.

III.    Kleiner is Entitled to Summary Judgment as to Ortolano's Defamation Claim

Ortolano claims that Kleiner's statements at the February 2022 Board of Aldermen meeting constitute defamation. Kleiner asserts that she is entitled to summary judgment on Ortolano's defamation claim because (A) she is immune from liability under RSA 507-B:4[7] and (B) Ortolano is a limited-purpose public figure and Ortolano cannot show that Kleiner acted with actual malice. The court considers each argument in turn.

A.    Kleiner is Immune from Liability Under RSA 507-B:4

RSA chapter 507-B grants municipalities and municipal employees immunity in certain circumstances. McCarthy v. Manchester Police Dep't, 168 N.H. 202, 207-08 & n.1 (2015). RSA 507-B:5 provides: "No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute."

_____

(1st Cir. 2017) (outlining a district court's authority to grant summary judgment based on grounds not raised by the moving party).

[7] Kleiner does not argue that she is immune from liability under any other statute or doctrine.

The phrase "personal injury" is broadly defined to include "[a]ny injury to the feelings or reputation of a natural person, including but not limited to . . . libel, slander, or the publication or utterance of other defamatory or disparaging material." RSA 507-B:1, III(a); see also McCarthy, 168 N.H. at 208-09 (concluding that chapter 507-B granted immunity from liability on a defamation claim). The only exception within the chapter to RSA 507-B:5's grant of immunity is RSA 507-B:2, which provides that "[a] governmental unit may be held liable for damages . . . arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises." RSA 507-B:2; accord Traudt v. Lebanon, --- F. Supp. 3d ----, 2024 WL 4226915, at *4 (D.N.H. 2024).

Although RSA 507-B:5 speaks in terms of "governmental unit[s]," another statute extends this immunity to municipal employees and officials. RSA 507-B:4, IV; accord McCarthy, 168 N.H. at 207 n.1. Under RSA 507-B:4, IV, a municipal employee has immunity on the same terms as the municipality itself so long as the employee acted (1) within the scope of the employee's official duties and (2) with a reasonable belief that her actions were lawful. Currier v. Town of Gilmanton, 621 F. Supp. 3d 233, 249 (D.N.H. 2022). Regarding the second prong, the employee must subjectively believe that her conduct is lawful, and her belief must be objectively reasonable. Farrelly v. City of Concord, 168 N.H. 430, 444 (2015). A belief in the lawfulness of one's conduct is not objectively reasonable when the employee acts "recklessly or wantonly." Id. at 445.

In this case, a reasonable jury would conclude that Kleiner acted within the scope of her official duties and with a reasonable belief that she was behaving

lawfully. Kleiner was in charge of the Assessing Department. She spoke with Feoli to discuss Inception's work on a City contract to digitize Assessing Department records. Feoli told her that he had already spoken with a City employee named Ms. Ortolano regarding the project. Kleiner told Feoli that she found this concerning, as Ortolano was not employed by the City. She told Feoli that she planned to update the Board of Aldermen on the status of the digitization project at their next public meeting. Feoli thereafter sent Kleiner an email addressed to the Board of Aldermen discussing the circumstances of his conversations with Ortolano. Kleiner states she felt obligated to provide Feoli's email to the Board because he addressed it to the Board and because she would be discussing the status of the digitization project at the Board's meeting.

Ultimately, at the Board's public session and after updating the Board on the progress and cost of the project, she said Feoli informed her "that a city employee named Ms. Ortolano had . . . reached out to him regarding the project and indicated that she could expedite payment on the remaining project." Doc. no. 86-6 at 14. She also provided the Board with Feoli's email, wherein Feoli claims he was "deceived" by Ortolano into providing information about the digitization project because Ortolano "portrayed herself as [a] city employee." Id. at 9. Finally, she informed the Board that the matter had been referred to the police. In making these statements to the Board, a reasonable jury would conclude that Kleiner was acting within the scope of her employment and with a reasonable belief that her conduct was lawful. Currier, 621 F. Supp. 3d at 249.

Ortolano's arguments to the contrary are not persuasive. She claims that Kleiner's public statement was outside the scope of her employment because she is not a lawyer and is therefore not responsible for determining whether Ortolano's conduct was criminal or whether it should have been referred to the Nashua Police Department. This argument is untenable. Ortolano essentially contends that nonlawyers act outside the scope of their employment whenever they call the police to report suspected wrongdoing that occurs on the job. If that were so, a bank teller would act outside the scope of his employment when he called the police to report a bank robbery. No reasonable person would so conclude.

Ortolano also asserts that Kleiner's conversation with Feoli was outside the scope of her employment because it took place on a Saturday. As a general matter, it is true that an employee's conduct is within the scope of her employment only if "it occurs substantially within . . . authorized time and space limits." Tessier v. Rockefeller, 162 N.H. 324, 343 (2011) (quoting Porter v. City of Manchester, 151 N.H. 30, 40 (2004)). But Ortolano has not pointed to evidence demonstrating a genuine dispute as to whether Kleiner was authorized to work on Saturdays.

Ortolano finally contends that Kleiner did not reasonably believe her statement to the Board was lawful because her statement constituted defamation, violation of the Right-to-Know law, and a First Amendment violation. Phrased differently, she contends that Kleiner could not have reasonably believed her statement was lawful, because her statement was, in fact, unlawful. Although the court has already concluded as a matter of law that Kleiner's statement did not violate the Right-to-Know law or the First Amendment, at a more fundamental

level Ortolano's argument misunderstands the nature of immunity doctrines. The very existence of municipal immunity assumes that municipal employees may be immunized from liability for at least some unlawful actions. If chapter 507-B only immunized lawful acts, it "would serve no purpose." Farrelly, 168 N.H. at 445. That is so because, if an employee acts lawfully, "he would not be liable at all and there would be no need for immunity." Id. The court therefore rejects Ortolano's argument that Kleiner is not entitled to immunity because her conduct was unlawful.

