UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Laurie Ortolano

    v.

City of Nashua et al.

Civil No. 22-cv-326-LM
Opinion No. 2025 DNH 036 P

**O R D E R**

Plaintiff Laurie Ortolano brings this suit against the City of Nashua ("Nashua" or "the City"), several Nashua officials and employees, and two private parties. The gist of Ortolano's complaint is that the defendants, individually or collectively, improperly deprived her of various rights in retaliation for her criticism of City acts and officials, including by causing her to be arrested for trespassing. One of the defendants is Michael Carignan, who at all relevant times was the Chief of Police of the Nashua Police Department ("Nashua PD"). Presently before the court is Chief Carignan's motion for summary judgment. Doc. no. 87. Ortolano objects. Doc. no. 104. For the following reasons, Chief Carignan's motion (doc. no. 87) is granted.

**STANDARD OF REVIEW**

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs. Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## BACKGROUND[1]

Ortolano has submitted several hundred written and verbal "Right-to-Know" requests with the City. See RSA ch. 91-A. She primarily seeks to obtain documents pertaining to the City's Assessing Department and its policies and processes for assessing property taxes. Ortolano has also filed multiple lawsuits against the City in New Hampshire state court alleging violations of the Right-to-Know law. See, e.g., Ortolano v. City of Nashua, 176 N.H. 175 (2023). In addition, Ortolano is a vocal public critic of the City and many of its departments, officials, and employees. She frequently expresses her criticism in public meetings, on social media, and on her blog.

Steven Bolton and Celia Leonard are the City's Corporation Counsel and Deputy Corporation Counsel, respectively. Attorneys Bolton and Leonard have assisted the City in responding to Ortolano's Right-to-Know requests, have represented the City in Ortolano's state court actions, and are among the City employees Ortolano has publicly criticized. They are also defendants in this action. This court recently denied their motion for summary judgment. See doc. no. 125.

On January 22, 2021, Ortolano went to Nashua City Hall to have property tax abatement applications date-stamped. When she saw that the office that normally handles date-stamps was closed, she went to the Legal Department. The Legal Department is not open to the public and has locked entry doors. Ortolano knocked on the entrance to the Legal Department, and a legal assistant named

---

[1] The following facts are not in genuine dispute except where otherwise indicated.

Mindy Lloyd answered. Although the parties dispute the precise details of what happened next, it is undisputed that Ortolano entered the Legal Department, that Attorney Leonard and another attorney told her she was trespassing and needed to leave, and that Ortolano did not leave. Lloyd called the police, and Officer Timothy Roach of the Nashua Police Department responded. When he arrived, Ortolano agreed to leave. Officer Roach did not arrest Ortolano for criminal trespass or any other offense, and she was allowed to leave City Hall. According to Officer Roach's call log, there were "[n]o offen[s]es alleged or apparent." Doc. no. 104-2 at 2. Chief Carignan was not present at City Hall for the trespass incident. He later indicated in his deposition that he understood the matter to be "cleared," meaning he was aware that Ortolano left the property when the police told her to and that she was not placed under arrest. Doc. no. 104-1 at 22.

    The next day, Ortolano posted her version of events on social media. In her post, she admitted that she entered the Legal Department and refused to leave when told to do so by Legal Department personnel. The post also expressed frustration with city officials because of the incident.

    About a week later, Attorney Bolton arranged for a meeting between the Legal Department and Chief Carignan. According to Chief Carignan, Attorney Bolton was dissatisfied that Ortolano was not arrested at the scene. Attorney Bolton expressed concern for his staff members that were present for the incident and demanded that Nashua PD arrest Ortolano. Chief Carignan stated he would not do so. In his deposition, Chief Carignan testified that Nashua PD ordinarily

3

does not arrest individuals for criminal trespass when they comply with an officer's request to leave the premises where they are trespassing. In explaining the reason for this practice, Chief Carignan said that it is usually difficult to secure the property owner's appearance at court for criminal trespass trials, which often makes it difficult or impossible for the prosecutor to sustain her burden of proof.

