*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JANUARY 14, 2026

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * * *
                                   *
LAURIE ORTOLANO,                   *
                                   *
            Plaintiff,             *
                                   *   1:22-cv-326-LM
         v.                        *   June 17, 2025
                                   *   11:57 a.m.
STEVEN BOLTON and CELIA LEONARD,   *
                                   *
            Defendants.            *
                                   *
                                   *
* * * * * * * * * * * * * * * * * *


               TRANSCRIPT OF STATUS CONFERENCE
          BEFORE THE HONORABLE LANDYA B. MCCAFFERTY
```

Appearances:


For the Plaintiff:         William E. Aivalikles, Esq.
                           Aivalikles Law Office


For the Defendant,         Russell F. Hilliard, Esq.
Steven Bolton:             Madeline Kate Martialis, Esq.
                           Upton & Hatfield LLP


For the Defendant,         Brian J.S. Cullen, Esq.
Celia Leonard:             Cullen Collimore Shirley PLLC


Court Reporter:            Liza W. Dubois, RMR, CRR
                           Official Court Reporter
                           U.S. District Court
                           55 Pleasant Street
                           Concord, New Hampshire 03301
                           (603) 225-1442

```
 1                     P R O C E E D I N G S
 2              THE CLERK:  The Court has before it for
 3   consideration a status hearing in Ortolano v. Bolton and
 4   Leonard.  It is 22-cv-326-LM.
 5              THE COURT:  All right.  I will have a draft copy of
 6   the jury instructions ready for you, I believe, Monday, the
 7   first morning of the jury trial.  I won't have them ready for
 8   you today.  I don't have them ready today.
 9              All right.  I think the first order of business is
10   the July 22 --
11              MR. AIVALIKLES:  Yes.
12              THE COURT:  Go ahead.
13              MR. AIVALIKLES:  Your Honor, I'm not trying to beat
14   a dead horse on this because the Court has ruled.  But as a
15   matter of explanation and not an excuse, when the order came
16   out, I'm not even sure I was involved in the case.  It was
17   handled by two other attorneys.  And while I was preparing in
18   depth for the trial, I realized that the Court did not grant
19   the motion for summary judgment as it related to the July 22
20   incident.
21              There were two issues raised in the summary judgment
22   as it pertained to Counts One and Two.  The first one was a
23   January -- the January 21st -- January 22nd, 2021, incident and
24   the second was the February 16th, 2022, incident.  And the
25   Court denied the motion for summary judgment that Attorney
```

1  Bolton and Attorney Leonard had filed with the Court and then
2  Attorney Bolton filed a motion for reconsideration, informing
3  the Court that the Court didn't address the July '22 incident.
4  And the Court denied that.
5              So my reading of the case is that that July 2022
6  incident is still in the case and it was alleged in paragraph
7  130 and at paragraph 145, the details.
8              And just so the Court understands the context,
9  Mrs. Ortolano went up to the third floor because she had a -- a
10 Citrix that -- for a right-to-know that had been produced by
11 the city and she couldn't access it for some reason.  So on the
12 third floor, you have the legal office and then you have the IT
13 office in the same -- same corridor.  So she went to the IT
14 office first to find out if something could be done about
15 accessing it.  They weren't there.  She called on the phone to
16 the legal office and while she was on the phone, Attorney
17 Bolton came out and told her, you have to leave, you're
18 trespassing, I can have you arrested.  The police were called
19 and my client -- because she was so afraid that she was going
20 to be arrested again -- that the police interviewed Mr. Bolton
21 and he demanded their -- her arrest again, your Honor.  And
22 this was in a public hallway.  And the -- the policemen said to
23 Attorney Bolton, you have a button here, why is this a private
24 hallway; he said for everyone but her.
25             So -- so that's the event, your Honor, that is still

1  part of this case as I read the -- the Court's summary judgment
2  order, and I think we should be allowed to explore that.
3         The threat of arrest is an adverse event, your
4  Honor, that certainly would trigger a constitutional rights
5  civil suit under the -- under Counts One and Two, your Honor.
6  So it's our position that we should be allowed to go into that,
7  your Honor --
8         THE COURT:  Okay.
9         MR. AIVALIKLES:  -- in addition to the other issues
10 we had raised previously about the -- the various modes of
11 evidence that would be applicable.
12        THE COURT:  Okay.  I am just puzzled that this
13 hasn't come up until now, on the eve of trial.  We've had jury
14 instructions, we've had pretrial statements, exhibits.  I asked
15 you probably ten times, tell me why this July 2022 evidence
16 comes in.  I made pretty clear it's not relevant.  And if at
17 any point you thought there was still a claim related to that,
18 I just -- I can't imagine that you would not have told me that.
19 So, ultimately, it took the lawyer in this case up until now to
20 essentially see something that you think is missing by way of a
21 ruling and it gives a sense of the labyrinth of claims.
22        And so, ultimately, I'm really concerned just about
23 the delay in terms of bringing this to my attention.  And
24 ultimately I ruled, and I'll just read from that order:  In
