good-gov.org  HOME   POSTS   UPCOMING EVENTS   CALL TO ACTION   ASSESSING   ABOUT   CONTACT

# Viewpoint Discrimination in Plain Sight: Nashua's Weaponized Decorum

In Nashua, the definition of "civility" is not a fixed principle; it is a sliding scale that depends entirely on who holds the microphone.

On August 26, 2021, I used a single vulgar word during a public meeting to describe a City Attorney's conduct. My frustration was the culmination of a seven-month ordeal that began in January 2021, when I was trespassed from City Hall, and arrested three weeks later, for simply attempting to have two abatement applications date-stamped on behalf of senior citizens.

Nearly a year later, Mayor Jim Donchess resurrected that moment to publicly shame me. He "circled the wagons," using my vulgarity to deflect from my comments regarding the City's lack of transparency for the Nashua Performing Arts Center project. The Mayor even had the City's YouTube video edited to include a parental warning. Alderman Melbourne Moran was among the most vocal critics, with other Aldermen echoing his statements, claiming his children were watching and demanding I offer a public apology to the children of Nashua and to the City Attorney.

**The Policy of Selective Enforcement**

What the Mayor framed as a "civility" issue, the Federal Court has recently reframed as a potential First Amendment violation. In February 2025, a Federal Judge ruled that my claim of retaliatory arrest against Attorneys Steven Bolton and Celia Leonard must go before a jury. The evidence supporting this "inevitability" is found in the sworn testimony of former Police Chief Michael Carignan:

> Departure from Policy: Chief Carignan testified that as a "general rule," when a person cooperates and leaves a building upon police request, that person "**will not be arrested**". He confirmed this standard was bypassed specifically for me.
>
> Selective Enforcement: Public records proved I was the **only individual** based on police records arrested after complying with a police request to leave.
>
> ·   The Retaliatory "But-For" Cause: The court found a jury could conclude that without the Attorney Defendants' "retaliatory animus," I would never have been charged. Carignan confirmed this advocacy under oath, stating: "I know for a fact [Attorney Bolton] was advocating for [the arrest] when we had our meeting"
>
> Social Media Pretext: Carignan admitted the arrest was triggered by my social media posts, which he characterized as "bragging". This confirms that my protected speech, not my conduct, was the true catalyst for the handcuffs.

**A Different Standard for the Dais**

Four years later, on December 16, 2025, a starkly different standard of "civility" was on display.

During a public committee meeting, Chairman Alderman Moran, the same official who once demanded an apology for "the children", unleashed a personal, profanity-laced tirade against a colleague. From his seat on the dais, he shouted, "That was a really shitty thing to do… you're a piece of shit!"  followed by an off-camera, "F-bomb" diatribe within the chamber.

**EXHIBIT C**

Moran's outburst was not a reaction to a loss of rights or a retaliatory arrest; it was a response to a perceived "eye-roll" regarding his father, who had passed away four years prior.

The Board's reaction was silence. There was no demand for an apology, no public censure, no change to the Board Code of Conduct, and no retaliation. Alderman Thibeault admitted, via email, that the behavior deserved censure but argued that because Moran's term was ending, the Board should simply "let him go."

In Nashua, the "Statute of Limitations" on vulgarity is years-long for a dissenting citizen, but expires in days for a powerful insider.

**This Is the System, Not the Exception**

In the *Scaer* ruling, Judge Sandra Lynch warned that Nashua's requirement that speech be "in harmony" with City messaging grants officials "**unbridled discretion to censor speech they dislike.**"

That discretion isn't theoretical. It's operational.

> *When officials swear*, it's "heated business."
>
> When citizens persist, it's a "problem to be managed."
>
> *When insiders lose their temper*, it's silence.
>
> *When outsiders speak up,* it's surveillance, shaming, and handcuffs.

This isn't about decorum. It's about who belongs. In Nashua, civility is enforced downward, immunity flows upward, and "harmony" is just the word they use when they want dissent gone.

My case is now headed to a jury, not because the system failed, but because it worked *exactly* as designed. The only real question left is whether the law will continue to tolerate a city where power decides whose speech is "acceptable" and whose speech is a crime.