** NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO APRIL 23, 2026

UNITED STATES DISTRICT COURT
CONCORD, NEW HAMPSHIRE
CASE NO. **22-CV-00326-LM**

---

**LAURIE ORTOLANO**,
                    Plaintiff
              vs.                                    **January 20, 2026**

**STEVEN BOLTON AND CELIA LEONARD**
                    Defendants.

---

**FINAL PRETRIAL CONFERENCE**

BEFORE THE HONORABLE **LANDYA B. McCAFFERTY**,

UNITED STATES DISTRICT COURT JUDGE

---

**A P P E A R A N C E S**

FOR THE PLAINTIFF:        **WILLIAM E. AIVALIKLES**, ESQ
LAURIE ORTOLANO          Aivalikles Law Office

FOR THE DEFENDANT:        **RUSSELL F. HILLIARD**, ESQ
STEVEN BOLTON            **MADELINE K. MATULIS**, **ESQ**
                         Upton & Hatfield LLP

FOR THE DEFENDANT:        **BRIAN J.S. CULLEN**, ESQ
CELIA LEONARD            Cullen Collimore Shirley PLLC


REPORTED BY:              **GIZELLA BAAN-PROULX**, FCRR
                         Official Court Reporter
                         United States District Court
                         55 Pleasant Street
                         Concord, NH 03301
                         (603) 225-1454
                         Trialreporters@hush.com

Also present:
        SAMSON RACIOPPI, Paralegal

*P R O C E E D I N G S*

*(The following proceedings were held in open court.)*

**THE COURT:**  Good afternoon.  I'm sorry I'm late.  I was in a meeting that I could not get out of.  Please be seated.

**THE CLERK:**  Court is in session and has for consideration a final pretrial conference in Laurie Ortolano versus Steven Bolton, et al., civil case number 22-CV-326-LM.

If I can ask counsel to identify themselves for the record, beginning with counsel for the plaintiff.

**MR. AIVALIKLES:**  Good afternoon again, Your Honor.  William Aivalikles.  I represent Laurie Ortolano.

**THE COURT:**  Good afternoon.  Good afternoon, Ms. Ortolano.

**MR. RACIOPPI:**  Good afternoon, Your Honor.  My name is Samson Racioppi.  I'm a paralegal for Attorney Aivalikles.

**MR. AIVALIKLES:**  Yeah.  He will be handling the electronics because Elena is having a baby.

**THE COURT:**  All right.

**MR. HILLIARD:**  Good afternoon, Your Honor.  Russ Hilliard for Defendant Bolton.

**THE COURT:**  Good afternoon.

**MS. MATULIS:**  Good afternoon, Your Honor.  Maddy Matulis for Defendant Bolton.

**THE COURT:**  Good afternoon, Counsel.

**MR. CULLEN:** Good afternoon, Your Honor. Brian Cullen here for Celia Leonard.

**THE COURT:** Good afternoon, counsel. Good afternoon to you as well. All right.

Let's see. We are going to pick our jury on the 3rd of February, and we are going to start the trial on the 3rd. So we'll pick the jury, take a breather, break. We picked the jury fairly swiftly, is my recollection last time, and hopefully it will go as smoothly.

So we'll pick the jury on the 3rd. We'll start on the 3rd with opening statements and then witnesses, to the extent we can fit them in. We will.

And then my understanding is this is a four-day trial, so perhaps we will be closing out on everything as we approach the weekend, and maybe need to carry on on Monday the 9th for a bit, but I'm going to tell the jury that -- I'd like to tell them ahead of time sort of a worst-case scenario. So I think what I'll tell them is through the 10th. Does that sound fair?

**MR. AIVALIKLES:** Yeah. I think that's fair, Your Honor.

**THE COURT:** Just to be safe. And then that way they can let us know around the edges of essentially a week. Okay. And then they will be pleasantly surprised if it ends sooner. All right.

I would like to -- and I do this in all my cases. I'm

sure I've done it at the other final pretrials.  I like to have a status conference as close to jury selection as we can.  So I'd like to talk to you about that.

And how does Monday, the day before jury selection, how does that work for folks for just a status conference?

**MR. AIVALIKLES:**  I'll make it work, Your Honor.

**THE COURT:**  And Attorney Hilliard?  Attorney Cullen?

**MR. CULLEN:**  It's fine with me, Your Honor.

**MR. HILLIARD:**  I think it's fine with me, Your Honor, yes.

**THE COURT:**  All right.

**MR. CULLEN:**  I suspect we all knew what was scheduled that day.

**THE COURT:**  Yes.  All right.  So you're prepping in any event, and then that way you're here for a status conference.

If it turns out that there are no additional disputes, nothing else needs clarity, then, you know, we can cancel that hearing, but I do like having a placeholder before the trail to resolve any last-minute outstanding issues.

And my reasoning there is consistent with what I've been saying to you:  A little bit of a broken record in that I will keep the trial running as much and as smoothly as I can, with as few breaks as I can in terms of having the jury twiddling their thumbs while we're trying to solve some sort of

evidentiary issue:  I want to minimize that.  And generally this hearing that occurs before jury selection helps with that.

And then I'll check in with you throughout the trial about issues that we might be able resolve, let the jury go home, and we can resolve them after 4:00 p.m. so that we're not having the jury linger during the trial the next day.

Sometimes it's the morning.  I'll have you come in early in the morning, and we can work through something that will end up saving the jury time.

So that's really my motivation in terms of meeting with you in advance and then meeting with you in the mornings and then right after we send the jury home.

I will issue a new jury selection jury order.  It would be basically the same one that I issued before.  I noticed a piece of it that I have removed that I don't think will make any substantive matter to you, but it was a sentence describing how we handle jury selection that lingered from Covid, and we do not move jurors that have qualified to be on the jury out of the courtroom, as you saw during the last jury selection.  We put them into the jury box, so I just rewrote that.  So we will reissue that jury selection order for you.

And I will do a very brief final pretrial order that will lay out our status conference.

And I know there's still some evidentiary exhibit issues, and I may come back to those in a moment.  I do like to

have a sense of my jury instructions before a trial, at least a general sense of what I'm going to instruct the jury on.

And I know that plaintiff has objected to one proposed jury instruction, and I want to make sure I understand that and hear you on that.

Can you lay out for me -- is it document -- my document number is not -- I don't have the number of this document.  It's plaintiff's objection to defendant's proposed jury instruction number 4.

**MR. CULLEN:**  Document 210, Your Honor.

**THE COURT:**  Which one is that?

**MR. CULLEN:**  210.

**THE COURT:**  Well, that's a lot of documents in this docket.

210.  Okay.  Thank you.

You want to look at that first, seeing as it's --

**MR. AIVALIKLES:**  Yes, Your Honor.  I think that the way the instruction reads, it's asking the jury to determine that the arrest -- not the arrest -- but the charges that the City had processed for criminal trespass had to be the same as the plaintiff's in this case; it had to be comparable.  So that's one of the objections.

And the other objection we had is the statement that the defendants had to know of the City's policy concerning not prosecuting criminal trespass cases when the plaintiff is asked

to leave by the police.

THE COURT:  Give me a second.  Let me --

MR. AIVALIKLES:  And we're relying on Gonzalez and Nieves for support of opposition on the comparative charges, Your Honor.

THE COURT:  You want to be heard on that, Attorney Hilliard?

MR. HILLIARD:  Well, I just -- I guess so, Your Honor. We had opposed instructions before we put in back in March, and I have this objection from yesterday afternoon.

I'm trying to read those cases again closely, but I think what they're saying is that those cases aren't -- tell you not to look at the subjective nature of the alleged comparators, not --

THE COURT:  Can you speak up just a little bit?

MR. HILLIARD:  Oh, I'm sorry.  I said I think those cases and what the plaintiff is suggesting is that we're not supposed to look at the subjective factors of the alleged comparators.

And we're not suggesting that.  We're just saying that these comparators are number one objectively so different as not to be comparators.

But number two, if the premise of using these other incidents is that it's evidence of retaliatory intent on the part of Steve Bolton and Celia Leonard, then there has to be

some information that they were aware of them, because otherwise, there's no rationality to using them as a premise for finding a retaliatory intent in circumstances where there was admittedly probable cause.  And that's what we're talking about here.  But I do see this as bound up in your ruling about those incidents.

**THE COURT:**  Uh-huh.  (Nodding.)

**MR. HILLIARD:**  I'm not sure --

**THE COURT:**  Okay.  And you haven't had time because it came in --

**MR. HILLIARD:**  Well, it came in yesterday afternoon, which was a holiday, and I was traveling yesterday.

**THE COURT:**  Well, and Attorney Cullen, would you like to say anything?

**MR. CULLEN:**  No.  Like Attorney Hilliard, I'd like to have an opportunity to dive into it a little deeper.  I think we stand by our request.

This Court ruled on the Nieves case, and that's really what kept this case alive at this point, so it's a pretty critical issue.

And certainly it's our position that if our clients had nothing do with those other trespass actions, that may take this case right back out of Nieves and back into essentially a motion for directed verdict.

**THE COURT:**  The ultimate decision came from the Nashua

Police Department.  And so Ms. Ortolano is alleging that the reason why your clients allegedly had her or asked that she be arrested is because of her First Amendment activity.

And what she would need to show is that she ended up being arrested for this, even though when people do comply with officer's request to leave, people do not get arrested in Nashua.  I think it's the chief of police who testified to that at a deposition perhaps, and I think that that's all that's required under Nieves.  But ultimately I'll let you give me some case law and argue that position.

But if she is able to show that this is not something the police ordinarily arrests somebody for, but they did arrest her for this, well, she's going to argue that that came from -- her argument is it came from pressure from the defendants, your clients.

So I don't know that there would be a requirement subjectively that your clients would have known of those prior episodes.

What would be required would be objective evidence that Nashua citizens are not arrested typically for that kind of behavior.

**MR. CULLEN:**  Respectfully, I think sometimes the Court conflates our individual clients, individuals, with the City. And the idea here is that if our clients had allowed all these other trespasses to happen without any issue, and then on this

one they treated Ms. Ortolano differently, I think you would be completely accurate.

But I don't think -- that's not what the facts are going to be in this case, and I think that that's going to be an important issue. I know we have argued it already, but I suspect we're going to keep arguing it, and we think that the jury instruction properly instructs the jury about the role that our clients have to play in those other issues.

**THE COURT:** But it's an objective test. Do you agree that it's an objective test and so therefore, that subjective awareness that you're talking about with respect to this Nieves exception would not be relevant.

To the extent that plaintiff has a burden with respect to the element of retaliatory motive, that obviously is relevant in terms of what would have caused, allegedly, your clients to seek to have her arrested.

That would be relevant because that goes -- subjective motivation and causation are things she has to prove, but with respect to the Nieves exception, she does not have to meet the element of lack of probable cause because of the Nieves exception. And it's an objective test.

**MR. CULLEN:** Well, she still has to prove that she falls within that exception, and I don't believe she'll be able to do that if she can't prove that our clients were aware of those other incidents or had anything to do with them.

They had one example of a trespass case involving our clients, but I guess -- so I would disagree with you.

I think you're correct that they do have to prove that other aspect of the case, that this was what was -- the motivation factor was a First Amendment issue, but I think we're going to disagree on the -- on what is required to stay within that Nieves exception.

**THE COURT:** I think you would be right if we were -- if she was suing the arresting officers, the arresting entity, but ultimately she is suing individuals that she alleges caused the arresting entity to arrest her.

And I think the objective proof she needs to show to meet that Nieves exception is "people in Nashua do not get arrested for this."

So ultimately she's got, obviously, to show that your clients were influencing the arresting authority or arresting entity. That's something that she has the burden of proof on.

But to suggest that your clients have to have that kind of subjective knowledge would be essentially, in a way, in essence, conceding that they were -- they made the decision to have her arrested. And therefore, they had to have known that Nashua citizens don't get arrested for that.

But that subjective intent is not what's required unless you're saying that ultimately your clients were responsible for, which I don't think you're conceding.

**MR. CULLEN:** No, not by a long shot. I guess what we'd ask, Your Honor, is that we have a reasonable amount of time to file an objection to the motion and flush these issues out a little bit more.

**THE COURT:** And you understand where I'm coming from and what I would need by way of clarity, so I think this helps.

So yes, you may have time to respond.

**MR. HILLIARD:** And if I may add, Your Honor, to me an equally important aspect of this is that the so-called comparators involved mostly people intoxicated or asleep in the restrooms or public areas of City Hall.

