UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| **Laurie Ortolano,**     **Plaintiff** ) ) ) ) | ) |
| V. | ) Civil Action No. 22-cv-00326-LM |
| **Steven Bolton and Celia Leonard**     **Defendants** | ) ) ) ) ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE REGARDING JURY INSTRUCTION NO. 4**

Defendants' response rests on a fundamental misstatement of the *Nieves* exception and an unduly narrow view of the evidence the jury may consider. When *Gonzalez v. Trevino* is read as a whole – including its concurring opinions – it confirms that Defendants' proposed instruction is legally incorrect and would improperly exclude precisely the type of objective evidence the Supreme Court has authorized juries to evaluate.

**I.    Defendants Cite No Authority for a Subjective "Knowledge of Comparators" Requirement**

Defendants identify no case law – from the Supreme Court, the First Circuit, or any other court – holding that a plaintiff invoking the *Nieves* exception must prove that the defendants were aware of prior comparable incidents or historical enforcement practices. That omission is dispositive. The Supreme Court has held: "The only express limit we placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

The Court expressly rejected interpretations of *Nieves* that impose additional evidentiary hurdles beyond objectivity or that take an "overly cramped view" of the exception. *Id.* at 658–660.

1

Nothing in *Gonzalez* or *Nieves v. Bartlett*, 587 U.S. 391 (2019), conditions admissibility or jury consideration of comparator or practice evidence on defendants' subjective awareness. Defendants' proposed instruction invents such a requirement.

## II. The Nieves Exception Asks Whether the Plaintiff Engaged in Conduct Unlikely to Result in Arrest

As clarified in *Gonzalez v. Trevino*, the *Nieves* exception turns on an objective inquiry: whether the plaintiff engaged in the type of conduct that ordinarily does not result in arrest or prosecution, notwithstanding the existence of probable cause. Justice Alito's concurrence makes this explicit: "The *Nieves* exception asks whether the plaintiff engaged in the type of conduct that is unlikely to result in arrest or prosecution." *Gonzalez v. Trevino*, 602 U.S. 653, 676 (2024) (Alito, J., concurring).

That framing is critical here. Plaintiff does not argue that probable cause was impossible as a matter of law. Rather, she has presented evidence that individuals who leave City Hall when directed by police are not typically arrested for criminal trespass, rendering her arrest an objective departure from ordinary practice. Defendants' proposed instruction improperly shifts the inquiry away from this objective question and instead asks whether Defendants subjectively knew of comparator incidents – an element the Supreme Court has never required.

## III. Objective Evidence Under Nieves Is Not Limited to Comparator Surveys or Defendant Awareness

Defendants' response assumes that the *Nieves* exception may be satisfied only through proof that the defendants were aware of specific prior incidents involving similarly situated individuals. That assumption is flatly inconsistent with *Gonzalez*. The Supreme Court reiterated that: "The only express limit we placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective." *Id.* at 658 (majority opinion).

The concurring opinions then make clear that objective evidence is not limited to statistical surveys or one-to-one comparator cases. As Justice Alito explained, such evidence may also include: "officers' employment of an unusual, irregular, or unnecessarily onerous arrest procedure," as well as "the timing of and events leading up to a plaintiff's arrest." *Id.* at 676 (Alito, J., concurring).

Thus, under *Gonzalez*, a jury may consider not only whether arrests typically occur for similar conduct, but also whether the procedures used, the delay in arrest, or the surrounding circumstances objectively signal anomalous enforcement. Nothing in *Nieves* or *Gonzalez* conditions the jury's consideration of such evidence on defendants' subjective awareness of past enforcement practices. To the contrary, the Court emphasized that the objective framework exists precisely to avoid collapsing the analysis into a subjective intent inquiry.

