UNITED STATES DISTRICT COURT
CONCORD, NEW HAMPSHIRE
CASE NO. **22-CV-00326-LM**

---

**LAURIE ORTOLANO**,
                    Plaintiff

            vs.                          **February 2, 2026**

**STEVEN BOLTON AND CELIA LEONARD**
                    Defendants.

---

**FINAL PRETRIAL CONFERENCE**

BEFORE THE HONORABLE **LANDYA B. McCAFFERTY**,

UNITED STATES DISTRICT COURT JUDGE

---

**A P P E A R A N C E S**

FOR THE PLAINTIFF:     **WILLIAM E. AIVALIKLES**, ESQ
LAURIE ORTOLANO        Aivalikles Law Office

FOR THE DEFENDANT:     **RUSSELL F. HILLIARD**, ESQ
STEVEN BOLTON          **MADELINE K. MATULIS**, **ESQ**
                       Upton & Hatfield LLP

FOR THE DEFENDANT:     **BRIAN J.S. CULLEN**, ESQ
CELIA LEONARD          Cullen Collimore Shirley PLLC


REPORTED BY:           **GIZELLA BAAN-PROULX**, FCRR
                       Official Court Reporter
                       United States District Court
                       55 Pleasant Street
                       Concord, NH 03301
                       (603) 225-1454
                       Trialreporters@hush.com

Also present:
        SAMSON RACIOPPI, Paralegal

*P R O C E E D I N G S*

*(The following proceedings were held in open court.)*

**THE COURTROOM CLERK:**  Court is in session and has for consideration a status conference in Laurie Ortolano versus Bolton, et al., civil case number 22-CV-326-LM.

Can I have counsel identify themselves for the record, beginning with counsel for the plaintiff, please?

**MR. AIVALIKLES:**  Good morning, again, Your Honor, William Aivalikles for Laurie Ortolano, the plaintiff.

**THE COURT:**  Good morning.

Good morning, Ms. Ortolano.

**MR. HILLIARD:**  Good morning, Your Honor.  Russ Hilliard for the defendant Bolton.  Attorney Matulis had a conflicting assignment this morning, but she will be with us for the trial.

**THE COURT:**  Thank you.

**MR. CULLEN:**  Good morning, Your Honor.  Brian Cullen here on behalf of Celia Leonard who is here also.

**THE COURT:**  Good morning.

Good morning, Ms. Leonard.

Okay.  We're going to be in courtroom 4 for the trial, so if you want to go down to courtroom 4 and do anything in there, get a feel for it.

We're also going to pick the jury in there because we're picking another jury in courtroom 3.  And for reasons

that have to do with the two trials, courtroom 4 is where we'll start and end.  So we'll start our jury selection there.

Okay.  We're going to just take a second, and I had Vinny go ahead and put the headphones in front of you.

I know that during jury selection, you were familiar with how they worked and during the trial.

A couple of judges on this court have adopted this method -- I'm one of them -- for trial because what happens is you:  Object, Your Honor.  You briefly state the basis -- briefly -- or you simply say:  Objection, Your Honor, side bar.  And this is our side bar right here.

So you don't have to get up and come over to the side and get a court reporter there.  You just simply say:  Objection, side bar.  We all put these on.

So we're just going to test it so that you're very familiar with it.  It will work exactly the same way in courtroom 4.

And if you're not hearing something, including clients, let your attorney know.  We'll get you another set.  We have extra.  Sometimes they just don't work.

But you put them on and then you whisper like this.  Can you hear me?  Can everybody hear me?  The jury doesn't hear anything.

I'm listening to you make your arguments, and I'll give you a ruling.  And then we take them off.  Objection

sustained, and you keep going -- or overruled and you keep going.  Okay?

And so this can get a little tricky, but what you might want to -- you might be very fired up about some piece of evidence -- I doubt that would happen in this case -- and instead of having the jury hear all that, you just:  Judge, side bar, and then you're going to whisper, and you're close -- you'll be in courtroom 4.

I'm trying to remember, is the jury box -- whoever is closest to the jury, remember to whisper.  They will not hear it.  If you are whispering into this, only the people with these on will hear it.  And clients get to wear these and hear every word as well.

**MR. AIVALIKLES**:  Your Honor, I have a question.

**THE COURT**:  Yes?

**MR. AIVALIKLES**:  When you say side bar, are you indicating that we then set forth the basis for our objection rather than going up there?

**THE COURT**:  Correct.  Exactly.  So side bar is telling me that you have an objection; you need to put some things on the record that I need to hear.

If that starts to get abused in any way, and I will make my -- I'll rule on the objections, and we'll keep moving, but to the extent there's something I'm going to rely on your good judgment that you need to tell me that gives me more

evidence and gives me background and context so I can better rule on the objection then.  Side bar, Your Honor.  I'm very liberal with that.  I was liberal with that back in the analog days when you came to side bar, but this is much faster; the jury doesn't hear it so long as you whisper.

**MR. HILLIARD:**  So Your Honor, if someone says: Objection, they're saying it out loud?

**THE COURT:**  Yes.  Yes.

**MR. HILLIARD:**  And then --

**THE COURT:**  You don't have to think too much about it.  Just be your normal selves:  Objection, Your Honor, hearsay.

**MR. HILLIARD:**  And then if the other side wishes to respond to that, is that when we move to these mics?

**THE COURT:**  Yes, essentially, or:  Objection, Your Honor, side bar.

You may know there's some evidence coming in, there's some ruling I've made that you need to alert me to; I'm going to trust your judgment on that.

But to the extent you're going to tell me meaty arguments, substantive arguments, then side bar, Your Honor, we'll do this.  That's the only difference between this and the old days.  You're still doing the same thing; we're just moving things more quickly.

**MR. HILLIARD:**  Thank you.

**THE COURT:**  All right.  So everybody with me on these?

And there will be some moments. You know we'll have to remind each other: Put these on and whisper.

And there are some lawyers that I've done trials with who just can't whisper. And so the jury ends up hearing, and I have to constantly remind them: Keep your voice down, keep your voice down, whisper. So I will do that to protect you and your clients, to the extent I can hear you when I have these on.

Okay. I think I'm going to tell the jury -- I think juries -- if we prepare them for a longer trial, and it's shorter, and it's a five-day trial ends -- maybe even doing closing arguments even by Friday, let's say, they're thrilled, because it's ending sooner, and they make all their plans ahead of time.

So I'm thinking I'm going to tell them probably Tuesday of next week. We'll hear them groan during voir dire, but that's what, I think, makes the most sense.

Okay. Let me do this. We have got three objections to jury instructions. I am working on those so that I can have a draft to you -- draft -- the morning of jury selection, so tomorrow. And I want you to at least have a sense of, you know, those elements before we start and, obviously, we'll tweak those as we go. I'm not finalizing them, but I am going to give you the courtesy of seeing a draft version before you do your opening statements.

Okay.  There are three objections to jury instructions.  Let's start with those.  I'm going do it this way.  I'm going to tell you what I think about each one of the objections.  And then I'm going to have people tell me why I'm wrong.  All right.

So let's start with 210, the Nieves objection.  I agree with Ms. Ortolano on this based on the Nieves and Gonzalez cases.

The evidence on this particular evidence is objective and objective proof is subjective thought of either -- depends on what kind of case it is, but the subjective intent is irrelevant.

And it's indeed something that in Gonzalez they made clear, all the justices made clear:  It is objective evidence, and we did not intend by Nieves to open the door to subjective fine mens rea lines.

So my inclination is to grant that objection and not add the subjective element aspect.

So go ahead and tell me why I'm wrong on that.

**MR. CULLEN:**  Well, Your Honor, the reason you're wrong is -- I think there's a -- there's more nuance than this idea of subjective versus objective.  You're absolutely right that the Courts refer to this as subjective evidence.

The issue that the defendants have with this is objective evidence as to whom?  Because the ultimate question

isn't subjective question.

The Nieves exception is really focusing on the link between the alleged retaliatory intent of the defendants and the retaliatory act.

And what Nieves has said is that we can look to objective evidence that somebody has been treated disparately, and that's true. However, if our clients aren't the ones who have treated somebody disparately and have no knowledge that that's been treated differently, that's not a subjective -- that's not asking you to look at that subjectively. That's not saying, like, let's look at each of these 7 different trespass cases and find out why was that person not arrested and why was this person arrested? That would be subjective.

Our concern here is that these don't even relate to our clients because our clients at least have to know about either the police approach to trespass or they have to be the ones who treated somebody differently.

And so to look at the subjectively, you still have to look at it through the lens of what do our clients know, not just broadly what happens.

And I think it is important here because in Nieves we were talking about police officers, you know, treating people differently. In Gonzalez, I believe, it was the prosecutor, the specially-appointed prosecutor for the city treating somebody differently.

But here what we really have is just two people who have asked there to be an investigation -- at most one person, for certain, who asked for there to be an investigation into a crime. And there's not going to be any evidence that they had any knowledge that the -- that other people had been treated disparately.

So I think where we feel the Court errs is really on this issue of who is treating people differently, not is it objective versus subjective, but really who is the person treating differently.

And the purpose of our instruction was to make it clear to the jury that the Nieves exception is narrow. They call it a narrow qualification. And I think by allowing any disparate action by any city actor, we have overly broadened that exception beyond what the intent of the Court was in Nieves.

THE COURT: Okay. So you're saying the majority in Gonzalez versus Trevino, which is a more recent application of Nieves, where the Court says -- and I'm going to read it to you:

The only express limit we placed on the sort of evidence the plaintiff may present for that purpose is that it must be objective in order to avoid, quote, the significant problems that would arise from reviewing police conduct under a purely subjective standard.

The Court goes on -- in fact, Justice Alito goes on to talk about the fact that -- and I'm going to read from his concurrence that the machinery of criminal justice often works through multiple government offices.

