UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Laurie Ortolano,** ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Civil Action No. 22-cv-00326-LM |
| ) | |
| ) | |
| **Steven Bolton and Celia Leonard** ) | |
| **Defendants** ) | |
| ) | |

### PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE
(Defendant Steven Bolton)

Plaintiff Laurie Ortolano respectfully moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a) as to Defendant Steven Bolton. The verdict in Bolton's favor should be vacated because it was against the clear weight of the evidence, was materially affected by prejudicial instructional error concerning causation, was compounded by the structure of the verdict form, and was further influenced by erroneous prejudicial evidentiary rulings. Taken together, these errors undermine confidence in the verdict, and permitting it to stand would result in manifest injustice.

Rule 59 authorizes a new trial where the verdict is contrary to the clear weight of the evidence[1], where substantial errors occurred in the charge to the jury[2], or where the interests of justice require a retrial[3]. In assessing the evidence, "it has long been our circuit law that when reviewing a motion for a new trial under Rule 59, we do not take the evidence in the light most

---

[1] *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009)
[2] *Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc.*, 86 F.3d 1260, 1263 (1st Cir. 1996)
[3] *Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007)

1

favorable to the verdict winner." *Jennings v. Jones*, 587 F.3d 430, 438 (1st Cir. 2009). Furthermore, "a trial judge may order a new trial even where the verdict is supported by substantial evidence." *Id*. at 439 (internal quotes omitted). When issuing a ruling, "[a] trial judge is not required to enter supporting findings of facts and conclusions of law when granting a new-trial motion." *Jennings*, fn. 11.

I. **The Jury's Express Confusion on Causation Demonstrates Prejudicial Instructional Error**

Causation was the central disputed issue as to Bolton. The Court instructed the jury that Plaintiff had to prove that Bolton's actions caused her arrest and that causation had two components. The first component could be satisfied through but-for causation or concurrent sufficient causes, and the second required reasonable foreseeability absent an intervening cause.

During deliberations, the jury submitted Question #2, specifically referencing the "First Component" of causation. *See* Jury Question #2, Docket #237; *See also* Response to Jury Question #2, Docket 239. When a jury communicates confusion about a material element, the court bears a duty to provide clarification that resolves that confusion. Here, the Court's written response directed the jury back to page 10 of the original instruction and clarified only that Plaintiff need not prove that the defendant's actions were illegal. The response did not clarify what it means to "cause" an arrest where a defendant does not physically carry out the arrest, but instead initiates, presses for investigation, or participates in a course of conduct that foreseeably leads to arrest.

The jury's question reveals that it struggled with the meaning of causation in this context. Plaintiff requested inclusion of controlling First Circuit language clarifying that a defendant causes a constitutional injury by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *See*

2

Docket #230, Plaintiff's Suggested Revisions to Jury Instructions. That language directly addressed the conceptual difficulty presented by the facts of this case. Bolton did not physically arrest Plaintiff. The issue was whether his conduct "foreseeably triggered the chain of events that culminated in arrest."

The Court declined to include this language both in the original charge and in response to the jury's question. That omission was prejudicial.

The defense emphasized throughout trial that Bolton lacked arrest authority and did not personally effectuate the arrest. Without clarifying that constitutional causation encompasses setting in motion foreseeable events leading to arrest, the jury was left without an adequate legal framework to evaluate indirect liability.

Bolton himself testified that he contacted Chief Carignan after learning of the January 22 incident and asked that the legal department "be included in deciding what, if anything further, would be done." *See* February 6, 2026 Trial Transcript, Pg 4-5, attached as *Exhibit 1*.. Bolton admitted that he led the discussion at the subsequent Zoom meeting with the Chief and other command staff, speaking "probably all of it" from the legal department's side. *Id*. He further acknowledged that he urged that all witnesses be interviewed and that the police department should fully investigate before making any decision. *Id*.

That testimony establishes active participation in initiating and pressing for investigative action, not mere passive observation. Without instruction that constitutional causation includes "setting in motion" foreseeable events leading to arrest, the jury was left to evaluate this evidence without the governing legal framework.

