UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Laurie Ortolano,** )<br>　　　　　　　　**Plaintiff** )<br>　　　　　　　　　　　　)<br>v.　　　　　　　　　　　) Civil Action No. 22-cv-00326-LM<br>　　　　　　　　　　　　)<br>　　　　　　　　　　　　)<br>**Steven Bolton and Celia Leonard** )<br>　　　　　　　　**Defendants** )<br>　　　　　　　　　　　　) | |

**PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE**
(Defendant Celia Leonard)

Plaintiff Laurie Ortolano respectfully moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a) as to Defendant Celia Leonard. The verdict in Leonard's favor should be vacated because it was against the clear weight of the evidence, was materially affected by prejudicial instructional error concerning causation, was compounded by the structure of the verdict form, and was further influenced by erroneous evidentiary rulings. Taken together, these errors undermine confidence in the verdict, and permitting it to stand would result in manifest injustice.

Rule 59 authorizes a new trial where the verdict is contrary to the clear weight of the evidence[1], where substantial errors occurred in the charge to the jury[2], or where the interests of justice require a retrial[3]. In assessing the evidence, "it has long been our circuit law that when reviewing a motion for a new trial under Rule 59, we do not take the evidence in the light most

---

[1] *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009)
[2] *Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc.*, 86 F.3d 1260, 1263 (1st Cir. 1996)
[3] *Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007)

favorable to the verdict winner." *Jennings v. Jones*, 587 F.3d 430, 438 (1st Cir. 2009). Furthermore, "a trial judge may order a new trial even where the verdict is supported by substantial evidence." *Id*. at 439 (internal quotes omitted). When issuing a ruling, "[a] trial judge is not required to enter supporting findings of facts and conclusions of law when granting a new-trial motion." *Jennings*, fn. 11.

I. **The Jury's Express Confusion on Causation Demonstrates Prejudicial and Reversible Error**

Causation was the central disputed issue as to Leonard. The Court instructed the jury that Plaintiff had to prove that Leonard's actions caused her arrest and that causation had two components. The first component could be satisfied through but-for causation or concurrent sufficient causes, and the second required reasonable foreseeability absent an intervening cause.

During deliberations, the jury submitted Question #2, specifically referencing the "First Component" of causation. *See* Jury Question #2, Docket #237*; See also* Response to Jury Question #2, Docket 239. When a jury communicates confusion about a material element, the court bears a duty to provide clarification that resolves that confusion. Here, the Court's written response directed the jury back to page 10 of the original instruction and clarified only that Plaintiff need not prove that the defendant's actions were illegal. The response did not clarify what it means to "cause" an arrest where a defendant does not physically carry out the arrest, but instead initiates, presses for investigation, or participates in a course of conduct that foreseeably leads to arrest.

The jury's question reveals that it struggled with the meaning of causation in this context. Plaintiff requested inclusion of controlling First Circuit language clarifying that a defendant causes a constitutional injury by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *See*

2

Docket #230, Plaintiff's Suggested Revisions to Jury Instructions. That language directly addressed the conceptual difficulty presented by the facts of this case. Leonard did not physically arrest Plaintiff. The issue was whether her conduct foreseeably triggered the chain of events that culminated in arrest.

The Court declined to include this language both in the original charge and in response to the jury's question. That omission was prejudicial.

The defense emphasized throughout trial that Leonard lacked arrest authority and did not personally effectuate the arrest. *See* February 5, 2026 Trial Transcript, pg. 8-9, attached as *Exhibit 1*. Without clarifying that constitutional causation encompasses setting in motion foreseeable events leading to arrest, the jury was left without an adequate legal framework to evaluate indirect liability.

Leonard testified that she engaged in multiple meetings with police leadership concerning whether further action should be taken. *See* February 5, 2026 Trial Transcript, pp. 77-78, attached as *Exhibit 2*. She acknowledged that the legal department does not control the police department but provides legal advice and counsel to City entities. *Exhibit 1*. The issue for the jury was therefore not whether Leonard possessed arrest authority, but whether her actions foreseeably triggered investigative and charging decisions that culminated in arrest. Without the requested "set in motion" instruction, the jury was not provided the governing framework to evaluate that theory of indirect constitutional causation.

