**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| Laurie Ortolano, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-00326-LM |
| | ) | |
| Steven A. Bolton, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT BOLTON'S OBJECTION TO**
**PLAINTIFF'S MOTION FOR A NEW TRIAL**

Defendant Bolton objects to the Plaintiff's Motion for a New Trial on the following

grounds:

**I.    Plaintiff failed to preserve, and therefore waived, her objections to the Court's**
**instructions on causation and the verdict form.**

Before reaching the merits on the Plaintiff's motion related to the Court's causation

instruction and the Court's response to Jury Question #2 related to causation, the Court "must

resolve the threshold issue of whether the [plaintiff] properly preserved [her] objections." *Wilson*

*v. Maritime Overseas Corp.*, 150 F.3d 1, 5-6 (1st Cir. 1998).

Fed. R. Civ. P. 51(c)(1) provides that "a party who objects to an instruction or the failure

to give an instruction must do so on the record, stating distinctly the matter objected to and the

grounds for the objection." Further, an objection is only timely if (1) a party objects on the

record at the opportunity provided by the Court to do so, or (2) "a party was not informed of an

instruction or action on a request before that opportunity to object, and the party objects

promptly after learning that the instruction or request will be, or has been, given or refused." Fed.

R. Civ. P. 51(c)(2).

Plaintiff failed to properly object to the Court's causation instruction and the Court's

1

response to Jury Question #2. "Rule 51 creates a strict rule for the parties, and there is no reason here to overlook [plaintiff's] failure to follow the rules." *Colon-Millin v. Sears Roebuck de P.R., Inc.*, 455 F.3d 30, 41 (1st Cir. 2006) (internal citation and quotations omitted).

The Plaintiff did not object to the Court's causation instruction. The Plaintiff filed "Proposed Revisions to Court's Model Jury Instructions" (doc. no. 230), simply proposing changes to a number of the Court's instructions, including the causation instruction. However, Plaintiff did not object to the Court's instruction. During the February 6, 2026 charging conference, the parties discussed the Court's causation instruction, and the Plaintiff stated the following: "I think the Court should keep the but-for. That's an easy concept for a lay person to understand, as opposed to proximate cause, you know, those tort principles." Exhibit A, February 6, 2026 Trial Transcript 5:23-25. Later on in the charging conference, the Court asked the Plaintiff if the Plaintiff was okay with "dividing the first component, the second component," and the Plaintiff responded: "I'm happy with the way the Court has it, Your Honor." Exhibit A, February 6, 2026 Trial Transcript 6:9-16.

Then, on February 9, 2026, the Court held a charging conference, giving the parties a last opportunity to "put anything on the record that [the parties] would like to put on the record before [the Court] actually give[s] those instructions," to which the Plaintiff responded "No, your Honor." Exhibit B, February 9, 2026 Trial Transcript 3:9-15.

The Plaintiff's proposed revisions do not equate to an objection to the Court's instruction, especially because, when given the chance to put any objections on the record, the Plaintiff declined.

Likewise, the Plaintiff failed to preserve her objections to the Court's response to Jury Question #2. Prior to issuing its response to Jury Question #2, the Court read its proposed

response to the parties, invited and implemented suggestions from the parties, and confirmed

with the parties that the parties agreed with the Court's proposed response. After the first time

the Court read its proposed response, the Plaintiff and the Court had the following colloquy:

> MR. AIVALIKLES: The only thing I would do, your Honor, is we had filed our own jury instruction concerning causation and I believe we put in there a defendant causes an arrest if the defendants' actions set in motion events that the defendant knew or reasonably should have known would lead to the arrest. And that is cited in Pereira vs. Castillo (sic), 590 F.3d 7150. It was a First Circuit opinion in 2009.
>
> THE COURT: Right. And I have essentially included that on pages 10 and 11.
>
> MR. AIVALIKLES: Oh.
>
> THE COURT: Not in those exact words, but I described that but for the defendants' actions –
>
> MR. AIVALIKLES: Okay.
>
> THE COURT: -- Mrs. Ortolano would not have been arrested and then I explained the other way to find the first component of causation.
>
> MR. AIVALIKLES: Sure.

Exhibit B, February 9, 2026 Trial Transcript 6:3-19.

The Plaintiff did not object beyond that, and when the Court read its proposed response

once again after implementing suggested revisions, the Plaintiff responded "[t]hat's fine, your

Honor." Exhibit B, February 9, 2026 Trial Transcript 10:25. When the Court asked if the parties

would like the Court to read the full response again, the Plaintiff replied, "I'm fine, your Honor."

Exhibit B, February 9, 2026 Trial Transcript 12:22. When the Court said it would send the

response in to the jury, the Plaintiff responded "[p]erfect." Exhibit B, February 9, 2026 Trial

Transcript 13:3. Had the Plaintiff any objections to the Court's proposed response, the Plaintiff

3

had ample opportunity to express those objections before the Court's final response was provided to the jury. Plaintiff did not do so.

