UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                    \*
LAURIE ORTOLANO                     \*
                                    \*   22-cv-326-LM
        v.                          \*   February 5, 2026
                                    \*
STEVEN BOLTON AND CELIA LEONARD     \*
                                    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT EXCERPT OF JURY TRIAL TESTIMONY OF CELIA LEONARD
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY


APPEARANCES:


For the Plaintiff:          William E. Aivalikles, Esq.
                            Aivalikles Law Office


For the Defendants:

(Steven Bolton)             Russell F. Hilliard, Esq.
                            Madeline K. Matulis, Esq.
                            Upton & Hatfield LLP


(Celia Leonard)             Brian J.S. Cullen, Esq.
                            Cullen Collimore Shirley PLLC


Court Reporter:             Susan M. Bateman, RPR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, NH 03301
                            (603) 225-1453

Q.    After the meeting with the chief at your office.

THE COURT:  Can you help me by describing it as the Zoom meeting or the in-person meeting?

MR. AIVALIKLES:  Okay.  I'll distinguish.

THE COURT:  I think that's how it was described.

MR. AIVALIKLES:  Okay.

THE COURT:  And I'm getting confused as to which meeting you're asking him about.

MR. AIVALIKLES:  Thank you, your Honor.

MR. HILLIARD:  Your Honor, is the question directed through the time of the arrest or all time?

THE COURT:  And narrow the time and scope.  So if you could just back up to which meeting he's being asked about.

MR. AIVALIKLES:  Yes.

Q.    Following the in-person meeting with the chief, did you contact any of the lower-ranking police officers after that meeting?

A.    On this subject?

Q.    Yes.  On Laurie Ortolano, yes.

A.    No, I did not.  No.

Q.    Do you know how they went from there's not going to be an arrest, there's not going to be a further investigation, to we're going to now open the investigation?

Do you know what prompted them to do that?

A.   I only know what the chief testified in this trial. Other than that, I have no awares.

Q.   Right.  And do you know how he got that social posting that he claimed was the origin of the reopening?

A.   I don't know.

Q.   You didn't send it to him?

A.   I certainly don't remember sending it to him.

Q.   And I think the document he was talking about had to do -- was the e-mail that Laurie had sent on January 22nd at 3:57 p.m.; is that correct?

A.   I don't know if it's correct or not.

Q.   Okay.  Did you ever describe Laurie Ortolano's conduct as an out-and-out invasion?

A.   I was reported in the press as having characterized it that way.  I think I probably did.

Q.   You did.

And did you also indicate to the reporter that it came about because of the January 6th incident in Washington, D.C.?

A.   I don't think I said that, and I can explain that further, if you wish.

Q.   Let me get the document.

MR. HILLIARD:  Well, at some point, your Honor, the witness should be able to give his explanation.

MR. AIVALIKLES:  I'm sorry.  I didn't hear that.

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings to the best of my knowledge, skill, ability and belief.

Submitted: 2-27-26      /s/    Susan M. Bateman _____
                        SUSAN M. BATEMAN, RPR, CRR