**\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 7-6-2026**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                      \*
LAURIE ORTOLANO                 \*
                                      \*   22-cv-326-LM
     v.                    \*   February 6, 2026
                                      \*
STEVEN BOLTON AND CELIA LEONARD   \*
                                      \*
                                      \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF JURY TRIAL
DAY FOUR - AFTERNOON SESSION
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY

APPEARANCES:

For the Plaintiff:      William E. Aivalikles, Esq.
                          Aivalikles Law Office

For the Defendants:

(Steven Bolton)        Russell F. Hilliard, Esq.
                          Madeline K. Matulis, Esq.
                          Aivalikles Law Office

(Celia Leonard)        Brian J.S. Cullen, Esq.
                          Cullen Collimore Shirley PLLC

Court Reporter:        Susan M. Bateman, RPR, CRR
                          Official Court Reporter
                          United States District Court
                          55 Pleasant Street
                          Concord, NH 03301
                          (603) 225-1453

I N D E X

WITNESSES:            Direct      Cross      Redirect      Recross


STEVEN BOLTON


(Previously transcribed under separate cover)



REBUTTAL TESTIMONY:


LAURIE ORTOLANO


By Mr. Aivalikles     12

By Mr. Hilliard                    14

(No cross-examination on rebuttal by Mr. Cullen)

(After the testimony concluded and the jury was excused for the day, that portion has been previously transcribed under separate cover)

P R O C E E D I N G S

(Jury trial testimony of Steven Bolton previously transcribed under separate cover)

MR. AIVALIKLES:  Your Honor, I do have some rebuttal.  My client would like to rebut three or four issues that were raised in the --

THE COURT:  Well, let me just allow Attorney Bolton to step down.

THE WITNESS:  Do you want your stuff back?

MR. AIVALIKLES:  Sure.  You can give it back to me.

THE COURT:  You can leave it there and he can get it, if you would like, or drop it off on your way back to your spot.

Let's do a brief sidebar so I can hear the rebuttal.

(SIDEBAR)

THE COURT:  Go ahead and tell me the offer of proof on the three or four issues.

MR. AIVALIKLES:  Right.  She's going to testify about the meeting with Kleiner and the one that Attorney Bolton attended, and she's going to testify that she had no idea Attorney Bolton was going to be there, and Attorney Bolton never talked to her about what she could disclose in light of her representation, and also his response when she gave him the report from the private investigator.

THE COURT:  Okay.  So she's got a different version

of that?  She's going to testify to that?

MR. AIVALIKLES:  Yes.

THE COURT:  Okay.

MR. AIVALIKLES:  The second concern is the abatement issue when she went to the office, and Attorney Bolton is claiming she was going through the --

THE COURT:  Oh, it was the rifling of the desk papers at her desk?

MR. AIVALIKLES:  Correct.

THE COURT:  That piece?

MR. AIVALIKLES:  Yes.

THE COURT:  And is it that specific issue?

MR. AIVALIKLES:  Yes.

THE COURT:  Okay.

MR. AIVALIKLES:  And then she's going to testify that the superior court ordered the production of those e-mails and abatements, contrary to what Attorney Leonard said.

THE COURT:  The e-mails.  Which e-mails?

MR. AIVALIKLES:  38, your Honor.

THE COURT:  38.  You have to help me.  What e-mails?

MR. AIVALIKLES:  Yeah, the e-mails to the city that enclosed the abatement applications for the elderly people. That's Exhibit 38.

THE COURT:  Okay.  So let me look at 38.

MR. AIVALIKLES:  That's --

THE COURT:  Give me just a second.

(Pause)

Okay.  This is her e-mail a few days before the incident in question, January 17th, 2021.

MR. AIVALIKLES:  Right, which was the genesis of her going on the 22nd.

THE COURT:  Okay.  And what is it she's going to say?  She's going to say that there was a court order eventually?

MR. AIVALIKLES:  Yeah.  Right.

THE COURT:  I thought she already testified to that.

MR. AIVALIKLES:  But Attorney Leonard said the Court did not compel her to produce those records when in fact the Court did order her to produce those records.

So she's just clarifying that, your Honor.

THE COURT:  So that will be brief.

MR. AIVALIKLES:  Yes.

MR. CULLEN:  I do want to speak to that, your Honor, when I have an opportunity.

THE COURT:  Okay.

MR. AIVALIKLES:  And the last thing, your Honor, is her testimony that the two seniors lived in a mobile home park, contrary to what Attorney Bolton said.

THE COURT:  How is that relevant?

MR. AIVALIKLES:  Well, he's the one that said that

these two elderly people did not own a mobile home.  That was his testimony.

THE COURT:  That the two elderly people --

MR. AIVALIKLES:  The elderly people, yes.

THE COURT:  -- did not own a mobile home?

MR. AIVALIKLES:  A mobile home, right.

But they were in -- she would testify they lived in a mobile home park.

THE COURT:  Okay.  And who testified to what on that?  I remember hearing about it, but the relevance of it, remind me -- help me out is what I'm saying.