For these reasons, there is no genuine dispute of material fact that Kleiner is immune from Ortolano's defamation claim pursuant to RSA 507-B:4.

B.    Ortolano is a Limited-Purpose Public Figure and There is No Evidence of Actual Malice

Even if Kleiner was not immune as a matter of law, she would nevertheless be entitled to summary judgment because Ortolano was a limited-purpose public figure and there is no evidence Kleiner acted with actual malice.

The Constitution imposes a more stringent standard for public figures to succeed on a defamation claim than it does for private individuals. Pendleton v. City of Haverhill, 156 F.3d 57, 66 (1st Cir. 1998). This is so because "public figures have voluntarily exposed themselves to an increased risk of injury from defamatory falsehood" in exchange for "an influential role in ordering society," whereas private individuals have "relinquished no part of [their] interest in the protection of [their] own good name." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974) (quotation omitted). To succeed on a defamation claim, public figures must show that the defendant acted with "actual malice," while private individuals usually only need to

prove that the defendant acted negligently. Pendleton, 156 F.3d at 66. A defendant acts with "actual malice" when she makes a statement with "knowledge that it was false or with reckless disregard of whether it was false or not." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 12 (1st Cir. 2011) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280 (1964)).

There are two categories of public figures: "(1) persons who are public figures for all purposes; and (2) so-called limited-purpose public figures who are public figures for particular public controversies." Thomas v. Telegraph Publ'g Co., 155 N.H. 314, 340 (2007). A person falls into the first category when they achieve "general fame or notoriety in the community, and pervasive involvement in the affairs of society." Gertz, 418 U.S. at 352. Few persons achieve such heights. Id. (cautioning that courts should "not lightly assume that a citizen's participation in community and professional affairs render[s] him a public figure for all purposes"). A person is a limited-purpose public figure when they "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Id. at 345. When this occurs, courts deem the person a public figure only for the range of public controversies they have put themselves at the forefront of. See Lassonde v. Stanton, 157 N.H. 582, 590 (2008). Whether a person is a public figure or a private individual presents a question of law. Pendleton, 156 F.3d at 68.

The first step of the limited-purpose public figure analysis is to isolate the public controversy. Lassonde, 157 N.H. at 590. Not all matters of interest to the public are public controversies for purposes of this analysis. Id. Rather, for a public

controversy to exist, there "must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." Id. (quoting Waldbaum v. Fairchild Publ'ns, Inc., 627 F.2d 1287, 1296 (D.C. Cir. 1980)). In other words, "a public controversy is a dispute that . . . has received public attention because its ramifications will be felt by persons who are not direct participants." Id. at 591 (quoting Waldbaum, 627 F.2d at 1296).

Here, the relevant public controversy is Ortolano's self-proclaimed "public crusade" against the City to reform the Assessing Department. Doc. no. 1 ¶ 33. This dispute qualifies as a public controversy because Ortolano, by her own admission, sought to increase transparency within the department and improve its operation for the benefit of the public. Indeed, Ortolano's dispute led other members of the Nashua community to seek their own property value reassessments, and Ortolano assisted them as an act of "public service." Id. ¶ 98. Kleiner's statement to the Board in February of 2022 was within the context of this controversy because her statement concerned Ortolano's efforts to obtain information about the Assessing Department.

Ortolano thrust herself to the forefront of this public controversy. She has spoken at over 200 public meetings since 2018, often criticizing the Assessing Department and its operation. She has also posted her critiques on social media, and even started a website dedicated to publicizing problems she perceives with Nashua city government and the Assessing Department specifically. This has led to notable recognition for Ortolano, as demonstrated by, among other things, press

coverage of her disputes with the City and by members of the public seeking her out for assistance with their own property tax issues.

For these reasons, Ortolano is a limited-purpose public figure with respect to her "public crusade" against the Assessing Department. Therefore, to prevail on her defamation claim against Kleiner, she must show that Kleiner acted with actual malice. This she cannot do.

As noted above, to show actual malice, Ortolano must show that Kleiner made the challenged statement with "knowledge that it was false or with reckless disregard of whether it was false or not." Lluberes, 663 F.3d at 12 (quoting N.Y. Times, 376 U.S. at 280). To overcome summary judgment, "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of" her statement. Hi-Tech Pharms., Inc. v. Cohen, 277 F. Supp. 3d 236, 248 (D. Mass. 2016) (brackets omitted) (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). But Ortolano has not identified "obvious reasons" that should have caused Kleiner "to doubt the veracity of" Feoli's statement that he believed Ortolano was a City employee when he spoke with her. Nash v. Keene Publ'g Corp., 127 N.H. 214, 224 (1985) (quoting St. Amant, 390 U.S. at 732). At most, a jury could conclude that Kleiner could have done more to investigate the circumstances of Feoli's conversation with Ortolano before relaying Feoli's statement to the Board. But "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." Gertz, 418 U.S. at 332.

For these reasons, even if Kleiner was not immune from Ortolano's defamation claim, she would be entitled to judgment as a matter of law because

Ortolano is a limited-purpose public figure and she cannot show that Kleiner acted with actual malice.

## CONCLUSION

Kleiner's motion for summary judgment (doc. no. 86) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 10, 2025

cc:    Counsel of Record