However, Ortolano has presented evidence that Attorney Bolton continued to communicate with a member of Nashua PD's legal department after his meeting with Chief Carignan and that he continued to advocate for Ortolano's arrest. In addition, Attorney Leonard spoke with other members of Nashua PD and expressed her desire to have Ortolano's conduct further investigated. On February 1, 2021, Nashua PD reopened its investigation.

Chief Carignan did not participate in the decision to reopen the investigation. According to Chief Carignan, deputy officers chose to reopen the investigation because they had learned of Ortolano's admission to trespass on social media.[2] He said at his deposition that, because Ortolano had essentially confessed to engaging in conduct satisfying the elements of criminal trespass, the state could sustain its burden of proof without having to rely on witness testimony.

After deputy officers reopened the investigation, they kept Chief Carignan apprised of its progress. Ultimately, the officers decided to seek a warrant for

---

[2] The record does not make clear who these officers were, and Ortolano has not sought to name them as defendants in this action.

4

Ortolano's arrest. Carignan could have directed the officers not to arrest Ortolano, but he did not do so.

A few weeks after reopening the investigation, Nashua PD arrested Ortolano for criminal trespass as a class A misdemeanor. She ultimately entered into a negotiated disposition with the State, pursuant to which the charge was reduced to a violation-level offense. See RSA 625:9, II(b) ("A violation does not constitute a crime . . . ."). Ortolano pled guilty to that offense in exchange for an agreed-upon sentence of a $500 fine, all but $100 of which was suspended for one year conditioned upon Ortolano's good behavior and not entering the Legal Department at City Hall without an appointment. Ortolano later had her conviction annulled.

Following her arrest, Ortolano continued to attend public meetings and offer vocal criticism of City officials at these meetings. She also continued to engage in expressive activities on social media and her blog.

## DISCUSSION

Following the court's order on Chief Carignan's Rule 12 motion, the only claim she brings against Chief Carignan is for retaliatory arrest. Ortolano claims that Chief Carignan caused her criminal trespass arrest in retaliation for exercising her rights to free speech and to petition the government. Chief Carignan argues he is entitled to summary judgment on Ortolano's retaliatory arrest claim because she cannot produce evidence from which a reasonable jury could find that he caused her arrest.

5

"[T]he doctrine of respondeat superior does not apply to claims under section 1983." Gaudreault v. Mun. of Salem, 923 F.2d 203, 209 (1st Cir. 1990) (italics omitted). To the contrary, defendants in § 1983 actions can be held liable only for constitutional violations caused by their own acts or omissions. Wadsworth v. Nguyen, --- F.4th ----, 2025 WL 547405, at *17 (1st Cir. 2025); accord, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Where, as here, a plaintiff brings a § 1983 claim against a supervisor but "the supervisor did not participate in the challenged conduct," she must satisfy the requirements for supervisory liability. Hayes v. Town of Dalton, No. 3:21-cv-30055-KAR, 2022 WL 17177729, at *8 (D. Mass. Nov. 23, 2022).

"The criteria for establishing supervisory liability are exceptionally stringent." Id. (quoting Fernandes v. Bouley, Civ. No. 20-11612-GAO, 2021 WL 4691602, at *7 (D. Mass. Aug. 2, 2021), R&R adopted sub nom. Fernandes v. Sena, 2021 WL 4452311 (D. Mass. Sept. 29, 2021)). Where a plaintiff seeks to hold a supervisor liable for the conduct of his subordinates, the plaintiff must show that: (1) a person over whom the supervisor had authority violated the plaintiff's constitutional rights; (2) the supervisor acted with deliberate indifference; and (3) the supervisor's acts or omissions had a causal relationship with the deprivation of the plaintiff's rights. Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514-15 (1st Cir. 2016).