25 light of the indisputably contentious relationship between

1   Ortolano and the city's legal department, the Court finds that
2   Ms. Ortolano's claim that her arrest resulted from Bolton and
3   Leonard's retaliation for her protected activity survives
4   defendants' motion.
5            That's document 60 at 15.
6            So ultimately I found that the arrest survived but,
7   ultimately, that is -- that was the motion for judgment on the
8   pleadings and you're talking now about the summary judgment
9   order.
10           MR. AIVALIKLES:  Yes.
11           THE COURT:  All right.  Attorney Hilliard.
12           MR. AIVALIKLES:  And, again, your Honor, I apologize
13  for not realizing that sooner, your Honor, but we haven't
14  started the trial.  We've just selected the jury.  So I -- I
15  don't see any prejudice to the other side with regard to that
16  particular claim.  I mean, we have time to prepare.  I've
17  subpoenaed the police officer that's involved in the case.
18  And, again, I apologize to the Court.
19           THE COURT:  Oh, I understand, and I appreciate the
20  apology.  I just -- at this late date, I am not inclined to
21  reopen the case based on something that happened in July 2022
22  that ultimately has not been argued at the multiple hearings
23  we've had on the evidentiary issues in the case.  So there have
24  been so many opportunities to bring this issue to my attention.
25           Attorney Hilliard.

1           MR. HILLIARD:  Nothing really to add, your Honor,
2  other than this was flagged in your order on summary judgment
3  in which you said:  Following the Court's order on the motion
4  for judgment on the pleadings, the only claim remaining is the
5  arrest claim.
6           That's been clearly the state of the case --
7           THE COURT:  Right.
8           MR. HILLIARD:  -- for some time.
9           THE COURT:  And if the claim regarding the July 2022
10 incident is not addressed in my summary judgment order, it's
11 because it was -- it didn't survive the motion for judgment on
12 the pleadings.
13          MR. AIVALIKLES:  But counsel raised that in their
14 summary judgment, your Honor.  So I'm not sure that -- that
15 that was clear, your Honor, because they raised it specifically
16 in their summary judgment.  They isolated the July '22 arrest.
17 So they thought it was it was still in the case, your Honor,
18 and they filed a motion for reconsideration claiming that the
19 Court didn't address that issue.  So I think they have the same
20 belief that I had that it wasn't addressed, your Honor.
21          THE COURT:  Okay.  Well, go ahead.
22          MR. HILLIARD:  I'm sorry.
23          THE COURT:  Go ahead.
24          MR. HILLIARD:  That's not correct.  We didn't share
25 that belief out an abundance of caution because the motion for

1  summary judgment -- excuse me, the order on the motion for
2  judgment on the pleadings didn't specifically talk about it.
3  We flagged it, but we -- we weren't agreeing it was still in
4  the case.  That's why we footnoted it as we did.
5            THE COURT:  Okay.  All right.  Well, I'm going to
6  take it under advisement and think about it, but, ultimately, I
7  think it has been out of the case for a lengthy enough period
8  of time and if it were somehow still alive in the case, it
9  seems to me you would have brought that to my attention at the
10 prior hearings that we've had on the case.
11           I understand you went and reviewed all the documents
12 and it obviously came to your attention recently, but the only
13 thing I've ever understood about the 2022 incident since we've
14 begun preparing for trial with hearings, motions in limine, is
15 that it was something that you thought was relevant to prove
16 motive and retaliation for an earlier -- the earlier episode.
17           So I'll take it under advisement and consider it,
18 but I just want to let you know I'm -- I'm leaning against
19 breathing life into that long-forgotten claim.
20           MR. AIVALIKLES:  Well, one other issue.  I believe
21 it was the defendants that filed a motion in limine to preclude
22 the February '22 incident.  So --
23           THE COURT:  Right.  And your --
24           MR. AIVALIKLES:  Right.
25           THE COURT:  Your response as to how it is -- how

1   it's relevant before I'm going to exclude it, I obviously want
2   to know what you -- why you might introduce it, but at no point
3   did you say, Judge, there's a claim in the case.  That would
4   have been an obvious response to that motion.
5           MR. AIVALIKLES:  Right.
6           THE COURT:  So, in any event, thank you for bringing
7   it to my attention and I will take that under advisement.
8           Okay.  Anything else we need to do before --
9           MR. HILLIARD:  I had -- I had one thing, your Honor.
10          In default of anyone else to receive it, I received
11  a telephone call yesterday from John Duhamel, who was the -- my
12  colleagues can correct me -- an assessor in Nashua back in the
13  maybe '17 or '18 time frame.  You may recall he was originally
14  a party to the case and his motion for judgment on the
15  pleadings was granted.  He was long gone before the incident in
16  question in January of '21.
17          There were some exhibits that were discussed at one
18  of our conferences, your Honor, as you may recall, about the
19  Donchess timeline and issues about the mayor's assessment and
20  property card, but I truly don't think any of that is before
21  the jury anymore.  And I'm only speaking on his behalf.  He
22  will be here on the 24th if he's not otherwise excused, but he
23  called because he received a subpoena.
24          THE COURT:  Okay.  And just because he's out as a
25  party doesn't mean he's not still potentially a witness.  And I