There's no comparator of a person occupying and refusing to leave a non-public space in city hall. That's equally important to me, Your Honor, about this --

**THE COURT:** Well, let me ask you something. Am I misremembering the summary judgment record? Isn't there the chief of police -- doesn't he testify there's a policy in Nashua not to arrest citizens so long as they comply with the police officer's request to leave when somebody -- when they've trespassed? Am I right about that?

**MR. HILLIARD:** I think that's a fair reading, although he explained that the difference in this case -- and he explained that one of the reasons is that the police often found it very difficult to gain the cooperation of the owner or control of the premises in terms of prosecuting.

THE COURT: I know. And in this case, I remember, again, from the summary judgment record, which is limited, so I'm limited.

But the officer even indicated, I think, at some point in his report -- was it Officer Roach -- that he did not see any crime here, any offense here. I'm sure I'm paraphrasing that inaccurately but --

MR. AIVALIKLES: You're correct. He said "no offense committed".

THE COURT: So ultimately, I think if that's all she had was the chief of police saying, "In Nashua we have a policy: We are not arresting people who comply with the police officer's request to leave", I honestly think that might be sufficient. I haven't ruled on that, but I think that is a significant piece of evidence that would probably meet the Nieves standard.

MR. HILLIARD: Except that the police chief also testified -- and he will testify, and it will be undisputed -- that the reason that the investigation and arrest happened here is that the plaintiff published an admission of the trespass, and so there was no longer any impediment.

THE COURT: Well, how is that credible when, in fact, people who comply with police officer's instruction to leave a trespass situation, those people are conceding as well.

If it's a policy -- and it makes sense. That policy

makes sense:  If people are going to leave, that the police just don't process it; they take the word of the citizen that ultimately they're not going to do this again.

So that policy makes sense but saying she wrote something where they admitted trespassing so we're going to arrest her, that's going to be your -- the theory?

**MR. HILLIARD:**  That's the former police chief's testimony.

**THE COURT:**  Okay.  Okay.  My thought -- I thought from the record he had made clear to, I think it was your client and I think both defendants in a meeting, or at least with Mr. Bolton, that he was not going to be arresting Ms. Ortolano; it was contrary to policy?

**MR. HILLIARD:**  I don't know about the contrary-to-policy, Your Honor.

**THE COURT:**  We just talked about the policy.  The policy being that they don't arrest people who do what she did.

So my understanding -- maybe I'm wrong -- that Carignan, is it?  I'm probably saying it wrong -- Carignan.  I thought that he made clear to somebody, Mr. Bolton maybe, maybe Mr. Bolton and Ms. Leonard, that there was this policy and so, no, and the legal department doesn't control the police department.

**MR. HILLIARD:**  That part is correct.  I don't remember --

THE COURT:  -- I'm just remembering the record.

MR. HILLIARD:  I don't remember that at that meeting there was discussion about this policy.  I could be wrong, but I don't remember that.

THE COURT:  Okay.  Okay.  He told -- at the deposition he talked about the policy, but he didn't tell them in the meeting about the policy.  That's something along those lines.

MR. HILLIARD:  That is my memory, Your Honor, but I haven't read that excerpt recently.

THE COURT:  Okay.  All right.  Well, this is something that ultimately -- I'll read whatever you file, and I will give you a sense of where I'm going on that, probably at our status conference.

MR. CULLEN:  Might I suggest Monday for a response from us?

THE COURT:  That works for the Court.  Does that work for you, Attorney Aivalikles?

MR. AIVALIKLES:  If that's what they need, Your Honor, sure.

THE COURT:  That's fine with the Court.  Okay.  All right.  Exhibits -- have you worked out any of the -- I think there were some objections with respect to stray redactions and attachments.  Have you fixed those?

MR. AIVALIKLES:  Well, first of all, the statements that were made, Your Honor, were in response to Attorney Bolton

making statements in the blog about what Ms. Ortolano was saying, and I think there's at least three people that responded to Attorney Bolton, which is exhibit 30, Your Honor, but the other statements --

**THE COURT:**  Out of context, I don't know what those exhibits are, but I know that the defendants had noted that exhibit 38 had an extraneous 2023 letter as the last page.  Is that accurate?

**MR. AIVALIKLES:**  I'm sorry, Your Honor.  They agreed that that could be marked as a full exhibit.  And that has to do with a Supreme Court transmittal about some e-mails, but they have agreed that it could be admitted as it was presented.

**THE COURT:**  Exhibit 38?

**MR. AIVALIKLES:**  Yes.  I don't know why they're objecting now.

**THE COURT:**  I'm not going to get into that now.  I'll let counsel meet and confer about that, but I was simply asking:  Are these things that you agree on?  It looks like there may be some disagreement.  I think if you show each other what it is that you're talking about, I think we can clear this up.

And then 30 purports to be redacted but still includes comments, and it looks as though defendants did not understand that those comments would be part of exhibit 30.  I'll let counsel handle those issues.

With respect to witnesses, I think there were some witnesses that -- on the will-call list. And looks like Karen Bill is the name on the will-call list, plaintiff's will-call list.

And I know that -- I remember from our motion in limine hearing on that, that Ms. Bill's opinion about what had happened to Ms. Ortolano was not admissible in the first instance, but it may be potentially relevant about some other subjects. So I am curious what you would -- what is your intent to elicit from Ms. Bill, or is that simply an oversight.

**MR. AIVALIKLES:** Your Honor, she would testify that she's followed the meetings at the board of alderman, and she was very upset with the way Ms. Ortolano was treated, damage to her reputation that were being offered.

So she was an important witness, especially as it goes to damages because these board of alderman meetings are broadcasted. So I think she can testify as a citizen how she interpreted what the City was commenting upon Ms. Ortolano and how it impacted her reputation.

**THE COURT:** Okay. I think I have already ruled that that material is not admissible. I would need to hear it in context. I'm not going to make him strike it, but ultimately I am not clear on what she would offer with respect to the arrest.

I know she didn't like the way Ms. Ortolano was

treated by the City, by the Board, and at select meetings, but this trial is going to be limited to that arrest and whether or not, you know, you can show that the defendants were motivated to have her arrested because of her First Amendment activities.

And Karen Mill's testimony about how she was treated in general, ultimately, I'm not seeing the relevance, so I just warn you that I might sustain an objection to her testimony once we get into trial and I have a much better sense of the context of what's happening.

MR. AIVALIKLES:  Right.  As I said, Your Honor, it goes to reputational damages.

THE COURT:  It goes to damages?

MR. AIVALIKLES:  Reputational damages, yes.

THE COURT:  You want to be heard?  Go ahead.

MR. HILLIARD:  There was a defamation count in this case that was thrown out, Your Honor.  The reputational harm damages, I'm just not sure what it is and how it fits.

THE COURT:  Yeah.  I'm not sure how her testimony about what other -- what she thought about Ms. Ortolano's treatment.  I'm not seeing how that's going to be admissible, but let's move on.

You also, I think, left witnesses on your may-call list that I had ruled were inadmissible:  Master Patrolman Earnshaw and Sergeant Gilbert.  I believe these were two officers that responded to the July 20, 2022 incident?

MR. AIVALIKLES:  Yes.

THE COURT:  And are they on your may-call list?

MR. AIVALIKLES:  Yes.

THE COURT:  In the event that the door's opened somehow to that incident?

MR. AIVALIKLES:  That's exactly right, Your Honor.

THE COURT:  All right.  And Eliese Moore?

MR. AIVALIKLES:  That's the elderly woman.

THE COURT:  Yes.

MR. AIVALIKLES:  And the reason, of course, that we have to call her is Attorney Bolton is of the opinion, I believe in his deposition, claiming that my client was not truthful:  She was not representing elderly people.

So I think I need to bring her in to establish that Mr. Bolton is wrong; my client was not lying about that.

THE COURT:  And Eliese Moore is one of the women whose paperwork your client was trying to get date-stamped that day?

MR. AIVALIKLES:  Correct.

THE COURT:  I remember this issue coming up, and I said that to the extent the defendants were going to challenge her credibility on why she was there.  If that ends up being a material issue, I could see that being potentially relevant.

MR. HILLIARD:  I don't recall the colloquy that was referred to in Attorney Bolton's deposition.  I don't say it didn't happen; I don't recall it.

**THE COURT:**  Well, this is the reason why it's hard to rule on these things out of context.  If there's evidence challenging Ms. Ortolano's credibility on the reason why she's at City Hall on January 21st --

**MR. AIVALIKLES:**  22nd.

**THE COURT:**  22nd?

**MR. AIVALIKLES:**  Right.

**THE COURT:**  In 2021?

**MR. HILLIARD:**  Right.

**THE COURT:**  Then ultimately it may not be necessary.  It may not be relevant.

**MR. HILLIARD:**  It's also agreed upon exhibits, Your Honor, where Ms. Ortolano's exchanging with Mr. Vincent assessing people, the abatement applications, these two people.  I'm just not sure what Eliese Moore adds to our understanding.

**THE COURT:**  I think she's there just in case, and so I think it's unlikely she would be offered as a witness.  Okay.

And get me to that issue with respect to Mr. Vincent and these new exhibits, 40A through 40D.

The defendants are indicating these are already contained in an exhibit D as a full complete e-mail chain, and so having five separate e-mails is duplicative.  I think that's the argument.

**MR. AIVALIKLES:**  Not all of them, Your Honor.  I think the first six and then exhibit E.  Those have been admitted.

So we were asking that the exhibits starting with F through M, Your Honor.

In those e-mails, Your Honor, are correspondences between the plaintiff and Mr. Vincent, who is the acting assessor.  So they complete the entire conversation between the plaintiff and Mr. Vincent where he acknowledges receiving the abatements.  He sends it back, the stamped ones, so it's just a complete record.

**THE COURT:**  So exhibit D, defendants exhibit D is not a complete record of the e-mail correspondence between Ms. Ortolano and Mr. Vincent?

**MR. AIVALIKLES:**  I believe it contains 1 through 6.

**THE COURT:**  I'm going to let counsel -- this is just not something that I need to spend a lot of time on.

In the moment in the trial, I will definitely appreciate it if counsel is not introducing duplicative exhibits to the jury.  That would be cause for concern, but ultimately, I think this is something counsel can work through, but I am sympathetic to the argument that counsel is making, that they have an exhibit that covers the territory of 40A through 40D.  But I'll let counsel work on that ahead of time and see if you can clean those exhibits up.

There are a bunch of others that I think defendants have cited that are duplicative, and ultimately I am hoping I don't have to hear duplicative exhibit objections during the

trial.  I'm hoping that you can clean these up before the trial.

**MR. AIVALIKLES:**  Can I ask the Court to address exhibit 1?

**THE COURT:**  I'm sorry.  Exhibit?

**MR. AIVALIKLES:**  Exhibit 1.  That's another issue.

**THE COURT:**  Is that your exhibit 1?

**MR. AIVALIKLES:**  Yes, my exhibit 1.

**THE COURT:**  Are you objecting to that one?

**MR. HILLIARD:**  Uh-huh (nodding.)

**THE COURT:**  Is that the letter that Ms. Ortolano wrote to --

**MR. AIVALIKLES:**  It's the e-mail that she wrote six hours after the event of City Hall, that she sent to the Mayor, to the legal department.  There are the officials saying that Attorney Leonard should be fired.

**THE COURT:**  How is that not coming in?  Go ahead, Attorney Hilliard.

**MR. HILLIARD:**  Well, it's after the trespass.

**THE COURT:**  But before the arrest?

**MR. HILLIARD:**  Let me defer to Attorney Cullen because it's his client that's mentioned in the headline, not mine.

**THE COURT:**  Attorney Cullen?

She is essentially writing a letter, an e-mail, letter, correspondence to somebody at City Hall complaining

about her treatment, and saying she wasn't arrested in the end, and she's advocating that the way she was treated by your client should result in her termination.  That's my memory of that exhibit.

MR. CULLEN:  You're absolutely right, Your Honor.

THE COURT:  She's going to, I assume, introduce that?

MR. CULLEN:  Yeah.  It may have just been something that we're looking at, whether there's something that should be redacted within it as hearsay, but I don't see anything highlighted specific to that issue.

THE COURT:  I can't -- I see that letter as coming in.

MR. CULLEN:  Yeah.

THE COURT:  If there are redactions, obviously, I'll let you handle that.

Criminal defense costs, exhibit 88?

MR. AIVALIKLES:  Those are just documentary evidence of --

THE COURT:  I haven't looked at the exhibit yet but -- is it lengthy?  Is it a thick exhibit?

MR. AIVALIKLES:  No.  I think it's three or four checks.

THE COURT:  That seems relevant to damages.  Is that --

MR. HILLIARD:  88 just came in, Your Honor.  I'd like to have a little more time to think about it.