## IV. **Plaintiff Has Offered Multiple Forms of Objective Evidence of Anomalous Enforcement**

As in *Gonzalez*, Plaintiff here has offered several categories of objective evidence supporting the inference that her arrest was atypical and retaliatory, including:

a. evidence that the Nashua PD "philosophy" is to criminally charge trespass incidents only when the police request an individual to leave a property and the individual refuses to do so – *see* pp. 64 – 69 of Chief Carignan deposition testimony.

b. contemporaneous police records from January 22, 2021 stating that there were "no offenses alleged or apparent" when Plaintiff complied with the officer's directive and left City Hall; – *see* p.2 of Exhibit 47'

c. evidence that Defendants continued to press for prosecution after being informed that arrest was inconsistent with ordinary practice;

d. evidence that the investigation was reopened only after repeated lobbying by the Defendants;

e. evidence of a significant temporal gap between the incident and the arrest;

3

    f. evidence that Defendant Bolton called the police in a separate, unrelated trespass incident because of an unruly citizen at a public meeting that refused to leave and did so when police responded – yet in that instance Defendant Bolton did not follow up and insist the citizen be investigated or arrested – *see* Deposition of Steven Bolton at pp. 15-17.

    g. evidence that Defendant Leonard took photographs of the Plaintiff during the incident that ended up published in the press alongside a quotation by Defendant Leonard that she would be in touch with the police (after being informed the police were taking no further action to the trespass);

    h. sworn testimony from Nashua Police Department leadership that arrests are not ordinarily made under such circumstances; and,

    i. testimony that the matter was initially considered resolved and was later reopened only after continued involvement by the City's Legal Department.

The concurring opinions expressly recognize that these categories of evidence – independently or collectively – may support the conclusion that a plaintiff: "was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 676 (quoting *Nieves*, 587 U.S. at 407).

On remand in *Gonzalez*, the Supreme Court instructed the lower courts to consider "the full scope of objective evidence" offered to establish differential treatment. Defendants' proposed instruction would do the opposite by artificially narrowing the evidentiary field.

    **V.**     **Justice Alito's Concurring Opinion Recognized the Reality of Multi-Actor Retaliatory Arrests**

The concurring opinions are especially instructive in cases – like this one – where the machinery of criminal justice operates through multiple officials. In Justice Alito's concurring opinion, he observed that "The machinery of criminal justice often works through multiple government officers… Thus, it is often challenging to draw a straight line between the plaintiff's protected speech and the defendant from whom he seeks recovery." *Id.* at 670–71 (Alito, J., concurring).

4

This observation directly undermines Defendants' attempt to insulate themselves as "non-arresting" actors. The concurrence recognizes that retaliatory causation may operate through influence, pressure, or persistence, even where the final arrest decision is made by another official or pursuant to a warrant. That reality explains why *Nieves* relies on objective evidence of anomalous enforcement, rather than proof that any single defendant both knew historical practices and personally executed the arrest.

### VI. Defendants' Proposed Instruction Conflicts with Supreme Court Guidance and This Court's Prior Ruling

Defendants' proposed instruction would require Plaintiff to prove that Defendants were aware of prior comparable incidents before the jury may consider objective practice evidence. Such a requirement:

- has no basis in *Nieves* or *Gonzalez*;
- conflicts with the Supreme Court's instruction to consider the full scope of objective evidence;
- improperly collapses an objective inquiry into a subjective knowledge test; and
- contradicts this Court's summary-judgment ruling, which held that a reasonable jury could find that Defendants' conduct was a but-for cause of Plaintiff's arrest based on objective departures from ordinary practice.

### VII. Conclusion

When *Gonzalez v. Trevino* is read as a whole – including its concurring opinions – it confirms that the *Nieves* exception asks whether the plaintiff engaged in conduct unlikely to result in arrest and permits proof through any form of objective evidence, including timing, procedures, and surrounding events. No showing of defendants' subjective awareness is required. Plaintiff respectfully requests that the Court reject Defendants' proposed modification and instruct the jury consistent with *Nieves* and *Gonzalez*.

| | |
|---|---|
| **Dated: January 27, 2026** | Respectfully Submitted, |
| | Plaintiff Laurie Ortolano. |
| | By her Attorney, |
| | |
| | */s/William Aivalikles* |
| | William Aivalikles, Esq. |
| | NH Bar #308 |
| | Law Office of William Aivalikles |
| | 253 Main Street |
| | Nashua, NH 03060 |
| | (603) 880-0303 |
| | william@nhtriallaw.com |

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

| | |
|---|---|
| **Dated: January 27, 2026** | */s/William Aivalikles* |
| | William Aivalikles, Esq. |