An officer who makes an arrest may do so based on his own judgment, orders from a superior, or, as in this case, a warrant issued by a magistrate.  Thus it's often challenging to draw a straight line between the plaintiff's protected speech and the defendant from whom he seeks recovery.  In such circumstances it may be difficult to discern whether the officer acted improperly.

And then again, Justice Jackson in her concurrence reiterates the objective nature of this and that I -- judges should consider the full scope of objective evidence that the plaintiff offers to establish this differential treatment but at no point did they mean to open it up into a subjective inquiry.

So the way I read Gonzalez, which I think is helpful on this question -- it's helpful because it talks about the comparators and how identical or not they must be, but it also talks about this issue of objective evidence.

So I'm still -- I am still in agreement that it's an objective test, and I understand the argument you're making, but I think as to the adverse action.

As to the arrest, what is the objective evidence that

plaintiff is going to put on?  And that's the question, ultimately, that I rule on.  And I don't think the subjective -- while they may not have known that themselves, ultimately the question is whether or not there's objective evidence that this kind of activity does not generate an arrest.

So unless there's anything else that you would like to add?

**MR. CULLEN:**  No, Your Honor.  I do think that that's not the way this was supposed to work.

I -- in reading Gonzalez and reading Nieves, it was supposed to be an exception around the idea of arrests and things always being viewed objectively, and the intent was to allow a plaintiff who can show they've been treated disparately by the defendants, that they can evade the bar of probable cause and still prove their case.

And I think that the Court, respectfully, and the plaintiff have had a tendency to conflate our clients with the city as a whole.  And I think that's an ongoing issue that is probably going to come up again on other parts of instructions perhaps.  But I do think our clients have to be able to present evidence that they were unaware that there was any such thing.

And this Court has already ruled that they had no control over the policies and practices of the police department.  So I do think you hamstring our defendants when you don't allow the jury to be instructed that -- if our

clients don't know about it means nothing.

THE COURT: Where is the evidence in Gonzalez that the mayor or the prosecutor required subjective evidence to prove up the Nieves exception?

MR. CULLEN: They don't go into that level of -- that granular detail, but they do point out that the mayor himself appointed a special -- a private lawyer, I believe it was, in that case to follow up the prosecution.

So I think there there's -- I think there, there can be an assumption that the mayor is aware that this person is being treated differently than others. I don't think that assumption is at play in this case.

THE COURT: I think the question of whether or not Ms. Ortolano was arrested under circumstances that others doing the same thing would not have been is an objective test, based on everything that I have read. And no question on the other elements, causation, and substantial motivating factor, those elements -- no question that deals with subjectivity but an intent.

But with respect to this element, the Nieves exception I agree with document 210, so I'm not going to include subjectivity in my -- in that element, the Nieves exception element.

MR CULLEN: I understand. And I do just want to make crystal clear, I'm not disputing that's an objective test. I

think requiring defendants to know about it doesn't turn objective into subjective.  It's just a matter of knowledge, but I understand.

THE COURT:  Okay.  Nominal damages, this is document number 215 and let me just see if I understand this correctly.  Did you need to be heard?  I'm sorry.

MR. HILLIARD:  Just very briefly, on a broader point.  I'm hoping I don't need to stand up every time and say I join in Attorney Cullens' remarks.  As we work our way through the trial, Your Honor, I just want to be sure I'm not -- on behalf of Attorney Bolton, preserving objections or waiving objections, but obviously I join in those remarks.

THE COURT:  I think ultimately we should put that on the record before the trial so it's at the top of the record that ultimately you're going to make it clear to the Court and opposing counsel and the record, you're going to make it clear when you either need to add specific material or you do not join in that objection and the reasons; otherwise, I will allow you to simply join in each other's objections.

MR. HILLIARD:  Thank you very much, Your Honor.

THE COURT:  Is that clear?  Is that workable for you?

MR. AIVALIKLES:  Yes, Your Honor.  It is.

THE COURT:  All right.  So now this issue of nominal damages, I think that number 1, it's not required that I give that instruction.  I think that plaintiff could ask for the

instruction at the end for some reason.

I think also that if, in fact, plaintiff is going to ask for punitive damages instruction, which I think you are, you're not required to have nominal damages to have the punitive instruction.

Having said all that, does everybody agree with that general approach? So if you don't want a nominal damages instruction, then I don't think I have to give it. I can simply deal with that after the jury reaches a verdict and then you can ask me for a nominal damages instruction, if it's appropriate. Does defense agree with that?

**MR. CULLEN:** We do, Your Honor.

**THE COURT:** All right. And Attorney Hilliard remains seated, so he agrees with it as well -- is how we're going to go through this. Do you agree with that then? Does that take care of the objection to nominal damages? In essence, I'm agreeing with you do not have to have a nominal damages instruction.

**MR. AIVALIKLES:** Yes, Your Honor. I would agree with that, but again, we would reserve the right to make that request at the conclusion of the evidence.

**THE COURT:** Absolutely. So we may just -- what I do when I give you a draft is I put things in bold that are a maybe, it depends on how the evidence comes in. So I will -- I can include a nominal damages instruction in bold so that

you'll see how it would look were I to give it, and then we will remove that in our last charging conference.

Okay. So now, this one is interesting one, qualified immunity. And I want to hear from the defense on this question of qualified immunity, document number 216. I do not currently have a qualified immunity instruction in there.

It's a question of law, and I have the discretion to ask for an advisory verdict on it. I can also, if there are disputes of fact, that I would need to know the answer to in terms of resolving those disputes of fact with respect to qualified immunity, I can submit those to the jury for resolution.

I am not seeing the factual disputes the jury would need to resolve to determine the applicability of qualified immunity. So let me in on why I would include that and what you're looking for.

MR. CULLEN: We agree with you, Your Honor. I think if you look at our jury instruction requests, we dropped the footnote pointing out that this is discretionary in case the Court wanted to instruct the jury which would be one of your options. We're just as happy to have the Court decide the matter. It is a question of law, so we have included that in case the Court were inclined to have the jury make a decision.

THE COURT: Perfect.

MR. CULLEN: But we don't have any issue with the

Court making that decision.  And at this point, I cannot see any questions of fact that you'd need to add to the -- on a special verdict form.

THE COURT:  Well, then that takes care of document 216.  There's not going to be a qualified immunity instruction included.  I won't even include it in bold.  We'll have it ready to go if something happens, and you can ask for it at that time, but right now it won't be in the instructions.

MR. CULLEN:  Thank you, Your Honor.

THE COURT:  That's good.  We have gone through those three objections.

Now a motion to reconsider document 224.  And this one is Ms. Ortolano's as well.  It is asking me to reconsider the judicial estoppel question and raising -- or I would say more fully developing the judicial admission argument.  And I am -- hold on a second -- looking for my.

MR. AIVALIKLES:  Just for clarification, we have not asked that you reconsider the judicial estoppel argument.

THE COURT:  All right.  I have it right here.  Okay. So I don't need to get into that.  All right.

On this one you're going to have to tell me why I'm wrong.  I agree completely with the defendant's response to this that there is no evidence anywhere that there are admissions.  Did you submit requests for admissions?

MR. AIVALIKLES:  No, Your Honor.

**THE COURT:** Okay. I see that the City of Nashua admitted, but that's a different defendant.

And then they have admitted that they were corporation counsel, that that was their official position. That's not an admission to the element color of state law. So I'm definitely inclined to deny this. Tell me why I'm wrong about that.

**MR. AIVALIKLES:** Sure, Your Honor. I believe if you look at the answers by Defendant Bolton to paragraph 7, they admit at all times that the defendants, both of them, were employees of the city or they were corporate counsel.

They did not respond to exhibit -- I'm sorry -- paragraph 142 that raised the issue at all relevant times the Defendant City of Nashua, Bolton, Leonard, et al., were state actors subject to suit for violating Ortolano's rights under the U.S. Constitution. At all times the defendant city, which included Leonard and Bolton, acted under color of law. So that was paragraph 142 in the complaint.

The City of Nashua in their amended complaint -- answer, which is the document number 35, I believe, indicated defendants admit that the individual defendants were state actors and acting under the color of state law at all relevant times. And then they deny the rest of the allegation.

Now, the City of Nashua is their employer, so the City of Nashua is telling this Court and admitting to this Court that they were acting -- that would be Leonard and Bolton --

THE COURT:  All of what you're saying is true:  They were employed there, but that is not the same as proving the element of under the color of state law.

MR. AIVALIKLES:  Well, they admitted that.

THE COURT:  These are different defendants.  So the admissions of a defendant who is no longer in the case do not bind these individual defendants.

MR. AIVALIKLES:  I understand.  I understand what the Court is saying, but again --

THE COURT:  I just want to make sure you understand that's an element of the case that ultimately you will have to prove, and it would have been a motion for summary judgement that they acted under color of state law and then tell me all the reasons why the evidence shows indisputably that they would not have taken this action were they not government officials.

That may be something that ultimately you're able to prove easily at trial, but at this point you didn't move for summary judgment on that element.  I -- just being employed -- and there's a case, Martínez versus Colon, where in that very case it's a police officer who shoots somebody.  He's off duty. Ultimately, it's color of state law even though he's clearly employed as a police officer.  He's actually even on duty in that case.  But again, color of state law is a separate element.

And let me ask Attorney Cullen:  Am I wrong in

understanding that ultimately the question the jury will have to decide with respect to each separate defendant, would they have taken the same action if they were not a government official?

**MR. CULLEN:** I think that's part of the question certainly. There's a definition from West versus Atkins, 487 U.S. 42, a 1988 Supreme Court case.

But it just says the traditional definition of acting under color of state law requires a defendant in a 1983 action of exercised power possessed by the virtue of state law made it possible only because the wrongdoer is cloaked under the authority of state law. So I think that's another aspect of the color of law issue.

**THE COURT:** State that again, and separate that out in terms of plain speak.

**MR. CULLEN:** Sure. I think you're right as far as, you know, if the defendants would have acted in the same manner, whether or not they were corporate counsel, then they're not necessarily acting under color of state law.