The undisputed evidence offered by Ex-Chief Carignan that Bolton was angry, and in a raised voice, demanded Ortolano's immediate arrest. Carignan said "No". Attorney Bolton was

not credible as to how the second meeting was initiated. He testified that Carignan called him to reschedule the second meeting, after Carignan told Bolton "No" at the first Police Zoom meeting. *See* February 6, 2026 Trial Transcript, Pg 7-8, attached as *Exhibit 2*. Why would the Ex-Chief request a second meeting with Bolton and his staff if his position hadn't changed and remained "No"?  It was clearly Bolton who requested the second meeting.

The prejudice was magnified by the structure of the verdict form. The jury was not asked to render separate findings on causation or foreseeability. Instead, it was asked only whether Plaintiff proved her retaliatory arrest claim by a preponderance of the evidence. Because the verdict form required a single global liability finding, any misunderstanding regarding causation necessarily resulted in a complete defense verdict without transparency as to which element failed.

The jury's question demonstrates actual confusion. The Court's response did not resolve that confusion. Where a jury expresses uncertainty about a material element and does not receive clarifying instruction grounded in controlling precedent, there exists a substantial risk that the verdict rests upon a misunderstanding of the law.

Under Rule 59, where instructions on a material issue had a tendency to mislead or confuse the jury, a new trial is warranted. *See Gifford v. Am. Canadian Caribbean Line, Inc.*, 276 F.3d 80, 84 (1st Cir. 2002).

## II.     Undisputed Facts

A. Officer Roach testified at the trial that there was probable cause on January 22, 2021, while at City Hall, to obtain an arrest warrant.
B. Officer Roach testified at trial that but for Leonard's request to pursue criminal trespass charges, the matter would have remained closed.

C. Ex-Chief Carignan confirmed that there was probable cause to obtain an arrest warrant at the Jan 22, 2021 incident.

D. Attorney Leonard requested the police issue a no trespass order at the time of the incident on January 22, 2021.

E. Officer Roach's request that the Plaintiff leave was complied with by Plaintiff.

F. Officer Roach closed the case, "No Offenses alleged or apparent". *Tr. Exh. 47, pg. 2.*

G. On January 22, 2021 at 3:57 PM, Plaintiff sent an email to City officials, including the legal office, stating that "Attorney Leonard should be Fired." *Tr. Exh. 1.*

H. According to the January 23, 2021 Union Leader article, *Tr. Exh. 51,* Attorney Leonard was advised by the reporter that there was no investigation. Her response was, "I find that troublesome, to say the least". "My office will be speaking with the police further."

I. The Union Leader article, *Tr. Exh. 51*, also included reference to Attorney Leonard's internal legal memo on the January 22, 2021 provided to the press, which stated, "Ms. Ortolano's erratic and unusual actions, coupled with her refusal to leave despite multiple requests to do so were hostile and threatening, especially given recent violent actions against government employees and Ms. Ortolano's vocal criticism of city staff, including me, at public meetings and in emails to various boards and government officials."

J. On February 1, 2021, a police report was recorded that showed Roach was made aware by his supervisors that City Hall, through Attorney Leonard, wished to open an investigation into the January 22, 2021 incident. *Tr. Exh. 47, pg. 6.*

K. On February 3, 2021, Roach interviewed Attorney Leonard who confirmed she wanted to pursue criminal charges against Ortolano for Criminal Trespass. *Tr. Exh. 47, pg. 11.*

Attorney Neumann provided the police with Plaintiff's email, "Attorney Leonard should be Fired." *Tr. Exh. 47, pg. 10.*

L. Legal assistant Mindy Lloyd testified that the next day after the January 22, 2021 incident, a zoom meeting took place with Bolton, Leonard, Lloyd, Carignan, a Deputy chief and other high ranking police officers. At the zoom meeting the chief gave a "hard no" to arresting the Plaintiff. No documentation of the meeting was recorded as a police report.

M. Ex-Chief Carignan met with Attorney Bolton, Attorney Leonard and Ms. Lloyd to discuss the incident a second time. As testified, Bolton was angry, raised his voice and demanded Plaintiff's arrest. The Chief again re-iterated a hard no to Bolton's demand. Again, no documentation of the meeting was recorded as a police report.

N. Between the February 3, 2021 and February 17, 2021, no documents exist indicating any contact between Bolton, Leonard and the Police Department.

O. Ex-Chief Carignan testified that it was the philosophy of the Nashua Police department that when the police respond to a trespass complaint and the police request the individual leave – and the individual complies with that request – there is no arrest.