Officer Roach credibly testified that the case was closed when he left City Hall on January 22, 2021. According to *Trial Exhibit 47, pg. 6*, on February 1, 2021 he "was made aware by supervisors" that "Attorney Leonard, on behalf of City Hall, wished to open an investigation into Laurie Ortolano for her actions on January 22, 2021." He testified that but for Attorney

3

Leonard's request the matter would have remained closed. He testified that on January 22, 2021, at the time of the incident, he had probable cause to obtain an arrest warrant but elected not to because the Plaintiff left upon his request. An arrest would have been contrary to the Nashua Police Department's philosophy regarding criminal trespass incidents. If an individual left the property upon request of the police, no criminal charges are issued.

The prejudice was magnified by the structure of the verdict form. The jury was not asked to render separate findings on causation or foreseeability. Instead, it was asked only whether Plaintiff proved her retaliatory arrest claim by a preponderance of the evidence. Because the verdict form required a single global liability finding, any misunderstanding regarding causation necessarily resulted in a complete defense verdict without transparency as to which element failed.

The jury's question demonstrates actual confusion. The Court's response did not resolve that confusion. Where a jury expresses uncertainty about a material element and does not receive clarifying instruction grounded in controlling precedent, there exists a substantial risk that the verdict rests upon a misunderstanding of the law.

Under Rule 59, where instructions on a material issue had a tendency to mislead or confuse the jury, a new trial is warranted. *See Gifford v. Am. Canadian Caribbean Line, Inc.*, 276 F.3d 80, 84 (1st Cir. 2002).

II. **Undisputed Facts**

A. Officer Roach testified at the Trial that there was probable cause on January 22, 2021, while at City Hall, to obtain an arrest warrant.
B. Officer Roach testified that but for Leonard's request to pursue criminal trespass charges, the matter would have remained closed.

4

C. Ex-Chief Carignan confirmed that there was probable cause to obtain an arrest warrant at the Jan 22, 2021 incident.

D. Attorney Leonard requested the police issue a no trespass order at the time of the incident on January 22, 2021. *Exhibit 3*, transcript excerpts from trial.

E. Officer Roach's request that the Plaintiff leave was complied with by Plaintiff.

F. Officer Roach closed the case, "No Offenses alleged or apparent". *Tr. Exh. 47, pg. 2.*

G. On January 22, 2021 at 3:57 PM, Plaintiff sent an email to City officials, including the legal office, that "Attorney Leonard should be Fired." *Tr. Exh. 1.*

H. According to the January 23, 2021 Union Leader article, *Tr. Exh. 51*, Attorney Leonard was advised by the reporter that there was no investigation. Her response was, "I find that troublesome, to say the least". "My office will be speaking with the police further."

I. The Union Leader article, *Tr. Exh. 51*, also included reference to Attorney Leonard's internal legal memo on the January 22, 2021 provided to the press, which stated, "Ms. Ortolano's erratic and unusual actions, coupled with her refusal to leave despite multiple requests to do so were hostile and threatening, especially given recent violent actions against government employees and Ms. Ortolano's vocal criticism of city staff, including me, at public meetings and in emails to various boards and government officials."

J. On February 1, 2021, a police report was recorded, that showed Roach was made aware by his supervisors that City Hall, through Attorney Leonard, wished to open an investigation into the January 22, 2021 incident. *Tr. Exh. 47, pg. 6.*

K. On February 3, 2021, Roach interviewed Attorney Leonard who confirmed she wanted to pursue criminal charges against Ortolano for Criminal Trespass. *Tr. Exh. 47, pg. 11.*

    Attorney Neumann provided the police with Plaintiff's email, "Attorney Leonard should be Fired." *Tr. Exh. 47, pg. 10.*

L. Legal assistant Mindy Lloyd testified that the next day after the January 22, 2021 incident, a Zoom meeting took place with Bolton, Leonard, Lloyd, Carignan, a Deputy Chief and other high ranking police officers. At the Zoom meeting the chief gave a "hard no" to arresting the Plaintiff. No documentation of the meeting was recorded as a police report.

M. Ex-Chief Carignan met with Attorney Bolton, Attorney Leonard and Ms. Lloyd to discuss the incident. As testified, Bolton was angry, raised his voice and demanded Plaintiff's arrest. The Chief again re-iterated a hard no to Bolton's demand. Again, no documentation of the meeting was recorded as a police report.

N. Between February 3, 2021 and February 17, 2021, no documents exist indicating any contact between Bolton, Leonard and the Police Department.

O. Ex-Chief Carignan testified that it was the philosophy of the Nashua Police Department that when the police respond to a trespass complaint and the police request the individual to leave which is complied with, there is no arrest.