Finally, the Plaintiff failed to object on the record to the Court's verdict form, despite the Court providing the parties with a copy of the verdict form, prior to its issuance to the jury. While the Plaintiff submitted a verdict form, the Court noted that it was "inclined to give a general verdict form," was "not inclined to break this down into elements," and was "going to keep the verdict form." Exhibit A, February 6, 2026 Trial Transcript 8:16-21. Plaintiff did not object. The Plaintiff has waived her objections as to the verdict form.

The Plaintiff cites to *Gifford v. Am. Canadian Caribbean Line, Inc.*, 276 F.3d 80, 84 (1st Cir. 2002) to support her argument that "where instructions on a material issue had a tendency to mislead or confuse the jury, a new trial is warranted." However, in *Gifford*, the appellant noted the objection on the record at the earliest opportunity. *See id.* ("At this point Gifford objected."). Further, while the Court in *Gifford* noted that its "review of jury instructions is de novo to ascertain whether the challenged instruction has a tendency to confuse or mislead the jury with respect to the applicable principles of law," it also stated that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (internal citations and quotations omitted). The jury, through the Court's full instructions, had ample guidance to support their analysis of each element of Plaintiff's claim. And, when they had a question as to the causation element, the Court provided a clear response after consulting with both parties.

Given that the Plaintiff failed to preserve her objections as to the Court's causation instruction, the Court's response to Jury Question #2, and the verdict form, Defendant Bolton urges that the Court need not consider the merits of Plaintiff's arguments regarding the same.

However, should the Court do so, Defendant Bolton submits that the Court's causation instruction, response to Jury Question #2, and the verdict form were proper and consistent with the applicable law.

## II.   Many of Plaintiff's "undisputed facts" are disputed, and the evidentiary record supports the verdict.

Defendant Bolton disputes many of Plaintiff's purported "undisputed facts," the majority of which have been presented without a single record citation, and omit much of the evidence presented at the trial that directly disputes such "facts." Defendant Bolton will not address each purported undisputed fact in turn, but will point out to the Court that the excerpts of Defendant Bolton's testimony attached to Plaintiff's Motion do nothing but demonstrate that there was an evidentiary basis for the verdict.

Attorney Bolton testified that he was concerned about the safety of his staff, he contacted Chief Carignan and asked that the legal department be included in deciding what, if anything further, would be done, and that there was a Zoom meeting in which he told the Chief he thought all of the witnesses ought to be interviewed and that the police department should have a full understanding of everything that went on before making any decisions on what further action, if any should be taken. *See* Exhibit 1 to Plaintiff's Motion (doc. no. 244-1). Defendant Bolton also testified that Chief Carignan gave a "hard no" in response to Defendant Bolton's request, and that Defendant Bolton would not have done anything differently if this had happened in his private law office. *See* Exhibit 2 to Plaintiff's Motion (doc. no. 244-2).

The Plaintiff, without referencing any evidence to the contrary, makes conclusions about the credibility of Defendant Bolton's testimony that Chief Carignan then called Defendant Bolton and asked to have a meeting, during which Chief Carignan told Defendant Bolton that they would be investigating the matter further. Plaintiff states in her Motion that "despite the

5

'hard no' from Chief Carignan to charge, an investigation ultimately opened based on the Defendants' continued lobbying." However, Plaintiff fails to mentioned Defendant Bolton's testimony, during which he stated that, after meeting with Chief Carignan, he never contacted any lower-ranking police officers after that meeting on the subject of Laurie Ortolano, and that he only knows what the Chief testified to with respect to how the Police Department went from "there's not going to be an arrest" to "we're going to now open the investigation." Exhibit C, February 6, 2026 Trial Transcript 38:16-39:2.

The Plaintiff continued to rely on so-called comparator evidence, without acknowledging the testimony from Defendant Bolton and Defendant Leonard that neither of them were involved, or had knowledge of the other instances, nor were they similar to Plaintiff's incident.[1] Exhibit D, February 5, 2026 Trial Transcript 3:18-5:8; Exhibit E, February 6, 2026 Trial Transcript 8:25-9:9.

### III.    The Court properly excluded evidence of the July 22, 2022 incident.

The Court made clear, prior to trial, that evidence related to the July 22, 2022 incident would not be admitted. In its July 24, 2025 Order (doc. no. 196), the Court noted that, on September 26, 2023, the Court issued an order dismissing all of Plaintiff's claims against Defendant Bolton with the exception of her claim of retaliatory arrest stemming from the January 2021 trespassing incident. The Court further reiterated this point in its February 14, 2025 Order denying the Defendant's Motion for Summary Judgment.