MR. AIVALIKLES:  Right.  It was just background information about the abatement and what the focus of the abatement was, and my client indicated that they lived in a mobile home.  Attorney Bolton said it was not a mobile home.

MR. HILLIARD:  Your Honor, whether they were mobile homes or manufactured homes or re-fabbed homes, whatever, is not the issue, and it's just immaterial to take the jury's time to find out about that.

THE COURT:  Yeah.  That's not happening.

Okay.  So you've got essentially three issues that you're going to go over with her?

MR. AIVALIKLES:  Right.

THE COURT:  And let's be clear just so I know.  A different version of the meeting with Kim Kleiner and Attorney

Bolton, and that meeting was in 2019 or 2020?

MR. AIVALIKLES:  2019.

THE COURT:  The first one?

MR. AIVALIKLES:  Yes.

THE COURT:  Okay.  And then there is the looking at papers on Manuela's desk.

MR. AIVALIKLES:  Right.

THE COURT:  A different version of that.

MR. AIVALIKLES:  Yeah.  January 2020.

THE COURT:  And then there is --

MR. AIVALIKLES:  Judge Temple's order.

MR. HILLIARD:  That's the one, your Honor, I have a problem with.

THE COURT:  Okay.  So let me just make sure I understand what he's offering it for, the rebuttal.

That January 17th your client is e-mailing the assessor's office, as well as other individuals, and wants to make sure that they've received the tax abatement applications that she's filing on behalf of two elderly individuals.

MR. AIVALIKLES:  Right.  But a right-to-know that she had filed requesting that information from the city, and the city didn't produce them claiming that they had been put on a backup tape and it was too time-consuming.  There was a hearing before Judge Temple and Judge Temple required the city to produce.

Attorney Leonard said that Judge Temple did not order the city to produce.

THE COURT: Okay.

Go ahead.

MR. CULLEN: Okay. So two things on this, your Honor. The principal objection is that this involves a RTK request, or a 91-A request, that's dated March 7th of 2021. In other words, after this event the plaintiff went back and made a request for the Vincent e-mails that are now in front of the Court between Exhibits 38 and 40M, and that's fine, but it doesn't have anything to do with this case other than that's how she got those documents which are already admitted into evidence. It's not relevant to any subject in the case.

It does appear that -- my best memory is that my client testified that she thought that they won at the superior court and were reversed at the supreme court, but she admitted that they were ordered to produce these documents and that they appealed that.

It looks like that was a misstatement. It looks from this order from 2022 that in fact Judge Temple ordered them, and the city appealed it, and the supreme court affirmed it. But, substantively, to impeach her over whether -- she admitted that they didn't turn over the documents in a timely manner and they were ordered to produce them, and I don't understand why we would have somebody come up to impeach her on

something like that.

And my concern is that it's opening the door to this idea somehow that the city is, you know, stalling or gaming her on these RTK requests by referring to something that took place after this happened.

THE COURT:  Okay.  I'm just going to let brief testimony come in on it.  Brief.  It does involve documents that she wanted and was looking to have stamped and was asking for, it involves documents around the time of January 2021, and it took the city -- it took a court order from Judge Temple, and then, obviously, the supreme court, to actually get whatever documents they are.

I guarantee you the jury isn't going to understand what documents you're talking about unless you make it very clear.

And it supports Ms. Ortolano's credibility in the sense of her frustration with requesting things, not getting them, and then ultimately she prevails, and it deals with documents -- even though it's occurring in March of 2021, the Right-to-Know request, this document, Exhibit 38, is January 17th, 2021.

MR. CULLEN:  Right.  That's because it was requested after the fact, and they produced the documents.

I mean, yes, but that wouldn't make this any more relevant.  It wouldn't matter if these were documents from

1742.  The point is that the request was made after her arrest. It has nothing to do with whether or not they retaliated against her or they had animus against her or anything else. All it is is that she asked for these e-mails after the fact.

THE COURT:  I could be just misunderstanding this, but I see a date that predates the incident.

What am I missing?

MR. CULLEN:  That's the court order, and the court order says:  On March 7, 2021, the petitioner submitted a Right-to-Know request to Mr. Vincent via e-mail asking to produce with the AssessHelp e-mails.

So, yes, the resulting documents are the ones that you have dated in January, but that doesn't change the fact that the complaint is about something she did after the fact.

THE COURT:  This has already come in.  It's come in through Ms. Ortolano.  Attorney Leonard was asked about it.

I'm going to let you ask questions, but very brief on that.  It does not sound worthy of a lot of attention.

There are three issues.  Three narrow issues.

Go ahead.

MR. HILLIARD:  I just want to preserve my objection on this last one, on the superior court order of the litigation.  The lawyers were representing --

THE COURT:  I can't hear you.

MR. HILLIARD:  The lawyers were representing the

city in pending litigation and taking various steps.  That's a classic activity.  It shouldn't form a basis for a civil liability claim.  I know you disagree with me, your Honor.

THE COURT:  No, it's not that I disagree.  I'm not clear on the nature of the documents.  I'm not clear on exactly what the order holds, I haven't seen it, and based on what is being told to me, we are spending more time on this objection than I'm guessing we would spend on hearing this evidence.