To satisfy the deliberate indifference prong, the plaintiff must show that the supervisor's actions or omissions evince "reckless or callous indifference to the

constitutional rights of others." Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021) (quoting Guadalupe-Báez, 819 F.3d at 515). The plaintiff must show that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Gonzalez-Perez v. Davila, 680 F. Supp. 2d 347, 355 (D.P.R. 2009) (quoting Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989)).

To satisfy the causation prong, the plaintiff must produce "proof that the supervisor's conduct led inexorably to the constitutional violation." Justiniano, 986 F.3d at 20 (quoting Guadalupe-Báez, 819 F.3d at 515). "This is a difficult standard to meet." Id. at 20-21 (quotation omitted); see, e.g., Guadalupe-Báez, 819 F.3d at 515 (supervisor may be found to have caused constitutional violation where plaintiff shows "inaction in the face of a 'known history of widespread abuse sufficient to alert a supervisor to ongoing violations'" (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1st Cir. 1994))). "Isolated instances of unconstitutional activity will not suffice." Guadalupe-Báez, 819 F.3d at 515 (quotation omitted).

Ortolano has not adduced evidence from which a reasonable jury could find that she made any of these necessary showings. First, she has not marshalled evidence that a person over whom Chief Carignan had authority violated her constitutional rights. While this court has denied Attorneys Bolton and Leonard's motion for summary judgment on the ground that a reasonable jury could hold them liable for retaliatory arrest, there is no evidence that Chief Carignan exercises supervisory authority over Attorney Bolton or Attorney Leonard. Nor has Ortolano

identified the Nashua officers that made the decision to reopen the trespass investigation.

With respect to the deliberate indifference prong, Ortolano has not produced evidence from which a reasonable jury could conclude that it should have been "manifest" to Chief Carignan that his failure to prevent Ortolano's arrest "was very likely to violate" her constitutional rights. Gonzalez-Perez, 680 F. Supp. 2d at 355 (quoting Germany, 868 F.2d at 18). Nor has she presented evidence that Chief Carignan "had knowledge of facts" from which he should have found it obvious "that a substantial risk of serious harm" would flow from his failure to prevent the trespass investigation and arrest. Guadalupe-Báez, 819 F.3d at 515 (quoting Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 20 (1st Cir. 2014)). While arrests motivated by a desire to retaliate against an individual for the exercise of constitutional rights are no doubt serious, Ortolano has not presented evidence from which a reasonable trier of fact could conclude that Chief Carignan knew or should have known that his subordinates' decision to arrest Ortolano would constitute unlawful retaliation. To the contrary, Ortolano highlights that Chief Carignan refused to arrest Ortolano in the face of Attorney Bolton's demand to do so, as well as the Chief's testimony that his subordinates told him they decided to reopen the investigation because Ortolano publicly confessed to the crime, which meant that a conviction after trial was a foregone conclusion. In short, there is no evidence to suggest that Chief Carignan should have found it obvious that his subordinates would subject Ortolano to an unconstitutional arrest unless he stepped in.

8

As for causation, Ortolano does not suggest that Chief Carignan failed to act "in the face of a known history of widespread abuse" by his deputies. Guadalupe-Báez, 819 F.3d at 515 (quotation omitted). There is no evidence that any officer within Nashua PD has a history of engaging in retaliatory arrests, much less that the Chief was aware of such an officer's repeated misconduct. Even if Chief Carignan should have known that arresting Ortolano would violate her First Amendment rights, no reasonable jury would find her arrest to be more than an "[i]solated instance[ ] of unconstitutional activity." Id. (quotation omitted).

For these reasons, no reasonable jury would conclude that Chief Carignan's conduct gives rise to liability under 42 U.S.C. § 1983.

## CONCLUSION

Chief Carignan's motion for summary judgment (doc. no. 87) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 13, 2025

cc:   Counsel of Record