```
 1   know that's not what you're arguing.
 2              MR. HILLIARD:  Right.  Exactly.
 3              THE COURT:  But I think, as I recall -- and, again,
 4   there have been many orders in this case and there are many
 5   names, and I'm certain I -- you will need to remind me
 6   throughout the trial who everybody is, but I recall that --
 7   that there's a claim at least that Mr. Duhamel and maybe
 8   Mr. Bolton, maybe Ms. Leonard, had communications about
 9   Ms. Ortolano via email or -- again, I could be misremembering
10   this, but that I thought there were at least conversations
11   alleged between Duhamel and perhaps one of the defendants prior
12   to her arrest in --
13              MR. HILLIARD:  There may have been -- excuse me,
14   your Honor.  There may have been in connection with the mayor's
15   property assessment, but I -- I don't think, based on the
16   colloquy we had, that -- and we just have to wait maybe, your
17   Honor, but --
18              THE COURT:  That would be advisable.
19              MR. HILLIARD:  It's just hard to know what, given
20   the issues before the jury now, this gentleman could -- could
21   speak to.
22              THE COURT:  All right.  You know the case better
23   than I do and throughout the trial I'm hoping that you will not
24   presume that I have that level of knowledge.  So I'm hoping you
25   will update me as we go in terms of details.  But -- and I'm
```

1  sure I will get things wrong in terms of my memory.
2           But I think what we'll do on the witnesses and
3  exhibits at this point is wait until trial when I can properly
4  assess the issues. I know that you had a lengthy objection to
5  preserve objections to exhibits and I just want to make clear
6  that the exhibits to which there are objections, I just want to
7  make clear that you've marked those for ID, Attorney
8  Aivalikles, same for you, Attorney Hilliard and Attorney
9  Cullen. As long as they're marked for ID and that's clear to
10 Donna, I think that actually is better than looking for
11 exhibits as the trial goes on and having to put them into the
12 record because suddenly I'm finding that something is
13 admissible when I told you I didn't think -- thought it was
14 unlikely.
15          So I think the fact that there are an overinclusive
16 number of exhibits, as long as they're marked for ID, I think
17 that actually works better for Donna in the event I decide that
18 one of these exhibits might be relevant and admissible.
19          MR. HILLIARD: Thank you, your Honor.
20          MR. AIVALIKLES: Thank you.
21          THE COURT: And just be clear with Donna at the
22 end -- really at the end of even lunch and at the end of the
23 day --
24          THE CLERK: (Nods head.)
25          THE COURT: -- checking in about exhibits and what's

1   been admitted as a full exhibit, what's still marked for ID.
2   As long as that's clear as we go through the trial, then I'll
3   be able to make a judgment call based on what it is the --
4   what's in the exhibit, who's testifying, and what your
5   objection is.  Does that make sense?
6              MR. HILLIARD:  Yes, your Honor.
7              MR. AIVALIKLES:  Yes.
8              THE COURT:  Okay.  We will meet at 8:00 a.m. and --
9   on Monday and I'll hopefully have a draft copy, not that you
10  would be able to read them before trial starts, but you will
11  have a copy.  It will have draft on it.  And we can go through
12  that, make edits, listen to your objections, until I finally
13  give the instructions to the jury, we have, obviously, our last
14  conference about them.  But my hope is that we can -- you can
15  use those as a roadmap as you are putting on your evidence and
16  then bring to my attention objections that you have, I can -- I
17  can consider them in a timely and detailed way and then respond
18  to you the next morning at 8:00 a.m. and we'll go through
19  objections that you have.  We're going to try to put numbered
20  lines so that you can actually tell me the line that you have
21  an issue with.  Sometimes you might -- it might be a stylistic
22  edit you want to make, but to the extent it's substantive, I'll
23  hear those objections as we go through the trial.
24             So anything else?
25             MR. AIVALIKLES:  Yes, your Honor.  We had filed a

1  stipulation with the Court concerning the keeper of the
2  records.  I don't know if the Court's granted that.
3              THE COURT:  Yes, I saw that.
4              MR. AIVALIKLES:  Okay.
5              THE COURT:  All right.  So there won't be any issue
6  with regard to the custodial -- custodians.
7              MR. CULLEN:  No, your Honor.  I did have a couple of
8  minor things, your Honor, I wanted to check in on with you, if
9  that's okay.
10             Speaking of exhibits, I know we just filed yesterday
11 a fairly substantive objection.  I wanted to perhaps draw your
12 attention just to three in particular.  Exhibits 2, 3, and 4
13 are exhibits concerning a First Amendment Nackey Loeb award
14 that the plaintiff received long after this case had begun.
15             And I raise it now only because I -- you know, we've
16 raised an objection to those, but I could foresee them being
17 mentioned even in an opening, you know, describing the
18 plaintiff as, you know, this First Amendment, you know, warrior
19 who's received awards and the like.  And I feel like we should
20 not be -- we should at least have an opportunity to be heard as
21 to why we think that would be excluded and those exhibits would
22 be excluded before it comes up in the opening and it's water
23 under the dam.
24             So I don't mind if we do that now or we do it on
25 Monday morning, but I wanted to call it to your attention that

1  I think this needs to be something addressed prior to openings.
2          THE COURT:  Okay.  I appreciate that.  I think you
3  agree by way of courtesy not to mention certain things that
4  Attorney Aivalikles was concerned about as well.
5          Is that something you can agree to with respect to
6  just your own opening argument?
7          MR. AIVALIKLES:  I mean, I don't think it's going to
8  matter how it comes in, your Honor.  It's just background
9  information about Mrs. Ortolano, right, and I think the jury
10 should know that.  And I'd like to tell the jury her background
11 which includes, you know, awards for the right-to-know or the
12 First Amendment as well as her educational background, as well
13 as her employment history and things of that nature, your
14 Honor.
15         THE COURT:  Okay.  And that's fair, but with respect
16 to this award, can you hold off in your opening statement?
17         MR. AIVALIKLES:  Oh, sure.
18         THE COURT:  And then ultimately I can make a ruling
19 with respect to its relevance --
20         MR. AIVALIKLES:  Sure.
21         THE COURT:  -- at the time you're trying to elicit
22 it from Ms. Ortolano.
23         MR. AIVALIKLES:  Sure.  Absolutely, your Honor.
24         THE COURT:  Okay.  Thank you, sir.  All right.
25         Does that address that concern?