THE COURT: All right. You got it then. And if you would just lay out your final objections so that I can understand them and deal with them for you as best I can the day before we do jury selection. And then I'll just wait until the trial, and I can make a decision on each individual document and your objection to it.

Again, my goal is to not have the jury sitting there waiting while I'm trying to figure out what exhibit we're talking about. I'd much prefer doing this in a way that will make the trial go smoothly, give you a sense of how I'm likely to rule.

You can put your objections on the record. But that way I'm not taking up jury time just to figure out what's duplicative and what exhibit is already covered in some other exhibit. I really don't want to be spending time doing that.

Okay. I think I've -- let me go through. Am I forgetting anything else? Social media posts recently. Was that what you were --

MR. HILLIARD: Yeah, I had two other things I flagged. That was one of them, Your Honor. You had issued -- well, I shouldn't say you issued -- you secured everyone's agreement back in June.

THE COURT: Let me just clarify. I asked, I think respectfully, once we had the jury picked "let's all be careful in terms of our public statements." And Attorney Aivalikles

and Ms. Ortolano agreed with that, and that's all I had to say. I didn't need to issue an order.

And in order to issue some sort of gag order, which is what you're asking for, I have not seen any evidence that I need to do that.

I will be asking perspective jurors if they've seen any publicity about the case, and that could be something we would ask them at voir dire.  I do think it's relevant on that question but -- yeah, no, once we get the jury picked, I will once again just ask politely, but I'm not going to issue a gag order.

**MR. AIVALIKLES:**  For the record, my client agrees from today through the jury deliberation completion she's not going to be posting anything on her blog.  It was a blog on social media.

**THE COURT:**  Well, that's good.  And what was your second?

**MR. HILLIARD:**  The second one, Your Honor, is we have the plaintiff's JERS stick, but as I understand it, on the JERS stick, the exhibits don't have exhibit markers on them.  And we have not received from the plaintiff a set of exhibits, their exhibits with the exhibit stickers.

And so we -- the practical problem there is that we have no way to display exhibits with stickers on them of plaintiff's exhibits during examinations of witnesses.  And I

thought -- because we know we did it -- I thought that we were supposed to.

THE COURT:  You're supposed to mark them and give them to the case manager ten days before trial.

MR. HILLIARD:  We have done that.

THE COURT:  It makes sense -- and you're supposed to mark them for ID or as full exhibits, and hopefully you whittle down as many as you can for ID.

MR. HILLIARD:  We have supplied those to the Court and to other counsel, but despite a request, we haven't -- we don't have a set of the plaintiff's.

MR. AIVALIKLES:  Your Honor, we have provided all of our exhibits, and they're divided by sheets, 1, 2, 3, as an exhibit.

THE COURT:  Oh, in a hard copy form?

MR. AIVALIKLES:  Right, in the hard copy.

THE COURT:  Have you provided my case manager, Donna Esposito -- today Mr. Negron is covering for her, but do you intend to provide the marked exhibits on the JERS electronic thumb drive, if you will?

MR. HILLIARD:  I understood that on that JERS stick, Your Honor, the exhibits don't have the stickers on them, and that's why we need to get a set that has the stickers on them, so that --

THE COURT:  Right.  The JERS stick has nothing --

that's what goes into the --

THE COURTROOM CLERK:  For the jury for a presentation in the courtroom.

THE COURT:  Right.

THE COURTROOM CLERK:  They're supposed to supply another thumb drive with the stickers, identifying the exhibits with stickers.

THE COURT:  To the case manager?

THE COURTROOM CLERK:  Yes, and to the clerks.

THE COURT:  I have not seen that in writing anywhere. That's our practice.  It makes sense to me that they would need that.

MR. AIVALIKLES:  We'll take care of it, if we didn't do that, but we thought we had that.

THE COURT:  That's fine.  I don't need to spend one more second.  It looks like they're willing to do that.  Okay. Anything else?

MR. AIVALIKLES:  No, Your Honor.

MR. CULLEN:  A couple minor things, Your Honor.  Going back to the witnesses, John Duhamel has received a subpoena to come.  I know that he's coming.  I believe he's coming on day two of the trial, but he left the city in 2019.

And I guess I'm just not sure when an appropriate time would be to address the Court as to what it is we're actually expecting to hear from Mr. Duhamel.  He was the head of the

assessing department.  He left in 2019, which is -- is that two years -- three years before this incident.

THE COURT:  Okay.  Let's take it one at a time.  What could we relieve Mr. Duhamel?  What would be the reason for?

MR. AIVALIKLES:  Yes.  One of our issues is that when my client disclosed the Mayor's tax records, that's what started the animosity between her and Mr. Bolton, who was nominated by the Mayor.

And if you look at Duhamel's e-mails, which is exhibit 7, Your Honor, he writes to Louise Brown, and now the Mayor's office is involved.  Response:  "Yeah, for real?"  "Yep."  Then it goes on to say -- he also talks about the instructions.  He talks about whoever is being an obsessed taxpayer.

So they were monitoring her, and they were -- the Mayor's office informed of her review of the tax records, Your Honor.

And additionally, there's e-mails that her property was to be reinspected by the City, and so he's sending e-mails to the assessor.  "I need you to be on your game at 41 Berkeley Street.  Get in and out as soon as possible.  Tell me when you leave.  This hit the Mayor's office on me.  Next.  Inspection 41 Berkeley Street.  Blow up his phone.  Get him out of there."  This is Duhamel to Louise Brown.

Another one, "have your cell phone on during your inspection today, please, and thank you.  She was in the

alderman meeting last night.  Please take time to torture yourself and watch it, if you'd like to do that."

THE COURT:  Are these e-mails to Attorney Bolton?

MR. AIVALIKLES:  Well, the problem is we don't know if he did get them.  On the document itself it doesn't show that, Your Honor.

THE COURT:  But, you know, you can ask Mr. Bolton?

MR. AIVALIKLES:  Right.

THE COURT:  "Did you hear from Mr. Duhamel?"  "And did you ever hear him?"  "So you didn't see his e-mails and letters?"

Why would you need to be calling Mr. Duhamel?  He doesn't have any -- he doesn't have any current present -- he's not a witness to the incident on January 22nd.

MR. AIVALIKLES:  No, but my client tells me that these e-mails were produced by legal in a right-to-know.

THE COURT:  He was what?

MR. AIVALIKLES:  They were produced by the legal department in a right-to-know request that she filed.  That's how she got them, was through a right-to-know.  And legal produced them, so legal had possession of them.  The question is --

THE COURT:  Then you could ask Mr. Bolton.

MR. AIVALIKLES:  Right.

THE COURT:  And Mr. Bolton, undoubtedly, is going to

testify and be a witness.  So, yeah, I think -- and is Mr. Duhamel in the area, or is he under --

**MR. CULLEN:**  He works in Salem, and I think he lives in the proximity.

**THE COURT:**  I am -- again, I'm in a situation where I am -- we're not in the middle of trial.  I'm giving you my best sense.  I do not see how he is going to be a live witness in this trial based on everything that you're telling me.

**MR. AIVALIKLES:**  I assume the Court is going to defer that until a foundation is laid for Mr. Duhamel?

**THE COURT:**  I just want you to be clear on how unlikely it is this man would be a live witness in this particular trial.  I am not seeing that.

So what's the next witness?

**MR. CULLEN:**  With respect to David Lavoie, the records keeper, I have to admit I did try to speak with Mr. Aivalikles, and he gave me an explanation as to why he still wanted to have them.

I think we formally entered a stipulation in the court agreeing we weren't going to -- confirming our already, sort of, lawyer-to-lawyer agreement that we weren't going to challenge the authenticity of records.

Mr. Lavoie is the records keeper -- keeper of records for the police department, but I guess I'm still not sure what it is that he's needed to be here live for.

THE COURT: Okay. Is he going to be a witness other than to authenticate police records?

MR. AIVALIKLES: Well, it's more than authenticate, Your Honor. They're objecting to the introduction of the document, so I think he needs to explain how the document came about, what he reviewed, and what the specific charges are because they're objecting to the introduction, so I presume it's foundation?

MR. CULLEN: I'm not sure which records Mr. --

MR. AIVALIKLES: Exhibit 47, Your Honor, which is the right-to-know about similar trespass offenses at City Hall, Your Honor.

MR. CULLEN: Okay.

THE COURT: And he's saying you're going to object to the admission of them on relevance grounds but not on foundation.

MR. CULLEN: Authenticity, correct. I think you've already indicated that you're going to overrule our objection, but I think we're going to keep it on the record. But, yeah, we're not challenging any of these on authenticity, so I'm not sure that I understand what it would matter.

THE COURT: Well, I think he's going to introduce these. You make your argument objecting to them. If I do admit them, he may want the jury to hear what they are, and what they entail and what they show, and he may ask --

hopefully he wouldn't spend much time -- but that would be a collection of exhibits, exhibit 47?

MR. AIVALIKLES: I'm sorry. It would be 50.

THE COURT: That's okay. Whatever number it is, the jury is going to get that and, ultimately, they will know what those documents are, and they would have heard from Mr. Lavoie, put those documents in some sort of context. Who else is going to introduce those police logs? So I think they can present that --

MR. CULLEN: Thank you, Your Honor.

THE COURT: -- that evidence in a way that they -- that makes sense to them in terms of presenting it to the jury, but you don't, obviously, have to authenticate or establish them as --

MR. AIVALIKLES: Right.

THE COURT: -- establish the foundation. So it should be very brief.

MR. AIVALIKLES: It should be, Your Honor.

THE COURT: Okay. Anything else, Attorney Cullen?

MR. CULLEN: No, just that I understand Attorney Lehmann is on the list of witnesses. And to the extent that he's a fact witness, that's fine, but I've heard it sometimes that lawyers can get carried away and start offering opinions and thoughts and other things. So when that comes, we'll just ask you to give some direction.

THE COURT:  Who is he?  What role did he play?

MR. AIVALIKLES:  He represented Laurie on the right-to-know request, and he had an interaction with Attorney Bolton and the abatement too.

THE COURT:  All right.  But the person who represented you on the criminal trespass, that was Attorney Sisti?

MR. AIVALIKLES:  Sisti and Golding.

THE COURT:  All right.  What else?  Anything else before I adjourn?

MR. CULLEN:  No.  The rest -- I do have a couple of just very quick scheduling questions, Your Honor.

With respect to the hearing that you suggested for the 2nd of February, did you plan to do that in person, by Zoom, morning, afternoon?

I would certainly suggest if it's possible it sounds like morning might be better because you may be making some decisions on exhibits.

THE COURT:  Can we do that in the morning?  We might be able to move something.  I know we have a couple of criminal things on that day.

THE COURTROOM CLERK:  11:00.

THE COURT:  11:00 is the criminal revocation?

THE COURTROOM CLERK:  10:00 o'clock is free.  We could potentially move the revocation to the afternoon.

THE COURT:  Why don't we do that and devote -- that

way we can fit this in in the morning.  I don't want to devote the morning but --

THE COURTROOM CLERK:  We can start at 9:00.  Start at 9:00 or 10:00, which do you prefer?

THE COURT:  Let's see if we can move the revocation, start this at 10:00.  How does that sound?

MR. CULLEN:  I think that's fine.

MR. HILLIARD:  That's fine.  I may want to be here anyway, but are parties expected to attend that conference?

THE COURT:  You do not have to attend that.  We'll be doing last minute.  Only if you want to.

MR. HILLIARD:  Thank you.

THE COURT:  So you would be excused from that.  And in person or via video?  Let's just do it in person.  Let's just do it in person.  A little bit easier.  Okay.

MR. CULLEN:  On one of the early renditions of this trial, I think it was the June one, you had us, I think, coming in at 6:00 in the morning and staying until 10:00 p.m., and you were going to be housed in, like, a hotel underground somewhere so you could keep us here 24 hours a day.

I may be exaggerating that slightly, but do you have a sense of what your court schedule is likely going to be?

THE COURT:  Yes, I do, and I am at a hotel at my own expense just because I live too far away to travel, and I care about the jury in keeping the case running.  So just another

piece of evidence showing that that is a top priority of mine.

So yes, I will meet with you at 8:00 a.m., the day before a trial.  We'll start evidence at 9:00 a.m.  So the jury will be coming in as we're meeting, unless there are no reasons you need to meet with me.

So we will meet at 8:00 a.m. the first morning, and after that if you're able to work out stipulations and work out issues, and there won't be evidentiary disputes, you can let Attorney Esposito know, "we don't really need that hearing at 8:00 a.m.", and we'll come in at 9:00 for evidence, but I use that hour if I can help streamline the evidence and the exhibits and the evidentiary issues.