But in addition, they have to be exercising the power that was possessed by virtue of state law made possible only because the wrongdoers are cloaked with the authority of state law.

So again, I think this comes back again to the Court's earlier ruling that talked about what the powers of the

corporation counsel are and aren't with respect to the police.

But I think it may be that we need to develop an instruction on color of state law definition that goes further than simply just naming the element.  And the part of West vs. Atkins is on page 49, Your Honor.

**THE COURT**:  Okay.  I want to hang on this for a moment.  I was obviously scrolling through and reading the complaint carefully, but it's so long that it took me quite a while to get to January 22nd, 2021, but let me think about this for a moment.

Okay.  I'm just looking carefully at the answer of Attorneys Bolton and Leonard and just reviewing it and making sure.  I can see where it is confusing because there's an admission they're acting under color of state law, but the admission is that that's a statement of law as to which no answer is required.  It's a statement of law.  They're not admitting the element of the case.

So because paragraph -- let me just give you one example.  Paragraph 8 the Defendant Celia K. Leonard is an individual, who on information and belief currently resides in at all relevant times she was a deputy corporation counsel for the City of Nashua legal department.

Answer:  The defendants Bolton and Leonard admit the allegations set forth in paragraph 8 of the complaint; that they were operating -- that that was their job at all relevant

times.  I believe they still have that job.

That still is not an admission that they acted, as alleged, under color of state law.  That is something that you still have -- your client still has the burden of proof on.  And they have admitted to the fact that they held those positions.

Paragraph 142 of the complaint describes the allegation that they acted under color of state law, and the answer to that was it's a statement of law to which no response is required.  And so ultimately I can see where that is confusing but -- and it looks as though that's an admission of sorts, but essentially they're not disputing the fact that they were employed for the City and that that was their official job.

So in any event, that's an element that you will have to still prove at trial, and we'll make sure that, you know, the jury understands what needs to be proven to prove the element of color of state law as to each separate individual.

Okay.  And with respect to the elements, let me just make sure we're all on the same page with regard to the elements, and I'm just going to go over these really briefly.

This claim -- there are three elements:  That Ms. Ortolano engaged in constitutionally-protected conduct.  Okay?  Two, she was subjected to an a adverse action by the defendant.  And three, the protected conduct was a substantial

or motivating factor in the adverse action.

Right now what I want to talk to you about is this adverse-action element because at no point have you disputed, at least in the summary judgment motions, in litigation that an arrest is, in fact, an adverse action.

Ultimately, when we're talking about the Nieves exception and a plaintiff is alleging an arrest is the adverse action.

What needs to be proven is what we were just talking about that either her arrest was not supported by probable cause -- that's clearly not the case -- or she was arrested when otherwise similarly-situated individuals not engaged in the same sort of protected speech had not been arrested. Right?  That's the Nieves exception.

And ultimately I intend, assuming you do not dispute an arrest is an adverse action, that what I intend to do is to collapse those.  And so let me read you now what elements I am going to include with respect to retaliatory arrest.

Okay.  Number one, Ms. Ortolano engaged in conduct protected by the First Amendment.  Two, defendant's actions caused her arrest.  Three, her constitutionally-protected conduct was a substantial or motivating factor behind the defendant's actions.  Four, that Ms. Ortolano was arrested in circumstances where others similarly-situated people who were not engaged in the same constitutionally-protected conduct

would not be arrested.  And fifth, that the defendant acted under color of state law.  So those are the -- that's the way I have collapsed this.

Any dispute that an arrest is an adverse action?

MR. CULLEN:  No, Your Honor.

THE COURT:  That is how I have divided up the elements.  I obviously go into more depth as to each element separately in terms of causation, substantial motivating factor, and I will give you all of that in draft form tomorrow. I hope to get it to you tomorrow morning.  I think that's all I have.  Anything else, anybody?

MR. AIVALIKLES:  Housekeeping, Your Honor?

THE COURT:  Go ahead.

MR. AIVALIKLES:  My person that's going to be monitoring the exhibits --

THE COURT:  I'm sorry.  I can't hear you.

MR. AIVALIKLES:  I'm sorry.  The person that is going to be helping me with the exhibits does not have permission to bring his computer in that needs to perform that.

THE COURT:  Okay.  Just speak to Mr. --

MR. AIVALIKLES:  Vincent?

THE COURT:  Yes.  And take care of that.

MR. AIVALIKLES:  Also, can my client bring her computer in because she has a lot of documents on her computer that would be of assistance to me.

THE COURT:  I don't see why not.  Any --

THE COURTROOM CLERK:  I have a form she can fill out.

THE COURT:  Yeah.  I don't see why not.

MR. AIVALIKLES:  And I know the Court was previously told about the visual aids that would be used during the opening, I think, by both sides.  So, you know, our visual aids would be a full exhibit and it does have --

THE COURT:  What would be a full exhibit?

MR. AIVALIKLES:  It would be a full exhibit.  The visual aid would be a full exhibit that we're going to be showing to the jury.

MR. HILLIARD:  During openings.  He's talking about during openings.

MR. AIVALIKLES:  Right.

THE COURT:  A demonstrative exhibit or something to make your point that later may be introduced as an exhibit?

MR. AIVALIKLES:  No.  It actually is the full exhibit, Your Honor.

THE COURT:  But I haven't admitted an exhibit yet, so I don't see how it's a full exhibit -- unless both counsel agree and everybody agrees.

MR. AIVALIKLES:  It's by agreement.

THE COURT:  Oh, okay.

MR. AIVALIKLES:  And it may have some highlight on it, but it is the full exhibit.

THE COURT: And just share with each other, the things that you intend to show the jury during your openings, that's a common practice; very much helps in terms of objections and agreements with respect to evidence -- demonstrative evidence. Yeah.

MR. AIVALIKLES: We have also agreed that Mr. Carignan can be treated as a hostile witness when I question him, Your Honor.

THE COURT: I think that's -- he was a named defendant.

MR. CULLEN: He was. We just we were not going to object to him leading, if he prefers.

THE COURT: Thank you for shortcutting that.

And can you give me a sense, the order of witnesses right now, if you would? Again, this helps me prepare, and I'm sure helps you both.

MR. AIVALIKLES: Yes, Your Honor. I'm going to lead off with my client, Laurie Ortolano. Then I intended to call Officer Roach, Officer Karen, Chief Carignan, Mr. Lavoie. And then after that, I haven't really figured out the order.

But in terms of the first five witness, Your Honor, I think that's them. And I assume we'll keep counsel informed as we go along, and if the Court want to be informed.

THE COURT: Okay. All right. Anything else?

MR. AIVALIKLES: Yes, Your Honor.

**MR. CULLEN:** Sorry. Go ahead.

**MR. AIVALIKLES:** In the prior pretrial order, each of the defendants were given two peremptory challenges, and I was given four. Is that going to be the same?

**THE COURT:** Four total, yes. Yeah. I think I corrected that in the second order that I issued.

**MR. AIVALIKLES:** We also had agreed that before defendant's counsel attempts to introduce the fee award, that I was going to be informed of that, just to give me a heads-up.

And I was not going to talk about Detective Kenny in my opening until the evidence was established on that issue, so I presume that that's still in effect, Your Honor.

Also, Your Honor, is it okay to bring in like protein bars during lunch because it's kind of treacherous out there to walk and rather than going to lunch --

**THE COURT:** Oh, yeah, bring your own lunch and see if you can find a conference room where you can put things and have a place to go.

**MR. AIVALIKLES:** And that's the other thing, and I'll speak to defense about that. There's only one conference room out in the lobby that's open.

**THE COURT:** We're going to be the only trial going, even though they're picking one the same time we are. That one is not going until Wednesday of the next week, so we will be the only trial, I think, so we can find each of them a

conference room.

THE COURTROOM CLERK:  There are rooms right outside of courtroom 4, there's two.

THE COURT:  So you'll have two rooms when we get to courtroom 4.  Thank you, Vinny.

MR. AIVALIKLES:  And one other final question for Vincent:  Has the jury pool been further reduced from what we got on Friday or is that it?

THE COURTROOM CLERK:  I sent you the last tentative juror list, and I think it's as reduced as it's going to be.  I think it was 96 jurors on there.

MR. AIVALIKLES:  Very well.  Thank you, Your Honor.

THE COURT:  And there is a bench trial, I think, ultimately, and we will lose Vinny for the actual jury trial, but I think you're doing jury selection with us.

THE COURTROOM CLERK:  Jury selection and that day.

THE COURT:  But then another case manager is going to come in.  Jen Sackos will be here for the rest of the trial.

MR. AIVALIKLES:  That's it for me, Your Honor.

THE COURT:  Anything --

MR. CULLEN:  I think that largely covers it.  I'm just running through my list.  I did represent John Duhamel, and he will want to know -- right now the witnesses are all scheduled for Wednesday.  I think John and maybe Kim Kleiner are subpoenaed for Thursday.

**MR. AIVALIKLES:**  They were maybe.  Those were maybes.

**MR. CULLEN:**  So we'll communicate together and make sure that we let the witnesses know when they need to be here.

**THE COURT:**  That would be great, so if you can have open communication with each other throughout that, that would be great.  I appreciate it.

**MR. AIVALIKLES:**  I also understand that attorney Newman will not be a witness in this case.

**MR. HILLIARD:**  That is correct, Your Honor.

**THE COURT:**  Attorney Newman was in the legal department --

**MR. AIVALIKLES:**  Correct.

**THE COURT:**  -- on January 22nd.  You are all very familiar with these individuals.  Don't assume that I have any familiarity.  I recognize the name, but -- okay, so we will see each other in courtroom 4 tomorrow morning.

How about -- they're going to be instructing and getting our jury ready -- and Vinny has left, but I'm thinking we could meet at 9:00 a.m. so that I can just give you a copy of the draft jury instructions and tie up any loose ends.