P. According to *Tr. Exh. 56*, which references 12 calls at or near City Hall from 2014 to January 2021, there were no arrests of any individuals for Criminal trespass except for Plaintiff who was the only one exercising her First Amendment Rights.

Q. It was only after Plaintiff's email, *Tr. Exh. 1*, that Attorney Leonard advocated that criminal charges should be brought against the Plaintiff.

    **R.** Attorney Bolton testified that in 2019 he had a conversation with Plaintiff in which he stated, you've offended the Mayor, the board President and even me. The offense to the Mayor was based on the Mayor's property tax assessment.

**III.**    <u>**The Verdict Is Against the Clear Weight of the Evidence**</u>

The evidence established that Bolton played a central role in pressing for investigation and enforcement following the January incident.

The police closed the case on January 22, 2021 after the incident, based on the contemporaneous report of Officer Roach placed in the police call log at 10:22 AM that morning (*Tr. Exh. 47, pgs. 1-2*). The evidence established that police initially declined to pursue an investigation at a meeting shortly after (within a day according to testimony of Ms. Lloyd), the January 22, 2021 incident. Bolton admitted under oath that he personally contacted the Chief of Police after learning of the incident and requested involvement in determining "what, if anything further, would be done." He further admitted that he did "most of the talking" at the Zoom meeting with the Chief and senior command staff. *See Exhibit 1*.

Leonard described the Chief of Police as taking a "hard no" position regarding opening the matter. Despite that resistance and despite Defendant Bolton's knowledge that the police had no intention to pursue an investigation, his efforts to cause the Plaintiff's arrest did not cease. The record reflects that two meetings occurred with Bolton and Leonard and police leadership and that despite that "hard no" from Chief Carignan to charge, an investigation ultimately opened based on the Defendants' continued lobbying. On February 1, 2021, Officer Roach was instructed by his supervisors "that City Hall through Attorney Celia Leonard had contacted the Nashua Police Department and wished to open an investigation into the incident that occurred on January 22, 2021". *See Tr. Exh. 47, pg. 6.*

7

Bolton testified that the legal office treated Plaintiff no differently than any other resident. Yet comparator evidence and police testimony reflected that arrest and prosecution under these circumstances were not routine and were initially resisted by law enforcement. Ex-Chief Carignan testified that it was the philosophy of the Police to not arrest individuals for criminal trespass if they leave when requested by the Police. That philosophy was supported by Plaintiff's Exhibit 56 showing no arrests at or near City Hall when individuals asked to leave by the police left. The evidence did show that the Plaintiff was the only person exercising her First Amendment Rights who was arrested after a trespass at City Hall.

The evidence further showed that Bolton was aware of Plaintiff's protected activities, including her litigation and ethics complaint. Testimony established that the legal office had discussed Plaintiff in the weeks preceding the incident and that Bolton was aware of her history of public criticism and Right-to-Know litigation. Plaintiff testified Bolton told her in 2019 that she offended the Mayor and Bolton, it was now personal. Bolton acknowledged at trial that Plaintiff had offended both him and the Mayor in connection with tax assessment issues. While he characterized the exchange differently, he admitted the substance of that encounter. *See* February 6, 2026 Trial Transcript, Day 4, pg. 28-29, attached as *Exhibit 3*.

When the evidence is weighed as Rule 59 requires, the clear weight of the evidence establishes that Bolton's intervention set in motion the investigative escalation that culminated in Plaintiff's arrest and that such arrest was a reasonably foreseeable consequence of his actions. The contrary verdict cannot be reconciled with this record absent legal confusion regarding causation.

The defense relied heavily on the notion that Bolton lacked arrest authority. However, constitutional tort liability does not require personal arrest authority where the defendant

foreseeably initiates or pressures a chain of events that produces the constitutional injury. Bolton's own testimony confirms that he acted in his official capacity as Corporation Counsel. The Zoom meeting occurred with other members of the legal department, led by Bolton speaking on behalf of the legal office to the Chief and other police officials. He testified that he requested the legal office be included in decisions regarding further police action. This was not the conduct of a private citizen. It was the conduct of the City's chief legal officer invoking his institutional role to influence criminal enforcement decisions.

When weighed against the full record, the evidence of causation, foreseeability, and retaliatory motive is substantial. The verdict cannot be reconciled with that record unless the jury misunderstood the governing legal standard.