P. According to *Tr. Exh. 56*, which references 12 calls at or near City Hall from 2014 to January 2021, there were no arrests of any individuals for Criminal trespass except for Plaintiff who was the only one exercising her First Amendment Rights.

Q. It was only after Plaintiff's email, *Tr. Exh. 1*, that Attorney Leonard advocated that criminal charges should be brought against the Plaintiff.

R. Attorney Bolton testified that in 2019 he had a conversation with Plaintiff in which he stated, you've offended the Mayor, the board President and even me. The offense to the

6

    Mayor was based on the Mayor's property tax assessment. *See Exhibit 3*, trial transcript excerpts.

S. Attorney Leonard's credibility was undermined by her claim that Judge Temple's order did not compel the production of assessing emails for elderly abatements requested by Plaintiff in her Right-to-Know request. In actuality, his order <u>did</u> compel the production of Plaintiff's requested emails. Attorney Leonard appealed the Trial court decision to the N.H. Supreme Court. The Supreme Court affirmed Judge Temple's order and two and a half years later, the records were produced.

T. Attorney Leonard testified that she opposed Plaintiff's annulment of the conviction as she wanted it to remain a public record for everybody to see. *See Exhibit 4*, trial transcript excerpts.

### III.  **The Verdict Is Against the Clear Weight of the Evidence**

    The undisputed facts set forth above, when properly weighed under Rule 59, establish that Leonard's conduct was both a but-for cause and a foreseeable cause of Plaintiff's arrest.

    Nashua Police closed the case on January 22, 2021 after the incident, based on the contemporaneous report of Officer Roach placed in the police call log at 10:22 AM that morning, (*Tr. Exh. 47*, pgs. 1-2.) The evidence established that police initially declined to pursue an investigation at a Zoom meeting shortly after (within a day according to testimony of Ms. Lloyd), of the January 22, 2021 incident. Leonard described the Chief of Police as taking a "hard no" position regarding opening the matter. Despite that resistance and despite Defendant Leonard's knowledge that the police had no intention to pursue an investigation, her efforts did not cease.

Officer Roach testified that his investigation would not have occurred but for Leonard's contact. That testimony was not speculative. It was direct, unequivocal, and unrebutted. That testimony alone satisfies traditional but-for causation under the Court's own instruction. If the investigation would not have occurred absent Leonard's actions, and the investigation led to arrest, then her conduct was a factual cause of the arrest.

Leonard admittedly drafted a contemporaneous written statement on the day of the incident and provided both the statement and a photograph of the Plaintiff to the press. Leonard's own testimony confirms that she was acting in her official capacity as Deputy Corporation Counsel at all relevant times. Her communications with law enforcement and her public statements were undertaken in that official capacity. The February 1 police report reflects that "Attorney Leonard, on behalf of City Hall," wished to open an investigation. *Tr. Exh. 47*, pg. 6. The record reflects sustained engagement with law enforcement following initial resistance by the responding officer and in (2) separate meetings with the Chief of Police (and unnamed others).

When the evidence is weighed as Rule 59 requires, the clear weight of the evidence establishes that Leonard's February 1 contact and her confirmation on February 3 that she wished to pursue criminal charges set in motion the investigative escalation that culminated in Plaintiff's arrest.

Ex-Chief Carignan testified that it was the philosophy of the Nashua Police Department that when officers respond to a criminal trespass complaint and the individual leaves upon request, no arrest is made. That philosophy was supported by Plaintiff's *Trial Exhibit 56* showing no arrests at or near City Hall when individuals asked to leave by the police left. Leonard testified that she had no involvement in any of the prior trespass incidents reflected in Exhibit 56.

Thus, the only trespass incident during the relevant period in which the legal office intervened, escalated, and pressed for investigation involved Plaintiff, a known critic engaged in protected speech. When weighed against this comparator evidence, the arrest stands as an anomaly requiring explanation.

The defense relied heavily on the notion that Leonard lacked arrest authority. However, constitutional tort liability does not require personal arrest authority where the defendant foreseeably initiates or pressures a chain of events that produces the constitutional injury.

The record established the following sequence: Plaintiff was trespassed; police initially closed the matter; Plaintiff publicly called for Leonard's firing; Leonard expressed dissatisfaction publicly; Leonard contacted the police to reopen the investigation; she confirmed her desire to pursue charges; and arrest followed. Officer Roach testified unequivocally that but for Leonard's request, the matter would have remained closed. When this evidence is weighed as Rule 59 requires, the verdict cannot be reconciled with the record absent a misunderstanding of causation.