The Court, in response to Plaintiff's Objection to Defendant's Motion *in Limine* to Exclude Evidence, Testimony, or Argument Regarding the July 2022 Encounter Between

---

[1] Plaintiff also fails to include any of the testimony provided by a number of witnesses that these instances were, in fact, not similar to Plaintiff's incident.

Attorney Bolton and the Plaintiff (doc. no. 136 at ¶¶ 1-4), correctly found in its April 4, 2025 Pretrial Order (doc. no. 166 at ¶ 8) that "[a]ny probative value is substantially outweighed by the dangers of jury confusion, creating a trial within a trial, and unfair prejudice" and that "[t]his evidence has limited relevance to the issues before the jury, as it occurred more than a year after the alleged retaliatory arrest."

The Plaintiff now raises the issue again, claiming that because the jury heard evidence that Plaintiff predicted future arrest after the January 2021 incident, the jury was then entitled to hear about the July 22, 2022 incident. Whether Defendant Bolton had "continuing animus" after Plaintiff's February 2021 arrest, which Defendant Bolton denies, is irrelevant to the question of whether Defendant Bolton caused Plaintiff's arrest in February 2021 in retaliation for Plaintiff exercising her First Amendment rights – which was the only question at issue in this trial. Despite Plaintiff's claims that the July 22, 2022 incident provides "context," it does not shed any light on Defendant Bolton's intent leading up to Plaintiff's February 2021 arrest.[2]

## IV.    The Court properly admitted instances of Plaintiff's post-arrest speech.

The Plaintiff's final argument is that the Court improperly admitted Plaintiff's "inflammatory post-arrest speech," and that such post-arrest speech was prejudicial.[3] Of note, while simultaneously arguing that evidence of the July 22, 2022 incident is evidence of Defendant Bolton's intent at the time of the January 2021 trespass incident and the February 21 arrest, the Plaintiff argues, with respect to the Plaintiff's post-arrest speech, that, "[b]ecause the statement occurred six months after the arrest, it could not have influenced Bolton's decision-

---

[2] Further, Plaintiff continues to describe the July 22, 2022 incident inaccurately, failing to note that it was actually Plaintiff herself who called the police that day.

[3] Plaintiff fails to note that there were several agreed upon and fully admitted exhibits that also included similar speech by the Plaintiff. *See, e.g.,* Trial Exhibits O, T, LL, MM.

making." The Plaintiff's claims that the speech "could not have influenced Bolton's decision-making and had no bearing on causation or motive at the time of the events at issue," and that "[i]ts only practical effect was to invite moral condemnation of Plaintiff," ignores that Plaintiff had asserted emotional distress damages, and provided testimony in support of her allegations at trial. The fact that Plaintiff "never claimed that her speech was chilled" is irrelevant in light of Plaintiff's claimed emotional distress damages.

Defendant Bolton was entitled to offer evidence to dispute Plaintiff's claims that she had emotional distress damages, and had the jury reached the question of damages, instances of Plaintiff's behavior after her arrest are directly relevant to Plaintiff's claimed damages. It would have been prejudicial to Defendant Bolton if he were to have been precluded from showing the jury the clearest example of Plaintiff's post-arrest behavior that directly disputed Plaintiff's purported emotional distress damages.

## V.    Conclusion.

The Plaintiff failed to adequately preserve her objections to (1) the Court's causation instruction; (2) the Court's response to Jury Question #2; and (3) the Court's verdict form, despite being given a number of opportunities by the Court to do so prior to them being issued to the Jury. The Court properly excluded evidence of the July 22, 2022 incident, which could not have had any bearing on the question of whether Defendant Bolton caused Plaintiff's arrest in February 2021 based on retaliatory motive, and finally, the Court properly allowed evidence of Plaintiff's post-arrest speech that directly disputed Plaintiff's claim that she suffered emotional distress damages. The evidentiary record supports the verdict, and accordingly, the Court should

deny Plaintiff's Motion for a New Trial.[4]

Respectfully submitted,

**Steven A. Bolton,**

By his attorneys,

**UPTON & HATFIELD, LLP,**

Date:  March 13, 2026

/s/ Russell F. Hilliard
Russell F. Hilliard; NHBA #1159
159 Middle Street
Portsmouth, NH 03801
(603) 436-7046
rhilliard@uptonhatfield.com

Brooke Lovett Shilo; NHBA #20794
Madeline K. Matulis; NHBA #276135
10 Centre Street
Concord, NH 03301
(603) 224-7791
bshilo@uptonhatfield.com
mmatulis@uptonhatfield.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day forwarded to all counsel of record through the Court's E-filing system.

/s/ Russell F. Hilliard
Russell F. Hilliard

---

[4] Defendant Bolton also joins in the arguments in Defendant Leonard's objection to the motion for new trial.