It's already come in.  There's been testimony about this.  Am I wrong?  I know the order itself -- the order is not coming in.  He's not going to get the order in.

MR. AIVALIKLES:  I'm not intending to, your Honor.

THE COURT:  Are you objecting to the order itself?

MR. HILLIARD:  Yes.

THE COURT:  Okay.  He's not going to move that that be admitted.

MR. HILLIARD:  Okay.  But if it's discussed, then the jury should be aware of the concluding paragraphs of this order and what they say.

THE COURT:  Well, of course I have no idea what the concluding paragraphs are, guys.  I need some help in terms of objections and in terms of what these documents say.

My understanding is -- I'm looking at Exhibit 38. It has a date that predates the incident, and she's frustrated because she's trying to get these documents date stamped.  I'm

not clear on exactly what Right-to-Know request this is related to, but I do know she got documents that she was asking for years later.  That seems marginally relevant.

So unless somebody can clarify further for me, I'm going to let this in very briefly, all right?

MR. AIVALIKLES:  Thank you, your Honor.

(CONCLUSION OF SIDEBAR)

MR. AIVALIKLES:  Your Honor, does she need to be sworn in again or --

THE COURT:  You're still under oath.

REBUTTAL TESTIMONY OF LAURIE ORTOLANO

DIRECT EXAMINATION

BY MR. AIVALIKLES:

Q.    Mrs. Ortolano, I just have a few questions.

Just directing your attention to what we call the Kleiner meeting in May of 2019 that was attended by you, Mrs. Kleiner, and Attorney Bolton, do you recall that meeting?

A.    Yes.

Q.    When that meeting was scheduled, did you understand that Attorney Bolton would be there?

A.    No.

Q.    And did Attorney Bolton explain to you his role in that particular meeting?

A.    No.

Q.    Okay.  Thank you on that.

With regard to the abatement file that you had requested, your abatement file, that was in January of 2020. Do you recall that?

A.   Yes.

Q.   And do you recall going to the assessor's office to get your public abatement file and being told that it was up in legal and then you went up to legal?  Do you recall that?

A.   I do, yes.

Q.   Okay.  And Attorney Bolton testified that you were going through one of the employees' desk that had files.

Is that accurate?

A.   Wholly untrue.

Q.   And, finally, do you recall when you had the Right-to-Know case in the superior court that concerned the e-mails that you had been sending back and forth with Mr. Vincent, whether the superior court ordered the city to produce those files?

A.   The superior court did order that the files be produced.

Q.   And it was the city of Nashua that appealed to the New Hampshire Supreme Court?

A.   Correct.  They appealed and the supreme court affirmed.

MR. AIVALIKLES:  Thank you, your Honor.

THE COURT:  Any cross?

MR. HILLIARD:  Yes, your Honor.

THE COURT:  Go ahead, Attorney Hilliard.

CROSS-EXAMINATION

BY MR. HILLIARD:

Q.    Ms. Ortolano, irrespective of exactly what happened at that meeting with Kim Kleiner and Mr. Bolton in September of 2019, you filed an ethics complaint against Attorney Bolton arising out of that meeting, didn't you?

A.    Correct.

Q.    And it was dismissed, right?

A.    Correct.

MR. HILLIARD:  Thank you.

MR. CULLEN:  I have no questions, your Honor.

THE COURT:  All right.

Thank you.  You may step down.

Anything else, Attorney Aivalikles?

MR. AIVALIKLES:  No, your Honor.

THE COURT:  All right.  So you rest your entire case?

MR. AIVALIKLES:  Yes, your Honor.

THE COURT:  All right.  It is now 3:10.  So I'm going to send you home early, you'll have the weekend, and then you will come back at 9:00 a.m. on Monday.

You will hear closing arguments, I'll give you jury instructions, and that's the moment in time when you will

finally be able to talk to one another about the case, about what you've heard for the past four days.  Five days on Monday.

Until then though -- again, until you get the closings and the instructions, you still have to follow my orders not to talk to anyone about the case, not to do any research, not to do any social media searching or social media communication about it.  If anything like that were to happen, it would violate a court order and it could cause, you know, the case to have to start over, retried.  So I really want to impress upon you how important it is not to look for anything or talk to anybody or search for anything.  It's just -- it's a weekend.  Hopefully, you will be distracted with the Patriots' game, as we will, and you will report back on Monday at 9:00 a.m.

I do want to just say thank you as you head to the weekend.  I know I'm speaking on behalf of everybody involved. You have been serving your country doing this for the past four days, and you are officers of the court.  You've probably noticed that when you walk in, everybody stands, including myself, because of your incredibly important role in this process.  So I just want to empower you to continue to follow my orders and then return at 9:00 a.m. on Monday, and let's hope the Patriots win.

(IN COURT - NO JURY PRESENT)

(This portion of the record has been previously

transcribed under separate cover)

(Jury trial adjourned at 3:17 p.m.)

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings to the best of my knowledge, skill, ability and belief.

Submitted:  4-6-26        /s/    Susan M. Bateman _____
                          SUSAN M. BATEMAN, RPR, CRR