```
 1                  MR. CULLEN:  It does, yes.
 2                  THE COURT:  Go ahead.
 3                  MR. CULLEN:  Thank you, your Honor.  Just two other
 4      minor things, I believe.
 5                  I think you usually do this anyway, but just -- we
 6      want to be aware of the dangers of narrative testimony.  It
 7      doesn't give us an opportunity to raise objections if the -- if
 8      any witness enters into a sort of a narrative -- long narrative
 9      as opposed to a question-and-answer.  So I just wanted to raise
10      that again in advance as we prepare over the next five days.
11      We would be objecting to narrative testimony for that reason.
12      It would deprive of us a chance to object until it's too late.
13                  With respect to -- I wanted to raise one issue on
14      social media prior -- there was a prior 91(a) trial.  I wasn't
15      involved in it.  But in the week or so prior to the trial, the
16      plaintiff was on some public access TV shows and things talking
17      about the upcoming case.  I'd ask the Court to consider telling
18      all parties not to discuss this trial on social media in the
19      next -- you know, until the trial's complete, rather than take
20      the chance that we're going to have a juror come in on Monday
21      and say, oh, I just saw the plaintiff on this or I just saw,
22      you know, one of the other parties.  So that would be my
23      request.
24                  THE COURT:  Okay.  I don't think -- you're not
25      going -- you don't have any problem with not speaking publicly,
```