So 8:00 start, and then have them leave at 4:00, as close to 4:00 as I can.  And then I stay with you from 4:00 to 5:00 and talk about whatever issues are going to come up the next day.

**MR. CULLEN:**  Thank you.  Only two more.

Jury instructions, I know we have all been through this a number of times.  Obviously you won't have the answer on jury instruction number 4, but is there likelihood that we may see a draft of the instructions prior to openings.

**THE COURT:**  That is possible, and it would have drafts written all over it.  And I put in bold anything I'm not quite sure of.  So that would be -- that's how I will explain it to you when I hand them to you, but I hope to be able to do that

for you, but I can't guarantee it.

MR. CULLEN:  Aspirational goal.

THE COURT:  Aspirational goal.  And that way you'll have a drafty copy of my jury instructions with line numbers as well so that throughout the trial we can go through and deal with any objections that you have.  We can deal with them easily, "Judge, page 12, line 4, I've got a problem with this", and such, and we'll do that.

We'll obviously have an instruction, a charging conference before we agree finally on -- before I tell you my final ruling on all the jury instructions.  But as we go through the trial, you know, there are issues you may raise with respect to jury instructions, and we can hear those at 8:00 a.m.  I can hear them at 4:00 p.m.  So that's -- I'll try my best to get you that.

MR. CULLEN:  And the very last thing.  I know you like this courtroom very much.  It does present a challenge for me and my client because we can't really easily put five at the table, and if we take a second table back here, we can't see the witness.  So I guess I would ask you once again to consider whether you'd consider a different courtroom.

THE COURT:  Maybe courtroom 5 or 4.  I'll look into that.

MR. CULLEN:  Thank you, Your Honor.

THE COURT:  Yeah.  I don't want that to be a problem.

Okay.  Anything else from you or Attorney Hilliard?

**MR. HILLIARD:**  What time is jury selection on the 3rd?

**THE COURT:**  Well, it usually starts around 9:30.  And so what I would suggest is -- I don't see a need to meet with you at 8:00 a.m. on the day of jury selection, but if you want to talk to me for any reason I'll be here.

They'll start at 9:00.  They'll start working with them getting them ready, but then they will notify us that they're ready to go at around 9:30, 9:40, right in there.

**MR. HILLIARD:**  We will have seen you the day before.

**THE COURT:**  You will.

**MR. HILLIARD:**  So hopefully we will be up to date.

**THE COURT:**  And anything from you, Attorney Aivalikles?

**MR. AIVALIKLES:**  No, Your Honor.

**THE COURT:**  Okay.  Let me ask just about some of the elements, and I'm -- the acting under color of state law, is that something that's contested in the case?

**MR. HILLIARD:**  Yeah, I think so.

**MR. CULLEN:**  I think it will be, Your Honor, just to the extent that our clients feel that they were doing this as -- not in their capacity as legal counsel to the City, but as people who had a person come in and trespass and refuse to leave their office, so I think it will be contested.

**THE COURT:**  Okay.  Okay.  All right.  Anything else?

**MR. AIVALIKLES:**  No, Your Honor.

**MR. HILLIARD:**  No, Your Honor.

**THE COURT:**  Okay.  I will hear from you soon on the pending matters, and I will see you on that Monday before jury selection.  The Court is adjourned.  Thank you.

(Thereupon, the above hearing was concluded.)

*          *          *

# C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

01/22/2026

DATE COMPLETED          GIZELLA BAAN-PROULX, FCRR

**0**

**01/21/2026** [1] - 39:8
**03301** [1] - 1:21

**1**

**1** [6] - 21:12, 22:4, 22:6, 22:7, 22:8, 26:13
**10:00** [4] - 33:23, 34:4, 34:6, 34:18
**10th** [1] - 3:18
**11:00** [2] - 33:21, 33:22
**12** [1] - 36:7

**2**

**2** [1] - 26:13
**20** [2] - 1:4, 18:25
**2019** [2] - 27:22, 28:1
**2021** [1] - 20:8
**2022** [1] - 18:25
**2023** [1] - 16:7
**2026** [1] - 1:4
**210** [3] - 6:10, 6:12, 6:15
**21st** [1] - 20:4
**22-CV-00326-LM** [1] - 1:2
**22-CV-326-LM** [1] - 2:8
**225-1454** [1] - 1:21
**22nd** [3] - 20:5, 20:6, 29:14
**24** [1] - 34:20
**2nd** [1] - 33:13

**3**

**3** [1] - 26:13
**30** [3] - 16:3, 16:22, 16:24
**38** [2] - 16:7, 16:13
**3rd** [5] - 3:5, 3:6, 3:10, 3:11, 37:2

**4**

**4** [4] - 6:9, 35:20, 36:7, 36:22
**40A** [2] - 20:19, 21:20
**40D** [2] - 20:19, 21:21
**41** [2] - 28:19, 28:22
**47** [2] - 31:10, 32:2
**4:00** [5] - 5:5, 35:13, 35:14, 36:14

**5**

**5** [1] - 36:22
**50** [1] - 32:3
**55** [1] - 1:20
**5:00** [1] - 35:15

**6**

**6** [1] - 21:12
**603** [1] - 1:21

**6:00** [1] - 34:18

**7**

**7** [1] - 28:10

**8**

**88** [2] - 23:15, 23:24
**8:00** [6] - 35:2, 35:6, 35:10, 35:13, 36:14, 37:5

**9**

**9:00** [5] - 34:3, 34:4, 35:3, 35:10, 37:7
**9:30** [2] - 37:3, 37:9
**9:40** [1] - 37:9
**9th** [1] - 3:15

**A**

**a.m** [6] - 35:2, 35:3, 35:6, 35:10, 36:14, 37:5
**abatement** [2] - 20:14, 33:4
**abatements** [1] - 21:7
**able** [6] - 5:4, 9:11, 10:23, 33:19, 35:7, 35:25
**above-entitled** [1] - 39:4
**absolutely** [1] - 23:5
**accurate** [3] - 10:2, 16:8, 39:3
**acknowledges** [1] - 21:6
**acting** [2] - 21:4, 37:17
**actions** [1] - 8:22
**activities** [1] - 18:4
**activity** [1] - 9:3
**add** [1] - 12:8
**additional** [1] - 4:17
**additionally** [1] - 28:17
**address** [2] - 22:3, 27:24
**adds** [1] - 20:15
**adjourn** [1] - 33:9
**adjourned** [1] - 38:5
**admissible** [3] - 17:7, 17:21, 18:20
**admission** [2] - 13:20, 31:15
**admit** [2] - 30:16, 31:24
**admitted** [3] - 14:5, 16:12, 20:25
**admittedly** [1] - 8:4
**advance** [1] - 5:11
**advocating** [1] - 23:2
**afternoon** [16] - 2:3, 2:11, 2:13, 2:15, 2:20, 2:22, 2:23, 2:25, 3:1, 3:3, 7:10, 8:11, 33:14, 33:24
**agree** [3] - 10:9, 16:18, 36:10
**agreed** [4] - 16:9, 16:12, 20:12, 25:1

**agreeing** [1] - 30:20
**agreement** [2] - 24:21, 30:21
**agrees** [1] - 25:12
**ahead** [4] - 3:17, 18:14, 21:21, 22:17
**AIVALIKLES** [52] - 1:12, 2:11, 2:17, 3:19, 4:6, 6:17, 7:3, 13:8, 15:18, 15:24, 16:9, 16:14, 17:11, 18:10, 18:13, 19:1, 19:3, 19:6, 19:8, 19:10, 19:18, 20:5, 20:7, 20:24, 21:12, 22:3, 22:6, 22:8, 22:13, 23:16, 23:20, 25:12, 26:12, 26:16, 27:13, 27:18, 28:5, 29:4, 29:8, 29:15, 29:18, 29:24, 30:9, 31:3, 31:10, 32:3, 32:15, 32:18, 33:2, 33:7, 37:15, 38:1
**Aivalikles** [7] - 1:13, 2:12, 2:16, 15:17, 24:25, 30:16, 37:14
**al** [1] - 2:8
**alderman** [3] - 17:12, 17:16, 29:1
**alive** [1] - 8:19
**alleged** [2] - 7:13, 7:18
**allegedly** [2] - 9:2, 10:15
**alleges** [1] - 11:10
**alleging** [1] - 9:1
**allowed** [1] - 9:24
**Amendment** [3] - 9:3, 11:5, 18:4
**amount** [1] - 12:2
**AND** [1] - 1:5
**animosity** [1] - 28:7
**answer** [1] - 35:19
**anyway** [1] - 34:9
**applications** [1] - 20:14
**appreciate** [1] - 21:16
**approach** [1] - 3:14
**appropriate** [1] - 27:23
**area** [1] - 30:2
**areas** [1] - 12:11
**argue** [2] - 9:10, 9:13
**argued** [1] - 10:5
**arguing** [1] - 10:6
**argument** [4] - 9:14, 20:23, 21:19, 31:23
**arrest** [11] - 6:19, 9:12, 11:11, 12:18, 13:19, 14:6, 14:17, 17:24, 18:2, 22:20
**arrested** [10] - 9:3, 9:5, 9:6, 9:20, 10:16, 11:14, 11:21, 11:22, 18:4, 23:1
**arresting** [7] - 11:9, 11:11, 11:16, 13:12, 14:12
**arrests** [1] - 9:12
**asleep** [1] - 12:10
**aspect** [2] - 11:4, 12:9

**aspirational** [2] - 36:2, 36:3
**assessing** [2] - 20:14, 28:1
**assessor** [2] - 21:5, 28:19
**assume** [2] - 23:6, 30:9
**attachments** [1] - 15:23
**attend** [2] - 34:9, 34:10
**Attorney** [23] - 2:16, 4:7, 7:6, 8:13, 8:15, 15:17, 15:25, 16:3, 19:11, 19:24, 22:16, 22:18, 22:21, 24:25, 29:3, 32:19, 32:20, 33:3, 33:6, 35:9, 37:1, 37:13
**attorney** [1] - 22:23
**authenticate** [3] - 31:2, 31:3, 32:13
**authenticity** [3] - 30:22, 31:17, 31:20
**authority** [1] - 11:16
**aware** [2] - 8:1, 10:24
**awareness** [1] - 10:11

**B**

**BAAN** [2] - 1:19, 39:9
**BAAN-PROULX** [2] - 1:19, 39:9
**baby** [1] - 2:18
**based** [1] - 30:8
**BEFORE** [1] - 1:9
**beginning** [1] - 2:10
**behavior** [1] - 9:21
**Berkeley** [2] - 28:19, 28:22
**best** [3] - 24:3, 30:6, 36:15
**better** [2] - 18:8, 33:16
**between** [4] - 21:4, 21:5, 21:10, 28:7
**Bill** [1] - 17:3
**bill** [1] - 17:10
**Bill's** [1] - 17:6
**bit** [5] - 3:16, 4:22, 7:15, 12:4, 34:15
**blog** [3] - 16:1, 25:14
**blow** [1] - 28:22
**board** [2] - 17:12, 17:16
**Board** [1] - 18:1
**bold** [1] - 35:23
**BOLTON** [2] - 1:5, 1:14
**Bolton** [17] - 2:8, 2:21, 2:24, 7:25, 14:12, 14:20, 14:21, 15:25, 16:3, 19:11, 19:15, 28:7, 29:3, 29:7, 29:23, 29:25, 33:4
**Bolton's** [1] - 19:24
**bound** [1] - 8:5
**box** [1] - 5:20
**break** [1] - 3:7
**breaks** [1] - 4:24
**breather** [1] - 3:7
**BRIAN** [1] - 1:16
**Brian** [1] - 3:1

**brief** [2] - 5:22, 32:17
**bring** [1] - 19:14
**broadcasted** [1] - 17:17
**broken** [1] - 4:22
**Brown** [2] - 28:10, 28:23
**bunch** [1] - 21:23
**burden** [2] - 10:13, 11:17
**BY** [1] - 1:19