We could go ahead and meet in courtroom 1 at 9:00 a.m. Just don't carry -- leave all of your things in courtroom 4.  I want to meet with them maybe 9:00 a.m., give them a copy of the jury instructions, do any last-minute issues before we pick the jury.

Can I do that at 9:00 a.m. in courtroom 4, or will they --

THE COURTROOM CLERK:  The jury may be filtering in by then, so we can do that in this courtroom.

THE COURT:  Does that work for everybody?  Meet here at 9:00, and then we will break and go find courtroom 4 for jury selection.

MR. CULLEN:  One minor thing:  Because Ms. Ortolano is going to be the first witness, and so I don't forget to ask tomorrow, we just want to make sure that this procedure is question-and-answer format, not in the narrative testimony where we wouldn't have a chance to raise objections.  We need a little bit of an idea of where the narrative is going so we can object to the timely manner.

THE COURT:  That's fair.  I think that Attorney Aivalikles will do the best you can.  And your client is not an attorney, and she's testifying.  It's a pressure-filled moment. You will have to assist her along the way so that it cabins what her response is to your answers so that they can make an appropriate objection so that she is not telling the jury the entire story in one uninterrupted narrative.  So if you could keep those questions fairly narrow, and then we'll rely on you to help structure her testimony.

MR. AIVALIKLES:  I will definitely do that.

THE COURT:  If not, then obviously, I think that's a

fair objection, and he's hopefully preempting that from happening.  All right.  Anything else?

**MR. CULLEN:**  I don't believe so, Your Honor.  Thank you.

**THE COURT:**  I'll see you in here, courtroom 1, at 9:00 briefly.

(Thereupon, the above hearing was concluded.)

*          *          *

# C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

02/02/2026

DATE COMPLETED          GIZELLA BAAN-PROULX, FCRR

**0**

**02/02/2026** [1] - 31:8
**03301** [1] - 1:21

**1**

**1** [3] - 13:24, 28:21, 30:5
**142** [3] - 17:12, 17:17, 21:7
**1983** [1] - 19:9
**1988** [1] - 19:7

**2**

**2** [1] - 1:4
**2021** [1] - 20:9
**2026** [1] - 1:4
**210** [2] - 7:6, 12:21
**215** [1] - 13:5
**216** [2] - 15:5, 16:5
**22-CV-00326-LM** [1] - 1:2
**22-CV-326-LM** [1] - 2:5
**224** [1] - 16:12
**225-1454** [1] - 1:21
**22nd** [2] - 20:9, 28:13

**3**

**3** [1] - 2:25
**35** [1] - 17:19

**4**

**4** [11] - 2:21, 2:22, 3:1, 3:17, 4:8, 27:3, 27:5, 28:16, 28:22, 29:1, 29:6
**42** [1] - 19:7
**487** [1] - 19:6
**49** [1] - 20:5

**5**

**55** [1] - 1:20

**6**

**603** [1] - 1:21

**7**

**7** [2] - 8:11, 17:8

**8**

**8** [2] - 20:19, 20:24

**9**

**96** [1] - 27:11
**9:00** [6] - 28:19, 28:21, 28:23, 29:1, 29:6, 30:5

**A**

**a.m** [4] - 28:19, 28:21, 28:23, 29:1
**able** [2] - 11:20, 18:16
**above-entitled** [1] - 31:4
**absolutely** [2] - 7:22, 14:22
**abused** [1] - 4:22
**accurate** [1] - 31:3
**act** [1] - 8:4
**acted** [7] - 10:11, 17:16, 18:13, 19:17, 21:2, 21:8, 23:1
**acting** [5] - 17:21, 17:25, 19:8, 19:19, 20:14
**action** [12] - 9:14, 10:24, 18:15, 19:3, 19:9, 21:24, 22:1, 22:3, 22:5, 22:8, 22:16, 23:4
**actions** [2] - 22:20, 22:23
**activity** [1] - 11:5
**actor** [1] - 9:14
**actors** [2] - 17:14, 17:21
**actual** [1] - 27:14
**add** [4] - 7:18, 11:7, 13:17, 16:2
**addition** [1] - 19:20
**admission** [6] - 16:15, 17:5, 20:14, 20:15, 21:2, 21:11
**admissions** [3] - 16:24, 18:6
**admit** [3] - 17:9, 17:20, 20:23
**admitted** [5] - 17:2, 17:3, 18:4, 21:5, 24:19
**admitting** [2] - 17:24, 20:17
**adopted** [1] - 3:7
**adverse** [8] - 10:24, 21:24, 22:1, 22:3, 22:5, 22:7, 22:16, 23:4
**adverse-action** [1] - 22:3
**advisory** [1] - 15:8
**agree** [9] - 7:7, 12:21, 14:6, 14:11, 14:15, 14:19, 15:17, 16:22, 24:21
**agreed** [2] - 25:6, 26:7
**agreeing** [1] - 14:17
**agreement** [2] - 10:22, 24:22
**agreements** [1] - 25:4
**agrees** [2] - 14:14, 24:21
**ahead** [6] - 3:4, 6:13, 7:19, 23:13, 26:1, 28:21
**aid** [1] - 24:10
**aids** [2] - 24:5, 24:6
**AIVALIKLES** [35] - 1:12, 2:8, 4:14, 4:16, 13:22, 14:19, 16:17, 16:25, 17:7, 18:4, 18:8, 23:12, 23:14, 23:17, 23:21, 23:23, 24:4, 24:9, 24:14, 24:17, 24:22, 24:24, 25:6, 25:17, 25:25, 26:2, 26:7, 26:19, 27:6, 27:12, 27:19, 28:1, 28:7, 28:12, 29:24
**Aivalikles** [3] - 1:13, 2:9, 29:16
**al** [2] - 2:5, 17:13
**alert** [1] - 5:17
**Alito** [1] - 10:1
**allegation** [2] - 17:22, 21:8
**allegations** [1] - 20:24
**alleged** [2] - 8:3, 21:3
**alleging** [1] - 22:7
**allow** [3] - 11:13, 11:25, 13:18
**allowing** [1] - 9:13
**amended** [1] - 17:18
**Amendment** [1] - 22:20
**analog** [1] - 5:3
**AND** [1] - 1:5
**Answer** [1] - 20:23
**answer** [6] - 15:9, 17:19, 20:11, 20:16, 21:9, 29:11
**answers** [2] - 17:8, 29:19
**applicability** [1] - 15:14
**application** [1] - 9:18
**appointed** [2] - 8:24, 12:7
**appreciate** [1] - 28:6
**approach** [2] - 8:16, 14:7
**appropriate** [2] - 14:11, 29:20
**argument** [3] - 10:23, 16:15, 16:18
**arguments** [4] - 3:24, 5:20, 6:12
**arise** [1] - 9:24
**arrest** [10] - 10:5, 10:25, 11:5, 22:5, 22:7, 22:10, 22:16, 22:18, 22:21, 23:4
**arrested** [7] - 8:12, 8:13, 12:14, 22:11, 22:13, 22:23, 23:1
**arrests** [1] - 11:11
**aspect** [2] - 7:18, 19:12
**assignment** [1] - 2:14
**assist** [1] - 29:18
**assistance** [1] - 23:25
**assume** [2] - 25:22, 28:14
**assuming** [1] - 22:15
**assumption** [2] - 12:10, 12:12
**Atkins** [2] - 19:6, 20:5
**attempts** [1] - 26:8
**Attorney** [6] - 2:13, 13:9, 13:11, 14:13, 18:25, 29:15
**attorney** [4] - 3:19, 28:7, 28:10, 29:17
**Attorneys** [1] - 20:12
**authority** [2] - 19:12, 19:22
**avoid** [1] - 9:23
**award** [1] - 26:8
**aware** [1] - 12:10

**B**

**BAAN** [2] - 1:19, 31:9
**BAAN-PROULX** [2] - 1:19, 31:9
**background** [1] - 5:1
**bar** [11] - 3:10, 3:11, 3:14, 4:7, 4:16, 4:19, 5:2, 5:4, 5:15, 5:20, 11:14
**bars** [1] - 26:14
**based** [3] - 7:7, 10:5, 12:15
**basis** [2] - 3:9, 4:17
**BEFORE** [1] - 1:9
**beginning** [1] - 2:7
**behalf** [2] - 2:18, 13:10
**behind** [1] - 22:22
**belief** [1] - 20:20
**bench** [1] - 27:13
**best** [1] - 29:16
**better** [1] - 5:1
**between** [3] - 5:21, 8:3, 10:8
**beyond** [1] - 9:15
**bind** [1] - 18:7
**bit** [1] - 29:13
**bold** [3] - 14:23, 14:25, 16:6
**Bolton** [9] - 2:5, 2:13, 13:11, 17:8, 17:13, 17:16, 17:25, 20:12, 20:23
**BOLTON** [2] - 1:5, 1:14
**box** [1] - 4:9
**break** [1] - 29:6
**Brian** [1] - 2:17
**BRIAN** [1] - 1:16
**briefly** [5] - 3:9, 3:10, 13:7, 21:21, 30:6
**bring** [4] - 23:19, 23:23, 26:13, 26:16
**broadened** [1] - 9:14
**broader** [1] - 13:7
**broadly** [1] - 8:20
**burden** [1] - 21:4
**BY** [1] - 1:19