### IV.     Exclusion of July 22, 2022 Evidence Was Prejudicial

The Court excluded evidence of a subsequent July 22, 2022 attempted arrest. That evidence was probative of motive, intent, and pattern. Plaintiff's contemporaneous statement to Officer Roach that she expected further arrest was portrayed as defiance or indifference. The excluded evidence would have corroborated that her concern was grounded in reality and reflected ongoing hostility. According to the July 22, 2022 police reports, Bolton was angry, demanding Plaintiff's arrest while in a public hallway. Police declined to arrest. The Police questioned Bolton's position that the hallway was not public space. The report documents Bolton's disrespect for the responding police officers.

The July 2022 incident was relevant to show continuing animus and to rebut any suggestion that Plaintiff's fears were speculative. The jury heard testimony portraying the January 22, 2021 incident as isolated and safety-driven. Yet the excluded July 2022 evidence would have shown that Bolton again sought arrest under circumstances police questioned and

declined. The pattern was probative of continuing animus and of Bolton's willingness to invoke police authority in response to Plaintiff's presence and speech. In a case turning on motive, exclusion of that pattern evidence materially affected the jury's ability to evaluate intent. In a retaliatory arrest case, motive and intent are central. Evidence of continued attempts to involve law enforcement is directly relevant to assessing whether earlier conduct was motivated by animus. Excluding that evidence deprived the jury of important contextual information bearing on Bolton's intent.

Where motive is disputed and evidence of pattern or continuation is excluded, prejudice is likely.

### V. Admission of Inflammatory Post-Arrest Speech Was Unfairly Prejudicial

The Court permitted the jury to hear evidence that Plaintiff used the phrase "cuntiest behavior." The record reflects that this statement occurred six months after the arrest at issue.

Because the statement occurred six months after the arrest, it could not have influenced Bolton's decision-making and had no bearing on causation or motive at the time of the events at issue. Its only practical effect was to invite moral condemnation of Plaintiff. In a case that turned on credibility and motive, admission of inflammatory but temporally irrelevant speech created a substantial risk of unfair prejudice. The Court denied Plaintiff's Motion in Limine to exclude the term on the basis that it was relevant on the issue of damages. Plaintiff never claimed that her speech was chilled by the Defendant's retaliatory measures. In fact, she took the opposite position at trial. The statement had no relevance.

Its prejudicial impact, however, was significant. The phrase is inherently inflammatory and invites moral condemnation. It was characterized by Bolton's counsel Hilliard in his opening as vulgar. Leonard's counsel, Cullen, refused to utter the word when it was shown to the jury,

10

intentionally conveying his revulsion to the term and highlighting the highly prejudicial nature of its usage. In a case where the jury had already demonstrated confusion about a central legal element, admission of emotionally charged but minimally relevant evidence increased the risk that the verdict was influenced by improper considerations rather than constitutional analysis.

In a First Amendment retaliation case, the plaintiff's speech cannot be evaluated based on civility. The question was whether Bolton caused Plaintiff's arrest in retaliation for protected activity, not whether Plaintiff later used vulgar language.

### VI. The Cumulative Effect of These Errors Requires a New Trial

This case turned on causation and motive. The jury expressly indicated confusion regarding causation. The Court declined to provide clarifying language grounded in controlling First Circuit precedent. The verdict form required a single undifferentiated liability determination. Relevant motive evidence was excluded. Inflammatory post-arrest language was admitted.

The cumulative effect of these rulings undermines confidence in the verdict. Rule 59 exists to ensure that verdicts are the product of correct legal guidance and fair evidentiary rulings. On this record, allowing the verdict in favor of Defendant Steven Bolton to stand would be inconsistent with substantial justice.

Allowing the verdict to stand would be unjust in light of the full record.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court hold a hearing on this motion, vacate the verdict in favor of Defendant Steven Bolton, and grant a new trial.

**Dated: February 27, 2026**                            Respectfully Submitted,

11

<div style="margin-left: 40%;">
Plaintiff Laurie Ortolano.
By her Attorney,

*/s/ William Aivalikles*
William Aivalikles, Esq.
NH Bar #308
Law Office of William Aivalikles
253 Main Street
Nashua, NH 03060
(603)880-0303
william@nhtriallaw.com
</div>

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via electronic filing / PACER upon counsel of record.

**Dated: 02/27/2026**                                         */s/William Aivalikles*
                                                                William Aivalikles, Esq