## IV. Exclusion of July 22, 2022 Evidence Was Prejudicial

The Court excluded evidence of a subsequent July 22, 2022 attempted arrest. That evidence was probative of motive, intent, and pattern. Plaintiff's contemporaneous statement to Officer Roach that she expected further arrest was portrayed as defiance or indifference. The excluded evidence would have corroborated that her concern was grounded in reality and reflected ongoing hostility. According to the July 22, 2022 police reports, Bolton was angry, demanding Plaintiff's arrest while in a public hallway. Police declined to arrest. The Police questioned Bolton's position that the hallway was not public space. The report documents Bolton's disrespect for the responding police officers.

The July 2022 incident was relevant to show continuing animus and to rebut any suggestion that Plaintiff's fears were speculative. In a retaliatory arrest case, motive and intent are central. Evidence of continued attempts to involve law enforcement is directly relevant to assessing whether earlier conduct was motivated by animus. Excluding that evidence deprived the jury of important contextual information bearing on Leonard's intent.

Where motive is disputed and evidence of pattern or continuation is excluded, prejudice is likely.

### V. Admission of Inflammatory Post-Arrest Speech Was Unfairly Prejudicial

The Court permitted the jury to hear evidence that Plaintiff used the phrase "cuntiest behavior." The record reflects that this statement occurred after the arrest at issue.

Because the statement occurred six months after the arrest, it could not have influenced Leonard's decision-making and had no bearing on causation or motive at the time of the events at issue. Its only practical effect was to invite moral condemnation of Plaintiff. In a case that turned on credibility and motive, admission of inflammatory but temporally irrelevant speech created a substantial risk of unfair prejudice. The Court denied Plaintiff's Motion in Limine to exclude the term on the basis that it was relevant on the issue of damages. Plaintiff never claimed that her speech was chilled by the Defendant's retaliatory measures. In fact, she took the opposite position at trial. The statement had no relevance.

Its prejudicial impact, however, was significant. The phrase is inherently inflammatory and invites moral condemnation. It was characterized by Bolton's counsel Hilliard in his opening as vulgar. Leonard's counsel, Cullen, refused to utter the word when it was shown to the jury, intentionally conveying his revulsion to the term and highlighting the highly prejudicial nature of its usage. In a case where the jury had already demonstrated confusion about a central legal

element, admission of emotionally charged but minimally relevant evidence increased the risk that the verdict was influenced by improper considerations rather than constitutional analysis.

In a First Amendment retaliation case, the plaintiff's speech cannot be evaluated based on civility. The constitutional inquiry concerns causation and retaliatory motive, not tone or decorum. Admission of post-arrest vulgarity risked shifting the jury's focus from constitutional standards to character judgment. The question was whether Leonard caused Plaintiff's arrest in retaliation for protected activity, not whether Plaintiff later used vulgar language.

### VI. The Cumulative Effect of These Errors Requires a New Trial

This case turned on causation and motive. The jury expressly indicated confusion regarding causation. The Court declined to provide clarifying language grounded in controlling First Circuit precedent. The verdict form required a single undifferentiated liability determination. Relevant motive evidence was excluded. Inflammatory post-arrest language was admitted.

The cumulative effect of these rulings undermines confidence in the verdict. Rule 59 exists to ensure that verdicts are the product of correct legal guidance and fair evidentiary rulings. On this record, allowing the verdict in favor of Defendant Celia Leonard to stand would be inconsistent with substantial justice.

Allowance of the verdict to stand would be unjust in light of the full record.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court hold a hearing on this motion, vacate the verdict in favor of Defendant Celia Leonard, and grant a new trial.

**Dated: February 27, 2026**                           Respectfully Submitted,

                                                        Plaintiff Laurie Ortolano.

By her Attorney,

*/s/ William Aivalikles*
William Aivalikles, Esq.
NH Bar #308
Law Office of William Aivalikles
253 Main Street
Nashua, NH 03060
(603)880-0303
william@nhtriallaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via electronic filing / PACER upon counsel of record.

**Dated: 02/27/2026**　　　　　　　　　　　　　*/s/William Aivalikles*
　　　　　　　　　　　　　　　　　　　　　　　William Aivalikles, Esq