```
 1   or your client, during the trial?
 2              MR. AIVALIKLES:  No.
 3              THE COURT:  You obviously heard me instruct the
 4   jurors on --
 5              MR. AIVALIKLES:  Right.
 6              THE COURT:  -- the importance of that, and the risk
 7   that he raises, I think, is a real one.  My hope is that the
 8   jurors are not scouring social media, but, ultimately, I think
 9   I'm risk-averse where that's concerned in terms of potentially
10   infecting the proceedings.
11              So do you have any problem with agreeing on behalf
12   of your client not to have any social media posts or public
13   statements about the case --
14              MR. AIVALIKLES:  Yes, your Honor.
15              THE COURT:  -- while it's ongoing?
16              MR. AIVALIKLES:  Yes, your Honor.  Absolutely.
17              THE COURT:  Okay.  All right.  If everybody's in
18   agreement, I think that makes sense.
19              Anything else?
20              MR. CULLEN:  How long are you permitting the parties
21   for openings, your Honor, the usual seven and a half minutes?
22              THE COURT:  I usually -- and I think local rules
23   says 30 minutes for openings.
24              MR. CULLEN:  Thank you, your Honor.
25              THE COURT:  Will both of you -- Attorney Hilliard,
```

```
 1   you'll do an opening and, Attorney Cullen, you'll do an opening
 2   as well?
 3                MR. CULLEN:  Yes, your Honor.
 4                THE COURT:  Okay.  And you won't be reserving that?
 5                MR. CULLEN:  I don't expect to, no.
 6                THE COURT:  Okay.  All right.  So 30-minute limit
 7   and -- one moment.
 8                During your opening, are you going to be using
 9   those?
10                MR. HILLIARD:  Yes.
11                THE COURT:  Okay.
12                MR. HILLIARD:  They're agreed-upon exhibits.
13                THE CLERK:  Oh, okay.
14                THE COURT:  Okay.  Good.  All right.  All right.
15                THE CLERK:  Sorry.
16                THE COURT:  We had an issue in a trial recently
17   where demonstratives were used in an opening and no one had
18   ever seen them before.  So that's good these will be full
19   exhibits.  Okay.
20                MR. HILLIARD:  I'm just reminded, your Honor,
21   that -- Attorney Cullen was speaking about social media.
22   The -- the things that I've seen that are of concern are
23   television, talk television programs.
24                THE COURT:  Okay.  Well, I -- I cannot list
25   everything that --
```

```
 1                  MR. HILLIARD:  Yeah.
 2                  THE COURT:  -- could possibly be a way of
 3     communicating, but I think, Attorney Aivalikles, you understand
 4     the import of this and you've agreed on behalf of your client.
 5                  MR. AIVALIKLES:  Absolutely, your Honor.
 6                  THE COURT:  Yeah.  Okay.  I think everybody's
 7     understanding, it's a pretty broad swath of media.
 8                  So thank you all very much.  And we will -- I'll
 9     give preliminary instructions to the jury and then I will
10     invite you up for opening statements.  Okay?  All right.  Good.
11                  MR. HILLIARD:  Thank you, your Honor.
12                  THE COURT:  We'll see you then.
13                  MR. CULLEN:  Thank you, your Honor.
14                  THE COURT:  Court's adjourned.
15                  THE CLERK:  All rise.
16                  (Proceedings concluded at 12:21 p.m.)
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

    I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 10/16/25     /s/  Liza W. Dubois
                               LIZA W. DUBOIS, RMR, CRR