## C

**cancel** [1] - 4:18
**capacity** [1] - 37:22
**care** [2] - 27:13, 34:24
**careful** [1] - 24:24
**Carignan** [2] - 14:19
**carried** [1] - 32:23
**carry** [1] - 3:15
**case** [20] - 2:8, 3:17, 6:21, 8:18, 8:19, 8:23, 9:10, 10:4, 11:1, 11:4, 12:22, 13:1, 18:16, 20:16, 25:7, 26:4, 26:17, 27:8, 34:25, 37:18
**CASE** [1] - 1:2
**cases** [5] - 3:25, 6:25, 7:11, 7:12, 7:17
**causation** [1] - 10:18
**caused** [2] - 10:15, 11:10
**CELIA** [2] - 1:5, 1:16
**Celia** [2] - 3:2, 7:25
**cell** [1] - 28:24
**certainly** [2] - 8:21, 33:15
**certify** [1] - 39:3
**chain** [1] - 20:21
**challenge** [3] - 19:20, 30:22, 36:17
**challenging** [2] - 20:3, 31:20
**charges** [3] - 6:19, 7:4, 31:6
**charging** [1] - 36:9
**check** [1] - 5:3
**checks** [1] - 23:21
**chief** [4] - 9:7, 12:17, 13:11, 13:17
**chief's** [1] - 14:7
**circumstances** [1] - 8:3
**cited** [1] - 21:24
**citizen** [2] - 14:2, 17:17
**citizens** [3] - 9:20, 11:22, 12:18
**City** [11] - 6:20, 9:23, 12:11, 17:18, 18:1, 20:4, 22:14, 22:25, 28:18, 31:11, 37:22
**city** [2] - 12:13, 27:22
**City's** [1] - 6:24
**civil** [1] - 2:8
**claiming** [1] - 19:12
**clarify** [1] - 24:23
**clarity** [2] - 4:18, 12:6
**clean** [2] - 21:22, 22:1

**clear** [5] - 14:10, 14:20, 16:20, 17:23, 30:11
**CLERK** [7] - 2:6, 27:2, 27:5, 27:9, 33:21, 33:23, 34:3
**clerks** [1] - 27:9
**client** [10] - 14:10, 19:12, 19:15, 19:17, 22:22, 23:3, 25:12, 28:6, 29:15, 36:18
**clients** [14] - 8:21, 9:2, 9:15, 9:17, 9:23, 9:24, 10:8, 10:16, 10:24, 11:2, 11:16, 11:18, 11:24, 37:21
**close** [2] - 4:2, 35:14
**closely** [1] - 7:11
**closing** [1] - 3:14
**collection** [1] - 32:2
**Collimore** [1] - 1:16
**colloquy** [1] - 19:23
**color** [1] - 37:17
**coming** [8] - 12:5, 19:19, 22:17, 23:11, 27:21, 34:17, 35:4
**commenting** [1] - 17:18
**comments** [2] - 16:23, 16:24
**committed"** [1] - 13:9
**comparable** [1] - 6:21
**comparative** [1] - 7:4
**comparator** [1] - 12:12
**comparators** [5] - 7:14, 7:19, 7:21, 7:22, 12:10
**complaining** [1] - 22:25
**complete** [4] - 20:21, 21:5, 21:8, 21:10
**COMPLETED** [1] - 39:9
**completely** [1] - 10:2
**completion** [1] - 25:13
**comply** [4] - 9:5, 12:18, 13:12, 13:23
**conceding** [3] - 11:20, 11:25, 13:24
**concern** [1] - 21:17
**concerning** [1] - 6:24
**concluded** [1] - 38:7
**Concord** [1] - 1:21
**CONCORD** [1] - 1:1
**confer** [1] - 16:17
**conference** [8] - 2:7, 4:2, 4:5, 4:16, 5:23, 15:13, 34:9, 36:10
**CONFERENCE** [1] - 1:8
**confirming** [1] - 30:20
**conflates** [1] - 9:23
**consider** [2] - 36:20, 36:21
**consideration** [1] - 2:7
**consistent** [1] - 4:21
**contained** [1] - 20:21
**contains** [1] - 21:12
**contested** [2] - 37:18,

37:24
**context** [5] - 16:5, 17:22, 18:9, 20:2, 32:7
**contrary** [2] - 14:13, 14:15
**contrary-to-policy** [1] - 14:15
**control** [2] - 12:25, 14:22
**conversation** [1] - 21:5
**cooperation** [1] - 12:24
**copy** [3] - 26:15, 26:16, 36:4
**correct** [5] - 11:3, 13:8, 14:24, 19:18, 31:17
**correspondence** [2] - 21:10, 22:25
**correspondences** [1] - 21:3
**costs** [1] - 23:15
**Counsel** [1] - 2:25
**counsel** [12] - 2:9, 2:10, 3:3, 16:17, 16:25, 21:13, 21:16, 21:18, 21:19, 21:21, 26:10, 37:22
**count** [1] - 18:15
**couple** [3] - 27:19, 33:10, 33:19
**course** [1] - 19:10
**COURT** [115] - 1:1, 1:10, 2:3, 2:13, 2:19, 2:22, 2:25, 3:3, 3:21, 4:7, 4:11, 4:14, 6:11, 6:13, 7:2, 7:6, 7:15, 8:7, 8:9, 8:13, 8:25, 10:9, 11:8, 12:5, 12:15, 13:1, 13:10, 13:22, 14:9, 14:16, 15:1, 15:5, 15:10, 15:16, 15:20, 16:5, 16:13, 16:16, 17:20, 18:12, 18:14, 18:18, 19:2, 19:4, 19:7, 19:9, 19:16, 19:19, 20:1, 20:6, 20:8, 20:10, 20:16, 21:9, 21:13, 22:5, 22:7, 22:9, 22:11, 22:17, 22:20, 22:23, 23:6, 23:11, 23:13, 23:18, 23:22, 24:1, 24:23, 25:16, 26:3, 26:6, 26:15, 26:17, 26:25, 27:4, 27:8, 27:10, 27:15, 28:3, 29:3, 29:7, 29:9, 29:17, 29:23, 29:25, 30:5, 30:11, 31:1, 31:14, 31:22, 32:4, 32:11, 32:16, 32:19, 33:1, 33:5, 33:8, 33:18, 33:22, 33:25, 34:5, 34:10, 34:13, 34:23, 35:22, 36:3, 36:22, 36:25, 37:3, 37:11, 37:13, 37:16, 37:25, 38:3
**court** [4] - 2:2, 2:6, 30:19, 34:22
**Court** [12] - 1:19, 1:20, 8:18, 9:22, 15:16, 15:20, 16:11, 22:3, 26:9, 27:24,

30:9, 38:5
**courtroom** [5] - 5:19, 27:3, 36:17, 36:21, 36:22
**COURTROOM** [6] - 27:2, 27:5, 27:9, 33:21, 33:23, 34:3
**covered** [1] - 24:14
**covering** [1] - 26:18
**covers** [1] - 21:20
**Covid** [1] - 5:18
**credibility** [2] - 19:21, 20:3
**credible** [1] - 13:22
**crime** [1] - 13:6
**criminal** [6] - 6:20, 6:25, 23:15, 33:6, 33:19, 33:22
**critical** [1] - 8:20
**CULLEN** [30] - 1:16, 3:1, 4:8, 4:12, 6:10, 6:12, 8:15, 9:22, 10:22, 12:1, 15:14, 23:5, 23:7, 23:12, 27:19, 30:3, 30:15, 31:9, 31:13, 31:17, 32:10, 32:20, 33:10, 34:7, 34:16, 35:17, 36:2, 36:16, 36:24, 37:20
**Cullen** [7] - 1:16, 3:1, 4:7, 8:13, 22:21, 22:23, 32:19
**curious** [1] - 17:9
**current** [1] - 29:13

## D

**damage** [1] - 17:13
**damages** [6] - 17:16, 18:11, 18:12, 18:13, 18:17, 23:22
**date** [2] - 19:17, 37:12
**DATE** [1] - 39:9
**date-stamped** [1] - 19:17
**David** [1] - 30:15
**days** [1] - 26:4
**deal** [3] - 24:3, 36:5, 36:6
**decision** [3] - 8:25, 11:20, 24:5
**decisions** [1] - 33:17
**deeper** [1] - 8:16
**defamation** [1] - 18:15
**Defendant** [2] - 2:21, 2:24
**DEFENDANT** [2] - 1:14, 1:16
**defendant's** [1] - 6:8
**defendants** [11] - 1:6, 6:24, 9:14, 14:11, 16:6, 16:23, 18:3, 19:20, 20:20, 21:9, 21:23
**defense** [1] - 23:15
**defer** [2] - 22:21, 30:9
**definitely** [1] - 21:15
**deliberation** [1] - 25:13
**department** [6] - 14:22, 14:23, 22:15, 28:1, 29:19, 30:24

**Department** [1] - 9:1
**deposition** [4] - 9:8, 15:5, 19:12, 19:24
**describing** [1] - 5:17
**despite** [1] - 26:10
**determine** [1] - 6:18
**devote** [2] - 33:25, 34:1
**difference** [1] - 12:22
**different** [2] - 7:21, 36:21
**differently** [1] - 10:1
**difficult** [1] - 12:24
**dire** [1] - 25:8
**directed** [1] - 8:24
**direction** [1] - 32:25
**disagree** [2] - 11:2, 11:6
**disagreement** [1] - 16:19
**disclosed** [1] - 28:6
**discussion** [1] - 15:3
**display** [1] - 25:24
**disputes** [2] - 4:17, 35:8
**DISTRICT** [2] - 1:1, 1:10
**District** [1] - 1:20
**dive** [1] - 8:16
**divided** [1] - 26:13
**docket** [1] - 6:14
**document** [8] - 6:6, 6:7, 6:8, 6:10, 24:6, 29:5, 31:5
**documentary** [1] - 23:16
**documents** [3] - 6:13, 32:6, 32:7
**done** [2] - 4:1, 26:5
**Donna** [1] - 26:17
**door's** [1] - 19:4
**down** [1] - 26:8
**draft** [1] - 35:21
**drafts** [1] - 35:22
**drafty** [1] - 36:4
**drive** [2] - 26:20, 27:6
**Duhamel** [8] - 27:20, 27:25, 28:4, 28:23, 29:9, 29:12, 30:2, 30:10
**Duhamel's** [1] - 28:9
**duplicative** [5] - 20:22, 21:16, 21:24, 21:25, 24:14
**during** [5] - 5:6, 5:19, 21:25, 25:25, 28:24

## E

**e-mail** [4] - 20:21, 21:10, 22:13, 22:24
**e-mails** [9] - 16:11, 20:22, 21:3, 28:9, 28:17, 28:18, 29:3, 29:10, 29:16
**early** [2] - 5:8, 34:16
**Earnshaw** [1] - 18:24
**easier** [1] - 34:15
**easily** [2] - 36:7, 36:18
**edges** [1] - 3:22
**elderly** [2] - 19:8, 19:13

**electronic** [1] - 26:19
**electronics** [1] - 2:18
**element** [2] - 10:14, 10:20
**elements** [1] - 37:17
**Elena** [1] - 2:18
**elicit** [1] - 17:10
**Eliese** [3] - 19:7, 19:16, 20:15
**end** [2] - 5:9, 23:1
**ended** [1] - 9:4
**ends** [2] - 3:23, 19:21
**entail** [1] - 31:25
**entered** [1] - 30:19
**entire** [1] - 21:5
**entitled** [1] - 39:4
**entity** [3] - 11:9, 11:11, 11:17
**episodes** [1] - 9:18
**equally** [2] - 12:9, 12:14
**especially** [1] - 17:15
**Esposito** [2] - 26:18, 35:9
**ESQ** [4] - 1:12, 1:14, 1:14, 1:16
**essence** [1] - 11:20
**essentially** [4] - 3:22, 8:23, 11:19, 22:24
**establish** [3] - 19:14, 32:13, 32:16
**et** [1] - 2:8
**event** [3] - 4:15, 19:4, 22:14
**evidence** [11] - 7:24, 9:19, 13:15, 20:2, 23:16, 25:4, 32:11, 35:1, 35:3, 35:10, 35:11
**evidentiary** [4] - 5:1, 5:24, 35:8, 35:12
**exactly** [1] - 19:6
**exaggerating** [1] - 34:21
**examinations** [1] - 25:25
**example** [1] - 11:1
**except** [1] - 13:17
**exception** [6] - 10:12, 10:19, 10:21, 10:23, 11:7, 11:13
**excerpt** [1] - 15:9
**exchanging** [1] - 20:13
**excused** [1] - 34:13
**exhibit** [30] - 5:24, 16:3, 16:7, 16:10, 16:13, 16:24, 20:21, 20:25, 21:9, 21:20, 21:25, 22:4, 22:5, 22:6, 22:7, 22:8, 23:4, 23:15, 23:18, 23:19, 24:8, 24:14, 24:15, 25:20, 25:22, 26:14, 28:9, 31:10, 32:2
**exhibits** [20] - 15:21, 16:6, 20:12, 20:19, 21:1, 21:17, 21:22, 25:20, 25:21, 25:22, 25:24, 25:25, 26:7, 26:13, 26:19, 26:22, 27:6, 32:2,