**C**

**cabins** [1] - 29:18
**cannot** [1] - 16:1
**care** [3] - 14:16, 16:4, 23:22
**carefully** [2] - 20:8, 20:11
**Carignan** [2] - 25:6, 25:19
**carry** [1] - 28:22
**CASE** [1] - 1:2
**case** [19] - 2:5, 4:5, 7:11, 10:6, 11:15, 12:8, 12:12, 15:19, 15:23, 18:6, 18:11, 18:19, 18:20, 18:23, 19:7, 20:17, 22:11, 27:17, 28:8

cases [2] - 7:8, 8:12
causation [2] - 12:17, 23:8
caused [1] - 22:21
CELIA [2] - 1:5, 1:16
Celia [2] - 2:18, 20:19
certain [1] - 9:3
certainly [1] - 19:6
certify [1] - 31:3
challenges [1] - 26:3
challenging [1] - 10:7
chance [1] - 29:12
charging [1] - 15:2
Chief [1] - 25:19
circumstances [3] - 10:10, 12:14, 22:24
City [7] - 17:1, 17:13, 17:18, 17:23, 20:22, 21:13
city [5] - 8:24, 9:14, 11:18, 17:10, 17:15
civil [1] - 2:5
claim [1] - 21:22
clarification [1] - 16:17
clear [7] - 7:14, 9:12, 12:25, 13:15, 13:16, 13:21
clearly [2] - 18:21, 22:11
CLERK [6] - 2:3, 24:2, 27:2, 27:9, 27:16, 29:3
client [4] - 21:4, 23:23, 25:18, 29:16
clients [10] - 3:19, 4:12, 6:7, 8:7, 8:15, 8:19, 11:17, 11:20, 12:1
cloaked [2] - 19:11, 19:22
close [1] - 4:7
closest [1] - 4:10
closing [1] - 6:12
collapse [1] - 22:17
collapsed [1] - 23:3
Collimore [1] - 1:16
Colon [1] - 18:19
color [16] - 17:5, 17:16, 17:21, 18:3, 18:13, 18:21, 18:23, 19:9, 19:13, 19:19, 20:3, 20:14, 21:3, 21:8, 21:18, 23:2
coming [1] - 5:16
common [1] - 25:3
communicate [1] - 28:2
communication [1] - 28:5
comparators [1] - 10:20
complaint [5] - 17:17, 17:18, 20:8, 20:24, 21:7
COMPLETED [1] - 31:9
completely [1] - 16:22
computer [3] - 23:19, 23:24
concern [1] - 8:14
concluded [1] - 30:8
conclusion [1] - 14:21
CONCORD [1] - 1:1

Concord [1] - 1:21
concurrence [2] - 10:3, 10:12
conduct [6] - 9:24, 21:23, 21:25, 22:19, 22:22, 22:25
CONFERENCE [1] - 1:8
conference [5] - 2:4, 15:2, 26:17, 26:20, 27:1
conflate [1] - 11:17
conflicting [1] - 2:14
confusing [2] - 20:13, 21:11
consider [1] - 10:14
consideration [1] - 2:4
constantly [1] - 6:5
Constitution [1] - 17:15
constitutionally [3] - 21:23, 22:21, 22:25
constitutionally-protected [3] - 21:23, 22:21, 22:25
context [1] - 5:1
control [1] - 11:23
copy [2] - 28:19, 28:23
corporate [2] - 17:10, 19:18
corporation [3] - 17:3, 20:1, 20:21
correct [3] - 4:19, 28:9, 28:12
corrected [1] - 26:6
correctly [1] - 13:5
counsel [11] - 2:6, 2:7, 13:16, 17:4, 17:10, 19:18, 20:1, 20:21, 24:20, 25:22, 26:8
couple [1] - 3:7
court [4] - 2:2, 2:3, 3:7, 3:13
COURT [59] - 1:1, 1:10, 2:10, 2:16, 2:19, 4:15, 4:19, 5:8, 5:10, 5:14, 5:25, 9:17, 12:2, 12:13, 13:4, 13:13, 13:21, 13:23, 14:13, 14:22, 15:24, 16:4, 16:10, 16:19, 17:1, 18:1, 18:5, 18:10, 19:14, 20:6, 23:6, 23:13, 23:16, 23:20, 23:22, 24:1, 24:3, 24:8, 24:15, 24:19, 24:23, 25:1, 25:9, 25:13, 25:24, 26:5, 26:16, 26:22, 27:4, 27:13, 27:17, 27:20, 28:4, 28:10, 28:13, 29:5, 29:15, 29:25, 30:5
Court [19] - 1:19, 1:20, 9:7, 9:15, 9:19, 10:1, 11:16, 11:22, 13:15, 15:20, 15:21, 15:23, 16:1, 17:24, 18:9, 19:7, 24:4, 25:23
Court's [1] - 19:24
courtesy [1] - 6:24

COURTROOM [6] - 2:3, 24:2, 27:2, 27:9, 27:16, 29:3
courtroom [15] - 2:21, 2:22, 2:25, 3:1, 3:17, 4:8, 27:3, 27:5, 28:16, 28:21, 28:22, 29:1, 29:4, 29:6, 30:5
Courts [1] - 7:23
covers [1] - 27:21
crime [1] - 9:4
criminal [1] - 10:3
crystal [1] - 12:25
CULLEN [19] - 1:16, 2:17, 7:20, 11:8, 12:5, 12:24, 14:12, 15:17, 15:25, 16:9, 19:5, 19:16, 23:5, 25:11, 26:1, 27:21, 28:2, 29:8, 30:3
Cullen [3] - 1:16, 2:17, 18:25
Cullens' [1] - 13:9

## D

damages [9] - 13:4, 13:24, 14:3, 14:4, 14:7, 14:10, 14:16, 14:17, 14:25
DATE [1] - 31:9
days [2] - 5:4, 5:22
deal [1] - 14:9
deals [1] - 12:18
decide [2] - 15:21, 19:2
decision [2] - 15:23, 16:1
Defendant [3] - 17:8, 17:13, 20:19
defendant [10] - 2:13, 10:9, 17:2, 17:15, 18:6, 19:2, 19:9, 21:25, 23:1, 25:10
DEFENDANT [2] - 1:14, 1:16
defendant's [4] - 16:22, 22:20, 22:23, 26:8
defendants [14] - 1:6, 7:24, 8:3, 11:14, 11:24, 13:1, 17:9, 17:20, 18:5, 18:7, 19:17, 20:23, 26:3
defense [3] - 14:11, 15:4, 26:20
definitely [2] - 17:5, 29:24
definition [3] - 19:6, 19:8, 20:3
demonstrative [2] - 24:15, 25:4
deny [2] - 17:6, 17:22
department [3] - 11:24, 20:22, 28:11
depth [1] - 23:7
deputy [1] - 20:21
describes [1] - 21:7
detail [1] - 12:6
Detective [1] - 26:10
determine [1] - 15:14

develop [1] - 20:2
developing [1] - 16:15
difference [1] - 5:21
different [3] - 8:11, 17:2, 18:5
differential [1] - 10:15
differently [7] - 8:9, 8:17, 8:23, 8:25, 9:8, 9:10, 12:11
difficult [1] - 10:10
dire [1] - 6:16
discern [1] - 10:10
discretion [1] - 15:7
discretionary [1] - 15:19
disparate [1] - 9:14
disparately [4] - 8:6, 8:8, 9:6, 11:13
dispute [2] - 22:15, 23:4
disputed [1] - 22:3
disputes [3] - 15:9, 15:10, 15:13
disputing [2] - 12:25, 21:12
DISTRICT [2] - 1:1, 1:10
District [1] - 1:20
divided [1] - 23:6
document [6] - 12:21, 13:4, 15:5, 16:4, 16:12, 17:19
documents [1] - 23:24
done [1] - 6:3
door [1] - 7:15
doubt [1] - 4:5
down [3] - 2:22, 6:5, 6:6
draft [6] - 6:20, 6:24, 14:23, 23:9, 28:20
draw [1] - 10:8
dropped [1] - 15:18
Duhamel [1] - 27:22
during [8] - 3:5, 3:6, 6:16, 24:5, 24:12, 24:13, 25:2, 26:14
duty [2] - 18:20, 18:22

## E

easily [1] - 18:17
effect [1] - 26:12
either [4] - 7:10, 8:16, 13:17, 22:10
element [15] - 7:18, 12:20, 12:22, 12:23, 17:5, 18:3, 18:11, 18:18, 18:24, 20:4, 20:17, 21:15, 21:18, 22:3, 23:7
elements [8] - 6:22, 12:17, 12:18, 21:19, 21:21, 21:22, 22:17, 23:7
employed [4] - 18:2, 18:18, 18:22, 21:13
employees [1] - 17:10
employer [1] - 17:23
end [2] - 3:2, 14:1

ending [1] - 6:13
ends [3] - 6:4, 6:11, 28:20
engaged [4] - 21:23, 22:12, 22:19, 22:25
entire [1] - 29:21
entitled [1] - 31:4
errs [1] - 9:7
ESQ [4] - 1:12, 1:14, 1:14, 1:16
essence [1] - 14:16
essentially [2] - 5:14, 21:12
establish [1] - 10:15
established [1] - 26:11
estoppel [2] - 16:14, 16:18
et [2] - 2:5, 17:13
evade [1] - 11:14
event [1] - 21:15
evidence [25] - 4:5, 5:1, 5:16, 7:9, 7:14, 7:23, 7:25, 8:6, 9:4, 9:22, 10:14, 10:21, 10:25, 11:4, 11:21, 12:2, 12:3, 14:21, 14:24, 16:23, 18:14, 25:4, 26:11
exactly [2] - 3:16, 4:19
example [1] - 20:19
exception [9] - 8:2, 9:12, 9:15, 11:11, 12:4, 12:20, 12:22, 22:7, 22:14
exercised [1] - 19:10
exercising [1] - 19:20
exhibit [11] - 17:11, 24:7, 24:8, 24:9, 24:10, 24:15, 24:16, 24:17, 24:19, 24:20, 24:25
exhibits [2] - 23:15, 23:18
express [1] - 9:21
extent [3] - 4:24, 5:19, 6:7
extra [1] - 3:20