33:17, 35:12
**expected** [1] - 34:9
**expecting** [1] - 27:25
**expense** [1] - 34:24
**explain** [2] - 31:5, 35:24
**explained** [2] - 12:22, 12:23
**explanation** [1] - 30:17
**extent** [5] - 3:11, 10:13, 19:20, 32:21, 37:21
**extraneous** [1] - 16:7

## F

**fact** [2] - 13:22, 32:22
**factor** [1] - 11:5
**factors** [1] - 7:18
**facts** [1] - 10:3
**fair** [3] - 3:18, 3:19, 12:21
**fairly** [1] - 3:8
**falls** [1] - 10:23
**far** [1] - 34:24
**FCRR** [2] - 1:19, 39:9
**February** [2] - 3:6, 33:13
**few** [1] - 4:24
**figure** [2] - 24:8, 24:13
**file** [2] - 12:3, 15:11
**filed** [1] - 29:19
**final** [5] - 2:7, 4:1, 5:22, 24:2, 36:11
**FINAL** [1] - 1:8
**finally** [1] - 36:10
**fine** [7] - 4:8, 4:9, 15:20, 27:15, 32:22, 34:7, 34:8
**fired** [1] - 22:16
**first** [5] - 6:16, 15:24, 17:7, 20:25, 35:6
**First** [3] - 9:3, 11:5, 18:4
**fit** [2] - 3:12, 34:1
**fits** [1] - 18:17
**five** [2] - 20:22, 36:18
**fixed** [1] - 15:23
**flagged** [1] - 24:19
**flush** [1] - 12:3
**folks** [1] - 4:5
**followed** [1] - 17:12
**following** [1] - 2:2
**FOR** [3] - 1:12, 1:14, 1:16
**foregoing** [1] - 39:3
**forgetting** [1] - 24:17
**form** [1] - 26:15
**formally** [1] - 30:19
**former** [1] - 14:7
**foundation** [4] - 30:10, 31:8, 31:16, 32:16
**four** [2] - 3:13, 23:20
**four-day** [1] - 3:13
**free** [1] - 33:23
**full** [3] - 16:10, 20:21, 26:7

## G

**gag** [2] - 25:3, 25:10
**gain** [1] - 12:24
**game** [1] - 28:19
**general** [2] - 6:2, 18:6
**generally** [1] - 5:1
**Gilbert** [1] - 18:24
**GIZELLA** [2] - 1:19, 39:9
**goal** [3] - 24:7, 36:2, 36:3
**Golding** [1] - 33:7
**Gonzalez** [1] - 7:3
**grounds** [1] - 31:15
**guarantee** [1] - 36:1
**guess** [6] - 7:8, 11:2, 12:1, 27:23, 30:24, 36:20

## H

**Hall** [5] - 12:11, 20:4, 22:14, 22:25, 31:11
**hall** [1] - 12:13
**HAMPSHIRE** [1] - 1:1
**hand** [1] - 35:25
**handle** [3] - 5:17, 16:25, 23:14
**handling** [1] - 2:17
**hard** [3] - 20:1, 26:15, 26:16
**harm** [1] - 18:16
**Hatfield** [1] - 1:15
**head** [1] - 27:25
**headline** [1] - 22:22
**hear** [10] - 6:5, 17:21, 21:25, 27:25, 29:9, 29:10, 31:24, 36:13, 36:14, 38:3
**heard** [4] - 7:6, 18:14, 32:6, 32:22
**hearing** [6] - 4:19, 5:2, 17:6, 33:12, 35:9, 38:7
**hearsay** [1] - 23:9
**held** [1] - 2:2
**help** [1] - 35:11
**helps** [2] - 5:2, 12:6
**hereby** [1] - 39:3
**highlighted** [1] - 23:10
**HILLIARD** [35] - 1:14, 2:20, 4:9, 7:8, 7:16, 8:8, 8:11, 12:8, 12:21, 13:17, 14:7, 14:14, 14:24, 15:2, 15:8, 18:15, 19:23, 20:9, 20:12, 22:10, 22:19, 22:21, 23:24, 24:19, 25:18, 26:5, 26:9, 26:21, 34:8, 34:12, 37:2, 37:10, 37:12, 37:19, 38:2
**Hilliard** [6] - 2:21, 4:7, 7:7, 8:15, 22:18, 37:1
**hit** [1] - 28:21
**holiday** [1] - 8:12
**home** [2] - 5:5, 5:12
**honestly** [1] - 13:13

**Honor** [52] - 2:11, 2:15, 2:20, 2:23, 3:1, 3:20, 4:6, 4:8, 4:9, 6:10, 6:17, 7:5, 7:8, 12:2, 12:8, 12:14, 14:15, 15:8, 15:18, 15:25, 16:3, 16:9, 17:11, 18:10, 18:16, 19:6, 20:13, 20:24, 21:2, 21:3, 23:5, 23:24, 24:20, 25:18, 26:12, 26:22, 27:18, 27:19, 28:10, 28:16, 29:6, 31:4, 31:10, 31:12, 32:10, 32:18, 33:11, 36:24, 37:15, 37:20, 38:1, 38:2
**HONORABLE** [1] - 1:9
**hope** [1] - 35:25
**hopefully** [4] - 3:9, 26:7, 32:1, 37:12
**hoping** [2] - 21:24, 22:1
**hotel** [2] - 34:19, 34:23
**hour** [1] - 35:11
**hours** [2] - 22:14, 34:20
**housed** [1] - 34:19

## I

**ID** [2] - 26:7, 26:8
**idea** [1] - 9:24
**identify** [1] - 2:9
**identifying** [1] - 27:6
**impacted** [1] - 17:19
**impediment** [1] - 13:21
**important** [4] - 10:5, 12:9, 12:14, 17:15
**inaccurately** [1] - 13:7
**inadmissible** [1] - 18:23
**incident** [4] - 18:25, 19:5, 28:2, 29:14
**incidents** [3] - 7:24, 8:6, 10:25
**includes** [1] - 16:22
**indicated** [2] - 13:4, 31:18
**indicating** [1] - 20:20
**individual** [2] - 9:23, 24:5
**individuals** [2] - 9:23, 11:10
**influencing** [1] - 11:16
**information** [1] - 8:1
**informed** [1] - 28:15
**inspection** [2] - 28:21, 28:25
**instance** [1] - 17:8
**instruct** [1] - 6:2
**instruction** [7] - 6:4, 6:9, 6:18, 10:7, 13:23, 35:20, 36:9
**instructions** [8] - 6:1, 7:9, 28:12, 35:18, 35:21, 36:4, 36:11, 36:13
**instructs** [1] - 10:7
**intend** [1] - 26:19
**intent** [4] - 7:24, 8:3, 11:23,

17:10
**interaction** [1] - 33:3
**interpreted** [1] - 17:18
**intoxicated** [1] - 12:10
**introduce** [3] - 23:6, 31:22, 32:8
**introducing** [1] - 21:16
**introduction** [2] - 31:4, 31:7
**investigation** [1] - 13:19
**involved** [2] - 12:10, 28:11
**involving** [1] - 11:1
**issue** [14] - 5:1, 5:13, 8:20, 9:25, 10:5, 11:5, 19:19, 19:22, 20:18, 22:6, 23:10, 25:2, 25:3, 25:10
**issued** [3] - 5:14, 24:20, 24:21
**issues** [11] - 4:20, 5:4, 5:25, 10:8, 12:3, 16:25, 28:5, 35:8, 35:12, 35:15, 36:12
**itself** [1] - 29:5

## J

**J.S** [1] - 1:16
**January** [3] - 1:4, 20:4, 29:14
**JERS** [5] - 25:19, 26:19, 26:21, 26:25
**John** [1] - 27:20
**Judge** [1] - 36:7
**JUDGE** [1] - 1:10
**judgment** [2] - 12:16, 13:2
**July** [1] - 18:25
**June** [2] - 24:22, 34:17
**jurors** [2] - 5:18, 25:6
**jury** [48] - 3:5, 3:7, 3:8, 3:10, 3:16, 4:2, 4:4, 4:24, 5:2, 5:4, 5:6, 5:9, 5:12, 5:13, 5:17, 5:19, 5:20, 5:21, 6:1, 6:2, 6:4, 6:9, 6:18, 10:7, 21:17, 24:4, 24:7, 24:13, 24:24, 25:9, 25:13, 27:2, 31:24, 32:5, 32:12, 34:25, 35:3, 35:18, 35:20, 36:4, 36:11, 36:13, 37:2, 37:5, 38:4

## K

**Karen** [2] - 17:2, 18:5
**keep** [4] - 4:23, 10:6, 31:19, 34:20
**keeper** [3] - 30:16, 30:23
**keeping** [1] - 34:25
**kept** [1] - 8:19
**kind** [2] - 9:20, 11:19
**knowledge** [1] - 11:19
**known** [2] - 9:17, 11:21

## L

**lack** [1] - 10:20
**laid** [1] - 30:10
**LANDYA** [1] - 1:9
**last** [7] - 3:8, 4:20, 5:19, 16:7, 29:1, 34:11, 36:16
**last-minute** [1] - 4:20
**late** [1] - 2:3
**LAURIE** [2] - 1:3, 1:13
**Laurie** [3] - 2:7, 2:12, 33:2
**Lavoie** [2] - 30:15, 32:6
**lavoie** [1] - 30:23
**Law** [1] - 1:13
**law** [2] - 9:10, 37:17
**lawyer** [2] - 30:21
**lawyer-to-lawyer** [1] - 30:21
**lawyers** [1] - 32:23
**lay** [3] - 5:23, 6:6, 24:2
**least** [3] - 6:1, 14:11, 16:2
**leave** [10] - 7:1, 9:6, 12:13, 12:19, 13:13, 13:23, 14:1, 28:21, 35:13, 37:24
**left** [3] - 18:22, 27:22, 28:1
**legal** [7] - 14:22, 22:15, 29:16, 29:18, 29:20, 29:21, 37:22
**Lehmann** [1] - 32:21
**lengthy** [1] - 23:19
**Leonard** [4] - 3:2, 7:25, 14:21, 22:16
**LEONARD** [2] - 1:5, 1:16
**letter** [5] - 16:7, 22:11, 22:24, 22:25, 23:11
**letters** [1] - 29:11
**likelihood** [1] - 35:20
**likely** [2] - 24:10, 34:22
**limine** [1] - 17:6
**limited** [3] - 13:2, 13:3, 18:2
**line** [2] - 36:4, 36:7
**lines** [1] - 15:7
**linger** [1] - 5:6
**lingered** [1] - 5:17
**list** [6] - 17:2, 17:3, 17:4, 18:23, 19:2, 32:21
**live** [4] - 30:7, 30:12, 30:25, 34:24
**lives** [1] - 30:3
**LLP** [1] - 1:15
**logs** [1] - 32:8
**look** [5] - 6:16, 7:13, 7:18, 28:9, 36:22
**looked** [1] - 23:18
**looking** [1] - 23:8
**looks** [4] - 16:18, 16:23, 17:2, 27:16
**Louise** [2] - 28:10, 28:23
**lying** [1] - 19:15

## M

**maddy** [1] - 2:23
**MADELINE** [1] - 1:14
**mail** [4] - 20:21, 21:10, 22:13, 22:24
**mails** [9] - 16:11, 20:22, 21:3, 28:9, 28:17, 28:18, 29:3, 29:10, 29:16
**man** [1] - 30:12
**manager** [3] - 26:4, 26:17, 27:8
**March** [1] - 7:9
**mark** [2] - 26:3, 26:7
**marked** [2] - 16:10, 26:19
**markers** [1] - 25:20
**master** [1] - 18:23
**material** [2] - 17:21, 19:22
**matter** [3] - 5:16, 31:21, 39:5
**matters** [1] - 38:4
**Matulis** [1] - 2:24
**MATULIS** [2] - 1:14, 2:23
**may-call** [2] - 18:22, 19:2
**Mayor** [2] - 22:14, 28:8
**Mayor's** [4] - 28:6, 28:10, 28:15, 28:21
**McCAFFERTY** [1] - 1:9
**media** [2] - 24:17, 25:15
**meet** [8] - 10:19, 11:13, 13:15, 16:17, 35:2, 35:5, 35:6, 37:4
**meeting** [8] - 2:4, 5:10, 5:11, 14:11, 15:2, 15:7, 29:1, 35:4
**meetings** [3] - 17:12, 17:16, 18:1
**memory** [2] - 15:8, 23:3
**mentioned** [1] - 22:22
**middle** [1] - 30:6
**might** [6] - 5:4, 13:13, 15:14, 18:7, 33:16, 33:18
**Mill's** [1] - 18:5
**mine** [2] - 22:22, 35:1
**minimize** [1] - 5:1
**minor** [1] - 27:19
**minute** [2] - 4:20, 34:11
**misremembering** [1] - 12:16
**moment** [2] - 5:25, 21:15
**Monday** [4] - 3:15, 4:4, 15:14, 38:4
**monitoring** [1] - 28:14
**Moore** [3] - 19:7, 19:16, 20:15
**morning** [9] - 5:7, 5:8, 33:14, 33:16, 33:18, 34:1, 34:2, 34:18, 35:6
**mornings** [1] - 5:11
**mostly** [1] - 12:10