## F

fact [9] - 10:1, 10:2, 14:2, 15:9, 15:10, 16:2, 21:5, 21:12, 22:5
factor [4] - 12:17, 22:1, 22:22, 23:9
factual [1] - 15:13
fair [2] - 29:15, 30:1
fairly [1] - 29:22
familiar [3] - 3:5, 3:16, 28:14
familiarity [1] - 28:15
far [1] - 19:16
faster [1] - 5:4
FCRR [2] - 1:19, 31:9
February [1] - 1:4
fee [1] - 26:8
fifth [1] - 23:1
figured [1] - 25:20
fill [1] - 24:2

filled [1] - 29:17
filtering [1] - 29:3
FINAL [1] - 1:8
final [1] - 27:6
finalizing [1] - 6:23
fine [1] - 7:16
fired [1] - 4:4
First [1] - 22:20
first [2] - 25:21, 29:9
five [2] - 6:11, 25:21
five-day [1] - 6:11
focusing [1] - 8:2
follow [1] - 12:8
following [1] - 2:2
footnote [1] - 15:19
FOR [3] - 1:12, 1:14, 1:16
foregoing [1] - 31:3
forget [1] - 29:9
form [3] - 16:3, 23:9, 24:2
format [1] - 29:11
forth [2] - 4:17, 20:24
four [3] - 22:23, 26:4, 26:5
Friday [2] - 6:12, 27:8
front [1] - 3:4
full [8] - 10:14, 24:7, 24:8, 24:9, 24:10, 24:17, 24:20, 24:25
fully [1] - 16:15

## G

general [1] - 14:7
generate [1] - 11:5
given [2] - 26:3, 26:4
GIZELLA [2] - 1:19, 31:9
Gonzalez [7] - 7:8, 7:13, 8:23, 9:18, 10:18, 11:10, 12:2
government [3] - 10:4, 18:15, 19:3
grant [1] - 7:17
granular [1] - 12:6
great [2] - 28:4, 28:6
groan [1] - 6:16

## H

HAMPSHIRE [1] - 1:1
hamstring [1] - 11:24
hang [1] - 20:6
happy [1] - 15:21
Hatfield [1] - 1:15
headphones [1] - 3:4
heads [1] - 26:9
heads-up [1] - 26:9
hear [13] - 3:22, 4:6, 4:10, 4:12, 4:21, 5:5, 6:7, 6:16, 15:4, 23:16
heard [1] - 13:6
hearing [3] - 3:18, 6:4, 30:8

hearsay [1] - 5:11
held [2] - 2:2, 21:5
help [1] - 29:23
helpful [2] - 10:18, 10:19
helping [1] - 23:18
helps [3] - 25:3, 25:15, 25:16
hereby [1] - 31:3
highlight [1] - 24:24
Hilliard [2] - 2:13, 14:13
HILLIARD [10] - 1:14, 2:12, 5:6, 5:9, 5:12, 5:24, 13:7, 13:20, 24:12, 28:9
himself [1] - 12:6
hold [1] - 16:16
Honor [36] - 2:8, 2:12, 2:17, 3:9, 3:10, 4:14, 5:2, 5:6, 5:11, 5:15, 5:20, 7:20, 11:8, 13:10, 13:20, 13:22, 14:12, 14:19, 15:17, 16:9, 16:25, 17:7, 20:5, 23:5, 23:12, 24:18, 25:8, 25:17, 25:21, 25:25, 26:12, 26:13, 27:12, 27:19, 28:9, 30:3
HONORABLE [1] - 1:9
hope [1] - 23:10
hopefully [1] - 30:1
hoping [1] - 13:8
hostile [1] - 25:7
housekeeping [1] - 23:12

## I

idea [3] - 7:21, 11:11, 29:13
identical [1] - 10:20
identify [1] - 2:6
immunity [6] - 15:4, 15:5, 15:6, 15:11, 15:15, 16:5
important [1] - 8:21
improperly [1] - 10:11
inclination [1] - 7:17
inclined [2] - 15:23, 17:6
include [5] - 12:21, 14:25, 15:15, 16:6, 22:18
included [3] - 15:22, 16:6, 17:16
including [1] - 3:18
indeed [1] - 7:13
indicated [1] - 17:19
indicating [1] - 4:17
indisputably [1] - 18:14
individual [4] - 17:20, 18:7, 20:20, 21:18
individuals [2] - 22:12, 28:14
information [1] - 20:20
informed [3] - 25:22, 25:23, 26:9
inquiry [1] - 10:17
instead [1] - 4:6

instruct [1] - 15:20
instructed [1] - 11:25
instructing [1] - 28:17
instruction [13] - 9:11, 13:25, 14:1, 14:3, 14:5, 14:8, 14:10, 14:18, 14:25, 15:6, 15:18, 16:5, 20:3
instructions [6] - 6:19, 7:2, 11:19, 16:8, 28:20, 28:24
intend [4] - 7:15, 22:15, 22:16, 25:2
intended [1] - 25:18
intent [5] - 7:11, 8:3, 9:15, 11:12, 12:19
interesting [1] - 15:3
introduce [1] - 26:8
introduced [1] - 24:16
investigation [2] - 9:2, 9:3
irrelevant [1] - 7:12
issue [9] - 7:24, 9:8, 10:21, 11:18, 13:23, 15:25, 17:12, 19:13, 26:11
issued [2] - 10:7, 26:6
issues [1] - 28:24

## J

J.S [1] - 1:16
Jackson [1] - 10:12
January [2] - 20:9, 28:13
Jen [1] - 27:18
job [3] - 20:25, 21:1, 21:14
John [2] - 27:22, 27:24
join [4] - 13:8, 13:12, 13:18, 13:19
JUDGE [1] - 1:10
Judge [1] - 4:6
judgement [1] - 18:12
judges [2] - 3:7, 10:13
judgment [5] - 4:25, 5:18, 10:6, 18:18, 22:4
judicial [3] - 16:14, 16:15, 16:18
juries [1] - 6:10
juror [1] - 27:10
jurors [1] - 27:11
jury [37] - 2:24, 2:25, 3:2, 3:5, 3:22, 4:6, 4:9, 4:10, 5:5, 6:4, 6:9, 6:19, 6:20, 7:1, 9:12, 11:25, 14:9, 15:11, 15:13, 15:18, 15:20, 15:23, 19:1, 21:17, 24:11, 25:2, 27:7, 27:14, 27:15, 27:16, 28:18, 28:20, 28:24, 28:25, 29:3, 29:7, 29:20
justice [1] - 10:3
Justice [2] - 10:1, 10:12
justices [1] - 7:14

## K

**Karen** [1] - 25:19
**keep** [7] - 4:1, 4:23, 6:5, 25:22, 29:22
**Kenny** [1] - 26:10
**Kim** [1] - 27:24
**kind** [3] - 7:11, 11:5, 26:14
**Kleiner** [1] - 27:24
**knowledge** [3] - 8:8, 9:5, 13:2
**known** [1] - 11:3

## L

**LANDYA** [1] - 1:9
**largely** [1] - 27:21
**last** [3] - 15:2, 27:9, 28:24
**last-minute** [1] - 28:24
**Laurie** [3] - 2:4, 2:9, 25:18
**LAURIE** [2] - 1:3, 1:13
**Lavoie** [1] - 25:19
**law** [25] - 15:7, 15:22, 17:5, 17:16, 17:21, 18:3, 18:13, 18:21, 18:23, 19:9, 19:10, 19:12, 19:13, 19:19, 19:21, 19:23, 20:3, 20:14, 20:15, 20:16, 21:3, 21:8, 21:9, 21:18, 23:2
**Law** [1] - 1:13
**lawyer** [1] - 12:7
**lawyers** [1] - 6:3
**lead** [1] - 25:17
**leading** [1] - 25:12
**least** [3] - 6:21, 8:15, 22:4
**leave** [1] - 28:22
**left** [1] - 28:18
**legal** [2] - 20:22, 28:10
**lens** [1] - 8:19
**LEONARD** [2] - 1:5, 1:16
**Leonard** [8] - 2:18, 2:20, 17:13, 17:16, 17:25, 20:12, 20:19, 20:23
**level** [1] - 12:5
**liberal** [2] - 5:3
**limit** [1] - 9:21
**line** [1] - 10:8
**lines** [1] - 7:16
**link** [1] - 8:2
**list** [2] - 27:10, 27:22
**listening** [1] - 3:24
**litigation** [1] - 22:4
**LLP** [1] - 1:15
**lobby** [1] - 26:21
**look** [8] - 8:5, 8:10, 8:11, 8:18, 8:19, 15:1, 15:18, 17:8
**looking** [3] - 15:16, 16:16, 20:11
**looks** [1] - 21:11
**loose** [1] - 28:20

**lose** [1] - 27:14
**loud** [1] - 5:7
**lunch** [3] - 26:14, 26:15, 26:16

## M

**machinery** [1] - 10:3
**MADELINE** [1] - 1:14
**magistrate** [1] - 10:7
**majority** [1] - 9:17
**manager** [1] - 27:17
**manner** [2] - 19:18, 29:14
**Martínez** [1] - 18:19
**material** [1] - 13:17
**matter** [3] - 13:2, 15:22, 31:5
**MATULIS** [1] - 1:14
**Matulis** [1] - 2:13
**maybes** [1] - 28:1
**mayor** [3] - 12:3, 12:6, 12:10
**McCAFFERTY** [1] - 1:9
**mean** [1] - 10:16
**means** [1] - 12:1
**meaty** [1] - 5:19
**meet** [4] - 28:19, 28:21, 28:23, 29:5
**mens** [1] - 7:16
**method** [1] - 3:8
**mics** [1] - 5:13
**might** [2] - 4:4
**minor** [1] - 29:8
**minute** [1] - 28:24
**moment** [3] - 20:7, 20:10, 29:17
**moments** [1] - 6:1
**monitoring** [1] - 23:15
**morning** [11] - 2:8, 2:10, 2:11, 2:12, 2:14, 2:17, 2:19, 2:20, 6:20, 23:10, 28:16
**most** [2] - 6:17, 9:2
**motion** [2] - 16:12, 18:12
**motions** [1] - 22:4
**motivating** [4] - 12:17, 22:1, 22:22, 23:8
**move** [2] - 5:13, 18:17
**moving** [2] - 4:23, 5:22
**MR** [61] - 2:8, 2:12, 2:17, 4:14, 4:16, 5:6, 5:9, 5:12, 5:24, 7:20, 11:8, 12:5, 12:24, 13:7, 13:20, 13:22, 14:12, 14:19, 15:17, 15:25, 16:9, 16:17, 16:25, 17:7, 18:4, 18:8, 19:5, 19:16, 23:5, 23:12, 23:14, 23:17, 23:21, 23:23, 24:4, 24:9, 24:12, 24:14, 24:17, 24:22, 24:24, 25:6, 25:11, 25:17, 25:25, 26:1, 26:2, 26:7, 26:19, 27:6,