**motion** [3] - 8:24, 12:3, 17:5
**motivated** [1] - 18:3
**motivation** [3] - 5:10, 10:18, 11:5
**motive** [1] - 10:14
**move** [5] - 5:18, 18:21, 33:19, 33:24, 34:5
**MR** [114] - 2:11, 2:15, 2:20, 3:1, 3:19, 4:6, 4:8, 4:9, 4:12, 6:10, 6:12, 6:17, 7:3, 7:8, 7:16, 8:8, 8:11, 8:15, 9:22, 10:22, 12:1, 12:8, 12:21, 13:8, 13:17, 14:7, 14:14, 14:24, 15:2, 15:8, 15:14, 15:18, 15:24, 16:9, 16:14, 17:11, 18:10, 18:13, 18:15, 19:1, 19:3, 19:6, 19:8, 19:10, 19:18, 19:23, 20:5, 20:7, 20:9, 20:12, 20:24, 21:12, 22:3, 22:6, 22:8, 22:10, 22:13, 22:19, 22:21, 23:5, 23:7, 23:12, 23:16, 23:20, 23:24, 24:19, 25:12, 25:18, 26:5, 26:9, 26:12, 26:16, 26:21, 27:13, 27:18, 27:19, 28:5, 29:4, 29:8, 29:15, 29:18, 29:24, 30:3, 30:9, 30:15, 31:3, 31:9, 31:10, 31:13, 31:17, 32:3, 32:10, 32:15, 32:18, 32:20, 33:2, 33:7, 33:10, 34:7, 34:8, 34:12, 34:16, 35:17, 36:2, 36:16, 36:24, 37:2, 37:10, 37:12, 37:15, 37:19, 37:20, 38:1, 38:2
**MS** [1] - 2:23

## N

**name** [2] - 2:15, 17:3
**Nashua** [7] - 8:25, 9:7, 9:20, 11:13, 11:22, 12:18, 13:11
**nature** [1] - 7:13
**necessary** [1] - 20:10
**need** [17] - 3:15, 9:4, 12:6, 15:18, 17:21, 19:14, 21:14, 25:2, 25:5, 26:23, 27:11, 27:15, 28:19, 29:12, 35:5, 35:9, 37:4
**needed** [1] - 30:25
**needs** [3] - 4:18, 11:12, 31:5
**Negron** [1] - 26:18
**new** [2] - 5:13, 20:19
**NEW** [1] - 1:1
**next** [4] - 5:6, 28:21, 30:14, 35:16
**NH** [1] - 1:21
**Nieves** [10] - 7:4, 8:18,

8:23, 9:9, 10:11, 10:19, 10:20, 11:7, 11:13, 13:16
**night** [1] - 29:1
**NO** [1] - 1:2
**nominated** [1] - 28:8
**non** [1] - 12:13
**non-public** [1] - 12:13
**noted** [1] - 16:6
**nothing** [3] - 4:18, 8:22, 26:25
**noticed** [1] - 5:15
**notify** [1] - 37:8
**number** [9] - 2:8, 6:7, 6:9, 7:21, 7:23, 32:4, 35:19, 35:20
**numbers** [1] - 36:4

## O

**o'clock** [1] - 33:23
**object** [1] - 31:14
**objected** [1] - 6:3
**objecting** [5] - 16:15, 22:9, 31:4, 31:7, 31:23
**objection** [7] - 6:8, 6:23, 7:10, 12:3, 18:7, 24:6, 31:18
**objections** [6] - 6:22, 15:22, 21:25, 24:2, 24:12, 36:6
**objective** [5] - 9:19, 10:9, 10:10, 10:21, 11:12
**objectively** [1] - 7:21
**obsessed** [1] - 28:13
**obviously** [6] - 10:14, 11:15, 23:13, 32:13, 35:19, 36:9
**occupying** [1] - 12:12
**occurs** [1] - 5:2
**offense** [2] - 13:6, 13:8
**offenses** [1] - 31:11
**offer** [1] - 17:23
**offered** [2] - 17:14, 20:17
**offering** [1] - 32:23
**Office** [1] - 1:13
**office** [4] - 28:11, 28:15, 28:21, 37:24
**officer** [1] - 13:4
**Officer** [1] - 13:5
**officer's** [4] - 9:6, 12:19, 13:13, 13:23
**officers** [2] - 11:9, 18:25
**Official** [1] - 1:19
**officials** [1] - 22:15
**often** [1] - 12:23
**once** [5] - 18:8, 24:24, 25:9, 25:10, 36:20
**one** [18] - 5:14, 6:3, 6:11, 6:22, 7:21, 10:1, 11:1, 12:23, 19:16, 22:9, 24:20, 25:18, 27:15, 28:3, 28:5, 28:24,

34:16, 34:17
**ones** [1] - 21:7
**open** [1] - 2:2
**opened** [1] - 19:4
**opening** [1] - 3:11
**openings** [1] - 35:21
**opinion** [2] - 17:6, 19:11
**opinions** [1] - 32:23
**opportunity** [1] - 8:16
**opposed** [1] - 7:9
**opposition** [1] - 7:4
**order** [7] - 5:13, 5:21, 5:22, 25:2, 25:3, 25:11
**ordinarily** [1] - 9:12
**Ortolano** [13] - 2:7, 2:12, 2:14, 10:1, 14:12, 16:1, 17:7, 17:13, 17:18, 17:25, 21:11, 22:11, 25:1
**ORTOLANO** [2] - 1:3, 1:13
**ortolano** [1] - 9:1
**Ortolano's** [3] - 18:19, 20:3, 20:13
**otherwise** [1] - 8:2
**outstanding** [1] - 4:20
**overrule** [1] - 31:18
**oversight** [1] - 17:10
**own** [1] - 34:23
**owner** [1] - 12:24

## P

**p.m** [3] - 5:5, 34:18, 36:14
**page** [2] - 16:7, 36:7
**paperwork** [1] - 19:17
**Paralegal** [1] - 1:23
**paralegal** [1] - 2:16
**paraphrasing** [1] - 13:6
**part** [3] - 7:25, 14:24, 16:24
**particular** [1] - 30:13
**parties** [1] - 34:9
**Patrolman** [1] - 18:23
**pending** [1] - 38:4
**people** [14] - 9:5, 9:6, 11:13, 12:10, 13:12, 13:23, 13:24, 14:1, 14:17, 16:2, 19:13, 20:14, 37:23
**perhaps** [2] - 3:14, 9:8
**person** [7] - 12:12, 33:5, 33:13, 34:14, 34:15, 37:23
**perspective** [1] - 25:6
**phone** [2] - 28:22, 28:24
**pick** [3] - 3:5, 3:7, 3:10
**picked** [3] - 3:7, 24:24, 25:9
**piece** [3] - 5:15, 13:15, 35:1
**placeholder** [1] - 4:19
**plaintiff** [10] - 1:4, 2:10, 6:3, 6:25, 7:17, 10:13, 13:20, 21:4, 21:6, 25:21
**PLAINTIFF** [1] - 1:12
**plaintiff's** [6] - 6:8, 6:21,

17:3, 25:19, 25:25, 26:11
**plan** [1] - 33:13
**play** [2] - 10:8, 33:1
**Pleasant** [1] - 1:20
**pleasantly** [1] - 3:23
**PLLC** [1] - 1:16
**point** [2] - 8:19, 13:4
**police** [16] - 7:1, 9:7, 9:12, 12:17, 12:19, 12:23, 13:11, 13:12, 13:17, 13:23, 14:1, 14:7, 14:22, 30:24, 31:2, 32:8
**Police** [1] - 9:1
**policy** [14] - 6:24, 12:17, 13:12, 13:25, 14:4, 14:13, 14:15, 14:16, 14:17, 14:21, 15:3, 15:6, 15:7
**politely** [1] - 25:10
**position** [2] - 8:21, 9:10
**possession** [1] - 29:21
**possible** [3] - 28:20, 33:15, 35:22
**posting** [1] - 25:14
**posts** [1] - 24:17
**potentially** [3] - 17:8, 19:22, 33:24
**practical** [1] - 25:23
**practice** [1] - 27:11
**prefer** [2] - 24:9, 34:4
**premise** [2] - 7:23, 8:2
**premises** [1] - 12:25
**prepping** [1] - 4:14
**present** [4] - 1:23, 29:13, 32:8, 36:17
**presentation** [1] - 27:2
**presented** [1] - 16:12
**presenting** [1] - 32:12
**pressure** [1] - 9:14
**presume** [1] - 31:7
**pretrial** [2] - 2:7, 5:22
**PRETRIAL** [1] - 1:8
**pretrials** [1] - 4:1
**pretty** [1] - 8:19
**priority** [1] - 35:1
**probable** [2] - 8:4, 10:20
**problem** [4] - 25:23, 29:4, 36:7, 36:25
**proceedings** [2] - 2:2, 39:4
**process** [1] - 14:2
**processed** [1] - 6:20
**produced** [3] - 29:16, 29:18, 29:21
**proof** [2] - 11:12, 11:17
**properly** [1] - 10:7
**property** [1] - 28:17
**proposed** [2] - 6:3, 6:8
**prosecuting** [2] - 6:25, 12:25
**PROULX** [2] - 1:19, 39:9

**prove** [4] - 10:18, 10:22, 10:24, 11:3
**provide** [1] - 26:19
**provided** [2] - 26:12, 26:17
**proximity** [1] - 30:4
**public** [3] - 12:11, 12:13, 24:25
**publicity** [1] - 25:7
**published** [1] - 13:20
**purports** [1] - 16:22
**put** [6] - 5:20, 7:9, 24:12, 32:7, 35:23, 36:18

## Q

**qualified** [1] - 5:18
**questions** [1] - 33:11
**quick** [1] - 33:11
**quite** [1] - 35:23

## R

**RACIOPPI** [2] - 1:23, 2:15
**Racioppi** [1] - 2:16
**raise** [1] - 36:12
**rationality** [1] - 8:2
**read** [3] - 7:11, 15:9, 15:11
**reading** [1] - 12:21
**reads** [1] - 6:18
**ready** [2] - 37:8, 37:9
**real** [1] - 28:11
**really** [5] - 5:10, 8:18, 24:15, 35:9, 36:18
**reason** [7] - 9:2, 13:19, 19:10, 20:1, 20:3, 28:4, 37:6
**reasonable** [1] - 12:2
**reasoning** [1] - 4:21
**reasons** [2] - 12:23, 35:4
**received** [2] - 25:21, 27:20
**receiving** [1] - 21:6
**recently** [2] - 15:9, 24:17
**recollection** [1] - 3:8
**record** [11] - 2:10, 4:22, 12:16, 13:2, 14:10, 15:1, 21:8, 21:10, 24:12, 25:12, 31:19
**records** [8] - 28:6, 28:15, 30:15, 30:22, 30:23, 31:2, 31:9
**redacted** [2] - 16:22, 23:9
**redactions** [2] - 15:22, 23:13
**referred** [1] - 19:24
**refuse** [1] - 37:23
**refusing** [1] - 12:13
**reinspected** [1] - 28:18
**reissue** [1] - 5:21
**relevance** [2] - 18:6, 31:15
**relevant** [8] - 10:12, 10:15, 10:17, 17:8, 19:22, 20:11, 23:22, 25:8