27:12, 27:19, 27:21, 28:1, 28:2, 28:7, 28:9, 28:12, 29:8, 29:24, 30:3
**multiple** [1] - 10:4
**must** [2] - 9:23, 10:20

## N

**name** [1] - 28:15
**named** [1] - 25:9
**naming** [1] - 20:4
**narrative** [3] - 29:11, 29:13, 29:21
**narrow** [3] - 9:12, 9:13, 29:22
**Nashua** [6] - 17:1, 17:13, 17:18, 17:23, 17:24, 20:22
**nature** [1] - 10:13
**necessarily** [1] - 19:19
**need** [14] - 4:20, 4:21, 4:25, 5:17, 13:6, 13:8, 13:17, 15:9, 15:14, 16:2, 16:20, 20:2, 28:3, 29:12
**needs** [3] - 21:17, 22:9, 23:19
**NEW** [1] - 1:1
**Newman** [2] - 28:8, 28:10
**next** [2] - 6:16, 26:24
**NH** [1] - 1:21
**Nieves** [15] - 7:6, 7:7, 7:15, 8:2, 8:5, 8:21, 9:12, 9:16, 9:19, 11:10, 12:4, 12:20, 12:22, 22:6, 22:14
**NO** [1] - 1:2
**nominal** [8] - 13:4, 13:23, 14:4, 14:7, 14:10, 14:16, 14:17, 14:25
**normal** [1] - 5:11
**nothing** [1] - 12:1
**nuance** [1] - 7:21
**number** [6] - 2:5, 13:5, 13:24, 15:5, 17:19, 22:19

## O

**object** [3] - 3:9, 25:12, 29:14
**objection** [15] - 3:10, 3:14, 3:25, 4:17, 4:20, 5:2, 5:7, 5:11, 5:14, 7:6, 7:17, 13:18, 14:16, 29:20, 30:1
**objections** [10] - 4:23, 6:18, 7:1, 7:4, 13:11, 13:12, 13:19, 16:11, 25:3, 29:12
**objective** [17] - 7:9, 7:10, 7:14, 7:22, 7:25, 8:6, 9:9, 9:23, 10:13, 10:14, 10:21, 10:23, 10:25, 11:4, 12:15, 12:25, 13:2
**objectively** [1] - 11:12
**obviously** [5] - 6:22, 13:12,

20:7, 23:7, 29:25
**offers** [1] - 10:15
**Office** [1] - 1:13
**Officer** [2] - 25:19
**officer** [4] - 10:5, 10:11, 18:20, 18:22
**officers** [1] - 8:22
**offices** [1] - 10:4
**official** [3] - 17:4, 19:4, 21:13
**Official** [1] - 1:19
**officials** [1] - 18:15
**often** [2] - 10:3, 10:7
**old** [1] - 5:22
**one** [16] - 3:8, 7:3, 9:2, 15:3, 15:20, 16:12, 16:21, 20:18, 22:19, 26:20, 26:23, 27:6, 29:8, 29:21
**ones** [2] - 8:7, 8:17
**ongoing** [1] - 11:18
**open** [5] - 2:2, 7:15, 10:16, 26:21, 28:5
**opening** [3] - 6:25, 24:6, 26:11
**openings** [3] - 24:12, 24:13, 25:2
**operating** [1] - 20:25
**opposing** [1] - 13:16
**options** [1] - 15:21
**order** [5] - 9:23, 25:14, 25:20, 26:2, 26:6
**orders** [1] - 10:6
**Ortolano** [7] - 2:4, 2:9, 2:11, 7:7, 12:14, 21:23, 25:18
**ortolano** [3] - 22:19, 22:23, 29:8
**ORTOLANO** [2] - 1:3, 1:13
**Ortolano's** [2] - 16:13, 17:14
**otherwise** [2] - 13:18, 22:12
**outside** [1] - 27:2
**overly** [1] - 9:14
**overruled** [1] - 4:1
**own** [2] - 10:6, 26:16

## P

**page** [2] - 20:5, 21:20
**paragraph** [7] - 17:8, 17:12, 17:17, 20:18, 20:19, 20:24, 21:7
**Paralegal** [1] - 1:23
**part** [2] - 19:5, 20:4
**particular** [1] - 7:9
**parts** [1] - 11:19
**people** [7] - 4:11, 7:4, 8:22, 9:1, 9:5, 9:8, 22:24
**peremptory** [1] - 26:3
**perfect** [1] - 15:24

**perform** [1] - 23:19
**perhaps** [1] - 11:20
**permission** [1] - 23:18
**person** [7] - 8:12, 8:13, 9:2, 9:9, 12:10, 23:14, 23:17
**pick** [2] - 2:24, 28:24
**picking** [2] - 2:25, 26:23
**piece** [1] - 4:4
**place** [1] - 26:18
**placed** [1] - 9:21
**plain** [1] - 19:15
**plaintiff** [11] - 1:4, 2:7, 2:9, 9:22, 10:15, 11:1, 11:13, 11:17, 13:25, 14:2, 22:7
**PLAINTIFF** [1] - 1:12
**plaintiff's** [1] - 10:8
**plans** [1] - 6:13
**play** [1] - 12:12
**Pleasant** [1] - 1:20
**PLLC** [1] - 1:16
**point** [7] - 10:16, 12:6, 13:7, 16:1, 18:17, 22:3, 24:16
**pointing** [1] - 15:19
**police** [7] - 8:16, 8:22, 9:24, 11:23, 18:20, 18:22, 20:1
**policies** [1] - 11:23
**pool** [1] - 27:7
**position** [1] - 17:4
**positions** [1] - 21:6
**possessed** [2] - 19:10, 19:21
**possible** [2] - 19:11, 19:21
**power** [2] - 19:10, 19:20
**powers** [1] - 19:25
**practice** [1] - 25:3
**practices** [1] - 11:23
**preempting** [1] - 30:1
**prefers** [1] - 25:12
**prepare** [2] - 6:10, 25:15
**present** [3] - 1:23, 9:22, 11:20
**preserving** [1] - 13:11
**pressure** [1] - 29:17
**pressure-filled** [1] - 29:17
**presume** [1] - 26:12
**PRETRIAL** [1] - 1:8
**pretrial** [1] - 26:2
**previously** [1] - 24:4
**private** [1] - 12:7
**probable** [2] - 11:14, 22:10
**problems** [1] - 9:24
**procedure** [1] - 29:10
**proceedings** [2] - 2:2, 31:4
**proof** [2] - 7:10, 21:4
**prosecution** [1] - 12:8
**prosecutor** [3] - 8:23, 8:24, 12:3
**protect** [1] - 6:6

**protected** [7] - 10:8, 21:23, 21:25, 22:13, 22:20, 22:21, 22:25
**protein** [1] - 26:13
**PROULX** [2] - 1:19, 31:9
**prove** [6] - 11:15, 12:3, 18:12, 18:17, 21:16, 21:17
**proven** [2] - 21:17, 22:9
**proving** [1] - 18:2
**punitive** [2] - 14:3, 14:5
**purely** [1] - 9:25
**purpose** [2] - 9:11, 9:22
**put** [9] - 3:4, 3:14, 3:21, 4:20, 6:2, 11:1, 13:13, 14:23, 26:17

## Q

**qualification** [1] - 9:13
**qualified** [6] - 15:3, 15:5, 15:6, 15:11, 15:14, 16:5
**question-and-answer** [1] - 29:11
**questions** [2] - 16:2, 29:22
**quickly** [1] - 5:23
**quite** [1] - 20:8
**quote** [1] - 9:23

## R

**RACIOPPI** [1] - 1:23
**raise** [1] - 29:12
**raised** [1] - 17:12
**raising** [1] - 16:14
**rather** [2] - 4:18, 26:15
**rea** [1] - 7:16
**reaches** [1] - 14:9
**read** [5] - 9:19, 10:2, 10:18, 12:16, 22:17
**reading** [3] - 11:10, 20:7
**ready** [2] - 16:7, 28:18
**really** [6] - 8:2, 9:1, 9:7, 9:9, 21:21, 25:20
**reason** [2] - 7:20, 14:1
**reasons** [3] - 2:25, 13:18, 18:14
**recent** [1] - 9:18
**recognize** [1] - 28:15
**reconsider** [3] - 16:12, 16:13, 16:18
**record** [5] - 2:6, 4:21, 13:14, 13:16
**recovery** [1] - 10:9
**reduced** [2] - 27:7, 27:10
**refer** [1] - 7:23
**regard** [1] - 21:20
**reiterates** [1] - 10:13
**relate** [1] - 8:14
**relevant** [4] - 17:12, 17:21, 20:21, 20:25

**rely** [2] - 4:24, 29:22
**remains** [1] - 14:13
**remarks** [2] - 13:9, 13:12
**remember** [2] - 4:9, 4:10
**remind** [2] - 6:1, 6:5
**remove** [1] - 15:2
**REPORTED** [1] - 1:19
**reporter** [1] - 3:13
**Reporter** [1] - 1:19
**represent** [1] - 27:22
**request** [1] - 14:21
**requests** [2] - 15:18, 16:24
**required** [5] - 12:3, 13:24, 14:4, 20:16, 21:10
**requires** [1] - 19:9
**requiring** [1] - 13:1
**reserve** [1] - 14:20
**resides** [1] - 20:20
**resolution** [1] - 15:12
**resolve** [1] - 15:14
**resolving** [1] - 15:10
**respect** [7] - 12:20, 15:10, 19:2, 20:1, 21:19, 22:18, 25:4
**respectfully** [1] - 11:16
**respond** [2] - 5:13, 17:11
**response** [3] - 16:22, 21:9, 29:19
**rest** [2] - 17:22, 27:18
**retaliatory** [3] - 8:3, 8:4, 22:18
**reviewing** [2] - 9:24, 20:12
**rights** [1] - 17:14
**Roach** [1] - 25:19
**room** [3] - 26:17, 26:20, 27:1
**rooms** [2] - 27:2, 27:4
**rule** [3] - 4:23, 5:2, 11:2
**ruled** [1] - 11:22
**ruling** [3] - 3:25, 5:17, 19:25
**running** [1] - 27:22
**Russ** [1] - 2:12
**RUSSELL** [1] - 1:14