**relieve** [1] - 28:4
**relying** [1] - 7:3
**remember** [6] - 13:1, 14:25, 15:2, 15:4, 17:5, 19:19
**remembering** [1] - 15:1
**removed** [1] - 5:15
**renditions** [1] - 34:16
**report** [1] - 13:5
**REPORTED** [1] - 1:19
**Reporter** [1] - 1:19
**represent** [1] - 2:12
**represented** [2] - 33:2, 33:5
**representing** [1] - 19:13
**reputation** [2] - 17:14, 17:19
**reputational** [3] - 18:11, 18:13, 18:16
**request** [7] - 8:17, 9:6, 12:19, 13:13, 26:10, 29:19, 33:3
**required** [4] - 9:9, 9:19, 11:6, 11:23
**requirement** [1] - 9:16
**resolve** [3] - 4:20, 5:4, 5:5
**respect** [10] - 10:11, 10:13, 10:19, 15:22, 17:1, 17:23, 20:18, 30:15, 33:12, 36:13
**respectfully** [2] - 9:22, 24:24
**respond** [1] - 12:7
**responded** [2] - 16:3, 18:25
**response** [3] - 15:14, 15:25, 28:11
**responsible** [1] - 11:25
**rest** [1] - 33:10
**restrooms** [1] - 12:11
**result** [1] - 23:3
**retaliatory** [3] - 7:24, 8:3, 10:14
**review** [1] - 28:15
**reviewed** [1] - 31:6
**revocation** [3] - 33:22, 33:24, 34:5
**rewrote** [1] - 5:20
**right-to-know** [5] - 29:16, 29:19, 29:20, 31:11, 33:3
**Roach** [1] - 13:5
**role** [2] - 10:7, 33:1
**rule** [2] - 20:2, 24:11
**ruled** [4] - 8:18, 13:14, 17:20, 18:23
**ruling** [2] - 8:5, 36:11
**running** [2] - 4:23, 34:25
**Russ** [1] - 2:20
**RUSSELL** [1] - 1:14

## S

**safe** [1] - 3:21

**Salem** [1] - 30:3
**SAMSON** [1] - 1:23
**Samson** [1] - 2:16
**saving** [1] - 5:9
**saw** [1] - 5:19
**scenario** [1] - 3:17
**schedule** [1] - 34:22
**scheduled** [1] - 4:12
**scheduling** [1] - 33:11
**seated** [1] - 2:5
**second** [5] - 7:2, 25:17, 25:18, 27:16, 36:19
**secured** [1] - 24:21
**see** [14] - 3:5, 8:5, 13:5, 19:22, 21:22, 23:9, 23:11, 29:10, 30:7, 34:5, 35:21, 36:19, 37:4, 38:4
**seeing** [4] - 6:16, 18:6, 18:20, 30:13
**seek** [1] - 10:16
**select** [1] - 18:1
**selection** [11] - 4:2, 4:4, 5:2, 5:13, 5:17, 5:20, 5:21, 24:4, 37:2, 37:5, 38:5
**send** [1] - 5:12
**sending** [1] - 28:18
**sends** [1] - 21:7
**sense** [13] - 6:1, 6:2, 13:25, 14:1, 14:4, 15:12, 18:8, 24:10, 26:6, 27:11, 30:7, 32:12, 34:22
**sent** [1] - 22:14
**sentence** [1] - 5:16
**separate** [1] - 20:22
**Sergeant** [1] - 18:24
**session** [1] - 2:6
**set** [3] - 25:21, 26:11, 26:23
**sheets** [1] - 26:13
**Shirley** [1] - 1:16
**shot** [1] - 12:1
**show** [8] - 9:4, 9:11, 11:12, 11:15, 16:19, 18:3, 29:5, 31:25
**showing** [1] - 35:1
**significant** [1] - 13:15
**similar** [1] - 31:11
**simply** [2] - 16:17, 17:10
**Sisti** [2] - 33:6, 33:7
**sitting** [1] - 24:7
**situation** [2] - 13:24, 30:5
**six** [2] - 20:25, 22:13
**slightly** [1] - 34:21
**smoothly** [3] - 3:9, 4:23, 24:10
**so-called** [1] - 12:9
**social** [2] - 24:17, 25:14
**solve** [1] - 4:25
**sometimes** [3] - 5:7, 9:22, 32:22

**somewhere** [1] - 34:19
**soon** [2] - 28:20, 38:3
**sooner** [1] - 3:23
**sorry** [5] - 2:3, 7:16, 16:9, 22:5, 32:3
**sort** [5] - 3:17, 4:25, 25:3, 30:20, 32:7
**sound** [2] - 3:18, 34:6
**sounds** [1] - 33:15
**space** [1] - 12:13
**specific** [2] - 23:10, 31:6
**spend** [3] - 21:14, 27:15, 32:1
**spending** [1] - 24:15
**stamped** [2] - 19:17, 21:7
**stand** [1] - 8:17
**standard** [1] - 13:16
**start** [10] - 3:6, 3:10, 32:23, 34:3, 34:6, 35:3, 35:13, 37:7
**started** [1] - 28:7
**starting** [1] - 21:1
**starts** [1] - 37:3
**state** [1] - 37:17
**statement** [1] - 6:23
**statements** [5] - 3:11, 15:24, 16:1, 16:4, 24:25
**STATES** [2] - 1:1, 1:10
**States** [1] - 1:20
**status** [5] - 4:2, 4:5, 4:15, 5:23, 15:12
**stay** [2] - 11:6, 35:14
**staying** [1] - 34:18
**Steve** [1] - 7:25
**Steven** [1] - 2:8
**STEVEN** [2] - 1:5, 1:14
**stick** [4] - 25:19, 25:20, 26:21, 26:25
**stickers** [6] - 25:22, 25:24, 26:22, 26:23, 27:6, 27:7
**still** [5] - 5:24, 10:22, 16:22, 30:17, 30:24
**stipulation** [1] - 30:19
**stipulations** [1] - 35:7
**stray** [1] - 15:22
**streamline** [1] - 35:11
**Street** [3] - 1:20, 28:20, 28:22
**strike** [1] - 17:22
**subjective** [6] - 7:13, 7:18, 10:10, 10:17, 11:19, 11:23
**subjectively** [1] - 9:17
**subjects** [1] - 17:9
**subpoena** [1] - 27:20
**substantive** [1] - 5:16
**sufficient** [1] - 13:14
**suggest** [4] - 11:18, 15:14, 33:15, 37:4
**suggested** [1] - 33:12
**suggesting** [2] - 7:17, 7:20

**suing** [2] - 11:9, 11:10
**summary** [2] - 12:16, 13:2
**supplied** [1] - 26:9
**supply** [1] - 27:5
**support** [1] - 7:4
**supposed** [5] - 7:18, 26:2, 26:3, 26:6, 27:5
**Supreme** [1] - 16:11
**surprised** [1] - 3:23
**suspect** [2] - 4:12, 10:6
**sustain** [1] - 18:7
**swiftly** [1] - 3:8
**sympathetic** [1] - 21:19

## T

**table** [2] - 36:19
**talks** [2] - 28:12, 28:13
**tax** [2] - 28:6, 28:15
**taxpayer** [1] - 28:13
**ten** [1] - 26:4
**termination** [1] - 23:3
**terms** [6] - 4:24, 5:10, 10:15, 12:25, 24:25, 32:12
**territory** [1] - 21:20
**test** [3] - 10:9, 10:10, 10:21
**testified** [2] - 9:7, 13:18
**testify** [5] - 12:17, 13:18, 17:11, 17:17, 30:1
**testimony** [4] - 14:8, 18:5, 18:7, 18:18
**THE** [124] - 1:9, 1:12, 1:14, 1:16, 2:3, 2:6, 2:13, 2:19, 2:22, 2:25, 3:3, 3:21, 4:7, 4:11, 4:14, 6:11, 6:13, 7:2, 7:6, 7:15, 8:7, 8:9, 8:13, 8:25, 10:9, 11:8, 12:5, 12:15, 13:1, 13:10, 13:22, 14:9, 14:16, 15:1, 15:5, 15:10, 15:16, 15:20, 16:5, 16:13, 16:16, 17:20, 18:12, 18:14, 18:18, 19:2, 19:4, 19:7, 19:9, 19:16, 19:19, 20:1, 20:6, 20:8, 20:10, 20:16, 21:9, 21:13, 22:5, 22:7, 22:9, 22:11, 22:17, 22:20, 22:23, 23:6, 23:11, 23:13, 23:18, 23:22, 24:1, 24:23, 25:16, 26:3, 26:6, 26:15, 26:17, 26:25, 27:2, 27:4, 27:5, 27:8, 27:9, 27:10, 27:15, 28:3, 29:3, 29:7, 29:9, 29:17, 29:23, 29:25, 30:5, 30:11, 31:1, 31:14, 31:22, 32:4, 32:11, 32:16, 32:19, 33:1, 33:5, 33:8, 33:18, 33:21, 33:22, 33:23, 33:25, 34:3, 34:5, 34:10, 34:13, 34:23, 35:22, 36:3, 36:22, 36:25, 37:3, 37:11, 37:13, 37:16,

37:25, 38:3
**themselves** [1] - 2:9
**theory** [1] - 14:6
**therefore** [2] - 10:10, 11:21
**Thereupon** [1] - 38:7
**they've** [2] - 12:19, 25:6
**thick** [1] - 23:19
**thoughts** [1] - 32:24
**three** [3] - 16:2, 23:20, 28:2
**throughout** [2] - 5:3, 36:5
**thrown** [1] - 18:16
**thumb** [2] - 26:20, 27:6
**thumbs** [1] - 4:25
**today** [3] - 25:13, 26:18, 28:25
**top** [1] - 35:1
**torture** [1] - 29:1
**trail** [1] - 4:19
**transcription** [1] - 39:4
**transmittal** [1] - 16:11
**travel** [1] - 34:24
**traveling** [1] - 8:12
**treated** [5] - 10:1, 17:13, 18:1, 18:5, 23:2
**treatment** [2] - 18:20, 23:1
**trespass** [10] - 6:20, 6:25, 8:22, 11:1, 13:20, 13:24, 22:19, 31:11, 33:6, 37:23
**trespassed** [1] - 12:20
**trespasses** [1] - 9:25
**trespassing** [1] - 14:5
**trial** [22] - 3:6, 3:13, 4:23, 5:3, 5:6, 6:1, 18:2, 18:8, 21:15, 22:1, 22:2, 24:5, 24:10, 26:4, 27:22, 30:6, 30:8, 30:13, 34:17, 35:3, 36:5, 36:12
**trialreporters@hush.com** [1] - 1:22
**truthful** [1] - 19:13
**try** [2] - 30:16, 36:14
**trying** [4] - 4:25, 7:11, 19:17, 24:8
**turns** [1] - 4:17
**twiddling** [1] - 4:25
**two** [7] - 7:23, 18:24, 20:14, 24:19, 27:22, 28:1, 35:17
**typically** [1] - 9:20

## U

**ultimate** [1] - 8:25
**ultimately** [13] - 9:9, 11:10, 11:15, 11:24, 13:10, 14:3, 15:11, 17:22, 18:6, 20:10, 21:18, 21:24, 32:5
**under** [3] - 9:9, 30:2, 37:17
**underground** [1] - 34:19
**understood** [1] - 26:21
**undisputed** [1] - 13:18

**undoubtedly** [1] - 29:25
**UNITED** [2] - 1:1, 1:10
**United** [1] - 1:20
**unless** [2] - 11:24, 35:4
**unlikely** [2] - 20:17, 30:12
**up** [13] - 5:9, 7:15, 8:5, 9:4, 16:21, 19:19, 19:21, 21:22, 22:1, 24:13, 28:22, 35:15, 37:12
**upset** [1] - 17:13
**Upton** [1] - 1:15

## V

**verdict** [1] - 8:24
**versus** [1] - 2:8
**via** [1] - 34:14
**video** [1] - 34:14
**Vincent** [5] - 20:13, 20:18, 21:4, 21:6, 21:11
**voir** [1] - 25:8
**vs** [1] - 1:4

## W

**wait** [1] - 24:4
**waiting** [1] - 24:8
**warn** [1] - 18:7
**watch** [1] - 29:2
**week** [1] - 3:22
**weekend** [1] - 3:15
**whittle** [1] - 26:7
**will-call** [3] - 17:2, 17:3
**William** [1] - 2:12
**WILLIAM** [1] - 1:12
**willing** [1] - 27:16
**witness** [10] - 17:15, 20:17, 29:14, 30:1, 30:7, 30:12, 30:14, 31:1, 32:22, 36:20
**witnesses** [7] - 3:11, 17:1, 17:2, 18:22, 25:25, 27:20, 32:21
**woman** [1] - 19:8
**women** [1] - 19:16
**word** [1] - 14:2
**works** [2] - 15:16, 30:3
**worst** [1] - 3:17
**worst-case** [1] - 3:17
**writes** [1] - 28:10
**writing** [2] - 22:24, 27:10
**written** [1] - 35:23
**wrote** [3] - 14:4, 22:11, 22:13

## Y

**years** [2] - 28:2
**yesterday** [3] - 7:10, 8:11, 8:12
**yourself** [1] - 29:2

## Z

**Zoom** [1] - 33:13