## S

**Sackos** [1] - 27:18
**SAMSON** [1] - 1:23
**scheduled** [1] - 27:23
**scope** [1] - 10:14
**scrolling** [1] - 20:7
**seated** [1] - 14:14
**second** [3] - 3:3, 16:16, 26:6
**see** [12] - 13:5, 15:1, 16:1, 17:1, 20:13, 21:10, 24:1, 24:3, 24:20, 26:16, 28:15, 30:5
**seeing** [2] - 6:24, 15:13

**seeks** [1] - 10:9
**selection** [6] - 3:2, 3:5, 6:20, 27:15, 27:16, 29:7
**selves** [1] - 5:11
**sense** [3] - 6:17, 6:21, 25:14
**sent** [1] - 27:9
**separate** [4] - 18:23, 19:2, 19:14, 21:18
**separately** [1] - 23:8
**session** [1] - 2:3
**set** [3] - 3:19, 4:17, 20:24
**share** [1] - 25:1
**Shirley** [1] - 1:16
**shoots** [1] - 18:20
**shortcutting** [1] - 25:13
**shorter** [1] - 6:11
**show** [2] - 11:13, 25:2
**showing** [1] - 24:11
**shows** [1] - 18:14
**side** [12] - 3:10, 3:11, 3:12, 3:14, 4:7, 4:16, 4:19, 5:2, 5:4, 5:12, 5:15, 5:20
**sides** [1] - 24:6
**significant** [1] - 9:23
**similarly** [2] - 22:12, 22:24
**similarly-situated** [2] - 22:12, 22:24
**simply** [5] - 3:10, 3:13, 13:19, 14:9, 20:4
**situated** [2] - 22:12, 22:24
**someone** [1] - 5:6
**sometimes** [1] - 3:20
**sooner** [1] - 6:13
**sorry** [5] - 13:6, 17:11, 23:16, 23:17, 26:1
**sort** [2] - 9:21, 22:13
**sorts** [1] - 21:12
**special** [2] - 12:7, 16:3
**specially** [1] - 8:24
**specially-appointed** [1] - 8:24
**specific** [1] - 13:17
**speech** [2] - 10:8, 22:13
**stand** [1] - 13:8
**standard** [1] - 9:25
**start** [5] - 3:2, 6:22, 7:2, 7:6
**starts** [1] - 4:22
**state** [22] - 3:9, 17:5, 17:13, 17:20, 17:21, 18:3, 18:13, 18:21, 18:23, 19:9, 19:10, 19:12, 19:14, 19:19, 19:21, 19:22, 20:3, 20:14, 21:3, 21:8, 21:18, 23:2
**statement** [3] - 20:15, 20:16, 21:9
**statements** [1] - 6:25
**STATES** [2] - 1:1, 1:10
**States** [1] - 1:20

**status** [1] - 2:4
**STEVEN** [2] - 1:5, 1:14
**still** [11] - 5:22, 8:18, 10:22, 11:15, 21:1, 21:2, 21:4, 21:16, 26:12
**story** [1] - 29:21
**straight** [1] - 10:8
**Street** [1] - 1:20
**structure** [1] - 29:23
**subject** [1] - 17:14
**subjected** [1] - 21:24
**subjective** [15] - 7:10, 7:11, 7:15, 7:18, 7:22, 7:23, 8:1, 8:9, 8:13, 9:9, 9:25, 10:16, 11:2, 12:3, 13:2
**subjectively** [2] - 8:10, 8:18
**subjectivity** [2] - 12:18, 12:22
**submit** [2] - 15:11, 16:24
**subpoenaed** [1] - 27:25
**substantial** [4] - 12:17, 21:25, 22:22, 23:8
**substantive** [1] - 5:20
**suit** [1] - 17:14
**summary** [3] - 18:12, 18:18, 22:4
**superior** [1] - 10:6
**supported** [1] - 22:10
**supposed** [2] - 11:9, 11:11
**Supreme** [1] - 19:7
**sustained** [1] - 4:1

## T

**talks** [2] - 10:19, 10:21
**tendency** [1] - 11:17
**tentative** [1] - 27:9
**terms** [5] - 15:10, 19:15, 23:8, 25:3, 25:21
**test** [4] - 3:15, 10:23, 12:15, 12:25
**testifying** [1] - 29:17
**testimony** [2] - 29:11, 29:23
**THE** [67] - 1:9, 1:12, 1:14, 1:16, 2:3, 2:10, 2:16, 2:19, 4:15, 4:19, 5:8, 5:10, 5:14, 5:25, 9:17, 12:2, 12:13, 13:4, 13:13, 13:21, 13:23, 14:13, 14:22, 15:24, 16:4, 16:10, 16:19, 17:1, 18:1, 18:5, 18:10, 19:14, 20:6, 23:6, 23:13, 23:16, 23:20, 23:22, 24:1, 24:2, 24:3, 24:8, 24:15, 24:19, 24:23, 25:1, 25:9, 25:13, 25:24, 26:5, 26:16, 26:22, 27:2, 27:4, 27:9, 27:13, 27:16, 27:17, 27:20, 28:4, 28:10, 28:13, 29:3, 29:5, 29:15, 29:25, 30:5

**themselves** [2] - 2:6, 11:3
**Thereupon** [1] - 30:8
**they've** [1] - 11:13
**thinking** [2] - 6:15, 28:18
**three** [6] - 6:18, 7:1, 16:11, 21:22, 21:25, 22:21
**thrilled** [1] - 6:12
**throughout** [1] - 28:5
**Thursday** [1] - 27:25
**tie** [1] - 28:20
**timely** [1] - 29:14
**together** [1] - 28:2
**tomorrow** [5] - 6:21, 23:9, 23:10, 28:16, 29:10
**took** [1] - 20:8
**top** [1] - 13:14
**total** [1] - 26:5
**traditional** [1] - 19:8
**transcription** [1] - 31:4
**treacherous** [1] - 26:14
**treated** [8] - 8:6, 8:8, 8:9, 8:17, 9:5, 11:13, 12:11, 25:7
**treating** [4] - 8:22, 8:24, 9:8, 9:10
**treatment** [1] - 10:15
**trespass** [2] - 8:11, 8:16
**Trevino** [1] - 9:18
**trial** [15] - 2:15, 2:21, 3:6, 3:8, 6:10, 6:11, 13:10, 13:14, 18:17, 21:16, 26:22, 26:25, 27:13, 27:14, 27:18
**trialreporters@hush.com** [1] - 1:22
**trials** [2] - 3:1, 6:3
**tricky** [1] - 4:3
**true** [2] - 8:7, 18:1
**trust** [1] - 5:18
**trying** [1] - 4:9
**Tuesday** [1] - 6:16
**turn** [1] - 13:1
**tweak** [1] - 6:23
**two** [7] - 3:1, 9:1, 21:24, 22:20, 26:3, 27:3, 27:4

## U

**U.S** [2] - 17:15, 19:7
**ultimate** [1] - 7:25
**ultimately** [12] - 11:2, 11:3, 13:13, 13:15, 18:11, 18:16, 18:21, 19:1, 21:10, 22:6, 22:15, 27:14
**unaware** [1] - 11:21
**under** [14] - 9:24, 12:14, 17:14, 17:16, 17:21, 18:3, 18:13, 19:9, 19:11, 19:19, 20:14, 21:3, 21:8, 23:2
**uninterrupted** [1] - 29:21
**UNITED** [2] - 1:1, 1:10
**United** [1] - 1:20

**unless** [2] - 11:6, 24:20
**up** [12] - 3:12, 4:4, 4:18, 6:4, 10:16, 11:19, 12:4, 12:8, 13:8, 23:6, 26:9, 28:20
**Upton** [1] - 1:15

## V

**verdict** [3] - 14:9, 15:8, 16:3
**version** [1] - 6:24
**versus** [6] - 2:4, 7:22, 9:9, 9:18, 18:19, 19:6
**viewed** [1] - 11:12
**Vincent** [2] - 23:21, 27:7
**Vinny** [4] - 3:4, 27:5, 27:14, 28:18
**violating** [1] - 17:14
**virtue** [2] - 19:10, 19:21
**visual** [3] - 24:5, 24:6, 24:10
**voice** [2] - 6:5, 6:6
**voir** [1] - 6:16
**vs** [2] - 1:4, 20:4

## W

**waiving** [1] - 13:11
**walk** [1] - 26:15
**warrant** [1] - 10:7
**wear** [1] - 4:12
**Wednesday** [2] - 26:24, 27:24
**week** [2] - 6:16, 26:24
**West** [2] - 19:6, 20:4
**whisper** [7] - 3:21, 4:7, 4:10, 5:5, 6:2, 6:4, 6:6
**whispering** [1] - 4:11
**whole** [1] - 11:18
**William** [1] - 2:9
**WILLIAM** [1] - 1:12
**wishes** [1] - 5:12
**witness** [4] - 25:7, 25:21, 28:8, 29:9
**witnesses** [3] - 25:14, 27:23, 28:3
**word** [1] - 4:13
**workable** [1] - 13:21
**works** [1] - 10:3
**wrongdoer** [1] - 19:11
**wrongdoers** [1] - 19:22